Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California  94104
Telephone:  415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Adam J. Levitt*
John E. Tangren*
Daniel R. Ferri*
**GRANT & EISENHOFER P.A.**
30 North LaSalle Street, Suite 2350
Chicago, Illinois  60602
Telephone:  (312) 214-0000
alevitt@gelaw.com
jtangren@gelaw.com
dferri@gelaw.com

W. Daniel "Dee" Miles, III*
H. Clay Barnett, III*
Archie I. Grubb, II*
Andrew E. Brashier*
**BEASLEY, ALLEN, CROW,**
  **METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama  36104
Telephone: 334-269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Archie.Grubb@Beasleyallen.com
Andrew.Brashier@Beasleyallen.com

*Motions to appear *pro hac vice* to be filed

Attorneys for Plaintiffs (*additional counsel appear on signature page*)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MONTEVILLE SLOAN, JR., RAUL SIQUEIROS, JOSEPH BRANNAN, DONALD LUDINGTON, THOMAS SHORTER, GABRIEL DEL VALLE, GAIL LANNOM, BRADLEY K. ZIERKE, ROSS DAHL, DREW PETERSON, BARBARA MOLINA, STEVEN EHRKE, BILL MAUCH, THOMAS GULLING, RONALD JONES, and JOHN GRAZIANO, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>     v.<br><br>GENERAL MOTORS LLC,<br><br>    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Monteville Sloan Jr., Raul Siqueiros, Joseph Brannan, Donald Ludington, Thomas

Shorter, Gabriel Del Valle, Gail Lannom, Bradley K. Zierke, Ross Dahl, Drew Peterson, Barbara

Molina, Steven Ehrke, Bill Mauch, Thomas Gulling, Ronald Jones, and John Graziano (collectively, "Plaintiffs"), individually and on behalf of the other members of the below-defined nationwide and statewide classes they respectively seek to represent (collectively, the "Class"), hereby allege against Defendant General Motors LLC ("GM" or "Defendant"), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## I.     NATURE OF THE CASE

1.     This class action lawsuit is brought by Plaintiffs seeking damages and equitable relief individually and on behalf of the other Class members, each of whom purchased or leased one or more model year 2010-2013 GM vehicles fitted with GM's defective Generation IV 5.3 Liter V8 Vortec 5300 engines (the "Generation IV Vortec 5300 Engines").

2.     GM made the Generation IV Vortec 5300 Engine available as an engine option in the following vehicles:

- 2010-2013 Chevrolet Avalanche;
- 2010-2012 Chevrolet Colorado;
- 2010-2013 Chevrolet Express 1500;
- 2010-2013 Chevrolet Silverado 1500;
- 2010-2013 Chevrolet Suburban;
- 2010-2013 Chevrolet Tahoe;
- 2010-2013 GMC Canyon,
- 2010-2013 GMC Savana 1500;
- 2010-2013 GMC Sierra 1500;
- 2010-2013 GMC Yukon; and
- 2010-2013 GMC Yukon XL;

Those vehicles listed above in which the Defective Engines were installed are defined herein as the "Class Vehicles."[1]

---

[1] "Class Vehicles" are only vehicles produced after GM emerged from bankruptcy on July 10, 2009.

CLASS ACTION COMPLAINT

3.      As more fully explained below, the Class Vehicles were engineered to fail.  GM failed to disclose the truth about these vehicles and failed to remedy the well-established defects in the Class Vehicles that were on the road.

4.      In 2006, for its model year 2007 vehicles, General Motors Corporation ("Old GM") introduced its redesigned Generation IV Vortec 5300 Engine and installed it in many of its most popular vehicles, as listed above.

5.      Unfortunately, the Generation IV Vortec 5300 Engine consumes an abnormally and improperly high quantity of oil that far exceeds industry standards for reasonable oil consumption. This excessive oil consumption results in low oil levels, insufficient lubricity levels, and corresponding internal engine component damage.

6.      On June 8, 2009, Old GM filed for protection under Chapter 11 of the United States Bankruptcy Code.  Defendant GM acquired its assets and, for model years 2010-2013, continued manufacturing and selling Chevrolet and GMC vehicles equipped with the Generation IV Vortec 5300 Engines.[2]

7.      The excessive oil consumption problem in the Generation IV Vortec 5300 Engines is caused by defective low-tension oil control rings that GM installed within those engines (the "Low-Tension Oil Rings").  The Low-Tension Oil Rings were designed to reduce tension between the oil rings and the cylinder walls.  GM ostensibly installed the Low-Tension Oil Rings to improve fuel economy, horsepower, and torque by reducing friction between the oil rings and the cylinder walls. This oil ring design, however, improperly allows engine oil to travel past the pistons and enter the engine's combustion chambers, where it is either consumed in the combustion process, or it hardens and accumulates therein.  This defect is referred to herein as the "Low-Tension Oil Ring Defect."

8.      Exacerbating the excessive oil loss and concomitant engine damage problems caused by the Low-Tension Oil Ring Defect in the Class Vehicles is GM's implementation of a defective Oil Life

---

[2] Plaintiffs do not assert any claims against Old GM, nor were any of the Class Vehicles manufactured by Old GM.

3

Monitoring System in each of those vehicles that fails to advise drivers of insufficient oil in their vehicles until those levels are critically low.

9.      Despite its name, GM's Oil Life Monitoring System, ***does not monitor oil level***.  Rather, it monitors engine conditions, such as revolutions and temperature, to calculate the expected deterioration in oil quality and thus the time for a recommended oil change.  The Oil Life Monitoring System's adaptive change intervals do not take into account oil level.  The result is a system that directs drivers to travel thousands of miles with inadequate lubricity levels, wearing out and damaging moving internal engine components – a particularly serious problem in light of the fact that the Low-Tension Oil Ring Defect causes improper and excessive oil loss in each of the Class Vehicles.

10.      GM has attempted stop-gap fixes of the excessive oil loss problem in the Class Vehicles by remedying defects associated with the Generation IV Vortec 5300 Engines' positive crankcase ventilation ("PCV") system and Active Fuel Management ("AFM") system.  Those tangential fixes, however, failed to solve the excessive oil loss problem arising from the Low-Tension Oil Rings defect that has plagued – and continues to plague – each of the Class Vehicles.

11.      Significantly, GM's own conduct confirms the defective nature of the Low-Tension Oil Rings in each of the Class Vehicles.  Beginning with its model year 2014 vehicles, GM scrapped the Generation IV Vortec 5300 Engine it installed and implemented in the Class Vehicles and replaced it with a materially redesigned Generation V Vortec 5300 engine, which was designed and intended to remedy the excessive oil consumption problem plaguing the Class Vehicles.  As part of that 2014 model year overhaul, GM abandoned its Low-Tension Oil Ring debacle and retuned to using standard tension oil rings – while, at the same time, reintroducing an oil level sensor.

12.      While GM's 2014 Model Year redesign of its Generation V Vortec 5300 engines confirms the prior defects and may benefit subsequent purchasers and lessees of those vehicles, it did nothing for the owners and lessees of the Class Vehicles, namely, Plaintiffs and the other Class members.  Those people remain saddled with their defective Generation IV Vortec 5300 Engines with no relief from GM.

13.     GM has long known of the excessive oil consumption problem within the Generation IV Vortec 5300 Engines caused by the Low-Tension Oil Ring Defect and the resulting engine damage. Despite this knowledge, GM has never disclosed the defects in the Generation IV Vortec 5300 Engines to consumers.  Rather, GM has allowed drivers of the Class Vehicles to continue driving those vehicles, despite knowing that they are consuming oil at an abnormally high rate, and has continued allowing drivers of the Class Vehicles to rely on the Oil Life Monitoring System, despite knowing that they were driving well past the point at which their vehicles have consumed the amount of oil necessary for proper engine lubrication and proper operation.  The result is Class Vehicles that suffer internal component wear and eventual engine failure due to unacceptable heat and friction levels caused by the Low-Tension Oil Ring Defect.

14.     Each current or former purchaser or lessee of a Class Vehicle paid for a vehicle fitted with a defective engine that consumed an abnormally high volume of oil, subjecting their vehicles to the problems described herein.  Each of these current and/or former owners and/or lessees were damaged in that they paid more for their Class Vehicles than they would have paid had they known about the defect that GM failed to disclose, or they would not have purchased or leased their Class Vehicles at all.

## II.     JURISDICTION AND VENUE

15.     This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000 and Plaintiffs and one or more of the other Class members are citizens of a different state than Defendant.

16.     This Court has personal jurisdiction over GM because GM has purposefully availed itself of the privilege of conducting business in the State of California by advertising and selling its manufactured vehicles (including the Class Vehicles) within the State of California.  Additionally, GM has maintained systematic and continuous business contacts with the State of California and is registered to conduct business in this State.

17.     Venue is proper in this District under 28 U.S.C. § 1391 because GM is deemed to reside in any judicial district in which it is subject to personal jurisdiction.  Additionally, Plaintiff Sloan Jr.

resides in this District, and GM has marketed, advertised, sold, and leased Class Vehicles within this District.

### III.   PARTIES

**A.    Plaintiffs**

**1.    California**

18.    Raul Siqueiros is a resident of Vallejo, California.

19.    Mr. Siqueiros owns a 2011 Chevrolet Silverado, equipped with a Generation IV Vortec 5300 Engine.  Mr. Siqueiros purchased his Silverado new from Team Chevrolet Cadillac in Vallejo, California.

20.    GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Siqueiros before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Siqueiros, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**2.    Alabama**

21.    Joseph Brannan is a resident of Columbus, Georgia.

22.    Mr. Brannan owns a 2010 GMC Yukon, equipped with a Generation IV Vortec 5300 Engine.  Mr. Brannan purchased his Yukon in 2011 from Joe V. Clayton Chevrolet, located at 327 Brindlee Mountain Parkway, Arab, Alabama 35016.

23.    GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Brannan before he purchased his Yukon, despite GM's knowledge of the defect, and Mr. Brannan, therefore, purchased his Yukon with the incorrect understanding that it would be a reliable vehicle.

**3.    Florida**

24.    Donald Ludington is a resident of Palm Harbor, Florida.

25.    Mr. Ludington owns a 2010 Chevrolet Tahoe, equipped with a Generation IV Vortec 5300 Engine.  Mr. Ludington purchased his Tahoe in 2012 with 30,000 miles from Dimmit Chevrolet, located at 25485 U.S. Highway 19, Clearwater, Florida  33763.

26.     GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Ludington before he purchased his Tahoe, despite GM's knowledge of the defect, and Mr. Ludington therefore purchased his Tahoe with the incorrect understanding that it would be a reliable vehicle.

27.     Thomas Shorter is a resident of Okeechobee, Florida.

28.     Mr. Shorter owns a 2011 Chevrolet Silverado, equipped with a Generation IV Vortec 5300 Engine.  Mr. Shorter purchased his Silverado new from Gilbert Chevrolet in Okeechobee, Florida.

29.     GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Shorter before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Shorter, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**4.     Idaho**

30.     Gabriel Del Valle is a resident of Antelope, California.

31.     Mr. Del Valle owns a 2013 Chevrolet Avalanche, equipped with a Generation IV Vortec 5300 Engine.   Mr. Del Valle purchased his Avalanche in February 2016 with 40,000 miles from Peterson Chevrolet Buick Cadillac, located at 12300 West Fairview Ave, Boise, Idaho 83713.

32.     GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Del Valle before he purchased his Avalanche, despite GM's knowledge of the defect, and Mr. Del Valle, therefore, purchased his Avalanche with the incorrect understanding that it would be a reliable vehicle.

**5.     Indiana**

33.     Gail B. Lannom is a resident of Marion, Illinois.

34.     Ms. Lannom owns a 2012 Chevrolet Tahoe, equipped with a Generation IV Vortec 5300 Engine.  Ms. Lannom purchased her Tahoe in January 2015 from Expressway Jeep in Mt. Vernon, Indiana.

35.     GM failed to disclose the Low-Tension Oil Ring Defect to Ms. Lannom before she purchased her Tahoe, despite GM's knowledge of the defect, and Ms. Lannom, therefore, purchased her Tahoe with the incorrect understanding that it would be a reliable vehicle.

**6.     Iowa**

36.     Bradley K. Zierke is a resident of Elmore, Minnesota.

7

37.     Mr. Zierke owns a 2012 Chevrolet Avalanche, equipped with a Generation IV Vortec 5300 Engine.  Mr. Zierke purchased his Avalanche in 2011 new from Okoboji Chevrolet in Spirit Lake, Iowa.

38.     GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Zierke before he purchased his Avalanche, despite GM's knowledge of the defect, and Mr. Zierke, therefore, purchased his Avalanche with the incorrect understanding that it would be a reliable vehicle.

**7.     Minnesota**

39.     Ross Dahl is a resident of Willmar, Minnesota.

40.     Mr. Dahl owns a 2010 Chevrolet Silverado, equipped with a Generation IV Vortec 5300 Engine.  Mr. Dahl purchased his Silverado in 2010 new from Davis Motors in Litchfield, Minnesota.

41.     GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Dahl before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Dahl, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

42.     Drew Peterson is a resident of Vernon Center, Minnesota.

43.     Mr. Peterson owns a 2013 Chevrolet Silverado, equipped with a Generation IV Vortec 5300 Engine.  Mr. Peterson purchased his Silverado in December 2012 new from Mankato Motors in Mankato, Minnesota.

44.     GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Peterson before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Peterson, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**8.     New Mexico**

45.     Barbara Molina is a resident of Seboyeta, New Mexico.

46.     Ms. Molina owns a 2012 Chevrolet Avalanche, equipped with a Generation IV Vortec 5300 Engine.   Ms. Molina purchased her Avalanche used with 2,334 miles from Galles Chevrolet, located at 1601 Lomas Boulevard, Albuquerque, New Mexico 87102.

