Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California  94104
Telephone:  415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Adam J. Levitt (*pro hac vice*)
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900
alevitt@dlcfirm.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama  36104
Telephone:  334-269-2343
Dee.Miles@beasleyallen.com

Attorneys for Plaintiffs (*additional counsel appear on signature page*)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MONTEVILLE SLOAN, JR., RAUL SIQUEIROS, JOSEPH BRANNAN, LARRY GOODWIN, TED EDGECOMB, MARC PERKINS, DONALD LUDINGTON, THOMAS SHORTER, DERICK BRADFORD, GABRIEL DEL VALLE, KEVIN HANNEKEN, GAIL LANNOM, BRADLEY K. ZIERKE, DAN MADSON, JAMES FAULKNER, JOSEPH OLIVIER, SCOTT SMITH, ROSS DAHL, DREW PETERSON, MICHAEL WARE, STEVE KITCHEN, JOHN NEUBAUER, BARBARA MOLINA, STEVEN EHRKE, BILL MAUCH, THOMAS GULLING, RONALD JONES, MIKE WARPINSKI, JOHN GRAZIANO, JOSHUA BYRGE, RUDY SANCHEZ, CHRISTOPHER THACKER, RANDY CLAUSEN, JAMES ROBERTSON, and JONAS BEDNAREK, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS LLC, <br><br> Defendant. | Case No.:  16-cv-07244-EMC <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> Judge:  Hon. Edward J. Chen <br> Hearing Date:  July 6, 2017 <br> Time of Hearing:  1:30 p.m. |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 1

LEGAL STANDARDS ............................................................................................................. 3

ARGUMENT ............................................................................................................................. 4

I.    PLAINTIFFS HAVE CONSTITUTIONAL STANDING .............................................. 4

II.    PLAINTIFFS HAVE PLEADED CAUSATION AND DAMAGES. ........................... 9

III.    PLAINTIFFS' CONSUMER PROTECTION AND FRAUD CLAIMS ARE WELL-PLEADED. .................................................................................................................... 9

    A.    General Motors Had a Duty to Disclose the Low-Tension Oil Ring Defect. ................... 9

        1.    The Low-Tension Oil Ring Defect Was Material Regardless of Whether Plaintiffs Allege a Safety Concern. ................................................... 10

        2.    Plaintiffs' Allegations Establish That the Low-Tension Oil Ring Defect Renders the Class Vehicles Unsafe. .................................................. 12

    B.    The Allegations Sufficiently Allege GM's Knowledge of the Defect. ........................... 14

    C.    Plaintiffs Do Not Assert Affirmative Misrepresentation Claims. ................................... 18

    D.    Plaintiffs Have Adequately Pleaded Reliance. ................................................................ 18

    E.    Plaintiffs Have Satisfied Their Pre-Suit Notice Requirements. ...................................... 20

IV.    PLAINTIFFS HAVE ADEQUATELY PLEADED THEIR BREACH OF EXPRESS WARRANTY CLAIMS. ............................................................................................... 21

    A.    The Low-Tension Oil Ring Defect Is Covered under GM's Limited Warranty. ............ 21

    B.    Presentment for Repair Would Have Been Futile. .......................................................... 22

V.    PLAINTIFFS HAVE ADEQUATELY PLEADED THEIR BREACH OF IMPLIED WARRANTY CLAIMS. ............................................................................................... 24

VI.    PLANTIFFS' CLAIMS ARE NOT BARRED BY ANY APPLICABLE STATUTES OF LIMITATION. .............................................................................................................. 26

    A.    Plaintiffs' Implied Warranty Claims Are Timely Filed. ................................................. 26

B.    Plaintiffs' Consumer Protection Claims Are Not Barred by the Applicable Statutes of Limitation. ............................................................................................................... 28

VII.   PLAINTIFFS' WARRANTY CLAIMS DO NOT HAVE OTHER FATAL DEFICIENCIES. ............................................................................................................ 30

A.    Plaintiffs Have Adequately Pleaded Harm and Damages. ............................................... 30

B.    No Plaintiff's Claim Is Barred by U.C.C § 2-607. ......................................................... 31

VIII.  PLAINTIFFS HAVE ADEQUATELY PLEADED UNJUST ENRICHMENT. ...................... 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ADA County Hwy. Dist. v. Rhythm Eng'g, LLC*,
　2016 WL 4582045 (D. Idaho Sept. 1, 2016) ....................................................................33

*Ades v. Werther*,
　256 Ga. App. 8, 567 S.E.2d 340 (Ga. Ct. App. 2002).......................................................33

*Afzal v. BMW of N. Am., LLC*,
　2016 WL 6126913 (D.N.J. Oct. 17, 2016) ......................................................................23

*In re Air Bag Prods. Liab. Litig.*,
　7 F. Supp. 2d 792 (E.D. La. 1998) ..................................................................................6

*In re All Terrain Vehicle Litig.*,
　771 F. Supp. 1057 (C.D. Cal. 1991), *aff'd in part and remanded sub nom. In re All
　Terrain Vehicle Litig.*, 978 F.2d 1265 (9th Cir. 1992) ...................................................18

*Allen v. Similasan Corp.*,
　96 F. Supp. 3d 1063 (S.D. Cal. 2015) ............................................................................27

*Am. Suzuki Motor Corp. v. Superior Court*,
　37 Cal.App.4th 1291 (Cal. App. 1995) ...........................................................................24

*Andren v. Alere, Inc.*,
　207 F. Supp. 3d 1133 (S.D. Cal. 2016) ..........................................................................17

*In re Aqua Dots Prods. Liab. Litig.*,
　654 F.3d 748 (7th Cir. 2011)............................................................................................6

*Arena Resources, Inc. v. Obo, Inc.*,
　238 P.3d 357 (N.M. Ct. App. 2010) ...............................................................................34

*Asghari v. Volkswagen Group of Am., Inc.*,
　42 F. Supp. 3d 1306 (C.D. Cal. 2013)..................................................................... *passim*

*ASP Ent., Inc. v. Guillory*,
　22 So.3d 964 (La. Ct. App. 2009) ..................................................................................28

*Astiana v. Hain Celestial Group, Inc.*,
　783 F.3d 753 (9th Cir. 2015).....................................................................................32, 33

*Auburn Univ. v. IBM Corp.*,
　716 F. Supp. 2d 1114 (M.D. Ala. 2010) .........................................................................34

*Avedisian v. Mercedes-Benz USA, LLC*,
    43 F. Supp. 3d 1071 (C.D. Cal. 2014)................................................................14

*Baba v. Hewlett-Packard Co.*,
    2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ......................................................17

*Baggett v. Hewlett-Packard Co.*,
    582 F. Supp. 2d 1261 (C.D. Cal. 2007)..............................................................20

*Baillargeon v. Kazanjians Garage Inc.*,
    2008 Mass. App. Div. 52 (Dist. Ct. 2008)..........................................................21

*Barakezyan v. BMW of N. Am. LLC*,
    2016 WL 2840803 (C.D. Cal. April 7, 2016)........................................................8

*Bardin v. DaimlerChrysler Corp.*,
    136 Cal. App. 4th 1255 (2006)....................................................................10, 11

*Barlow v. Pfizer Inc.*,
    2013 WL 12171892 (W.D. Tex. Feb. 22, 2013) ................................................31

*Becerra v. Gen. Motors LLC*,
    2017 WL 951028 (S.D. Cal. Mar. 10, 2017)......................................................33

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................3

*Belluomini v. CitiGroup, Inc.*,
    2013 WL 3855589 (N.D. Cal. July 24, 2013) ....................................................30

*Benton v. Snyder*,
    825 S.W.2d 409 (Tenn. 1992) ...........................................................................28

*Berenblat v. Apple, Inc.*,
    2010 WL 1460297 (N.D. Cal. Apr. 9, 2010)......................................................17

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009).............................................................................7, 8

*Boysen v. Walgreen Co.*,
    2012 WL 2953069 (N.D. Cal. July 19, 2012) ......................................................5

*BP Am. Prod. Co. v. Patterson*,
    263 P.3d 103 (Colo. 2011) .................................................................................27

*Brenner v. Procter & Gamble Co.*,
    2016 WL 8192946 (C.D. Cal Oct. 20, 2016) .....................................................33

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*,
    288 F.3d 1012 (7th Cir. 2002)........................................................................6, 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Brown v. Bank of Am. Corp.*,
  2011 WL 1311278 (D. Mass. Mar. 31, 2011) ...............................................................21

*Buss v. Rosenow*,
  558 N.W.2d 706 (Wis. Ct. App. 1996).........................................................................34

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010).......................................................................................11

*Caterpillar Fin. Servs. Corp. v. Harold Tatman and Son's Enterprises, Inc.*,
  50 N.E.3d 955 (Ohio Ct. App. 2015) ..........................................................................26

*Chamberlan v. Ford Motor Co.*,
  369 F. Supp. 2d 1138 (N.D. Cal. 2005)........................................................................20

*CheckPoint Fluidic Systems Int'l, Ltd. v. Guccione*,
  888 F. Supp. 2d 780 (E.D. La. 2012) ...........................................................................30

*Cholakyan v. Mercedes-Benz USA, LLC*,
  796 F. Supp. 2d 1220 (C.D. Cal. 2011).............................................................7, 13, 24

*City Nat'l Bank of Fla. v. Checkers, Simon & Rosner*,
  32 F.3d 277 (7th Cir. 1994).........................................................................................29

*Clark v. LG Electronics, U.S.A., Inc.*,
  2013 WL 5816410 (S.D. Cal. Oct. 29, 2013)..........................................................18, 19

*Coe v. Philips Oral Healthcare Inc.*,
  2014 WL 722501 (W.D. Wash. Feb. 24, 2014) .............................................................8

*Cole v. General Motors Corp.*,
  484 F.3d 717 (5th Cir. 2007).........................................................................................7

*Communities v. Insinkerator & Emerson Elec. Co.*,
  2016 WL 3351009 (E.D. Wash. June 15, 2016) ...........................................................33

*Continental Potash, Inc. v. Freeport McMoran, Inc.*,
  858 P.2d 66 (N.M. 1993)..............................................................................................28

*Contreras v. Toyota Motor Sales USA, Inc.*,
  2010 WL 2528844 (N.D. Cal. June 18, 2010) ..........................................................8, 23

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990)........................................................................................18

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. Mar. 14, 2016) ...........................................................33

*Cordes v. Holt and Anderson Ltd.*,
  2009 WL 2016613 ........................................................................................................34

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010)..................................................................34

*Daigle v. Ford Motor Co.*,
   713 F. Supp. 2d 822 (D. Minn. 2010) ......................................................33

*Daniel v. Ford Motor Co.*,
   2013 WL 2474934 (E.D. Cal. June 7, 2013)............................................19

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015)..................................................................19

*Daugherty v. American Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006).......................................................10, 11, 14

*Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*,
   669 F.2d 1049 (5th Cir. 1982)..................................................................23

*Demorato v. Carver Boat Corp.*,
   304 F. App'x 100 (3d Cir. 2008)..............................................................23

*Doyle v. Chrysler Group LLC*,
   2014 WL 3361770 (C.D. Calf. July 3, 2014) ..........................................18

*Ehreth v. Capital One Servs.*,
   2008 WL 3891270 (W.D. Wash. Aug. 19, 2008) ....................................33

*Eickmeyer v. Blietz Org., Inc.*,
   671 N.E.2d 795 (Ill. Ct. App. 1966)........................................................28

*Elliot v. GM LLC*,
   829 F.3d 135 (2d. Cir. 2016)....................................................................15

*Falco v. Nissan North Am., Inc.*,
   2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) .............................14, 16, 18

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007).......................................10, 13, 16

*Forouzesh v. Starbucks Corp.*,
   2016 WL 4443203 (C.D. Cal. Aug. 19, 2016) ........................................32

*Fox v. Dupree*,
   633 So. 2d 612 (La. Ct. App. 1993) .........................................................30

*Freebird, Inc. v. Merit Energy Co.*,
   883 F. Supp. 2d 1026 (D. Kan. 2012) ......................................................29

*Friedland v. Gates*,
   509 S.E.2d 793 (N.C. 1988) .....................................................................28

*In re General Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*,
   966 F. Supp. 1525 (E.D. Mo. 1997) ...................................................................6

*Giordano v. Dzerwinski*,
   216 A.2d 874 (Del. Supr. 1966) ......................................................................28

*Gray v. Toyota Motor Sales, U.S.A.*,
   2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ...................................................17

*Green v. Bradley Co.*,
   194 F. Supp. 3d 479 (D.S.C. 2016) ................................................................28

*Greenberg v. Broad Cap. Assoc., Inc.*,
   2002 WL 31269617 (N.D. Ill. Oct. 9, 2002) ..................................................34

*Greenway Nutrients, Inc. v. Blackburn*,
   33 F. Supp. 3d 1224 (D. Colo. 2014) .............................................................33

*Grodzitsky v. Am. Honda Motor Co.*,
   2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ..................................................17

*Harrison v. Leviton Mfg. Co.*,
   2006 WL 2990524 (N.D. Okla. Oct. 19, 2006) ...............................................6

*Hasenyager v. Board of Police Comm'rs of Kansas City*,
   606 S.W.2d 468 (Mo. Ct. App. 1980) ............................................................28

*Henry v. Synchrony Bank*,
   2016 WL 6871269 (S.D.W. Va. Nov. 21, 2016) ............................................21

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ..........................................................................6

*Hodges v. Apple, Inc.*,
   2013 WL 4393545 (N.D. Cal. Aug 12, 2013) ...............................................11

*Hornberger v. General Motors Corp.*,
   929 F. Supp. 884 (E.D. Pa. 1996) ..................................................................26

*Hubbard v. Gen. Motors Corp.*,
   1996 WL 274018 (S.D.N.Y. May 22, 1996) ..................................................18

*Hydrogen Master Rights, Ltd. v. Weston*,
   2017 WL 78582 (D. Del. Jan. 9, 2017) ..........................................................34

*Ireland v. Dodson*,
   704 F. Supp. 2d 1128 (D. Kan. 2010) ............................................................33

*Isip v. Mercedes-Benz USA LLC*,
   155 Cal. App. 4th 19 (Cal. App. 1997) .....................................................24, 30

*Jamerson v. UMG Recordings, Inc.*,
  2014 WL 12588642 (C.D. Cal. Apr. 14, 2014) .................................................................33

*Janvey v. Suarez*,
  978 F. Supp. 2d 685 (N.D. Tex. 2013) ...........................................................................34

*Johnson v. GAPVT Motors, Inc.*,
  663 S.E.2d 779 (Ga. Ct. App. 2008) ..............................................................................20

*Keegan v. Am. Honda Motor Co.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012) .....................................................................24, 26

*Keller v. FCOA, LLC*,
  2016 WL 110590 (W.D. Ark. Jan. 8, 2016) ...................................................................34

*Kennedy v. Polar-BEK & Baker Wildwood P'ship*,
  682 So. 2d 443 (Ala. 1996) .............................................................................................33

*King v. Carolina First Bank*,
  26 F. Supp. 3d 510 (D.S.C. 2014) ..................................................................................33

*Kohl's Indiana, L.P. v. Owens*,
  979 N.E.2d 159 (Ind. Ct. App.2012) ..............................................................................33

*Koulajian v. Trek Bicycle Corp.*,
  1992 WL 28884 (S.D.N.Y. Feb. 11, 1992) ....................................................................21

*Kremers v. Coca-Cola Co.*,
  712 F. Supp. 2d 759 (S.D. Ill. 2010) ..............................................................................29

*Krueger v. St. Joseph's Hospital*,
  305 N.W.2d 18 (N.D. 1981) ............................................................................................28

*Kwikset Corp. v. Super. Ct.*,
  246 P.3d 877 (Cal. 2011).............................................................................................5, 9

*La Crosse Cty. v. Trinity Indus., Inc.*,
  2016 WL 1274623 (W.D. Wis. Mar. 31, 2016) ..............................................................33

*Lassen v. Nissan North America, Inc.*,
  211 F. Supp. 3d 1267 (C.D. Cal. 2016)......................................................................8, 11

