Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California  94104
Telephone:  415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Adam J. Levitt (*pro hac vice*)
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900
alevitt@dlcfirm.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama  36104
Telephone:  334-269-2343
Dee.Miles@beasleyallen.com

Attorneys for Plaintiffs (*additional counsel appear on signature page*)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

MONTEVILLE SLOAN, JR., RAUL SIQUEIROS, TODD AND JILL CRALLEY, JOSEPH BRANNAN, LARRY GOODWIN, MARC PERKINS, DONALD LUDINGTON, THOMAS SHORTER, DERICK BRADFORD, GABRIEL DEL VALLE, KEVIN HANNEKEN, EDWIN AND KATELYN DOEPEL, DAN MADSON, JAMES FAULKNER, JOSEPH OLIVIER, SCOTT SMITH, ROSS DAHL, DREW PETERSON, MICHAEL WARE, STEVE KITCHEN, JOHN NEUBAUER, BARBARA MOLINA, DENNIS VITA, STEVEN EHRKE, BILL MAUCH, THOMAS GULLING, RONALD JONES, MIKE WARPINSKI, JOHN GRAZIANO, JOSHUA BYRGE, RUDY SANCHEZ, CHRISTOPHER THACKER, RANDY CLAUSEN, KELLY HARRIS, JAMES ROBERTSON, and JONAS BEDNAREK, individually and on behalf of all others similarly situated,

     Plaintiffs,

     v.

GENERAL MOTORS LLC,

     Defendant.

Case No.:  16-cv-07244-EMC

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Judge:  Hon. Edward J. Chen
Hearing Date:  December 14, 2017
Time of Hearing:  1:30 p.m.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 1

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT ....................................................................................................................... 3

      I.      PLAINTIFFS' CONSUMER PROTECTION AND FRAUD CLAIMS ARE
             WELL-PLEADED. ........................................................................................ 3

             A.      General Motors Had a Duty to Disclose the Unsafe Oil Consumption
                   Defect. ....................................................................................................... 3

             B.      The Complaint Sufficiently Alleges GM's Knowledge of the Oil
                   Consumption Defect. ................................................................................. 9

      II.     PLAINTIFFS HAVE SHOWN THE MATERIALITY OF GM'S OMISSIONS,
             WHICH CREATES A PRESUMPTION OF RELIANCE. ............................ 13

      III.    PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIMS ARE WELL
             SUPPORTED. .............................................................................................. 15

      IV.    PLAINTIFFS' CLAIMS ARE TIMELY FILED. ............................................ 17

             A.      Plaintiffs' Implied Warranty Claims Are Timely. ............................... 17

             B.      Plaintiffs' Consumer Protection Claims Are Timely. ......................... 20

      V.     PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE WELL PLEADED
             AND TIMELY. ............................................................................................. 22

      VI.    GM WAIVED ITS PERSONAL JURISDICTION CHALLENGE................................ 23

CONCLUSION ................................................................................................................... 25

Plaintiffs' Opposition to Defendant's
Motion to Dismiss
        i        Case No. 16-cv-07244-EMC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Similasan Corp.*,
96 F. Supp. 3d 1063 (S.D. Cal. 2015) ...............................................................19

*Am. Ass'n of Naturopathic Physicians v. Hayurst*,
227 F.3d 1104 (9th Cir. 2000)...........................................................................24

*Am. Suzuki Motor Corp. v. Super. Ct.*,
37 Cal. App. 4th 1291 (1995).............................................................................16

*Asghari v. Volkswagen Grp. of Am., Inc.*,
42 F. Supp. 3d 1306 (C.D. Cal. 2013).......................................................... 6, *passim*

*ASP Ent., Inc. v. Guillory*,
22 So.3d 964 (La. Ct. App. 2009) ......................................................................19

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015)..............................................................................22

*Auburn Univ. v. IBM Corp.*,
716 F. Supp. 2d 1114 (M.D. Ala. 2010)............................................................22

*Avedisian v. Mercedes-Benz USA LLC*,
43 F. Supp. 3d 1071 (C.D. Cal. 2014)...............................................................16

*Baggett v. Hewlett-Packard Co.*,
582 F. Supp. 2d 1261 (C.D. Cal. 2007) .............................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................3

*Bell-Sparrow v. Wiltz*,
2014 WL 2927354 (N.D. Cal. June 27, 2014) ...................................................24

*Belville v. Ford Motor Co.*,
60 F. Supp. 3d 690 (S.D.W. Va. 2014) ..............................................................14

*Benny v. Pipes*,
799 F.2d 489 (9th Cir. 1986)..............................................................................24

*Benton v. Snyder*,
825 S.W.2d 409 (Tenn. 1992) ............................................................................19

*Borkman v. BMW of N. Am., LLC*,
2017 WL 4082420 (C.D. Cal. Aug. 28, 2017) .............................................6, 15

*Boston Telecomms. Group, Inc. v. Deloitte Touche Tohmatsu*,
　249 Fed. Appx. 534 (9th Cir. 2007) ..................................................24

*BP Am. Prod. Co. v. Patterson*,
　263 P.3d 103 (Colo. 2011) ..............................................................19

*Bristol-Myers Squibb Co. v. Super. Ct.*,
　137 S. Ct. 1773 (2017) ...............................................................24, 25

*Buss v. Rosenow*,
　558 N.W.2d 706 (Wis. Ct. App. 1996)..............................................23

*CG Tech. Dev., LLC v. Fanduel, Inc.*,
　2017 WL 3207233 (D. Nev. July 27, 2017) .......................................25

*CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*,
　888 F. Supp. 2d 780 (E.D. La. 2012) ................................................21

*Cholakyan v. Mercedes-Benz USA, LLC*,
　796 F. Supp. 2d 1220 (C.D. Cal. 2011) .............................................15

*Clark v. LG Elecs., U.S.A., Inc.*,
　2013 WL 5816410 (S.D. Cal. Oct. 29, 2013)......................................13

*Continental Potash, Inc. v. Freeport McMoran, Inc.*,
　858 P.2d 66 (N.M. 1993).................................................................19

*Cordes v. Holt and Anderson Ltd.*,
　2009 WL 2016613 (Minn. Ct. App. Jul. 14, 2009) ..............................22

*Coto Settlement v. Eisenberg*,
　593 F.3d 1031 (9th Cir. 2010)..........................................................23

*Daimler AG v. Bauman*,
　134 S. Ct. 746 (2014) .....................................................................24

*Daugherty v. Am. Honda Motor Co.*,
　144 Cal. App. 4th 824 (Cal. 2006) .....................................................7

*Diaz v. Intuit, Inc.*,
　2017 WL 4386451 (N.D. Cal. Sept. 29, 2017).....................................22

*Doukas v. Ballard*,
　972 N.Y.S.2d 143 ( S.C., Suffolk County, N.Y., 2013)........................23

*Doyle v. Chrysler Group LLC*,
　2014 WL 3361770 (C.D. Cal. July 3, 2014) .......................................14

*Eickmeyer v. Blietz Org., Inc.*,
　671 N.E.2d 795 (Ill. Ct. App. 1966)..................................................19

*Falco v. Nissan N. Am., Inc.*,
   2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) ....................................................................10, 12, 13

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007)...................................................................................6, 13

*Farmers Ins. Exch. v. First Choice Chiropractic & Rehab.*,
   2016 U.S. Dist. LEXIS 51494 (D. Or. Feb. 25, 2016) ................................................................23

*Fox v. Dupree*,
   633 So. 2d 612 (La. Ct. App. 1993) ..........................................................................................21

*Freebird, Inc. v. Merit Energy Co.*,
   883 F. Supp. 2d 1026 (D. Kan. 2012) ...................................................................................19, 20

*Friedland v. Gates*,
   509 S.E.2d 793 (N.C. 1988) .....................................................................................................19

*Gauthier v. AMF, Inc.*,
   788 F.2d 634 (9th Cir. 1986) ......................................................................................................8

*In re Gen. Motors Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016)................................................................................7

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2017 WL 2839154 (S.D.N.Y. June 30, 2017) ...............................................................................6

*Giordano v. Dzerwinski*,
   216 A.2d 874 (Del. Supr. 1966) ...............................................................................................19

*Gordon v. Ford Motor Co.*,
   239 A.D. 2d 156 (N.Y. App. Div. May 6, 1997)...........................................................................17

*Green v. Bradley Co.*,
   194 F. Supp. 3d 479 (D.S.C. 2016) ...........................................................................................17

*Greenberg v. Broad Cap. Assoc., Inc.*,
   2002 WL 31269617 (N.D. Ill. Oct. 9, 2002) ..............................................................................22

*Grodzitsky v. Am. Honda Motor Co.*,
   2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ..............................................................................12

*Gucci Am., Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014) ................................................................................................24, 25

*Hasenyager v. Bd. of Police Comm'rs of Kansas City*,
   606 S.W.2d 468 (Mo. Ct. App. 1980) .......................................................................................19

*Hydrogen Master Rights, Ltd. v. Weston*,
   2017 WL 78582 (D. Del. Jan. 9, 2017) .....................................................................................22

*Jackson v. Deft, Inc.*,
   223 Cal. App. 3d 1305 (1990) ...................................................................................8

*Jackson v. Hayakawa*,
   682 F.2d 1344 (9th Cir. 1982) ...............................................................................24

*Janvey v. Suarez*,
   978 F. Supp. 2d 685 (N.D. Tex. 2013) ..................................................................23

*Keegan v. Am. Honda Motor Co.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012) ...................................................................16

*Keller v. FCOA, LLC*,
   2016 WL 110590 (W.D. Ark. Jan. 8, 2016) ..........................................................22

*Kent v. Hewlett-Packard Co.*,
   2010 WL 2681767 (N.D. Cal. July 6, 2010) .........................................................16

*Kremers v. Coca-Cola Co.*,
   712 F. Supp. 2d 759 (S.D. Ill. 2010) .....................................................................21

*Krueger v. St. Joseph's Hospital*,
   305 N.W.2d 18 (N.D. 1981) ...................................................................................19

*Lazar v. Kroncke*,
   862 F.3d 1186 (9th Cir. 2017) ...............................................................................25

*Leathers v. Leathers*,
   2010 WL 1936137 (D. Kan. May 13, 2010) .........................................................22

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ...................................................................16

*Lohman v. Daimler-Chrysler Corp.*,
   166 P.3d 1091 (N.M. Ct. App. 2007) .......................................................................6

*Ludwig v. Ford Motor Co.*,
   510 N.E.2d 691 (Ind. Ct. App. 1986) ....................................................................19

*MacDonald v. Ford Motor Co.*,
   37 F. Supp. 3d 1087 (N.D. Cal. 2014) ..............................................................13, 14

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ..............................................................14, 15

*Marsikian v. Mercedes Benz USA, LLC*,
   2009 WL 8379784 (C.D. Cal. May 4, 2009) ........................................................6, 7

*Masquat v. DaimlerChrysler Corp.*,
   195 P.3d 48 (Okla. 2008) .......................................................................................19

*Maya NY, LLC v. Hagler*,
   106 A.D.3d 583 (N.Y. App. Div. May 21, 2013)..............................................................23

*Mayfield v. Heiman*,
   730 S.E.2d 685 (Ga. Ct. App. 2012) ...............................................................................19

*McCabe v. Daimler AG*,
   948 F. Supp. 2d 1347 (N.D. Ga. 2013) .............................................................................6

*McFadden v. Dryvit Sys., Inc.*,
   2004 WL 2278542 (D. Or. Oct. 8, 2004) .........................................................................17

*Mentis v. Delaware Am. Life Ins. Co.*,
   1999 WL 744430 (Del. Super. July 28, 1999) .................................................................21

