# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MONTEVILLE SLOAN, JR., RAUL SIQUEIROS, TODD AND JILL CRALLEY, JOSEPH BRANNAN, LARRY GOODWIN, MARC PERKINS, DONALD LUDINGTON, THOMAS SHORTER, DERICK BRADFORD, GABRIEL DEL VALLE, KEVIN HANNEKEN, EDWIN AND KATELYN DOEPEL, DAN MADSON, JAMES FAULKNER, JOSEPH OLIVIER, SCOTT SMITH, ROSS DAHL, DREW PETERSON, MICHAEL WARE, STEVE KITCHEN, BARBARA MOLINA, DENNIS VITA, STEVEN EHRKE, THOMAS GULLING, RONALD JONES, MIKE WARPINSKI, WILLIAM MARTELL, JOHN GRAZIANO, JOSHUA BYRGE, RUDY SANCHEZ, CHRISTOPHER THACKER, RANDY CLAUSEN, KELLY HARRIS, JAMES ROBERTSON, and JONAS BEDNAREK, individually and on behalf of all others similarly situated,<br>    Plaintiffs,<br><br>    v.<br><br>GENERAL MOTORS LLC,<br><br>    Defendant. | Case No.: 16-cv-07244-EMC<br><br>**ESI STIPULATION<br>AND [PROPOSED] ORDER** |

The procedures and protocols outlined herein govern the production of electronically stored information ("ESI") and paper documents by the Parties during the pendency of this litigation. The production formats for any other materials will be addressed by the parties after a meet and confer regarding the specific item or category of items.

**A.     Duty of Cooperation**

The parties acknowledge their duty to work together cooperatively throughout the discovery process.

**B.     Definitions**

1.     "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

2.     "**Electronic Document or Data**" means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (*e.g.*, Microsoft Word), computer presentations (*e.g.*, PowerPoint slides), spreadsheets (*e.g.*, Excel), and image files (*e.g.*, PDF).

3.     "**Electronically stored information**" or "**ESI**," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

4.     "**Hard-Copy Document**" means Documents existing in paper form at the time of collection.

5.     "**Native Format**" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is a .xls or .xslx file.

6.     "**Metadata**" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

7. "**Field Data**" means (i) information, such as Bates numbers, created during the course of processing documents or ESI for production; and (ii) information collected during the course of collecting documents or ESI, such as the name of the media device on which it was stored, or the custodian or non-custodial data source from which it was collected.

8. "**Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

9. "**Optical Character Recognition**" or "**OCR**" means the process of recognizing, and creating a file containing, visible text within an image.

10. "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion. "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

11. "**Confidentiality Designation**" means the legend affixed to Protected Documents as defined by, and subject to, the terms of any protective order entered in this litigation.

12. "**Searchable Text**" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

13. "**Load files**" means electronic files provided with a production set of documents and images used to load that production set into a receiving party's document review platform, and correlate its data within that platform.

14. "**And**" and "**or**" shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, *e.g.*, "**and**" shall be construed to mean "**and/or**."

15. "**Include**" and "**Including**" shall be construed to mean "include but not be limited to" and "including, but not limited to."

16. Reference to the singular shall also be deemed to refer to the plural, and vice-versa.

**C. Preservation**

1. The Parties represent that they have issued litigation hold notices to those custodians with data, and persons or entities responsible for maintenance of non-custodial data, which possibly contain discoverable information.

2. All backup or archive media which may contain discoverable ESI not otherwise available have been pulled from rotation and are being preserved.

3. All processes and procedures which would result in the elimination, or transfer to a less accessible medium, of any unpreserved data and associated metadata which would otherwise be required to be preserved or produced have been suspended.

4. Within twenty-one (21) days from entry of this Order, Defendant will identify all ESI preservation systems, including back-up, archive and disaster recovery systems, and all associated policies, processes and procedures, including those related to the deletion, removal or transfer of data from a location.

**D. Document and Data Sources**

1. Within twenty-one (21) days from entry of this Order, Defendant shall identify and describe all non-custodial data sources which possibly contain discoverable information.

2. Sources of non-custodial documents and sources include databases, file servers, SANs, NASs, email servers, web servers, online data storage such as Dropbox, document management systems (DMS), record management systems (RMS), content management systems (CMS), departmental/project/collaborative/shared storage spaces, e-rooms, structured data stores, application data, source code repositories, social media and hard-copy document repositories.

3. Within twenty-one (21) days from entry of this Order, Defendant shall identify the names, titles and roles of custodians who possibly have discoverable information.

4. Sources of custodial documents and ESI include local hard drives, network home or personal file shares, removable storage, email, removable storage media, online data storage such as Dropbox, messaging phones, tablets, social media, and physical files.