47.     GM failed to disclose the Low-Tension Oil Ring Defect to Ms. Molina before she purchased her Avalanche, despite GM's knowledge of the defect, and Ms. Molina, therefore, purchased her Avalanche with the incorrect understanding that it would be a reliable vehicle.

**9.     North Carolina**

48.     Steven Ehrke is a resident of Spring Hill, Florida.

49.     Mr. Ehrke owns a 2013 Chevrolet Silverado, equipped with a Generation IV Vortec 5300 Engine.  Mr. Ehrke purchased his Silverado used with 16,844 miles on it in February 2016 from Reed Lallier Chevrolet in Fayetteville, North Carolina.

50.     GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Ehrke before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Ehrke, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**10.     North Dakota**

51.     Bill Mauch is a resident of Mooreton, North Dakota.

52.     Mr. Mauch owns a 2011 Chevrolet Silverado, equipped with a Generation IV Vortec 5300 Engine.  Mr. Mauch purchased his Silverado in 2013 used from Smith Motors in Wahpeton, North Dakota.

53.     GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Mauch before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Mauch, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**11.     Ohio**

54.     Thomas Gulling is a resident of Newton Falls, Ohio.

55.     Mr. Gulling owns a 2013 Chevrolet Silverado 1500, equipped with a Generation IV Vortec 5300 Engine.  Mr. Gulling purchased his Silverado from Doug Chevrolet in Akron, Ohio.

56.     GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Gulling before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Gulling, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

57.     Ronald Jones is a resident of Newton Falls, Ohio.

9

58.     Mr. Jones owns a 2013 Chevrolet Silverado 1500, equipped with a Generation IV Vortec 5300 Engine. Mr. Jones purchased his Silverado from Spitzer Chevrolet Lordstown in North Jackson, Ohio.

59.     GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Gulling before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Gulling, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**12.     Pennsylvania**

60.     John Graziano is a resident of Lake Ariel, Pennsylvania.

61.     Mr. Graziano owns a 2012 Chevrolet Silverado, equipped with a Generation IV Vortec 5300 Engine.  Mr. Graziano purchased his Silverado new in December 2011 from Reedman Toll Chevrolet in Philadelphia, Pennsylvania.

62.     GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Graziano before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Graziano, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**13.     South Carolina**

63.     Monteville Sloan, Jr. is a resident of Novato, California.

64.     Mr. Sloan owns a 2013 Chevrolet Silverado, equipped with a Generation IV Vortec 5300 Engine.  Mr. Sloan purchased his Silverado used with 9,100 miles from Master Chevrolet Cadillac in Aiken, South Carolina in August 2014. He then moved to Novato, California in April 2015.

65.     GM failed to disclose the Low-Tension Oil Ring Defect to Mr. Sloan before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Sloan, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**B.     Defendant**

66.     General Motors LLC ("GM") is a Delaware limited liability company, with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of Delaware and Michigan.  The sole member and owner of General Motors LLC is General Motors Holding LLC. General Motors Holdings LLC is a Delaware limited liability company with its principal place of

business in the State of Michigan.  The sole member and owner of General Motors Holdings LLC is General Motors Company, which is a Delaware corporation, with its principal place of business in the State of Michigan, and is a citizen of Delaware and Michigan.

## IV.   FACTUAL ALLEGATIONS

### A.   Introduction and Background

67.     Beginning with certain model year 2000 vehicles, Old GM introduced its Vortec 5300 engines.  The Vortec 5300 was met with anticipation and fanfare due to its close resemblance to the adored 327ci of the 1960s, which was best known as the powerplant in the Corvette Stingray.

68.     Old GM faced regulatory pressure to increase its fuel economy standards.  In December 2007, Congress passed the Energy Independence and Security Act of 2007, which increased fuel economy standards by forty percent by 2020.[3]

69.     For certain model year 2007 vehicles, Old GM introduced its Generation IV Vortec 5300 Engines.  These engines included Low-Tension Oil Rings.

70.     The Generation IV Vortec 5300 Engines suffer from excessive oil consumption and the resulting internal component damage caused by inadequate lubricity levels.  This excessive oil consumption problem negates any minor increase in performance associated with those engines.

71.     Old GM continued selling vehicles equipped with the Generation IV Vortec 5300 Engines through 2009.

72.     On June 8, 2009, Old GM filed for protection under Chapter 11 of the United States Bankruptcy Code.

73.     Defendant General Motors LLC ("GM") acquired the assets of Old GM and emerged from bankruptcy on July 10, 2009.  Defendant GM continued manufacturing and selling vehicles under the GMC and Chevrolet brands.

74.     For model years 2010-2013, GM manufactured and sold the Class Vehicles – each of which came equipped with the defective Generation IV Vortec 5300 Engine.

---

[3] *See* "Fact Sheet: Energy Independence and Security Act of 2007" at https://georgewbush-whitehouse.archives.gov/news/releases/2007/12/20071219-1.html

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      The Class Vehicles Suffer from Excessive Oil Consumption.**

      **1.      The Low-Tension Oil Rings in the Class Vehicles Lead to Oil Loss and Engine Damage.**

75.     GM defied decades of engineering logic when it manufactured and sold Generation IV Vortec 5300 Engines featuring the Low-Tension Oil Rings.

76.     The goal and purpose of the Low-Tension Oil Rings was to increase engine performance by reducing friction between the oil rings and the walls of the cylinder, which was meant to produce a corresponding increase in horsepower and torque.  The actual result, however, was that the oil rings were no longer able to serve their purpose of keeping oil in the crankcase and out of the combustion chamber.

77.     In the Generation IV Vortec 5300 Engines, as is normal in automobile engines, pistons move vigorously up and down inside of cylinders, as shown below.



78.     In order for the engine to run effectively and without causing engine damage, such as heat and friction wear, the pistons and cylinders require a thin film of oil between the opposing metal surfaces.  The oil reduces friction and heat, prevents surface scarring, and helps the moving components slide freely past each other.

79.     Oil, however, is not supposed to travel around the pistons and into the combustion chambers at the top of the cylinders.  If oil reaches the combustion chamber it will be burned during an engine's power stroke, thereby reducing the quantity of oil in the vehicle, reducing engine lubricity, and increasing the risk of engine damage.

CLASS ACTION COMPLAINT

80.     To prevent oil from traveling around the pistons and into the combustion chamber, pistons are fitted with oil control rings, as shown below.



81.     Unfortunately for purchasers or lessees of the Class Vehicles, the Low-Tension Oil Rings that GM installed in the Generation IV Vortec 5300 Engines failed to achieve their intended purpose of keeping oil in the crankcase and out of the combustion chamber.  Indeed, the Low-Tension Oil Rings were designed to have reduced tension, and were thus intended to press against the cylinder wall with less force than regular tension rings so as to reduce friction.

82.     As a result of this reduced tension, within the Generation IV Vortec 5300 Engines, an excessive amount of oil creeps past the pistons and the oil rings, and migrates into the combustion chamber, where it is consumed during the combustion process.  This causes excessive oil loss, inadequate lubricity, and the resultant wear and failure of the internal moving components of the Generation IV Vortec 5300 Engines.

83.     When GM introduced its fifth-generation Vortec 5300 engines for its model year 2014 vehicles, GM remedied the oil loss problem, and the resulting lubricity-related wear and component failure, by abandoning its Low-Tension Oil Ring debacle and reverting back, on a going-forward basis, to standard tension oil rings as part of that engine overhaul and redesign.  GM's gamble on low-tension oil rings did not pay off, and owners and lessees of the Class Vehicles suffered economic injury as a result.

**2.      GM's Oil Life Monitoring System Exacerbates the Oil Loss and Engine Damage Problems Caused by the Low-Tension Oil Rings.**

84.     GM's Oil Life Monitoring System, installed in each of the Class Vehicles, exacerbates the oil loss and engine damage problems caused by the Low-Tension Oil Ring Defect due to the failure

of that system to advise drivers of a decreased oil level in their Class Vehicle even at a critically low levels.

85.     The Oil Life Monitoring System alerts the driver to the estimated percentage of oil life left before an oil change is required.  With respect to the Oil Life Monitoring System, "oil life" means the quality of the engine oil, *not* the oil level.  The system uses varying factors to estimate oil health, such as heat cycles and engine running conditions.  The Oil Life Monitoring System does not, however, alert drivers to low oil levels or oil loss, thereby exacerbating the Low-Tension Piston Ring Defect by failing to alert owners or lessees of their Class Vehicles' oil consumption until it is much too late.

**C.     The Low-Tension Oil Ring Defect Within the Class Vehicles Has Caused Excessive Oil Loss and Engine Damage.**

86.     The Low-Tension Oil Ring Defect in the Class Vehicles results in excessive oil consumption and loss of lubricity, leading to increased friction and, thus, engine damage.  That means that each Class Vehicle has suffered, and will continue to suffer, internal component wear.

87.     The internal engine components subject to wear include:  pistons, cylinder walls, rings, valves, valve guides, valve stem seals, lifters, push rods, camshafts, rockers, bearings, piston rods, wrist pins, crankshafts, and timing chain components.

88.     Due to the Low-Tension Oil Ring Defect, all of the Class Vehicles have suffered, and will continue to suffer, metal-on-metal friction and heat levels that far exceed GM's specifications, thereby causing engine damage.

89.     The defect-induced excessive friction and heat expansion has worn, and will continue to wear, the internal steel components, sending steel shavings into the crankcase.  The steel shavings travel through the oil passages and inevitably become lodged in tight spaces, where they cut into component surfaces moving against them.

90.     Once the internal components are scarred and/or worn, they cannot be repaired and must be replaced.  The friction and heat expansion damage caused by the Low-Tension Oil Ring Defect is irreversible and inevitable for all Class Vehicles, thereby damaging Plaintiffs and the other Class members.

**C.     The Low-Tension Oil Ring Defect Within the Class Vehicles Presents an Unreasonable Safety Risk.**

91.     As GM acknowledges, low oil conditions, such as those that can result from the Low-Tension Oil Ring Defect, present dangerous safety hazards to the driver, other passengers of the Class Vehicles, and the public.

92.     With insufficient oil and lubricity, the engines in the Class Vehicles will overheat and potentially catch fire.  For this reason, GM warns in the manuals for the Class Vehicles:  "Do not keep driving if the oil pressure is low.  The engine can become so hot that it catches fire.  Someone could be burned."

93.     Low oil conditions are also unsafe because, if the engine experiences enough damage, the Class Vehicles' engines will seize and the Class Vehicles will shut down unexpectedly, which could cause an accident or leave drivers and passengers stranded in an unsafe situation.  GM also warns against this possibility in the manuals for the Class Vehicles when it states:  "If you drive the vehicle while the engine oil pressure is low, severe engine damage may occur.  If a low oil pressure warning appears on the Driver Information Center (DIC), stop the vehicle as soon as possible."

**D.     GM's Knowledge of the Low-Tension Oil Ring Defect**

94.     Low-Tension Oil Rings are a standard component of engines built for racing competition because they can help provide greater horsepower, but such engines also consume excessive amounts of oil due to the Low-Tension Oil Rings.[4]

95.     GM's awareness of the Low-Tension Oil Ring Defect is evident from the fact that GM abandoned its low-tension oil ring experiment in its redesigned Generation V Vortec 5300 Engines. GM's re-design of the defective Generation IV Vortec 5300 engines began as early as May 2011.[5]

96.     Further, as shown below, excessive oil loss has been a common complaint among drivers of vehicles fitted with the Generation IV Vortec 5300 engines, dating back to vehicles

---

[4] *See* David Reher, *Tech Talk #45 – Where to Find "Free" Horsepower*, REHER MORRISON RACING ENGINES, April 11, 2013, http://rehermorrison.com/tech-talk-45-where-to-find-free-horsepower/

[5] Mike Levine, *Inside GM's State-of-the-Art Powertrain Engineering Center*, PICKUPTRUCKS.COM, May 17, 2011, http://news.pickuptrucks.com/2011/05/inside-gms-state-of-the-art-powertrain-engineering-center-.html.

manufactured by Old GM.  For example, at www.carcomplaints.com, there are posts from as early as June of 2008 regarding excessive oil consumption problems with the 2007 Chevrolet Silverado with the Generation IV Vortec 5300 engine.

97.     Knowledge derived from complaints received by Old GM can be imputed to Defendant GM, at least insofar as that knowledge was in the possession of an Old GM employee who continued employment at New GM or contained in a file transferred from Old GM to New GM. *See In re Motors Liquidation Co.*, 541 B.R. 104, 108 (Bankr. S.D.N.Y. 2015). As recognized by the Second Circuit, Defendant GM immediately took over the business of Old GM, without any "reorganization" as traditionally takes place in the case of a bankruptcy. *Elliot v. GM LLC*, 829 F.3d 135, 145-46 (2d Cir. 2016).  Thus, upon information and belief, Defendant GM, at its inception, also had knowledge of the Low-Tension Oil Ring Defect from complaints from drivers of vehicles with the Generation IV Vortec 5300 engines.

98.     Moreover, as discussed further below, complaints regarding excessive oil consumption in vehicles with the Generation IV Vortec 5300 engines continued following the commencement of Defendant GM's business in 2009.

99.     Faced with the fact that vehicles with Generation IV Vortec 5300 engines were suffering excessive oil and engine damage due to the Low-Tension Oil Ring Defect, GM issued multiple Technical Service Bulletins addressing the oil consumption issue ("TSBs").