*Lawrence v. Wells Fargo Bank, N.A.*,
  2014 WL 2705425 (N.D. Cal. June 13, 2014) ..................................................................5

*Leathers v. Leathers*,
  2010 WL 1936137 (D. Kan. May 13, 2010) ...................................................................34

*Lenovo Adware Litig.*, 2016 WL 6277245, at *13 (N.D. Cal. Oct. 27, 2016) .........................11

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997)............................................................................................10

*Lincoln Elec. Co. v. Technitrol, Inc.*,
  2010 WL 2219341 (N.D. Ohio June 2, 2010) ................................................................23

*Lovejoy v. AT&T Corp.*,
  119 Cal. App. 4th 151 (2004) .........................................................................................16

*Ludwig v. Ford Motor Co.*,
  510 N.E.2d 691 (Ind. Ct. App. 1986) .............................................................................28

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................................................4

*MacDonald v Ford*,
  37 F. Supp. 3d 1087 (N.D. Cal. 2014) ...............................................................16, 19, 20

*Mardisian v. Mercedes Benz USA, LLC*,
  2009 WL 8379784 (C.D. Cal. May 4, 2009) ..................................................................13

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ......................................................................19, 20

*Masquat v. DaimlerChrysler Corp.*,
  195 P.3d 48 (Okla. 2008) ................................................................................................28

*Mass. Mutual Life Ins. Co.*, 97 Cal.App.4th at 1292 (2002) ..................................................18

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ..........................................................................................4

*Mayfield v. Heiman*,
  730 S.E.2d 685 (Ga. Ct. App. 2012) ..............................................................................28

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .......................................................................................6, 9

*McColl Farms, LLC v. Pflaum*,
  837 N.W.2d 359 (N.D. 2013) ..........................................................................................33

*In re McDonald's French Fries Litig.*,
  503 F. Supp. 2d 953 (N.D. Ill. 2007) ..............................................................................31

*Meadow v. Nibco, Inc.*,
  2016 WL 2986350 (M.D. Tenn. May 24, 2016) ..............................................................33

*Mentis v. Delaware Am. Life Ins. Co.*,
  1999 WL 744430 (July 28, 1999) ....................................................................................29

*Micromuse, Inc. v. Micromuse, Plc*,
  304 F. Supp. 2d (D. Mass. 2004) .....................................................................................34

*Miles v. A.O Smith Harvestore Prods., Inc.*,
  992 F.2d 813 (8th Cir. 1993) ...........................................................................................27

*Milicevic v. Mercedes-Benz USA, LLC*,
   256 F. Supp. 2d 1168 (D. Nev. 2003) ................................................................23

*Miller v. Miller*,
   2015 WL 6751097 (Pa. Super. Nov. 4, 2015) ....................................................34

*Ex parte Miller*,
   693 So. 2d 1372 (Ala. 1997) ..............................................................................23

*Molineux v. Reed*,
   532 A.2d 792 (Pa. 1987) .....................................................................................28

*Montanez v. Gerber Childrenswear, LLC*,
   2011 WL 6757875 (C.D. Cal. Dec. 15, 2011)......................................................7

*In re Motors Liquidation Co.*,
   541 B.R. 104 (Bankr. S.D.N.Y. 2015) ...............................................................15

*Mui Ho v. Toyota Motor Corp.*,
   931 F. Supp. 2d 987 (N.D. Cal. 2013)...................................................16, 18, 26

*Murphy v. Best Buy Stores LP*,
   2017 WL 1829118 (9th Cir. May 5, 2017)............................................................5

*Murrah v. EOG Res., Inc.*,
   2011 WL 227652 (W.D. Okla. Jan. 21, 2011) ....................................................33

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) (Chen, J.) ........................................ *passim*

*N.C. Corff Partnership, Ltd. v. OXY USA, Inc.*,
   929 P.2d 288 (Okla. Ct. App. 1996)...................................................................34

*Naiser v. Unilever U.S., Inc.*,
   975 F. Supp. 2d 727 (W.D. Ky. 2013) ................................................................33

*Neman v. Walker*,
   618 S.E.2d 336 (Va. 2005) ..................................................................................28

*Ney Leasing Corp., Inc. v. Cargill Meat Logistics Solutions, Inc.*,
   2010 WL 3941999 (N.D. Iowa Oct. 6, 2010)......................................................34

*Norcia v. Samsung Telecomms. Am.*,
   2015 WL 4967247 (N.D. Cal. Aug. 20, 2015) ..............................................10, 11

*Norgart v. Upjohn Co.*,
   21 Cal. 4th 383 (1999)........................................................................................34

*Oaster v. Robertson*,
   173 F. Supp. 3d 1150 (D. Colo. 2016) ...............................................................34

*OCM Principal Opportunities Fund v. CIBC World Market Corp.*,
   157 Cal. App. 4th 835 (2007)..................................................................................20

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009)........17, 18

*Owen v. King*,
   111 S.W.2d 695 (Tex. Comm. App. 1938) .............................................................28

*Parenteau v. General Motors LLC*,
   2015 WL 1020499 (C.D. Cal. Mar. 5, 2015) .........................................................26

*Perez v. Monster Inc.*,
   149 F. Supp. 3d 1176 (N.D. Cal. 2016) (Chen, J.)...............................................32

*Philips v. Ford Motor Co.*,
   2015 WL 4111448 (N.D. Cal. July 7, 2015) .........................................................20

*Philips v. Ford Motor Co.*,
   2016 WL 1745948 (N.D. Cal. May 3, 2016) .........................................................27

*Proal v. JP Morgan Chase & Co.*,
   202 F. Supp. 3d 209 (D. Mass. 2016)....................................................................29

*Property One., Inc. v. USAgencies, L.L.C.*,
   830 F. Supp. 2d 170 (M.D. La. 2011) ....................................................................33

*Rasmussen v. Apple Inc.*,
   27 F. Supp. 3d 1027 (N.D. Cal. 2014)....................................................................18

*Regents of Univ. of Cal. v. Superior Ct.*,
   20 Cal. 4th 509 (1999)..............................................................................................27

*Resource Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*,
   314 F. Supp. 2d 763 (N.D. Ohio 2004) ................................................................33

*Richards v. Arteva Specialties S.A.R.L.*,
   850 N.E.2d 1068 (Mass. App. Ct. 2006) ..............................................................20

*Riva v. Pepsico, Inc.*,
   82 F. Supp. 3d 1045 (N.D. Cal. 2015)......................................................................6

*Rivera v. Wyeth-Ayerst Labs.*,
   283 F.3d 315 (5th Cir. 2002)......................................................................................7

*Robert Thomas and Anne McDonald Thomas Rev. Trust v. Inland Pac. Colo., LLC*,
   2012 WL 2190852 (D. Colo. June 14, 2012) .......................................................34

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016)..................................................................32

*Roneker v. Kenworth Truck Co.*,
    944 F. Supp. 179 (W.D.N.Y. 1996) ................................................................23

*Rothbaum v. Samsung Telecomms. Am., LLC*,
    52 F. Supp. 3d 185 (D. Mass. 2014) ..............................................................23

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*,
    155 F. Supp. 3d 772 (N.D. Ill. 2016)..............................................................23

*Rutherford Holdings, LLC v. Plaza Del Rey*,
    223 Cal. App. 4th 221 (Cal. App. 2014) .........................................................32

*Rutledge v. Hewlett-Packard Co.*,
    238 Cal. App. 4th 1164 (2015).......................................................10, 11, 12

*In re Safeway Tuna Cases*,
    2016 WL 3743364 (N.D. Cal. 2016) (Chen, J.) ..............................................32

*Sanchez-Knutson v. Ford Motor Co.*,
    52 F. Supp. 3d 1223 (S.D. Fla. 2014)..............................................................22

*Sanderson Farms Inc. v. Ballard*,
    917 So.2d 783 (Miss. 2005) ............................................................................28

*Sater v. Chrysler Group, LLC*,
    2015 WL 736273 (C.D. Cal. Feb. 20, 2015) ..................................................27

*In re Saturn L-Series Timing Chain Prods. Liab. Litig.*,
    2008 WL 4866604 (D. Neb. Nov. 7, 2008).....................................................21

*Schlote v. Dawson*,
    676 N.W.2d 187 (Iowa 2004).........................................................................28

*Sellers v. A.H. Robins Co.*,
    715 F.2d 1559 (11th Cir. 1983).......................................................................27

*Shahar v. Hotwire, Inc.*,
    2013 WL 3877785 (N.D. Cal. July 25, 2013) .................................................22

*Sims v. Kia Motors Am., Inc.*,
    2014 WL 12558249 (C.D. Cal. Mar. 31, 2014) ................................................8

*Smith v. Continental Ins. Co.*,
    326 So.2d 189 (Fl. Dist. Ct. App. 1976) .........................................................28

*Smith v. Ford Motor Co.*,
    749 F. Supp. 2d 980 (N.D. Cal. 2010), *aff'd* 462 F. App'x 660 (9th Cir. 2011).........................11, 14

*Soo Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017)............................................................................3

*Stand Energy Corp. v. Columbia Gas Transmission Corp.*,
   380 F. Supp. 748 (S.D. W. Va. 2005) ...........................................................34

*Stanley v. Huntington National Bank*,
   492 F. App'x 456 (4th Cir. 2012)................................................................21

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ......................................................................4

*State Farm Mut. Auto. Ins. Co. v. B&A Diagnostics, Inc.*,
   145 F. Supp. 3d 1154 (S.D. Fla. 2015)........................................................34

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.*,
   427 F. App'x 714 (11th Cir. 2011)...............................................................33

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2015)......................................................................18

*Steed v. Fed. Nat. Mortg. Corp.*,
   689 S.E.2d 843 (Ga. Ct. App. 2009) ............................................................21

*Sweesy v. Sun Life Assurance Co. of Canada*,
   643 F. App'x 785 (10th Cir. 2016)...............................................................34

*Tae Hae Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. Jan. 9, 2014) ...............................................8

*Tait v. BSN Home Appliances Corp.*,
   2011 WL 3941387 (C.D. Cal. Aug. 31, 2011) .............................................12

*In re Takata Airbag Prods. Liab. Litig.*,
   193 F. Supp. 3d 1324 (S.D. Fla. 2016)........................................................28

*Taragan v. Nissan North America, Inc.*,
   2013 WL 3157918 (N.D. Cal Jun. 20, 2013) ..........................................12, 17

*Team Impressions, Inc. v. Chromas Techs. Canada, Inc.*,
   2003 WL 355647 (N.D. Ill. Feb. 18, 2003)..................................................33

*Therihault v. A.H. Robins Co., Inc.*,
   698 P.2d 365 (Idaho 1985) ..........................................................................28

*Thornton v. State Farm Mut. Auto Ins. Co., Inc.*,
   2006 WL 3359448 (N.D. Ohio Nov. 17, 2006) ...........................................29

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010)........................................................17

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009)..................................................................................18

*Triad Packaging, Inc. v. SupplyOne, Inc.*,
    925 F. Supp. 2d 774 (W.D.N.C. 2013)................................................................34

*Tuohey v. Chenal Healthcare, LLC*,
    173 F. Supp. 3d 804 (E.D. Ark. 2016) ................................................................33

*Union Pac. Rail. Comp. v. Cedar Rapids and Iowa City Ry Co.*,
    477 F. Supp. 2d 980 (2007)................................................................................33

*Valasco v. Chrysler Group LLC*,
    2014 WL 4187796 (C.D. Cal. Aug. 22, 2014) ............................................19, 20

*Virginia Elec. & Power Co. v. Broe Growth Capital LLC*,
    2007 WL 2071726 (E.D. Va. July 17, 2007) .....................................................33

*Volz v. Provider Plus, Inc.*,
    2015 WL 3621113 (E.D. Mo. June 9, 2015) .......................................................33

*Warth v. Seldin*,
    422 U.S. 490 (1975) .............................................................................................4

*In re Watts*,
    298 F.3d 1077 (9th Cir. 2002)............................................................................11

*Weaver v. Chrysler Corp.*,
    172 F.R.D. 96 (S.D.N.Y 1997)...........................................................................20

*Werner v. Pittway Corp.*,
    90 F. Supp. 2d 1018 (W.D. Wis. 2000)...............................................................30

*Whitaker v. Herr Foods, Inc.*,
    198 F. Supp. 3d 476 (E.D. Pa. 2016)..................................................................33

*Whitson v. Bumbo*,
    2009 WL 1515597 (N.D. Cal. Apr. 16, 2009)......................................................5

*Wilson v. Hewlett-Packard, Inc.*,
    668 F.3d 1136 (9th Cir. 2012).....................................................................11, 17

*Xerox Corp. v. Graphic Mgmt. Servs. Inc.*,
    959 F. Supp. 2d 311 (W.D.N.Y. 2013) ..............................................................23

*Yost v. General Motors Corp.*,
    651 F. Supp. 656 (D. N.J. 1986)...........................................................................6

*Ziegelmann v. DaimlerChrysler Corp.*,
    649 N.W.2d 556 (N.D. 2002)................................................................................6

**Statutes**

13 Pa. Cons. Stat. § 2314.............................................................................................24

11 U.S.C. § 363 ..........................................................................................................................15

Ala. Code § 7-2-314 ...................................................................................................................24

Ark. Code Ann.§ 4-2-314 ..........................................................................................................24

Col. Rev. Stat. App. § 6-1-115 ..................................................................................................29

Del. Code Ann. tit. 6, § 2-314 ....................................................................................................24

Ga. Code Ann. § 10-1-399(b) .....................................................................................................20

GA Code Ann. § 10-1-401 ..........................................................................................................29

Ga. Code. Ann. § 84-2-314 .........................................................................................................24

Idaho Code Ann. § 28-2-314 .......................................................................................................24

Ind. Code §§ 26-1-2-314 .............................................................................................................24

Ky. Rev. Stat. Ann. § 355.2-314 .................................................................................................24

Mass. Gen. Laws ch. 93A, § 9(3) ...............................................................................................20

Mass. Gen. Laws ch. 106, § 2-314 .............................................................................................24

Minn. Stat.§ 336.2-314 ...............................................................................................................24

Miss. Code Ann. § 75-2-314 .......................................................................................................24

Mo. Rev. Stat. § 400.2-314 .........................................................................................................24

N.C. Gen. Stat. § 25-2-314 .........................................................................................................24

N.D. Cent. Code § 41-02-31 .......................................................................................................24

N.M. Stat. Ann. § 55-2-314 ........................................................................................................24

Okla. Stat. tit. 12A, § 2-314 ........................................................................................................24

S.C. Code Ann. § 36-2-314 .........................................................................................................24

S.C. Code Ann. § 36-2-725 .........................................................................................................28

Tenn. Code Ann. § 47-2-314 .......................................................................................................24

Tex. Bus. & Com. Code § 2.314 .................................................................................................24

Tex. Bus. & Com. Code § 17.565 ...............................................................................................29

U.C.C. § 2-314 ............................................................................................................................24

U.C.C § 2-607 .............................................................................................................................31

U.C.C § 2-714 ...................................................................................................................30

Va. Code Ann. § 8.2-314 ...................................................................................................24

Va. Code Ann. § 801-249 ..................................................................................................29

W. Va. Code § 46-2-314 ....................................................................................................24

W. Va. Code § 46A-6-106(c) .............................................................................................20

**Other Authorities**

Fed.R. Civ. P. 8 ..................................................................................................................32

Fed. R. Civ. P. 8(d) .......................................................................................................32, 33

Fed. R. Civ. P. 8(d)(2) .......................................................................................................33

Fed. R. Civ. P. 8(e)(2) .......................................................................................................33

Fed. R. Civ. P. 9(b) ...........................................................................................................19

Fed. R. Civ. P. 12(b)(1) .......................................................................................................4

Fed. R. Civ. P. 12(b)(6) ...................................................................................................3, 4

**INTRODUCTION**

Defendant General Motors LLC ("GM") knowingly sold defective model year 2010-2013 trucks and SUVs (the "Class Vehicles"). [1] The Class Vehicles are defective because of GM's use of low-tension oil rings on the pistons within the vehicles' engines. (Compl. ¶ 132-40.)  Low-tension oil rings have been used in racing car engines because, by reducing friction, they can ostensibly provide for greater horsepower.  (*Id.* ¶ 151.)  Low-tension oil rings, however, have resulted in excessive oil consumption in the Class Vehicles, which causes reduced engine lubricity, engine damage, and malfunction. (*Id.* ¶¶ 143-63.)