*Micromuse, Inc. v. Micromuse, Plc*,
   304 F. Supp. 2d (D. Mass. 2004).....................................................................................22

*Miles v. A.O Smith Harvestore Prods., Inc.*,
   992 F.2d 813 (8th Cir. 1993) ...........................................................................................19

*Miller v. Miller*,
   2015 WL 6751097 (Pa. Super. Nov. 4, 2015)..................................................................23

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (Cal. 1993) .............................................................................................14

*Molineux v. Reed*,
   532 A.2d 792 (Pa. 1987) ..................................................................................................19

*Mui Ho v. Toyota Motor Corp.*,
   931 F. Supp. 2d 987 (N.D. Cal. 2013).................................................................12, 13, 16

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) (Chen, J.) ................................................... 6, *passim*

*Neman v. Walker*,
   618 S.E.2d 336 (Va. 2005) ..............................................................................................19

*Norgart v. Upjohn Co.*,
   21 Cal. 4th 383 (Cal. 1999) .............................................................................................22

*OCM Principal Opportunities Fund v. CIBC World Mkts. Corp.*,
   157 Cal. App. 4th 835 (2007)...........................................................................................15

*Oestreicher v. Alienware Corp.*,
   322 Fed. Appx. 489 (9th Cir. 2009) ...................................................................................7

*Owen v. King*,
   111 S.W.2d 695 (Tex. Comm. App. 1938) .......................................................................19

*Parenteau v. General Motors, LLC,*
   2015 WL 1020499 (C.D. Cal. March 5, 2015)............................................................15, 16

*Philips v. Ford Motor Co.,*
   2015 WL 4111448 (N.D. Cal. July 7, 2015) ...................................................................14

*Philips v. Ford Motor Co.,*
   2016 WL 1745948 (N.D. Cal. May 3, 2016) ...................................................................19

*Proal v. JP Morgan Chase & Co.,*
   202 F. Supp. 3d 209 (D. Mass. 2016)..............................................................................21

*R. Prasad Indus. v. Flat Irons Environ. Solutions Corp.,*
   2017 WL 4409463 (D. Ariz. Oct.4, 2017) ......................................................................25

*Redfern v. Transamerica Moving, Inc.,*
   2011 WL 167570 (D. Nev. Jan. 18, 2011) ......................................................................24

*Regents of Univ. of Cal. v. Super. Ct.,*
   20 Cal. 4th 509 (Cal. 1999) .............................................................................................18

*Roberts v. Electrolux Home Prods., Inc.,*
   2013 WL 7753579 (C.D. Cal. March 4, 2013)............................................................18, 19

*Rodriguez v. JLG Indus.,*
   2012 WL 12883784 (C.D. Cal. Aug. 3, 2012) ..................................................................8

*Rutherford Holdings, LLC v. Plaza Del Rey,*
   223 Cal. App. 4th 221 (Cal. App. 2014) .........................................................................22

*Sanderson Farms Inc. v. Ballard,*
   917 So.2d 783 (Miss. 2005) ............................................................................................19

*Sater v. Chrysler Group, LLC,*
   2015 WL 736273 (C.D. Cal. Feb. 20, 2015) ...................................................................18

*Schlote v. Dawson,*
   676 N.W.2d 187 (Iowa 2004)..........................................................................................19

*Schnabel v. Liu,*
   302 F.3d 1023 (9th Cir. 2002)..........................................................................................24

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004)............................................................................................25

*Sellers v. A.H. Robins Co.,*
   715 F.2d 1559 (11th Cir. 1983)........................................................................................19

*Soo Park v. Thompson,*
   851 F.3d 910 (9th Cir. 2017)..............................................................................................3

*Stand Energy Corp. v. Columbia Gas Transmission Corp.*,
   380 F. Supp. 2d 748 (S.D.W. Va. 2005) ..........................................................23

*State Farm Mut. Auto. Ins. Co. v. B&A Diagnostics, Inc.*,
   145 F. Supp. 3d 1154 (S.D. Fla. 2015)...........................................................22

*Sweesy v. Sun Life Assurance Co. of Canada*,
   643 F. App'x 785 (10th Cir. 2016).................................................................22

*In re Takata Airbag Prods. Liab. Litig.*,
   193 F. Supp. 3d 1324 (S.D. Fla. 2016)........................................................6, 20

*Therihault v. A.H. Robins Co., Inc.*,
   698 P.2d 365 (Idaho 1985) ..........................................................................19

*Thornton v. State Farm Mut. Auto Ins. Co., Inc.*,
   2006 WL 3359448 (N.D. Ohio Nov. 17, 2006) ..........................................20, 21

*Velasco v. Chrysler Group LLC*,
   2014 WL 4187796 (C.D. Cal. Aug. 22, 2014) ............................................13, 14

*Wallace Wood Props. v. Wood*,
   117 F. Supp. 3d 493 (S.D.N.Y. 2015) .............................................................20

*Weathers v. Fulgenzi*,
   884 P.2d 538 (Okla. 1996) ...........................................................................23

*Weaver v. Chrysler Corp.*,
   172 F.R.D. 96 (S.D.N.Y 1997)..................................................................14, 15

*Werner v. Pittway Corp.*,
   90 F. Supp. 2d 1018 (W.D. Wis. 2000).............................................................21

*WF Capital, Inc. v. Barkett*,
   2010 WL 3064413 (W.D. Wash. Aug. 2, 2010) ..................................................6

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017)....................................................................7, 10

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1336 (9th Cir. 2012).........................................................................7

*Zwiercan v. Gen. Motors Corp.*,
   2003 WL 1848571 (Pa. Ct. of Common Pleas Mar. 18, 2003) ............................6

**Federal Rules**

Fed. R. Civ. P. 12 ..............................................................................3, 23, 24

Fed. R. Civ. P. 9 ...................................................................................14, 15

**Federal Statutes**

U.C.C. § 2-725 ................................................................................................................18

**State Statutes**

Arkansas Deceptive Trade Practices Act .......................................................................21

Florida Deceptive and Unfair Trade Practices Act .......................................................20

Ga. Code § 10-1-401 .....................................................................................................21

Louisiana Unfair Trade Practices and Consumer Protection Law ................................21

Michigan Consumer Protection Act ................................................................................6

N.Y. Civil Practice LAW § 213 (2) and (8) ..................................................................23

S.C. Code Ann. § 36-2-725 ...........................................................................................17

Tex. Bus. & Com. Code § 17.565 .................................................................................21

Va. Code Ann. § 801-249 ..............................................................................................21

Wisconsin Deceptive Trade Practices Act ....................................................................21

**"The vehicle was miss firing [sic] and running rough, so much so you could not drive it."**

**"And we aren't talking about a little bit of smoke . . . it was a lot."**

**"It is an oil sucking money pit!!!"**

**"This is fraud boys."**

(Dkt. No. 67, Plaintiffs' Second Amended Complaint at ¶¶ 252, 262, 276.)

## INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC" or "Complaint") squarely and completely addresses the issues that this Court identified with respect to the previous complaint. It provides a more precise description of the cause of the extreme oil consumption ("Oil Consumption Defect"), includes Plaintiffs' own experiences with excessive oil consumption and engine damage, explains why no warning precedes unexpected engine damage or malfunction, and recites dozens of additional complaints regarding the damage and risks caused by the Oil Consumption Defect.[1] The SAC comprehensively alleges that the engine damage and vehicle malfunction caused by the Oil Consumption Defect results in an unsafe risk of total engine failure and loss of vehicular power that gave rise to Defendant General Motors LLC's ("GM") duty to disclose and a breach of its implied warranty to Plaintiffs and the other Class members. The SAC further evidences GM's knowledge of the Oil Consumption Defect through frequent, detailed consumer complaints regarding the Oil Consumption Defect, reports that GM was aware of the defect, and GM's own Technical Service Bulletins.

GM's additional arguments, previously unaddressed by the Court, lack merit. Reliance is presumed when there is an omission of a material safety defect, like the Oil Consumption Defect. The relevant statutes of limitations either do not apply as GM contends or they are tolled. And GM has waived its new argument regarding lack of personal jurisdiction.

## STATEMENT OF FACTS

GM's Generation IV Vortec 5300 engines (the "Defective Engines") suffer engine damage and malfunction because they consume an extraordinary amount of oil. (SAC ¶¶ 3, 5, 24-204, 214-31, 243-

---

[1] In light of the Court's finding that Plaintiffs' allegations do not fall within the terms of GM's warranty as to materials and workmanship (Dkt. No. 62 at 15), Plaintiffs have only included their express warranty claims in the SAC so as to preserve them for appeal.

47, 255-78.)  The Defective Engines were installed in certain model year 2007-2014 GM pickups and SUVs, but because of General Motor Corporation's ("Old GM") 2009 bankruptcy, only model year 2010-2014 vehicles are at issue (the "Class Vehicles").  (*Id.* ¶¶ 2, 6, 208-213.)

Since the filing of the First Amended Complaint (Dkt. No. 29), Plaintiffs have continued their technical analysis of the Oil Consumption Defect.  As previously explained, the primary cause of the Oil Consumption Defect is that the piston rings within the Defective Engines do not apply sufficient tension to prevent oil from reaching the combustion chamber.  (SAC ¶¶ 214-22.)  In addition to the piston rings, the Defective Engines' Active Fuel Management ("AFM") and PCV systems have also been found to contribute to excessive oil consumption.  (*Id.* ¶¶ 223-27.)  The AFM system comprises an oil pressure relief valve that sprays oil directly at the piston rings, thus contributing to oil migrating past the rings and into the combustion chamber.  (*Id.* ¶ 225.)  The PCV system further exacerbates to the oil consumption defect by improperly vacuuming oil from the engine's valvetrain, where it ends up in the combustion chambers.  (*Id.* ¶¶ 228-31.)

Contrary to GM's contention, the SAC does not "broaden" the defect.  (Def.'s Mem. at 1.)  The defect remains the same—extreme oil consumption—and this defect exists in all of the Defective Engines, with the same root causes.  (SAC ¶¶ 7-10.)  Although the AFM and PCV systems are contributing factors, consumer accounts confirm Plaintiffs' contention, consistent with the First Amended Complaint, that the primary cause of the excessive oil consumption lies in the piston rings:

- "I had the deflector installed first. . . . didn't help.  Then they replaced all the piston rings. They say that is the issue."
- "I know most ppl are having the rings/pistons changes."
- "Mechanic went on to say that they see this A LOT with the 5.3 and that the only true fix is to replace the rings and pistons. . . ."
- "A month after oil change this vehicle needs 2 quarts of oil! Dealer says it needs pistons and rings and that it's a shame."
- "After many oil consumption test I found thru my local dealer that the rings are leaking allowing oil to be burned."
- "GM says the new pistons and rings will solve the oil consumption."

(SAC ¶¶ 261, 267, 270, 272, 273, 277.)

Engine oil that gets past the piston rings and into the combustion chamber is burned during the engine's power stroke.  (*Id.* ¶ 219.)  The reduction in oil results in decreased lubricity, leading to increased

friction, heat, metal on metal contact, and, eventually, engine damage, including damage to cylinder walls, pistons, rings, camshafts, and lifters.  (*Id.* ¶¶ 27, 47, 33, 59, 64, 78, 84, 96, 101, 124, 149, 219, 238-39, 255-78.)  As discussed in more detail below, this engine damage results in unexpected engine failure, as well as engine fire.  (*Id.* ¶¶ 78, 180, 244-45, 264, 276.)  Further, and separate from the loss of lubricity, oil reaching the combustion chamber ends up coating the spark plugs' electrodes, causing spark plug fouling, and thus engine misfires, unexpected loss of power, and total ignition failure.  (*Id.* ¶¶ 33, 101, 108, 133, 155, 180, 191-92, 220, 230, 246, 256, 258, 269, 272, 279.)