5. Within thirty (30) days from Defendant's identification of custodial and non-custodial data sources, Plaintiffs may identify additional custodial and non-custodial data sources for inclusion

under this order. Plaintiffs reserve the right to request, at any time prior to the close of discovery, inclusion of additional custodians or non-custodial data sources whose relevance was discovered via documents or data produced, or testimony given, after the initial designations by Defendant and Plaintiffs, or for other good cause shown. If the Defendant object to the inclusion of such non-custodial or custodial sources, the Parties will meet and confer to resolve the matter; if the Parties cannot reach resolution, the Court or its designee will determine the matter.

6. Documents and ESI from custodial and non-custodial data sources that may contain information relevant to this litigation will be preserved pending identification of data to be produced into this litigation.

7. Defendant has a continuing obligation to identify any custodial and non-custodial data sources that may contain information relevant to this litigation, and preserve them.

**E.  Identification of Responsive ESI**

The parties will meet and confer on the methodology (*e.g.*, keyword/Boolean search, technology-assisted review (TAR) such as concept search, predictive coding, etc.) and implementation (*e.g.*, search terms, etc.) to be used to identify and search ESI. Any such agreed-upon methodology does not relieve the parties of their continuing obligation to identify data sources and produce discrete document collections that contain information relevant to this litigation. A party may not withhold or decline to review a document known to be relevant or responsive to a discovery request on the basis that it was not discovered or identified through the agreed-upon search methodology.

**F.  Discrete Document Collections.**

Identified discrete document collections, such as communications with regulatory agencies or government entities shall be produced in their entirety without regard to whether or not each document in the collection has been identified as possibly responsive, or deemed to be or classified as, responsive, or, if search terms are used, contains a search term, except that privileged documents in such a collection may be withheld and listed in a privilege log as specified elsewhere in this order.

**G.  Other Filtering or Culling Technologies.**

Prior to use by either Party, the Parties must meet and confer to disclose and discuss any other proposed use of technologies not specified herein to reduce the number of documents to be reviewed or

produced (*i.e.*, file type culling, e-mail thread suppression, etc.). Use of these technologies to reduce the reviewable collection or production, other than as described, requires the consent of either Party and will be subject to a separate mutually agreeable protocol for the use of such technologies to be negotiated by the Parties.

**H.     Production Format and Processing Specifications**

1. Except as otherwise provided herein, the Parties will produce ESI in TIFF format with extracted searchable text and applicable metadata as specified in Attachment A. with the exception of the following file types that, to the extent produced, shall be produced in their native file format with an accompanying placeholder image:

- Spreadsheets;
- Audio files;
- Photos (jpg and jpeg); and
- Video files.

Redacted ESI will be produced as TIFFs and OCR'ed searchable text. Hard-copy documents will be scanned and produced as TIFFs, with applicable metadata as set out in Attachment A, and OCR'ed searchable text.

2. <u>Embedded Objects.</u> OLE embedded objects (embedded MS Office files, etc.) shall be extracted as separate files and treated as an attachment to the parent document. Images embedded in emails shall not be extracted and produced separately.

3. <u>Load Files.</u> Productions will include image load files in Opticon or IPRO format as well as Concordance format data (.dat) files with the metadata fields identified in Attachment A for all included documents. All metadata will be produced in UTF-16LE or UTF-8 with Byte Order Mark format.

4. <u>Foreign Language Documents.</u> Hard-copy documents and ESI that contain languages other than English, in whole or in part, shall be produced in the original language(s), along with all machine translations of the searchable text, as well as any other existing translations. Any subsequent translations in the possession of the producing party shall also be produced within seven (7) days after their creation.

5. <u>Text Files.</u>  A single text file shall be provided for each document.  The text file name shall be the same as the Bates number of the first page of the document with the document extension ".txt" suffixed.  Files names shall not have any special characters or embedded spaces.  Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (*e.g.,* non-searchable PDFs).  In these instances, and in the case of imaged hard-copy documents, a text file shall be created using OCR and shall be produced in lieu of extracted text.  Extracted text shall be provided in UTF-16LE or UTF-8 with Byte Order Mark format text.  Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden worksheets, slides, columns and rows.

6. <u>OCR.</u>  OCR should be sufficient to allow searching in any standard platform.