100.     The TSBs stated that the oil loss in the vehicles with Generation IV Vortec 5300 engines could be caused by two conditions: (a) oil pulled through the positive crankcase ventilation system; or (b) oil spray that is discharged from the Advanced Fuel Management system's pressure relief valve within the crankcase.  The TSBs suggested fixes for each of these issues, but recognized that neither fix may solve the oil loss problem.  ***Rather, the TSBs explained that the ultimate fix for the oil consumption problem was the replacement of the piston assemblies***.[6]  Upon information and belief,

---

[6] *See* TSB No. 10-06-01-008G: Engine Oil Consumption on Aluminum Block/Iron Block Engines with Active Fuel Management.

16

the first version of these TSBs was released on August 24, 2010.[7] These TSBs continued to be issued through, at least, November 26, 2014 – thereby covering the entirety of the Class Period.[8]

101. Despite this knowledge, GM took no steps to remedy this issue, leaving Plaintiffs and the other Class Members with knowingly defective Class Vehicles.

**E. Consumers Repeatedly Complained About Excessive Oil Consumption and Engine Damage in the Class Vehicles.**

102. Numerous complaints have been filed with the National Highway Traffic Safety Administration ("NHTSA") regarding excessive oil loss and resultant engine damage in the Class Vehicles. By way of example:

- On September 14, 2014, a consumer reported an excessive oil consumption problem with a 2010 Chevrolet Silverado 1500:

  > Excessive oil consumption caused spark plugs to prematurely fail causing the engine to misfire and run rough. . . . Initial repairs did not correct the oil consumption problem (1/2 quart burned in approximately 1,000 – 2,000 miles) . . . . I was told this was "normal" according to General Motors' standards.

  NHTSA ID number: 10633824.

- On March 31, 2015, a consumer reported an excessive oil consumption problem with a 2011 Chevrolet Avalanche:

  > At 40000 we noticed we were having issues with my Avalanche burning oil. When we asked the tech at Chevy he told me that was normal for the newer engines to burn oil, at 130,000 miles we started having problems with the sparkplug fouling out . . . . At 180,000 mile and only four years old we had to replace the engine after replacing the sparkplug and wire 3 times. . . .

  NHTSA ID Number: 10852819.

- On January 12, 2016, a consumer reported an excessive oil consumption problem with a 2010 Chevrolet Suburban: "The vehicle is consuming excessive amounts of engine oil and fouling spark plugs." NHTSA ID Number: 10819877.

---

[7] *See* http://www.gm-trucks.com/forums/topic/119095-update/

[8] *See* http://gm.oemdtc.com/683/engine-oil-consumption-engine-oil-consumption-on-aluminum-blockiron-block-engines-with-active-fuel-management-afm-2007-2015-cadillac-chevrolet-gmc-pontiac/2.

- On February 4, 2016, a consumer reported an excessive oil consumption problem with a 2011 Chevrolet Suburban: "Excessive oil consumption that GM refuses to fix under warranty."  NHTSA ID Number: 10826046.

103.   Several Class Vehicle owners have also posted online complaints about excessive oil consumption and resultant engine damage to their Generation IV Vortec 5300 Engines.  For example:

- The owner of a 2011 GMC Sierra 1500 wrote: "Just met with GM's District After Sales Manager and my GMC dealer's Service Manager regarding excessive oil consumption by my GMC Sierra 1500 4-WD Crew Cab with 37000 miles.  As you might guess, nothing accomplished. . . . Early 2012, I noticed the dipstick was dry and took truck to dealer for oil change. Closely monitored oil use thereafter and discovered need to topoff with more than a quart every 200 miles during normal driving . . . This should not be considered normal!"[9]

- The owner of a 2010 Chevrolet Silverado wrote: "Truck has been in and out of the dealership 18 times regarding ticking in the motor, excessive oil consumption and blue smoke on start up."[10]

- The owner of a 2011 Chevrolet Tahoe wrote: "My 2009 Chevy Tahoe started consuming a lot of oil at about 68,000 miles. It uses up about 2 + quarts every 2000 miles. Chevy said that's normal . . . really? Well when you don't want to take responsibility for your design mistakes than we just call it normal and it goes away and we don't have to fix it."[11]

104.   Consumer complaints about excessive oil consumption and resultant engine damage in the Generation IV Vortec 5300 Engines long predated the Class Vehicles.  Indeed, numerous consumer complaints were filed with NHTSA regarding excessive oil loss and resultant engine damage within pre-2010 vehicles manufactured by Old GM and equipped with the Generation IV Vortec 5300 Engines.  By way of example:

- A consumer reported an excessive oil consumption problem with a 2007 Chevrolet Silverado 1500: "The contact stated that the engine was consuming excessive oil. The vehicle was taken to the dealer, who stated that the vehicle was operating to standard and that it was normal for a vehicle to burn oil between maintenance. The manufacturer was made aware of the failure. The vehicle was not repaired. . . . The consumer stated the dealer stated this is a

---

[9] Consumer Review of 2011 GMC Sierra 1500, available at http://www.carcomplaints.com/GMC/Sierra_1500/2011/engine/excessive_oil_consumption.shtml

[10] Consumer Review of 2010 Chevrolet Silverado, available at http://www.carcomplaints.com/Chevrolet/Silverado/2010/engine/excessive_oil_consumption.shtml

[11] Consumer review of 2009 Chevrolet Tahoe, available at http://www.carcomplaints.com/Chevrolet/Tahoe/2009/engine/excessive_oil_consumption.shtml

18

malfunction with the oil consumption. The manufacturer denies any malfunctions." NHTSA ID Number: 10498188.

- A consumer reported an excessive oil consumption problem with a 2007 GMC Yukon: "The contact stated that the vehicle would continue to drive sluggish and consume excessive amounts of oil. The vehicle was not repaired. Manufacturer was made aware of the failure." NHTSA ID Number: 10854334.

105.    Several owners of Old GM-manufactured vehicles with the Generation IV Vortec 5300 Engines have also posted online complaints about excessive oil consumption with the Generation IV Vortec 5300 Engines.

106.    For example, on www.carcomplaints.com, there are 68 complaints regarding excessive oil consumption from owners of 2007 Chevrolet Silverados.[12] These complaints include:

- "I started to have problems with my new 2007 Chevy Silverado in 2010 at 45,000 miles. I had multiple fixes attempted but it continued to burn oil. They performed a repair consisting of changing the valves, pistons, and rings which cost $1800. . . . The truck is now at 164,000 miles and I am burning through a quart of oil a week."

- "DO NOT purchase a 2007 Chevrolet Silverado unless you want to spend more time putting oil in the engine than you do driving the vehicle itself. I love Chevrolet Silverados but I am extremely disappointed with this issue because there isn't a fix."

- "The 5.3 uses a quart of oil every 1000 miles since it was new."

- "From day one this truck has burned about a quart an oil change, and no, this isn't normal. Traction control problems, engine reduced power, this problem cripples the vehicle."

107.    Of particular significance with regards to these NHTSA and online consumer complaints is that they focus on the *consequence* of the Low-Tension Oil Ring Defect – the excessive oil consumption and resultant engine damage – but they do not focus on the *cause* of the problem, namely the defective low-tension oil rings that GM installed in each of the Class Vehicles that directly resulted in the excessive oil consumption, lubricity reduction, and engine damage.

108.    These complaints readily reveal that GM was keenly aware of the Low-Tension Oil Ring problem in the Class Vehicles.  Indeed, GM has known about this defect in its Generation IV

---

[12] Consumer Reviews of 2007 Chevrolet Silverado, available at:
http://www.carcomplaints.com/Chevrolet/Silverado/2007/engine/excessive_oil_consumption.shtml

Vortec 5300 Engines before, during, and after it sold and leased the Class Vehicles to Plaintiffs and the other Class members.

**F.     GM Trumpeted the Performance of the Generation IV Vortec 5300 Engines and Continuously Proclaimed That the Class Vehicles Were Dependable and of the Highest Quality, Concealing and Omitting the Low-Tension Oil Ring Defect.**

109.    GM extensively advertised the performance benefits of the Generation IV Vortec 5300 Engines within the Class Vehicles.  At all times relevant to this action, GM omitted and/or concealed the Low-Tension Oil Ring defect.  Indeed, at no point during the time period relevant to this action did GM inform buyers and/or lessees of the Class Vehicles that the Generation IV Vortec 5300 Engines in the Class Vehicles suffered from the Low-Tension Oil Ring Defect that led to significant oil consumption and resultant engine damage.

110.    Likewise, GM repeatedly told consumers that the Class Vehicles were dependable, long-lasting, and of the highest quality.  In so doing, GM led consumers to believe that the Class Vehicles would be free from defects that result in excessive oil loss and engine damage.

111.    In its brochures and advertisements for the Class Vehicles, GM consistently touted the performance benefits of the Generation IV Vortec 5300 Engines.

112.    For example, GM's brochure for the 2013 Chevrolet Silverado advertises: "THE MOST POWERFUL V8 ENGINES IN SILVERADO HISTORY" and claims that the 5.3L engine "offers V8 fuel efficiency that's unsurpassed in its class."[13]

113.    Similarly, GM's brochure for the 2013 Chevrolet Tahoe advertises: "Great Power Without Sacrifice," and "fuel economy its competitors can't beat."[14]

114.    Likewise, GM's brochure for the 2010 Chevrolet Colorado advertises that: "Chevy Colorado is up to the challenge with reliability and strength that delivers on a dollar. . . . The available

---

[13] 2013 Chevrolet Silverado brochure, available at
https://www.chevrolet.com/content/dam/Chevrolet/northamerica/usa/nscwebsite/en/Home/Help%20Center/Download%20a%20Brochure/02_PDFs/MY13%20Silverado%201500%20eBrochure.pdf
[14] 2013 Chevrolet Tahoe brochure, available at
https://www.chevrolet.com/content/dam/Chevrolet/northamerica/usa/nscwebsite/en/Home/Help%20Center/Download%20a%20Brochure/02_PDFs/MY13%20Tahoe-Suburban%20eBrochure.pdf

CLASS ACTION COMPLAINT

5.3L V8 engine pumps out 300 horsepower and has better fuel economy than Dodge Dakota. . . . Most important, every Colorado has the endurance and dependability you expect from a Chevy truck."[15]

115. GM's brochure for the 2012 GMC Sierra advertises that: "[T]rue craftsmanship is timeless. . . . That's the same attitude that's built into every Sierra. It's why Sierra offers you over 300 horsepower and 22 EPA-estimated highway miles per gallon in the same engine – V-8 fuel economy that no other competitor can beat. It's why Sierra offers advanced technology like Active Fuel Management, maximizing your engine's performance to give you power and efficiency as you need it. . . .When you need to rely on something to keep your life on course, there is no substitute for professional grade engineering. GMC Sierra."[16]

116. GM's brochure for the 2011 Chevrolet Silverado states, "Silverado – the most dependable, long-lasting full size pickups on the road." It goes on to say, "There are three stages of safety. Silverado takes every one as seriously as you do."[17]

117. On August 29, 2011, GM's website advertised: "Chevrolet provides consumers with fuel-efficient, safe and reliable vehicles that deliver high quality, expressive design, spirited performance and value."[18]

118. One online ad for "GM certified" used vehicles that ran through April 5, 2010 stated that "GM certified means no worries."

119. In April 2010, General Motors Company Chairman and CEO Ed Whitacre proclaimed in a commercial that GM was "designing, building, and selling the best cars in the world."

120. A radio ad that ran during the time period relevant to this action stated that "[a]t GM, building quality cars is the most important thing we can do."

---

[15] 2010 Chevrolet Colorado brochure, available at http://www.auto-brochures.com/makes/Chevrolet/Colorado/Chevrolet_US%20Colorado_2010.pdf

[16] 2012 GMC Sierra brochure, available at http://www.auto-brochures.com/makes/GMC/Sierra/GMC_US%20Sierra_2012.pdf

[17] https://www.auto-brochures.com/makes/Chevrolet/HHR/Chevrolet_US%20HHR_2010.pdf.

[18] https://media.gm.com/media/us/en/gm/news.detail/content/Pages/news/us/en/2014/Jul/0731-mpg.

121.    On November 10, 2010, GM published a video that told consumers that GM actually prevents any defects from reaching consumers.  The video, entitled "Andy Danko: The White Glove Quality Check," explains that there are "quality processes in the plant that prevent any defects from getting out."  The video also promoted the ideal that, when a customer buys a GM vehicle, they "drive it down the road and they never go back to the dealer."[19]

122.    No GM brochure, advertisement, or other marketing materials for or relating to the Class vehicles alerted customers to the Low-Tension Oil Ring Defect and the problems arising therefrom. Indeed, all such materials omitted the problem in all respects.

123.    Moreover, in its public statements, GM consistently proclaimed that the Class Vehicles were of the highest quality.

124.    In its 2010 Annual Report, GM told consumers that it built the world's best vehicles:

> We truly are building a new GM, from the inside out.  Our vision is clear: to design, build, and sell the world's best vehicles . . . .  Our plan is to steadily invest in creating world-class vehicles, which will continuously drive our cycle of great design, high quality and higher profitability.[20]

125.    Likewise, in its 2010 Annual Report, GM represented that it had a "world-class lineup" of vehicles.[21]

126.    In a "Letter to Stockholders" contained in its 2011 Annual Report, GM noted that its brand had grown in value and that it designed the "World's Best Vehicles":

> Design, Build and Sell the World's Best Vehicles

> This pillar is intended to keep the customer at the center of everything we do, and success is pretty easy to define. It means creating vehicles that people desire, value and are proud to own. When we get this right, it transforms our reputation and the company's bottom line.[22]

127.    In its 2012 Annual Report, GM boasted that:

---

[19] https://www.youtube.com/watch?v=JRFO8UzoNho&list=UUxN-Csvy_9sveql5HJviDjA.

[20] GM 2010 Annual Report at 2.

[21] GM 2010 Annual Report at 12-13.