Rather than come clean and inform consumers that the decision to use low-tension oil rings resulted in abnormally high oil consumption that damages the Class Vehicles' engines, GM concealed the defect to sell more vehicles.  Consumers who complained to GM of excessive oil consumption were told that it was normal, and GM instructed its dealers to attempt stop-gap fixes that GM knew would not solve the underlying cause of the excessive oil consumption and the attendant engine problems arising therefrom.  (*Id.* at ¶¶ 157-163.)   Recognizing the failure of its low-tension oil ring experiment, GM quietly abandoned them in its later, successor engines.  (*Id.* at ¶ 152.)  But this was no relief to the purchasers and lessees of the Class Vehicles who paid for inherently defective vehicles that are at constant risk of severe engine damage, as well as engine fire and complete engine seizure.

Plaintiffs are purchasers of Class Vehicles from thirty-two states.  They assert claims for breach of warranty, unjust enrichment, fraudulent omission, and claims under the consumer protection laws of their respective states.  By its dismissal motion, GM seeks to avoid all liability for selling Plaintiffs defective vehicles.  For the reasons stated herein, it cannot.

**STATEMENT OF FACTS**

The pistons and cylinders within an automobile engine are lubricated by a thin film of oil to reduce friction.  (Compl. ¶ 135.)  Oil, however, should not travel around the pistons and into the combustion chambers at the top of the cylinders.  (*Id.* ¶ 136.)  If oil reaches the combustion chamber, it will be burned

---

[1]  The Class Vehicles include 2010-2013 model year Chevrolet Avalanche, Chevrolet Colorado, Chevrolet Express 1500, Chevrolet Silverado 1500, Chevrolet Suburban, Chevrolet Tahoe, GMC Canyon, GMC Savana 1500, GMC Sierra 1500, GMC Yukon, and GMC Yukon XL. (Dkt. 29, Plaintiffs' First Amended Class Action Complaint (the "Complaint") at ¶ 2.)

during an engine's power stroke, thereby reducing the quantity of oil in the vehicle and thus increasing the risk for engine damage due to insufficient lubricity.  (*Id.*)  Therefore, to prevent oil from getting past the pistons and into the combustion chamber, pistons are fitted with oil control rings that press against the cylinder walls.  (*Id.* ¶¶ 137-38.)

Beginning with model year 2007 vehicles, GM's predecessor, General Motors Corporation ("Old GM"), installed low-tension oil rings in its Generation IV Vortec 5300 engines (the "Defective Engines").  (*Id.* ¶ 126.)  By being "low-tension," these oil rings were intended to reduce friction with the cylinder wall, and thus increase horsepower.  (*Id.* ¶ 133.)  Unfortunately for purchasers of the Class Vehicles, the low-tension oil rings fail to serve their primary purpose of keeping oil in the crankcase and out of the combustion chamber, where the oil is consumed during the engines' power stroke (the "Low-Tension Oil Ring Defect").  (*Id.* ¶¶ 133, 136, 138-39.)

The Low-Tension Oil Ring Defect results in insufficient lubricity within the Defective Engines.  (*Id.* ¶ 143.)  The lack of lubricity causes increased metal-on-metal friction and damage to the internal components of the Defective Engines.  (*Id.* ¶¶ 143-47.)  Insufficient lubricity can also result in the Defective Engines overheating and catching fire, or seizing and shutting down unexpectedly.  (*Id.* ¶¶ 148-50.)  Indeed, while failing to warn vehicle owners that the Class Vehicles are extremely susceptible to a lack of lubricity, GM's manuals recognize the dangers of fire and engine seizure that are associated with insufficient oil.  (*Id.*)

The risks of the Low-Tension Oil Ring Defect are exacerbated by GM's installation of an Oil Life Monitoring System within the Class Vehicles.  (*Id.* ¶¶ 141-42.)  The Oil Life Monitoring System is a supposedly helpful feature that will inform drivers when an oil change is necessary.  (*Id.*)  But the Oil Life Monitoring System only monitors the *quality* of the oil in the vehicle, not the *quantity*.  (*Id.*)  Thus, drivers relying on the Oil Life Monitoring System as an indicator of whether their vehicles have sufficient lubricity are likely to drive hundreds, if not thousands, of miles before an oil change that might address the lack of oil in their engines.  (*Id.*)

Many complaints have been filed with the National Highway Traffic Safety Administration ("NHTSA") and posted on online forums detailing excessive oil consumption issues and resultant engine malfunction in the Class Vehicles.  (*Id.* ¶¶ 159-65.)  For example, consumers have reported:

- "Excessive oil consumption caused spark plugs to prematurely fail causing the engine to misfire and run rough….Initial repairs did not correct the oil consumption problem (1/2 quart burned in approximately 1,000-2,000 miles)…. I was told this was "normal" according to General Motors' standards.

- "Truck has been in and out of the dealership 18 times regarding ticking in the motor, excessive oil consumption and blue smoke on start up."

- "From day one this truck has burned about a quart an oil change, and no, this isn't normal. Traction control problems, engine reduced power, this problem cripples the vehicle."

(*Id.* ¶¶ 159-63.)  Apart from showing that lack of lubricity was a widespread, significant problem within the Class Vehicles, the online complaints show that, although drivers were aware of excessive oil consumption, they were never made aware that the oil consumption stemmed from an inherent defect in their vehicles' engines.  (*Id.* ¶ 164.)  In fact, as the complaints show, GM denied the existence of a defect and told consumers that the oil consumption was normal.  (*Id.* ¶¶ 159-63.)

Although GM told owners of the Class Vehicles that the excessive oil consumption issues was normal, GM knew that it was not, and it knew why.  As stated, low-tension oil rings have been used in racing engines, and increased oil consumption was known in the industry as an effect of using low-tension oil rings.  (*Id.* ¶ 151.)  Coupled with the fact that consumers repeatedly complained to GM about excessive oil consumption in the Class Vehicles, including those vehicles sold pre-2010, the Complaint alleges that GM knew of the Low-Tension Oil Ring Defect.  (*Id.* ¶¶ 153-55, 159-63.)  Indeed, GM was aware of the excessive oil loss issues as early as August 2010, because from this date forward GM issued repeated Technical Service Bulletins ("TSBs") addressing oil consumption in the Class Vehicles.  (*Id.* ¶¶ 156-57.)  While these TSBs suggested stop-gap fixes, the TSBs explicitly recognized that the ultimate fix for the oil consumption problems was the replacement of the piston and ring assemblies (which include the low-tension oil rings).  (*Id.* ¶ 157.)  Ultimately, for its Generation V Vortec 5300 engine (the successor to the Defective Engines), which GM began designing as early as May 2011, GM abandoned the low-tension oil ring experiment, thereby admitting its wrongful conduct.  (*Id.* ¶ 152.)

## LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In ruling on a motion to dismiss under Rule 12(b)(6), a court must "accept the plaintiff's allegations as true and view them in the light most favorable to her." *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).  "If

1    there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff,

2    both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."

3    *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

4            In ruling on a motion to dismiss for lack of constitutional standing under Fed. R. Civ. P. 12(b)(1),

5    a court must, likewise, "accept as true all material allegations of the complaint and must construe the

6    complaint in favor of the complaining party."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir.

7    2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  "At the pleading stage, general factual

8    allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss

9    [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the

10   claim.'"  *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

11                                          **ARGUMENT**

12   **I.    PLAINTIFFS HAVE CONSTITUTIONAL STANDING.**

13           Plaintiffs have alleged an actual, concrete injury, thus requiring the Court to reject GM's standing

14   challenge.  *See Lujan*, 504 U.S. at 560 (stating that injury, for the purposes of Article III standing, must

15   be concrete and particularized, and actual or imminent).  Specifically, Plaintiffs suffered economic loss

16   by unwittingly overpaying for vehicles fitted with defective engines that consume an abnormally high

17   volume of oil.  Such excessive oil consumption leads to engine damage, and can cause engine fires and

18   sudden breakdowns.  The Complaint states the injury:

19           Each current or former purchaser or lessee of a Class Vehicle paid for a vehicle fitted with
20           a defective engine that consumed an abnormally high volume of oil, subjecting their
             vehicles to the problems described herein.  Each of these current and/or former owners
21           and/or lessees were damaged in that they paid more for their Class Vehicles than they
             would have paid had they known about the defect that GM failed to disclose, or they would
22           not have purchased or leased their Class Vehicles at all.  (Compl. ¶ 14)

23   The Complaint further explains the safety hazards caused by the excessive oil consumption, detailing

24   how GM's own manuals warn that when oil pressure is low: "[t]he engine can become so hot that it

25   catches fire" and that "severe engine damage can occur."  (*Id.* ¶¶ 149, 150.)

26           Plaintiffs' injury is not "conjectural or hypothetical," *Lujan*, 504 U.S. at 560, because they

27   actually received a defective product.  GM suggests that Plaintiffs may have received non-defective

28   engines that do not consume an abnormally high volume of oil, but this is contrary to the Complaint's

allegations. As stated throughout the Complaint, as a result of the Low-Tension Oil Ring Defect, the Defective Engines inherently consume an abnormally high volume of oil:

- "Each current or former purchaser or lessee of a Class Vehicle paid for a vehicle fitted with a defective engine that consumed an abnormally high volume of oil…." (Compl. ¶ 14.)

- "The Generation IV Vortec 5300 Engines suffer from excessive oil consumption and the resulting internal component damage caused by inadequate lubricity levels." (*Id.* ¶ 127.)

- "[W]ithin the Generation IV Vortec 5300 engines, an excessive amount of oil creeps past the pistons and the oil rings, and migrates into the combustion chamber, where it is consumed during the combustion process." (*Id.* ¶ 139.)

(*See also id.* ¶¶ 5, 7, 10, 11, 13, 133, 143, and 145.) The Low-Tension Oil Ring Defect is inherent and affects all of the Class Vehicles. Thus, each Plaintiff suffered an injury in fact when they purchased vehicles containing the Low-Tension Oil Ring Defect (that GM concealed) because Plaintiffs would not have purchased these vehicles, or they would have paid less, had they known of the defect. *See Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885-87 (Cal. 2011) (explaining, in the context of California's Unfair Competition Law, that the "established federal meaning" of injury in fact encompasses lost money or property: "lost money or property—economic injury—is itself a classic form of injury in fact."); *Murphy v. Best Buy Stores LP*, 2017 WL 1829118, at *1 (9th Cir. May 5, 2017) (testimony that plaintiff "would not have paid money for" a television receiver had defendant not misrepresented nature of the transaction" was sufficient to create a genuine issue of material fact regarding standing); *Lawrence v. Wells Fargo Bank, N.A.*, 2014 WL 2705425, at *10 (N.D. Cal. June 13, 2014) ("Economic injury is a classic form of injury in fact.").

Because Plaintiffs have alleged facts showing that they unknowingly purchased defective vehicles, this case is easily distinguishable from those that GM cites, wherein plaintiffs either: (a) received a non-defective product that allegedly carried a propensity for future harm, or (b) failed to credibly allege that a supposed hidden flaw in a product was, in fact, a flaw. *See Whitson v. Bumbo*, 2009 WL 1515597, at *8 (N.D. Cal. Apr. 16, 2009) (plaintiff purchased a soft foam chair for babies that did not contain a defect, but only carried an alleged "propensity to be unsafe to infants."); *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012) (where plaintiff complained about the presence of lead and arsenic in defendant's fruit juice, but did not adequately allege that these levels of lead and

arsenic could cause physical harm or violated FDA guidelines, plaintiff only alleged that the product was "unsatisfactory to him."); *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1051-53 (N.D. Cal. 2015) (plaintiffs failed to allege that consuming Pepsi carried a credible risk of harm); *Harrison v. Leviton Mfg. Co.*, 2006 WL 2990524, at *3 (N.D. Okla. Oct. 19, 2006) (where plaintiffs purchased electrical components that had not malfunctioned and the court held that plaintiffs had not suffered "economic or personal injury."); *Ziegelmann v. DaimlerChrysler Corp.,* 649 N.W.2d 556 (N.D. 2002) (no injury where plaintiff "did not receive a product that was different than what he had contracted to buy.").[2]

In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 288 F.3d 1012 (7th Cir. 2002), upon which GM heavily relies, is equally inapposite. First, in *Bridgestone*, the Seventh Circuit did not address the standing issue. Second, *Bridgestone* involved tires that were functioning properly, but carried the risk of harm; whereas here, Plaintiffs were sold vehicles with engines that are not functioning properly. Finally, to the extent that GM is arguing that standing cannot be based on financial loss when defective products are at issue, this is not the law. *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) (where plaintiffs purchased toy beads that carried a risk of injury by swallowing, but had not suffered any physical injury, "members of the class did not suffer physical injury, but it does not mean that they were uninjured. The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing."); *Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1105 (9th Cir. 2013) (holding that an allegation that the plaintiff made a purchase he would not have made, but for the defendants' misrepresentations, was enough to establish standing); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594-95 (9th Cir. 2012) (holding that plaintiffs established standing by pleading "that class members paid

---

[2] GM cites other cases that do not address the standing issue and which fail to support the proposition that a plaintiff who unknowingly purchases a defective product is uninjured for the purpose of Constitutional standing. *See In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 803-804 (E.D. La. 1998) (no viable implied warranty claims where plaintiffs failed to allege that air bags functioned improperly under normal use); *In re General Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1533 (E.D. Mo. 1997) (holding that plaintiffs failed to plead damages where plaintiffs purchased vehicles that had only a "potential" for failure); *Yost v. General Motors Corp.*, 651 F. Supp. 656, 657-68 (D. N.J. 1986) (failure to plead damages where plaintiff "had not stated that the engine in his vehicle [was] defective in any way.").

1    more for the CMBS than they otherwise would have paid, or bought it when they otherwise would not

2    have done so, because Honda made deceptive claims and failed to disclose the system's limitations.").

3         GM's reliance on *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) is likewise

4    unavailing because in that case Plaintiffs only sought damages for potential physical injuries that they

5    had not yet suffered, and did not seek economic damages.  Indeed, the Fifth Circuit distinguished *Rivera*

6    in *Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007), which is much closer to the facts at hand.

7    In *Cole*, the Fifth Circuit held that plaintiffs who had purchased vehicles equipped with airbags that had

8    the potential to unexpectedly deploy had standing because they suffered economic injuries due to

9    receiving defective vehicles.  Here, the injury is even less conjectural than in *Cole*, where the airbags had

10   not yet unexpectedly deployed, because the Defective Engines are not only a safety risk, but are also

11   inherently consuming an abnormally high volume of oil.

12        Perhaps recognizing that Plaintiffs have indeed pleaded a cognizable injury, GM further argues

13   that Plaintiffs have alleged "in conclusory fashion that they 'overpaid' for their vehicles."  (Def.'s Mem.

14   at 8.)  This argument is baseless—the Complaint specifically describes the defect plaguing the Class

15   Vehicles, and thus explains exactly how and why Plaintiffs overpaid for their vehicles.  (Compl. ¶¶ 124-

16   150.)

17        GM fails to cite any cases supporting the proposition that plaintiffs lack standing when they allege

18   overpayment and *have received a defective product*.  In *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir.