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In ruling on a motion to dismiss under Rule 12(b)(6), a court must "accept the plaintiff's allegations as true and view them in the light most favorable to her."  *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).

## ARGUMENT

## I.  PLAINTIFFS' CONSUMER PROTECTION AND FRAUD CLAIMS ARE WELL-PLEADED.

### A.  General Motors Had a Duty to Disclose the Unsafe Oil Consumption Defect.

Previously, the Court held that "in order to establish GM's duty to disclose, Plaintiffs are required to show that it omitted a fact that is relevant to a safety concern."[2]  (Dkt. No. 62 at 6.)  Now, bolstered by an expanded recitation of the engine damage and engine malfunction suffered by drivers, the allegations in the SAC leave no doubt that the Oil Consumption Defect poses a significant safety risk.  Inadequate engine lubricity caused by the Oil Consumption Defect leads to engine damage and engine failure, thus exposing drivers to the risks of a suddenly inoperable vehicle, including being stranded, broken down and vulnerable to speeding traffic, and unable to drive in the event of an emergency.  (SAC ¶ 245.)  Inadequate engine lubricity can also result in engine fires, as GM warns.  (*Id.* ¶ 244.)  And, apart from the problem of inadequate lubricity, the Oil Consumption Defect results in fouled spark plugs, causing

---

[2] Plaintiffs maintain their contention that, under California law, materiality does not hinge on whether the undisclosed information is a safety issue.  (Dkt. No. 57 at 10-12.)  Plaintiffs recognize, however, that the Court has already ruled on this argument and repeat it only for purposes of any potential appeal.

engine misfires, ignition failure, and sluggish throttle response, thus threatening a driver's ability to accelerate out of harm's way or even drive at all.  (*Id.* ¶ 246.)

GM does not dispute that the Complaint adequately alleges that the Oil Consumption Defect results in extreme oil loss.  (*Id.* ¶¶ 24-204, 255-277.)  Inarguably, significant oil loss can cause severe engine damage.  Indeed, GM explicitly recognizes this fact in the Class Vehicle manuals: "If you drive the vehicle while the engine oil pressure is low, severe engine damage may occur."  (*Id.* ¶ 245.)  And Plaintiffs and others have experienced this severe engine damage:

- "In 2015, the lifters in Mr. Perkins' vehicle's engine collapsed."
- "The lifters and cam shaft in Mr. Bradford's vehicle failed and were replaced."
- "Mr. and Mrs. Doepel heard loud knocking in their vehicle's engine and white smoke was coming from the tailpipe.  The lifters within Mr. and Mrs. Doepel's vehicle had failed. Multiple mechanics told Mr. and Mrs. Doepel that the problem was caused by excessive oil consumption.  Mr. and Mrs. Doepel were forced to pay for a new engine."
- "Due to the excessive oil consumption and corresponding inadequate engine lubricity, Mr. Kitchen's vehicle suffered camshaft, lifter, and push rod failures, and these components needed to be replaced."
- "Mr. Warpinski has experienced engine knocking and ticking, a damaged cam shaft, his engine shaking and running rough, and failed lifters."
- "From day one this truck has burned about a quart an oil change, and no, this isn't normal. Traction control problems, engine reduced power, this problem cripples the vehicle."
- "After numerous spark plug burn outs and service appointments I was told that the engine is damaged because the number 1 cylinder was cracked."
- "New car burning this kind of oil is unheard of in my book . . . . They called back in a couple hours and told me the cylinder walls were scored and that they were ordering a new engine!"

(*Id.* ¶¶ 47, 64, 78, 124, 149, 258, 272.)[3]  As discussed above, damaged engines can unexpectedly shut down, leaving drivers stranded.  (*Id.* ¶ 245.)  Drivers plagued by the Oil Consumption Defect recognize this danger: "I'm blowing out 2 quarts of oil every 600 miles.  Since that time, I no longer drive my truck. I can't afford a break down, while using a wheelchair. . . . I'm now a recluse in my home."  (*Id.* ¶ 260.) GM does not dispute the risks inherent in damaged engines.

Moreover, even when a Class Vehicle's engine has not failed and shut down, the Oil Consumption Defect still leave drivers stranded or in a dangerous position along the side of a busy road if they become

---

[3] (*See also id.* ¶¶ 33, 59, 84, 96, 101, 155, 180, 196, and 203 (setting forth additional allegations regarding Plaintiffs' engine damage).)

suddenly aware that their engine is so oil-deprived that they must immediately stop driving or risk costly

engine damage:

- "I had to stop on the side of the road due to the Low Oil Pressure light coming on.  I found no oil on the dipstick and had to walk to the store to get 4 quarts of oil."
- "I was taking my wife out on our anniversary when my engine light came on (90 miles from home).  I pulled over checked the oil and there was none showing on the stick."

(*Id.* ¶¶ 260, 263.)  GM cannot dispute the legitimacy of this risk, as it explicitly instructs drivers to stop

driving when they recognize that the oil level is too low.  (*Id.* ¶ 245.)

GM further states that driving with low oil pressure can cause the engine to "become so hot it

catches fire."   (*Id.* ¶ 244.)   The reality of this risk is evidenced by multiple accounts of the Oil

Consumption Defect causing vehicles to smoke:

- "My wife's 2009 Suburban began to lose/use oil at an unbelievable rate at about 30,000 miles without evidence of oil loss or burn.  2 of the 3 times, no check oil or warnings preceded the more serious symptoms of loud engine tapping and black smoke."
- "One week after purchasing his vehicle, Mr. Thacker's vehicle began emitting smoke."
- "Mr. and Mrs. Doepel heard loud knocking in their vehicle's engine and white smoke was coming from the tailpipe."
- "Mine just started smoking really bad whenever I would start it after it would sit there for a couple hours.  And we aren't taking a little bit of smoke . . . it was a lot.  So much so that everybody would always stop and look to see what was on fire."

(*Id.* ¶¶ 78, 180, 264, 276.)

Apart from the dangers associated with loss of lubricity, oil getting past the piston rings results in

spark plug fouling.  (*Id.* ¶ 246.)  The spark plug fouling causes engine misfires and loss of power:

- "Mr. and Mrs. Cralley noticed poor engine performance, including a lack of acceleration, due to excessive oil consumption, inadequate engine lubricity, and spark plug fouling. Ultimately, due to poor engine performance, Mr. and Mrs. Cralley had to pay for their engine to be replaced."
- "Bulletin completed and now beginning to run rough yet again.  From a start it surges and sometimes after turning feels like the throttle goes flat.  Gas pedal in the same position, just feels like lost power."
- "From day one this truck has burned about a quart an oil change, and no, this isn't normal. Traction control problems, engine reduced power, this problem cripples the vehicle."
- "[T]he vehicle would continue to drive sluggish and consume excessive amounts of oil."
- "I just received the news that the pistons and rings will need to be replaced, due to oil leaking by.  The engine light came on for the first time, and the car was sluggish at stops."
- "[A]lso feels sluggish and seems to miss at times but no check engine light"
- "Overview of the many issues: Excessive oil usage, spark plugs burning out or failing, sluggish engine, clicking noise in engine"

(*Id.* ¶¶ 33, 256, 258, 269, 272, 279.)[4]   Engine misfires and the associated loss of power are severe

vehicular problems and jeopardize a driver's ability to avoid danger on the road.  (*Id.* ¶ 246.)

Because the facts alleged in the SAC demonstrate that the Oil Consumption Defect causes the

Class Vehicles to have a propensity for engine damage, malfunction, and failure, resulting in, among

other serious consequences, drivers being stranded and, also, unable to accelerate out of the way of

impending harm, the SAC sufficiently alleges a duty to disclose.  *See Asghari v. Volkswagen Grp. of Am.,*

*Inc.*, 42 F. Supp. 3d 1306, 1328-30 (C.D. Cal. 2013) (upholding, under California law, allegations of a

duty to disclose excessive oil consumption that could cause engine failure).[5]  Here, the factual allegations

evidencing an unsafe defect are even more robust than in *Asghari* because, in addition to allegations of

excessive oil consumption and loss of power, the SAC is replete with allegations of actual engine damage

caused by the Oil Consumption Defect.[6]

---

[4] *See also* SAC ¶¶ 90, 101, 108, 133, 155, 180, 191-92.

[5] *See also Borkman v. BMW of N. Am., LLC*, 2017 WL 4082420, at *2, 6 (C.D. Cal. Aug. 28, 2017) (finding that plaintiff had adequately pled a safety-based defect when he alleged that a defect in his vehicle's oil filter housing created "hazardous conditions" including  "loss of power during operation, engine overheating, and potentially, engine failure"); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 957 (N.D. Cal. 2014) (Chen, J.) (finding that propensity for infotainment system to break down while driving could cause a safety issue by causing driver to become distracted); *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009) (denying a motion to dismiss where defective intake system could lead to engine and electrical system failure); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (finding the possibility that a speedometer might fail and lead to traveling at unsafe speeds material.").

[6] Although GM's argument focuses solely on California law, GM suggests, in a footnote, that Plaintiffs' fraud and consumer protection claims brought under the laws of various other states should also be dismissed for failure to allege a safety defect.  First, it is GM's burden to prove a failure to state a claim, *WF Capital, Inc. v. Barkett*, 2010 WL 3064413, at *7 (W.D. Wash. Aug. 2, 2010), and that burden is not satisfied by a mere statement that other states limit a duty to disclose to safety defects.  Second, GM's cited cases do not stand for this proposition.  *See Zwiercan v. Gen. Motors Corp.*, 2003 WL 1848571, at *2 (Pa. Ct. of Common Pleas Mar. 18, 2003) (finding a duty to disclose a safety defect, but not stating that this is the extent of a manufacturer's duty to consumers); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013) (recognizing, under Georgia law, a duty to disclose intrinsic qualities that could not have been discovered through the exercise of ordinary prudence and caution, and under Virginia law, a duty to disclose facts when the other party is acting on the assumption that no such fact exists.); *Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1099 (N.M. Ct. App. 2007) (no suggestion that a duty to disclose is limited to safety defects); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1339-40 (S.D. Fla. 2016) (no suggestion that a duty to disclose is limited to safety defects under Pennsylvania or Florida law); *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 2839154, at *23 (S.D.N.Y. June 30, 2017) (upholding omission claim under Michigan Consumer Protection Act, noting

Plaintiffs need not allege that they were harmed by the safety defect, as GM contends.  (Def.'s Mem. at 7.)  Rather, the Complaint must only allege a nexus between the concealed defect and the alleged safety hazard, which it does.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1336, 1144-45 (9th Cir. 2012) (recognizing that cases survive a motion to dismiss "where the alleged design defect could conceivably lead to a safety hazard."); *Marsikian*, 2009 WL 8379784, at *6 (denying motion to dismiss where there was a "plausible prospect of a safety problem.").  Here, the Complaint explains, with empirical support, how the Oil Consumption Defect results in: (a) inadequate engine lubricity, which can cause engine failure and engine fires; and (b) spark plug fouling, which can cause ignition failure and loss of power.

Because the nexus between the Oil Consumption Defect and the resultant safety hazards is supported by GM's own warnings about the dangers of inadequate lubricity, as well as dozens of specific accounts of oil loss, inadequate lubricity, engine damage, spark plug fouling, engine misfire, and loss of power, this case is not on "all fours" with *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017), as GM claims.  To the contrary, in *Williams*, the alleged risk of fire was "unsupported by factual allegations."[7]  Nor is this case similar to *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 836 (Cal. 2006), in which "[t]he complaint [was] devoid of factual allegations showing . . . any safety concerns posed by the defect," or *Oestreicher v. Alienware Corp.*, 322 Fed. Appx. 489, 493 (9th Cir. 2009), in which plaintiff did not even claim "the alleged defect posed a threat to his own safety or the safety of others."