7. <u>Text Extracted from Emails.</u>  Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

8. <u>TIFFs.</u>  All TIFFs produced by any party in this matter will be single page Group IV TIFF format, 300 dpi quality or better.  Image file names will be identical to the corresponding bates numbered images, with a ".tif" file extension.  All images of redacted documents which contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image.  The producing party will brand all TIFF images in the lower right-hand corner with its corresponding bates number, using a consistent font type and size.  The Bates number must not obscure any part of the underlying image.  If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

9. <u>TIFFs of Redacted ESI.</u>  TIFFs of redacted ESI shall convey the same information and image as the original document, including all non-redacted elements and formatting which are visible in any view of the document in its native application. and each redacted area must bear a label containing the reason for the redaction.

10. <u>Explanation of Inability to Produce Metadata.</u>  If the producing party is unable to produce metadata for a particular field or ESI document, it will provide an explanation of that inability with its document production.  The Parties shall then meet and confer to attempt to resolve the problems.

11. <u>Native File Image Placeholders.</u>  A Bates-stamped placeholder TIFF, bearing the legend "This document has been produced in native format" shall be provided for ESI produced in native format; these placeholders will be Bates numbered in the same way as any other TIFF, and the Bates number of that single page shall be used as the BegBates and EndBates of the associated document.

12. <u>Audio Visual Files.</u>  Audio and video files are to be produced in the native file format in which they were maintained in the ordinary course of business.  Audio files in non-standard formats should be produced in MP3 format.

13. <u>Databases, Structured, Aggregated or Application Data.</u>  The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application.  Prior to any such meet and confer, Defendant will provide sufficient information to enable the Plaintiffs to evaluate the best method and format of production, including such information as the database or data store name, business purpose, database or data source owner, database schema, tables, column/field definitions, standard reports, export capabilities, and administrator, programmer and user manuals.  If the parties cannot reach agreement, the matter will be decided by the Court or its designee.

14. <u>Lost, Destroyed or Irretrievable ESI.</u>  If a Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original

format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists. Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

15. <u>Scanning of Hard-Copy Documents.</u> In scanning paper documents, documents are to be produced as they are kept in the ordinary course of business. For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. Pages with Post-It notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-It. The Parties will use best efforts to unitize documents (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records), and maintain document relationships, *i.e.*, attachment status. Original document orientation (*i.e.*, portrait v. landscape) should be maintained.

16. <u>Proprietary Software.</u> To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

17. <u>Redactions</u>. Documents containing redactions (e.g., pursuant to attorney-client privilege) will be produced in TIFF image format. OCR reflecting redactions will be provided in text files. When a document is redacted or withheld for attorney-client privilege or work product, all metadata on a family level is excluded from the metadata file (.DAT). Documents with embedded objects that are redacted or withheld from production will be produced in TIFF image format.

18. <u>De-duplication</u>. A producing party may de-duplicate a production vertically (i.e., within individual custodians) or horizontally (i.e., across different custodians) provided that horizontal de-duplication will necessitate the inclusion of information for all other custodians for which the documents have been de-duplicated in an "Other Custodians" metadata field produced in the delimited text file containing the other metadata fields as specified herein.

19. <u>Color.</u> Paper documents or redacted ESI that contain color necessary to decipher the meaning, context, or content of the document or ESI shall be produced as single-page, 300 DPI JPG

images with JPG compression and a high quality setting as to not degrade the original image.

20. <u>Encrypted or Password-Protected ESI.</u> For any ESI that exists in encrypted format or is password-protected, the producing party will provide the receiving party a means to gain access to those native files (for example, by supplying passwords.)

21. <u>Parent-Child Relationships.</u> Parent-child relationships (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved.

22. <u>Family Groups.</u> A document and all other documents in its attachment range, emails with attachments, and files with extracted embedded OLE documents all constitute family groups. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

23. <u>Production Media.</u> The producing party will use SFTP when appropriate for its ESI production, and will cooperate in good faith to use the highest-capacity available media to minimize associated overhead. Any replacement Production Media will cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates Number range that is being replaced.

24. <u>Write Protection and Preservation.</u> All computer media that is capable of write protection should be write-protected before production.

**I.  Privilege Log.**

Within a reasonable time after each production, but no more than forty-five (45) days after each production, Defendant shall provide Plaintiffs with a log of the documents withheld or redacted for privilege from that production with a log populated exclusively with the following extracted metadata fields: Custodian(s), From, To, CC, BCC, Subject, File Name, File Path, Date Created, Date Last Modified, Basis of Withholding/Redaction. If there is more than one redaction, each redaction shall be addressed in the log with sufficient information to allow Plaintiffs to understand the basis for the redactions. Forwarded emails withheld from disclosure or redacted shall be separately logged. In addition to providing the requested privilege log withint a reasonablle time after Plaintiffs' request, Defendant shall provide a list of in-house and outside attorneys.