[22] GM  2011 Annual Report at 2

CLASS ACTION COMPLAINT

What is immutable is our focus on the customer, which requires us to go from "good" today to "great" in everything we do, including product design, initial quality, durability, and service after the sale.[23]

128.    In its 2012 Annual Report, GM represented that product quality was a key focus:

Product quality and long-term durability are two other areas that demand our unrelenting attention, even though we are doing well on key measures.[24]

129.    GM consistently promoted all its vehicles as reliable, and presented itself as a responsible manufacturer that stands behind GM-branded vehicles after they are sold.

130.    GM knowingly omitted and concealed information about material defects in the Class Vehicles from the driving public, including Plaintiffs and the other Class members, thereby allowing unsuspecting vehicle owners and lessees to continue unknowingly driving defective vehicles that were of diminished value and bound to cause costly problems.

**G.     Pre-Filing Notice**

131.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranties, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM never responded to this letter.

132.    Further, in accordance with California Civil Code Section 1782, Plaintiffs' counsel sent a certified letter to GM on November 23, 2016, notifying GM of violations of the California Consumer Legal Remedies Act through its failure to disclose the Low-Tension Oil Ring Defect.  The letter was sent on behalf of Plaintiff Siqueiros and the other members of the California Class.

133.    By a letter dated November 29, 2016, GM acknowledged receipt of the November 23, 2016 letter, and assigned Plaintiff Siqueiros's case file to its Early Resolution Program.   In its November 29, 2016 letter, GM did not commit to provide any remedy for the Low-Tension Oil Defect within Plaintiff Siqueiros's Class Vehicle, did not state that it has taken or will take any actions to identify or notify consumers similarly situated to Plaintiff Siqueiros, and did not commit to ceasing

---

[23] GM 2012 Annual Report at 12.

[24] GM 2012 Annual Report at 10.

from engaging in the conduct complained of in Plaintiffs' November 23, 2016 letter.  Indeed, in its November 29, 2016 letter, GM did not even acknowledge the Low-Tension Oil Ring Defect.

## V.     TOLLING OF THE STATUTES OF LIMITATION

**A.     Discovery Rule Tolling**

134.    Plaintiffs could not have discovered through the exercise of reasonable diligence that their Class Vehicles were defective within the time period of any applicable statutes of limitation.

135.    Among other things, neither Plaintiffs nor the other Class members knew or could have known that the Class Vehicles are equipped with Generation IV Vortec 5300 Engines with the Low-Tension Oil Ring Defect, which causes those engines to consume oil at an abnormally high rate and to sustain engine damage resulting therefrom.

**B.     Fraudulent Concealment Tolling**

136.    Throughout the time period relevant to this action, GM concealed from and failed to disclose to Plaintiffs and the other Class members vital information about the Low-Tension Oil Ring Defect described herein.

137.    Indeed, GM kept Plaintiffs and the other Class members ignorant of vital information essential to the pursuit of their claims.  As a result, neither Plaintiffs nor the other Class members could have discovered the defect, even upon reasonable exercise of diligence.

138.    Specifically, throughout the Class Period, GM has been aware that the Generation IV Vortec 5300 Engines it designed, manufactured, and installed in the Class Vehicles contained the Low-Tension Oil Ring Defect, resulting in excessive oil loss and engine damage.

139.    Despite its knowledge of the defect, GM failed to disclose and concealed, and continues to conceal, this critical information from Plaintiffs and the other Class members, even though, at any point in time, it could have done so through individual correspondence, media release, or by other means.

140.    Plaintiffs and the other Class members justifiably relied on GM to disclose the Low-Tension Oil Ring Defect in the Class Vehicles that they purchased or leased, because that defect was hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class members.

141.   Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class members have sustained as a result of the defect, by virtue of the fraudulent concealment doctrine.

**C.   Estoppel**

142.   GM was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the defective Generation IV Vortec 5300 Engines.

143.   GM knowingly concealed the true nature, quality, and character of the defective Generation IV Vortec 5300 Engines from consumers.

144.   Based on the foregoing, GM is estopped from relying on any statutes of limitations in defense of this action.

## VI.   CLASS ACTION ALLEGATIONS

145.   Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

146.   Plaintiffs seek to represent a class ("the Nationwide Class") defined as:

All current and former owner or lessees of a Class Vehicle (as defined herein) that was purchased in the United States.

147.   Plaintiffs also respectively seek to represent the following statewide classes ("the Statewide Classes") defined as follows:

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of California ("the California Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Alabama ("the Alabama Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Florida ("the Florida Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Idaho ("the Idaho Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Indiana ("the Indiana Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Iowa ("the Iowa Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Minnesota ("the Minnesota Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of New Mexico ("the New Mexico Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of North Carolina ("the North Carolina Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of North Dakota ("the North Dakota Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Ohio ("the Ohio Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Pennsylvania ("the Pennsylvania Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of South Carolina ("the South Carolina Class").

148.    Excluded from each of the Nationwide and Statewide Classes are Defendant General Motors LLC and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case.  Plaintiffs reserve the right to modify or amend these Nationwide and Statewide Class definitions, as appropriate, during the course of this litigation.

149.    This action has been brought and may properly be maintained on behalf of the Nationwide and Statewide Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

150.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Nationwide and Statewide Classes are so numerous and geographically dispersed that individual joinder of all class members is impracticable.  While Plaintiffs are informed and believe that there are not less than two million members of the Nationwide and Statewide Classes, the precise number of Nationwide and Statewide Class is unknown to Plaintiffs, but may be ascertained from GM's books and records.  Nationwide and Statewide Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

151.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**   This action involves common questions of law and fact, which predominate over any questions affecting individual Nationwide and Statewide Class members, including, without limitation:

a.   whether GM engaged in the conduct alleged herein;

b.   whether GM's alleged conduct violates applicable law;

c.   whether GM designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

d.   whether GM misled Nationwide and Statewide Class members about the quality of the Generation IV Vortec 5300 Engines in the Class Vehicles;

e.   whether the Generation IV Vortec 5300 Engines contain the Low-Tension Oil Ring Defect alleged herein;

f.   whether GM had actual or imputed knowledge about the alleged defect but failed to disclose it to Plaintiffs and the other Nationwide and Statewide Class members;

g.   whether GM's omissions and concealment regarding the quality of the Class Vehicles were likely to deceive Statewide Class members in violation of the state consumer protection statutes alleged herein;

h.   whether GM breached its express warranty to the Nationwide and Statewide Class members with respect to the Class Vehicles;

i.   whether Nationwide and Statewide Class members overpaid for their Class Vehicles as a result of the defect alleged herein;

j.   whether Nationwide and Statewide Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

k.   the amount and nature of relief to be awarded to Plaintiffs and the other Nationwide and Statewide Class members.

152.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**   Plaintiffs' claims are typical of the other Nationwide and Statewide Class members' claims because Plaintiffs and the Nationwide

and Statewide Class members purchased or leased Class Vehicles that contain defective Generation IV Vortec 5300 Engines.  Neither Plaintiffs nor the other Nationwide and Statewide Class Members would have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines.  Plaintiffs and the other Nationwide and Statewide Class members suffered damages as a direct proximate result of the same wrongful practices in which GM engaged.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Nationwide and Statewide Class members.

153.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Nationwide and Statewide Classes that they respectively seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  The Nationwide and Statewide Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

154.   **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**  GM has acted or refused to act on grounds generally applicable to Plaintiffs and the other Nationwide and Statewide Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Nationwide and Statewide Class members as a whole.

155.   **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Nationwide and Statewide Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against GM, so it would be impracticable for the Nationwide and Statewide Class members to individually seek redress for GM's wrongful conduct.  Even if the Nationwide and Statewide Class members could afford litigation the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.   CLAIMS FOR RELIEF

**A.    Claim Brought on Behalf of the Nationwide Class**

### COUNT 1
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. §§ 2301, *et seq.*

156.    Plaintiffs repeat and reallege paragraphs 1-155 as if fully set forth herein.

157.    Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

158.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332(a) and (d).

159.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

160.    GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

161.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

162.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

163.    In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

> Warranty repairs, including towing, parts, and labor, will be made at no charge.

164.    GM's Limited Warranty is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

165.    With respect to Class members' purchases or leases of the Class Vehicles, the terms of GM's written warranty and implied warranty became part of the basis of the bargain between GM, on the one hand, and Plaintiffs and each of the other Class members, on the other.

166.    GM breached these warranties as described in more detail above.  Without limitation, the Class Vehicles are equipped with defective Generation IV Vortec 5300 Engines, which, as a result of the Low-Tension Oil Ring Defect, are designed so as to prematurely consume an abnormally large amount of oil, resulting in low oil levels, reduced lubricity, and engine damage.  The Low-Tension Oil Ring Defect and the problems arising therefrom are exacerbated by the defective Oil Life Monitoring System on each of the Class Vehicles that fails to advise drivers of a decreased oil level in their Class Vehicle until it is at a chronically low level.

167.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranties, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.  GM has not taken any measures to cure its warranty breaches to Plaintiffs and the other Class members.

168.    At the time of sale or lease of each Class Vehicle, GM knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs and the other Class members resort to an informal dispute resolution procedure and/or afford GM a reasonable opportunity to cure its breach of warranties is excused and thus deemed satisfied.

169. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy in this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

170. As a direct and proximate result of GM's breaches of its Limited Warranty and the implied warranty of merchantability, Plaintiffs and the other Class members have sustained damages in an amount to be determined at trial.

171. Plaintiffs, individually and on behalf of all the other Class members, seek all damages permitted by law, including the diminution in value of their vehicles, in an amount to be proven at trial.

**B.    Claims Brought on Behalf of the Statewide Classes**

**1.    Claims Brought on Behalf of the California Class**

**COUNT 2**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code. §§ 1750, *et seq.***

172. Plaintiff Siqueiros ("Plaintiff," for purposes of the California Class's claims) repeats and realleges Paragraphs 1-155 as if fully set forth herein.

173. Plaintiff brings this Count individually and on behalf of the other members of the California Class (the "Class," for purposes of this Count).

174. Plaintiff and the other Class members were deceived by GM's failure to disclose that the Class Vehicles share a common design defect in that they are fitted with defective engines that consume an excessive amount of oil, leading to engine damage.

175. GM engaged in unfair or deceptive acts or practices when, in the course of its business, it knowingly omitted material facts as to the characteristics and qualities of the Class Vehicles.

176. GM failed to disclose material information concerning the Class Vehicles that it had a duty to disclose.  GM had a duty to disclose the Low-Tension Oil Ring Defect because, as detailed above: (a) GM knew about the Low-Tension Oil Ring Defect, (b) GM had exclusive knowledge regarding the Low-Tension Oil Ring Defect not known to the general public, Plaintiff, or the other Class members; and (c) GM actively concealed material facts concerning the Low-Tension Oil Ring Defect from the general public, Plaintiff, and the other Class members.  As detailed above, the

CLASS ACTION COMPLAINT

information concerning the defect was known to GM at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

177.   GM intended for Plaintiff and the other Class members to rely on it to provide adequately designed and adequately manufactured automobiles, and to honestly and accurately reveal the problems described throughout this Complaint.

178.   GM intentionally failed or refused to disclose the Low-Tension Oil Ring Defect to consumers.

179.   GM's deceptive omissions were intended to induce Plaintiff and the other Class members to believe that the Class Vehicles were adequately designed and manufactured.

180.   GM's conduct constitutes unfair acts or practices as defined by the California Consumer Legal Remedies Act.

181.   Plaintiff and the other Class members have suffered injury in fact and actual damages resulting from GM's material omissions because they paid inflated purchase prices for the Class Vehicles.  Plaintiff and the other Class members, however, reserve any claim for damages under the CLRA and by this Complaint bring only an action for injunctive relief under the CLRA pursuant to § 1782(d) of the Act.

182.   In accordance with California Civil Code Section 1782, Plaintiffs' counsel sent a certified letter to GM on November 23, 2016, notifying GM of its § 1770 violations.  Pursuant to § 1782 of the Act, GM is hereby on notice of its particular § 1770 violations, and Plaintiffs' demands that GM rectify the problems associated with the actions detailed above and give notice to all affected consumers of GM's intent to so act.

183.   By a letter dated November 29, 2016, GM acknowledged receipt of the November 23, 2016 letter, and assigned Plaintiff Siqueiros's case file to its Early Resolution Program.  In its November 29, 2016 letter, GM did not commit to provide any remedy for the Low-Tension Oil Defect within Plaintiff Siqueiros's Class Vehicle, did not state that it has taken or will take any actions to identify or notify consumers similarly situated to Plaintiff Siqueiros, and did not commit to ceasing from engaging in the conduct complained of in Plaintiffs' letter.  Indeed, in its November 29, 2016

letter, GM did not even acknowledge the Low-Tension Oil Defect.  Accordingly, Plaintiff Siqueiros's participation in the Early Resolution Program would be futile.

184.    If GM fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, restitution, and disgorgement under the CLRA as appropriate under California Civil Code § 1780, pursuant to California Civil Code § 1782(d) ("Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages.").

185.    Pursuant to California Civil Code § 1780(d), attached hereto as Exhibit A is the affidavit showing that this action has been commenced in the proper forum.

**COUNT 3**
**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**FOR BREACH OF EXPRESS WARRANTY**
**Cal. Civ. Code §§ 1790, *et seq.***

186.    Plaintiff Siqueiros ("Plaintiff," for purposes of the California Class's claims) repeats and realleges Paragraphs 1-155 as if fully set forth herein.

187.    Plaintiff brings this Count individually and on behalf of the other members of the California Class (the "Class," for purposes of this Count).

188.    Plaintiff and the other Class members are "buyers" within the meaning of Cal. Civ. Code. § 1791.

189.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791.