19   2009), the Ninth Circuit held that plaintiffs did not have standing when they alleged that iPods *could*

20   cause hearing *if* they were used in an unsafe manner.  The plaintiffs in *Birdsong* had not received a

21   defective product and any potential harm was contingent on plaintiffs' use of the product.  *Id*.  Numerous

22   courts within the Ninth Circuit have distinguished *Birdsong* on these grounds, and have held that

23   plaintiffs who unknowingly purchased a defective product, like Plaintiffs here, had standing.  *See*

24   *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1238 (C.D. Cal. 2011) (distinguishing

25   *Birdsong* and holding that purchasers of vehicles with a water-leak defect had standing because their

26   vehicle "does not function as expected."); *Montanez v. Gerber Childrenswear, LLC*, 2011 WL 6757875,

27   at *2 (C.D. Cal. Dec. 15, 2011) (distinguishing *Birdsong* because "[t]he harm [in *Birdsong*] would only

28   occur if the consumer used the product in an unsafe fashion," and holding that purchasers of children's

clothes with potentially problematic levels of skin irritants had standing); *Coe v. Philips Oral Healthcare Inc.*, 2014 WL 722501, at *3–4 (W.D. Wash. Feb. 24, 2014) (distinguishing *Birdsong* as involving a merely hypothetical injury and holding that plaintiffs who paid too much for their toothbrushes due to Philips' failure to disclose a known defect had standing); *Sims v. Kia Motors Am., Inc.*, 2014 WL 12558249, at *3 (C.D. Cal. Mar. 31, 2014) (distinguishing *Birdsong* and holding that Plaintiffs who purchased vehicles with defective gas tanks had standing).

*Lassen v. Nissan North America, Inc.*, 211 F. Supp. 3d 1267 (C.D. Cal. 2016) is likewise inapposite because the plaintiffs in that case received a "properly-functioning product" and failed to "articulate a plausible legal theory of defect." *Id.* at 1282. The case involved Nissan's keyless fob systems, which plaintiffs alleged *could be used* in a dangerous way. The court held that the injury was hypothetical because the risk "depend[ed] entirely on Plaintiffs' parking their vehicles in an enclosed space and walking away from their vehicles without turning them off." *Id.* at 1283. The court, in fact, distinguished *Lassen* from those cases in which the plaintiffs, like Plaintiffs here, had standing because they received a product that did not function as intended. *Id.*

Nor do any of GM's other cited cases support the proposition that when plaintiffs unknowingly receive a product that suffers from a defect, allegations of overpayment are insufficient to confer standing. *See Contreras v. Toyota Motor Sales USA, Inc.*, 2010 WL 2528844, at *6 (N.D. Cal. June 18, 2010) (plaintiffs had not alleged that their vehicles would suffer from a defect because they had not alleged that they were likely to drive in the freezing conditions in which the alleged defect might arise); *Tae Hae Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 975 (C.D. Cal. Jan. 9, 2014) (plaintiffs "failed to allege any facts demonstrating that the [pre-collision braking system was] 'defective'"); *Barakezyan v. BMW of N. Am. LLC*, 2016 WL 2840803, at *4 (C.D. Cal. April 7, 2016) (plaintiff complained that his brakes were too loud, plaintiff failed to plead any facts that "plausibly demonstrate any diminished value in his vehicle.").

Unlike in these cases, Plaintiffs have specifically described the Low-Tension Oil Ring Defect plaguing the Class Vehicles. (Compl. ¶¶ 132-142.) Plaintiffs, moreover, have described how this defect causes engine damage (*id.* ¶¶ 143-147) and is a safety risk (*id.* ¶¶ 148-150.) Further, Plaintiffs have provided examples of widespread consumer dissatisfaction with the Class Vehicles, including complaints

1   that the excessive oil consumption caused their vehicles to "drive sluggish" and "run rough," resulted in

2   fouled spark plugs and "ticking in the motor," and forced consumers into repeated trips to dealerships for

3   attempted fixes.  (*Id.* ¶¶ 159-165.)  In sum, Plaintiffs have pleaded detailed allegations that show that

4   they lost money by overpaying for a defective product.  *See Mazza*, 666 F.3d at 594-95.

5   **II.    PLAINTIFFS HAVE PLEADED CAUSATION AND DAMAGES.**

6          GM argues that Plaintiff Siqueiros has failed to adequately plead causation or damages under the

7   California Consumer Legal Remedies Act and California's Unfair Competition Law.  In doing so,

8   however, GM ignores the Complaint's allegation that GM's failure to disclose the Low-Tension Oil Ring

9   Defect led to Plaintiff Siqueiros overpaying for his vehicle.  (Compl. ¶¶ 238, 296.)  As stated above, this

10  loss of money constitutes an economic injury.  *See Kwikset*, 246 P.3d at 890 (when a "consumer has

11  purchased a product that he or she *paid more for* than he or she otherwise might have been willing to

12  pay" this constitutes economic injury).

13         GM also summarily argues that the other Plaintiffs' claims brought under other states' consumer

14  protection act also fail for lack of damages.  Again, GM ignores the damages pleaded in each of the

15  relevant counts.  Further, GM misconstrues the relevant statutes.  The statutes do not say that a plaintiff

16  must plead facts showing that a defect caused damage, as GM contends, but rather that *a violation of the*

17  *statute* caused damages.  Here, as alleged, Plaintiffs incurred damages by overpaying for vehicles, or

18  purchasing vehicles that they would not otherwise have purchased, because of GM's omissions in

19  violation of the various states' consumer protection statutes.[3]

20  **III.   PLAINTIFFS' CONSUMER PROTECTION AND FRAUD CLAIMS ARE WELL-**

21        **PLEADED.**

22         **A.    General Motors Had a Duty to Disclose the Low-Tension Oil Ring Defect.**

23         As GM acknowledges, a defendant has a duty to disclose: "(1) when the defendant is in a fiduciary

24  relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not

25  known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4)

26

27  ───────────────────
    [3] *See* Compl. ¶¶ 345, 348, 395, 398, 444, 447, 493, 496, 534, 537, 585, 588, 634, 637, 672, 675, 752,
28  755, 801, 804, 886, 889, 906, 909, 955, 958, 1044, 1047, 1094, 1097, 1143, 1146, 1193, 1239, 1242,
    1292, 1336, 1339, 1387, 1441, 1444, 1490, 1493, 1540, 1543, 1591, 1594, 1642, 165, 1683, 1686, 1732,
    1735.

when the defendant makes partial representations but also suppresses some material fact." *See Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).   GM does not dispute the applicable standard, but argues that Plaintiffs' allegations fall short.  (Def.'s Mem. at 13.)  As demonstrated below, however, Plaintiffs have adequately alleged GM's duty to disclose under the second, third, and fourth factors.

### 1.    The Low-Tension Oil Ring Defect Was Material Regardless of Whether Plaintiffs Allege a Safety Concern.

GM incorrectly contends that Plaintiffs 1) are required to plead a safety concern for their omissions-based fraud claims, and 2) have failed to do so here.  In fact, while the Complaint amply alleges that the defect poses an unreasonable safety hazard (as discussed in Section III.A.2), Plaintiffs are not required to allege a safety concern to establish materiality (or a duty to disclose).

GM's "safety concern" argument arises from a series of federal court decisions that incorrectly interpreted the California Court of Appeals' decisions in *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006), and *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006), as barring consumer fraud claims unless plaintiffs allege an affirmative misrepresentation or a safety concern.  "Significantly, however, the California Court of Appeals itself has very recently clarified that this is a ***misreading*** of California law."  *Norcia v. Samsung Telecomms. Am.*, 2015 WL 4967247, at *6 (N.D. Cal. Aug. 20, 2015) (emphasis supplied) (citing *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1174-75 (2015)).  As the *Rutledge* court explained, "neither *Daugherty* nor *Bardin* preclude a duty to disclose material information known to a manufacturer and concealed from a consumer" absent a safety concern.  238 Cal. App. 4th at 1174.

Rather, materiality turns on whether the undisclosed information is the type that a reasonable consumer would find important when making a purchase.  *Id.* at 1175.  In *Rutledge*, for example, plaintiffs alleged that the defendant's notebook computers contained defective inverters that caused the display screens to dim and darken before the end of the computers' useful life.  *Id.* at 1168.  The *Rutledge* court held that the plaintiffs were ***not*** required to establish a safety defect to prevail at summary judgment because the defect affected a basic function of the product—the display screen—and a reasonable fact finder could very well find the undisclosed information material when deciding whether to purchase the

computer. *Id.* at 1175; s*ee also Lenovo Adware Litig.*, 2016 WL 6277245, at \*13 (N.D. Cal. Oct. 27, 2016) (finding that a duty to disclose may arise absent a safety concern as explained in *Rutledge.*); *Norcia*, 2015 WL 4967247, at \*6 (same).

Nearly all of GM's cited cases rely on the Ninth Circuit's pre-*Rutledge* decision in *Wilson v. Hewlett-Packard, Inc.*, 668 F.3d 1136 (9th Cir. 2012), or other federal court cases that applied the very misreading of *Daugherty* and *Bardin* that the California Court of Appeals has now unambiguously corrected. *See, e.g.*, *Hodges v. Apple, Inc.*, 2013 WL 4393545 (N.D. Cal. Aug 12, 2013); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010), *aff'd* 462 F. App'x 660 (9th Cir. 2011); *see also Lassen*, 211 F. Supp. 3d at 1284 (citing *Wilson*, 668 F.3d.at 1411-1422, without acknowledgement of *Rutledge*).

The Ninth Circuit, however, has stated that "its own precedents are 'only binding in the absence of any subsequent indication from the California courts that [the Ninth Circuit's] interpretation was incorrect." *Lenovo*, 2016 WL 6277245, at \*13 (quoting *In re Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002)). Moreover, federal courts are to 'follow decisions of the California Court of Appeal unless there is convincing evidence that the California Supreme Court would hold otherwise." *Norcia*, 2015 WL 4967247, at \*6 (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010)). Because there is no reason to believe the California Supreme Court would disagree with *Rutledge*, this Court should reject GM's argument that its duty to disclose was limited to defects relating to safety concerns. *Id.*

Here, the Low-Tension Oil Ring Defect impacts the essential functioning of the engine and is thus material information of the type that a reasonable consumer would find important when making a purchase. *Rutledge*, 238 Cal. App. 4th at 1175. The Low-Tension Oil Ring Defect results in the fouling of spark plugs and metal-on-metal friction and heat levels that cause severe and irreparable engine damage. (Compl. ¶¶ 145-47, 159-63.) As the numerous consumer complaints reveal, the Low-Tension Oil Ring Defect causes the engine to "misfire and run rough," "ticking in the motor," "blue smoke on start up," the vehicle to drive "sluggish," "traction control problem," and "reduced engine power." (*Id.* ¶¶ 159-63.) As one consumer stated, the problem "cripples the vehicle." (*Id.* ¶ 163.) Moreover, the consumers repeatedly sought repairs, to no avail. (*Id.* ¶¶ 159-63.) The Complaint's allegations thus reveal a defect that fundamentally impacts the use of the Class Vehicles. Accordingly, it cannot be

1  decided at the pleadings stage that information about the Low-Tension Oil Ring Defect is immaterial.

2  *Rutledge*, 238 Cal.App.4th at 1175.

3          GM's attempt to blame Class members for engine damage because the owner's manual advises

4  plaintiffs to check the oil level is not well taken.  *See, e.g.*, *Asghari v. Volkswagen Group of Am., Inc.*, 42

5  F. Supp. 3d 1306, 1328 n.74 (C.D. Cal. 2013) (rejecting defendant's claim that the owner's manual

6  adequately disclosed the rate of oil consumption because (1) plaintiffs did not allege they had the manual

7  prior to purchase and (2) the manual did not disclose a high rate of oil consumption ***due to an engine***

8  ***defect***); *Tait v. BSN Home Appliances Corp.*, 2011 WL 3941387, at *2-3 (C.D. Cal. Aug. 31, 2011)

9  (finding that disclosure in manuals given to the consumers after they purchased the vehicle do not negate

10  plaintiffs' claims).

11          Nor does GM's reliance on *Taragan v. Nissan North America, Inc.*, 2013 WL 3157918, at *9

12  (N.D. Cal Jun. 20, 2013), bolster its position.  There, the court denied the plaintiffs' claim under the

13  "unfair" prong California's UCL finding the plaintiffs did not show that use of the "Intelligent Key

14  system" was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"

15  because consumers should place the automatic transmission in park and/or apply the parking brake "as a

16  matter of common sense and prudence, and in compliance with California law."  Here, Plaintiffs could

17  not anticipate that their vehicles would use an excessive amount of oil that resulted in engine malfunction

18  or seizure.  And at no time did GM disclose the defect.  Rather GM promoted the Class Vehicles as being

19  defect-free and durable.  (Compl. ¶¶ 166-186.)

20          **2.      Plaintiffs' Allegations Establish That the Low-Tension Oil Ring Defect**

21                  **Renders the Class Vehicles Unsafe.**

22          In any event, Plaintiffs ***have*** alleged a safety defect here, rendering GM's concealment of the

23  defect actionable under any standard.  Specifically, Plaintiffs allege that the Low-Tension Oil Ring Defect

24  results in excessive oil consumption and loss of lubricity, leading to increased metal-on-metal friction,

25  resulting in unacceptably high heat levels and engine damage.  (Compl. ¶¶ 143-147.)  As a result of the

26  defect, Class Vehicles will overheat and potentially catch fire.  (*Id.* ¶ 149.)  Additionally, low oil

27  conditions are unsafe because resulting damage can cause the engine to seize and suddenly shut down

28  while driving, which can lead to accidents and/or stranding.  (*Id.* ¶ 150.)

Federal courts have repeatedly found similar allegations sufficient to establish materiality. *See Asghari*, 42 F. Supp. 3d at 1330 (finding allegations "that the engine's inability to utilize oil properly can cause engine failure to occur at any time, under any driving condition and at any speed creating a serious risk to safety" adequately pleaded an unreasonable safety risk that would have been material to a reasonable consumer); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 957 (N.D. Cal. 2014) (Chen, J.) (finding that whether a defective "infotainment" system is a safety issue is a question for the jury); *Cholakyan*, 796 F. Supp. 2d at 1238 (finding that allegations of a water leak defect that could lead to sudden and unexpected engine failure adequately alleged a safety defect); *Mardisian v. Mercedes Benz USA, LLC,* 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009) (denying a motion to dismiss where defective intake system could lead to catastrophic engine and electrical system failure); *Falk*, 496 F. Supp. 2d at 1096 (finding the possibility that a speedometer might fail and lead to traveling at unsafe speeds material).

In fact, GM acknowledges these same safety risks *in its own manuals* by warning: "Do not keep driving if the oil pressure is low. The engine can become so hot that it *catches fire. Someone could be burned*." (Compl. ¶ 149 (emphasis added).) GM also warns: "If you drive the vehicle while engine oil pressure is low, *severe engine damage may occur*. If a low oil pressure warning appears…*stop the vehicle as soon as possible*." (*Id.* ¶ 150 (emphasis added).) Of course, in addition to the risk of catching fire, such engine damage presents risks of an engine seizing or losing power while driving, and GM's directions to drivers to "stop the vehicle as soon as possible" when experiencing low oil pressure could leave drivers stranded in unsafe conditions. (*Id.*)

Given these admissions, GM's argument that Plaintiffs have not alleged a safety concern because they "do not allege a single instance of a fire breaking out, or an engine suddenly shutting down" is unconvincing. (Def.'s Mem. at 14.) Plaintiffs are not required to plead that they have been injured by the unreasonable safety risk to have viable consumer fraud claim. *See. e.g., Asghari*, 42 F. Supp. 3d at 1312, 1338 (finding that allegations of excessive oil consumption, which *could* lead to engine failure, constituted an unreasonable safety risk); *Cholakyan*, 796 F. Supp. 2d at 1236-37 (rejecting defendants' argument that "the purported safety defects are speculative in nature, because there is no allegation that [the plaintiff] or any other class members experienced such a defect").

Plaintiffs' allegations are also factually distinguishable from the safety cases GM cites.  For example, in *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 991 (N.D. Cal. 2010), *aff'd*, 462 F. App'x 660 (9th Cir 2011), the danger cited was that drivers could get locked out of their vehicles.  In *Avedisian v. Mercedes-Benz USA, LLC*, 43 F. Supp. 3d 1071, 1078 (C.D. Cal. 2014), the alleged dangers were "nicks," paper cuts," scrapes," and "scratches".  And in *Daugherty*, 144 Cal.App.4th at 144, the risk asserted was the cost of repairs in the event there was a failure.  Here, Plaintiffs allege that the Low-Tension Oil Ring Defect may cause engines to fail while driving, overheat and/or catch fire.  (Compl. ¶¶ 149-50.)