---

that Texas precedent is inconsistent on what circumstances give rise to a duty to disclose); *In re Gen. Motors Ignition Switch Litig.*, 2016 WL 3920353, at *29, 33-34, 36-37 (S.D.N.Y. July 15, 2016) (no suggestion that a duty to disclose is limited to safety defects under Missouri, Louisiana, or Oklahoma law).

[7]  In a footnote, GM claims, again citing *Williams*, that the Oil Consumption Defect is a "natural condition" and therefore raises "concerns about the use of consumer fraud statutes to impermissibly extend a product's warranty period."  (Def.'s Mem. at 8 n.5 (quoting *Williams*, 851 F.3d at 1029).)  This argument fails because there is no basis to conclude that the Oil Consumption Defect is a "natural condition" that simply accelerates "otherwise normal wear and tear."  *Williams,* 851 F.3d at 1028. Nothing suggests that, in the absence of the Oil Consumption Defect, the Class Vehicles would be unusually susceptible to engine damage and malfunction due to inadequate lubricity and spark plug fouling.  Moreover, because GM has already successfully argued that the Oil Consumption Defect is a design defect to which GM's express warranty of materials and workmanship does not apply (Dkt. No. 62 at 14-15), there can be no concern about the consumer fraud statute extending GM's warranty period.

Faced with the abundance of facts showing that the Oil Consumption Defect causes engine damage and malfunction, GM argues it is not a safety defect because the Class Vehicles have instruments that ostensibly warn drivers of low oil levels.  (Def.'s Mem. at 6-7.)  Warnings, however, must be "adequate" if they are to ameliorate a safety defect, *Gauthier v. AMF, Inc.*, 788 F.2d 634, 635-36 (9th Cir. 1986), and the Class Vehicles fail to provide any warning that is remotely adequate.[8]

Indeed, the Class Vehicles' oil pressure gauges fail to indicate when oil pressure falls below a dangerously low level.  (SAC ¶ 235.)  The oil pressure gauges either contain no mark to indicate insufficient oil pressure, or a single red hash mark at zero PSI.  (*Id*.)  The Class Vehicles' oil pressure gauges, therefore, do not warn of a dangerously low oil level ***until the vehicles have no oil pressure***.  This is far beyond the point at which insufficient lubricity will damage or destroy an engine.  (*Id*.)

Further, GM's user manuals advise drivers that they need not rely on the oil gauges because, "if readings are outside the normal operating range, the oil pressure light comes on."  (Dkt. No. 48, Oxford Decl., Ex. 18.)  Unfortunately, this is false.  In the Class Vehicles, the oil pressure warning light is not illuminated, and the low oil pressure warning is not displayed, until well past the time the vehicles are dangerously low on oil.  (SAC ¶ 236.)  GM documentation states that the minimum oil pressure specification for the Class Vehicles is 24 PSI.  (*Id*.)  Testing, however, has revealed that the oil pressure warning light does not illuminate and the low oil pressure warning is not displayed until the oil pressure in the Class Vehicles ***drops below six PSI***, by which time an engine will have suffered internal damage.  (*Id*.)  These test results are confirmed by the accounts of drivers who have experienced the effects of the Oil Consumption Defect:

- Mr. and Mrs. Cralley noticed poor engine performance, including a lack of acceleration due to the excessive oil consumption, inadequate engine lubricity, and spark plug fouling. . . . ***Mr. and Mrs. Cralley never saw a low oil warning light illuminate or appear in their vehicle***.

- Mr. and Mrs. Doepel heard loud knocking in their vehicle's engine and white smoke was coming from the tailpipe.  The lifters within Mr. and Mrs. Doepel's vehicle had failed. . . . ***Mr. and Mrs. Doepel never saw a low oil warning illuminate or appear in their vehicle***.

---

[8] Further, as the cases cited by GM recognize, the adequacy of a warning is a question of fact for a jury to decide.  *Gauthier*, 788 F.2d at 636 ("AMF concedes that adequacy of the warnings is a proper jury question."); *Rodriguez v. JLG Indus.*, 2012 WL 12883784, at *21 (C.D. Cal. Aug. 3, 2012) ("'In most cases,' however, 'the adequacy of a warning is a question of fact for the jury.'") (quoting *Jackson v. Deft, Inc.*, 223 Cal. App. 3d 1305, 1320 (1990)).

- "Bottom line here is, Chevrolet has known about the 5.3 oil consumption issue for years and has done NOTHING to correct it . . . . *[T]he average owner has no idea ANY of this is happening within their engine until it fails*."

- "*Note: the 'Check Oil' light never came on!* I pulled into a gas station and checked the oil. Nothing was on the dipstick.  Added a quart. Nothing."

- "My wife's 2009 Suburban began to lose/use oil at an unbelievable rate at about 30,000 miles without evidence of oil loss or burn.  2 of the 3 times, *no check oil or warning preceded the more serious symptoms of loud engine tapping and black smoke*."

- "Took in for oil change, discovered almost no oil in engine.  *Low oil light never came on at all*."

(*Id.* ¶¶ 33, 34, 78, 79, 261, 264, 272 (emphasis added).)

Moreover, not only do the Class Vehicles fail to warn drivers about dangerously low oil levels, but they affirmatively mislead drivers into thinking that their oil levels are sufficient, due to GM's inclusion of its Oil Life Monitoring System.  (*Id.* ¶¶ 232, 233).  Although the Oil Life Monitoring System provides drivers with an estimate as to the *quality* of their engine oil, drivers understandably rely on "Oil Life Monitoring" as an indicator of when they need to pay attention to quantity of their engine oil:

- "I finally had oil appear on the dipstick after adding another ½ quart . . . . It took 3 full quarts to bring it up to normal oil level.  On the 'Oil Life Remaining' information panel it says 12%.  So, less than 3000 miles and the truck needed 3 quarts of oil.  Something is definitely wrong!"

- "Do not follow the oil life monitor.  It is inaccurate."

(*Id.* ¶¶ 261, 274.)

Finally, even if the Class Vehicles did warn drivers prior to excessive oil loss (which they do not), such a warning would still fail to prevent the full scope of the harms caused by the Oil Consumption Defect.  As discussed above, oil migrating past the piston rings not only results in inadequate lubricity, but also in carbon buildup and fouled spark plugs, which cause engine misfire and loss of power.  (SAC ¶ 237.)  Thus, even for a driver who constantly tops off her oil, the Generation IV Vortec Engines' continual consumption of oil results in engine malfunction.  (*Id.*)

### B.    The Complaint Sufficiently Alleges GM's Knowledge of the Oil Consumption Defect.

GM knew of the Oil Consumption Defect before and during the time in which it marketed and sold the Class Vehicles, as evidenced by: (1) the extraordinary number of consumer complaints regarding

1  the Oil Consumption Defect, (2) reports that GM was aware of the defect, and (3) GM's Technical Service

2  Bulletins ("TSBs") addressing the Oil Consumption Defect.[9]

3       There are hundreds of online complaints regarding excessive oil consumption in vehicles

4  containing the Generation IV Vortec 5300 engines (*Id.* ¶¶ 255-78), which supports an inference that GM

5  was aware of the defect.  *See Williams*, 851 F.3d at 1027-28 (recognizing that unusually high volume of

6  complaints regarding defect in motor supports a claim of a manufacturer's presale knowledge).   As

7  evidence that this volume of complaints regarding excessive oil consumption in the Class Vehicles is

8  unusual, the SAC catalogs the number of excessive oil consumption complaints for competitor vehicles.

9  (*Id.* ¶ 279.)  For example, while there were hundreds of complaints regarding excessive oil consumption

10  in 2007-2013 Silverados and Suburbans, there were ***zero*** excessive oil consumption complaints for their

11  Ford competitors, the 2007-2013 F-150 and Expedition.  (*Id.*)

12       Dozens of the representative consumer complaints provided in the Complaint were posted before

13  or during the period in which the Class Vehicles were being marketed.  (*Id.* ¶¶ 258, 259, 260, 262, 263,

14  264, 265, 267-68, 270, 271, 273, 274, 275.)  Thus, GM can no longer argue, as it did previously, that the

15  plethora of consumer complaints cannot serve as evidence of knowledge because they post-date the

16  marketing and sale of the Class Vehicles. (Dkt. 62 at 12.)  Recognizing this, GM now takes the opposite

17  tack and contends that many of the representative complaints quoted in the SAC relate to model year

18  2007-09 vehicles not at issue in this case. (Def.'s Mem. at 9.)  The SAC is clear, however, that the model

19  year 2007-09 vehicles referenced in the Complaint have the same Generation IV Vortec 5300 engine as

20  the Class Vehicles, and that the *only* reason these model year 2007-09 vehicles are not included as Class

21  Vehicles is because of GM's 2009 bankruptcy.  (SAC ¶¶ 4-6, 208-13.)  Accordingly, the fact that

22  consumers vociferously complained about the Oil Consumption Defect date back to 2007-09 models is

23  simply further evidence that GM knew that the Class Vehicles were defective.

24

25

26  ――――――――――――――――

27  [9] In addition, Plaintiffs contend that GM's knowledge of the Oil Consumption Defect is evidenced by its redesign of the Generation IV Vortec 5300 engine in a manner that fixes the defect. *See Falco v. Nissan N. Am., Inc.*, 2013 WL 5575065, at *6 (C.D. Cal. Oct. 10, 2013) (acknowledging defendant's alleged redesign of defective part as evidence of defendant's knowledge of defect).  Again, however, Plaintiffs recognize that the Court previously rejected this argument, and state it only for purposes of any appeal.

28

Furthermore, GM would have had no doubt that the excessive oil consumption present in the Generation IV Vortec 5300 engines in the 2007-09 vehicles also existed in these exact same engines installed in the Class Vehicles. Although GM mentions, without further elaboration, "model year 2011 AFM and PCV design changes referenced in the TSBs" (Def.'s Mem. at 9), these TSBs do not reference any design changes in the engines of model year 2011 vehicles. (SAC ¶¶ 227, 231.) Rather, as discussed below, these **service bulletins** simply instructed dealers on the available fixes for the Oil Consumption Defect.[10]

In addition to the extraordinary number of complaints regarding the Oil Consumption Defect, there are also numerous reports that GM was aware of the complaints regarding the Oil Consumption Defect, and that GM instructed its dealers to test and track oil consumption on the vehicles of drivers who complained:

- "Talked with a friend who is SM at GMC dealer. . . . He said the GM service advisors have their hands tied on what they can do, they have to follow what GM wants them to do and replacing the engine is not one of the options they have at the moment." (July 11, 2011)

- "The Chevy dealer had it in the shop for 3 days . . . yes it was under warranty still, however they did not fix the damn problem!!! . . . I complained once again . . . I was told I had to take it to a Chevy dealer so it could be tracked, so I did their solution . . .straight from the shop manager was, 'Chevy had sent emails to them regarding this problem and they were recommending you get your oil changed every 2000 miles!!! This is fraud boys" (June 15, 2010)

- "With all this being said, I called GM and explained what had happened, so they sent me back to dealership to get another oil change and start oil consumption test." (Dec. 2, 2012)

- "Mechanic went on to say that they see this A LOT with the 5.3 and the only true fix is to replace the rings and pistons which will cost somewhere near $4700. . . . Bottom line here is, Chevrolet has known about the 5.3 oil consumption issues for years." (June 1, 2016)

- "We bought ours new and have taken it to Chevy dealers for all service and scheduled maintenance and continue to do so. Around 54,000 miles we started to see excessive oil consumption. Chevy has had service bulletin after service bulletin concerning this issue. Band-aid after band-aid by GM has not fixed the problem." (Oct. 10, 2010)

- "Dealership is stating GM is not letting them know how to fix the problem." (Aug. 6, 2010)

- "Chevrolet is highly aware of this problem. I have been dealing with this for over 50k miles. Never should a consumer be expected to pay for a known manufacturer problem but that is exactly what is being expected of me." (Dec. 2, 2015)

- "The dealership took a look at it and said that I needed to do an oil consumption test." (Nov. 21, 2011)

---

[10] Moreover, as the TSB shows, the Oil Consumption Defect was recognized to exist across model year 2007-14 vehicles, thus destroying GM's suggestion that there was a relevant design change in 2011. (Dkt. No. 48, Oxford Decl., Ex. 18.)