**J.	General Provisions.**

1. Any practice or procedure set forth herein may be varied by written agreement of the Parties, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials.

2. Should any Party subsequently determine in good faith that it cannot proceed as required by this order or that the order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

3. Regardless of the foregoing, the Parties retain the obligation to produce, or log for privilege, all responsive documents of which they are aware.

Approved as to form and content and respectfully submitted by:

**DATED:** January 3, 2018

/s/ Jennie Lee Anderson
Jennie Lee Anderson
Lori E. Andrus
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Adam J. Levitt (*pro hac vice*)
Mark A. DiCello (*pro hac vice*)
John E. Tangren (*pro hac vice*)
Daniel R. Ferri (*pro hac vice*)
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dlcfirm.com
dferri@dlcfirm.com
jtangren@dlcfirm.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
H. Clay Barnett, III (*pro hac vice*)
Archie I. Grubb, II (*pro hac vice*)
Andrew E. Brashier (*pro hac vice*)
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Archie.Grubb@Beasleyallen.com
Andrew.Brashier@Beasleyallen.com

Nicholas R. Rockforte (*pro hac vice* to be filed)
Christopher L. Coffin (*pro hac vice* to be filed)
**PENDLEY, BAUDIN & COFFIN, L.L.P.**
1515 Poydras Street, Suite 1400
New Orleans, Louisiana 70112
Telephone: 504-355-0086
nrockforte@pbclawfirm.com
ccoffin@pbclawfirm.com

Marcus Rael (*pro hac vice* motion to be filed)
**ROBLES, RAEL & ANAYA, P.C.**
500 Marquette NW, Suite 700
Albuquerque, New Mexico 87102
Telephone: 505-242-2228
marcus@roblesrael.com

Anthony J. Garcia, Esq. (*pro hac vice*)
**AG LAW**
742 South Village Circle
Tampa, Florida 33606
Telephone: 813-259-9555
anthony@aglawinc.com

Timothy J. Becker (*pro hac vice*)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
Telephone: 612-436-1800
tbecker@johnsonbecker.com

Ben Finley (*pro hac vice* motion to be filed)
**THE FINLEY FIRM, P.C.**
200 13th Street
Columbus, Georgia 31901
Telephone: 706-322-6226
bfinley@thefinleyfirm.com

Eric J. Haag (pro hac vice)
ATTERBURY, KAMMER & HAAG, S.C.
8500 Greenway Boulevard, Suite 103
Middleton, Wisconsin 53562
Telephone: 608-821-4600
ehaag@wiscinjurylawyers.com

C*ounsel for Plaintiffs*

/s/ Joseph J. Ybarra
Joseph J. Ybarra (SBN 218130)
Joseph.Ybarra@hysmlaw.com
**HUANG YBARRA GELBERG & MAY LLP**
550 South Hope Street, Suite 1850
Los Angeles, California 90071
Telephone: 213-884-4902

ESI STIPULATION AND [PROPOSED] ORDER 12 Case No. 16-cv-07244-EMC

Gregory R. Oxford (SBN 62333)
goxford@icclawfirm.com
**ISAACS CLOUSE CROSE & OXFORD LLP**
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Telephone: 310-316-1990

*Attorneys for Defendant General Motors LLC*

## **ECF CERTIFICATION**

Pursuant to Civil L.R. 5-1(i)(3), the filing attorney attests that she has obtained concurrence regarding the filing of this document from the signatories to the document.

Date: January 3, 2018

By: _____*/s/ Jennie Lee Anderson*_____

Jennie Lee Anderson

Jennie Lee Anderson
Lori E. Andrus
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

**PURSUANT TO STIPULATION, SO ORDERED.**

Dated this 9th day of Jan., 2018.

                                                _____
                                                THE HONORABLE EDWARD M. CHEN
                                                UNITED STATES DISTRICT JUDGE

*[Seal: UNITED STATES DISTRICT COURT — NORTHERN DISTRICT OF CALIFORNIA; stamp: "IT IS SO ORDERED / Judge Edward M. Chen"]*

# ATTACHMENT A
# TO ESI STIPULATION

- STARTBATES – Indicates first page of a document
- ENDBATES – Indicates the last page of a document
- PARENTBATES – Indicates first page of PARENT
- CUSTODIANS – Individual/Source(s) assigned to the record at collection time
- EMAILTO
- EMAILFROM
- EMAILCC
- EMAILBCC
- EMAILSUBJECT
- EMAILSENTDATETIME
- EMAILAPPTSTARTDATETIME
- FILENAME
- FILECREATEDATETIME
- FILELASTMODDATETIME
- MD5HASH
- TEXTLINK
- NATIVELINK