190.    GM is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791.

191.    Plaintiff and the other Class members bought or leased Class Vehicles manufactured by GM.

192.    GM made an express warranty to Plaintiff and the other Class members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

193.   The Class Vehicles share a common design defect, in that they are equipped with Generation IV Vortec 5300 Engines, which have the Low-Tension Oil Ring Defect, causing the above-described excessive oil consumption, resulting in low oil levels, insufficient lubricity levels, and corresponding internal engine component damage.

194.   The Class Vehicles are covered by GM's express warranty.  The defect described herein substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiff and the other Class members.

195.   Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

196.   GM has had the opportunity to cure the defect in the Class Vehicles, but it has chosen not to do so.  Giving GM a chance to cure the defect is not practicable in this case and would serve only to delay this litigation, and is thus unnecessary.

197.   As a result of GM's breach of its express warranty, Plaintiff and the other Class members received goods with substantially impaired value.  Plaintiff and the other Class members have been damaged as a result of the diminished value of the Class Vehicles resulting from the Low-Tension Oil Ring Defect.

198.   Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their Class Vehicles.

199.   Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

**COUNT 4**
**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**FOR BREACH OF IMPLIED WARRANTY**
**Cal. Civ. Code §§ 1790, *et seq.***

200.    Plaintiff Siqueiros ("Plaintiff," for purposes of the California Class's claims) repeats and realleges Paragraphs 1-155 as if fully set forth herein.

201.    Plaintiff brings this Count individually and on behalf of the other members of the California Class (the "Class," for purposes of this Count).

202.    Plaintiff and the other Class members who purchased their Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code. § 1791.

203.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791.

204.    GM is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791.

205.    GM impliedly warranted to Plaintiff and the other members of the Class that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

206.    Cal. Civ. Code § 1791.1(a) states that: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

    (1)    Pass without objection in the trade under the contract description;

    (2)    Are fit for the ordinary purposes for which such goods are used;

    (3)    Are adequately contained, packaged, and labeled; and

    (4)    Conform to the promises or affirmations of fact made on the container or label.

207.    The Class Vehicles would not pass without objection in the automotive trade because they share a common design defect in that they are equipped with Generation IV Vortec 5300 Engines, which have the Low-Tension Oil Ring Defect, causing the above-described excessive oil consumption, resulting in low oil levels, insufficient lubricity levels, and corresponding internal engine component damage..

208.    Because of the Low-Tension Oil Ring Defect, the Class Vehicles are not fit for their ordinary purposes.

209.    The Class Vehicles were not adequately labeled because the labeling failed to disclose the defects described herein.

210.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

211.    GM has had the opportunity to cure the defect in the Class Vehicles, but it has chosen not to do so.  Giving GM a chance to cure the defect is not practicable in this case and would serve only to delay this litigation, and is thus unnecessary.

212.    As a result of GM's breach of its implied warranty, Plaintiff and the other Class members received goods with substantially impaired value.  Plaintiff and the other Class members have been damaged as a result of the diminished value of the Class Vehicles.

213.    Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

214.    Under Cal. Civ. Code § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

**COUNT 5**
**FRAUDULENT OMISSION**

215.    Plaintiff Siqueiros ("Plaintiff," for purposes of the California Class's claims) repeats and realleges Paragraphs 1-155 as if fully set forth herein.

216.    Plaintiff brings this Count individually and on behalf of the other members of the California Class ("Class," for purposes of this Count).

CLASS ACTION COMPLAINT

217.    GM was aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

218.    Having been aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Low-Tension Oil Ring Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

219.    GM did not disclose the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

220.    For the reasons set forth above, the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

221.    In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

222.    Had Plaintiff and the other members of the Class known of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

223.    Through its omissions regarding the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

224.    As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Low-Tension Oil Ring Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 6**
**UNJUST ENRICHMENT**

225.    Plaintiff Siqueiros ("Plaintiff," for purposes of the California Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

226.    Plaintiff brings this Count individually and on behalf of the other members of the California Class (the "Class," for purposes of this Count).

227.    GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

228.    GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

229.    It is inequitable and unconscionable for GM to retain these benefits.

230.    Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

231.    GM knowingly accepted the unjust benefits of its wrongful conduct.

232.    As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**COUNT 7**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, *et seq.***

233.    Plaintiff Siqueiros ("Plaintiff," for purposes of the California Class's claims) repeats and realleges paragraphs 1-232 as if fully set forth herein.

234.    Plaintiff brings this Count individually and on behalf of the other members of the California Class ("Class," for purposes of this Count).

235.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business acts or practices."

236.    GM's conduct violated multiple statutes and the common law, as alleged herein.

38

CLASS ACTION COMPLAINT

237.    GM has violated § 17200 by knowingly selling Class Vehicles that include defective engines with Low-Tension Oil Rings that cause excessive oil consumption and omitting mention of this defect to consumers.

238.    GM's conduct was unscrupulous, offended established public policy, and was fraudulent.

239.    The harm caused by GM's conduct greatly outweighs any benefit to consumers.

240.    Plaintiff relied on the omissions of GM with respect to the quality and reliability of the Class Vehicles.  Plaintiff and the other Class members would not have purchased or leased their Class Vehicles, and/or paid as much for them, but for GM's omissions.

241.    GM concealed and failed to disclose material information about the Class Vehicles in a manner that is likely to, and in fact did, deceive consumers and the public.

242.    All of the wrongful conduct alleged herein occurred in the conduct of GM's business.

243.    Plaintiff, individually and on behalf of the other Class members, requests that this Court restore to Plaintiff and the other Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement.

**2.    Claims Brought on Behalf of the Alabama Class**

**COUNT 8**
**BREACH OF EXPRESS WARRANTY**
**Ala. Code. §§ 7-2-313 and 7-2A-210**

244.    Plaintiff Brannan ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

245.    Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

246.    GM is and was at all relevant times a merchant with respect to the Class Vehicles.

247.    In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

Warranty repairs, including towing, parts, and labor, will be made at no charge.

248.   GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

249.   GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

250.   Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.   GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

251.   Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

252.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

253.   Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

254.    Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

255.    As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 9**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Ala. Code §§ 7-2-314 and 7-2A-212**

256.    Plaintiff Brannan ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

257.    Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

258.    GM is and was at all relevant times a merchant with respect to motor vehicles under Ala. Code §§ 7-2-104 and 7-2A-103.

259.    Pursuant to Ala. Code §§ 7-2-314 and 7-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

260.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Low-Tension Oil Ring Defect which causes excessive oil loss and leads to engine damage.

261.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October

28, 2016. GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

262. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

263. As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

<u>**COUNT 10**</u>
**FRAUDULENT OMISSION**

264. Plaintiff Brannan ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

265. Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

266. GM was aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

267. Having been aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Low-Tension Oil Ring Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

268. GM did not disclose the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

269. For the reasons set forth above, the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

270.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

271.   Had Plaintiff and the other members of the Class known of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

272.   Through its omissions regarding the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

273.   As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Low-Tension Oil Ring Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 11**
**UNJUST ENRICHMENT**

274.   Plaintiff Brannan ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

275.   Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

276.   GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

277.   GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

278.   It is inequitable and unconscionable for GM to retain these benefits.

279.   Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

280.    GM knowingly accepted the unjust benefits of its wrongful conduct.

281.    As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

### 3.    Claims Brought on Behalf of the Florida Class

**COUNT 12**
**VIOLATIONS OF THE FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. §§ 502.201,** *et seq.*

282.    Plaintiffs Ludington and Shorter ("Plaintiffs," for purposes of the Florida Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

283.    Plaintiffs bring this claim individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

284.    The Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201, *et seq.*, states that, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

285.    By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of F.S.A. § 501.204.

286.    GM's omissions regarding the Low-Tension Oil Ring Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

287.    GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Low-Tension Oil Ring Defect.

288.    Plaintiffs and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Low-Tension Oil Ring Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiffs and the other Class members' purchases of Class Vehicles.

289.    Had GM disclosed all material information regarding the Low-Tension Oil Ring Defect to Plaintiffs and the other Class members, Plaintiffs and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

290.    GM's omissions have deceived Plaintiffs, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

291.    In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiffs and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiffs and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiffs and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Low-Tension Oil Ring Defect, the injury is not one that Plaintiffs or the other Class members could have reasonably avoided.

292.    As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiffs and the other Class members have suffered ascertainable loss and actual damages.  Plaintiffs and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Low-Tension Oil Ring Defect been disclosed.  Plaintiffs and the other Class members also suffered diminished value of their vehicles.  Plaintiffs and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under F.S.A. §§ 501.201, *et seq.*

**COUNT 13**
**BREACH OF EXPRESS WARRANTY**
**Fla. Stat. §§ 672.313 and 680.21**

293.    Plaintiffs Ludington and Shorter ("Plaintiffs," for purposes of the Florida Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

294.    Plaintiffs bring this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

295.    GM is and was at all relevant times a merchant with respect to the Class Vehicles.

296.    In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

297.    GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

298.    GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

299.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

300.    Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

301.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies allowable by law.

302.     Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiffs and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

303.     Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the other Class members' remedies would be insufficient to make them whole.

304.     As a direct and proximate result of GM's breach of its express warranty, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT 14
## FRAUDULENT OMISSION

305.     Plaintiffs Ludington and Shorter ("Plaintiffs," for purposes of the Florida Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

306.     Plaintiffs bring this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

307.     GM was aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiffs and the other members of the Class.

308.     Having been aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiffs and the other members of the Class could not have reasonably been expected to know of the Low-Tension Oil Ring Defect, GM had a duty to disclose the defect to Plaintiffs and the other members of the Class in connection with the sale or lease of the Class Vehicles.

309.   GM did not disclose the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines to Plaintiffs and the other members of the Class in connection with the sale of the Class Vehicles.

310.   For the reasons set forth above, the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

311.   In purchasing the Class Vehicles, Plaintiffs and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

312.   Had Plaintiffs and the other members of the Class known of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

313.   Through its omissions regarding the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiffs and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

314.   As a direct and proximate result of GM's omissions, Plaintiffs and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Low-Tension Oil Ring Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 15**
**UNJUST ENRICHMENT**

315.   Plaintiffs Ludington and Shorter ("Plaintiffs," for purposes of the Florida Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

316.   Plaintiffs bring this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

317.   GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

318.     GM has received and retained unjust benefits from Plaintiffs and the other members of the Class, and inequity has resulted.

319.     It is inequitable and unconscionable for GM to retain these benefits.

320.     Because GM concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

321.     GM knowingly accepted the unjust benefits of its wrongful conduct.

322.     As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

**4.      Claims Brought on Behalf of the Idaho Class**

<u>**COUNT 16**</u>
**VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT**
**Idaho Code Ann. §§ 48-601, *et seq.***

323.     Plaintiff Del Valle ("Plaintiff," for purposes of the Idaho Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

324.     Plaintiff brings this Count individually and on behalf of the other members of the Idaho Class (the "Class," for purposes of this Count).

325.     GM, Plaintiff and the other members of the Idaho Class are natural persons and legal entities and, as such, constitute "persons" as defined by Idaho Code Ann. § 48-602(1).

326.     GM is engaged in "trade" or "commerce" within the meaning of Idaho Code Ann. § 48-602(2).

327.     The Idaho Consumer Protection Act ("Idaho CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Idaho Code Ann. § 48-603.

328.     By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of Idaho Code Ann. § 48-603.

329.     GM's omissions regarding the Low-Tension Oil Ring Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV

Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

330.   GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Low-Tension Oil Ring Defect.

331.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Low-Tension Oil Ring Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

332.   Had GM disclosed all material information regarding the Low-Tension Oil Ring Defect to Plaintiffs and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

333.   GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

334.   In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Low-Tension Oil Ring Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

335.   As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Low-Tension Oil Ring Defect been disclosed.  Plaintiff and the other Class members also suffered diminished value of their vehicles.  Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Idaho Code Ann. § 48-608.

**COUNT 17**
**BREACH OF EXPRESS WARRANTY**
**Idaho Code Ann. §§ 28-2-313 and 28-12-210**

336.  Plaintiff Del Valle ("Plaintiff," for purposes of the Idaho Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

337.  Plaintiff brings this Count individually and on behalf of the other members of the Idaho Class (the "Class," for purposes of this Count).

338.  GM is and was at all relevant times a merchant with respect to the Class Vehicles.

339.  In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

> Warranty repairs, including towing, parts, and labor, will be made at no charge.

340.  GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

341.  GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

342.  Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

343.     Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

344.     Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

345.     Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

346.     Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

347.     As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT 18
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Idaho Code Ann. §§ 28-2-314 and 28-12-212

348.     Plaintiff Del Valle ("Plaintiff," for purposes of the Idaho Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

349.     Plaintiff brings this Count individually and on behalf of the other members of the Idaho Class (the "Class," for purposes of this Count).

350.     GM is and was at all relevant times a merchant with respect to motor vehicles under Idaho Code Ann. §§ 28-2-104 and 28-12-103.

351.    Pursuant to Idaho Code §§ 28-2-314 and 28-12-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

352.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Low-Tension Oil Ring Defect which causes excessive oil loss and leads to engine damage.

353.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016 and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

354.    Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

355.    As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 19**
**FRAUDULENT OMISSION**

356.    Plaintiff Del Valle ("Plaintiff," for purposes of the Idaho Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

357.    Plaintiff brings this Count individually and on behalf of the other members of the Idaho Class (the "Class," for purposes of this Count).

358.    GM was aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

CLASS ACTION COMPLAINT

359. Having been aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Low-Tension Oil Ring Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

360. GM did not disclose the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

361. For the reasons set forth above, the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

362. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

363. Had Plaintiff and the other members of the Class known of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

364. Through its omissions regarding the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

365. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Low-Tension Oil Ring Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 20**
**UNJUST ENRICHMENT**

366. Plaintiff Del Valle ("Plaintiff," for purposes of the Idaho Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

54

367.    Plaintiff brings this Count individually and on behalf of the other members of the Idaho Class (the "Class," for purposes of this Count).