### B.    The Allegations Sufficiently Allege GM's Knowledge of the Defect.

GM next argues that Plaintiffs' fraudulent omissions claims must be dismissed because they have not alleged facts from which a reasonable fact finder could infer its pre-sale knowledge.  Not so.

First, GM's knowledge of the defect is evidenced by the fact that "GM abandoned its low-tension ring experiment in its redesigned Generation V Vortex 5300 Engines" while it was still selling models with the Generation IV Vortex 5300 Engines equipped with the defective Low-Tension Oil Rings. (Compl. ¶ 152.)  Reports of the engine redesign surfaced as early as May of 2011, so it can be reasonably inferred that GM's internal decision to implement the redesign occurred earlier than that.  *See Falco v. Nissan North Am., Inc.*, 2013 WL 5575065, at *6 (C.D. Cal. Oct. 10, 2013) (finding allegations that the defendant "replaced the chain guide of the Timing Chain Tensioning System with a redesigned version of the part that does not suffer from the defect" support an inference of prior knowledge and are not speculative or conclusory).

Further, against the backdrop of low-tension oil rings being known to cause high oil consumption, consumers had been complaining to NHTSA and on consumer forums about excessive oil consumption, and resultant engine damage, in vehicles containing Defective Engines since as early as June 2008. (Compl. ¶¶ 153-54.)  And within these publicly available complaints, many consumers specifically indicate that they had lodged complaints with GM multiple times previously, sometimes over the course of years, but were repeatedly told by GM that the problems were "normal" or they were forced to try multiple, unsuccessful fixes.  (*Id.* ¶¶ 159-163.)  For example, one consumer reported that he or she was continuing to have problems in September 2014 after "initial repairs did not correct the oil consumption

problem." (*Id.* ¶ 159.)  Another consumer states that he first brought his vehicle in to complain about the problem at 40,000 miles and posted in or around March 2015 that the problem was persisting at 180,000 miles.  (*Id.*)  Other owners first brought their vehicle in for repair in "early 2012" or complained they had been to the GM dealership about the problem "18 times" before posting the complaint online.  (*Id.* ¶ 160.)  Further, consumers complained repeatedly about pre-2010 vehicles manufactured by the Old GM which contained the Defective Engines, including at least 68 complaints regarding the 2007 Silverado on www.carcomplaints.com alone, as well as multiple complaints filed with NHTSA.  (*Id.* ¶¶ 161-163 (e.g., "Manufacturer denies malfunctions"; "Manufacturer was made aware of the failure"; "I started to have problems with my new 2007 Chevy Silverado in 2010 at 45,000 miles….").)

GM attempts to distance itself from the long history of complaints about the defect by arguing that Old GM is not a defendant here.[4]  (Def.'s Mem. at 17.)  But Old GM's knowledge of the defect is reasonably imputed to GM insofar as (1) any Old GM employee continued employment at GM or communicated information to a GM employee, or (2) such information resides in GM's files, even if it first came into being before the sale of Old GM.  *See In re Motors Liquidation Co.*, 541 B.R. 104, 108 (Bankr. S.D.N.Y. 2015).  Because GM immediately took over the business of Old GM pursuant to 11 U.S.C. § 363 (rather than through Chapter 11) there was no actual "reorganization" of the company, and GM immediately took over Old GM's operations.  *See Elliot v. GM LLC*, 829 F.3d 135, 145-46 (2d. Cir. 2016); (*see also* Compl. ¶ 154.)  From these allegations, it is reasonable to infer that GM had knowledge of the defect from its inception.

The TSBs alleged in the Complaint also establish GM's pre-sale knowledge, and GM's argument that they relate to some other defect is countered by the TSBs themselves.  As alleged, although the TSBs encouraged attempts at stop-gap fixes, the TSBs acknowledged that the ultimate repair was replacing the piston and ring assemblies.[5]  (Compl. ¶¶ 134-138, 157.)  The first of these TSBs appeared no later than August 24, 2010, demonstrating that GM knew, prior to that time, that its piston assemblies were resulting in excessive oil consumption within the Class Vehicles.

---

[4] To be clear, Plaintiffs do not assert any claims against Old GM or any claims arising from Old GM's actions.

[5] The TSBs also specifically acknowledge that "oil [is] Getting Past Piston Rings," consistent with Plaintiffs' allegations.  (Dkt. No. 48, Exhibits to Oxford Decl., Ex. 18 at 2; Ex. 19 at 2.)

Finally, GM had access to pre-release testing data that would have revealed the defect before the Class Vehicles were sold.  For example, GM boasted about its "White Glove Quality Check" program that includes "quality processes **in the plant** that prevent any defects from getting out."  (Compl. ¶ 178 (emphasis supplied).)  GM also proclaims to test and inspect used Vehicles as part of its "GM certified" program which it assured customers "means no worries."  (*Id.* ¶ 175.)

Taken as a whole, the allegations in the Complaint are more than sufficient for this Court to draw a reasonable inference that GM had pre-sale knowledge of the Low-Tension Oil Ring Defect.  *See, e.g.*, *MyFord Touch*, 46 F. Supp. 3d at 957-58 (finding that plaintiffs had adequately pleaded knowledge based on consumer complaints and the manufacturer's issuance of multiple TSBs, and stating that "[p]resumably, the TSBs and updates were proceeded by an accretion of knowledge by Ford"); *MacDonald v Ford*, 37 F. Supp. 3d 1087, 1093 (N.D. Cal. 2014) (finding exclusive knowledge supported by allegations of consumer complaints, access to pre-release testing and internal TSBs); *Falco*, 2013 WL 5575065, at *6 (finding exclusive knowledge supported by allegations that defendant redesigned of defective part, issued TSBs, had access to pre-release testing, and received customer complaints, even where most complaints alleged were post-sale); *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013) (finding exclusive knowledge supported by allegations of consumer complaints to dealers and access to pre-release testing).

Plaintiffs' allegations that GM actively concealed the material defect are also well supported.  *See Falco,* 2013 WL 5575065 at *7 (citing *Lovejoy v. AT&T Corp.*, 119 Cal. App. 4th 151, 157 (2004)).  Specifically, Plaintiffs allege that GM actively concealed the defect by (1) telling consumers who complained that the excessive oil usage was "normal" and/or denying that there was any defect or malfunction (Compl. ¶¶ 159-163); (2) encouraging consumers to try useless fixes knowing that the entire piston assembly must be replaced (*id.* ¶ 157); and (3) failing to disclose that the redesign efforts in 2011 were necessitated by the Low-Tension Oil Defect (*id.* ¶¶ 152-153).  Nothing more is required.  *See, e.g.*, *Falco*, 2013 WL 5575065, at *7-8 (finding that active concealment adequately pled where defendant issued a TSB to repair facilities but not consumers, failed to disclose the purpose of a redesign plan, and gave goodwill adjustments to some but not all customers); *Falk*, 496 F. Supp. 2d at 1097 (finding active

1   concealment where defendant did not notify consumers of the defect in light of complaints and replaced

2   the defective parts with other defective parts).

3       The cases upon which GM relies are readily distinguishable.  *See Berenblat v. Apple, Inc.*, 2010

4   WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (allegations that defendant deleted a discussion thread on

5   its website alone insufficient to plead knowledge and concealment); *Baba v. Hewlett-Packard Co.*, 2011

6   WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) (allegations of three complaints posted online prior to the

7   plaintiffs' sale alone did not establish knowledge); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th

8   Cir. 2012) (pre-*Rutledge* decision finding that plaintiffs had not adequately alleged knowledge of the

9   alleged safety issue by pointing to customer complaints and an earlier lawsuit that did not raise the safety

10   issue); *Oestreicher v. Alienware Corp.*, 554 F. Supp. 2d 964 (N.D. Cal. 2008) ("There are no allegations

11   that Alienware knew of the customer complaints at the time plaintiff bough his computer."); *Grodzitsky

12   v. Am. Honda Motor Co.*, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) (conclusory allegations of customer

13   complaints are insufficient).  By contrast, here, Plaintiffs' allegations permit an inference that GM was

14   aware of the defect at the time of sale, including engine resign, pre-sale TSBs, pre-release testing, and

15   customer complaints.

16       Moreover, and contrary to GM's argument (Def.'s Mem. at 18), Plaintiffs have adequately alleged

17   both "specific substantiating facts" under the exclusive knowledge theory, as well as "affirmative acts of

18   concealment" required for active concealment.  The cases GM cites do not require anything further.  In

19   *Taragan*, plaintiffs only made conclusory allegations "that 'Nissan is in a superior position to know the

20   facts about the quality and nature of the Subject Vehicles.'"  2013 WL 3157918 at *6-7.  In *Tietsworth

21   v. Sears*, 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010), the court concluded that plaintiffs had adequately

22   pleaded a duty to disclose under both the exclusive knowledge and active concealment theories.  In *Gray

23   v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012), the court ultimately found

24   that the plaintiffs could not show Toyota possessed exclusive knowledge due to the significant

25   "mainstream-media attention" of the underperformance years before the plaintiffs' purchases.  *Id.* at *8-

26   9.  Finally, in *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1142-43 (S.D. Cal. 2016), consumers received

27   a recall letter about the alleged defect.

1

### C.      Plaintiffs Do Not Assert Affirmative Misrepresentation Claims.

2

GM's contention that Plaintiffs have failed to plead an actionable affirmative misrepresentation

3

misapprehends the nature of Plaintiffs' claims.   Plaintiffs assert that GM had a duty to disclose the

4

material defect and failed to do so.[6]   Regardless, Plaintiffs' allegations relating to GM's marketing of

5

the Class Vehicles and representations to its shareholders *are* still relevant and support allegations of

6

GM's nondisclosure of and duty to disclose the material defect.  Thus, Plaintiffs properly allege that GM

7

touted the performance of Class Vehicles, and specifically the Generation IV Vortec 5300 Engines, while

8

consistently concealing and knowingly omitting and concealing information about material defects

9

throughout the Class Period.  (Compl. ¶¶ 166-187.)

10

### D.      Plaintiffs Have Adequately Pleaded Reliance.

11

In omissions cases such as this one, reliance is presumed if the allegations establish that the

12

omission was material.  *See, e.g., Falco*, 2013 WL 5575065, at *8 (quoting *Stearns v. Ticketmaster Corp.*,

13

655 F.3d 1013, 1022 (9th Cir. 2015); *Mui Ho*, 931 F. Supp. 2d at 999; *Doyle v. Chrysler Group LLC*,

14

2014 WL 3361770 at *5 (C.D. Calf. July 3, 2014) (citing *Mass. Mutual Life Ins. Co.*, 97 Cal.App.4th at

15

1292 (2002); *See, e.g., Clark v. LG Electronics, U.S.A., Inc.*, 2013 WL 5816410 (S.D. Cal. Oct. 29,

16

2013)(citing, e.g., *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009)).  Nothing more is needed here,

17

as Plaintiffs have alleged a material defect.

18

19

20

[6] Because Plaintiffs do not assert affirmative misrepresentation or false advertising claims, GM's case citations (see Def.'s Mem. at 12-13) are inapposite.  *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection*

21

*Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) (addressing "allegation that the advertisement implies that NCC offers the same collection services as lawyers at a lower price"); *Rasmussen v. Apple Inc.*, 27 F.

22

Supp. 3d 1027, 1039 (N.D. Cal. 2014) (addressing allegations that "advertising made numerous representations suggesting that the iMac display is designed for a long productive life" and thus "the

23

screen defect represents a material fact that is 'contrary to' those representations"); *In re All Terrain*

24

*Vehicle Litig.*, 771 F. Supp. 1057, 1060 (C.D. Cal. 1991), *aff'd in part and remanded sub nom. In re All Terrain Vehicle Litig.*, 978 F.2d 1265 (9th Cir. 1992), *and aff'd in part*, (addressing "the question of

25

whether an alleged misrepresentation is a statement of fact"); *Hubbard v. Gen. Motors Corp.*, 1996 WL

26

274018, at *6 (S.D.N.Y. May 22, 1996) (addressing allegations that advertisement constituted an express warranty); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008), *aff'd*, 322 F.

27

App'x 489 (9th Cir. 2009) (addressing allegations that defendants "falsely represent[ed] that goods have uses or characteristics they do not actually have," "falsely represent[ed] that goods are of a particular

28

standard or quality when they are of another," and "advertis[ed] goods with the intent not to sell them as advertised.")

GM's argument that Plaintiffs must point to specific advertisements or other representations that they relied upon to make their purchases and that did not include the omitted information "defies common sense" and is simply not supported by the case law. *Clark v. LG Elecs., U.S.A., Inc.*, 2013 WL 5816410, at *6 (S.D. Cal. Oct. 29, 2013) (rejecting defendant's argument that plaintiffs must identify a particular advertisement that could have contained the omission and finding that reliance is presumed because the alleged omission was material); *see also Valasco v. Chrysler Group LLC*, 2014 WL 4187796, at *4-5 (C.D. Cal. Aug. 22, 2014) (same); *MacDonald*, 37 F. Supp. 3d at 1096-97 (same).

GM's cases do not hold otherwise and, if anything, support the conclusion that materiality is properly alleged here. *Daniel v. Ford Motor Co.*, 2013 WL 2474934 (E.D. Cal. June 7, 2013), has been **reversed by the Ninth Circuit** on the very premise for which GM cites it. In reversing the district court's order granting summary judgment, the court concluded:

> Plaintiffs have offered sufficient evidence to create a genuine issue of material fact as to the second sub-element of reliance—whether they would have behaved differently if Ford had disclosed the alleged defect. A reasonable fact finder could infer that a vehicle that experiences premature and more frequent tire wear would pose an unreasonable safety risk, such that it can be presumed that the nondisclosure of the safety risk impacted Plaintiffs' purchasing decision.

*Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015).

Nor does *Asghari* stand for the proposition that plaintiffs must identify the representation that failed to include the omitted information. On the contrary, the court in *Asghari* **denied** the defendant's motion to dismiss on facts extremely similar to those alleged here:

> [P]laintiffs have adequately alleged their fraudulent omission/concealment claims with the particularity required by Rule 9(b). Plaintiffs plead "what" was omitted and/or concealed (an engine defect that causes the engine to consume excessive oil and creates a risk of engine failure); "why" the information was not disclosed (to sell the class vehicles at a premium price and also to mislead owners during the limited warranty period in order to avoid having to fulfill their contractual obligations under the warranty), and "how" defendants allegedly concealed the information (by denying that there was a known oil consumption problem and asserting that abnormally high consumption was normal upon receiving a complaint).

24 F. Supp. 3d at 1326-27 (footnotes omitted).

GM's citation to *Marolda v. Symantec Corp.*, 672 F. Supp. 992 (N.D. Cal. 2009) is also misplaced. "There, the dispute concerned an alleged omission within a particular advertisement, which the plaintiffs had failed to produce or adequately describe." *MacDonald*, 37 F. Supp. 3d at 1096; *see*

1   *also Philips v. Ford Motor Co.* ("*Philips II*"), 2015 WL 4111448, at *12 (N.D. Cal. July 7, 2015) (finding

2   *Marolda* inapplicable to fraudulent concealment claims). *Maroldo* does not apply to fraudulent

3   omissions claims unless the allegations themselves rely on a specific advertisement or representation.

4   "This is because a plaintiff alleging an omissions-based fraud will 'not be able to specify the time, place

5   and specific content of an omission as would a plaintiff in a false representation claim.'" *MacDonald*, 37

6   F. Supp. 3d at 1096 (quoting *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal.

7   2007) and collecting cases also declining to apply *Maroldo*); *see also Velasco*, 2014 WL 4187796, at

8   *4.[7]

9       Finally, the issue of whether a Plaintiff purchased a new or used vehicle is irrelevant. (Def.'s

10  Mem. at 19.) "[A] vendor has a duty to disclose material facts not only to immediate purchasers, but also

11  to subsequent purchasers when the vendor has reason to expect that the item will be resold." *OCM*

12  *Principal Opportunities Fund v. CIBC World Market Corp.*, 157 Cal. App. 4th 835 (2007). Federal

13  courts are in accord. "'Plaintiffs who purchased used cars have standing to bring CLRA claims, despite

14  the fact that they never entered into a transaction directly with defendant" auto manufacturer who

15  manufactured, sold, and distributed automobiles containing an allegedly defective engine

16  part. *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005).