- "We have been through the GM oil watch program and was told nothing is wrong.  Last week we were told the truck does have a problem, duh!" (Jan. 1, 2009)
- "Dealer stated that there was some oil coming from spark plug number 7 so he cleaned it and put it back in.  Oil consumption test is now in progress." (Oct. 8, 2009)
- "I had the Dealership run their oil consumption test also." (Jan. 2, 2010)
- "I take my Avalanche in 5 times for them to do the oil consumption test only to find out it has the same problem everyone else seems to have." (Sept. 8, 2010)
- "THERE NEEDS TO BE A LAWSUIT. Chevy knows about the problem of consumption of too much oil and they do NOTHING about it. . . ." (Jan. 2, 2012)
- "Despite 100's of attempts to contact GM about the excessive oil consumption issue I've been told by the dealer that there is nothing else that they can do, they have done everything that GM requires them to do to fix the issue. . . but it hasn't fixed anything." (Oct. 12, 2011)

(*Id.* ¶¶ 258, 261, 263-65, 267, 270, 273, 274.)

Finally, the TSBs issued from August 24, 2010 through November 26, 2014 confirm GM's knowledge of the Oil Consumption Defect.[11]  Those TSBs represent that there is an oil consumption problem, listing the PCV system and the AFM system as contributing factors to that problem, while also representing that the primary cause of the oil consumption issues in the Class Vehicles lies in the piston and ring assemblies.  (SAC ¶¶ 252-53.)  Thus, GM's TSBs address not only the essence of the Oil Consumption Defect, but, also, all of the alleged causes thereof.

This case, therefore, is distinguishable from *Grodzitsky v. American Honda Motor Co.*, 2013 WL 690822, at *7 (C.D. Cal. Feb. 19, 2013), in which the court rejected defendant's service bulletins as evidence of defendant's knowledge of a defect in a power window regulator.  In *Grodzitsky,* of the three bulletins before the court, one was issued after all the relevant sales, and the other two addressed window defects that were clearly different than the window regulator defect alleged in the complaint.  *Id.*  Here, on the other hand, GM's TSBs were issued before the sale of the large majority of the Class Vehicles, and there is nothing to suggest that they concern a different oil consumption defect than the one alleged in the Complaint.  (SAC ¶ 253.)

---

[11] *See Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987 (N.D. Cal. 2013) (recognizing defendant's bulletins, which addressed the alleged defect, as evidence of defendant's knowledge); *Falco*, 2013 WL 5575065, at *6 (recognizing defendant's bulletins, which instructed technicians to replace "components" of the allegedly defective part, as evidence of defendant's knowledge).

1

## II.   PLAINTIFFS HAVE SHOWN THE MATERIALITY OF GM'S OMISSIONS, WHICH CREATES A PRESUMPTION OF RELIANCE.

2

In a case such as this one, premised on the defendant's misleading omissions, reliance is presumed

3

where the allegations establish that those omissions were material.  *See, e.g.*, *Falco*, 2013 WL 5575065,

4

at *8 (C.D. Cal. Oct. 10, 2013).  Here, Plaintiffs allege that the Oil Consumption Defect is material,

5

leading to engine damage and serious safety hazards, and further allege that they would not have

6

purchased the vehicles had the defect been disclosed.  Nothing more is required.  *See Mui Ho*, 931 F.

7

Supp. 2d at 999 ("[A]s to reliance, Plaintiffs allege that they would not have purchased the Class Vehicles

8

had they know of the [defect].");  *Falco*, 2013 WL 5575065, at *8 (finding plaintiffs' allegations that they

9

would not have purchased the vehicle or would have paid less has the defect been disclosed sufficient to

10

plead reliance); *Falk*, 496 F. Supp. 2d at 1099 (finding that reliance is "easily satisfied" where plaintiffs

11

allege that a reasonable consumer would not have paid the asking price had the defect been disclosed).

12

GM incorrectly contends that Plaintiffs must point to specific advertisements or other

13

representations upon which they relied to make their purchases and that should have contained

14

disclosures about the defect in order to survive a motion to dismiss.  (Def.'s Mem. at 12.)  Not only does

15

that argument misstate the applicable law, but it also "defies common sense."  *Clark v. LG Elecs., U.S.A.,*

16

*Inc.*, 2013 WL 5816410, at *6 (S.D. Cal. Oct. 29, 2013) (holding that plaintiffs do not need to identify a

17

particular advertisement upon which they relied to plead fraudulent omissions claims; reliance is

18

presumed because the alleged omission was material); *see also MacDonald v. Ford Motor Co.*, 37 F.

19

Supp. 3d 1087, 1096-97 (N.D. Cal. 2014) (denying a motion to dismiss where "[p]laintiffs adequately

20

allege the 'who what when and how,' given the inherent limitations of an omission claim.  In short, the

21

'who' is Ford, the 'what' is its knowledge of a defect, the 'when' is prior to the sale of Class Vehicles,

22

and the 'where' is the various channels of information through which Ford sold Class Vehicles.");

23

*Velasco v. Chrysler Grp. LLC*, 2014 WL 4187796, at *4-5 (C.D. Cal. Aug. 22, 2014) (same).

24

Correspondingly, *Asghari*, 42 F. Supp. 3d 1306, upon which GM relies, does not require plaintiffs to

25

identify the representation that allegedly failed to include the omitted information.  On the contrary, the

26

court in *Asghari* denied a dismissal motion where the plaintiffs had alleged that defendant was aware of

27

the excessive oil consumption issue, but withheld it from plaintiffs.  42 F. Supp. 3d at 1326-27.

28

GM's reliance on *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009) is similarly misplaced.  "[In *Marolda*], the dispute concerned an alleged omission within a particular advertisement, which the plaintiffs had failed to produce or adequately describe."  *MacDonald*, 37 F. Supp. 3d at 1096; *see also Philips v. Ford Motor Co.*, 2015 WL 4111448, at *12 (N.D. Cal. July 7, 2015) (finding *Marolda* inapplicable to fraudulent concealment claims).  In other words, *Marolda* does not apply to fraudulent omissions claims unless the allegations themselves rely on a specific advertisement or representation.  "This is because a plaintiff alleging an omission-based fraud will 'not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim.'"  *MacDonald*, 37 F. Supp. 3d at 1096 (quoting *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) and collecting cases declining to apply *Marolda*); *see also Velasco*, 2014 WL 4187796, at *4.  That is not the situation here.

Nor does *Mirkin v. Wasserman,* 5 Cal. 4th 1082, 1093 (Cal. 1993), undermine reliance here.  In *Mirkin*, the plaintiffs brought a securities fraud class action case, alleging that misrepresentations and omissions in the defendant company's public filings caused the company's stock to be artificially inflated throughout the class period.  In sustaining the demurrer in that action, the California Supreme Court upheld the lower court's refusal to apply the fraud-on-the-market theory (applicable to federal securities litigation) to a California common law deceit claim, holding instead that plaintiffs asserting such a claim are required to plead and prove actual reliance. *Id.* at 1091-95.  The present case is distinguishable because it does not involve allegations of misrepresentations and omissions in particular documents.  Instead, Plaintiffs allege a "wholesale nondisclosure of material information," and reliance is presumed under consumer protection statutes—including the CLRA and the UCL—if the omitted information is material, which is what Plaintiffs here allege.  *Doyle v. Chrysler Grp. LLC,* 2014 WL 3361770, at *6 (C.D. Cal. July 3, 2014) (finding *Mirkin* inapplicable to claims under the CLRA and UCL).

*Weaver v. Chrysler Corp.*, 172 F.R.D. 96 (S.D.N.Y 1997), is also inapposite.  In *Weaver*, the plaintiffs asserted affirmative misrepresentations claims, specifically alleging that they relied on certain advertisements and representations, but failed to identify them.  *Id.*  This case, on the other hand, is a pure omissions case, rendering *Weaver* inapplicable.  *See Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 697 (S.D.W. Va. 2014) (rejecting the reasoning in *Weaver* in favor of a more relaxed standard under Rule

1    9(b) when evaluating pure omissions claim).  Further, in *Weaver*, the plaintiff pled all but one paragraph

2    "upon information and belief," *id.* at 101-102, which is not the case here.

3           Finally, GM's purported distinction between purchasers of used and new vehicles is irrelevant.

4    Whether purchasing new or used, consumers are entitled to information about material defects in the

5    vehicles.  "[A] vendor has a duty to disclose material facts not only to immediate purchasers, but also to

6    **subsequent purchasers** when the vendor has reason to expect that the item will be resold."  *OCM*

7    *Principal Opportunities Fund v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 851 (2007) (emphasis

8    in original).  GM's citation to *Parenteau v. General Motors, LLC*, 2015 WL 1020499, at *7-8 (C.D. Cal.

9    March 5, 2015), is inapposite. The *Parenteau* Court applied the reasoning in *Marolda*, 672 F. Supp. 2d

10   992, which is inapplicable here for the reasons set forth above.  Moreover, as alleged here, GM had the

11   duty and ability to notify purchasers of the Oil Consumption Defect by direct communications, media

12   campaigns, or other means, but instead concealed the defect.  (SAC ¶ 311.)  Indeed, automobile

13   manufacturers routinely and successfully notify consumers and dealers of defects and safety recalls as

14   required via direct mail and other campaigns.  GM elected not to do so here.

15   **III.    PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIMS ARE WELL

16            SUPPORTED.**

17          Under the implied warranty of merchantability, vehicles must provide "safe, reliable

18   transportation."  *MyFord Touch*, 46 F. Supp. 3d at 980.  "[T]he level of risk to safety need not be gross

19   or certain."  *Id.*  And whether a defect rises to this level is a question of fact for the jury.  *Id.*

20          As stated above, the Oil Consumption Defect causes engine damage and spark plug fouling, which

21   places drivers at a constant risk of their vehicles breaking down or losing power.  (*See* Section I.A, *supra*.)

22   An engine defect of this nature is a breach of the implied warranty of merchantability.  *See Asghari,* 42.

23   F. Supp. 3d at 1339 (allegations of excessive oil consumption sufficient to state a claim for breach of

24   implied warranty of merchantability); *Borkman v. BMW of N. Am.*, 2017 WL 4082420, at *9 ("[P]laintiff

25   has adequately pleaded a breach of the implied warranty . . . . Plaintiff alleges that the Oil Filter Housing

26   Defect creates hazardous conditions, including loss of power during operation, engine overheating, and

27   potentially, engine failure."); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1244 (C.D.

28

1    Cal. 2011) (upholding implied warranty claim because "[v]ehicles subject to engine failure cannot be

2    said to be merchantable.").