368.    GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

369.    GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

370.    It is inequitable and unconscionable for GM to retain these benefits.

371.    Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

372.    GM knowingly accepted the unjust benefits of its wrongful conduct.

373.    As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**5.    Claims Brought on Behalf of the Indiana Class**

**COUNT 21**
**VIOLATIONS OF THE INDIANA**
**DECEPTIVE CONSUMER SALES ACT**
**Ind. Code §§ 24-5-0.5, *et seq.***

374.    Plaintiff Lannom ("Plaintiff," for purposes of the Indiana Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

375.    Plaintiff brings this Count individually and on behalf of the other members of the Indiana Class (the "Class," for purposes of this Count).

376.    Pursuant to the Indiana Deceptive Consumer Sales Act, "A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3.

377.    By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of Ind. Code § 24-5-0.5-3.

378.   GM's omissions regarding the Low-Tension Oil Ring Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

379.   GM intended for Plaintiff and the other Class members to rely on GM's omissions of fact regarding the Low-Tension Oil Ring Defect.

380.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Low-Tension Oil Ring Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

381.   Had GM disclosed all material information regarding the Low-Tension Oil Ring Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

382.   GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

383.   In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Low-Tension Oil Ring Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

384.   As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Low-Tension Oil Ring Defect been disclosed.   Plaintiff and the other Class members also suffered

diminished value of their vehicles.  Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Ind. Code §§ 24-5-0.5, *et seq.*

**COUNT 22**
**BREACH OF EXPRESS WARRANTY**
**Ind. Code §§ 26-1-2-313 and 26-1-2.1-210**

385.    Plaintiff Lannom ("Plaintiff," for purpose of the Indiana Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

386.    Plaintiff brings this Count individually and on behalf of the other members of the Indiana Class (the "Class," for purposes of this Count).

387.    GM is and was at all relevant times a merchant with respect to the Class Vehicles.

388.    In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

> Warranty repairs, including towing, parts, and labor, will be made at no charge.

389.    GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

390.    GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

391.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous

complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

392.    Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

393.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

394.    Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

395.    Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

396.    As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT 23
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Ind. Code §§ 26-1-2-314 and 26-1-2.1-212

397.    Plaintiff Lannom ("Plaintiff," for purposes of the Indiana Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

398.    Plaintiff brings this Count individually and on behalf of the other members of the Indiana Class (the "Class," for purposes of this Count).

399.    GM is and was at all relevant times a merchant with respect to motor vehicles under Ind. Code §§ 26-1-2-104 and 26-1-2.1-103.

400.    Pursuant to Ind. Code §§ 26-1-2-314 and 26-1-2.1-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

401.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Low-Tension Oil Ring Defect which causes excessive oil loss and leads to engine damage.

402.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

403.    Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

404.    As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 24**
**FRAUDULENT OMISSION**

405.    Plaintiff Lannom ("Plaintiff," for purposes of the Indiana Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

406.    Plaintiff brings this Count individually and on behalf of the other members of the Indiana Class (the "Class," for purposes of this Count).

407.    GM was aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

408.    Having been aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Low-Tension Oil Ring Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

409.    GM did not disclose the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

410.    For the reasons set forth above, the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

411.    In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

412.    Had Plaintiff and the other members of the Class known of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

413.    Through its omissions regarding the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

414.    As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Low-Tension Oil Ring Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 25**
**UNJUST ENRICHMENT**

415.    Plaintiff Lannom ("Plaintiff," for purposes of the Indiana Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

416.    Plaintiff brings this Count individually and on behalf of the other members of the Indiana Class (the "Class," for purposes of this Count).

417.    GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

418.    GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

419.    It is inequitable and unconscionable for GM to retain these benefits.

420.    Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

421.    GM knowingly accepted the unjust benefits of its wrongful conduct.

422.    As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**6.    Claims Brought on Behalf of the Iowa Class**

**COUNT 26**
**BREACH OF EXPRESS WARRANTY**
**Iowa Code § 554.2313**

423.    Plaintiff Zierke ("Plaintiff," for purpose of the Iowa Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

424.    Plaintiff brings this Count individually and on behalf of the other members of the Iowa Class (the "Class," for purposes of this Count).

425.    GM is and was at all relevant times a merchant with respect to the Class Vehicles.

CLASS ACTION COMPLAINT

426.    In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

> Warranty repairs, including towing, parts, and labor, will be made at no charge.

427.    GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

428.    GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

429.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

430.    Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

431.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

432.  Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

433.  Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

434.  As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

### COUNT 27
### FRAUDULENT OMISSION

435.  Plaintiff Zierke ("Plaintiff," for purposes of the Iowa Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

436.  Plaintiff brings this Count individually and on behalf of the other members of the Iowa Class (the "Class," for purposes of this Count).

437.  GM was aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

438.  Having been aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Low-Tension Oil Ring Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

439.    GM did not disclose the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

440.    For the reasons set forth above, the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

441.    In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

442.    Had Plaintiff and the other members of the Class known of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

443.    Through its omissions regarding the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

444.    As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Low-Tension Oil Ring Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

### COUNT 28
### UNJUST ENRICHMENT

445.    Plaintiff Zierke ("Plaintiff," for purposes of the Iowa Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

446.    Plaintiff brings this Count individually and on behalf of the other members of the Iowa Class (the "Class," for purposes of this Count).

447.    GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

CLASS ACTION COMPLAINT

448.    GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

449.    It is inequitable and unconscionable for GM to retain these benefits.

450.    Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

451.    GM knowingly accepted the unjust benefits of its wrongful conduct.

452.    As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**7.    Claims Brought on Behalf of the Minnesota Class**

**COUNT 29**
**VIOLATIONS OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT**
**Minn. Stat. §§ 325F.68, *et seq.***

453.    Plaintiffs Dahl and Peterson ("Plaintiffs," for purposes of the Minnesota Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

454.    Plaintiffs bring this Count individually and on behalf of the other members of the Minnesota Class (the "Class," for purposes of this Count).

455.    The Minnesota Prevention of Consumer Fraud Act prohibits "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice."  Minn. Stat. § 325F.69.

456.    By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of Minn. Stat. § 325F.69.

457.    GM's omissions regarding the Low-Tension Oil Ring Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

458.    GM intended for Plaintiffs and the other Class members to rely on GM's omissions of fact regarding the Low-Tension Oil Ring Defect.

459.    Plaintiffs and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Low-Tension Oil Ring Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiffs and the other Class members' purchases of Class Vehicles.

460.    Had GM disclosed all material information regarding the Low-Tension Oil Ring Defect to Plaintiffs and the other Class members, Plaintiffs and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

461.    GM's omissions have deceived Plaintiffs, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

462.    In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiffs and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiffs and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiffs and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Low-Tension Oil Ring Defect, the injury is not one that Plaintiffs or the other Class members could have reasonably avoided.

463.    As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiffs and the other Class members have suffered ascertainable loss and actual damages.  Plaintiffs and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Low-Tension Oil Ring Defect been disclosed.  Plaintiffs and the other Class members also suffered diminished value of their vehicles.  Plaintiffs and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Minn. Stat. § 8.31, subd. 3a.

### COUNT 30
### BREACH OF EXPRESS WARRANTY
### Minn. Stat. §§ 325G.19, 336.2-313

464.    Plaintiffs Dahl and Peterson ("Plaintiffs," for purposes of the Minnesota Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

465.    Plaintiffs bring this Count individually and on behalf of the other members of the Minnesota Class (the "Class," for purposes of this Count).

466.    GM is and was at all relevant times a merchant with respect to the Class Vehicles.

467.    In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

468.    GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

469.    GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

470.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

471.    Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

472.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies allowable by law.

473.    Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiffs and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

474.    Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the other Class members' remedies would be insufficient to make them whole.

475.    As a direct and proximate result of GM's breach of its express warranty, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 31**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Minn. Stat. § 336.2-314**

476.    Plaintiffs Dahl and Peterson ("Plaintiffs," for purposes of the Minnesota Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

477.    Plaintiffs bring this Count individually and on behalf of the other members of the Minnesota Class (the "Class," for purposes of this Count).

478.    GM is and was at all relevant times a merchant with respect to motor vehicles under Minn. Stat. § 336.2-314.

479.    Pursuant to Minn. Stat. § 336.2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

480.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Low-Tension Oil Ring Defect which causes excessive oil loss and leads to engine damage.

481.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

482.    Plaintiffs and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

483.    As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT 32
## FRAUDULENT OMISSION

484.    Plaintiffs Dahl and Peterson ("Plaintiffs," for purposes of the Minnesota Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

485.    Plaintiffs bring this Count individually and on behalf of the other members of the Minnesota Class (the "Class," for purposes of this Count).

486.    GM was aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiffs and the other members of the Class.

487.    Having been aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiffs and the other members of the Class could not have reasonably been expected to know of the Low-Tension Oil Ring Defect, GM had a duty to

disclose the defect to Plaintiffs and the other members of the Class in connection with the sale or lease of the Class Vehicles.

488.    GM did not disclose the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines to Plaintiffs and the other members of the Class in connection with the sale of the Class Vehicles.

489.    For the reasons set forth above, the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

490.    In purchasing the Class Vehicles, Plaintiffs and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

491.    Had Plaintiffs and the other members of the Class known of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

492.    Through its omissions regarding the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiffs and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

493.    As a direct and proximate result of GM's omissions, Plaintiffs and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Low-Tension Oil Ring Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 33
## UNJUST ENRICHMENT

494.    Plaintiffs Dahl and Peterson ("Plaintiffs," for purposes of the Minnesota Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

495.    Plaintiffs bring this Count individually and on behalf of the other members of the Minnesota Class (the "Class," for purposes of this Count).

496.    GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

497.    GM has received and retained unjust benefits from Plaintiffs and the other members of the Class, and inequity has resulted.

498.    It is inequitable and unconscionable for GM to retain these benefits.

499.    Because GM concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

500.    GM knowingly accepted the unjust benefits of its wrongful conduct.

501.    As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

**8.      Claims Brought on Behalf of the New Mexico Class**

**COUNT 34**
**VIOLATIONS OF THE NEW MEXICO**
**UNFAIR TRADE PRACTICES ACT**
**N.M. Stat. Ann. §§ 57-12-1, *et seq.***

502.    Plaintiff Molina ("Plaintiff," for purposes of the New Mexico Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

503.    Plaintiff brings this Count individually and on behalf of the other members of the New Mexico (the "Class," for purposes of this Count).

504.    Pursuant to the New Mexico Unfair Trade Practices Act, "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." N.M. Stat. Ann. § 57-12-3.

505.    By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of N.M. Stat. Ann. § 57-12-3.

506.    GM's omissions regarding the Low-Tension Oil Ring Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV

71

Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

507.    GM intended for Plaintiff and the other Class members to rely on GM's omissions of fact regarding the Low-Tension Oil Ring Defect.

508.    Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Low-Tension Oil Ring Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

509.    Had GM disclosed all material information regarding the Low-Tension Oil Ring Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

510.    GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

511.    In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Low-Tension Oil Ring Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

512.    As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Low-Tension Oil Ring Defect been disclosed.  Plaintiff and the other Class members also suffered diminished value of their vehicles.  Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under N.M. Stat. Ann. § 57-12-1, *et seq.*

**COUNT 35**
**BREACH OF EXPRESS WARRANTY**
**N.M. Stat. Ann. §§ 55-2-313 and 55-2A-210**

513.    Plaintiff Molina ("Plaintiff," for purpose of the New Mexico Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

514.    Plaintiff brings this Count individually and on behalf of the other members of the New Mexico Class (the "Class," for purposes of this Count).

515.    GM is and was at all relevant times a merchant with respect to the Class Vehicles.

516.    In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

> Warranty repairs, including towing, parts, and labor, will be made at no charge.

517.    GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

518.    GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

519.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

520.    Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

521.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

522.    Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

523.    Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

524.    As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 36**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**N.M. Stat. Ann. §§ 55-2-314 and 55-2A-212**

525.    Plaintiff Molina ("Plaintiff," for purposes of the New Mexico Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

526.    Plaintiff brings this Count individually and on behalf of the other members of the New Mexico Class (the "Class," for purposes of this Count).

527.    GM is and was at all relevant times a merchant with respect to motor vehicles under N.M. Stat. Ann. §§ 55-2-104 and 55-2A-103.

528.    Pursuant to N.M. Stat. Ann. §§ 55-2-314 and 55-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

529.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Low-Tension Oil Ring Defect which causes excessive oil loss and leads to engine damage.

530.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

531.    Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

532.    As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 37**
**FRAUDULENT OMISSION**

533.    Plaintiff Molina ("Plaintiff," for purposes of the New Mexico Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

534.    Plaintiff brings this Count individually and on behalf of the other members of the New Mexico Class (the "Class," for purposes of this Count).

535.    GM was aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

536.    Having been aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Low-Tension Oil Ring Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

537.    GM did not disclose the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

538.    For the reasons set forth above, the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

539.    In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

540.    Had Plaintiff and the other members of the Class known of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

541.    Through its omissions regarding the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

542.    As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Low-Tension Oil Ring Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 38**
**UNJUST ENRICHMENT**

543.    Plaintiff Molina ("Plaintiff," for purposes of the New Mexico Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

544.     Plaintiff brings this Count individually and on behalf of the other members of the New Mexico Class (the "Class," for purposes of this Count).

545.     GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

546.     GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

547.     It is inequitable and unconscionable for GM to retain these benefits.

548.     Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

549.     GM knowingly accepted the unjust benefits of its wrongful conduct.

550.     As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**9.     Claims Brought on Behalf of the North Carolina Class**

**COUNT 39**
**VIOLATIONS OF THE NORTH CAROLINA**
**UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**
**N.C. Gen. Stat. §§ 75-1.1, *et seq.***

551.     Plaintiff Ehrke ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

552.     Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class (the "Class," for purposes of this Count).