17      In sum, Plaintiffs' allegations in support of their consumer fraud claims are robust and supported.

18      **E.   Plaintiffs Have Satisfied Their Pre-Suit Notice Requirements.**

19      Plaintiffs Bradford, Smith, and Robertson alleged that GM was notified of the claims in this

20  Complaint through a notice letter with a return receipt dated October 28, 2016. (Compl. ¶¶ 527, 899,

21  1676 (incorporating ¶ 188).) The original complaint was filed 52 days later, on December 19, 2016.

22  (Dkt. No. 2.) This notice fulfills Plaintiffs' statutory obligations to inform GM, in writing, of the alleged

23  violation, and provided GM more than 30 days to respond. Mass. Gen. Laws ch. 93A, § 9(3) (requiring

24  30 days); Ga. Code Ann. § 10-1-399(b) (requiring 30 days); W. Va. Code § 46A-6-106(c) (requiring 20

25  days); *see also Richards v. Arteva Specialties S.A.R.L.*, 850 N.E.2d 1068, 1078 (Mass. App. Ct. 2006)

26  (demand letter "on behalf of the entire putative class" satisfied notice requirement); *Johnson v. GAPVT*

27

28

---

[7] GM also relies on *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 102 (S.D.N.Y 1997), which involved violations of the New York Consumer Protection Act (a claim not asserted here) and is, thus, inapplicable.

1  *Motors, Inc.*, 663 S.E.2d 779, 784 (Ga. Ct. App. 2008) (under required liberal construction, as a matter

2  of law a letter stating defendant "committed a fraud on" the plaintiff "reasonably described the unfair or

3  deceptive act or practice relied upon" and "reasonably described the injury suffered" for purposes of

4  notice); *Henry v. Synchrony Bank*, 2016 WL 6871269, at *3 (S.D.W. Va. Nov. 21, 2016) ("Plaintiff has

5  met its statutory obligation by sending a letter to Defendant addressing the violation and waiting for

6  twenty days until no cure offer arrive.").

7       The cases GM cites are distinguishable because in those cases ***no*** pre-suit notice was served at

8  all.  *Steed v. Fed. Nat. Mortg. Corp.*, 689 S.E.2d 843, 851 (Ga. Ct. App. 2009) (plaintiff did not provide

9  "any evidence that he delivered notice" to defendant); *Brown v. Bank of Am. Corp.*, 2011 WL 1311278,

10  at *3 (D. Mass. Mar. 31, 2011) ("[P]laintiff failed to wait the thirty-day period required by statute to file

11  her complaint after serving demand letters on the defendants"); *Baillargeon v. Kazanjians Garage Inc.*,

12  2008 Mass. App. Div. 52 (Dist. Ct. 2008) (noting plaintiff failed to serve any demand letter on defendant).

13  Nor does the court's finding in *Stanley v. Huntington National Bank*, 492 F. App'x 456 (4th Cir. 2012)

14  that two letters from a plaintiff "requesting a status update on her claim" were insufficient pre-suit notice

15  under the West Virginia Consumer Credit and Protection Act indicate that Plaintiffs' notice letter here,

16  which clearly sets out Plaintiffs' claims, is insufficient.  *Id.* at 461 (4th Cir. 2012).

**IV.**   **PLAINTIFFS HAVE ADEQUATELY PLEADED THEIR BREACH OF EXPRESS WARRANTY CLAIMS.**

    **A.**   **The Low-Tension Oil Ring Defect Is Covered under GM's Limited Warranty.**

20       GM claims that the Low-Tension Oil Ring Defect is not covered by its express warranty because

21  the warranty is directed to "materials and workmanship."  (Def.'s Mem. at 20.)  GM, however, fails to

22  explain how the manufacture of an engine that inherently consumes excessive oil, leading to engine

23  damage, is not a defect in "workmanship."  *See Koulajian v. Trek Bicycle Corp.*, 1992 WL 28884, at *2

24  (S.D.N.Y. Feb. 11, 1992) ("[T]he warranty's reference to 'workmanship' could refer to bicycle designs

25  as well as to implementation of those designs in the manufacturing process."); *In re Saturn L-Series

26  Timing Chain Prods. Liab. Litig.*, 2008 WL 4866604, at *15 (D. Neb. Nov. 7, 2008) ("[D]esign is

27  integrated into each step of the manufacturing process and affects both materials and workmanship.")  As

28  *Koulajian* recognizes, "workmanship" can refer to the implementation of designs in the manufacturing

1   process.  1992 WL 28884, at *2.  If GM intended to exclude any defect that could be characterized as a

2   design defect, it could have done so.  The GM Limited Warranty includes a section entitled "What Is Not

3   Covered" – but there is no reference in this section to "design defects."  (GM Warranties, Dkt. No. 48,

4   Exhibits to Oxford Decl., Ex. 22 at 7; Ex. 23 at 7; Ex. 24 at 10; Ex. 25 at 10; Ex. 26 at 10; Ex. 27 at 10;

5   Ex. 28 at 10; Ex. 29 at 10.)  The GM Limited Warranty simply does not express any intent to exclude

6   "design defects." *See Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1231–32 (S.D. Fla.

7   2014) ("[N]otwithstanding Ford's argument that its Warranty Guide expressly excludes warranty

8   coverage for claims of a design defect, there is in fact no such limitation…. [T]he list in the 'what is not

9   covered' section does not state that design defects are not covered.").

10       The Limited Warranty does, however, evidence an intention to cover the defective piston and ring

11   assemblies.  The Limited Warranty covers "all internally lubricated parts."  (GM Warranties, Dkt. No.

12   48, Exhibits to Oxford Decl., Ex. 22 at 4; Ex. 23 at 4 Ex. 24 at 4; Ex. 25 at 5; Ex. 26 at 4; Ex. 27 at 5; Ex.

13   28 at 4; Ex. 29 at 4.)  "[A]ll internally lubricated parts" includes the piston and ring assemblies.  It also

14   includes all of the other engine components that are damaged due to lack of lubricity, including the

15   pistons, the rings, the valves, lifters, push rods, camshafts, rockers, bearings, piston rods, wrist pins,

16   crankshafts, and timing chain components.  Because the Limited Warranty covers defects in the piston

17   assemblies, and the Limited Warranty does not manifest an intention to exclude defects that are the result

18   of an implementation of a design during the manufacturing process, GM is incorrect that, as a matter of

19   law, the Low-Tension Oil Ring Defect is not covered by the Limited Warranty.[8]  *See Shahar v. Hotwire,*

20   *Inc.*, 2013 WL 3877785, at *5 (N.D. Cal. July 25, 2013) (holding that the interpretation of a contract

21   implicated factual questions and was inappropriate for resolution on a motion to dismiss).

22       **B.     Presentment for Repair Would Have Been Futile.**

23       GM further argues that Plaintiffs' express warranty claims must be dismissed because Plaintiffs

24   do not allege that they presented their vehicles for repair.  (Def.'s Mem. at 21-22.)  This argument should

25

26

27   [8] GM cites only California case law in support of its argument that a defect related to design is not covered
    under a warranty for "materials and workmanship."  GM has not cited any cases that would allow the
28   court to conclude, as a matter of law that, the non-California Plaintiffs' express warranty claims do not
    cover the Low-Tension Oil Ring Defect.

1    be rejected because the facts alleged in the Complaint show that providing GM with an opportunity to

2    repair would have been futile.

3         Courts within this Circuit have recognized that when compliance with a manufacturer's pre-suit

4    dispute resolution procedures would be futile, the requirement can be excused.  *See Toyota*, 754 F. Supp.

5    2d at 1189 ("At the pleadings stage, the Court cannot say whether attempts to comply with the informal

6    dispute settlement procedure put in place by Toyota are futile. Plaintiffs' allegations allow for such an

7    inference."); *Milicevic v. Mercedes-Benz USA, LLC*, 256 F. Supp. 2d 1168, 1179 (D. Nev. 2003) ("The

8    Court finds that Plaintiff was not obligated to follow the informal dispute resolution procedures found in

9    Mercedes–Benz' written warranty, because it would have been futile to do so…."). Here, the Complaint

10   cites numerous instances where consumers presented their Class Vehicles to GM for repair and were told

11   that the oil consumption was "normal" and their vehicles were not repaired.  (Compl. ¶¶ 159-161, 224.)

12   For example, one NHTSA complaint states: "The manufacturer was made aware of the failure.  The

13   vehicle was not repaired. … The manufacturer denies any malfunctions."  (*Id.* ¶ 161.)  These allegations

14   show that GM would not have repaired the Low-Tension Oil Ring Defect for any of the Plaintiffs, or any

15   class member, who presented their vehicle for repair.  This conclusion is bolstered by GM's responses to

16   Plaintiffs' notice letters.  As alleged, in response to Plaintiffs' letters concerning the Low-Tension Oil

17   Ring Defect and GM's breaches of warranties, GM did not offer to perform and repair and did not even

18   acknowledge that the defect existed.  (*Id.* ¶¶ 188-90.)  Accordingly, there is a genuine question of fact as

19   to whether it would have been futile for Plaintiffs to present their vehicles for repair.[9]

20

21   [9] *See Afzal v. BMW of N. Am., LLC*, 2016 WL 6126913, at *6 (D.N.J. Oct. 17, 2016) ("whether Plaintiff[s]
     fulfilled [their] responsibilities under the warranty is a quintessential fact question.  Dismissal at this
22   stage would be premature.");  *Ex parte Miller*, 693 So. 2d 1372, 1379 n.10 (Ala. 1997) ("Exactly when
     it becomes futile to submit a machine to a warrantor for repair is a fact question for the jury."); *Demorato*
23   *v. Carver Boat Corp.*, 304 F. App'x 100, 102 (3d Cir. 2008) (citing *Roneker v. Kenworth Truck Co.*, 944
     F. Supp. 179 (W.D.N.Y. 1996) (applying New York law) (noting that whether a remedy failed of its
24   essential purpose is "typically a question of fact for the jury")); *Delhomme Indus., Inc. v. Houston*
     *Beechcraft, Inc.*, 669 F.2d 1049, 1063 (5th Cir. 1982) ("the question whether the circumstances in this
25   case justify a [state analogous section 2719] action…is a question of fact"); *In re Rust-Oleum Restore*
     *Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 789-90 (N.D. Ill. 2016); *Rothbaum v.*
26   *Samsung Telecomms. Am., LLC*, 52 F. Supp. 3d 185, 205 (D. Mass. 2014) ("[w]hether a remedy has
     failed of its essential purpose is a question of fact"); *Lincoln Elec. Co. v. Technitrol, Inc.*, 2010 WL
27   2219341, at *4 (N.D. Ohio June 2, 2010) ("Whether a limited remedy has failed of its essential purpose
     is a question of fact"); *Xerox Corp. v. Graphic Mgmt. Servs. Inc.*, 959 F. Supp. 2d 311, 320 (W.D.N.Y.

28

## V.    PLAINTIFFS HAVE ADEQUATELY PLEADED THEIR BREACH OF IMPLIED WARRANTY CLAIMS.

The implied warranty of merchantability ensures that goods sold "will pass without objection in the trade" and are "fit for the ordinary purposes for which such goods are used." U.C.C. § 2-314. This language is mirrored in the laws of the states represented in this action.[10]

GM argues that Plaintiffs' implied warranty of merchantability claims should be dismissed because Plaintiffs do not specifically allege that they were forced to stop driving their cars or that the excessive oil consumption has yet caused an incident in which their safety was endangered. (Def.'s Mem. at 23-24.) GM grossly misconstrues and misapplies the standard for pleading breach of the implied warranty of merchantability. The implied warranty of merchantability requires that a vehicle "provides for a minimum level of quality." *Asghari*, 42 F. Supp. 3d at 1338 (quoting *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291, 1296 (Cal. App. 1995)). However, the fact that "a vehicle provides transportation from point A to point B" does not mean that it satisfies the implied warranty of merchantability. *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 946 (C.D. Cal. 2012) (quoting *Isip v. Mercedes-Benz USA LLC*, 155 Cal. App. 4th 19, 27 (Cal. App. 1997)). Rather, a vehicle must provide "safe, reliable transportation." *MyFord Touch*, 46 F. Supp. 3d at 980. "A vehicle that smells, lurches, clanks and emits smoke over an extended period of time is not fit for its intended purpose." *Isip*, 155 Cal. App. 4th at 27. "Vehicles subject to engine failure cannot be said to be merchantable." *Cholakyan*, 796 F. Supp. 2d at 1244.

*Asghari* is directly on point. In that case, the court upheld the plaintiffs' implied warranty claim where they alleged that their vehicles consumed high amounts of oil, which led to engine damage and potential engine failure. 42 F. Supp. 3d at 1311, 1338-39. As here, the defendant argued that the

---

2013) (noting that whether a remedy has failed of its essential purpose is generally a question of fact for the jury).

[10] *See* Ala. Code § 7-2-314; Ark. Code Ann. § 4-2-314; Del. Code Ann. tit. 6, § 2-314; Ga. Stat. Ann. 84-2-314; Idaho Code Ann. § 28-2-314; Ind. Code §§ 26-1-2-314; Kan. Stat. Ann. 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; Mass. Gen. Laws ch. 106, § 2-314; Minn. Stat.§ 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Neb. Rev. Stat. § 2-314; N.M. Stat. Ann. § 55-2-314; N.C. Gen. Stat. § 25-2-314; N.D. Cent. Code § 41-02-31; Okla. Stat. tit. 12A, § 2-314; 13 Pa. Cons. Stat. § 2314; S.C. Code Ann. § 36-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code § 2.314; Va. Code Ann. § 8.2-314; W. Va. Code § 46-2-314.

plaintiffs' allegation of defect was conclusory, but the court found that the consumer complaints cited in the plaintiffs' complaint gave the defendant ample notice of the alleged defect and provided a factual basis for an implied warranty claim.  *Id.* at 1138-39.  Here, the Complaint likewise cites numerous consumer complaints showing engine malfunction that renders the Class Vehicles non-merchantable:

- Excessive oil consumption caused spark plugs to prematurely fail causing the engine to misfire and run rough…. (Compl. ¶ 159.)

- "[W]e noticed we were having issues with my Avalanche burning oil…we had to replace the engine after replacing the sparkplug and wire 3 times…." (*Id.*)

- "Truck has been in and out of the dealership 18 times regarding ticking in the motor, excessive oil consumption, and blue smoke on start up." (*Id.* ¶ 160.)

- "The vehicle would continue to drive sluggish and consume excessive amounts of oil." (*Id.*)

- "From day one this truck has burned about a quart an oil change, and no, this isn't normal. Traction control problems, engine reduced power, this problem cripples the vehicle." (*Id.*)

Therefore, as in *Asghari*, Plaintiffs have alleged an engine defect that compromises the Class Vehicles' ability to provide safe, reliable, transportation, and thus breaches the implied warranty of merchantability.

*MyFord Touch* is also instructive.  46 F. Supp. 3d 936.  In that case, which involved a defective "infotainment" system that could lead to drivers being distracted or their rearview cameras or defrosters not working, defendant argued that plaintiffs implied warranty claims failed because plaintiffs did not allege a sufficient safety concern or that they were not able to drive their cars.  *Id.* at 959-60, 980.  This court rejected this argument, holding that it was "a question of fact for the jury as to whether the problems with the [infotainment system] posed enough of a safety risk that the cars at issue could not be said to provide safe, reliable transportation."  *Id.* at 980.  Here, GM has failed to show that, as a matter of law, the Class Vehicles provide safe, reliable transportation.