3         GM fails to cite any authority supporting their novel contention that a defect must force drivers

4    to stop driving their vehicles to support an implied warranty claim.  (Def.'s Mem. at 15.)  Indeed, this

5    Court has held otherwise.  *MyFord Touch*, 46 F. Supp. 3d at 980 (rejecting argument that implied

6    warranty claims should be dismissed because plaintiffs had not alleged that they were not able to drive

7    their cars).  Moreover, none of the cases upon which GM relies suggests that, as a matter of law, an

8    inherent propensity for engine failure and malfunction is an insufficient basis for a breach of implied

9    warranty claim.  *See Avedisian v. Mercedes-Benz USA LLC*, 43 F. Supp. 3d 1071, 1074 (C.D. Cal. 2014)

10   (involved peeling chrome trim on the inside of the car); *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal.

11   App. 4th 1291, 1298-99 (1995) (finding significant evidence that the majority of vehicles in the class

12   provided safe and reliable transportation); *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962,

13   980 (C.D. Cal. 2014) (automatic braking, a premium add-on feature, that admittedly worked to some

14   degree); *Kent v. Hewlett-Packard Co.*, 2010 WL 2681767, at *4 (N.D. Cal. July 6, 2010) (allegedly

15   defective computers did not cause any concern besides inconvenience).

16        Further, where an inherent defect exists at the time of sale, California law does not require

17   consumers to have experienced issues stemming from that defect during the duration of the implied

18   warranty period in order to assert such a claim.  *See Parenteau*, 2015 WL 1020499, at *11 ("Plaintiffs'

19   plausible allegation that the defect existed at the time they purchased their vehicles is sufficient to state

20   a claim for breach of the implied warranty of merchantability."); *Keegan v. Am. Honda Motor Co*., 838

21   F. Supp. 2d 929, 948 (C.D. Cal. 2012) (refusing to dismiss implied warranty claim and stating that

22   plaintiff's "failure to discover the defect within the one-year statutory period does not defeat his claim at

23   this stage of the litigation."); *Asghari*, 42 F. Supp. 3d at 1338-39.[12]

24        GM's argument that Plaintiffs Vita's and Martell's implied warranty claims should be dismissed

25   on the grounds that they lacked privity of contract with GM also fails.  (Def.'s Mem. at 14.)  Under New

26

27   _____

28   [12] GM's citation to *Mui Ho*, 931 F. Supp. 2d at 993, is inapposite because it involved a plaintiff who failed
     to plead that she purchased her used vehicle from a dealer or retail seller, whereas Mr. Siqueiros and the
     Cralleys purchased their vehicles new.  (SAC ¶¶ 25, 30.)

York law (which applies to Mr. Vita's claims), privity exists if the GM dealership from which Mr. Vita bought his vehicle was GM's sales agent, and there is nothing in the record to suggest that it was not. *See Gordon v. Ford Motor Co.*, 239 A.D. 2d 156 (N.Y. App. Div.  May 6, 1997) (denying motion to dismiss because "privity would exist if the dealerships with which plaintiffs dealt were defendant's sales or leasing agents, and disclosure is needed with respect to the latter possibility.").  As for Plaintiff Martell, to whom Oregon law applies, "a plaintiff within the normal distribution chain may recover property damages from a seller with whom he is not in privity based on breach of an implied warranty." *McFadden v. Dryvit Sys., Inc.*, 2004 WL 2278542, at *8 (D. Or. Oct. 8, 2004).  Here, Mr. Martell alleges damage to his engine due to the Oil Consumption Defect, thereby satisfying that requirement.  (SAC ¶ 155.)

Finally, GM argues that seven plaintiffs failed to allege that they provided GM with pre-suit notice, as required by the warranty laws of their respective states.  (Def.'s Mem. at 15.)  This argument fails to recognize that Plaintiff Ludington provided GM with notice, *on behalf of the class*, of GM's breach of warranties due to the Low-Tension Oil Ring Defect in the Generation IV Vortec 5300 Engines, and that GM never responded to Plaintiff Ludington's letter.  (SAC ¶ 303.)

## IV.    PLAINTIFFS' CLAIMS ARE TIMELY FILED.

### A.    Plaintiffs' Implied Warranty Claims Are Timely.

First, the Court should not dismiss the implied warranty claims of the ten plaintiffs who GM argues "may also face a limitations bar" depending on the dates of their initial retail sale.  (Def.'s Mem. at 17.)  "Statute of limitations is…an affirmative defense that a plaintiff has no obligation to plead around in his or her complaint." *MyFord Touch*, 46 F. Supp. 3d at 961.  Here, because there is no "statute-of-limitations problem apparent from the fact of the complaint" for these ten plaintiffs, it is premature to address the application of the statute of limitations to their claims.  *Id.*

Further, there is no statute of limitations issue for the implied warranty claims of Plaintiff Kitchen, who purchased his vehicle in July 2013 (SAC ¶ 121), Plaintiffs Bradford, Warpinski, Thacker, and Sloan[13] who purchased their vehicles in 2014 (*Id.* ¶¶ 62, 146, 163, 178), Plaintiff Faulkner, who purchased is

---

[13] Further, the statute of limitations for breach of implied warranty is six years in South Carolina, *see* S.C. Code Ann. § 36-2-725, and the discovery rule applies to implied warranty claims under South Carolina law.  *See Green v. Bradley Co.*, 194 F. Supp. 3d 479, 484 (D.S.C. 2016).

1   vehicle in 2015 (*Id.* ¶ 87), or Plaintiffs Del Valle, Byrge, Ware, and Ehrke, who purchased their vehicles

2   in 2016 (*Id.* ¶¶ 67, 117, 136, 168).  These purchases fall within four years of the tender of delivery.

3   U.C.C. § 2-725.  Nor is there an issue for Plaintiff Molina, who purchased her model year 2012 vehicle

4   used, and thus cannot be presumed to have purchased it "by the fall of 2012."  (Def.'s Mem. at 17 n. 10.)

5          Finally, Plaintiffs' implied warranty claims are all tolled pursuant to the fraudulent concealment

6   doctrine.  (SAC ¶¶ 308-313.)  The purpose of the doctrine is to "disarm a defendant who, by his own

7   deception, has caused a claim to become stale and a plaintiff dilatory."  *Regents of Univ. of Cal. v. Super.*

8   *Ct.*, 20 Cal. 4th 509, 533 (Cal. 1999).  For implied warranty claims brought under the Song-Beverly Act,

9   the fraudulent concealment tolls the statute of limitations when a plaintiff pleads (a) the substantive

10  elements of fraud, and (b) an excuse for late delivery of the facts.  *See Sater v. Chrysler Grp., LLC*, 2015

11  WL 736273, at *9 (C.D. Cal. Feb. 20, 2015); *Roberts v. Electrolux Home Prods., Inc.*, 2013 WL 7753579,

12  at *8 (C.D. Cal. March 4, 2013).

13         In *Sater*, the court held that the plaintiffs' implied warranty claim was tolled where the plaintiff

14  alleged that Chrysler "intentionally kept Plaintiffs and the other Class members ignorant of vital

15  information essential to the pursuit of their claims," and that Chrysler continued manufacturing, selling,

16  and warranting the relevant vehicles without disclosing the defects.  2015 WL 736273, at *9.  Similarly,

17  in *Roberts*, the court held that the plaintiffs' implied warranty claims were tolled because "plaintiffs

18  allege[d] that defendant failed to disclose material facts about the dryer's defect that were within its

19  exclusive knowledge, and have therefore pled the substantive elements of fraud by omission."  2013 WL

20  7753579, at *8.

21         The facts here align with those *Sater* and *Roberts*.  GM "was aware that the [Defective Engines]

22  it designed, manufactured, and installed in the Class Vehicles contained the Oil Consumption Defect,

23  resulting in excessive oil loss and engine damage."  (SAC ¶ 310.)  GM "failed to disclose and concealed,

24  and continues to conceal, the [Oil Consumption Defect] from Plaintiffs and the other Class members,

25  even though, at any point in time, it could have done so."  (*Id.* ¶ 311.)  And the "defect was hidden and

26  not discoverable through reasonable efforts by Plaintiffs and other Class members."  (*Id.* ¶ 312.)  In fact,

27  as discussed below, the SAC contains far more detailed allegations of affirmative concealment than were

28  held sufficient in *Sater* and *Roberts*.

1    GM relies on *Philips v. Ford Motor Co.*, 2016 WL 1745948, at *14 (N.D. Cal. May 3, 2016) and

2    *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063 (S.D. Cal. 2015) for its contention that the California

3    Plaintiffs must affirmatively plead facts showing due diligence to rely on the fraudulent concealment

4    doctrine.  But in the case of an omission, this requirement is satisfied when plaintiffs allege that they had

5    no knowledge of the defect and that it occurred in a part of the product not visible to consumers.  *See*

6    *Roberts*, 2013 WL 7753579, at *8 (C.D. Cal. March 4, 2013) (plaintiffs' late discovery excused when

7    they had no knowledge of defect and it occurred in a part of a dryer not visible to consumers); *Philips*,

8    2016 WL 1745948, at *14 (finding plaintiff's claim subject to fraudulent concealment tolling where she

9    alleged Ford's presale knowledge of the defect and concealment thereof).[14]

10    Apart from California, the other states at issue here also recognize tolling under the doctrine of

11    fraudulent concealment.[15]  Although GM argues that concealment, alone, is insufficient to implicate the

12    tolling doctrine, and that there instead must be an affirmative act, the cases upon which it relies for that

13    contention only apply when one "is under no obligation to speak."  *Miles*, 992 F.2d at 816 (8th Cir.

14    1993).[16]  Here, as discussed above, however, GM *did* have a duty to speak.  (*See* Section I.A, *supra*.)

---

[14] *Allen* is distinguishable because, in that case, the plaintiff testified that she was aware that the product (allergy medicine) was ineffective for years before she brought her claim.

[15] *See, e.g., Sellers v. A.H. Robins Co.*, 715 F.2d 1559, 1561 (11th Cir. 1983); *Miles v. A.O Smith Harvestore Prods., Inc.*, 992 F.2d 813, 817 (8th Cir. 1993); *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 109 (Colo. 2011); *Giordano v. Dzerwinski*, 216 A.2d 874, 875 (Del. Supr. 1966); *Mayfield v. Heiman*, 730 S.E.2d 685 (Ga. Ct. App. 2012); *Therihault v. A.H. Robins Co., Inc.*, 698 P.2d 365, 366-68 (Idaho 1985); *Eickmeyer v. Blietz Org., Inc.*, 671 N.E.2d 795, 799-80 (Ill. Ct. App. 1966); *Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 699 (Ind. Ct. App. 1986); *Schlote v. Dawson*, 676 N.W.2d 187, 195 (Iowa 2004); *ASP Ent., Inc. v. Guillory*, 22 So.3d 964 (La. Ct. App. 2009); *Sanderson Farms Inc. v. Ballard*, 917 So.2d 783, 789-90 (Miss. 2005); *Hasenyager v. Bd. of Police Comm'rs of Kansas City*, 606 S.W.2d 468, 471-72 (Mo. Ct. App. 1980); *Continental Potash, Inc. v. Freeport McMoran, Inc.*, 858 P.2d 66, 73-74 (N.M. 1993); *Friedland v. Gates*, 509 S.E.2d 793 (N.C. 1988); *Krueger v. St. Joseph's Hospital*, 305 N.W.2d 18, 23-24 (N.D. 1981); *Masquat v. DaimlerChrysler Corp.*, 195 P.3d 48, 54-55 (Okla. 2008); *Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987); *Benton v. Snyder*, 825 S.W.2d 409, 413-14 (Tenn. 1992); *Owen v. King*, 111 S.W.2d 695, 697 (Tex. Comm. App. 1938); *Neman v. Walker*, 618 S.E.2d 336, 339 (Va. 2005).