553.     GM engaged in unlawful, unfair, and deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act by advertising, selling, and warranting the defective Class Vehicles.

554.     GM knew that the Class Vehicles suffered from the Low-Tension Oil Ring Defect that results in abnormally high oil consumption and resultant engine damage.

555.    In advertising, selling, and warranting the Class Vehicles, GM omitted material facts concerning the Low-Tension Oil Ring Defect that results in abnormally high oil consumption and resultant engine damage. GM failed to give Plaintiff and the other Class members sufficient notice or warning regarding this defect.

556.    GM intended that Plaintiff and the other Class members rely upon GM's omissions when purchasing vehicles containing the Generation IV Vortec 5300 Engines.

557.    Plaintiff and the other Class members were deceived by GM's concealment of the defect.

558.    GM's conduct was in commerce and affected commerce.

559.    As a direct and proximate result of these unfair, willful, unconscionable, and deceptive commercial practices, Plaintiff and the other Class members have been damaged and are entitled to recover actual and treble damages, as well as attorneys' fees and costs, and all other relief allowed under N.C. Gen. Stat §§ 75-16 and 75-16.1.

**COUNT 40**
**BREACH OF EXPRESS WARRANTY**
**N.C. Gen. Stat. §§ 25-2-313 and 25-2A-210**

560.    Plaintiff Ehrke ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

561.    Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class (the "Class," for purposes of this Count).

562.    GM is and was at all relevant times a merchant with respect to the Class Vehicles.

563.    In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

> Warranty repairs, including towing, parts, and labor, will be made at no charge.

564.   GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

565.   GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

566.   Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

567.   Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

568.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

569.   Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

570.   Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure

1    to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other

2    Class members' remedies would be insufficient to make them whole.

3    571.   As a direct and proximate result of GM's breach of its express warranty, Plaintiff and

4    the other Class members have been damaged in an amount to be determined at trial.

5                                    **COUNT 41**
                     **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
6                        **N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212**

7    572.   Plaintiff Ehrke ("Plaintiff," for purposes of the North Carolina Class's claims) repeats

8    and realleges paragraphs 1-155 as if fully set forth herein.

9    573.   Plaintiff brings this Count individually and on behalf of the other members of the North

10   Carolina Class (the "Class," for purposes of this Count).

11   574.   GM is and was at all relevant times a merchant with respect to motor vehicles under

12   N.C. Gen Stat. § 25-2-314 and 25-2A-212.

13   575.   Pursuant to N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212, a warranty that the Class

14   Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and

15   sold subject to an implied warranty of merchantability.

16   576.   The Class Vehicles did not comply with the implied warranty of merchantability

17   because, at the time of sale and at all times thereafter, they were defective and not in merchantable

18   condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for

19   which vehicles were used.  Specifically, the Class Vehicles suffer from the Low-Tension Oil Ring

20   Defect which causes excessive oil loss and leads to engine damage.

21   577.   Plaintiff Ludington, individually and on behalf of the other Class members, notified GM

22   of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding

23   breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States

24   Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October

25   28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous

26   complaints filed against it directly and through its dealers, as well as its own internal engineering

27   knowledge.

28

578.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

579.   As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 42**
**FRAUDULENT OMISSION**

580.   Plaintiff Ehrke ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

581.   Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class (the "Class," for purposes of this Count).

582.   GM was aware of the Low-Tension Oil Ring Defect when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

583.   Having been aware of the Low-Tension Oil Ring Defect, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Low-Tension Oil Ring Defect, GM had a duty to disclose these defects to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

584.   GM disclosed information concerning the reliability and performance of the Class Vehicles, but GM did not disclose the Low-Tension Oil Ring Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

585.   For the reasons set forth above, the existence of the Low-Tension Oil Ring Defect comprises material information with respect to the sale of the Class Vehicles.

586.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

587.   Had Plaintiff and the other members of the Class known of the Low-Tension Oil Ring Defect, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

588.   Through its omission regarding the Low-Tension Oil Ring Defect, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle

that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

589.    As a direct and proximate result of GM's omission, Plaintiff and the other members of the Class either paid too much for the Class Vehicles or would not have purchased the Class Vehicles if the Low-Tension Oil Ring Defect had been disclosed to them, and therefore have incurred damages in an amount to be determined at trial.

## COUNT 43
## UNJUST ENRICHMENT

590.    Plaintiff Ehrke ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

591.    Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class (the "Class," for purposes of this Count).

592.    GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

593.    GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

594.    It is inequitable and unconscionable for GM to retain these benefits.

595.    Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

596.    GM knowingly accepted the unjust benefits of its wrongful conduct.

597.    As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

10.     **Claims Brought on Behalf of the North Dakota Class**

**COUNT 44**
**VIOLATIONS OF THE NORTH DAKOTA UNLAWFUL**
**SALES OR ADVERTISING PRACTICES LAW**
**N.D. Cent. Code §§ 51-15-01, *et seq.***

598.    Plaintiff Mauch ("Plaintiff," for purposes of the North Dakota Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

599.    Plaintiff brings this Count individually and on behalf of the other members of the North Dakota Class (the "Class," for purposes of this Count).

600.    The North Dakota Unlawful Sales or Advertising Practices Law prohibits any "deceptive act or practice, fraud, false pretense, false promise, or misrepresentation." N.D. Cent. Code § 51-15-02.

601.    By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of N.D. Cent. Code § 51-15-02..

602.    GM's omissions regarding the Low-Tension Oil Ring Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

603.    GM intended for Plaintiff and the other Class members to rely on GM's omissions of fact regarding the Low-Tension Oil Ring Defect.

604.    Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Low-Tension Oil Ring Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

605.    Had GM disclosed all material information regarding the Low-Tension Oil Ring Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

606.    GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

607.   In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Low-Tension Oil Ring Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

608.   As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Low-Tension Oil Ring Defect been disclosed.  Plaintiff and the other Class members also suffered diminished value of their vehicles.  Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under N.D. Cent. Code § 51-15-09.

**COUNT 45**
**BREACH OF EXPRESS WARRANTY**
**N.D. Cent. Code § 41-02-30**

609.   Plaintiff Mauch ("Plaintiff," for purpose of the North Dakota Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

610.   Plaintiff brings this Count individually and on behalf of the other members of the North Dakota Class (the "Class," for purposes of this Count).

611.   GM is and was at all relevant times a merchant with respect to the Class Vehicles.

612.   In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

Warranty repairs, including towing, parts, and labor, will be made at no charge.

613.   GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

614.   GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

615.   Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

616.   Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

617.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

618.   Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

619.   Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure

85

to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

620.    As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 46**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**N.D. Cent. Code § 41-02-31**

621.    Plaintiff Mauch ("Plaintiff," for purposes of the North Dakota Class's claims) repeats and realleges paragraphs 1-15 as if fully set forth herein.

622.    Plaintiff brings this Count individually and on behalf of the other members of the North Dakota Class (the "Class," for purposes of this Count).

623.    GM is and was at all relevant times a merchant with respect to motor vehicles under N.D. Cent. Code § 41-02-31.

624.    Pursuant to N.D. Cent. Code § 41-02-31, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

625.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Low-Tension Oil Ring Defect which causes excessive oil loss and leads to engine damage.

626.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

627.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

628.   As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 47**
**FRAUDULENT OMISSION**

629.   Plaintiff Mauch ("Plaintiff," for purposes of the North Dakota Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

630.   Plaintiff brings this Count individually and on behalf of the other members of the North Dakota Class (the "Class," for purposes of this Count).

631.   GM was aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

632.   Having been aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Low-Tension Oil Ring Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

633.   GM did not disclose the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

634.   For the reasons set forth above, the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

635.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

636.   Had Plaintiff and the other members of the Class known of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

637.   Through its omissions regarding the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

638.   As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Low-Tension Oil Ring Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 48
## UNJUST ENRICHMENT

639.   Plaintiff Mauch ("Plaintiff," for purposes of the North Dakota Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

640.   Plaintiff brings this Count individually and on behalf of the other members of the North Dakota Class (the "Class," for purposes of this Count).

641.   GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

642.   GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

643.   It is inequitable and unconscionable for GM to retain these benefits.

644.   Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

645.   GM knowingly accepted the unjust benefits of its wrongful conduct.

646.    As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**11.    Claims Brought on Behalf of the Ohio Class**

**COUNT 49**
**VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**
**Ohio Rev. Code Ann. §§ 1345.01, *et seq.***

647.    Plaintiffs Gulling and Jones ("Plaintiffs," for purposes of the Ohio Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

648.    Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

649.    GM, Plaintiffs, and the other Class members are "persons" within the meaning of Ohio Rev. Code Ann. § 145.01(B).  GM is a "supplier" as defined by Ohio Rev. Code Ann. § 1345.01(c).

650.    Plaintiffs and the other Class members are "consumers" as that term is defined in Ohio Rev. Code Ann. § 1345.01(D), and their purchase and lease of the Class Vehicles are "consumer transactions" within the meaning of Ohio Rev. Code Ann. § 1345.01(A).

651.    Ohio Rev. Code Ann. § 1345.02 prohibits unfair or deceptive acts or practices in connection with consumer transactions.

652.    In the course of GM's business, GM violated the Ohio Consumer Sales Practices Act ("CSPA") by selling Class Vehicles with the Low-Tension Oil Ring Defect, leading to excessive oil consumption and engine damage, or negligently concealing or suppressing material facts concerning the Low-Tension Oil Ring Defect in the Class Vehicles.

653.    Further, as a result of placing a defective product into the stream of commerce, GM has breached its implied warranty in tort, which is an unfair and deceptive act, as defined in Ohio Rev. Code Ann. § 1345.09(B).

654.    GM has committed unfair and deceptive acts in violation of the Ohio CSPA by knowingly placing into the stream of commerce the Class Vehicles with the Low-Tension Oil Ring Defect.

655.   Moreover, GM has committed an unfair and deceptive act by knowingly concealing the Low-Tension Oil Ring Defect in the Class Vehicles and failing to inform Plaintiffs and the other Class members of this defect.

656.   The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of GM as detailed in this Complaint, including, but not limited to, the failure to honor both its implied and express warranties; and the concealment and/or non-disclosure of a substantial defect, constitute deceptive sales practices in violation of the CSPA.  These cases include, but are not limited to, the following:

    a.   *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

    b.   *State ex rel. Betty D. Montgomery v. Ford Motor co.* (OPIF #10002123);

    c.   *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

    d.   *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

    e.   *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

    f.   *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

    g.   *Cranford v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

    h.   *Brown v. Spears* (OPIF #10000403);

    i.   *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

    j.   *Mosley v. Performance Mitsubishi AKA Automanage* (OPIF #10001326); and

    k.   *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524).

657.   GM's unfair or deceptive acts or practices were likely to, and did, in fact, deceive consumers, including Plaintiffs and the other Class members, about the true reliability, dependability, efficiency, and quality of the Class Vehicles.

658.   Plaintiffs and the other Class members suffered ascertainable loss and actual damages as a direct result of GM's concealment of and failure to disclose material information, namely, the Low-Tension Oil Ring Defect.  Plaintiffs and the other Class members who purchased or leased the Class

Vehicles would not have done so, or would have paid significantly less, if the true nature of the Class Vehicles had been disclosed. Plaintiffs and the other Class members also suffered diminished value of their vehicles.

659.   GM is liable to Plaintiffs and the other Class members for compensatory damages, injunctive/equitable relief, and attorneys' fees pursuant to Ohio Rev. Code Ann. § 1345.09.

**COUNT 50**
**BREACH OF EXPRESS WARRANTY**
**Ohio Rev. Code Ann. §§ 1302.26 and 1310.17**

660.   Plaintiffs Gulling and Jones ("Plaintiffs," for purposes of the Ohio Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

661.   Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

662.   GM is and was at all relevant times a merchant with respect to the Class Vehicles.

663.   In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

> Warranty repairs, including towing, parts, and labor, will be made at no charge.

664.   GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

665.   GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

666.   Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding

breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

667. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

668. Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

669. Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

670. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

671. As a direct and proximate result of GM's breach of express warranty, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 51**
**BREACH OF IMPLIED WARRANTY IN TORT**

672. Plaintiffs Gulling and Jones ("Plaintiffs," for purposes of the Ohio Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

673.    Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

674.    GM manufactured and sold the defective Class Vehicles to Plaintiffs and the other Class members.

675.    The Class Vehicles are defective because they have a Generation IV Vortec 5300 Engines with the Low-Tension Oil Ring Defect, causing the Class Vehicles to consume excessive amounts of oil, resulting in engine damage.

676.    These defects existed at the time the Class Vehicles left the control of GM.

677.    Based upon these defects, GM has failed to meet the expectations of a reasonable consumer.  The Class Vehicles have failed in their ordinary, intended use, because they suffer from the Low-Tension Oil Ring Defect, causing excessive oil loss and resultant engine damage.

678.    The above-described defects in the Class Vehicles were the direct and proximate cause of economic damages to Plaintiffs and the other Class members.

**COUNT 52**
**FRAUDULENT OMISSION**

679.    Plaintiffs Gulling and Jones ("Plaintiffs," for purposes of the Ohio Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

680.    Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

681.    GM was aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiffs and the other Class members.

682.    Having been aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiffs and the other Class members could not have reasonably been expected to know of this defect, GM had a duty to disclose the Low-Tension Oil Ring Defect to Plaintiffs and the other Class members in connection with the sale or lease of the Class Vehicles.

683.    GM did not disclose the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines to Plaintiffs and the other Class members in connection with the sale or lease of the Class Vehicles.

684.    For the reasons set forth above, the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

685.    In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.  Had Plaintiffs and the other Class members known of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

686.    Through its omissions regarding the latent oil consumption defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiffs and the other Class members to purchase or lease a Class Vehicle that they otherwise would not have purchased, or to pay more for a Class Vehicle than they otherwise would have paid.