GM further argues that Plaintiffs have not alleged that "they had any issue or harm within the implied warranty period."  (Def.'s Mem. at 24.)  To the contrary, and as discussed above, Plaintiffs have alleged that they received defective vehicles, which consumed an abnormally high amount of oil, at the moment of purchase.  (*See* Section I, *supra*.)  Plaintiffs need not allege that they experienced engine failure or a safety issue immediately after purchase; rather, it is sufficient that they alleged receiving a defective vehicle is reasonably likely to suffer an engine malfunction.  *See Asghari*, 42 F. Supp. 3d at

1338-39 (upholding implied warranty claims where plaintiffs received vehicles that consumed an abnormally high amount of oil that could lead to a safety risk); *Hornberger v. General Motors Corp.*, 929 F. Supp. 884, 887-88 (E.D. Pa. 1996) ("[A] material question of fact does exist as to whether a normal transmission of a newly leased vehicle would fail after being driven approximately 40,000 miles, rendering the car unfit for the purpose of driving and, therefore, unmerchantable.") *Parenteau v. General Motors LLC*, 2015 WL 1020499 (C.D. Cal. Mar. 5, 2015), upon which GM relies, supports Plaintiffs. In that case, the court simply held that the defect must exist at the time of sale or within the duration period, and held that this was a question "which must be answered at a later stage in the proceedings." *Id.* at *11; *see also Keegan*, 838 F. Supp. 2d at 948 (refusing to dismiss implied warranty claim and stating that plaintiff's "failure to discover the defect within the one-year statutory period does not defeat his claim at this stage of the litigation.").[11]

Finally, the Ohio Plaintiffs have adequately pleaded claims for breach of implied warranty in tort. Contrary to GM's assertion, this cause of action allows for damages attributable to economic loss from receiving a defective product. *See Caterpillar Fin. Servs. Corp. v. Harold Tatman and Son's Enterprises, Inc.*, 50 N.E.3d 955, 964-66 (Ohio Ct. App. 2015) (implied warranty in tort claims not barred by economic loss rule). The Ohio Plaintiffs have pleaded such damages. (Compl. ¶ 1312.)

## VI. PLANTIFFS' CLAIMS ARE NOT BARRED BY ANY APPLICABLE STATUTES OF LIMITATION.

### A. Plaintiffs' Implied Warranty Claims Are Timely Filed.

In arguing that certain Plaintiffs' implied warranty claims are barred by statutes of limitation, GM wrongly suggests that Plaintiffs have an obligation to plead around the statute of limitations, and ignores both the applicable tolling doctrines and the applicable laws of Plaintiffs' respective states. First, the Court should not dismiss the implied warranty claims of the nine plaintiffs who GM argues "may also face a limitations bar" depending on the dates of their initial retail sale. "Statute of limitations is…an affirmative defense that a plaintiff has no obligation to plead around in his or her complaint." *MyFord Touch*, 46 F. Supp. 3d at 961. Here, because there is no "statute-of-limitations problem apparent from

---

[11] GM's citation to *Mui Ho* is inapposite because it involved a three-month warranty period for used vehicles under the Song-Beverly Act. Here, Plaintiff Siqueiros, who asserts a claim for implied warranty under the Song-Beverly Act, bought his vehicle new. (Compl. ¶ 19.)

1  the fact of the complaint" for these nine plaintiffs, it is premature to address the application of the statute

2  of limitations to their claims.  *Id.*

3      Further, all of the Plaintiffs' implied warranty claims are tolled pursuant to the fraudulent

4  concealment doctrine. (Compl. ¶¶ 193-98.)  For implied warranty claims brought under the Song-Berverly

5  Act, the fraudulent concealment tolls the statute of limitations when a plaintiff pleads (a) the substantive

6  elements of fraud, and (b) an excuse for late delivery of the facts.  *Sater v. Chrysler Group, LLC*, 2015

7  WL 736273, at *9 (C.D. Cal. Feb. 20, 2015).[12]   In *Sater*, the court held that the plaintiff's implied

8  warranty claim was tolled where the plaintiff alleged that Chrysler "intentionally kept Plaintiffs and the

9  other Class members ignorant of vital information essential to the pursuit of their claims," and that

10  Chrysler continued manufacturing, selling, and warranting the relevant vehicles without disclosing the

11  defects.  The same is true here.  GM "failed to disclose and concealed, and continues to conceal, the

12  [Low-Tension Oil Ring Defect] from Plaintiffs and the other Class members, even though, at any point

13  in time, it could have done so."  (Compl. ¶ 196.)  In fact, the Complaint, contains far more detailed

14  allegations of affirmative concealment than were held sufficient in *Sater.*  Here, Plaintiffs allege that GM

15  (1) told consumers who complained that the excessive oil usage was "normal" and/or denying that there

16  was any defect or malfunction (Compl. ¶¶ 159-163); (2) encouraged consumers to try useless fixes

17  knowing that the entire piston assembly must be replaced (*id.* ¶ 157); and (3) failed to disclose that the

18  redesign efforts in 2011 were necessitated by the Low-Tension Oil Defect (*id.* ¶¶ 152-153).

19      GM does not address the application of fraudulent concealing under the laws of the respective

20  states of the Non-California Plaintiffs.[13]  these states also recognize such tolling.  Accordingly, the

21  implied warranty claims of these Plaintiffs are adequately pleaded and should be sustained.

22

23  [12] GM cites *Philips v. Ford Motor Co.*, 2016 WL 1745948, at *14 (N.D. Cal. May 3, 2016) and *Allen v.

24  Similasan Corp.*, 96 F. Supp. 3d 1063 (S.D. Cal. 2015) for the proposition that Plaintiff Siqueiros must
    affirmatively plead facts showing due diligence to rely on the fraudulent concealment doctrine.  The

25  Court should follow the court in *Sater* and not require such allegations.  The equitable doctrine of
    fraudulent concealment tolling is not focused on the actions of the plaintiff, but on whether a defendant,

26  "by its own deception, has caused a claim to grow stale."  *Regents of Univ. of Cal. v. Superior Ct.*, 20
    Cal. 4th 509, 533 (1999).  Accordingly, there is no justification for requiring a plaintiff to affirmatively

27  plead and prove his own due diligence.

28  [13] *See, e.g., Sellers v. A.H. Robins Co.*, 715 F.2d 1559, 1561 (11th Cir. 1983); *Miles v. A.O Smith
    Harvestore Prods., Inc.*, 992 F.2d 813, 817 (8th Cir. 1993); *BP Am. Prod. Co. v. Patterson*, 263 P.3d

1    Moreover, apart from tolling under the fraudulent concealment doctrine, under the laws of certain

2    of the Plaintiffs' states, the statutes of limitation for breach of implied warranty do not begin to run until

3    a plaintiff has discovered the breach or should have discovered the breach.  *See Green v. Bradley Co.*,

4    194 F. Supp. 3d 479 (D.S.C. 2016) (applying discovery rule to breach of implied warranty claims under

5    South Carolina law)[14]; *Smith v. Continental Ins. Co.*, 326 So.2d 189, 191 (Fl. Dist. Ct. App. 1976) (stating

6    that discovery rule should apply to breach of implied warranty claim under Florida law).  As alleged,

7    Plaintiffs could not have known about the Low-Tension Oil Ring Defect during the period of any

8    applicable statutes of limitation.  (Compl. ¶ 191.)

9    **B.    Plaintiffs' Consumer Protection Claims Are Not Barred by the Applicable Statutes**

10   **of Limitation.**

11   GM argues that certain Plaintiffs' claims based on their respective state's consumer protection

12   statutes are barred due to expiration of the applicable statutes of limitation.  (Def.'s Mem. at 27.)  To

13   make this argument, however, GM, once again, ignores Plaintiffs' allegations of tolling through

14   fraudulent concealment and delayed discovery.

15   As alleged (Compl. ¶¶ 193-98), the claims of Plaintiffs Ludington, Shorter, Madson, Jones, and

16   Gulling are tolled by the doctrine of fraudulent concealment under the laws of their respective states.  *See*

17   *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1344, 1346 (S.D. Fla. 2016) (recognizing

18   fraudulent concealment tolling of claim brought Florida Deceptive and Unfair Trade Practices Act);

19

20   _____

21   103, 109 (Colo. 2011); *Giordano v. Dzerwinski*, 216 A.2d 874, 875 (Del. Supr. 1966); *Mayfield v.*
     *Heiman*, 730 S.E.2d 685 (Ga. Ct. App. 2012); *Therihault v. A.H. Robins Co., Inc.*, 698 P.2d 365, 366-68

22   (Idaho 1985); *Eickmeyer v. Blietz Org., Inc.*, 671 N.E.2d 795, 799-80 (Ill. Ct. App. 1966); *Ludwig v.*
     *Ford Motor Co.*, 510 N.E.2d 691, 699 (Ind. Ct. App. 1986); *Schlote v. Dawson*, 676 N.W.2d 187, 195

23   (Iowa 2004); *ASP Ent., Inc. v. Guillory*, 22 So.3d 964 (La. Ct. App. 2009); *Sanderson Farms Inc. v.*
     *Ballard*, 917 So.2d 783, 789-90 (Miss. 2005); *Hasenyager v. Board of Police Comm'rs of Kansas City*,

24   606 S.W.2d 468, 471-72 (Mo. Ct. App. 1980); *Continental Potash, Inc. v. Freeport McMoran, Inc.*, 858
     P.2d 66, 73-74 (N.M. 1993); *Friedland v. Gates*, 509 S.E.2d 793 (N.C. 1988); *Krueger v. St. Joseph's*

25   *Hospital*, 305 N.W.2d 18, 23-24 (N.D. 1981); *Masquat v. DaimlerChrysler Corp.*, 195 P.3d 48, 54-55
     (Okla. 2008); *Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987); *Benton v. Snyder*, 825 S.W.2d 409, 413-

26   14 (Tenn. 1992); *Owen v. King*, 111 S.W.2d 695, 697 (Tex. Comm. App. 1938); *Neman v. Walker*, 618
     S.E.2d 336, 339 (Va. 2005).

27

28   [14] Further, the statute of limitations for breach of implied warranty is six years in South Carolina, *see*
     S.C. Code Ann. § 36-2-725, and Plaintiff Sloan has not alleged that he purchased his vehicle more than
     six years before the filing of the original complaint in this action.

*Freebird, Inc. v. Merit Energy Co.*, 883 F. Supp. 2d 1026, 1034-36 (D. Kan. 2012); (recognizing, under Kansas law, that fraudulent concealment tolls the statute of limitations for claims sounding in fraud); *Thornton v. State Farm Mut. Auto Ins. Co., Inc.*, 2006 WL 3359448, at *6-7 (N.D. Ohio Nov. 17, 2006) (recognizing tolling due to fraudulent concealment under Ohio law). Despite knowing of the Low-Tension Oil Ring Defect (Compl. ¶¶ 151-58), GM not only failed to disclose the defect, GM actively concealed the defect by repeatedly representing to vehicle owners that the excessive oil consumption was normal (Compl. ¶¶ 159-165.) Had GM informed complaining consumers of the Low-Tension Oil Ring Defect, that information would have become public and Plaintiffs would have been aware of their claims; but instead, GM actively suppressed the Low-Tension Oil Ring Defect.

The court should also reject GM's argument that Plaintiff Goodwin's Arkansas Deceptive Trade Practices Act claim fails because Plaintiff Goodwin does not allege the exact date he discovered the Low-Tension Oil Ring Defect. This argument ignores that the Complaint specifically alleges that Plaintiffs did not know of the Low-Tension Oil Ring Defect during the time period of any statute of limitations that would bar their claims. (Compl. ¶¶ 191-92.) Accordingly, it follows that Plaintiff Goodwin's claim was tolled until at least five years after he purchased his vehicle, and his claim is, therefore, timely.

Likewise, GM's argument that the claims of Plaintiffs Edgecomb, Bradford, Hannken, Smith, Sanchez, Thacker, and Perkins are time-barred must also be rejected. First, as stated above, Plaintiffs specifically allege that that they did not know of the Low-Tension Oil Ring Defect during the period of any statute of limitations that would bar their claims. (Compl. ¶¶ 191-92.) Second, the relevant statutes of limitations do not start running until Plaintiffs reasonably should have discovered GM's deceptive conduct.[15] Nothing in the Complaint suggests that Plaintiffs should have discovered GM's deceptive

---

[15] Col. Rev. Stat. § 6-1-115; Ga. Code § 10-1-401; Tex. Bus. & Com. Code § 17.565; Va. Code Ann. § 801-249; *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 763 (S.D. Ill. 2010) (holding that "a cause of action under Illinois law does not accrue for purposes of the statute of limitations, and thus the relevant limitations period does not begin to run, 'until the injured party knows or should have known of his injury'") (quoting *City Nat'l Bank of Fla. v. Checkers, Simon & Rosner,* 32 F.3d 277, 282 (7th Cir. 1994)); *Proal v. JP Morgan Chase & Co.*, 202 F. Supp. 3d 209, 215 (D. Mass. 2016) (holding that, under Massachusetts law, "the claim accrues when the plaintiff discovers or reasonably should have discovered that she has been harmed by the defendant's conduct"); *Mentis v. Delaware Am. Life Ins. Co.*, 1999 WL 744430, *8 (July 28, 1999) (recognizing that under Delaware law, "[t]he time of discovery rule provides

1    conduct prior to the filing of the Complaint, thus creating a statute of limitations problem.[16]  *See MyFord*

2    *Touch*, 46 F. Supp. 3d at 960-61 ("'[s]tatute of limitations is an affirmative defense that a plaintiff is not

3    required to plead in his or her complaint."); *Belluomini v. CitiGroup, Inc.*, 2013 WL 3855589, at *3 n.3

4    (N.D. Cal. July 24, 2013) ("Federal courts have repeatedly held that a plaintiff is not required to plead

5    facts in his complaint in order to avoid potential affirmative defenses.").

6         Further, under the Louisiana Unfair Trade Practices and Consumer Protection Law, the one year

7    period governing Plaintiff Olivier's claim cannot begin to run "until a continuing violation ceases."

8    *CheckPoint Fluidic Systems Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780 (E.D. La. 2012); *Fox v. Dupree*,

9    633 So. 2d 612, 614 (La. Ct. App. 1993). The same is true with respect to Plaintiff Bednarek's claim

10   under the Wisconsin Deceptive Trade Practices Act.  *See Werner v. Pittway Corp.*, 90 F. Supp. 2d 1018,

11   1033-34 (W.D. Wis. 2000).  Here, GM's active and continual concealment of the Low-Tension Oil Ring

12   Defect prevented the statute of limitations from beginning to run on Plaintiff Olivier and Bednarek's

13   consumer protection claims.

14   **VII.   PLAINTIFFS' WARRANTY CLAIMS DO NOT HAVE OTHER FATAL**

15        **DEFICIENCIES.**

16        **A.    Plaintiffs Have Adequately Pleaded Harm and Damages.**

17        For each of their express and implied warranty claims, Plaintiffs allege that they have suffered

18   damages because of the Low-Tension Oil Ring Defect.  Under the U.C.C., one measure of damages for

19   breach of warranty is: "the difference at the time and place of acceptance between the value of the goods

20   accepted and the value they would have had if they had been as warranted." U.C.C § 2-714; *see also Isip*,

21   155 Cal. App. 4th at 25-27 (recognizing the same measure of damages for claims under the Song-Beverly

22   Act).  Here, Plaintiffs have adequately alleged that they received Class Vehicles that were worth less than

23   if the vehicles did not have the Low-Tension Oil Ring Defect, as warranted.  Specifically, Plaintiffs allege

24   that, contrary to GM's express warranty and the implied warranty of merchantability, they received

25

26   that in certain cases, a cause of action does not accrue until a party has reason to know that he or she has
     a cause of action," and stating that the applicability of this rule is a question of fact.).

27   [16] Defendant's argument with respect to Plaintiff Olivier's redhibition claim (Def.'s Mem. at 29, n. 12)
     fails for the same reason.  Plaintiff Olivier was not required to affirmatively plead around the statute of

28   limitations.

1   defective vehicles that consume excessive oil, which leads to lack of lubricity, internal component wear,

2   metal-on-metal friction, and can cause fire and engine failure.  (Compl. ¶¶ 143-150.)  Accordingly,

3   Plaintiffs have alleged harm and damages for their warranty claims.[17]

4       **B.    No Plaintiff's Claim Is Barred by U.C.C § 2-607.**

5       GM alleges that nine plaintiffs failed to allege that they provided GM with pre-suit notice, as

6   required by the warranty laws of their respective states.  (Def.'s Mem. at 30-31.)  This argument fails to

7   recognize that Plaintiff Ludington provided GM with notice, *on behalf of the class*, of GM's breach of

8   warranties due to the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and that

9   GM never responded to Plaintiff Ludington's letter.[18]  Through Ludington's letter, GM received notice

10  of each Plaintiff's breach of warranty claim, yet chose to do nothing about it.