[16] *See Hasenyager*, 606 S.W.2d at 72 (Mo. App. 1980) (no allegation of duty to disclose); *Masquat*, 195 P.2d at 55 (Okla. 2008) (recognizing essence of fraudulent concealment is knowledge in possession of person committing fraud); *Freebird, Inc. v. Merit Energy Co.*, 883 F. Supp. 2d 1026 (D. Kan. 2012) (no allegation of duty to disclose).

1    Moreover, not only did GM have a duty to speak, but, further GM took affirmative steps to conceal the

2    Oil Consumption Defect.  In particular, the SAC alleges that GM attempted to squelch public recognition

3    of the Oil Consumption Defect by propagating the falsehood that the excessive oil consumption that

4    drivers of the Class Vehicles were experiencing was "normal."[17]  In addition, although GM's TSBs reveal

5    that it knew that the primary cause of the Oil Consumption Defect was in the Class Vehicles' piston

6    assemblies (SAC ¶ 253), it downplayed and obscured the problem by stringing consumers along with

7    insufficient, band-aid fixes.[18]

8         **B.    Plaintiffs' Consumer Protection Claims Are Timely.**

9         As alleged (SAC ¶¶ 308-13), the claims of Plaintiffs Ludington, Shorter, Madson, Jones, and

10   Gulling are tolled by the doctrine of fraudulent concealment under the laws of their respective states.  *See*

11   *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1344, 1346 (S.D. Fla. 2016) (recognizing

12   fraudulent concealment tolling of claim brought under Florida Deceptive and Unfair Trade Practices

13   Act); *Freebird*, 883 F. Supp. 2d at 1034-36 (recognizing fraudulent concealment tolling under Kansas

14   law); *Wallace Wood Props. v. Wood*, 117 F. Supp. 3d 493, 498 (S.D.N.Y. 2015) (recognizing tolling

15   under the fraudulent concealment doctrine under New York law); *Thornton v. State Farm Mut. Auto*

16   _____

17   [17] *See* SAC ¶ 73 ("When Mr. Hanneken's odometer read 100,000 miles, he was four quarts low on oil.
     His dealership told him that this was normal."); ¶ 202 ("Mr. Bednarek reported the oil consumption issues

18   to Symdon Chevrolet in Mr. Horeb, Wisconsin, but was told that the oil consumption was normal and
     that he should simply add more oil or come in more often for oil changes."); ¶ 255 ("I was told this was

19   'normal' according to General Motors' standards."  "When we asked the tech at Chevy he told me that
     was normal for the newer engines to burn oil."); ¶ 256 ("The vehicle was taken to the dealer, who stated

20   that the vehicle was operating to standard and that it was normal for a vehicle to burn oil between
     maintenance."); ¶ 259 ("Mentioned this several times & GM says this is normal."); ¶ 260 ("[N]o solution

21   when talked with Chevy dealer, they claimed a qt every 1000 miles was normal."); ("The dealership did
     an oil consumption analysis and stated that it was normal for this engine to use 1 quart of oil every

22   thousand miles."); ¶ 263 ("As always, GM puts another band aid on the problem, tells me that its normal
     for this engine to burn a quart of oil every 2,000 miles."); ¶ 265 ("The dealer told me 'normal' oil

23   consumption was up to one quart every 1.800 miles."); ¶ 271 ("Seems like a lot of 5.3 owners are having
     this issue and no help from a dealer . . . every dealer I talked to says its normal."); ("The dealership

24   ignored it and told me it was normal."); ¶ 272 ("Chevy said that's normal . . . really?"); ¶ 275 ("This
     dealers service manager actually told me that its normal for this engine to burn 1 qt of oil for the first

25   3000 miles.  Thereafter 1 qt of oil for each additional 1000 miles.").

26

27   [18] *See id.*  ¶ 227 ("This purported fix, however, fails to address the fundamental problem of the defective
     piston rings, and thus does not resolve the Oil Consumption Defect"); ¶ 231 (same); ¶ 263 ("Band-aid

28   after band-aid by GM has not fixed the problem"); ¶ 272 ("They said they had three band-aid solutions
     to try. . . ").

*Ins. Co., Inc.*, 2006 WL 3359448, at \*6-7 (N.D. Ohio Nov. 17, 2006) (recognizing tolling due to fraudulent concealment under Ohio law). As stated above, the SAC adequately pleads GM's fraudulent concealment of the Oil Consumption Defect.

Further, under the Louisiana Unfair Trade Practices and Consumer Protection Law, the one-year period governing Plaintiff Olivier's claim cannot begin to run "until a continuing violation ceases." *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780 (E.D. La. 2012); *Fox v. Dupree*, 633 So. 2d 612, 614 (La. Ct. App. 1993). The same is true with respect to Plaintiff Bednarek's claim under the Wisconsin Deceptive Trade Practices Act. *See Werner v. Pittway Corp.*, 90 F. Supp. 2d 1018, 1033-34 (W.D. Wis. 2000). Here, GM's active and continual concealment of the Oil Consumption Defect prevented the statute of limitations from beginning to run on Plaintiff Olivier's and Plaintiff Bednarek's consumer protection claims.

Moreover, certain of the relevant states apply the discovery rule to consumer protection law violations. GM acknowledges this fact, but wrongly argues that the discovery rule does not apply to certain Plaintiffs' allegations. The Court should reject GM's argument that Plaintiff Goodwin's Arkansas Deceptive Trade Practices Act claim fails because Plaintiff Goodwin didn't allege the exact date he discovered the Oil Consumption Defect. This argument ignores the SAC's specific allegations that Plaintiffs did not know of the Oil Consumption Defect during the time period of any statute of limitations that would bar their claims. (SAC ¶¶ 306-07.) Accordingly, it follows that Plaintiff Goodwin's claim was tolled until at least five years after he purchased his vehicle, and, therefore, his claim is not barred by the applicable five-year statute of limitations. Likewise, Plaintiffs Bradford, Hanneken, Smith, Sanchez, Thacker, and Perkins also specifically allege they did not know of the Oil Consumption Defect prior to filing. *Id.* Thus, the relevant statutes of limitation did not start running until Plaintiffs reasonably should have discovered GM's deceptive conduct.[19] Nothing in the SAC suggests that Plaintiffs

---

[19] Ga. Code § 10-1-401; Tex. Bus. & Com. Code § 17.565; Va. Code Ann. § 801-249; *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 763 (S.D. Ill. 2010) (holding that "a cause of action under Illinois law does not accrue for purposes of the statute of limitations, and thus the relevant limitations period does not begin to run, 'until the injured party knows or should have known of his injury'"); *Proal v. JP Morgan Chase & Co.*, 202 F. Supp. 3d 209, 215 (D. Mass. 2016) (holding that, under Massachusetts law, "the claim accrues when the plaintiff discovers or reasonably should have discovered that she has been harmed by the defendant's conduct"); *Mentis v. Delaware Am. Life Ins. Co.*, 1999 WL 744430, at \*8 (Del. Super.

1   discovered or should have discovered GM's deceptive conduct prior to the filing of this action.[20]

2   **V.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE WELL PLEADED AND
3       TIMELY.**

4       GM's argument that unjust enrichment cannot be pleaded as a stand-alone remedy under

5   California law fails.  As the Court previously stated (Dkt. No. 62 at 17-18), GM's argument is foreclosed

6   by the Ninth Circuit's holding in *Astiana v. Hain Celestial Group, Inc.*, in which the court held: "[w]hen

7   a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim

8   seeking restitution.'" 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del

9   Rey*, 223 Cal. App. 4th 221, 231 (Cal. App. 2014)).  Indeed, it is well established that California plaintiffs

10  can assert independent claims for unjust enrichment.  *See, e.g., Diaz v. Intuit, Inc.*, 2017 WL 4386451, at

11  *6 (N.D. Cal. Sept. 29, 2017) ("California recognizes unjust enrichment as a standalone claim for

12  restitution.").  And, as explained above (*supra* at 3-6), Plaintiffs have adequately pleaded actionable

13  omissions that resulted in GM's receipt of an unjust benefit.

14      GM's further argument that certain Plaintiffs' unjust enrichment claims are barred pursuant to

15  applicable statutes of limitation also fails because these Plaintiffs' claims are tolled by the discovery rule

16  and the doctrine of fraudulent concealment.[21]  Plaintiffs have alleged that GM actively concealed the Oil

17

18  _____

    July 28, 1999) (recognizing that under Delaware law, "[t]he time of discovery rule provides that in certain
19  cases, a cause of action does not accrue until a party has reason to know that he or she has a cause of
    action," and stating that the applicability of this rule is a question of fact.).

20  [20] In fact, Mr. Hanneken's dealer told him that the excessive oil consumption was normal.  (SAC ¶ 73.)

21  [21] For relevant law relating to the accrual and tolling of statutes of limitations: (California) *Norgart v.
    Upjohn Co.*, 21 Cal. 4th 383, 397 (Cal. 1999) (claims may be tolled subject to the discovery rule);
22  (Alabama) *Auburn Univ. v. IBM Corp.*, 716 F. Supp. 2d 1114, 1118 (M.D. Ala. 2010) (unjust enrichment
    claim sounding in contract or implied contract has a six-year statute of limitation); (Arkansas) *Keller v.
23  FCOA, LLC*, 2016 WL 110590 (W.D. Ark. Jan. 8, 2016) (unjust enrichment claim can be tolled by
    fraudulent concealment); (Delaware) *Hydrogen Master Rights, Ltd. v. Weston*, 2017 WL 78582, at *4
24  (D. Del. Jan. 9, 2017); (Florida) *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostics, Inc.*, 145 F. Supp.
    3d 1154, 1169 (S.D. Fla. 2015) (applying delayed discovery doctrine to unjust enrichment); (Illinois)
25  *Greenberg v. Broad Cap. Assoc., Inc.*, 2002 WL 31269617 (N.D. Ill. Oct. 9, 2002) (recognizing discovery
    rule for unjust enrichment); (Kansas) *Leathers v. Leathers*, 2010 WL 1936137, at *17-18 (D. Kan. May
26  13, 2010) (same); (Massachusetts) *Micromuse, Inc. v. Micromuse, Plc*, 304 F. Supp. 2d, 202, 209 (D.
    Mass. 2004) (six year statute of limitations for unjust enrichment claims sounding in contract, and
27  discovery rule applies); (Minnesota) *Cordes v. Holt and Anderson Ltd.*, 2009 WL 2016613, at *2 (Minn.
    Ct. App. Jul. 14, 2009); (New Mexico) *Sweesy v. Sun Life Assurance Co. of Canada*, 643 F. App'x 785,
28

1   Consumption Defect and that they did not learn of their claims during the time period of any statute of

2   limitations that would bar their claims.  (SAC ¶¶ 306-13.)  For the same reasons that the statutes of

3   limitation for Plaintiffs' implied warranty and consumer protection claims are tolled, so are Plaintiffs'

4   unjust enrichment claims.[22]

5   **VI.   GM WAIVED ITS PERSONAL JURISDICTION CHALLENGE.**

6       GM has waived any challenge to personal jurisdiction by (1) not raising lack of personal

7   jurisdiction in its initial Motion to Dismiss (Dkt. No. 47); and (2) making a voluntary general appearance

8   in this Court to defend this case.

9       "[A] party that makes a motion under [Rule 12] must not make another motion under [Rule 12]

10  raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed.