687.    As a direct and proximate result of GM's omissions, Plaintiffs and the other Class members either paid too much for the Class Vehicles or would not have purchased the Class Vehicles if the Low-Tension Oil Ring Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 53**
**UNJUST ENRICHMENT**

688.    Plaintiffs Gulling and Jones ("Plaintiffs," for purposes of the Ohio Class's claims) repeat and reallege paragraphs 1-155 as if fully set forth herein.

689.    Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class ("Class," for purposes of this Count).

690.    GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

691.    GM has received and retained unjust benefits from Plaintiffs and the other members of the Class, and inequity has resulted.

692.    It is inequitable and unconscionable for GM to retain these benefits.

693.    Because GM concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

694.    GM knowingly accepted the unjust benefits of its wrongful conduct.

695.    As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

**12.    Claims Brought on Behalf of the Pennsylvania Class**

**COUNT 54**
**VIOLATIONS OF THE PENNSYLVANIA**
**UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**73 Pa. Cons. Stat. §§ 201-1,** *et seq.*

696.    Plaintiff Graziano ("Plaintiff," for the purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

697.    Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

698.    GM, Plaintiff, and the other members of the Class are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

699.    GM is engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

700.    The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 Pa. Cons. Stat. § 201-3.

701.    GM violated the Pennsylvania UTPA by engaging in unfair or deceptive acts or practices by marketing, selling, and leasing Class Vehicles that it knew to contain the Low-Tension Oil Ring Defect, while not disclosing the Low-Tension Oil Ring Defect to Plaintiff and the other Class members.

702.    GM intentionally and knowingly omitted material facts regarding the Class Vehicles with the intent to mislead Plaintiff and the other Class members.

703.    GM knew or should have known that its conduct violated the Pennsylvania UTPA.

704.    GM's concealment of the Low-Tension Oil Ring Defect was material to Plaintiff and the other Class members.

705.    Plaintiff and the other Class members suffered ascertainable loss and actual damages as a direct and proximate result of GM's deceptive acts and omissions.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.  Plaintiff and the other Class members also suffered diminished value of their vehicles, as well as lost or diminished use.

706.    Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), Plaintiff and the other Class members seek an order enjoining GM's unfair and/or deceptive acts or practices, damages – trebled, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

**COUNT 55**
**BREACH OF EXPRESS WARRANTY**
**13 Pa. Cons. Stat. §§ 2313 and 2A210**

707.    Plaintiff Graziano ("Plaintiff," for the purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

708.    Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

709.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103, and a "seller" of motor vehicles under § 2103(a).

710.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

711.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

712.    In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

> Warranty repairs, including towing, parts, and labor, will be made at no charge.

713.    GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

714.    GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

715.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

716.    Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

717.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

718.    Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

719.    Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

720.    As a direct and proximate result of GM's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

### COUNT 56
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### 13 Pa. Cons. Stat. §§ 2314 and 2A212

721.    Plaintiff Graziano ("Plaintiff," for purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

722.    Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

723.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103, and a "seller" of motor vehicles under § 2103(a).

724.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

725.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

726.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied in law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

727.    The Class Vehicles, when sold or leased and at all times hereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that they contain the Low-Tension Oil Ring Defect which causes excessive oil loss and engine damage.

728.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

729.    Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the implied warranty of merchantability.

730.    As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 57**
**FRAUDULENT OMISSION**

731.    Plaintiff Graziano ("Plaintiff," for purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

732.    Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

733.    GM was aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

734.    Having been aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Low-Tension Oil Ring Defect, GM had a duty to

disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

735.    GM did not disclose the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

736.    For the reasons set forth above, the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

737.    In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

738.    Had Plaintiff and the other members of the Class known of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

739.    Through its omissions regarding the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

740.    As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Low-Tension Oil Ring Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 58
## UNJUST ENRICHMENT

741.    Plaintiff Graziano ("Plaintiff," for purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

742.    Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

743.    GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

744.    GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

745.    It is inequitable and unconscionable for GM to retain these benefits.

746.    Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

747.    GM knowingly accepted the unjust benefits of its wrongful conduct.

748.    As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**13.    Claims Brought on Behalf of the South Carolina Class**

**COUNT 59**
**VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT**
**S.C. Code Ann. §§ 56-151-10, *et seq.***

749.    Plaintiff Sloan Jr. ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

750.    Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

751.    Plaintiff and the other members of the South Carolina Class are natural persons and legal entities and, as such, constitute "persons" as defined by S.C. Code Ann. § 56-15-10(n).

752.    GM is a "manufacturer" as defined by S.C. Code Ann. § 56-15-10(b).

753.    S.C. Code Ann. §§ 56-16-30 and 56-15-40 declare unlawful all "unfair or deceptive acts or practices" by a manufacturer.

754.    S.C. Code Ann. § 56-15-110 provides a private right of action for any person who is injured in his or her business or property by an unfair and/or deceptive act or practice.

755.    By the conduct described in detail above and incorporated herein, GM engaged in unfair and/or deceptive acts or practices in violation of S.C. Code Ann. §§ 56-15-30 and 56-15-40.

756.    GM's omissions regarding the Low-Tension Oil Ring Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

757.    GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Low-Tension Oil Ring Defect.

758.    Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Low-Tension Oil Ring Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

759.    Had GM disclosed all material information regarding the Low-Tension Oil Ring Defect to Plaintiffs and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

760.    GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

761.    In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Low-Tension Oil Ring Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

762.    As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased

the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Low-Tension Oil Ring Defect been disclosed.  Plaintiff and the other Class members also suffered diminished value of their vehicles.  Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under S.C. Code Ann. § 56-15-110.

**COUNT 60**
**BREACH OF EXPRESS WARRANTY**
**S.C. Code Ann. §§ 36-2-313 and 36-2A-210**

763.    Plaintiff Sloan Jr. ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

764.    Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

765.    GM is and was at all relevant times a merchant with respect to the Class Vehicles.

766.    In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

Warranty repairs, including towing, parts, and labor, will be made at no charge.

767.    GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

768.    GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

769.    Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States

103

Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

770.     Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

771.     Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

772.     Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

773.     Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

774.     As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 61**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**S.C. Code Ann. §§ 36-2-314 and 36-2A-212**

775.     Plaintiff Sloan Jr. ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

776.     Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

777.   GM is and was at all relevant times a merchant with respect to motor vehicles under S.C. Code Ann. §§ 36-2-104 and 36-2A-103.

778.   Pursuant to S.C. Code Ann. §§ 36-2-314 and 36-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

779.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Low-Tension Oil Ring Defect which causes excessive oil loss and leads to engine damage.

780.   Plaintiff Ludington, individually and on behalf of the other Class members, notified GM of the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Low-Tension Oil Ring Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

781.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

782.   As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 62**
**FRAUDULENT OMISSION**

783.   Plaintiff Sloan Jr. ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

784.   Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

785.   GM was aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

786.   Having been aware of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Low-Tension Oil Ring Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

787.   GM did not disclose the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

788.   For the reasons set forth above, the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

789.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

790.   Had Plaintiff and the other members of the Class known of the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

791.   Through its omissions regarding the Low-Tension Oil Ring Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

792.   As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Low-Tension Oil Ring Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 63**
**UNJUST ENRICHMENT**

793.    Plaintiff Sloan Jr. ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1-155 as if fully set forth herein.

794.    Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

795.    GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Low-Tension Oil Ring Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

796.    GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

797.    It is inequitable and unconscionable for GM to retain these benefits.

798.    Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

799.    GM knowingly accepted the unjust benefits of its wrongful conduct.

800.    As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Nationwide Class and the Statewide Classes they respectively seek to represent, respectfully request that the Court enter judgment in their favor and against Defendant, General Motors LLC, as follows:

1.    Declaring that this action is a proper class action, certifying the Nationwide and Statewide Classes as requested herein, designating Plaintiffs as Nationwide and Statewide Class Representatives, an appointing Plaintiffs' attorneys as Class Counsel;

2.    Enjoining GM from continuing the unfair business practices alleged in this Complaint;

CLASS ACTION COMPLAINT

1    3.    Ordering GM to pay actual and statutory damages (including punitive damages) and

2    restitution to Plaintiffs and the other Nationwide and Statewide Class members, as allowable by law;

3    4.    Ordering GM to pay both pre- and post-judgment interest on any amounts awarded;

4    5.    Ordering GM to pay attorneys' fees and costs of suit; and

5    6.    Ordering such other and further relief as may be just and proper.

6    ### IX.  JURY DEMAND

7    Plaintiffs hereby demand a trial by jury on all issues so triable.

8    **DATED:**  December 19, 2016

9    _/s/ Jennie Lee Anderson_
     Jennie Lee Anderson
     Lori E. Andrus
10   **ANDRUS ANDERSON LLP**
     155 Montgomery Street, Suite 900
11   San Francisco, California  94104
     Telephone:  415-986-1400
12   jennie@andrusanderson.com
     lori@andrusanderson.com

13

14   Adam J. Levitt (*pro hac vice* motion to be filed)
     John E. Tangren (*pro hac vice* motion to be filed)
     Daniel R. Ferri (*pro hac vice* motion to be filed)
15   **GRANT & EISENHOFER P.A.**
     30 North LaSalle Street, Suite 2350
16   Chicago, Illinois  60602
     Telephone:  312-214-0000
17   alevitt@gelaw.com
     jtangren@gelaw.com
18   dferri@gelaw.com

19   W. Daniel "Dee" Miles, III (*pro hac vice* motion to be
     filed)
20   H. Clay Barnett, III (*pro hac vice* motion to be filed)
     Archie I. Grubb, II (*pro hac vice* motion to be filed)
21   Andrew E. Brashier (*pro hac vice* motion to be filed)
     **BEASLEY, ALLEN, CROW,**
22   **METHVIN, PORTIS & MILES, P.C.**
     272 Commerce Street
23   Montgomery, Alabama  36104
     Telephone: 334-269-2343
24   Dee.Miles@Beasleyallen.com
     Clay.Barnett@BeasleyAllen.com
25   Archie.Grubb@Beasleyallen.com
     Andrew.Brashier@Beasleyallen.com
26

27   Mark DiCello (*pro hac vice* motion to be filed)
     **THE DICELLO LAW FIRM**
28   7556 Mentor Avenue

108

Mentor, Ohio  44060
Telephone: 440-953-8888
madicello@dicellolaw.com

Marcus Rael (*pro hac vice* motion to be filed)
**ROBLES, RAEL & ANAYA, P.C.**
500 Marquette NW, Suite 700
Albuquerque, New Mexico  87102
Telephone:  505-242-2228
marcus@roblesrael.com

Anthony J. Garcia, Esq. (*pro hac vice* motion to be filed)
**AG LAW**
742 South Village Circle
Tampa, Florida  33606
Telephone:  813-259-9555
anthony@aglawinc.com

Timothy J. Becker (*pro hac vice* motion to be filed)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, Minnesota  55101
Telephone: 612-436-1800
tbecker@johnsonbecker.com

Ben Finley (*pro hac vice* motion to be filed)
**THE FINLEY FIRM, P.C.**
200 13th Street
Columbus, Georgia 31901
Telephone: (706) 322-6226
bfinley@thefinleyfirm.com

***Counsel for Plaintiffs and the Proposed Classes***

CLASS ACTION COMPLAINT

1

Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California  94104
Telephone:  415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

2

3

4

5

Adam J. Levitt*
John E. Tangren*
Daniel R. Ferri*
**GRANT & EISENHOFER P.A.**
30 North LaSalle Street, Suite 2350
Chicago, Illinois  60602
Telephone:  (312) 214-0000
alevitt@gelaw.com
jtangren@gelaw.com
dferri@gelaw.com

6

7

8

9

10

11

W. Daniel "Dee" Miles, III*
H. Clay Barnett, III*
Archie I. Grubb, II*
Andrew E. Brashier*
**BEASLEY, ALLEN, CROW,**
  **METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama  36104
Telephone:  334-269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Archie.Grubb@Beasleyallen.com
Andrew.Brashier@Beasleyallen.com


*Motions to appear *pro hac vice* to be filed

12

Attorneys for Plaintiffs

13

14

15

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

16

17

18

19

20

21

MONTEVILLE SLOAN, JR., RAUL
SIQUEIROS, JOSEPH BRANNAN, DONALD
LUDINGTON, THOMAS SHORTER,
GABRIEL DEL VALLE, GAIL LANNOM,
BRADLEY K. ZIERKE, ROSS DAHL, DREW
PETERSON, BARBARA MOLINA, STEVEN
EHRKE, BILL MAUCH, THOMAS GULLING,
RONALD JONES, and JOHN GRAZIANO,
individually and on behalf of all others similarly
situated,

Plaintiffs,

22

23

24

v.

25

GENERAL MOTORS LLC,

26

Defendant.

Case No.:

***EXHIBIT A* TO COMPLAINT:**
**DECLARATION OF RAUL SIQUEIROS**

27

28

I, Raul Siqueiros, declare:

1.      I am a Plaintiff in this action.  The following is based upon my personal knowledge and if called upon as a witness to testify in this matter, I could and would testify competently thereto.

2.      I make this Declaration pursuant to California Civil Code section 1780(d) so as to state facts showing that this action has been commenced in the proper county.

3.      Based upon information provided to me by my counsel, Clay Barnett, it is my belief that Defendant General Motors LLC ("GM") does business in the County of San Francisco, a county within the Northern District of California.   The information provided to me is from GM's website at http://www.gm.com/mol/m-2016-nov-1117-maven.html, which states that GM is operating its personal mobility service, Maven, in San Francisco.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on December 19, 2016.


_Raul Siqueiros._

Raul Siqueiros

---

2

DECLARATION OF RAUL SIQUEIROS