11      With respect to Plaintiff Hanneken's Illinois law claims, he is excused from the notice

12  requirement because GM had actual knowledge of the Low-Tension Oil Ring Defect.  *See In re*

13  *McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007) ("Direct notice is not required

14  when (1) the seller has actual knowledge of the defect of the particular product; or (2) a consumer plaintiff

15  suffers a personal injury, in which case the notice requirement could be satisfied by filing a lawsuit

16  against the seller.").  Further, under Texas law, pre-suit notice is not required when it would be redundant

17  and futile.  *See Barlow v. Pfizer Inc.*, 2013 WL 12171892, at *7 (W.D. Tex. Feb. 22, 2013) ("Any 'notice'

18  Plaintiff could have given would have been redundant, and futile besides.").

19

20

21

22

23

24  [17] None of the cases Defendants cite for the proposition that "actual harm or damage is an essential

25  element" of warranty claims (Def.'s Mem. at 29-30) suggest that when a plaintiff has adequately pleaded breach of warranty, and has alleged that he purchased a vehicle that was worth less than warranted, he

26  has not adequately pleaded damages.

27  [18] Compl. ¶¶ 188, 224, 251, 266, 306, 317, 355, 366, 405, 416, 454, 465, 503, 544, 555, 595, 606, 644,
    682, 693, 720, 762, 773, 811, 822, 849, 916, 927, 965, 976, 1003, 1015, 1054, 1065, 1104, 1115, 1153,

28  1164, 1200, 1211, 1249, 1260, 1300, 1346, 1357, 1397, 1410, 1451, 1462, 1500, 1511, 1536, 1550, 1561,
    1601, 1612, 1652, 1693, 1704, 1742.

1

**VIII.   PLAINTIFFS HAVE ADEQUATELY PLEADED UNJUST ENRICHMENT.**

2

First, GM's argument that unjust enrichment cannot be pleaded as a stand-alone remedy under

3

California law fails.[19]  In *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015), the court

4

held that "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the action as a quasi-

5

contract claim seeking restitution.'"  *Id.* at 762 (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223

6

Cal. App. 4th 221, 231 (Cal. App. 2014)).  Indeed, it is well established that plaintiffs can assert clams

7

for unjust enrichment.  *See, e.g., Perez v. Monster Inc.*, 149 F. Supp. 3d 1176 (N.D. Cal. 2016) (Chen,

8

J.) (citing *Astiana* and allowing claim for unjust enrichment); *In re Safeway Tuna Cases*, 2016 WL

9

3743364 (N.D. Cal. 2016) (Chen, J.) (same).[20]

10

Second, the Court should reject GM's argument that Plaintiffs' unjust enrichment claims are

11

precluded by "two *express contracts*—their purchase agreements with GM dealers and the GM limited

12

new vehicle warranty."  The Complaint does allege Plaintiffs' "purchase agreements with GM dealers,"

13

and thus such agreements cannot serve as the basis for dismissing Plaintiffs' claim.  Moreover, pursuant

14

to Fed. R. Civ. P. 8(d), a party may assert alternative claims even if they are inconsistent.  *See In re*

15

*Safeway Tuna Cases*, 2016 WL 3743364, at *2 (holding that "Plaintiffs are permitted to plead unjust

16

enrichment, even if it were duplicative of their other claims, at the pleading stage," and rejecting

17

defendants' argument that the plaintiffs' unjust enrichment claim was inconsistent with their breach of

18

warranty claim).

19

Although, as GM emphasizes, courts have held that a claim for unjust enrichment cannot stand

20

where there is an allegation of an express contract, such a holding is inconsistent with Rule 8 and is

21

inconsistent with the reasoning of Ninth Circuit in *Astiana*: "To the extent the district court concluded

22

that the cause of [unjust enrichment] was nonsensical because it was duplicative of or superfluous to

23

_____

24

[19] GM does not contend that unjust enrichment is not a stand-alone cause of action under the law of any other state.

25

[20] Defendants' cited cases are distinguishable.  In *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101,

26

1120 (N.D. Cal. 2016), the court held that the plaintiff failed to allege an actionable omission.  Here, Plaintiffs have specifically alleged that they overpaid for their vehicles because of GM's concealment

27

of the Low-Tension Oil Ring Defect.  The court in *Forouzesh v. Starbucks Corp.*, 2016 WL 4443203, at *5 (C.D. Cal. Aug. 19, 2016), simply concluded that plaintiff had not stated a "viable claim." For the reasons

28

stated in the Complaint, and this brief, this conclusion does not apply to Plaintiffs in this case.

1
2
3
4

Astiana's other claims, this is not grounds for dismissal.  Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.").  783 F.3d at 762-63.  Accordingly, following the reasoning of the Ninth Circuit, Plaintiffs' claim for unjust enrichment should not be dismissed.[21]

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[21] *See also Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 989 (N.D. Cal. Mar. 14, 2016) ("the Ninth Circuit reversed a district court's dismissal of an unjust enrichment as 'duplicative of or superfluous to 'the other claims in the complaint. Such an argument 'is not grounds for dismissal'"); *Brenner v. Procter & Gamble Co.*, 2016 WL 8192946, at *8 (C.D. Cal Oct. 20, 2016) (citing *Astiana*, and allowing unjust enrichment claim to proceed along with express warranty claim); *Communities v. Insinkerator & Emerson Elec. Co.*, 2016 WL 3351009, at *2 (E.D. Wash. June 15, 2016) (recognizing that Rule 8(d) allows for allegations of an express contract and a claim of unjust enrichment); *Jamerson v. UMG Recordings, Inc.*, 2014 WL 12588642, at *14 (C.D. Cal. Apr. 14, 2014) (The Court "agrees with those courts that have held that federal law permits plaintiffs simultaneously to plead unjust enrichment and breach of contract claims, even if they cannot ultimately recover on both."); *Becerra v. Gen. Motors LLC*, 2017 WL 951028, at *15 (S.D. Cal. Mar. 10, 2017) ("Federal Rule of Procedure 8(d) allows parties to plead claims in the alternative or in an inconsistent manner, and courts in this Circuit have allowed unjust enrichment and breach of contract claims to proceed simultaneously in one action."); *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011) ("Until an express contract is proved, Defendant's motion to dismiss an unjust enrichment claim is premature."); *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 828 (D. Minn. 2010) ("The Court will permit simultaneous pleading of breach of warranty and unjust enrichment claims on the grounds that, under Federal Rule of Civil Procedure 8(d), a party is permitted to plead in the alternative."); *King v. Carolina First Bank*, 26 F. Supp. 3d 510, 519 (D.S.C. 2014) (allowing an unjust enrichment claim in conjunction with a breach of contract claim at the motion to dismiss stage since pleadings in the alternative are a common practice); *Team Impressions, Inc. v. Chromas Techs. Canada, Inc.*, 2003 WL 355647, at *4 (N.D. Ill. Feb. 18, 2003) (recognizing that Fed. R. Civ. Proc. 8(e)(2) allows the pleading of alternative claims of breach of contract and unjust enrichment despite the inconsistency between those claims, as long as the unjust enrichment claim does not include allegations of a specific contract governing the parties relationship.); *Resource Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F. Supp. 2d 763 (N.D. Ohio 2004); *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016); *Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1143 (D. Kan. 2010); *Volz v. Provider Plus, Inc.*, 2015 WL 3621113, at *5 (E.D. Mo. June 9, 2015); *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727 (W.D. Ky. 2013); *Meadow v. Nibco, Inc.*, 2016 WL 2986350 (M.D. Tenn. May 24, 2016); *Murrah v. EOG Res., Inc.*, 2011 WL 227652, at *3 (W.D. Okla. Jan. 21, 2011); *Property One., Inc. v. USAgencies, L.L.C.*, 830 F. Supp. 2d 170, 175 (M.D. La. 2011); *Virginia Elec. & Power Co. v. Broe Growth Capital LLC*, 2007 WL 2071726 (E.D. Va. July 17, 2007); *La Crosse Cty. v. Trinity Indus., Inc.*, 2016 WL 1274623 (W.D. Wis. Mar. 31, 2016); *Ehreth v. Capital One Servs.*, 2008 WL 3891270, at *3 (W.D. Wash. Aug. 19, 2008); *Union Pac. Rail. Comp. v. Cedar Rapids and Iowa City Ry Co.*, 477 F. Supp. 2d 980 (2007); *Ades v. Werther*, 256 Ga. App. 8, at 10(1), 567 S.E.2d 340 (Ga. Ct. App. 2002); *McColl Farms, LLC v. Pflaum*, 837 N.W.2d 359 (N.D. 2013); *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1261 (D. Colo. 2014); *Tuohey v. Chenal Healthcare, LLC*, 173 F. Supp. 3d 804, 813 (E.D. Ark. 2016); *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443 (Ala. 1996); *ADA County Hwy. Dist. v. Rhythm Eng'g, LLC*, 2016 WL 4582045 (D. Idaho Sept. 1, 2016); *Kohl's Indiana, L.P. v. Owens*, 979 N.E.2d

1    Third, GM's argument that certain Plaintiffs' unjust enrichment claims are barred pursuant to

2    applicable statutes of limitation fails.  GM does not address Plaintiffs' allegations that their claims are

3    tolled by the discovery rule and the doctrine of fraudulent concealment.[22]  As stated above, Plaintiffs

4    have alleged that GM actively concealed the Low-Tension Oil Ring Defect, and have stated that they did

5    not learn of their claims during the time period of any statute of limitations that would bar their claims.

6    For the same reason that the statute of limitations for Plaintiffs' implied warranty and consumer

7    protection claims are tolled, so are Plaintiffs' unjust enrichment claims.

8                                              **CONCLUSION**

9    For all of the foregoing reasons, Plaintiffs' respectfully request that the Court deny GM's

10   Motion to Dismiss in its entirety.

11

12

13   _____

14   159, 168 (Ind. Ct. App.2012); *Arena Resources, Inc. v. Obo, Inc.*, 238 P.3d 357, 361 (N.M. Ct. App. 2010); *Triad Packaging, Inc. v. SupplyOne, Inc.*, 925 F. Supp. 2d 774, 787 (W.D.N.C. 2013).

15   [22] For accrual of applicable statute of limitations for unjust enrichment claims: (California) *Norgart v.*
*Upjohn Co*., 21 Cal. 4th 383, 397 (1999) (unjust enrichment claims may be tolled subject to the discovery
16   rule); (Alabama) *Auburn Univ. v. IBM Corp.*, 716 F. Supp. 2d 1114, 1118 (M.D. Ala. 2010) (Unjust
enrichment claim sounding in contract or implied contract has a six-year statute of limitation); (Arkansas)
17   (*Keller v. FCOA, LLC*, 2016 WL 110590 (W.D. Ark. Jan. 8, 2016) (unjust enrichment claim can be tolled
by fraudulent concealment); (Colorado) *Oaster v. Robertson,* 173 F. Supp. 3d 1150 (D. Colo. 2016)
18   (delayed discovery rule for statute of limitation for unjust enrichment claim triggered when the Plaintiff
had knowledge of Defendant's bad act) and *Robert Thomas and Anne McDonald Thomas Rev. Trust v.*
19   *Inland Pac. Colo., LLC*, 2012 WL 2190852, at *3 (D. Colo. June 14, 2012) (statute of limitations for
unjust enrichment claim "accrues 'when a person discovers, or through the exercise of reasonable
20   diligence should discover"); (Delaware) *Hydrogen Master Rights, Ltd. v. Weston*, 2017 WL 78582, at *4
(D. Del. Jan. 9, 2017); (Florida) *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostics, Inc.*, 145 F. Supp.
21   3d 1154, 1169 (S.D. Fla. 2015); (Illinois) *Greenberg v. Broad Cap. Assoc., Inc.*, 2002 WL 31269617
(N.D. Ill. Oct. 9, 2002); (Iowa) *Ney Leasing Corp., Inc. v. Cargill Meat Logistics Solutions, Inc.*, 2010
22   WL 3941999, at *7-8 (N.D. Iowa Oct. 6, 2010); (Kansas) *Leathers v. Leathers,* 2010 WL 1936137, at
*17–18 (D. Kan. May 13, 2010); (Massachusetts) *Micromuse, Inc. v. Micromuse, Plc*, 304 F. Supp. 2d,
23   202, 209 (D. Mass. 2004) (six year statute of limitations for unjust enrichment claims sounding in
contract, and discovery rule applies); (Minnesota) *Cordes v. Holt and Anderson Ltd*., 2009 WL 2016613,
24   at *2 (Minn. App. Jul. 14, 2009; (New Mexico) *Sweesy v. Sun Life Assurance Co. of Canada*, 643 F.
App'x 785, 790 (10th Cir. 2016); (Oklahoma) *N.C. Corff Partnership, Ltd. v. OXY USA, Inc.*, 929 P.2d
25   288, 293 (Okla. Ct. App. 1996); (Pennsylvania) *Miller v. Miller*, 2015 WL 6751097, at *2 (Pa. Super.
Nov. 4, 2015); (Texas) *Janvey v. Suarez*, 978 F. Supp. 2d 685 (N.D. Tex. 2013); (Washington) *Coto*
26   *Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); (West Virginia) *Stand Energy Corp. v.*
*Columbia Gas Transmission Corp*., 380 F. Supp. 748 (S.D. W. Va. 2005); (Wisconsin) *Buss v. Rosenow*,
27   558 N.W.2d 706 (Wis. Ct. App. 1996).

28

**Dated:**  May 25, 2017

/s/ Adam J. Levitt
Adam J. Levitt (*pro hac vice*)
John E. Tangren (*pro hac vice*)
Daniel R. Ferri (*pro hac vice*)
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dlcfirm.com
jtangren@dlcfirm.com
dferri@dlcfirm.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
H. Clay Barnett, III (*pro hac vice*)
Archie I. Grubb, II (*pro hac vice*)
Andrew E. Brashier (*pro hac vice*)
**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama  36104
Telephone: 334-269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Archie.Grubb@Beasleyallen.com
Andrew.Brashier@Beasleyallen.com

Jennie Lee Anderson
Lori E. Andrus
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California  94104
Telephone:  415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Nicholas R. Rockforte (*pro hac vice* motion to be filed)
Christopher L. Coffin (*pro hac vice* motion to be filed)
**PENDLEY, BAUDIN & COFFIN, L.L.P.**
1515 Poydras Street, Suite 1400
New Orleans, Louisiana 70112
Telephone:  504-355-0086
nrockforte@pbclawfirm.com
ccoffin@pbclawfirm.com

Marcus Rael (*pro hac vice* motion to be filed)
**ROBLES, RAEL & ANAYA, P.C.**
500 Marquette NW, Suite 700
Albuquerque, New Mexico  87102
Telephone:  505-242-2228
marcus@roblesrael.com

Anthony J. Garcia, Esq. (*pro hac vice*)
**AG LAW**
742 South Village Circle
Tampa, Florida  33606
Telephone:  813-259-9555
anthony@aglawinc.com

Timothy J. Becker (*pro hac vice*)
Jennell Kristine Shannon (*pro hac vice*)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, Minnesota  55101
Telephone: 612-436-1800
tbecker@johnsonbecker.com
jshannon@johnsonbecker.com

Marybeth Gibson (*pro hac vice*)
**THE FINLEY FIRM, P.C.**
200 13th Street
Columbus, Georgia  31901
Telephone: (706) 322-6226
mgibson@thefinleyfirm.com

Eric J. Haag (*pro hac vice*)
**ATTERBURY, KAMMER, & HAAG, S.C.**
8500 Greenway Boulevard, Suite 103
Middleton, Wisconsin  53562
(608) 821-4600
ehaag@wiscinjurylawyers.com

***Counsel for Plaintiffs and the Proposed Classes***