11  R. Civ. P. 12(g)(2).  Further, "[a] party waives any defense listed in Rule 12(b)(2)-(5) by omitting it from

12  a motion in the circumstances described in Rule 12(g)(2)."  Fed. R. Civ. P. 12(h)(1)(A).  The defense of

13  lack of personal jurisdiction is listed at Fed. R. Civ. P. 12(b)(2).  Because GM omitted this defense from

14  its initial Motion to Dismiss, GM has waived it.  *See* Fed. R. Civ. P. 12 advisory committee's notes, 1966

15  Amendment ("A party who by motion invites the court to pass upon a threshold defense should bring

16  forward all the specified defenses he then has and thus allow the court to do a reasonably complete job");

17

18

19

_____

20  790 (10th Cir. 2016) (recognizing discovery rule); (New York) *Doukas v. Ballard*, 972 N.Y.S.2d 143
    (S.C., Suffolk County, N.Y., 2013); (Oklahoma) *Weathers v. Fulgenzi*, 884 P.2d 538, 540-41 (Okla.
21  1996) (same); (Oregon) *Farmers Ins. Exch. v. First Choice Chiropractic & Rehab.*, 2016 U.S. Dist.
    LEXIS 51494 (D. Or. Feb. 25, 2016) (same); (Pennsylvania) *Miller v. Miller*, 2015 WL 6751097, at *2
22  (Pa. Super. Nov. 4, 2015) (same); (Texas) *Janvey v. Suarez*, 978 F. Supp. 2d 685, 708-09 (N.D. Tex.
    2013) (same); (Washington) *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (statute
23  of limitations begins to run when plaintiff knows all of the elements of his claim); (West Virginia) *Stand
    Energy Corp. v. Columbia Gas Transmission Corp.*, 380 F. Supp. 2d 748 (S.D.W. Va. 2005); (Wisconsin)
24  *Buss v. Rosenow*, 558 N.W.2d 706 (Wis. Ct. App. 1996).

25  [22] New York Plaintiff Vita need not rely on tolling.  Under New York law, "there is no identified statute
    of limitations period within which to bring a claim for unjust enrichment."  *Maya NY, LLC v. Hagler*,
26  106 A.D.3d 583, 585 (N.Y. App. Div. May 21, 2013).  *Maya* does not suggest, as GM contends, that
    unjust enrichment claims stemming from any tortious conduct is subject to a three-year statute of
27  limitations.  To the contrary, actions based upon implied contractual obligations or fraud are subject to a
    six-year period.  N.Y. Civil Practice Law § 213 (2) and (8).
28

1    *Schnabel v. Liu*, 302 F.3d 1023, 1033 (9th Cir. 2002) ("[Defendant] has waived any defense of lack of

2    personal jurisdiction . . . by failing to raise the defense in its first motion under Rule 12(b).").[23]

3          Further, "[d]efendants can waive the defect of lack of personal jurisdiction by appearing generally

4    without first challenging the defect in a preliminary motion or in a responsive pleading." *Jackson v.*

5    *Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (internal citation omitted); *see also Benny v. Pipes*, 799

6    F.2d 489, 492 (9th Cir. 1986) ("A general appearance or responsive pleading by a defendant that fails to

7    dispute personal jurisdiction will waive any defect in service or personal jurisdiction.")  "An appearance

8    ordinarily is an overt act by which the party comes into court and submits to the jurisdiction of the court.

9    This is an affirmative act involving knowledge of the suit and an intention to appear." *Id.*  Here, GM has

10   participated in case management proceedings, defended itself through a motion to dismiss, and its counsel

11   has filed appearances.  (Dkt. Nos. 37, 47, 52, 64, 65, 68.)  GM has appeared and submitted to the

12   jurisdiction of the court, and thus waived any challenge to personal jurisdiction.

13         GM's failure to previously raise the defense of lack of personal jurisdiction is not excused by the

14   Supreme Court's issuance of its decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773

15   (2017) after GM filed its original Motion to Dismiss.  *Bristol-Myers* was issued on June 19, 2017, and

16   GM thus had ample opportunity to raise any personal jurisdiction argument based thereon: (a) through

17   supplemental briefing in the weeks before the July 5, 2017 hearing on Defendants' Motion to Dismiss,

18   (b) during the hearing on the Motion to Dismiss, or (c) following the hearing and prior to the Court's

19   August 1, 2017 ruling.  GM chose not to do so.  Accordingly, the facts here are distinguishable from

20   those in GM's cited case, *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014), where

21   the Supreme Court issued its decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), while the *Gucci*

22

23   _____

24   [23] *See also Am. Ass'n of Naturopathic Physicians v. Hayurst*, 227 F.3d 1104, 1107-08 (9th Cir. 2000)
     ("[I]f [Defendant] raised *any* Rule 12 defenses in his first filing with the court, he was obliged to raise

25   *all* of those specified in Rule 12(h); *Boston Telecomms. Group, Inc. v. Deloitte Touche Tohmatsu*, 249
     Fed. Appx. 534, 537 (9th Cir. 2007) ("Defendant waived his Rule 12(b)(2) defense by omitting it from

26   his initial motion"); *Bell-Sparrow v. Wiltz*, 2014 WL 2927354, at *5 (N.D. Cal. June 27, 2014) ("In
     [plaintiff's initial motion to dismiss], plaintiff did not challenge the Court's exercise of personal

27   jurisdiction over her.  Therefore, [Defendant] waived any possible defect in personal jurisdiction.");
     *Redfern v. Transamerica Moving, Inc.*, 2011 WL 167570, at *1 (D. Nev. Jan. 18, 2011) ("[Defendant]

28   previously filed a motion to dismiss on the merits and failed to raise the defense of lack of personal
     jurisdiction. . . . Therefore, [Defendant] has waived this defense.").

case was pending on appeal.  Unlike in *Gucci*, the defense of lack of personal jurisdiction was "available" to GM during the pendency of its original motion.  Fed. R. Civ. P. 12(g)(2).

Moreover, *Bristol-Myers* did not create new law and thus did not create a defense that was previously unavailable to GM.  "A defense is 'available' where circuit precedent does not foreclose it at the relevant time."  *CG Tech. Dev., LLC v. Fanduel, Inc.*, 2017 WL 3207233, at *1 (D. Nev. July 27, 2017); *see also Gucci*, 768 F.3d 122, 135-36 ("[A] defendant does not waive a personal jurisdiction argument . . . if the argument that the court lacked jurisdiction over [the] defendant would have been directly contrary to controlling precedent in this Circuit.") (internal quotation omitted).

As the Supreme Court stated, its decision in *Bristol-Myers* was the "straightforward application" of "settled principles of personal jurisdiction."  *Bristol-Myers*, 137 S. Ct. at 1783.  Indeed, Ninth Circuit personal jurisdiction jurisprudence was unaffected by *Bristol-Myers*.  Both before and after *Bristol-Myers*, the Ninth Circuit has used the same three-part test for determining personal jurisdiction:

- (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise if jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*See Lazar v. Kroncke*, 862 F.3d 1186, 1201 (9th Cir. 2017); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see also R. Prasad Indus. v. Flat Irons Environ. Solutions Corp.*, 2017 WL 4409463, at *1-2 (D. Ariz. Oct.4, 2017) (rejecting argument that *Bristol-Myers* altered the analysis regarding the exercise of personal jurisdiction over a non-resident defendant).

Finally, there is no good reason to excuse GM's waiver. The "primary concern" with respect to personal jurisdiction is "the burden on the defendant."  *Bristol-Myers,* 137 S. Ct. 1773 at 1780.  Here, GM has not articulated any burden associated with litigating Plaintiffs' claims in this Court, and it would be more burdensome for the parties and the judicial system to litigate these claims in 29 different states.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs' respectfully request that the Court deny GM's Motion to Dismiss in its entirety.

1    Dated:  November 15, 2017              /s/ Adam J. Levitt

2                                           Adam J. Levitt (*pro hac vice*)
                                            John E. Tangren (*pro hac vice*)
3                                           Daniel R. Ferri (*pro hac vice*)
                                            **DICELLO LEVITT & CASEY LLC**
4                                           Ten North Dearborn Street, Eleventh Floor
                                            Chicago, Illinois  60602
5                                           Telephone:  312-214-7900
                                            alevitt@dlcfirm.com
6                                           jtangren@dlcfirm.com
                                            dferri@dlcfirm.com
7
                                            W. Daniel "Dee" Miles, III (*pro hac vice*)
8                                           H. Clay Barnett, III (*pro hac vice*)
                                            Archie I. Grubb, II (*pro hac vice*)
9                                           Andrew E. Brashier (*pro hac vice*)
                                            **BEASLEY, ALLEN, CROW,**
10                                          **METHVIN, PORTIS & MILES, P.C.**
                                            272 Commerce Street
11                                          Montgomery, Alabama  36104
                                            Telephone: 334-269-2343
12                                          Dee.Miles@Beasleyallen.com
                                            Clay.Barnett@BeasleyAllen.com
13                                          Archie.Grubb@Beasleyallen.com
                                            Andrew.Brashier@Beasleyallen.com
14
                                            Jennie Lee Anderson
15                                          Lori E. Andrus
                                            **ANDRUS ANDERSON LLP**
16                                          155 Montgomery Street, Suite 900
                                            San Francisco, California  94104
17                                          Telephone:  415-986-1400
                                            jennie@andrusanderson.com
18                                          lori@andrusanderson.com

19                                          Nicholas R. Rockforte (*pro hac vice*)
                                            Christopher L. Coffin (*pro hac vice*)
20                                          **PENDLEY, BAUDIN & COFFIN, L.L.P.**
                                            1515 Poydras Street, Suite 1400
21                                          New Orleans, Louisiana 70112
                                            Telephone:  504-355-0086
22                                          nrockforte@pbclawfirm.com
                                            ccoffin@pbclawfirm.com
23
                                            Marcus Rael (*pro hac vice*)
24                                          **ROBLES, RAEL & ANAYA, P.C.**
                                            500 Marquette NW, Suite 700
25                                          Albuquerque, New Mexico  87102
                                            Telephone:  505-242-2228
26                                          marcus@roblesrael.com

27

28

---

Anthony J. Garcia, Esq. (*pro hac vice* motion to be filed)
**AG LAW**
742 South Village Circle
Tampa, Florida  33606
Telephone:  813-259-9555
anthony@aglawinc.com

Timothy J. Becker (*pro hac vice* motion to be filed)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, Minnesota  55101
Telephone: 612-436-1800
tbecker@johnsonbecker.com

Ben Finley (*pro hac vice* motion to be filed)
**THE FINLEY FIRM, P.C.**
200 13th Street
Columbus, Georgia  31901
Telephone: (706) 322-6226
bfinley@thefinleyfirm.com

Eric J. Haag (*pro hac vice* motion to be filed)
**ATTERBURY, KAMMER, & HAAG, S.C.**
8500 Greenway Boulevard, Suite 103
Middleton, Wisconsin  53562
(608) 821-4600
ehaag@wiscinjurylawyers.com

***Counsel for Plaintiffs and the Proposed Classes***

1

**ECF CERTIFICATION**

2          Pursuant to Civil L.R. 5-1(i)(3), the filing attorney attests that she has obtained concurrence

3  regarding the filing of this document from the signatories to the document.

4

5    Date: November 15, 2017                    By: _____ */s/ Jennie Lee Anderson* _____
6                                                        Jennie Lee Anderson

7                                                Jennie Lee Anderson
                                                 Lori E. Andrus
8                                                **ANDRUS ANDERSON LLP**
                                                 155 Montgomery Street, Suite 900
9                                                San Francisco, California  94104
                                                 Telephone:  415-986-1400
10                                               jennie@andrusanderson.com
                                                 lori@andrusanderson.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28