Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Adam J. Levitt (*pro hac vice*)
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dlcfirm.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@Beasleyallen.com

Attorneys for Plaintiffs (*additional counsel appear on signature page*)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

MONTEVILLE SLOAN, JR., RAUL SIQUEIROS, TODD AND JILL CRALLEY, JOSEPH BRANNAN, LARRY GOODWIN, MARC PERKINS, THOMAS SHORTER, DERICK BRADFORD, GABRIEL DEL VALLE, KEVIN HANNEKEN, EDWIN AND KATELYN DOEPEL, DAN MADSON, JAMES FAULKNER, JOSEPH OLIVIER, SCOTT SMITH, ROSS DAHL, DREW PETERSON, MICHAEL WARE, STEVE KITCHEN, JOHN KNOLL, BARBARA MOLINA, DENNIS VITA, STEVEN EHRKE, THOMAS GULLING, RONALD JONES, MIKE WARPINSKI, WILLIAM MARTELL, JOHN GRAZIANO, JOSHUA BYRGE, RUDY SANCHEZ, CHRISTOPHER THACKER, KELLY HARRIS, JAMES ROBERTSON, and JONAS BEDNAREK, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GENERAL MOTORS LLC,

Defendant.

Case No.: 16-cv-07244-EMC

**THIRD AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Monteville Sloan Jr., Raul Siqueiros, Todd and Jill Cralley, Joseph Brannan, Larry Goodwin, Marc Perkins, Thomas Shorter, Derick Bradford, Gabriel Del Valle, Kevin Hanneken, Edwin and Katelyn Doepel, Dan Madson, James Faulkner, Joseph Olivier, Scott Smith, Ross Dahl, Drew Peterson, Michael Ware, Steve Kitchen, John Knoll, Barbara Molina, Dennis Vita, Steven Ehrke, Thomas Gulling, Ronald Jones, Mike Warpinski, William Martell, John Graziano, Joshua Byrge, Rudy Sanchez, Christopher Thacker, Kelly Harris, James Robertson, and Jonas Bednarek (collectively, "Plaintiffs"), individually and on behalf of the other members of the below-defined nationwide and statewide classes they respectively seek to represent (collectively, the "Class"), hereby allege as their Third Amended Complaint against Defendant General Motors LLC ("GM" or "Defendant"), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## I. NATURE OF THE CASE

1. This class action lawsuit is brought by Plaintiffs seeking damages and equitable relief individually and on behalf of the other Class members, each of whom purchased or leased one or more model year 2010-2013 GM vehicles fitted with GM's defective Generation IV 5.3 Liter V8 Vortec 5300 engines (the "Generation IV Vortec 5300 Engines").

2. GM made the Generation IV Vortec 5300 Engine available as an engine option in the following vehicles:

- 2010-2014 Chevrolet Avalanche;
- 2010-2012 Chevrolet Colorado;
- 2010-2013 Chevrolet Express;
- 2010-2013 Chevrolet Silverado;
- 2010-2014 Chevrolet Suburban;
- 2010-2014 Chevrolet Tahoe;
- 2010-2013 GMC Canyon;
- 2010-2013 GMC Savana;
- 2010-2013 GMC Sierra;

- 2010-2014 GMC Yukon; and
- 2010-2014 GMC Yukon XL.

Those vehicles listed above in which the Defective Engines were installed are defined herein as the "Class Vehicles."[1]

3. As more fully explained below, the Class Vehicles were engineered to fail. GM failed to disclose the truth about these vehicles and failed to remedy the well-established defects in the Class Vehicles that were on the road.

4. In 2006, for its model year 2007 vehicles, General Motors Corporation ("Old GM") introduced its redesigned Generation IV Vortec 5300 Engine and installed it in many of its most popular vehicles, as listed above.

5. Unfortunately, the Generation IV Vortec 5300 Engine consumes an abnormally and improperly high quantity of oil that far exceeds industry standards for reasonable oil consumption. This excessive oil consumption results in low oil levels, insufficient lubricity levels, and corresponding internal engine component damage.

6. On June 8, 2009, Old GM filed for protection under Chapter 11 of the United States Bankruptcy Code. Defendant GM acquired its assets and, for model years 2010-2013, continued manufacturing and selling Chevrolet and GMC vehicles equipped with the Generation IV Vortec 5300 Engines.[2]

7. Multiple factors contribute to the excessive oil consumption problem in the Generation IV Vortec 5300 Engines. The combination of these factors, and the resultant excessive oil consumption, is herein referred to as the "Oil Consumption Defect." It is an inherent defect in each of the Class Vehicles.

8. The primary cause of the Oil Consumption Defect is that the piston rings that GM installed within the Generation IV Vortec 5300 Engines do not maintain sufficient tension to keep oil in the crankcase.

---

[1] "Class Vehicles" are only vehicles produced after GM emerged from bankruptcy on July 10, 2009.

[2] Plaintiffs do not assert any claims against Old GM, nor were any of the Class Vehicles manufactured by Old GM.

9. The Active Fuel Management ("AFM") system that GM included in the Generation IV Vortec 5300 Engines further contributes to the Oil Consumption Defect. The AFM system comprises an oil pressure relieve valve that assists the AFM system by spraying oil directly at the piston skirts. This oil spray overloads and fouls the defective piston rings, triggering oil migration past the rings. The migrating oil either burns or accumulates as carbon buildup on the combustion chamber's surfaces.

10. In addition, the Generation IV Vortec 5300 include a flawed PCV system that vacuums oil from the valvetrain into the intake system, where it is ultimately burned in the combustion chambers. This vacuuming process also contributes to excessive oil consumption.

11. Exacerbating the excessive oil loss and concomitant engine damage problems caused by the Oil Consumption Defect in the Class Vehicles is GM's implementation of a defective Oil Life Monitoring System in each of those vehicles that fails to advise drivers of insufficient oil in their vehicles until those levels are critically low.

12. Despite its name, GM's Oil Life Monitoring System ***does not monitor oil level***. Rather, it monitors engine conditions, such as revolutions and temperature, to calculate the expected deterioration in oil quality and thus the time for a recommended oil change. The Oil Life Monitoring System's adaptive change intervals *do not* take oil level into account. The result is a system that directs drivers to travel thousands of miles with inadequate engine lubricity levels, wearing out and damaging moving internal engine components – a particularly serious problem in light of the fact that the Oil Consumption Defect causes improper and excessive oil loss in each of the Class Vehicles.

13. In addition to the Oil Life Monitoring System (which does not monitor oil level), the Class Vehicles include an oil pressure gauge on the dash and an oil canister image that will ostensibly illuminate when a vehicle is low on oil. As discussed in more detail below, however, the oil pressure gauge *does not* provide any indication as to when the oil pressure in the Class Vehicles falls to levels low enough to damage internally lubricated parts or cause engine failure. Nor does the oil canister symbol illuminate until well past the time when the Class Vehicles are critically oil starved. Furthermore, even if the Class Vehicles did adequately warn drivers of critically low oil conditions (which they do not), any such warnings would do nothing to prevent the full scope of the harms caused by the Oil Consumption Defect.

14. Moreover, oil migration from the Oil Consumption Defect fouls spark plugs no matter

how often drivers top off their oil levels.   Importantly, oil fouled spark plugs produce an anemic/weakened spark, an intermittent spark and/or no spark at all – causing engine misfires and shutdown events.  Engine misfires and shutdown events put occupants at risk, as the Class Vehicles become stranded in hazardous traffic conditions, dangerous weather conditions and/or remote locations.

15.     Over the years, GM has instructed its dealers to address the excessive oil loss problem in the Class Vehicles by performing stop-gap fixes of the Generation IV Vortec 5300 Engines' PCV and AFM systems.  Additionally, GM instructed dealers to decarbonize combustion chambers and rings with chemical abrasives.  Such fixes, however, failed to provide a complete, and adequate, remedy for the Oil Consumption Defect that has plagued – and continues to plague – each of the Class Vehicles.  Moreover, GM did not disclose the Oil Consumption Defect, or *any* of its causes, to consumers prior to their purchasing or leasing of their Class Vehicles.

16.     Beginning with certain of its model year 2014 vehicles, GM scrapped the Generation IV Vortec 5300 Engine it installed and implemented in the Class Vehicles and replaced it with a materially redesigned Generation V Vortec 5300 engine, which was designed and intended to remedy the excessive oil consumption problem plaguing the Class Vehicles.  As part of that 2014 model year overhaul, GM installed an improved sealing ring package, an AFM shield that deflected oil spray away from the piston skirts, and a new valve cover with relocated and baffled PCV orifice, while, at the same time, reintroducing an oil level sensor.

17.     While GM's redesign of its Generation V Vortec 5300 engines confirms the prior defects and may benefit subsequent purchasers and lessees of those vehicles, it did nothing for the owners and lessees of the Class Vehicles, namely, Plaintiffs and the other Class members.  Those people remain saddled with their defective Generation IV Vortec 5300 Engines with no relief from GM.

18.     GM has long known of the Oil Consumption Defect and the resulting engine damage.  As shown more fully below, excessive oil consumption resulted in an extraordinary number of complaints, dating back to model year 2007 vehicles with the Generation IV Vortec 5300 Engines.  Further, GM issued Technical Service Bulletins to its dealers (not consumers), prior to the sale and lease of the Class Vehicles, which explicitly addressed the issue of excessive oil consumption in Generation IV Vortec 5300 Engines, and which recognized all causes of the Oil Consumption Defect: (a) the PCV flaw, (b) the

AFM flaw, and (c) flaws in piston rings.

19.     Despite this knowledge, GM continued selling and leasing Class Vehicles without ever disclosing the Oil Consumption Defect.  Indeed, GM has *never* disclosed the Oil Consumption Defect to consumers.  Rather, GM has allowed drivers of the Class Vehicles to continue driving those vehicles, despite knowing that they are consuming oil at an abnormally high rate, and has continued allowing drivers of the Class Vehicles to rely on the Oil Life Monitoring System, despite knowing that they were driving well past the point at which their vehicles have consumed the amount of oil necessary for proper engine lubrication and proper, safe operation.  The result is Class Vehicles that suffer engine failure and engine damage, including spark plug fouling, ring wear, lifter collapse, bent pushrods, camshaft wear, valve wear, rod bearing wear, rod breakage, wristpin wear, wristpin breakage, crankshaft wear and main bearing wear or destruction and other forms of internal component wear/breakage due to unacceptable heat and friction levels and oil breakdown.

20.     Each current or former purchaser or lessee of a Class Vehicle paid for a vehicle fitted with a defective engine that consumed an abnormally high volume of oil, subjecting their vehicles to the problems described herein.  Each of these current and/or former owners and/or lessees were damaged in that they paid more for their Class Vehicles than they would have paid had they known about the defect that GM failed to disclose, or they would not have purchased or leased their Class Vehicles at all.

## II.     JURISDICTION AND VENUE

21.     This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000 and Plaintiffs and one or more of the other Class members are citizens of a different state than Defendant.

22.     This Court has personal jurisdiction over GM because GM has purposefully availed itself of the privilege of conducting business in the State of California by advertising and selling its manufactured vehicles (including the Class Vehicles) within the State of California.  Additionally, GM has maintained systematic and continuous business contacts with the State of California and is registered to conduct business in this State.

23.     Venue is proper in this District under 28 U.S.C. § 1391 because GM is deemed to reside in any judicial district in which it is subject to personal jurisdiction.  Additionally, Plaintiff Sloan Jr.

resides in this District, and GM has marketed, advertised, sold, and leased Class Vehicles within this District.

## III. PARTIES

### A. Plaintiffs

#### 1. California

24. Raul Siqueiros is a resident of Vallejo, California.

25. Mr. Siqueiros owns a 2011 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine. Mr. Siqueiros purchased his Silverado new from Team Chevrolet Cadillac in Vallejo, California.

26. Mr. Siqueiros has noticed that his Silverado consumes an unusually high volume of oil. Mr. Siqueiros first noticed what he thought to be excessive oil consumption in 2011.

27. In 2011, Mr. Siqueiros complained to Team Chevrolet regarding the excessive oil consumption, and was told that it was normal.

28. Mr. Siqueiros has experienced problems with his vehicle running "rough," which, upon information and belief, is the result of camshaft and lifter wear from excessive oil consumption and inadequate engine lubricity. This problem began occurring in or around April of 2016.

29. Mr. Siqueiros experienced significant engine troubles despite Team Chevrolet's representations that the oil consumption in his vehicle was normal.

30. Mr. Siqueiros did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption in his vehicle was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

31. GM failed to disclose the Oil Consumption Defect to Mr. Siqueiros before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Siqueiros, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

32. Todd and Jill Cralley are residents of Santa Maria, California.

33. Mr. and Mrs. Cralley own a 2010 Chevrolet Suburban, which was equipped with a Generation IV Vortec 5300 Engine. Mr. and Mrs. Cralley purchased their Suburban new from Home Motors in Santa Maria, California.

34. Mr. and Mrs. Cralley noticed that their Suburban consumed an unusually high volume of oil.

35. Mr. and Mrs. Cralley noticed excessive oil consumption within the first year after purchasing their vehicle.

36. In the summer of 2016, Mr. and Mrs. Cralley experienced rough idle, and brought their vehicle to a mechanic. The mechanic attempted to address the problem by installing an oil shield.

37. Despite this, in the summer of 2017, Mr. and Mrs. Cralley noticed poor engine performance, including a lack of acceleration, due to the excessive oil consumption, inadequate engine lubricity, and spark plug fouling. Ultimately, due to the poor engine performance, Mr. and Mrs. Cralley had to pay for their engine to be replaced.

38. The shop that performed the engine replacement, Peterson Chevrolet in Boise, Idaho, noted in their evaluation of the original engine that they "found pistons in need of replacement causing oil consumption and oil fouling of plugs…recommend replacing to updated pistons and rings to correct concern for rough idle and engine light."

39. Mr. and Mrs. Cralley never saw a low oil warning light illuminate or appear in their vehicle.

40. Mr. and Mrs. Cralley did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption in their vehicle was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

41. GM failed to disclose the Oil Consumption Defect to Mr. and Mrs. Cralley before they purchased their Suburban, despite GM's knowledge of the defect, and Mr. and Mrs. Cralley, therefore, purchased their Suburban with the incorrect understanding that it would be a reliable vehicle.

**2. Alabama**

42. Joseph Brannan is a resident of Columbus, Georgia.

43. Mr. Brannan owns a 2010 GMC Yukon equipped with a Generation IV Vortec 5300 Engine. Mr. Brannan purchased his Yukon in 2011 used with 29,168 miles from Joe V. Clayton Chevrolet, located at 327 Brindlee Mountain Parkway, Arab, Alabama.

44. GM failed to disclose the Oil Consumption Defect to Mr. Brannan before he purchased

his Yukon, despite GM's knowledge of the defect, and Mr. Brannan, therefore, purchased his Yukon with the incorrect understanding that it would be a reliable vehicle.

**3. Arkansas**

45. Larry Goodwin is a resident of Mabelvale, Arkansas.

46. Mr. Goodwin owns a 2011 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine. Mr. Goodwin purchased his Silverado new in 2010 from Landers Chevrolet in Benton, Arkansas.

47. Mr. Goodwin has noticed that his Silverado consumes an unusually high volume of oil. Mr. Goodwin first noticed excessive oil consumption in or around the summer of 2014.

48. Mr. Goodwin's vehicle has been two quarts low on oil, without a low oil warning ever illuminating in his vehicle. Mr. Goodwin complained to Landers Chevrolet regarding excessive oil consumption, and was told to simply check the oil more often. Landers Chevrolet did not disclose the Oil Consumption Defect to Mr. Goodwin.

49. Mr. Goodwin did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption in his vehicle was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

50. GM failed to disclose the Oil Consumption Defect to Mr. Goodwin before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Goodwin, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**4. Delaware**

51. Marc Perkins is a resident of Stafford, Virginia.

52. Mr. Perkins owns a 2011 Chevrolet Avalanche equipped with a Generation IV Vortec 5300 Engine. Mr. Perkins purchased his Avalanche new in 2011 from Porter Chevrolet in Newark, Delaware.

53. Mr. Perkins has noticed that his Avalanche consumes an unusually high volume of oil.

54. In 2015, the lifters in Mr. Perkins' vehicle's engine collapsed, which, upon information and belief, was due to the excessive consumption of oil and corresponding inadequate engine lubricity.

55. GM failed to disclose the Oil Consumption Defect to Mr. Perkins before he purchased his

Avalanche, despite GM's knowledge of the defect, and Mr. Perkins, therefore, purchased his Avalanche with the incorrect understanding that it would be a reliable vehicle.

**5.      Florida**

56.      Thomas Shorter is a resident of Okeechobee, Florida.

57.      Mr. Shorter owns a 2011 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine.  Mr. Shorter purchased his Silverado new from Gilbert Chevrolet in Okeechobee, Florida.

58.      Mr. Shorter has noticed that his Silverado consumes an unusually high volume of oil.  Mr. Shorter first noticed excessive oil consumption in 2015.

59.      In 2015, Mr. Shorter complained of excessive oil consumption to Gilbert Chevrolet, and was told that "oil was backing into the cylinders."  His vehicle was still under warranty at this time.  The dealership attempted repair, but did not fix the problem.

60.      In early 2016, Mr. Shorter noticed his lifters were ticking, and he checked his oil.  He found none on his dipstick.  The lifter tick resulted from excessive oil consumption and corresponding inadequate engine lubricity.

61.      Mr. Shorter did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

62.      GM failed to disclose the Oil Consumption Defect to Mr. Shorter before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Shorter, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**6.      Georgia**

63.      Derick Bradford is a resident of Bainbridge, Georgia.

64.      Mr. Bradford owns a 2010 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine.  Mr. Bradford purchased his Silverado used with 70,000 miles in 2014 from Action GM in Bainbridge, Georgia.

65.      Mr. Bradford has noticed that his vehicle consumes an unusually high volume of oil.  In or around February of 2016, Action GM told Mr. Bradford that excessive oil consumption was normal.

66.      Later in 2016, the lifters and cam shaft in Mr. Bradford's vehicle failed and were replaced.

Upon information and belief, these repairs were necessitated by excessive oil consumption and corresponding inadequate engine lubricity.

67.     He experienced engine damage despite his dealership's representation that the oil consumption in his vehicle was normal.

68.     Mr. Bradford did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016

69.     GM failed to disclose the Oil Consumption Defect to Mr. Bradford before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Bradford, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**7.     Idaho**

70.     Gabriel Del Valle is a resident of Antelope, California.

71.     Mr. Del Valle owns a 2013 Chevrolet Avalanche equipped with a Generation IV Vortec 5300 Engine.  Mr. Del Valle purchased his Avalanche used with 40,000 miles in February 2016 from Peterson Chevrolet Buick Cadillac, located at 12300 West Fairview Ave, Boise, Idaho.

72.     Mr. Del Valle has noticed that his Avalanche consumes an unusually high volume of oil.

73.     GM failed to disclose the Oil Consumption Defect to Mr. Del Valle before he purchased his Avalanche, despite GM's knowledge of the defect, and Mr. Del Valle, therefore, purchased his Avalanche with the incorrect understanding that it would be a reliable vehicle.

**8.     Illinois**

74.     Kevin Hanneken is a resident of Jerseyville, Illinois.

75.     Mr. Hanneken owns a 2011 GMC Sierra equipped with a Generation IV Vortec 5300 Engine.  Mr. Hanneken purchased his Sierra new in 2011 from Quality Buick GMC Cadillac in Alton, Illinois.

76.     Mr. Hanneken has noticed that his Sierra consumes an unusually high volume of oil.

77.     Mr. Hanneken first recognized an oil consumption issue in 2014.  When Mr. Hanneken's odometer read 100,000 miles, he was four quarts low on oil.  Mr. Hanneken complained to his dealership, and his dealership falsely told him that the oil consumption was normal.

78. Mr. Hanneken did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

79. GM failed to disclose the Oil Consumption Defect to Mr. Hanneken before he purchased his Sierra, despite GM's knowledge of the defect, and Mr. Hanneken, therefore, purchased his Sierra with the incorrect understanding that it would be a reliable vehicle.

80. Katelyn Doepel and Edwin Doepel III are residents of Yorkville, Illinois.

81. Mr. and Mrs. Doepel own a 2013 GMC Yukon, equipped with a Generation IV Vortec 5300 Engine. Mr. and Mrs. Doepel purchased their Yukon used from Thomas Toyota in Joliet, Illinois.

82. Before purchasing their vehicle, Mr. and Mrs. Doepel researched the vehicle. Because Mr. and Mrs. Doepel were particularly interested in the purported gas savings of Generation IV Vortec 5300 Engine's AFM system, Mr. and Mrs. Doepel reviewing information available on GM's website, specifically including a fact sheet, regarding the AFM system and the Generation IV Vortec 5300 Engines.

83. Mr. and Mrs. Doepel have noticed that their Yukon consumes an unusually high volume of oil.

84. In or around June 2017, Mr. and Mrs. Doepel heard loud knocking in their vehicle's engine and white smoke was coming from the tailpipe. The lifters within Mr. and Mrs. Doepel's vehicle had failed. Multiple mechanics told Mr. and Mrs. Doepel that the problem was caused by excessive oil consumption. Mr. and Mrs. Doepel were forced to pay for a new engine.

85. Mr. and Mrs. Doepel never saw a low oil warning illuminate or appear in their vehicle.

86. GM failed to disclose the Oil Consumption Defect to Mr. and Mrs. Doepel before they purchased their Yukon, despite GM's knowledge of the defect, and Mr. and Mrs. Doepel, therefore, purchased their Yukon with the incorrect understanding that it would be a reliable vehicle.

**9. Kansas**

87. Dan Madson is a resident of Cheney, Kansas.

88. Mr. Madson owns a 2013 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine. Mr. Madson purchased his Silverado used with 12,000 miles in December 2013 from Lubbers

Chevrolet in Cheney, Kansas.

89.     Mr. Madson has noticed that his Silverado consumes an unusually high volume of oil.

90.     Mr. Madson first recognized an issue with excessive oil consumption issue in March 2014.

91.      He later noticed a knocking noise in the engine of his vehicle, which, upon information and belief, is the result of excessive oil consumption and corresponding inadequate engine lubricity.

92.     Mr. Madson did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016

93.     GM failed to disclose the Oil Consumption Defect to Mr. Madson before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Madson, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle

**10.     Kentucky**

94.     James Faulkner is a resident of Manchester, Kentucky.

95.     Mr. Faulkner owns a 2011 GMC Sierra equipped with a Generation IV Vortec 5300 Engine.  Mr. Faulkner purchased his Sierra used with 19,000 miles in 2015 from Legacy Chevrolet in Corbin, Kentucky.

96.     Mr. Faulkner has noticed that his Sierra consumes an unusually high volume of oil.

97.     Mr. Faulkner first noticed excessive oil consumption when his vehicle had approximately 34,000 miles on the odometer.  Since first noticing excessive oil consumption, Mr. Faulkner has had to add a quart of oil every 1,000 miles.

98.     Mr. Faulkner has had to replace multiple spark plugs due to fouling from the excessive oil consumption.

99.     Mr. Faulkner previously owned a 2011 Chevrolet Silverado with a Generation IV Vortec 5300 Engine.  That vehicle required four quarts of oil between oil changes.

100.     GM failed to disclose the Oil Consumption Defect to Mr. Faulkner before he purchased his Sierra, despite GM's knowledge of the defect, and Mr. Faulkner, therefore, purchased his Sierra with the incorrect understanding that it would be a reliable vehicle.

**11. Louisiana**

101. Joseph Olivier is a resident of Houma, Louisiana.

102. Mr. Olivier owns a 2013 GMC Sierra equipped with a Generation IV Vortec 5300 Engine. Mr. Olivier purchased his Sierra new from Barker Buick GMC in, Houma, Louisiana.

103. Mr. Olivier has noticed that his Sierra consumes an unusually high volume of oil.

104. Mr. Olivier has experienced knocking in his engine, which, upon information and belief, is due to excessive oil consumption and inadequate engine lubricity.

105. GM failed to disclose the Oil Consumption Defect to Mr. Olivier before he purchased his Sierra, despite GM's knowledge of the defect, and Mr. Olivier, therefore, purchased his Sierra with the incorrect understanding that it would be a reliable vehicle.

**12. Massachusetts**

106. Scott Smith is a resident of Plymouth, Massachusetts.

107. Mr. Smith owned a 2011 GMC Yukon equipped with a Generation IV Vortec 5300 Engine. Mr. Smith purchased his Yukon in 2012 from Colonial GMC in Watertown, Massachusetts.

108. In the fall of 2016, Mr. Smith first noticed that his Yukon consumed an unusually high quantity of oil.

109. Mr. Smith first noticed excessive oil consumption when his vehicle had approximately 85,000 miles on the odometer. Mr. Smith's Yukon consumed 2-3 quarts of oil per 3,000 miles. Due to the oil consumption and corresponding inadequate engine lubricity, the spark plugs in Mr. Smith's Yukon fouled, and the cam and lifters in Mr. Smith's Yukon failed.

110. In January 2017, Marty's GMC in Kingston, Massachusetts noted the oil consumption in Mr. Smith's vehicle. Mr. Smith was informed that his engine had suffered catastrophic internal failure and that the estimated cost of a new engine was $6,470. Mr. Smith ultimately traded in his vehicle.

111. Mr. Smith did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016

112. GM failed to disclose the Oil Consumption Defect to Mr. Smith before he purchased his Yukon, despite GM's knowledge of the defect, and Mr. Smith, therefore, purchased his Yukon with the

incorrect understanding that it would be a reliable vehicle.

**13.    Minnesota**

113.    Ross Dahl is a resident of Willmar, Minnesota.

114.    Mr. Dahl owns a 2010 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine.  Mr. Dahl purchased his Silverado in 2010 new from Davis Motors in Litchfield, Minnesota.

115.    Mr. Dahl has noticed that his Silverado consumes an unusually high volume of oil.

116.    Mr. Dahl first noticed excessive oil consumption when his vehicle had approximately 56,000 miles on the odometer and his oil screen clogged.  A mechanic confirmed to Mr. Dahl that his vehicle was low on oil, although a low oil warning never illuminated or appeared in his vehicle.

117.    Mr. Dahl had to have his spark plugs changed, which, upon information and belief, was due to fouling from excessive oil consumption.

118.    GM failed to disclose the Oil Consumption Defect to Mr. Dahl before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Dahl, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

119.    Drew Peterson is a resident of Vernon Center, Minnesota.

120.    Mr. Peterson owns a 2013 Chevrolet Silverado, equipped with a Generation IV Vortec 5300 Engine.  Mr. Peterson purchased his Silverado in December 2012 new from Mankato Motors in Mankato, Minnesota.

121.    Mr. Peterson has noticed that his Silverado consumes an unusually high volume of oil.

122.    Mr. Peterson first noticed excessive oil consumption in or around November 2015.

123.    Mr. Peterson's vehicle consumes approximately 2 quarts of oil every 1,000-2,000 miles.

124.    GM failed to disclose the Oil Consumption Defect to Mr. Peterson before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Peterson, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**14.    Mississippi**

125.    Michael Ware is a resident of Abbeville, Mississippi.

126.    Mr. Ware owned a 2013 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine.   Mr. Ware purchased his Silverado used with 75,000 miles in 2016 from Barnes Crossing

Hyundai Mazda in Tupelo, Mississippi 38804.

127. Mr. Ware noticed that his Silverado consumed an unusually high volume of oil.

128. GM failed to disclose the Oil Consumption Defect to Mr. Ware before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Ware, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**15. Missouri**

129. Steve Kitchen is a resident of Saint Charles, Missouri.

130. Mr. Kitchen owns a 2013 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine. Mr. Kitchen purchased his Silverado used with 39,000 miles in July 2013 from Weber Chevrolet Creve Coeur in Creve Coeur, Missouri.

131. Mr. Kitchen has noticed that his Silverado consumes an unusually high volume of oil.

132. Mr. Kitchen noticed excessive oil consumption within 3-4 months of purchasing his vehicle.

133. Due to the excessive oil consumption and corresponding inadequate engine lubricity, Mr. Kitchen's vehicle suffered camshaft, lifter and push rod failures, and these components needed to be replaced.

134. GM failed to disclose the Oil Consumption Defect to Mr. Kitchen before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Kitchen, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**16. New Jersey**

135. John Knoll is a resident of Hazlet, New York.

136. Mr. Knoll owns a 2013 GMC Sierra equipped with a Generation IV Vortec 5300 Engine. Mr. Knoll purchased his Sierra new from Straub Motors, a GMC dealership in Keyport, New Jersey.

137. In 2015, Mr. Knoll noticed that his vehicle was consuming excessive oil.

138. In 2015, Mr. Knoll complained to his dealership regarding the excessive oil consumption, and was told that the oil consumption was normal for his type of vehicle.

139. Due to excessive oil consumption, Mr. Knoll's vehicle has experienced spark plug fouling.

140. Mr. Knoll did not receive any notification from GM regarding the Oil Consumption

Defect, and could not have known that the oil consumption was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016

141. GM failed to disclose the Oil Consumption Defect to Mr. Knoll before he purchased his Sienna, despite GM's knowledge of the defect, and Mr. Knoll, therefore, purchased his Sienna with the incorrect understanding that it would be a reliable vehicle.

**17. New Mexico**

142. Barbara Molina is a resident of Seboyeta, New Mexico.

143. Ms. Molina owns a 2012 Chevrolet Avalanche equipped with a Generation IV Vortec 5300 Engine. Ms. Molina purchased her Avalanche used with 2,334 miles from Galles Chevrolet, located at 1601 Lomas Boulevard, Albuquerque, New Mexico.

144. Ms. Molina did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016

145. GM failed to disclose the Oil Consumption Defect to Ms. Molina before she purchased her Avalanche, despite GM's knowledge of the defect, and Ms. Molina, therefore, purchased her Avalanche with the incorrect understanding that it would be a reliable vehicle.

**17. New York**

146. Dennis Vita is a resident of Saint James, New York.

147. Mr. Vita owns a 2013 GMC Sierra, equipped with a Generation IV Vortec 5300 Engine. Mr. Vita purchased his Sierra new from King O'Rourke Buick/GM in Smithtown, New York.

148. Mr. Vita has noticed that his Sierra consumes an unusually high volume of oil.

149. Mr. Vita noticed excessive oil consumption when his vehicle had approximately 80,000 miles on the odometer.

150. His vehicle consumes one quart of oil every 200 miles. Mr. Vita changes spark plugs every 500 miles due to fouling from excessive oil consumption.

151. GM failed to disclose the Oil Consumption Defect to Mr. Vita before he purchased his Sierra, despite GM's knowledge of the defect, and Mr. Vita, therefore, purchased his Sierra with the incorrect understanding that it would be a reliable vehicle.

**18. North Carolina**

152. Steven Ehrke is a resident of Spring Hill, Florida.

153. Mr. Ehrke owns a 2013 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine. Mr. Ehrke purchased his Silverado used with 16,844 miles on it in February 2016 from Reed Lallier Chevrolet in Fayetteville, North Carolina.

154. GM failed to disclose the Oil Consumption Defect to Mr. Ehrke before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Ehrke, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**19. Ohio**

155. Thomas Gulling is a resident of Newton Falls, Ohio.

156. Mr. Gulling owns a 2013 Chevrolet Silverado 1500, equipped with a Generation IV Vortec 5300 Engine. Mr. Gulling purchased his Silverado from Doug Chevrolet in Akron, Ohio.

157. GM failed to disclose the Oil Consumption Defect to Mr. Gulling before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Gulling, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

158. Ronald Jones is a resident of Newton Falls, Ohio.

159. Mr. Jones owns a 2013 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine. Mr. Jones purchased his Silverado from Spitzer Chevrolet Lordstown in North Jackson, Ohio.

160. Mr. Jones has noticed that his Silverado consumes an unusually high volume of oil.

161. GM failed to disclose the Oil Consumption Defect to Mr. Jones before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Jones, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**20. Oklahoma**

162. Mike Warpinski is a resident of Lawton, Oklahoma.

163. Mr. Warpinski owns a 2012 Chevrolet Express equipped with a Generation IV Vortec 5300 Engine. Mr. Warpinski purchased his Express used with 24,000 miles in October 2014 from Toyota of Lawton in Lawton, Oklahoma.

164. Mr. Warpinski has noticed that his Express consumes an unusually high volume of oil and

has produced knocking and ticking sounds.  Mr. Warpinski first noticed excessive oil consumption in January 2015.

165.    Mr. Warpinski's vehicle has suffered numerous engine problems, which, upon information and belief, are due to excessive oil consumption and corresponding inadequate engine lubricity.  Mr. Warpinski has experienced engine knocking and ticking, a damaged cam shaft, his engine shaking and running rough, and failed lifters.

166.    Mr. Warpinski presented his vehicle to Classic Lawton Chevrolet (formally Jim Glover Chevrolet) for oil consumption remediation, along with lifter and camshaft replacement. Classic Lawton Chevrolet performed all oil changes subsequent to Mr. Warpinski's first oil consumption inquiry. The dealership never told him of the Oil Consumption Defect, but instead recommended regular oil changes.

167.    Prior to purchasing his Express, Mr. Warpinski visited two GM dealerships (Lawton Chevrolet and David Stanley Chevrolet) and test-drove 2012 and 2013 Express vehicles.  A David Stanley representative stressed the fuel savings offered by the Generation IV Vortec 5300 Engine's Active Fuel Management system.  Mr. Warpinski studied the two GM dealerships' webpages for information relating to the 2012-13 Express vehicles.  The materials promoted GM's warranty, quality, reliability, and dependability, but did not reference the Oil Consumption Defect.

168.    Mr. Warpinski did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption in his vehicle was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

169.    GM failed to disclose the Oil Consumption Defect to Mr. Warpinski before he purchased his Express, despite GM's knowledge of the defect, and Mr. Warpinski, therefore, purchased his Express with the incorrect understanding that it would be a reliable vehicle.

**21.    Oregon**

170.    William Martell is a resident of Klickitat, Washington.

171.    Mr. Martell owns a 2011 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine.  Mr. Martell purchased his Silverado new in 2011 from Bob Stone Chevrolet in The Dalles, Oregon.

172.    Mr. Martell has noticed that his Silverado consumes an unusually high volume of oil.

173. Mr. Martell first noticed excessive oil consumption in 2015 while his vehicle was under warranty.

174. Mr. Martell's vehicle has suffered numerous engine problems while under warranty, which, upon information and belief, are due to excessive oil consumption and corresponding inadequate lubricity. Mr. Martell experienced pre-ignition detonation, valvetrain/lifter tick, spark plug fouling, rough idle, and engine shaking. On multiple occasions, Mr. Martell sought warranty repair at Tonkin Chevrolet (formerly Bob Stone Chevrolet). Tonkin performed an oil consumption test and replaced the vehicle's fouled spark plugs on multiple occasions.

175. Mr. Martell complained about oil consumption to Dalles Chevrolet, but the service manager denied that the vehicle was using excessive oil according to GM standards, and told Mr. Martell that the oil consumption was normal under GM standards. Only after Mr. Martell's warranty expired did the dealership conduct an oil consumption test, in July 2017, which confirmed that his vehicle was using excessive oil.

176. Mr. Martell did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption in his vehicle was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

177. GM failed to disclose the Oil Consumption Defect to Mr. Martell before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Martell, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**22. Pennsylvania**

178. John Graziano is a resident of Lake Ariel, Pennsylvania.

179. Mr. Graziano owns a 2012 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine. Mr. Graziano purchased his Silverado new in December 2011 from Reedman Toll Chevrolet in Philadelphia, Pennsylvania.

180. Mr. Graziano has noticed that his Silverado consumes an unusually high volume of oil. Mr. Graziano complained to Tom Hesser Chevrolet dealership in 2012. The dealership told Mr. Graziano that the oil consumption was normal, and that he should simply bring in his vehicle for regular oil checks.

181. Mr. Graziano did not receive any notification from GM regarding the Oil Consumption

Defect, and could not have known that the oil consumption in his vehicle was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

182. GM failed to disclose the Oil Consumption Defect to Mr. Graziano before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Graziano, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**23. South Carolina**

183. Monteville Sloan, Jr. is a resident of Novato, California.

184. Mr. Sloan owns a 2013 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine. Mr. Sloan purchased his Silverado used with 9,100 miles from Master Chevrolet Cadillac in Aiken, South Carolina in August 2014. He then moved to Novato, California in April 2015.

185. Mr. Sloan, a certified motorcycle mechanic, has noticed that his Silverado consumes an unusually high volume of oil.

186. Mr. Sloan has complained about the excessive oil consumption to Nevado Chevrolet, but the problem has not been fixed.

187. GM failed to disclose the Oil Consumption Defect to Mr. Sloan before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Sloan, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**24. Tennessee**

188. Joshua Byrge is a resident of Maynardville, Tennessee.

189. Mr. Byrge owns a 2012 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine. Mr. Byrge purchased his Silverado used with 44,160 miles in 2016 from Rusty Wallace Honda in Knoxville, Tennessee.

190. In early 2017, Mr. Byrge first noticed that his Silverado consumes an unusually high volume of oil.

191. In February 2017, Mr. Byrge spoke with a technician at Reeder Chevrolet, who informed Mr. Byrge that excessive oil consumption was a widespread issue with respect to Silverados.

192. Before purchasing his vehicle, Mr. Byrge studied Silverado and Sierra vehicles with Generation IV Vortec 5300 Engines on the webpages of Fox Chevrolet and Reeder Chevrolet. The

webpages did not disclose the Oil Consumption Defect.

193. GM failed to disclose the Oil Consumption Defect to Mr. Byrge before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Byrge therefore purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**25. Texas**

194. Rudy Sanchez is a resident of San Antonio, Texas.

195. Mr. Sanchez owns a 2013 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine. Mr. Sanchez purchased his Silverado new in July 2013 new from Freedom Chevrolet in San Antonio, Texas.

196. Mr. Sanchez has noticed that his Silverado consumes an unusually high volume of oil. Mr. Sanchez first noticed excessive oil consumption in January 2017.

197. At 29,000 miles, his vehicle was 4 1/2 quarts low of oil.

198. In 2017, GM replaced a valve cover in his Silverado after he complained about excessive oil consumption.

199. Mr. Sanchez did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption in his vehicle was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

200. GM failed to disclose the Oil Consumption Defect to Mr. Sanchez before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Sanchez, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**26. Virginia**

201. Christopher Thacker is a resident of Charlottesville, Virginia.

202. Mr. Thacker owns a 2010 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine. Mr. Thacker purchased his Silverado used with 128,000 miles in June 2014 from Mallow Ford of Charlottesville in Charlottesville, Virginia.

203. Mr. Thacker has noticed that his Silverado consumes an unusually high volume of oil.

204. Mr. Thacker's vehicle has suffered numerous engine problems, which, upon information and belief, are due to excessive oil consumption and corresponding inadequate engine lubricity. One

week after purchasing his vehicle, Mr. Thacker's vehicle began emitting blue/grey smoke. His vehicle's piston rings are failing. Mr. Thacker regularly replaces spark plugs fouled from excessive oil consumption.

205. In February 2016, Mr. Thacker presented his vehicle to Jim Price Chevrolet for oil consumption testing and remediation. On February 25, 2016, Jim Price Chevrolet informed him that his engine's piston rings were failing and that ring replacement or engine replacement was the only remedy for his engine's oil consumption. Jim Price Chevrolet also informed Mr. Thacker that ring failure was common in 2007-2014 Generation IV Vortec 5300 Engines.

206. Mr. Thacker did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption in his vehicle was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

207. Prior to purchasing his Silverado, Mr. Thacker viewed numerous advertisements regarding the Silverado that emphasized its dependability and reliability. In addition, he viewed the vehicle's CARFAX report. Neither the advertisements nor the CARFAX report revealed the Oil Consumption Defect.

208. GM failed to disclose the Oil Consumption Defect to Mr. Thacker before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Thacker, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**27. Washington**

209. Kelly Harris is a resident of Seattle, Washington.

210. Mr. Harris owns a 2012 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine. Mr. Harris received his Silverado used in 2012 as part of a separation agreement with a previous employer.

211. Mr. Harris first became aware that his Silverado consumes an unusually high volume of oil in late 2015.

212. Mr. Harris has experienced continual engine problems due to excessive oil consumption and corresponding inadequate engine lubricity. Specifically, Mr. Harris has experience continually fouled spark plugs, causing misfiring in his engine. He has needed his spark plugs replaced in this vehicle

on numerous occasions.

213.    Mr. Harris first needed a new spark plug in 2014, but it was not until late 2015 that he became aware that oil consumption was causing problems with his spark plugs.

214.    He has taken his truck to a Chevrolet dealership on multiple occasions due to his spark plug issues, and has been informed that: (a) the spark plugs are oil fouled, (b) he was over a quart low on oil, and (c) the suspected cause of the fouled spark plugs was "oil consumption due to piston rings." Eventually, the Chevrolet dealership told Mr. Harris that he would need to have his engine replaced.

215.    Mr. Harris did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption in his vehicle was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

216.    GM failed to disclose the Oil Consumption Defect to Mr. Harris before he purchased his Silverado, despite GM's knowledge of the defect, and Mr. Harris, therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle.

**28.    West Virginia**

217.    James Robertson is a resident of Inwood, West Virginia.

218.    Mr. Robertson owns a 2010 GMC Sierra equipped with a Generation IV Vortec 5300 Engine.  Mr. Robertson purchased his Sierra new in 2010 from Opequon Motors in Martinsburg, West Virginia.

219.    Mr. Robertson has noticed that his Sierra consumes an unusually high volume of oil.  Mr. Robertson first noticed excessive oil consumption in October or November 2014.  Around that same time period, Mr. Robertson brought his Sierra to Opequon Motors, a GM dealership, who did not disclose the Oil Consumption Defect to Mr. Robertson.

220.    Mr. Robertson did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption in his vehicle was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

221.    Mr. Robertson has had to replace a camshaft lifter due to excessive oil consumption and corresponding inadequate engine lubricity.

222.    GM failed to disclose the Oil Consumption Defect to Mr. Robertson before he purchased

his Sierra, despite GM's knowledge of the defect, and Mr. Robertson, therefore, purchased his Sierra with the incorrect understanding that it would be a reliable vehicle.

**29.     Wisconsin**

223.     Jonas Bednarek is a resident of Verona, Wisconsin.

224.     Mr. Bednarek owns a 2010 Chevrolet Suburban equipped with a Generation IV Vortec 5300 Engine.  Mr. Bednarek purchased his Suburban used with 17,667 miles in 2010, from Ballweg Chevrolet in Middleton, Wisconsin.

225.     Mr. Bednarek has noticed that his Suburban consumes an unusually high volume of oil.

226.     Mr. Bednarek first noticed excessive oil consumption when there were approximately 20,000 miles on his vehicle's odometer.

227.     At various times between 2010 and 2013, Mr. Bednarek reported the oil consumption issues to Symdon Chevrolet in Mr. Horeb, Wisconsin, but was told that the oil consumption was normal and that he should simply add more oil or come in more often for oil changes.  The dealer told Mr. Bednarek that because the oil consumption was normal, there would be no need to perform or seek any warranty work.

228.     Mr. Bednarek has noticed tapping and knocking coming from the engine, which, upon information and belief, is due to excessive oil consumption and corresponding inadequate engine lubricity.

229.     Mr. Bednarek did not receive any notification from GM regarding the Oil Consumption Defect, and could not have known that the oil consumption in his vehicle was the result of the Oil Consumption Defect until after Plaintiffs' counsel's investigation in late 2016.

230.     GM failed to disclose the Oil Consumption Defect to Mr. Bednarek before he purchased his Suburban, despite GM's knowledge of the defect, and Mr. Bednarek, therefore, purchased his Suburban with the incorrect understanding that it would be a reliable vehicle

**B.     Defendant**

231.     General Motors LLC ("GM") is a Delaware limited liability company, with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of Delaware and Michigan.  The sole member and owner of General Motors LLC is General Motors Holding LLC.

General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan.  The sole member and owner of General Motors Holdings LLC is General Motors Company, which is a Delaware corporation, with its principal place of business in the State of Michigan, and is a citizen of Delaware and Michigan.

## IV.    FACTUAL ALLEGATIONS

### A.    Introduction and Background

232.    Beginning with certain model year 2000 vehicles, Old GM introduced its Vortec 5300 engines.  The Vortec 5300 was met with anticipation and fanfare due to its close resemblance to the adored 327ci of the 1960s, which was best known as the powerplant in the Corvette Stingray.

233.    Old GM faced regulatory pressure to increase its fuel economy standards.  In December 2007, Congress passed the Energy Independence and Security Act of 2007, which increased fuel economy standards by 40% by 2020.[3]

234.    For certain model year 2007 vehicles, Old GM introduced its Generation IV Vortec 5300 Engines.

235.    The Generation IV Vortec 5300 Engines suffer from excessive oil consumption and the resulting internal component damage caused by inadequate engine lubricity levels.  This excessive oil consumption problem negates any minor increase in performance associated with those engines.

236.    Old GM continued selling vehicles equipped with the Generation IV Vortec 5300 Engines through 2009.

237.    On June 8, 2009, Old GM filed for protection under Chapter 11 of the United States Bankruptcy Code.

238.    Defendant General Motors LLC ("GM") acquired the assets of Old GM and emerged from bankruptcy on July 10, 2009.  Defendant GM continued manufacturing and selling vehicles under the GMC and Chevrolet brands.

---

[3] *See* "Fact Sheet: Energy Independence and Security Act of 2007" at https://georgewbush-whitehouse.archives.gov/news/releases/2007/12/20071219-1.html

239.    For model years 2010-2014, GM manufactured and sold the Class Vehicles – each of which came equipped with the defective Generation IV Vortec 5300 Engine.

**B.    The Class Vehicles Suffer from Excessive Oil Consumption.**

**1.    The Piston Rings in the Class Vehicles Lead to Oil Consumption and Engine Damage.**

240.    The primary cause of the Oil Consumption Defect is GM's installation of piston rings that do not apply sufficient tension to prevent oil from being consumed in the combustion chamber, fouling spark plugs, and creating harmful carbon buildup in the pistons and cylinders.

241.    In the Generation IV Vortec 5300 Engines, as is normal in automobile engines, pistons move vigorously up and down inside of cylinders, as shown below.



242.    In order for the engine to run effectively and without causing engine damage, such as heat and friction wear, the pistons and cylinders require a thin film of oil between the opposing metal surfaces. The oil reduces friction and heat, prevents surface scarring, and helps the moving components slide freely past each other.

243.    To keep oil in the crankcase, and to prevent oil from traveling around the pistons and into the combustion chamber, pistons are fitted with compression and oil control rings (collectively, "piston rings"), as shown below.  Rings must also withstand combustion pressures and hold combustion gases in the combustion chambers, keeping the gases out of the crankcase.

244. Unfortunately for purchasers and lessees of the Class Vehicles, the piston rings that GM installed in the Generation IV Vortec 5300 Engines fail to achieve their intended purpose of keeping oil in the crankcase and out of the combustion chamber. Further, the rings fail to achieve their intended purpose of trapping combustion gases in the combustion chamber and out of the crankcase. Specifically, the rings do not maintain sufficient tension, with respect to their interaction with the cylinder walls, to keep oil from seeping past. This results in excessive oil consumption and, at least, the following problems.

245. First, in the Class Vehicles, oil travels around the piston rings and reaches the combustion chamber, where it is burned during the engines' power stroke, thereby reducing the quantity of oil in the vehicle, reducing engine lubricity, and increasing the risk of correspondent engine damage.

246. Second, the defective piston rings allow for oil to constantly foul the spark plugs in the Class Vehicles. Spark plug electrodes, protrude into the combustion chamber and generate the ignition spark. Importantly, the electrodes must be dry and free of debris to fire properly. When oil migrates into the combustion chamber in the Class Vehicles, the oil coats the spark plugs' electrodes and either weakens or altogether disables their firing function.

247. Third, the oil that passes around the rings in the Class Vehicles, and that is not burned in the combustion chamber, gathers and hardens, creating carbon buildup. Due to the excessive carbon buildup in the combustion chamber and on top of the pistons, the Class Vehicles suffer from pre-ignition detonation, or "spark knock" as it is commonly called. Pre-ignition detonation disrupts the proper seating of the piston rings in their respective grooves, which causes them to wear out as they grind against the cylinder walls improperly. This results in the rings not sealing properly and thus allows for even more oil consumption. Pre-ignition detonation also vaporizes the cylinder wall oil film, pushing it past the

rings and into the crankcase where it is vacuumed into the intake manifold via the PCV system.

248.    When GM introduced its fifth-generation Vortec 5300 engines for its model year 2014 vehicles, GM remedied the Oil Consumption Defect by improving piston rings oil and combustion gas control by decreasing the ring end gaps, adding a protective coating increasing the ring radial thickness, and increasing the ring height.

**2.    The AFM System in the Class Vehicles Contributes to Oil Consumption and Engine Damage.**

249.    GM's AFM system, installed in each of the Class Vehicles, contributes to oil consumption and engine damage by overwhelming the independently defective piston rings.

250.    The AFM system's intended function is to deactivate four of the eight engine cylinders for fuel-saving purposes in low-load operating conditions.  The AFM system includes an oil pressure relief valve that GM installed in the crankcase beneath the crankshaft.

251.    The AFM system's oil pressure relief valve sprays oil directly into the piston skirts (undersides) in quantities that the rings cannot control.  The defective rings allow excessive quantities of oil in the combustion chambers where it is burned.  This leads to excessive oil loss.

252.    In addition, the excessive oil spray collects on the piston ring surfaces forming carbon buildup.  Carbon buildup on the piston rings interferes with the rings' seating in their grooves, and thus interferes with the rings' ability to seal out oil.  Once the rings lose proper groove seating, they become misaligned with the cylinder bores. Immediate and aggressive ring deterioration occurs as the fragile rings scrape against the harder steel cylinder bores at unintended angles.

253.    GM acknowledged that the AFM system's oil pressure relief valve contributed to oil consumption and carbon buildup on the piston rings in TSB# 10-06-001, dated August 24, 2010.  In that TSB, GM instructs its dealers to install a deflector over the AFM oil pressure relief valve.  This purported fix, however, fails to address the fundamental problem of the defective piston rings, and thus does not resolve the Oil Consumption Defect.   Indeed, in this TSB, GM recognizes that piston and ring replacement is the ultimate fix.

**3. The PCV System in the Class Vehicles Contributes to Oil Consumption and Engine Damage.**

254. GM's PCV system, as installed in each of the Class Vehicles, also contributes to oil consumption and engine damage by vacuuming oil from the valvetrain.

255. The PCV system's intended purpose is to vent valvetrain gas pressures and recirculate that gas pressure into the intake manifold. The intake manifold distributes fresh air pulled through the intake filter, and recirculated air vented from the valvetrain, to the engines' combustion chambers. PCV systems are not intended to vacuum oil from the valvetrain.

256. In the Class Vehicles, however, the PCV system vacuums oil from the valvetrain and feeds it into the intake manifold runners and ultimately into the combustion chambers. By vacuuming oil from the valvetrain, the PCV system results in increased oil consumption, carbon buildup and the associated pre-ignition detonation, ring wear, ring failure, ring buildup, spark plug fouling, combustion chamber oil burn, low lubricity levels, internal component wear and component failure.

257. GM acknowledged that its PCV system contributed to oil consumption in TSB #10-06-008, dated March 7, 2011. In that TSB, GM instructs dealers to "replace the left rocker arm cover with GM P/N 12642655. This rocker arm cover has relocated PCV drain holes that prevents PCV pullover into the intake manifold." This purported fix does not address the fundamental problem of the defective piston rings, and thus does not resolve the Oil Consumption Defect. Indeed, in this TSB, GM recognizes that piston and ring replacement is the ultimate fix.

**4. GM's Oil Life Monitoring System Exacerbates the Oil Loss and Engine Damage Problems Caused by the Oil Consumption Defect.**

258. GM's Oil Life Monitoring System, installed in each of the Class Vehicles, exacerbates the oil loss and engine damage problems caused by the Oil Consumption Defect, because the Oil Life Monitoring Stystem fails to advise drivers of a decreased oil level in their Class Vehicle, even at critically low levels.

259. The Oil Life Monitoring System alerts the driver to the estimated percentage of oil life left before an oil change is required. With respect to the Oil Life Monitoring System, "oil life" means the quality of the engine oil, *not* the oil level. The system uses varying factors to estimate oil health, such as heat cycles and engine running conditions. The Oil Life Monitoring System does not, however, alert

drivers to low oil levels or oil loss, thereby exacerbating the Oil Consumption Defect by failing to alert owners or lessees of their Class Vehicles' oil loss until it is much too late.

**5.      The Class Vehicles Do Not Include a Warning System that Protects Drivers From the Effects of the Oil Consumption Defect.**

260.    In addition to the Oil Life Motoring System (which does not monitor oil level), the Class Vehicles include an oil pressure gauge on the dash and an oil canister image that will ostensibly illuminate when a vehicle is low on oil.  But that's not what it does in the Class Vehicles

261.    Indeed, the oil pressure gauge in the Class Vehicles fails provide any indication as to when a vehicle is dangerously low on oil.  The oil pressure gauges in the Class Vehicles either have no indicator that indicates when oil pressure is too low, or they contain a single red hash mark.  To the extent that there is a red hash mark on the oil pressure gauge, it is at the zero PSI mark.  Thus, the oil pressure gauges in the Class Vehicles do not indicate a dangerously low oil level until the vehicles have no oil pressure. This is well beyond the point at which a lack of oil, and oil pressure, will damage or destroy an engine.

262.    Further, the oil canister symbol will not illuminate, and the Class Vehicles will not provide any low oil pressure warning, until well past the time when the Class Vehicles are critically low on oil. According to GM documentation, the minimum oil specification for the Class Vehicles is 24 PSI.  Based on testing performed on a Class Vehicle, the oil canister symbol does not illuminate and a low oil pressure warning is not displayed until the oil pressure drops below six PSI.  An engine generating six PSI of oil pressure will suffer immediate internal destruction if put under operating loads.  This means that the Class Vehicles communicate no visible or audible warnings of destructive oil pressure levels until the engines internally seize or disintegrate.  Because the Class Vehicles provide no warnings prior to engine seizure or disintegration, they put occupants' safety at risk.

263.    Furthermore, even if the Class Vehicles did adequately warn drivers of dangerously low oil conditions (which they do not), any such warnings would do nothing to prevent the full scope of the harms caused by the Oil Consumption Defect.  Because the Oil Consumption Defect results in oil migrating past the piston rings, it results in carbon buildup on the ring and cylinder surfaces and fouls spark plugs, even if drivers diligently, and constantly, top-off their oil.  Once the spark plugs foul, hazardous engine misfire and engine shutdown events are unavoidable.

**C. The Oil Consumption Defect Within the Class Vehicles Has Caused Excessive Oil Loss, Which Can Lead to Engine Damage.**

264. The Oil Consumption Defect in the Class Vehicles results in excessive oil consumption, pre-ignition detonation, ring wear, ring fouling, ring failure, and spark plug fouling. It also results in inadequate engine lubricity, which creates increased friction, heat, metal on metal contact, and resulting engine damage. That means that each Class Vehicle has suffered, and will continue to suffer, internally lubricated component wear and failure.

265. The internal engine components subject to wear and failure include: pistons, cylinder walls, rings, valves, valve guides, valve stem seals, lifters, push rods, camshafts, rockers, bearings, piston rods, wrist pins, crankshafts, and timing chain components.

266. Due to the Oil Consumption Defect, all of the Class Vehicles have suffered, and will continue to suffer, excessive oil consumption, creating metal-on-metal friction, heat levels that far exceed GM's specifications, and resulting engine damage and rapid destruction.

267. Excessive friction and heat expansion will wear the internal steel components, sending steel shavings into the crankcase. The steel shavings travel through the oil passages and inevitably become lodged in tight spaces, where they cut into component surfaces moving against them.

268. Once the internal components are scarred and/or worn, they cannot be repaired and must be replaced. The friction and heat expansion damage caused by the Oil Consumption Defect is irreversible.

**D. The Oil Consumption Defect Within the Class Vehicles Presents an Unreasonable Safety Risk.**

269. As GM acknowledges, low oil conditions, such as those that can result from the Oil Consumption Defect, present dangerous safety hazards to the driver, other passengers of the Class Vehicles, and the public.

270. With insufficient oil and lubricity, the engines in the Class Vehicles will overheat and potentially catch fire. For this reason, GM warns in the manuals for the Class Vehicles: "Do not keep driving if the oil pressure is low. The engine can become so hot that it catches fire. Someone could be burned."

271. Low oil conditions are also unsafe because, if the engine experiences enough damage, the Class Vehicles' engines will seize and the Class Vehicles will shut down unexpectedly, which could cause an accident or leave drivers and passengers stranded in an unsafe situation. GM also warns against this possibility in the manuals for the Class Vehicles when it states: "If you drive the vehicle while the engine oil pressure is low, severe engine damage may occur. If a low oil pressure warning appears on the Driver Information Center (DIC), stop the vehicle as soon as possible."

272. The Oil Consumption Defect also causes an unreasonable safety risk because excessive oil getting past the piston rings and fouling spark plugs causes engine misfires and engine shutdown that can leave drivers stranded and without the use of their vehicle. Further, the ignition failure caused by fouled spark plugs results in sluggish throttle response which places occupants in harm's way as they interact with other traffic. A Class Vehicle suffering from weakened ignition function cannot accelerate as GM intended. A Class Vehicle suffering from total ignition failure will not even run. Both conditions place occupants in any number of hazardous conditions that would not exist but for the Oil Consumption Defect.

273. As explained above, drivers are not protected from these safety risks by any timely warning from their Class Vehicles that their oil levels are too low. As confirmed in testing, the Class Vehicles do not provide any warning of low oil levels until the oil has already reached a level that is concurrent with engine misfire and shutdown and therefore unsafe.

**E. GM's Knowledge of the Oil Consumption Defect**

274. GM's awareness of the Oil Consumption Defect is evident from the fact that GM abandoned the design flaws causing excessive oil consumption in the Class Vehicles in its redesigned Generation V Vortec 5300 Engines. GM's redesign of the defective Generation IV Vortec 5300 engines began as early as May 2011.[4]

275. Further, as shown below, excessive oil loss has been a common complaint among drivers of vehicles fitted with the Generation IV Vortec 5300 Engines, dating back to vehicles manufactured by

[4] Mike Levine, *Inside GM's State-of-the-Art Powertrain Engineering Center*, PICKUPTRUCKS.COM, May 17, 2011, http://news.pickuptrucks.com/2011/05/inside-gms-state-of-the-art-powertrain-engineering-center-.html.

Old GM. For example, at www.carcomplaints.com, there are posts from as early as June 2008 regarding excessive oil consumption problems with the 2007 Chevrolet Silverado with the Generation IV Vortec 5300 engine. Indeed, an online search reveals an extraordinary number of complaints regarding excessive oil consumption in Generation IV Vortec 5300 Engines, including many from prior to 2009.

276. Knowledge derived from complaints received by Old GM can be imputed to Defendant GM, at least insofar as that knowledge was in the possession of an Old GM employee who continued employment at New GM or contained in a file transferred from Old GM to New GM. *See In re Motors Liquidation Co.*, 541 B.R. 104, 108 (Bankr. S.D.N.Y. 2015). As recognized by the Second Circuit, Defendant GM immediately took over the business of Old GM, without any "reorganization" as traditionally takes place in the case of a bankruptcy. *Elliot v. GM LLC*, 829 F.3d 135, 145-46 (2d Cir. 2016). Thus, upon information and belief, Defendant GM, at its inception, also had knowledge of the Oil Consumption Defect from complaints from drivers of vehicles with the Generation IV Vortec 5300 engines.

277. Moreover, as discussed further below, complaints regarding excessive oil consumption in vehicles with the Generation IV Vortec 5300 engines continued following the commencement of Defendant GM's business in 2009.

278. Faced with the fact that vehicles with Generation IV Vortec 5300 engines were suffering excessive oil and engine damage due to the Oil Consumption Defect, GM issued multiple Technical Service Bulletins addressing the oil consumption issue ("TSBs").

279. The TSBs stated that the oil loss in the vehicles with Generation IV Vortec 5300 engines could be caused by two conditions: (a) oil pulled through the PCV system; or (b) oil spray that is discharged from the AFM system's pressure relief valve within the crankcase. The TSBs suggested fixes for each of these issues, but recognized that neither fix may solve the oil loss problem. Indeed, as noted in the online complaints cited below, these fixes do not solve the oil loss problem. ***Rather, as stated in the TSBs, the ultimate fix for the oil consumption problem was the replacement of the piston***

***assemblies***.[5] Upon information and belief, the first version of these TSBs was released on August 24, 2010.[6] These TSBs continued to be issued through, at least, November 26, 2014 – thereby covering the entirety of the Class Period.[7]

280. Despite this knowledge, GM took no steps to remedy this issue, leaving Plaintiffs and the other Class Members with knowingly defective Class Vehicles.

**F. Consumers Repeatedly Complained About Excessive Oil Consumption and Engine Damage in the Class Vehicles.**

281. Numerous complaints have been filed with the National Highway Traffic Safety Administration ("NHTSA") regarding excessive oil loss and resultant engine damage in the Class Vehicles. By way of example:

- On September 14, 2014, a consumer reported an excessive oil consumption problem with a 2010 Chevrolet Silverado 1500:

  > Excessive oil consumption caused spark plugs to prematurely fail causing the engine to misfire and run rough. . . . Initial repairs did not correct the oil consumption problem (1/2 quart burned in approximately 1,000 – 2,000 miles) . . . . I was told this was "normal" according to General Motors' standards.

  NHTSA ID number: 10633824.

- On March 31, 2015, a consumer reported an excessive oil consumption problem with a 2011 Chevrolet Avalanche:

  > At 40000 we noticed we were having issues with my Avalanche burning oil. When we asked the tech at Chevy he told me that was normal for the newer engines to burn oil, at 130,000 miles we started having problems with the sparkplug fouling out . . . . At 180,000 mile and only four years old we had to replace the engine after replacing the sparkplug and wire 3 times. . . .

  NHTSA ID Number: 10852819.

---

[5] *See* TSB No. 10-06-01-008G: Engine Oil Consumption on Aluminum Block/Iron Block Engines with Active Fuel Management.

[6] *See* http://www.gm-trucks.com/forums/topic/119095-update/

[7] *See* http://gm.oemdtc.com/683/engine-oil-consumption-engine-oil-consumption-on-aluminum-blockiron-block-engines-with-active-fuel-management-afm-2007-2015-cadillac-chevrolet-gmc-pontiac/2.

- On January 12, 2016, a consumer reported an excessive oil consumption problem with a 2010 Chevrolet Suburban: "The vehicle is consuming excessive amounts of engine oil and fouling spark plugs." NHTSA ID Number: 10819877.
- On February 4, 2016, a consumer reported an excessive oil consumption problem with a 2011 Chevrolet Suburban: "Excessive oil consumption that GM refuses to fix under warranty." NHTSA ID Number: 10826046.

282. Consumer complaints about excessive oil consumption and resultant engine damage in the Generation IV Vortec 5300 Engines long predated the Class Vehicles. Indeed, numerous consumer complaints were filed with NHTSA regarding excessive oil loss and resultant engine damage within pre-2010 vehicles manufactured by Old GM and equipped with the Generation IV Vortec 5300 Engines. By way of example:

- A consumer reported an excessive oil consumption problem with a 2007 Chevrolet Silverado 1500: "The contact stated that the engine was consuming excessive oil. The vehicle was taken to the dealer, who stated that the vehicle was operating to standard and that it was normal for a vehicle to burn oil between maintenance. The manufacturer was made aware of the failure. The vehicle was not repaired. . . . The consumer stated the dealer stated this is a malfunction with the oil consumption. The manufacturer denies any malfunctions." NHTSA ID Number: 10498188.
- A consumer reported an excessive oil consumption problem with a 2007 GMC Yukon: "The contact stated that the vehicle would continue to drive sluggish and consume excessive amounts of oil. The vehicle was not repaired. Manufacturer was made aware of the failure." NHTSA ID Number: 10854334.

283. Owners of the Class Vehicles, and their Old GM-manufactured predecessors with the Generation IV Vortec 5300 Engines, have also posted an extraordinary number of online complaints about excessive oil consumption with the Generation IV Vortec 5300 Engines.

284. For example, on www.carcomplaints.com, there are 68 complaints regarding excessive oil consumption from owners of 2007 Chevrolet Silverados equipped with the Generation IV Vortec 5300.[8] Excessive oil consumption is the most commonly listed problem with the 2007 Silverado. These complaints include:

---

[8] Consumer Reviews of 2007 Chevrolet Silverado, available at: http://www.carcomplaints.com/Chevrolet/Silverado/2007/engine/excessive_oil_consumption.shtml

- "Must add ½ quart of oil 1800-200 miles after each oil change and then again each 700 miles until new oil change." (June 15, 2009)
- "[A] quart of oil every 800 miles. Now the lifters clack every start up until they get oil. Now I am hearing a low knock, main bearing maybe." (Jan. 1, 2010)
- "I started to have problems with my new 2007 Chevy Silverado in 2010 at 45,000 miles. I had multiple fixes attempted but it continued to burn oil. They performed a repair consisting of changing the valves, pistons, and rings which cost $1800. . . . The truck is now at 164,000 miles and I am burning through a quart of oil a week." (Mar. 1, 2016)
- "DO NOT purchase a 2007 Chevrolet Silverado unless you want to spend more time putting oil in the engine than you do driving the vehicle itself. I love Chevrolet Silverados but I am extremely disappointed with this issue because there isn't a fix." (June 1, 2014)
- "The 5.3 uses a quart of oil every 1000 miles since it was new." (July 1, 2008)
- "From day one this truck has burned about a quart an oil change, and no, this isn't normal. Traction control problems, engine reduced power, this problem cripples the vehicle." (Jan. 1, 2007)
- "The 2007 Silverado 1500 5.3L I have has been using oil and like everyone else I got the run around from the dealership." (Jan. 2, 2010)
- "They Chevy dealer had it in the shop for 3 days . . yes it was under warranty still, however they did not fix the damn problem!!! . . . I complained once again. . . . I was told I had to take it to a Chevy dealer for oil change so it could be tracked, so I did their solution . . straight from the shop manager was, 'Chevy had sent emails to them regarding this problem and they were recommending you get your oil changed every 2000 miles!!! This is fraud boys." (June 15, 2010)

285. Further, on www.carcomplaints.com, there are 33 complaints regarding excessive oil consumption from owners of 2008 Chevrolet Silverados equipped with the Generation IV Vortec 5300.[9] Excessive oil consumption is the most commonly listed problem with the 2008 Silverado. Exemplary complaints include:

- "Purchased my truck brand new in 2008. Started using oil at 60,000 miles. Mentioned this several times & GM says this is normal. Now, it is requiring at least a quart of oil to be added at 2,000 miles between oil changes. I've also had to change plugs & wires due to this. I have always maintained my truck & looks better than most out there. Trying to make a decision on what I should do. I feel GM should take care of this because it has been a known problem from 2007. . . ." (June 2, 2017)

[9] Consumer Reviews of 2008 Chevrolet Silverado, available at: https://www.carcomplaints.com/Chevrolet/Silverado/2008/engine/excessive_oil_consumption.shtml

- "I started to notice the problem when there was oil missing at my first oil change in 2011. After that every 3000 miles I was adding two quarts of oil between changes. So from now on I'm adding a quart of oil approximately every 1000 miles, that's a serious problem." (Feb. 1, 2011)

- "Burning oil at 3 quarts between oil changes and starting to hear a rattle in the engine" (May 15, 2014)

- 'My 2008 Silverado has been using oil at a rate of 2-3 quarts between oil changes. . . . The latest check today now puts it at about a quart every 1000 miles. . . . . I bought this truck new to be my keep til I die truck. Now I am concerned that keeping it – even if GM repairs it – will be nothing but trouble later." (Oct. 2, 2012).

- "Been a Chevy buyer all my life (47 years . . . 10 vehicles). Bought my 2008 Silverado 1500 LT1 brand new and always got regular maintenance and oil changes. No issues at all until Check Engine Light comes one . . . LOW OIL PRESSURE. I pull over, check oil level and THERE IS LITERALLY NO OIL ON THE STICK…BONE DRY. I limp to the nearest gas station and it took 4.5 quarts to bring the oil level to normal. UNBELIEVABLE considering I had oil & filter change 2 weeks prior and had no leaks." (Sept. 22, 2011).

286. Further, on www.carcomplaints.com, there are 43 complaints regarding excessive oil consumption from owners of 2009 Chevrolet Silverados equipped with the Generation IV Vortec 5300.[10] Excessive oil consumption is the most commonly listed problem with the 2009 Silverado. Exemplary complaints include:

- "09 Silverado 5.3 burning 1 quart of oil in 1000 miles is ridiculous." (Dec. 6, 2016)

- "Upset about 2009 Silverado oil consumption, no recalls from Chevy to take care of this problem, no solution when talked with Chevy dealer, they claimed a qt every 1000 miles was normal, very disappointed with GM." (April 4, 2012)

- "Very high oil consumption on 2009 silverado. No signs of leaking." (April 16, 2016)

- "I've always been a General Motors truck buyer. I'm totally crippled (handicapped) I have five back fractures that are inoperable. . . . I bought a new, 4 miles on it, 2009 Chevy Silverado 5.3L LTZ package. After my third oil & filter change, I was told by a service mechanic that my engine oil was very low. He was surprised because he knows how often he changes my oil, and that he saw no leaks. I had him check every 400 miles or so. He told me I might have a serious problem. I'm blowing out approximately 2 quarts of oil every 600 miles. Since that time, I no longer drive my truck. I can't afford to break down, while using a wheelchair. . . . So I'm not the proud owner (paid for) of a 2009 Silverado LTZ that I won't trust to drive. I'm now a recluse in my home." (Nov. 3, 2015)

[10] Consumer Reviews of 2009 Chevrolet Silverado, available at: https://www.carcomplaints.com/Chevrolet/Silverado/2009/engine/excessive_oil_consumption.shtml

- "I had to stop on the side of the road due to the Low Oil Pressure light coming on. I found no oil on the dipstick and had to walk to the store to get 4 quarts of oil. This was within 3000 miles of an oil change. The dealership did an oil consumption analysis and stated that it was normal for this engine to use 1 quart of oil every thousand miles." (Jan. 18, 2013)

- "Truck uses excessive oil, a quart every 1000 miles. . . . gone back to dealer 3 times to no avail, they tell me my oil is within operating range even tho I'm down a quart . . . . . they tell me to come back every 1000 miles. . . ." (Aug. 1, 2009)

- "I own three 2009's. all have the exact same oil consumption problem. They are located in three different cities and I have gotten three different stories from the dealers until recently. All are making us record oil consumption on a weekly basis. One tried the shield the recall refers to but it did not help." (Feb. 4, 2010)

- "Just got oil changed after 3k miles and only 1.5 liters was left in the engine. There are no leaks and no smoke." (Nov. 4, 2011).

- "I've always had a Chevy, and I usually have minimal problems but having to pour 4 quarts of oil in between oil changes is annoying to say the least. Especially since this is my first show room vehicle, the other 3 were used." (Nov. 10, 2010)

287. Further, on www.carcomplaints.com, there are 12 complaints regarding excessive oil consumption from owners of 2010 Chevrolet Silverados, equipped with the Generation IV Vortec 5300.[11] Such complaints include:

- "I began noticing the issue with excessive loss of oil when the vehicle had around 25,000+/- miles on it. I had to add 2-3 quarts of oil approx. every 1000-1500 miles." (April 2, 2015)

- "Bought my 2010 Silverado 4WD with the 5.2 (used) and had it for about 15 months. . . . . I went to start it one morning and it was acting like maybe a bad fuel filter (rough running and not getting enough fuel). Took it to the dealership where I purchased it and the mechanic after an hour or so came out holding a couple of spark plugs. Claimed it was the #1 and #7 plugs and it appeared to be carbon up and fouled. Note: these plugs only had about 20k miles on them. Mechanic went on to say that they see this A LOT with the 5.3 and that the only true fix is to replace the rings and pistons which will cost somewhere nere $4700. . . .Bottom line here is, Chevrolet has known about the 5.3 oil consumption issues for years and has done NOTHING to correct it and these so called service contracts that cover "EVERYTHING" except engine problems caused by carbon buildup, sludge, stuck rings AND oil consumption - the average owner has no idea ANY of this is happening within their engine until it fails. . . . ." (June 1, 2016)

- '[A]fter 100,000 miles an 2 coil pacts and 5 spark plugs I still have miss fire an heavy oil consumption. The local GM says I need new pistons an rings that will cost between 4,000 and 5,000 dollars to fix it." (May 5, 2016)

[11] Consumer Reviews of 2010 Chevrolet Silverado, available at: https://www.carcomplaints.com/Chevrolet/Silverado/2010/engine/excessive_oil_consumption.shtml

- "I had an oil change less than 3000 miles ago. I checked the oil level after the oil change and it was right where it should be. I was driving down the highway the other day and the check engine light came on. The oil pressure gauge dropped below normal, vertical position. Note: the 'Check Oil' light never came on! I pulled into a gas station and checked te oil Nothing was on the dipstick. Added a quart. Nothing. I finally had oil appear on the dipstick after adding another ½ quart. . . . It took 3 full quarts to bring it up to normal oil level. On the 'Oil Life Remaining' information panel it says 12%. So, less than 3000 miles and the truck needed 3 quarts of oil. Something is definitely wrong!" (Jan. 31, 2015)

- "Truck has been in and out of the dealership 18 times regarding ticking in the motor, excessive oil consumption and blue smoke on start up." (Feb. 9, 2015)

288. Further, on www.carcomplaints.com, there are 180 complaints regarding excessive oil consumption from owners of 2007 Chevrolet Suburbans, equipped with the Generation IV Vortec 5300.[12] Excessive oil consumption is the most commonly listed problem with the 2007 Suburban. Exemplary complaints include:

- "I have had this vehicle into GM with this issue at least 3 times. Once at about 35,000 miles, again at about 50,000 miles, and again at about 70,000 miles. I have up as they told me they would not replace the engine. I have been a loyal GM owner for 34 years. I haven't ever had an engine start using oil like this until it was leaking it or had over 100,000 miles. Something is wrong and GM should do something about it." (July 28, 2008).

- "The engine burns through oil before it is time for another oil change and we only drive back and forth to work about 20 miles per day!!! We must have oil on hand at all times!!! This is ridiculous! Certainly not worth the money you pay for the SUV!" (Oct. 9, 2015)

- "Apparently we are having the same issue that most 2007 Suburban owners are having with excessive oil consumption. Currently 1 quart every 500-1000 miles. What a black eye for Chevy! I didn't realize the extent of the issue until I started researching online and found volumes of complaints." (Mar. 15, 2013)

- "All I can say about the 2007 Suburban is it is an oil sucking money pit!!! . . . It started sucking down a quart of oil every 2000 miles after we got to 85000 miles. We had to have two cylinders repaired and the cam lifter. Also, the rings and a bunch of other stuff I can't even remember. . . . The dealership was less than helpful." (Dec. 30, 2011)

- "The truck started using about 1.5 quarts of oil per month depending on the amount of driving. All of a sudden the engine light came on and lights on the dash. The vehicle was miss firing and running rough, so much so you could not drive it. . . . It turned out to be two plugs fowled with oil. (This has happened several more times.) . . . . I was told the only way to cure this is engine replacement. . . . I think

[12] Consumer Reviews of 2007 Chevrolet Suburban, available at: https://www.carcomplaints.com/Chevrolet/Suburban/2007/engine/excessive_oil_consumption.shtml

GM should step up and admit that they have a chronic problem with this model engine." (Sept. 30, 2011)

- "Like many others, we are experiencing the same Excessive Oil Consumption with our LTZ. We can drive it for approx. 800 miles and yup, you guessed it, we need to put at least a quart of oil in it. I have had numerous situations where I will check the dip stick and it is BONE dry. This is clearly unacceptable and it is a shame that GM is not stepping up to the plate to create a fix." (Mar. 18, 2011)

- "General Motors should stand behind there products. They have proved to just ignore the complaints and give you the run around." (Sept. 2, 2010)

- "We were having excessive oil issues almost immediately. We took it in, and the local dealership said they were aware of the issue, and they had a fix coming and would let us know when it was available. We took it back in just before 100,000 and were told the same thing. Now 60,000 miles later, not only do we have a large oil spring on our drive way, and blue smoke when we start it, but the engine has a terrible knocking. We've been adding oil on a much too regular basis. I think we were sold a lemon, and they did not want to deal with [it]." (June 1, 2010).

289.    Further, on www.carcomplaints.com, there are 34 complaints regarding excessive oil consumption from owners of 2008 Chevrolet Suburbans, equipped with the Generation IV Vortec 5300.[13] Excessive oil consumption is the most commonly listed problem with the 2008 Suburban. Exemplary complaints include:

- "From what I can gather, the 5.3 L V8 engines in a lot of Suburbans over many years all have this problem of 2-3 quarts of oil being consumed between oil changes. This is no not normal. I've never had any car do that before in 30 years of owning cars. GM need to address this issue." (April 10, 2015)

- "At approximately 40,000 to 50,000 miles started to notice my oil consumption rising. . . . At about 80,000 miles it was up to a quart every 1,000 miles . . . .That's when I found many other owners with the same problem and discovered the two GM recommended fixes. . . . Both GM Service Bulletin fixes implemented, end of problem, right??? Wishful thinking. Still consumes a quart every 2,000 miles or less." (Jan. 1, 2010)

- "As with many others with the 5.3L AFM engine, mine is burning 1 qt every 800 miles or so. Spark plugs gummed up with oil, running rough, and even a smell of burn oil." (Jan. 27, 2014)

- "Oil consumption issues are all over the internet and market in 2008 Suburbans. We bought ours new and have taken it to Chevy dealers for all service and scheduled maintenance and continue to do so. Around 54,000 miles we started to see excessive oil consumption. Chevy has had service bulleting after service bulletin concerning this issue. Band-aid after band-aid by GM has not fixed the problem. Now we deal with Stabilitrak and Traction Control warning lights,

---

[13] Consumer Reviews of 2008 Chevrolet Suburban, available at:
https://www.carcomplaints.com/Chevrolet/Suburban/2008/engine/excessive_oil_consumption.shtml

engine lights, low oil pressure warnings, and fouled spark plugs all tied to this unidentified unresolved issue on a regular basis.  As always, GM puts another band aid on the problem, tells me that its normal for this engine to burn a quart of oil every'2,000' miles (event though its really 1,200). . . ." (Oct. 10, 2010).

- "2008 Suburban is going through excessive amounts of oil.  Plan on a visit tomorrow to my local Chevy dealership about the problem." (May 1, 2010)

- "I purchased my 2008 Chevy Suburban LT March 2008.  I was taking my wife out on our anniversary when my engine light came on (90 miles from home).  I pulled over checked the oil and there was none showing on the stick.  I added 2 qts then and another 2 qts once I got home the next day. . . . Dealership is stating GM is not letting them know how to fix the problem. " (Aug. 6, 2010)

290.    Further, on www.carcomplaints.com, there are seventeen complaints regarding excessive oil consumption from owners of 2009 Chevrolet Suburbans, equipped with the Generation IV Vortec 5300.[14]   Excessive oil consumption is the most commonly listed problem with the 2009 Suburban. Exemplary complaints include:

- "excessive oil consumption, 3 QUART LOW WHEN OIL CHANGE OR SOMETIMES BONE DRY" (June, 21, 2012)

- "Engine uses more oil than gas."  (Jan. 18, 2016)

- "Chevrolet is highly aware of this problem.  I have been dealing with this for over 50k miles.  Never should a consumer be expected to pay for a known manufacturer problem but that is exactly what is being expected of me."  (Dec. 2, 2015)

- "My wife's 2009 Suburban began to lose/use oil at an unbelievable rate at about 30,000 miles without evidence of oil loss or burn.  2 of the 3 times, no check oil or warning proceeded the more serious symptoms of loud engine tapping and black smoke.  Dealer has no answer thus far."  (Nov. 28, 2012)

291.    Further, on www.carcomplaints.com, there are 68 complaints regarding excessive oil consumption from owners of 2007 Chevrolet Avalanches, equipped with the Generation IV Vortec 5300.[15]   Excessive oil consumption is the most commonly listed problem with the 2007 Avalanche. Exemplary complaints include:

- "Our avalanche needs at least a quart of oil every 1000 miles.  We obviously carry oil . . . ." (Jan. 6, 2014)

---

[14] Consumer Reviews of 2009 Chevrolet Suburban, available at:
https://www.carcomplaints.com/Chevrolet/Suburban/2009/engine/excessive_oil_consumption.shtml

[15] Consumer Reviews of 2007 Chevrolet Avalanche, available at:
https://www.carcomplaints.com/Chevrolet/Avalanche/2007/engine/excessive_oil_consumption.shtml

- "Definitely burning oil! I'm not sure exactly the issue but it seems like a lot of other owners are having the same problem! I would gladly endorse any legal action taken to correct the problem with this engine!" (Aug. 10, 2015)

- "Like others with the 2007 5.3L engine, my Avalanche starting going through oil at an average of one quart every 1,100 miles at about 30,000 miles. The dealer told me 'normal' oil consumption was up to one quart every 1,800 miles. After monitoring it for oil consumption, they added the oil deflector and it decreased oil consumption to a quart every 2,000 miles for about 6,000 miles. I am back to one quart every 1,100 miles. It rolled 103,000 miles today and there has been a noticeable engine tick for at least 50,000 miles." (Oct. 1, 2008)

- "I have a 2007 Chevy Avalanche with 65,000 miles on it now. I took it in at 38,000 miles when I started noticing that it was burning oil and the oil light was coming on at anywhere between 1500 & 2500 miles after my oil change. The dealership took a look at it and said that I needed to do an oil consumption test. Well, I did that, they told me that the factory didn't put on oil deflector, and that this would fix my problem. So I had them (under warranty) install the oil deflector. Sure enough, this didn't fix it. So I took it back in, and I was told that I would have to do another oil consumption test. So I did that. . . . Turns out that there is a problem with the installation of the piston rings." (Nov. 21, 2011)

- "Our truck is using oil. We have been through the GM oil watch program and was told nothing is wrong. Last week were told the truck does have a problem, duh!" (Jan. 1, 2009)

- "This truck has been burning oil about 1 ½ years after I bought it and has continued to do so faster and faster had to add 2 quarts 500 miles before my last oil change was even due. Dealer stated that there was some oil coming from spark plug number 7 so he cleaned it and put it back in. Oil consumption test is now in progress." (Oct. 8, 2009)

- "My 2007 Chev. Avalanche is using over 2 qts of oil every 2500 miles. I had the Dealership run there oil consumption test also." (Jan. 2, 2010)

- "I am experiencing excessive oil consumption and the dealership installed a deflector in the oil plan. Along with the oil consumption, I also have what sounds like Piston Slap when it started for the first time everyday. . . ." (Mar. 9, 2010)

- "THIS OIL CONSUMPTION STUFF IS RIDICULOUS!!! I take my Avalanche in 5 times for them to do the oil consumption test only to find out it has the same problem everyone else seems to have." (Sept. 8, 2010)

292. Further, on www.carcomplaints.com, there are thirteen complaints regarding excessive oil consumption from owners of 2008 Chevrolet Avalanches, equipped with the Generation IV Vortec 5300.[16] Excessive oil consumption is the most commonly listed problem with the 2008 Avalanche. Exemplary complaints include:

[16] Consumer Reviews of 2009 Chevrolet Suburban, available at: https://www.carcomplaints.com/Chevrolet/Avalanche/2008/engine/excessive_oil_consumption.shtml

- "This is the second time this has happened to me in less than six months where the vehicle has warned me to shut the car off because of the oil pressure." (Jan. 21, 2016)

- "Dealing with Chevy and the dealership is the worst part. Neither will accept the fact that several others have the same issue. Neither will budge at all on parts cost." (May 1, 2015)

- "The fact that this seems to be a common issue and known by GM is extremely frustrating. I have noticed that my oil consumption has been getting worse over the last year, and then the engine light came on followed by the oil pressure dropping to 9 and getting a warning to shut off the engine. Had the oil changed and the lights went off and seemed to be okay, but then a few days later, while on the highway, the engine started making a loud banging noise, oil pressure dropped off again, and lights came back on. Had to have it towed to a repair shop on a Saturday, now awaiting the wonderful news on how much this is going to cost me." (Mar. 21, 2015)

- "During one of my oil changes, at around 30,000 miles, I noticed that there was only approx. 3.5 quarts of oil remaining when the pan and filter were drained. I began checking the oil every 1,000 and 1,500 miles between the next two oil changes. At every check the oil level was at or over 1qt low and oil was added . . . . I took the truck to the dealer and showed them my records. After having the truck for a couple of day's the service manager called and said that they would be installing some sort of baffle in the oil pan and would be cleaning carbon from the cylinders. When the work was complete and I picked up the truck I was told to keep checking for oil consumption and maintain a log. The 1st check I made was approx. 1300 miles after the work was performed and the engine was over 1qt low. . . . Well they decided to install new rings and pistons." (April 1, 2011)

293. Further, on www.carcomplaints.com, there are 48 complaints regarding excessive oil consumption from owners of 2007 Chevrolet Tahoes, equipped with the Generation IV Vortec 5300.[17] Excessive oil consumption is the most commonly listed engine problem with the 2007 Tahoe. Such complaints include:

- "Another complaint about the 2007 Chevy Tahoe excessive oil consumption issue. I took it in to an auto shop who told me they could 'fix' it and charged me &800-$1000. They said it was a 'known issue' but was not a recall. The issue continues and I'm out the cost! Plus I have to put 1-2 quarts in every 1500-2000 miles." (Aug. 30, 2012)

- "A month after oil change this vehicle needs 2 quarts of oil! Dealer says it needs pistons and rings and that it's a shame." (Feb. 16, 2015)

[17] Consumer Reviews of 2007 Chevrolet Tahoe, available at: https://www.carcomplaints.com/Chevrolet/Tahoe/2007/engine/excessive_oil_consumption.shtml

- "2007 Tahoe . . . THERE NEEDS TO BE A LAWSUIT.  Chevy knows about the problem of consumption of too much oil and they do NOTHING about it. . . . something needs to be done about this!!!! (Jan. 2, 2012)

294.     Moreover, on www.carcomplaints.com, there are ten complaints regarding excessive oil consumption from owners of 2008 Chevrolet Tahoes, equipped with the Generation IV Vortec 5300.[18] Excessive oil consumption is the most commonly listed engine problem with the 2008 Tahoe.  Such complaints include:

- "I have owned Chevys for 42 years, never has one of them burned as much oil as this one.  I have been around cars most of my life, currently I own a service station where we see a lot of late model Chevys using oil. . . . I am told by my Chevy dealer they have replaced pistons to correct this problem.  I feel Chevrolet should recall this problem . . . ." (Dec. 30, 2015)

- "I have had this Chevy Tahoe for 3 years now, I have had it serviced regularly without problem or so I thought.  One morning my wife calls and says there was smoke coming out the exhaust I thought it might have been condensation.  I drove it the next week and when I started it, it blew out a white smoke so I knew something was wrong.  I checked the oil and it wouldn't even show on the dip stick . . . . I took to chevy dealership and now I have to take it back every 1000 miles for them to check how much oil it is using.  They have not told me anything to fix it no recalls or anything." (Sept. 26, 2011)

- "We have 2 chevy Tahoe LTs with extras and both started to use oil, 2-4 qrts between oil changes.  This is a bunch of bull and they better step up." (Jan 2, 2012).

295.     Further, on www.carcomplaints.com, there are fifteen complaints regarding excessive oil consumption from owners of 2009 Chevrolet Tahoes, equipped with the Generation IV Vortec 5300.[19] Excessive oil consumption is the most commonly listed engine problem with the 2009 Tahoe.  Such complaints include:

- "What a load of crap!  This is most disturbing.  I have a 2009 Tahoe. . . . I just received the news that the pistons and rings will need to be replaced, due to oil leaking by.  The engine light came on for the first time, and the car was sluggish at stops.  We took it to the dealership right away. . . . What I got hung up on was the statement made by the service manager; 'this is a known problem, and not specific to MY car." (May 23, 2017)

---

[18] Consumer Reviews of 2008 Chevrolet Tahoe, available at:
https://www.carcomplaints.com/Chevrolet/Tahoe/2008/engine/excessive_oil_consumption.shtml

[19] Consumer Reviews of 2008 Chevrolet Tahoe, available at:
https://www.carcomplaints.com/Chevrolet/Tahoe/2008/engine/excessive_oil_consumption.shtml

- "On going issue, 5.3l engine has excessive oil consumption ¾ to 1 quart every 800-1000 miles, seems to be getting worse. There are NO signs of leakage, average ½ a quart to a tank of fuel, also feels sluggish and seems to miss at times but no check engine light." (Sept. 20, 2014)

296. Also, on www.carcomplaints.com, there are 22 complaints regarding excessive oil consumption from owners of 2007 GMC Yukons and Yukon XLs, equipped with the Generation IV Vortec 5300.[20] Excessive oil consumption is the most commonly listed engine problem with the 2007 Yukon. These complaints include:

- "Engine is making rattle noises with full oil in sump. Also using oil at a high rate. Sounds like lifters or valves are shot. Heard this is a GM defect that has been known for these types engines in 2007 models. Any idea on fix would be great." (Oct. 1, 2016)

- "I feel the same pain as everyone who has posted. It was using 2qts of oil between changes. Took it into local dealer in Little Rock and kept getting the song of, that is the way it was designed. . . . I guess that is the truth but it was a baaaad design. Eventually it keep losing oil pressure, changed out the 25 cent filter, changed out numerous oil sensors. The engine one day starts running extremely rough, so I took it to a local shop and they begin investigating. They find that GM has a suggested fix but not a recall. . . . . On the top of the engine there needs to be a new valve cover installed to prevent oil leaking into the idle cylinders. . . . On the bottom a deflector to prevent excessive oil splatter needs to be installed. . . . Now the kicker is that GM does not say that all the work will fix your engine but that it might improve it. . . . So I spent $3000 got it running and am still adding about 1 qt of oil every 3k miles." (May 2, 2011)

- "I just want to say this is my second 07 model with this problem. Silverado 1500 is just as bad. After many oil consumption test I found thru my local dealer that the rings are leaking allowing oil to be burned. Changing the baffle in the oil pan, seals, etc. did nothing. . . . .Yet, silly me I bought an 07 Yukon. Needless to say it's the same annoying cycle, except worse. It burns 4 quarts per 2000 miles!!!. . . . I want to warn that the more you add the more it burns. You may eventually get a check engine light and notice blue smoke out the exhaust pipes. The check engine light usually is a signal for the throttle body in this situation. If oil begins to puddle it's going to cause slow to start, hesitate accceleration, RPM's that idle high, less fuel efficiency, and eventually a blown motor." (Aug. 2, 2013)

- "This car is the biggest POS I have ever owned!!!!! . . . . This vehicle has spent more time in the service department than it has on the road. . . . Despite 100's of attempts to contact GM about the excessive oil consumption issue I've been told by the dealer that there is nothing else that they can do, they have done everything that GM requires them to do to fix the issue. . . but it hasn't fixed anything. . . . Now, I have 135k on my car . . . and my engine is toast!! It needs to be replace . . .no way around it. It ALWAYS stinks of burning oil . . . . ." (Oct. 12, 2011)

[20] Consumer Reviews of 2007 GMC Yukon, available at: https://www.carcomplaints.com/GMC/Yukon/2007/engine/excessive_oil_consumption.shtml

- "GM is aware of the problem. Fix it. 2-4 qts of oil every 3000 miles or so is not acceptable." (Feb. 1, 2011)

297. Further, on www.carcomplaints.com, there are nine complaints regarding excessive oil consumption from owners of the 2007 GMC Sierra 1500, equipped with the Generation IV Vortec 5300.[21] Such complaints include:

- "Oil consumption issue like many others, now my rings are bad and I have been told it is because oil consumption issue. (Oct. 15, 2008)
- "Infamous 5.3 burning oil . . . lots of it. 1 quart every 2-3000 miles. . . . . Seems like a lot of 5.3 owners are having this issue and not help from a dealer . . . every dealer I talked to says its normal." (May 20, 2015)
- "I reported the issues while the truck was still covered under my extended warranty. The dealership ignored it and told me it was normal. Now that the warranty has expired, the issue is much worse and neither the dealership nor the ESP wants to be held completely responsible." (May 24, 2012).

298. There is a multitude of additional excessive oil consumption complaints on www.carcomplaints.com with respect to other Class Vehicles. These complaints include:

- "My pickup guzzles oil. When I took it to the Dealer they said they were aware of the problem. They said they had three band-aide solutions to try and if that did not work they replace the engine. . . . My complaint is that I purchased this pickup new and never received any recall or notice of any kind to let me know of this issue so I could deal with it before my warranty expired. I have used the prescribed oil and had the oil changed every 5,000 miles. On the current oil change alone I have used nearly 2 quarts in the first 1500 miles! I bought this truck based on the advertising that they were the best built and longest lasting trucks with the best gas mileage. . . ." (2013 Chevrolet Silverado 1500, Nov. 1, 2016)
- "Took in for oil change, discovered almost no oil in engine. Low oil light never came on at all. Watching closely since then and have to add a quart on oil between 750 and 1000 miles." (2012 Chevrolet Silverado 1500, Aug. 25, 2014).
- "2011 Suburban. Oil consumption started 18-24 months ago. Twice #1 spark plug founded. Went through all the fixes. Had rings replaced, 8000 miles ago." (2011 Chevrolet Suburban, May 1, 2014)
- "Bought truck in Nov. 2016 have put 3 ½ quarts of oil so far. No leaks and is not smoking." (2012 Chevrolet Suburban, Feb. 9, 2017)
- "Excessive oil usage that leads to spark plug issues. My vehicle is only 2 years old. At approximately 85000 miles on a car that is properly maintained it suddenly started to burn out spark plugs. After numerous spark plug burns out and service appointments I was told that the engine is damaged because the number 1 cylinder was cracked and opening the engine was the only way to confirm how significant

[21] Consumer Reviews of 2007 GMC Sierra 1500, available at https://www.carcomplaints.com/GMC/Sierra_1500/2007/engine/excessive_oil_consumption.shtml

the issue was. . . . Overview of the many issues: Excessive oil usage spark plugs burning out or failing sluggish engine clicking noise in engine." (2013 Chevrolet Suburban, Oct. 1, 2014)

- "Purchased a new, 2011 Chevy Avalanche LTZ. Beautiful vehicle and expected the same longevity I had with my 1998 Burb. Since my past two oil changes, I'm not sure that is going to happen. Around 16-17K miles, I took in for a standard oil change. Dealer mentioned I was a quart and a half low!. New car burning this kind of oil is unheard of in my book. . . . Started up yesterday, all the dash lights/warning start flashing, engine light comes on, truck is running like crap. Headed to the dealer and wasn't really sure I'd make it. Dropped it, expressed my concern around oil again but told them to focus on the bigger issue. They called back in a couple hours and told me the cylinder walls were scored and that they were ordering a new engine!" (2011 Chevrolet Avalanche, Dec. 1, 2013)

- "GM says the new pistons and rings will solve the oil consumption." (2012 Chevrolet Avalanche, July 1, 2016)

- "Just met with GM's District After Sales Manager and my GMC dealer's Service Manager regarding excessive oil consumption by my GMC Sierra 1500 4-WD Crew Cab with 37000 miles. As you might guess, nothing accomplished. . . . Early 2012, I noticed the dipstick was dry and took truck to dealer for oil change. Closely monitored oil use thereafter and discovered need to topoff with more than a quart every 200 miles during normal driving . . . This should not be considered normal!" (2011 GMC Sierra 1500, Jan. 1, 2014)

- "My 2009 Chevy Tahoe started consuming a lot of oil at about 68,000 miles. It uses up about 2 + quarts every 2000 miles. Chevy said that's normal . . . really? Well when you don't want to take responsibility for your design mistakes than we just call it normal and it goes away and we don't have to fix it." ((2009 Chevrolet Tahoe, Aug. 4, 2014)

299. Class Vehicle owners have also extensively complained of excessive oil consumption on other GM forums. For example, on the forum at www.GM-Trucks.com a thread was started on July 8, 2011 entitled "Anyone Still Having Oil Consumption Problems on the Afm 5.3."[22] The thread discusses oil consumption issues in the Generation IV Vortec 5300 Engines. That thread includes the following exemplary comments:

- "I had the deflector installed first . . . didn't help. Then they replaced all the piston rings. They say that is the issue. It has only been 600 miles and I haven't seen any oil lose, of course they over filled it by a good ½ quart." (July 10, 2011)

- "Talked with a friend who is SM at GMC dealer just last week on this subject. New engine is far down the road right now. They will install new rings and pistons before that ever happens. He said they did one and so far things are looking better. He said the GM service advisors have their hands tied on what they can do, they

---

[22] GM-Trucks.com, available at http://www.gm-trucks.com/forums/topic/134276-anyone-still-having-oil-consumption-problems-on-the-afm-53/

> have to follow what GM wants them to do and replacing the engine is not one of the options they have at the moment. That's a decision the area service rep makes and as you can imagine, they are not going to make any snap decisions along those lines soon." (July 11, 2011)

300. On the forum at wwww.gminsidenews.com, a thread was started on October 29, 2011 entitled "My truck has the infamous 5.3 oil consumption problem."[23] The thread discusses oil consumption problems with the Generation IV Vortec 5300 Engines. That thread includes the following exemplary comments:

- "I actually brought my truck in for service to have the front end checked, as it makes a tremendous amount of racket on cold mornings." (Oct. 29, 2011)
- "The AFM system is a joke on these engines. we see issues with them on a regular basis. Which would be daily. Anyways, 2 different fixes. Depending on what they do, you will either have the pistons and rings replaced, and possible have AFM lifters replaced as well, and a new VLOM, and oil deflector installed, or, they will do the piston soaking with Top engine cleaner, and install the oil deflector. More than likely, probably remove engine, replaced rings and pistons. Depending on which cylinder is the issue, may need lifters as well. Im sure they will replace the VLOM. Oil doesn't have any affect on it, so conventional or synthetic doesn't matter. They burn oil wither way. One thing I would do, always change oil every 3000 miles. Regardless of oil life monitor. Do not follow the oil life monitor. It is inaccurate. Be glad yours doesnt knock, see a few in for that problem as well, or misfires. Camshaft failure, lifters, etc." (Oct. 29, 2011)
- "Ok, I too have the oil consumption in an 08 5.3l aluminum block. I bought it used at 112k. I was told it had this issue and it had been 'repaired' at 100k by replacing the left valve cover. They said it fixed 90% of them, so I bought it. Dealership did a fresh oil change when I picked it up. 1600 miles later, I'm a qt & ½ low . . . .With all this being said, I called GMC and explained what had happened, so they sent me back to dealership to get another oil change and sart oil consumption test. So, that's where we are. I decided to pull that #7 plug today, badly coated with carbon, not to the point of miss, but well on its way." (Dec. 2, 2012)

301. On the forum at www.gmtruckclub.com, a thread was started on April 11, 2012, entitled "Oil Consumption Issue."[24] On information and belief, the thread discusses oil consumption issues in the Generation IV Vortec 5300 Engines. The thread includes the following exemplary comments:

- "So a couple months before I left in February, I noticed my truck was starting to get low on oil rather quickly. I didn't find a leak anywhere, but my pressure kept getting really low and I'd have to add it in." (April 11, 2012)

---

[23] http://www.gminsidenews.com/forums/f53/my-truck-has-infamous-5-3l-oil-consumption-problem-106584/

[24] http://www.gmtruckclub.com/forum/threads/oil-consumption-issue.88684/

- "My story.  Standard 'low oil pressure, turn off engine.'  However, when I went to check the oil there was not a drop on the dipstick.  I put in at least 3 qts of oil.  No kidding. So I take it in and they are starting the 'oil consumption test.'  This dealers service manager actually told me that it is normal for this engine to burn 1 qt of oil for the first 3000 miles.  Thereafter 1 qt of oil for each additional 1000 miles. . . . I am at 65000 miles and have never experienced oil consumption like this." (April 29, 2012)

302.    On the forum at www.gmtruckclub.com, a thread was started on June 26, 2010, entitled "5.3L's that eat oil."[25]  The thread discusses oil consumption issues in the Generation IV Vortec 5300 Engines.  The thread includes the following exemplary comments:

- "Anyone else have one of the 5.3L's that likes to eat oil? . . . I have a 2007 that has eaten 2 quarts in less than 2,000 miles.  I took it back to the dealership as I have just bought the truck May 5th.  The service rep told me that I was not the only one that was having the problem and that GM was working on a fix."  (June 26, 201)

- "Yes, I am having this same problem with my 2009 Silverado Crew Cab 4X4 with 5.3L with 36,000 miles on it.  Mine just started smoking really bad whenever I would start it after it would sit there for a couple hours.  And we aren't talking about a little bit of smoke . . . it was a lot.  So much so that everybody would always stop and look to see what was on fire.  And you could smell the oil burning if you were anywhere close to it."  (July 27, 2012)

- "Mine uses 2 to 3 quarts between changes."  (July 30, 2012)

303.    On the forum at www.gmtruckclub.com, a thread was started on December 4, 2012 entitled "Should i Trade my 2010 cc Z71 in re oil consumption."[26]  The thread discusses oil consumption issues in the Generation IV Vortec 5300 Engines.   The thread includes the following exemplary comments:

- "started having the elusive oil burning issue with my 2010 Chevy Crew Cab [Silverado] z71 5.3 aluminum block with the 6 speed and AFM.  A fouled no 1 cylinder spark plug left me on the side of the road at 42,000 miles.  Did oil consumption test and was 'within spec' at 1.5 quarts low during allotted time.  Raised hell and am currently getting valve cover, oil deflector – blah blah blah done today.  I've read just about every post on every gm forum on this but nothing has been stated within the past 6 mos on actually fixing the issues. I know most ppl are having the rings/pistons changes."  (Dec. 4, 2012)

---

[25] http://www.gmtruckclub.com/forum/threads/5-3ls-that-eat-oil.46470/

[26] http://www.gmtruckclub.com/forum/threads/should-i-trade-my-2010-cc-z71-in-re-oil-consumption.107325/#post-524945

- "I have had the exact same problem on my 2010 with the 5.3 and 6 speed. Thanks to the poster who posted the service bulletin. I'm going to take it in next I'm at the dealership." (Dec. 9, 2012)

304. On the forum at www.silveradosierra.,com, a thread was started on January 12, 2012 entitled "5.3 engine issues with fouled plugs."[27] The thread discusses oil consumption issues in the Generation IV Vortec 5300 Engines. The thread includes the following exemplary comment:

- "2010 Silverado CrewCab 5.3/6 speed transmission. The problem started in May 2011, started running rough and then check engine, service stabilitrak lights came on. Dealer said had a number 7 cylinder misfire condition and fouled plug. Replaced plugs and back in business. Oct 2011 began running rough again and check engine light came on. Dealer said had misfire and replaced all the spark plugs. Nov 211, oil level low light comes on, Dealer says there is a tech bulletin to add oil splash due to the AFM relief valve misdirecting oil and allowing oil to bypass rings and burn up. Bulletin completed and now beginning to run rough yet again. From a start it surges and sometimes after turning feels like the throttle goes flat. Gas pedal in the same position, just feels like lost power." (Jan. 12, 2012)

305. In contrast to the plethora of vociferous complaints regarding excessive oil consumption in the Class Vehicles, consumers have not had the same complaints regarding competitor vehicles. A search on www.carcomplaints.com reveals the following:

- Model year 2007-2013 Ford F-150 – zero complaints regarding excessive oil consumption.
- Model year 2007-2013 Dodge Ram – three complaints regarding excessive oil consumption
- Model year 2007-2013 Ford Expedition – zero complaints regarding excessive oil consumption.
- Model year 2007-2013 Toyota Sequoia – zero complaints regarding excessive oil consumption.
- Model year 2007-2013 Ford Explorer – zero complaints regarding excessive oil consumption.
- Model year 2007-2013 Nissan Titan – one complaint regarding excessive oil consumption.
- Model year 2007-2013 Honda Ridgeline – five complaints regarding excessive oil consumption.

[27] http://www.silveradosierra.com/vortec-5-3l-v8/5-3-engine-issues-with-fouled-plugs-t8725.html

306. The unusual number of complaints regarding excessive oil consumption in the Class Vehicles thus reveals that GM was aware of the Oil Consumption Defect. Indeed, GM has known about this defect in its Generation IV Vortec 5300 Engines before, during, and after it sold and leased the Class Vehicles to Plaintiffs and the other Class members.

**G. GM Trumpeted the Performance of the Generation IV Vortec 5300 Engines and Continuously Proclaimed That the Class Vehicles Were Dependable and of the Highest Quality, Concealing and Omitting the Oil Consumption Defect.**

307. GM extensively advertised the performance benefits of the Generation IV Vortec 5300 Engines within the Class Vehicles. At all times relevant to this action, GM omitted and/or concealed the Oil Consumption Defect. Indeed, *at no point* during the time period relevant to this action did GM inform buyers and/or lessees of the Class Vehicles that the Generation IV Vortec 5300 Engines in the Class Vehicles suffered from the Oil Consumption Defect that led to significant oil consumption and resultant engine damage.

308. Likewise, GM repeatedly told consumers that the Class Vehicles were dependable, long-lasting, and of the highest quality. In so doing, GM led consumers to believe that the Class Vehicles would be free from defects that result in excessive oil loss and engine damage.

309. In its brochures and advertisements for the Class Vehicles, GM consistently touted the performance benefits of the Generation IV Vortec 5300 Engines.

310. For example, GM's brochure for the 2013 Chevrolet Silverado advertises: "THE MOST POWERFUL V8 ENGINES IN SILVERADO HISTORY" and claims that the 5.3L engine "offers V8 fuel efficiency that's unsurpassed in its class."[28]

311. Similarly, GM's brochure for the 2013 Chevrolet Tahoe advertises: "Great Power Without Sacrifice," and "fuel economy its competitors can't beat."[29]

---

[28] 2013 Chevrolet Silverado brochure, available at https://www.chevrolet.com/content/dam/Chevrolet/northamerica/usa/nscwebsite/en/Home/Help%20Center/Download%20a%20Brochure/02_PDFs/MY13%20Silverado%201500%20eBrochure.pdf

[29] 2013 Chevrolet Tahoe brochure, available at https://www.chevrolet.com/content/dam/Chevrolet/northamerica/usa/nscwebsite/en/Home/Help%20Center/Download%20a%20Brochure/02_PDFs/MY13%20Tahoe-Suburban%20eBrochure.pdf

312. Likewise, GM's brochure for the 2010 Chevrolet Colorado advertises that: "Chevy Colorado is up to the challenge with reliability and strength that delivers on a dollar. . . . The available 5.3L V8 engine pumps out 300 horsepower and has better fuel economy than Dodge Dakota. . . . Most important, every Colorado has the endurance and dependability you expect from a Chevy truck."[30]

313. GM's brochure for the 2012 GMC Sierra advertises that: "[T]rue craftsmanship is timeless. . . . That's the same attitude that's built into every Sierra. It's why Sierra offers you over 300 horsepower and 22 EPA-estimated highway miles per gallon in the same engine – V-8 fuel economy that no other competitor can beat. It's why Sierra offers advanced technology like Active Fuel Management, maximizing your engine's performance to give you power and efficiency as you need it. . . .When you need to rely on something to keep your life on course, there is no substitute for professional grade engineering. GMC Sierra."[31]

314. GM's brochure for the 2011 Chevrolet Silverado states, "Silverado – the most dependable, long-lasting full size pickups on the road." It goes on to say, "There are three stages of safety. Silverado takes every one as seriously as you do."[32]

315. On August 29, 2011, GM's website advertised: "Chevrolet provides consumers with fuel-efficient, safe and reliable vehicles that deliver high quality, expressive design, spirited performance and value."[33]

316. One online ad for "GM certified" used vehicles that ran through April 5, 2010 stated that "GM certified means no worries."

317. In April 2010, General Motors Company Chairman and CEO Ed Whitacre proclaimed in a commercial that GM was "designing, building, and selling the best cars in the world."

318. A radio ad that ran during the time period relevant to this action stated that "[a]t GM,

[30] 2010 Chevrolet Colorado brochure, available at http://www.auto-brochures.com/makes/Chevrolet/Colorado/Chevrolet_US%20Colorado_2010.pdf

[31] 2012 GMC Sierra brochure, available at http://www.auto-brochures.com/makes/GMC/Sierra/GMC_US%20Sierra_2012.pdf

[32] https://www.auto-brochures.com/makes/Chevrolet/HHR/Chevrolet_US%20HHR_2010.pdf.

[33] https://media.gm.com/media/us/en/gm/news.detail/content/Pages/news/us/en/2014/Jul/0731-mpg.

building quality cars is the most important thing we can do."

319. On November 10, 2010, GM published a video that told consumers that GM actually prevents any defects from reaching consumers. The video, entitled "Andy Danko: The White Glove Quality Check," explains that there are "quality processes in the plant that prevent any defects from getting out." The video also promoted the ideal that, when a customer buys a GM vehicle, they "drive it down the road and they never go back to the dealer."[34]

320. No GM brochure, advertisement, or other marketing materials for or relating to the Class vehicles alerted customers to the Oil Consumption Defect and the problems arising therefrom. Indeed, all such materials omitted the problem in all respects.

321. Moreover, in its public statements, GM consistently proclaimed that the Class Vehicles were of the highest quality.

322. In its 2010 Annual Report, GM told consumers that it built the world's best vehicles:

> We truly are building a new GM, from the inside out. Our vision is clear: to design, build, and sell the world's best vehicles . . . . Our plan is to steadily invest in creating world-class vehicles, which will continuously drive our cycle of great design, high quality and higher profitability.[35]

323. Likewise, in its 2010 Annual Report, GM represented that it had a "world-class lineup" of vehicles.[36]

324. In a "Letter to Stockholders" contained in its 2011 Annual Report, GM noted that its brand had grown in value and that it designed the "World's Best Vehicles":

> Design, Build and Sell the World's Best Vehicles
>
> This pillar is intended to keep the customer at the center of everything we do, and success is pretty easy to define. It means creating vehicles that people desire, value and are proud

[34] https://www.youtube.com/watch?v=JRFO8UzoNho&list=UUxN-Csvy_9sveql5HJviDjA.

[35] GM 2010 Annual Report at 2.

[36] GM 2010 Annual Report at 12-13.

> to own. When we get this right, it transforms our reputation and the company's bottom line.[37]

325. In its 2012 Annual Report, GM boasted that:

> What is immutable is our focus on the customer, which requires us to go from "good" today to "great" in everything we do, including product design, initial quality, durability, and service after the sale.[38]

326. In its 2012 Annual Report, GM represented that product quality was a key focus:

> Product quality and long-term durability are two other areas that demand our unrelenting attention, even though we are doing well on key measures.[39]

327. GM consistently promoted all its vehicles as reliable, and presented itself as a responsible manufacturer that stands behind GM-branded vehicles after they are sold.

328. GM knowingly omitted and concealed information about material defects in the Class Vehicles from the driving public, including Plaintiffs and the other Class members, thereby allowing unsuspecting vehicle owners and lessees to continue unknowingly driving defective vehicles that were of diminished value and bound to cause costly problems.

**H. Pre-Filing Notice**

329. Donald Ludington, individually and on behalf of the other Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranties, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM never responded to this letter.

330. Further, in accordance with California Civil Code Section 1782, Plaintiffs' counsel sent a certified letter to GM on November 23, 2016, notifying GM of violations of the California Consumer Legal Remedies Act through its failure to disclose the Oil Consumption Defect. The letter was sent on behalf of Plaintiff Siqueiros and the other members of the California Class.

331. By a letter dated November 29, 2016, GM acknowledged receipt of the November 23,

[37] GM 2011 Annual Report at 2

[38] GM 2012 Annual Report at 12.

[39] GM 2012 Annual Report at 10.

2016 letter, and assigned Plaintiff Siqueiros's case file to its Early Resolution Program. In its November 29, 2016 letter, GM did not commit to provide any remedy for the Oil Consumption Defect within Plaintiff Siqueiros's Class Vehicle, did not state that it has taken or will take any actions to identify or notify consumers similarly situated to Plaintiff Siqueiros, and did not commit to ceasing from engaging in the conduct complained of in Plaintiffs' November 23, 2016 letter. Indeed, in its November 29, 2016 letter, GM did not even acknowledge the Oil Consumption Defect.

## V. TOLLING OF THE STATUTES OF LIMITATION

### A. Discovery Rule Tolling

332. Plaintiffs could not have discovered through the exercise of reasonable diligence that their Class Vehicles were defective within the time period of any applicable statutes of limitation.

333. Neither Plaintiffs nor the other Class members knew or could have known that the Class Vehicles are equipped with Generation IV Vortec 5300 Engines with the Oil Consumption Defect, which causes those engines to consume oil at an abnormally high rate and to sustain engine damage resulting therefrom, until after Plaintiffs' counsel's investigation into the Oil Consumption Defect in late 2016.

### B. Fraudulent Concealment Tolling

334. Throughout the time period relevant to this action, GM concealed from and failed to disclose to Plaintiffs and the other Class members vital information about the Oil Consumption Defect described herein.

335. Indeed, GM kept Plaintiffs and the other Class members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class members could have discovered the defect, even upon reasonable exercise of diligence.

336. Specifically, throughout the Class Period, GM has been aware that the Generation IV Vortec 5300 Engines it designed, manufactured, and installed in the Class Vehicles contained the Oil Consumption Defect, resulting in excessive oil loss and engine damage.

337. Despite its knowledge of the defect, GM failed to disclose and concealed, and continues to conceal, this critical information from Plaintiffs and the other Class members, even though, at any point in time, it could have done so through individual correspondence, media release, or by other means.

338. GM affirmatively and actively concealed the Oil Consumption Defect when it issued the

TSBs, described above, that instructed dealers to offer purported repairs that it knew would not cure the Oil Consumption Defect.

339. Plaintiffs and the other Class members justifiably relied on GM to disclose the Oil Consumption Defect in the Class Vehicles that they purchased or leased, because that defect was hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class members.

340. Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class members have sustained as a result of the defect, by virtue of the fraudulent concealment doctrine.

**C. Estoppel**

341. GM was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the defective Generation IV Vortec 5300 Engines.

342. GM knowingly concealed the true nature, quality, and character of the defective Generation IV Vortec 5300 Engines from consumers.

343. Based on the foregoing, GM is estopped from relying on any statutes of limitations in defense of this action.

## VI. CLASS ACTION ALLEGATIONS

344. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

345. Plaintiffs seek to represent a class ("the Nationwide Class") defined as:

> All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased in the United States.

346. Plaintiffs also respectively seek to represent the following statewide classes ("the Statewide Classes") defined as follows:

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of California ("the California Class").
- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Alabama ("the Alabama Class").
- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Arkansas ("the Arkansas Class").
- All current and former owners or lessees of a Class Vehicle (as defined herein) that

was purchased or leased in the State Delaware ("the Delaware Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Florida ("the Florida Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Georgia ("the Georgia Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Idaho ("the Idaho Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Illinois ("the Illinois Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Kansas ("the Kansas Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Kentucky ("the Kentucky Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Louisiana ("the Louisiana Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Massachusetts ("the Massachusetts Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Minnesota ("the Minnesota Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Mississippi ("the Mississippi Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Missouri ("the Missouri Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of New Jersey ("the New Jersey Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of New Mexico ("the New Mexico Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of New York ("the New York Class")

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of North Carolina ("the North Carolina Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Ohio ("the Ohio Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Oklahoma ("the Oklahoma Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Oregon ("the Oregon Class").


- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Pennsylvania ("the Pennsylvania Class").

- All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of South Carolina ("the South Carolina Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Tennessee ("the Tennessee Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Texas ("the Texas Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Virginia ("the Virginia Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Washington ("the Washington Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of West Virginia ("the West Virginia Class").

- All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Wisconsin ("the Wisconsin Class").

347.    Excluded from each of the Nationwide and Statewide Classes are Defendant General Motors LLC and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case.  Plaintiffs reserve the right to modify or amend these Nationwide and Statewide Class definitions, as appropriate, during the course of this litigation.

348.    This action has been brought and may properly be maintained on behalf of the Nationwide and Statewide Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

349.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**   The members of the Nationwide and Statewide Classes are so numerous and geographically dispersed that individual joinder of all class members is impracticable.  While Plaintiffs are informed and believe that there are not less than two million members of the Nationwide and Statewide Classes, the precise number of Nationwide and Statewide Class is unknown to Plaintiffs, but may be ascertained from GM's books and records. Nationwide and Statewide Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

350.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Nationwide and Statewide Class members, including, without limitation:

    a.  whether GM engaged in the conduct alleged herein;

    b.  whether GM's alleged conduct violates applicable law;

    c.  whether GM designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

    d.  whether GM misled Nationwide and Statewide Class members about the quality of the Generation IV Vortec 5300 Engines in the Class Vehicles;

    e.  whether the Generation IV Vortec 5300 Engines contain the Oil Consumption Defect alleged herein;

    f.  whether GM had actual or imputed knowledge about the alleged defect but failed to disclose it to Plaintiffs and the other Nationwide and Statewide Class members;

    g.  whether GM's omissions and concealment regarding the quality of the Class Vehicles were likely to deceive Statewide Class members in violation of the state consumer protection statutes alleged herein;

    h.  whether GM breached its express warranty to the Nationwide and Statewide Class members with respect to the Class Vehicles;

    i.  whether Nationwide and Statewide Class members overpaid for their Class Vehicles as a result of the defect alleged herein;

    j.  whether Nationwide and Statewide Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

    k.  the amount and nature of relief to be awarded to Plaintiffs and the other Nationwide and Statewide Class members.

351.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Nationwide and Statewide Class members' claims because Plaintiffs and the Nationwide and Statewide Class members purchased or leased Class Vehicles that contain defective Generation IV Vortec

5300 Engines. Neither Plaintiffs nor the other Nationwide and Statewide Class Members would have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines. Plaintiffs and the other Nationwide and Statewide Class members suffered damages as a direct proximate result of the same wrongful practices in which GM engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Nationwide and Statewide Class members.

352. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Nationwide and Statewide Classes that they respectively seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Nationwide and Statewide Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

353. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** GM has acted or refused to act on grounds generally applicable to Plaintiffs and the other Nationwide and Statewide Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Nationwide and Statewide Class members as a whole.

354. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Nationwide and Statewide Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against GM, so it would be impracticable for the Nationwide and Statewide Class members to individually seek redress for GM's wrongful conduct. Even if the Nationwide and Statewide Class members could afford litigation the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII. CLAIMS FOR RELIEF

### A. Claim Brought on Behalf of the Nationwide Class

**COUNT 1**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT[40]**
**15 U.S.C. §§ 2301, *et seq.***

355. Plaintiffs[41] repeat and reallege paragraphs 1-354 as if fully set forth herein.

356. Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

357. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332(a) and (d).

358. Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

359. GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

360. The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

361. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

362. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM

[40] In light of the Court's ruling that Plaintiffs' allegations concerning breach of express warranty do not fall within the terms of GM's warranty as to materials and workmanship (Dkt. No. 62 at 14-15), Plaintiffs include those claims in this Third Amended Class Action Complaint strictly to preserve them for purposes of appeal. These Counts include Counts 1 (as to express warranty only, not implied warranty), 3, 8, 13, 18, 23, 27, 32, 37, 41, 46, 52, 57, 62, 66, 70, 79, 84, 89, 94, 99, 104, 109, 114, 119, 124, 129, 134, 138, and 143.

[41] Recognizing that their express warranty claims had previously been dismissed, the Court dismissed the Magnuson-Moss Warranty Act claims of Plaintiffs Clausen, Harris, Ludington, Shorter, Bednarek, Hanneken, the Doepels, Gulling, and Jones. (Dkt. No. 99 at 62-63). Accordingly, the term "Plaintiffs," as used in this Count, shall only include Plaintiffs Clausen, Harris, Ludington, Shorter, Bednarek, Hanneken, the Doepels, Gulling, and Jones for the purpose of preserving these Plaintiffs' Magnuson-Moss Warranty Act claims for appeal.

provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

363.    GM's Limited Warranty is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

364.    With respect to Class members' purchases or leases of the Class Vehicles, the terms of GM's written warranty and implied warranty became part of the basis of the bargain between GM, on the one hand, and Plaintiffs and each of the other Class members, on the other.

365.    GM breached these warranties as described in more detail above.  Without limitation, the Class Vehicles are equipped with defective Generation IV Vortec 5300 Engines, which, as a result of the Oil Consumption Defect, are designed so as to prematurely consume an abnormally large amount of oil, resulting in low oil levels, reduced lubricity, and engine damage.  The Oil Consumption Defect and the problems arising therefrom are exacerbated by the defective Oil Life Monitoring System on each of the Class Vehicles that fails to advise drivers of a decreased oil level in their Class Vehicle until it is at a chronically low level.

366.    Donald Ludington, individually and on behalf of the other Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranties, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.  GM has not taken any measures to cure its warranty breaches to Plaintiffs and the other Class members.

367.    At the time of sale or lease of each Class Vehicle, GM knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed

to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs and the other Class members resort to an informal dispute resolution procedure and/or afford GM a reasonable opportunity to cure its breach of warranties is excused and thus deemed satisfied.

368. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy in this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

369. As a direct and proximate result of GM's breaches of its Limited Warranty and the implied warranty of merchantability, Plaintiffs and the other Class members have sustained damages in an amount to be determined at trial.

370. Plaintiffs, individually and on behalf of all the other Class members, seek all damages permitted by law, including the diminution in value of their vehicles, in an amount to be proven at trial.

**B. Claims Brought on Behalf of the Statewide Classes**

**1. Claims Brought on Behalf of the California Class**

**COUNT 2**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code. §§ 1750, *et seq.***

371. Plaintiff Siqueiros and Cralley ("Plaintiffs," for purposes of the California Class's claims) repeat and reallege Paragraphs 1-354 as if fully set forth herein.

372. Plaintiffs bring this Count individually and on behalf of the other members of the California Class (the "Class," for purposes of this Count).

373. Plaintiffs and the other Class members were deceived by GM's failure to disclose that the Class Vehicles share a common design defect in that they are fitted with defective engines that consume an excessive amount of oil, leading to engine damage.

374. GM engaged in unfair or deceptive acts or practices when, in the course of its business, it knowingly omitted material facts as to the characteristics and qualities of the Class Vehicles.

375. GM failed to disclose material information concerning the Class Vehicles that it had a duty to disclose. GM had a duty to disclose the Oil Consumption Defect because, as detailed above: (a) GM knew about the Oil Consumption Defect, (b) GM had exclusive knowledge regarding the Oil

Consumption Defect not known to the general public, Plaintiffs, or the other Class members; and (c) GM actively concealed material facts concerning the Oil Consumption Defect from the general public, Plaintiffs, and the other Class members. As detailed above, the information concerning the defect was known to GM at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

376. GM intended for Plaintiffs and the other Class members to rely on it to provide adequately designed and adequately manufactured automobiles, and to honestly and accurately reveal the problems described throughout this Complaint.

377. GM intentionally failed or refused to disclose the Oil Consumption Defect to consumers.

378. GM's deceptive omissions were intended to induce Plaintiffs and the other Class members to believe that the Class Vehicles were adequately designed and manufactured.

379. GM's conduct constitutes unfair acts or practices as defined by the California Consumer Legal Remedies Act.

380. Plaintiffs and the other Class members have suffered injury in fact and actual damages resulting from GM's material omissions because they paid inflated purchase prices for the Class Vehicles. Plaintiff and the other Class members are entitled to recover actual damages, punitive damages, costs and attorneys' fees, and all other relief that the Court deems proper under California Civil Code § 1780.

381. In accordance with California Civil Code Section 1782, Plaintiffs' counsel sent a certified letter to GM on November 23, 2016, notifying GM of its § 1770 violations. Pursuant to § 1782 of the Act, GM is hereby on notice of its particular § 1770 violations, and Plaintiffs' demands that GM rectify the problems associated with the actions detailed above and give notice to all affected consumers of GM's intent to so act.

382. By a letter dated November 29, 2016, GM acknowledged receipt of the November 23, 2016 letter, and assigned Plaintiff Siqueiros's case file to its Early Resolution Program. In its November 29, 2016 letter, GM did not commit to provide any remedy for the Oil Consumption Defect within Plaintiff Siqueiros's Class Vehicle, did not state that it has taken or will take any actions to identify or notify consumers similarly situated to Plaintiff Siqueiros, and did not commit to ceasing from engaging in the conduct complained of in Plaintiffs' letter. Indeed, in its November 29, 2016 letter, GM did not

even acknowledge the Oil Consumption Defect. Accordingly, Plaintiffs' participation in the Early Resolution Program would be futile.

383. Pursuant to California Civil Code § 1780(d), attached hereto as Exhibit A is the affidavit showing that this action has been commenced in the proper forum.

**COUNT 3**
**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTY**
**Cal. Civ. Code §§ 1790, *et seq.***

384. Plaintiff Siqueiros ("Plaintiff," for purposes of the California Class's claims) repeat and reallege Paragraphs 1-354 as if fully set forth herein.

385. Plaintiff brings this Count individually and on behalf of the other members of the California Class (the "Class," for purposes of this Count).

386. Plaintiff and the other Class members are "buyers" within the meaning of Cal. Civ. Code. § 1791.

387. The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791.

388. GM is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791.

389. Plaintiff and the other Class members bought or leased Class Vehicles manufactured by GM.

390. GM made an express warranty to Plaintiffs and the other Class members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

391. The Class Vehicles share a common design defect, in that they are equipped with Generation IV Vortec 5300 Engines, which have the Oil Consumption Defect, causing the above-described excessive oil consumption, resulting in low oil levels, insufficient lubricity levels, and corresponding internal engine component damage.

392. The Class Vehicles are covered by GM's express warranty. The defect described herein substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiff and the other Class members.

393. Donald Ludington, individually and on behalf of the other Nationwide Class members,

notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

394. GM has had the opportunity to cure the defect in the Class Vehicles, but it has chosen not to do so. Giving GM a chance to cure the defect is not practicable in this case and would serve only to delay this litigation, and is thus unnecessary.

395. As a result of GM's breach of its express warranty, Plaintiffs and the other Class members received goods with substantially impaired value. Plaintiffs and the other Class members have been damaged as a result of the diminished value of the Class Vehicles resulting from the Oil Consumption Defect.

396. Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their Class Vehicles.

397. Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

**COUNT 4**
**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY**
**Cal. Civ. Code §§ 1790, *et seq.***

398. Plaintiffs Siqueiros and Cralley ("Plaintiffs," for purposes of the California Class's claims) repeats and realleges Paragraphs 1-354 as if fully set forth herein.

399. Plaintiffs bring this Count individually and on behalf of the other members of the California Class (the "Class," for purposes of this Count).

400. Plaintiffs and the other Class members who purchased their Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code. § 1791.

401. The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791.

402.   GM is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791.

403.   GM impliedly warranted to Plaintiffs and the other members of the Class that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

404.   Cal. Civ. Code § 1791.1(a) states that: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)   Pass without objection in the trade under the contract description;

(2)   Are fit for the ordinary purposes for which such goods are used;

(3)   Are adequately contained, packaged, and labeled; and

(4)   Conform to the promises or affirmations of fact made on the container or label.

405.   The Class Vehicles would not pass without objection in the automotive trade because they share a common design defect in that they are equipped with Generation IV Vortec 5300 Engines, which have the Oil Consumption Defect, causing the above-described excessive oil consumption, resulting in low oil levels, insufficient lubricity levels, and corresponding internal engine component damage.

406.   Because of the Oil Consumption Defect, the Class Vehicles are not fit for their ordinary purposes.

407.   The Class Vehicles were not adequately labeled because the labeling failed to disclose the defects described herein.

408.   Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

409.   GM has had the opportunity to cure the defect in the Class Vehicles, but it has chosen not to do so.  Giving GM a chance to cure the defect is not practicable in this case and would serve only to delay this litigation, and is thus unnecessary.

410. As a result of GM's breach of its implied warranty, Plaintiffs and the other Class members received goods with substantially impaired value. Plaintiffs and the other Class members have been damaged as a result of the diminished value of the Class Vehicles.

411. Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

412. Under Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

**<u>COUNT 5</u>**
**FRAUDULENT OMISSION**

413. Plaintiffs Siqueiros and Cralley ("Plaintiffs," for purposes of the California Class's claims) repeat and reallege Paragraphs 1-354 as if fully set forth herein.

414. Plaintiffs bring this Count individually and on behalf of the other members of the California Class ("Class," for purposes of this Count).

415. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

416. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

417. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

418. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

419. In purchasing the Class Vehicles, Plaintiffs and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

420. Had Plaintiffs and the other members of the Class known of the Oil Consumption Defect

within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

421. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiffs and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

422. As a direct and proximate result of GM's omissions, Plaintiffs and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 6
## UNJUST ENRICHMENT

423. Plaintiffs Siqueiros and Cralley ("Plaintiffs," for purposes of the California Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

424. Plaintiffs bring this Count individually and on behalf of the other members of the California Class (the "Class," for purposes of this Count).

425. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

426. GM has received and retained unjust benefits from Plaintiffs and the other members of the Class, and inequity has resulted.

427. It is inequitable and unconscionable for GM to retain these benefits.

428. Because GM concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

429. GM knowingly accepted the unjust benefits of its wrongful conduct.

430. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

**COUNT 7**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, *et seq.***

431. Plaintiffs Siqueiros and Cralley ("Plaintiffs," for purposes of the California Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

432. Plaintiffs bring this Count individually and on behalf of the other members of the California Class ("Class," for purposes of this Count).

433. California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business acts or practices."

434. GM's conduct violated multiple statutes and the common law, as alleged herein.

435. GM has violated § 17200 by knowingly selling Class Vehicles that include the Oil Consumption Defect and omitting mention of this defect to consumers.

436. GM's conduct was unscrupulous, offended established public policy, and was fraudulent.

437. The harm caused by GM's conduct greatly outweighs any benefit to consumers.

438. Plaintiffs relied on the omissions of GM with respect to the quality and reliability of the Class Vehicles. Plaintiffs and the other Class members would not have purchased or leased their Class Vehicles, and/or paid as much for them, but for GM's omissions.

439. GM concealed and failed to disclose material information about the Class Vehicles in a manner that is likely to, and in fact did, deceive consumers and the public.

440. All of the wrongful conduct alleged herein occurred in the conduct of GM's business.

441. Plaintiffs, individually and on behalf of the other Class members, requests that this Court restore to Plaintiff and the other Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement.

**2. Claims Brought on Behalf of the Alabama Class**

**COUNT 8**
**BREACH OF EXPRESS WARRANTY**
**Ala. Code. §§ 7-2-313 and 7-2A-210**

442. Plaintiff Brannan ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

443. Plaintiff brings this Count individually and on behalf of the other members of the Alabama

Class (the "Class," for purposes of this Count).

444. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

445. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

446. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

447. GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

448. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

449. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

450. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually

and on behalf of the other Class members, seeks all remedies as allowed by law.

451. Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

452. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

453. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 9[42]**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Ala. Code §§ 7-2-314 and 7-2A-212**

454. Plaintiff Brannan ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

455. Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

456. GM is and was at all relevant times a merchant with respect to motor vehicles under Ala. Code §§ 7-2-104 and 7-2A-103.

457. Pursuant to Ala. Code §§ 7-2-314 and 7-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

458. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition,

[42] In light of the Court's dismissal of Plaintiff Brannan's implied warranty claim (Dkt. No. 99 at 46-47), Plaintiffs include this Count in this Third Amended Class Action Complaint strictly to preserve it for purposes of appeal.

would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

459.    Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

460.    Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

461.    As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 10**
**FRAUDULENT OMISSION**

462.    Plaintiff Brannan ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

463.    Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

464.    GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

465.    Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

466.    GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

467. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

468. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

469. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

470. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

471. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 11**
**UNJUST ENRICHMENT**

472. Plaintiff Brannan ("Plaintiff," for purposes of the Alabama Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

473. Plaintiff brings this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

474. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

475. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

476. It is inequitable and unconscionable for GM to retain these benefits.

477. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

478. GM knowingly accepted the unjust benefits of its wrongful conduct.

479. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**3. Claims Brought on Behalf of the Arkansas Class**

**COUNT 12**
**VIOLATIONS OF ARKANSAS'S DECEPTIVE TRADE PRACTICES ACT**
**Ark. Code Ann. §§ 4-88-101, *et seq.***

480. Plaintiff Goodwin ("Plaintiff," for purposes of the Arkansas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

481. Plaintiff brings this claim individually and on behalf of the other members of the Arkansas Class (the "Class," for purposes of this Count).

482. The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-107, prohibits "[e]ngaging in . . . unconscionable, false, or deceptive act[s] or practice[s] in business, commerce, or trade." The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-108, also prohibits in connection with the sale or advertisement of goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with the intent that others rely upon the concealment, suppression, or omission."

483. By the conduct described in detail above and incorporated herein, GM engaged in deceptive trade practices.

484. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

485. GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

486. Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

487. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

488. GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

489. In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

490. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Ark. Code Ann. § 4-88-113.

**COUNT 13**
**BREACH OF EXPRESS WARRANTY**
**Ark. Code Ann. §§ 4-2-313 and 4-2A-210**

491. Plaintiff Goodwin ("Plaintiff," for the purposes of the Arkansas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

492. Plaintiff brings this Count individually and on behalf of the other members of the Arkansas

Class (the "Class," for purposes of this Count).

493. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

494. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

495. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

496. GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

497. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

498. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

499. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually

and on behalf of the other Class members, seeks all remedies as allowed by law.

500. Also, as alleged in more detail herein, at the time that GM warranted, leased, and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

501. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

502. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 14[43]**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Ark. Code Ann. 4-2-314 and 4-2A-212**

503. Plaintiff Goodwin ("Plaintiff," for purposes of the Arkansas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

504. Plaintiff brings this Count individually and on behalf of the other members of the Arkansas Class (the "Class," for purposes of this Count).

505. GM is and was at all relevant times a merchant with respect to motor vehicles under Ark. Code Ann. §§ 4-2-104 and 4-2A-103.

506. Pursuant to Ark. Code Ann. §§ 4-2-314 and 4-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

507. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition,

[43] In light of the Court's dismissal of Plaintiff Goodwin's implied warranty claim (Dkt. No. 99 at 47-48), Plaintiffs include this Count in this Third Amended Class Action Complaint strictly to preserve it for purposes of appeal.

would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

508.    Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016 and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

509.    Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

510.    As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 15**
**FRAUDULENT OMISSION**

511.    Plaintiff Goodwin ("Plaintiff," for purposes of the Arkansas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

512.    Plaintiff brings this Count individually and on behalf of the other members of the Arkansas Class (the "Class," for purposes of this Count).

513.    GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

514.    Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the  Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

515.    GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

516. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

517. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

518. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

519. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

520. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 16**
**UNJUST ENRICHMENT**

521. Plaintiff Goodwin ("Plaintiff," for purposes of the Arkansas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

522. Plaintiff brings this Count individually and on behalf of the other members of the Arkansas Class (the "Class," for purposes of this Count).

523. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

524. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

525. It is inequitable and unconscionable for GM to retain these benefits.

526. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

527. GM knowingly accepted the unjust benefits of its wrongful conduct.

528. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**4. Claims Brought on Behalf of the Delaware Class**

**COUNT 17**
**VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT**
**Del. Code Ann. tit. 6, §§ 2511, *et seq.***

529. Plaintiff Perkins ("Plaintiff," for purposes of the Delaware Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

530. Plaintiff brings this claim individually and on behalf of the other members of the Delaware Class (the "Class," for purposes of this Count).

531. The Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §§ 2511, *et seq.*, states that: "The act, use or employment by any person of any deception, fraud, false pretense . . . or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice."

532. By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of the Delaware Consumer Fraud Act.

533. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

534. GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

535. Plaintiff and the other Class members justifiably acted or relied to their detriment upon

GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

536. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

537. GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

538. In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiffs and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

539. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Del. Code Ann. tit. 6, §§ 2511, *et seq.*

**COUNT 18**
**BREACH OF EXPRESS WARRANTY**
**Del. Code Ann. tit. 6, §§ 2-313 and 2A-210**

540. Plaintiff Perkins ("Plaintiff," for purposes of the Delaware Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

541. Plaintiff brings this Count individually and on behalf of the other members of the Delaware Class (the "Class," for purposes of this Count).

542.    GM is and was at all relevant times a merchant with respect to the Class Vehicles.

543.    In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

544.    GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

545.    GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

546.    Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

547.    Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

548.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

549. Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

550. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

551. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 19**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Del. Code Ann. tit. 6, §§ 2-314 and 2A-212**

552. Plaintiff Perkins ("Plaintiff," for purposes of the Delaware Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

553. Plaintiff brings this Count individually and on behalf of the other members of the Delaware Class (the "Class," for purposes of this Count).

554. GM is and was at all relevant times a merchant with respect to motor vehicles under Del. Code Ann. tit. 6, §§ 2-104 and 2A-103.

555. Pursuant to Del. Code Ann. tit. 6, §§ 2-314 and 2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

556. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

557. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016 and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

558. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

559. As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT 20
## FRAUDULENT OMISSION

560. Plaintiff Perkins ("Plaintiff," for purposes of the Delaware Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

561. Plaintiff brings this Count individually and on behalf of the other members of the Delaware Class (the "Class," for purposes of this Count).

562. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiffs and the other members of the Class.

563. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

564. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

565. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

566. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

567. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

568. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

569. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 21**
**UNJUST ENRICHMENT**

570. Plaintiff Perkins ("Plaintiff," for purposes of the Delaware Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

571. Plaintiff brings this Count individually and on behalf of the other members of the Delaware Class (the "Class," for purposes of this Count).

572. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

573. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

574. It is inequitable and unconscionable for GM to retain these benefits.

575. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

576. GM knowingly accepted the unjust benefits of its wrongful conduct.

577. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**5. Claims Brought on Behalf of the Florida Class**

**COUNT 22**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. §§ 502.201, *et seq.***

578. Plaintiff Shorter ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

579. Plaintiff brings this claim individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

580. The Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201, *et seq.*, states that, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

581. By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of F.S.A. § 501.204.

582. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

583. GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

584. Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

585. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased

or leased Class Vehicles or would have paid less to do so.

586. GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

587. In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiffs and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

588. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under F.S.A. §§ 501.201, *et seq.*

**COUNT 23**
**BREACH OF EXPRESS WARRANTY**
**Fla. Stat. §§ 672.313 and 680.21**

589. Plaintiff Shorter ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

590. Plaintiff brings this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

591. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

592. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

This warranty is for GM vehicles registered in the United States and normally operated in

> the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

593. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

594. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

595. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

596. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

597. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

598. Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

599. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

600. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 24**
**FRAUDULENT OMISSION**

601. Plaintiff Shorter ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

602. Plaintiff bring this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

603. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiffs and the other members of the Class.

604. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

605. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

606. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

607. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

608. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or

would have paid less for the Class Vehicles.

609. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

610. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 25**
**UNJUST ENRICHMENT**

611. Plaintiff Shorter ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

612. Plaintiff brings this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

613. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

614. GM has received and retained unjust benefits from Plaintiffs and the other members of the Class, and inequity has resulted.

615. It is inequitable and unconscionable for GM to retain these benefits.

616. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

617. GM knowingly accepted the unjust benefits of its wrongful conduct.

618. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**6. Claims Brought on Behalf of the Georgia Class**

**<u>COUNT 26</u>**
**VIOLATIONS OF GEORGIA'S FAIR BUSINESS PRACTICES ACT**
**Ga. Stat. Ann. §§ 10-1-390, *et seq.***

619. Plaintiff Bradford ("Plaintiff," for purposes of the Georgia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

620. Plaintiff brings this claim individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

621. The Georgia Fair Business Practices Act, Ga. Stat. Ann. § 10-1-393, states that, "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

622. By the conduct described in detail above and incorporated herein, GM engaged in unfair and deceptive trade practices.

623. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

624. GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

625. Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

626. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

627. GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

628.    In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

629.    As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed.  Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Ga. Stat. Ann. § 10-1-399.

**COUNT 27**
**BREACH OF EXPRESS WARRANTY**
**Ga. Stat. Ann. §§ 11-2-313 and 11-2a-210**

630.    Plaintiff Bradford ("Plaintiff," for the purposes of the Georgia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

631.    Plaintiff brings this Count individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

632.    GM is and was at all relevant times a merchant with respect to the Class Vehicles.

633.    In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

Warranty repairs, including towing, parts, and labor, will be made at no charge.

634.    GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

635.    GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

636.    Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

637.    Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

638.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

639.    Also, as alleged in more detail herein, at the time that GM warranted, leased, and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

640.    Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other

Class members' remedies would be insufficient to make them whole.

641. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 28**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Ga. Stat. Ann. 84-2-314 and 84-2A-212**

642. Plaintiff Bradford ("Plaintiff," for purposes of the Georgia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

643. Plaintiff brings this Count individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

644. GM is and was at all relevant times a merchant with respect to motor vehicles under Ga. Stat. Ann. §§ 11-2-104 and 11-2A-103.

645. Pursuant to Ga. Stat. Ann. §§ 11-2-314 and 84-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

646. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

647. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016 and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

648. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

649.    As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 29**
**FRAUDULENT OMISSION**

650.    Plaintiff Bradford ("Plaintiff," for purposes of the Georgia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

651.    Plaintiff brings this Count individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

652.    GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

653.    Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

654.    GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

655.    For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

656.    In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

657.    Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

658.    Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

659. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 30**
**UNJUST ENRICHMENT**

660. Plaintiff Bradford ("Plaintiff," for purposes of the Georgia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

661. Plaintiff brings this Count individually and on behalf of the other members of the Georgia Class (the "Class," for purposes of this Count).

662. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

663. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

664. It is inequitable and unconscionable for GM to retain these benefits.

665. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

666. GM knowingly accepted the unjust benefits of its wrongful conduct.

667. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**7. Claims Brought on Behalf of the Idaho Class**

**COUNT 31**
**VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT**
**Idaho Code Ann. §§ 48-601, *et seq.***

668. Plaintiff Del Valle ("Plaintiff," for purposes of the Idaho Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

669.    Plaintiff brings this Count individually and on behalf of the other members of the Idaho Class (the "Class," for purposes of this Count).

670.    GM, Plaintiff and the other members of the Idaho Class are natural persons and legal entities and, as such, constitute "persons" as defined by Idaho Code Ann. § 48-602(1).

671.    GM is engaged in "trade" or "commerce" within the meaning of Idaho Code Ann. § 48-602(2).

672.    The Idaho Consumer Protection Act ("Idaho CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Idaho Code Ann. § 48-603.

673.    By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of Idaho Code Ann. § 48-603.

674.    GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

675.    GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

676.    Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

677.    Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiffs and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

678.    GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

679.    In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other

Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

680. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Idaho Code Ann. § 48-608.

**COUNT 32**
**BREACH OF EXPRESS WARRANTY**
**Idaho Code Ann. §§ 28-2-313 and 28-12-210**

681. Plaintiff Del Valle ("Plaintiff," for purposes of the Idaho Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

682. Plaintiff brings this Count individually and on behalf of the other members of the Idaho Class (the "Class," for purposes of this Count).

683. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

684. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

685. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective

Generation IV Vortec 5300 Engines.

686.    GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

687.    Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

688.    Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

689.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

690.    Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

691.    Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

692.    As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 33**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Idaho Code Ann. §§ 28-2-314 and 28-12-212**

693. Plaintiff Del Valle ("Plaintiff," for purposes of the Idaho Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

694. Plaintiff brings this Count individually and on behalf of the other members of the Idaho Class (the "Class," for purposes of this Count).

695. GM is and was at all relevant times a merchant with respect to motor vehicles under Idaho Code Ann. §§ 28-2-104 and 28-12-103.

696. Pursuant to Idaho Code §§ 28-2-314 and 28-12-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

697. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

698. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016 and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

699. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

700. As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 34**
**FRAUDULENT OMISSION**

701. Plaintiff Del Valle ("Plaintiff," for purposes of the Idaho Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

702. Plaintiff brings this Count individually and on behalf of the other members of the Idaho Class (the "Class," for purposes of this Count).

703. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

704. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

705. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

706. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

707. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

708. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

709. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

710. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an

amount to be determined at trial.

**COUNT 35**
**UNJUST ENRICHMENT**

711. Plaintiff Del Valle ("Plaintiff," for purposes of the Idaho Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

712. Plaintiff brings this Count individually and on behalf of the other members of the Idaho Class (the "Class," for purposes of this Count).

713. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

714. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

715. It is inequitable and unconscionable for GM to retain these benefits.

716. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

717. GM knowingly accepted the unjust benefits of its wrongful conduct.

718. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**8. Claims Brought on Behalf of the Illinois Class**

**COUNT 36**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 Ill. Comp. Stat. 505/1, *et seq.***

719. Plaintiffs Hanneken and Doepel ("Plaintiffs," for purposes of the Illinois Class's claims) repeat and reallege paragraphs 1-354 as if fully set forth herein.

720. Plaintiffs brings this claim individually and on behalf of the other members of the Illinois Class (the "Class," for purposes of this Count).

721. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat.

505/2, states that, "[u]nfair methods of competition and unfair or deceptive acts or practices . . . are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

722.    By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

723.    GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

724.    GM intended for Plaintiffs and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

725.    Plaintiffs and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

726.    Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiffs and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

727.    GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

728.    In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiffs and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiffs or the other Class members could have reasonably avoided.

729.    As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiffs and the other Class members have suffered ascertainable loss and actual damages.  Plaintiffs and the

other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiffs and the other Class members also suffered diminished value of their vehicles. Plaintiffs and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under 815 Ill Comp. Stat. 505/1, *et seq.*

**COUNT 37**
**BREACH OF EXPRESS WARRANTY**
**810 Ill. Comp. Stat. 5/2-313 and 5/2A-210**

730. Plaintiff Hanneken ("Plaintiff," for the purposes of the Illinois Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

731. Plaintiff brings this Count individually and on behalf of the other members of the Illinois Class (the "Class," for purposes of this Count).

732. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

733. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

734. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

735. GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

736. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its

corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

737.    Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

738.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

**COUNT 38**
**FRAUDULENT OMISSION**

739.    Plaintiffs Hanneken and Doepel ("Plaintiffs," for purposes of the Illinois Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

740.    Plaintiffs bring this Count individually and on behalf of the other members of the Illinois Class (the "Class," for purposes of this Count).

741.    GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

742.    Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiffs and the other members of the Class in connection with the sale or lease of the Class Vehicles.

743.    GM did not disclose the  Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

744.    For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

745.    In purchasing the Class Vehicles, Plaintiffs and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

746.    Had Plaintiffs and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

747.    Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiffs and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

748.    As a direct and proximate result of GM's omissions, Plaintiffs and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 39**
**UNJUST ENRICHMENT**

749.    Plaintiffs Hanneken and Doepel ("Plaintiffs," for purposes of the Illinois Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

750.    Plaintiffs bring this Count individually and on behalf of the other members of the Illinois Class (the "Class," for purposes of this Count).

751.    GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

752.    GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

753.    It is inequitable and unconscionable for GM to retain these benefits.

754.    Because GM concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

755. GM knowingly accepted the unjust benefits of its wrongful conduct.

756. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**9. Claims Brought on Behalf of the Kansas Class**

**COUNT 40**
**VIOLATIONS OF KANSAS CONSUMER PROTECTION ACT**
**Kan. Stat. Ann. §§ 50-623, *et seq.***

757. Plaintiff Madson ("Plaintiff," for purposes of the Kansas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

758. Plaintiff brings this claim individually and on behalf of the other members of the Kansas Class (the "Class," for purposes of this Count).

759. The Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-626, states that, "no supplier shall engage in any deceptive act or practice in connection with a consumer transaction."

760. GM is a "supplier" within the meaning of the Kansas Consumer Protection Act.

761. By the conduct described in detail above and incorporated herein, GM engaged in deceptive trade practices.

762. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

763. GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

764. Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

765. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased

or leased Class Vehicles or would have paid less to do so.

766. GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

767. In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

768. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Kan. Stat. Ann. § 50-634.

**COUNT 41**
**BREACH OF EXPRESS WARRANTY**
**Kan. Stat. Ann. §§ 84-2-313 and 84-2a-210**

769. Plaintiff Madson ("Plaintiff," for the purposes of the Kansas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

770. Plaintiff brings this Count individually and on behalf of the other members of the Kansas Class (the "Class," for purposes of this Count).

771. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

772. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally

> operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

773.     GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

774.     GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

775.     Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

776.     Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

777.     Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

778.     Also, as alleged in more detail herein, at the time that GM warranted, leased, and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

779.     Moreover, much of the damage flowing from the Class Vehicles cannot be resolved

through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

780. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 42**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Kan. Stat. Ann. 84-2-314 and 84-2a-212**

781. Plaintiff Madson ("Plaintiff," for purposes of the Kansas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

782. Plaintiff brings this Count individually and on behalf of the other members of the Kansas Class (the "Class," for purposes of this Count).

783. GM is and was at all relevant times a merchant with respect to motor vehicles under Kan. Stat. Ann. §§ 84-2-104 and 842a-103.

784. Pursuant to Kan. Stat. Ann. §§ 84-2-314 and 84-2a-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

785. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

786. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016 and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering

knowledge.

787. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

788. As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 43**
**FRAUDULENT OMISSION**

789. Plaintiff Madson ("Plaintiff," for purposes of the Kansas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

790. Plaintiff brings this Count individually and on behalf of the other members of the Kansas Class (the "Class," for purposes of this Count).

791. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

792. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

793. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

794. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

795. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

796. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

797. Through its omissions regarding the Oil Consumption Defect within the Generation IV

Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

798. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 44**
**UNJUST ENRICHMENT**

799. Plaintiff Madson ("Plaintiff," for purposes of the Kansas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

800. Plaintiff brings this Count individually and on behalf of the other members of the Kansas Class (the "Class," for purposes of this Count).

801. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

802. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

803. It is inequitable and unconscionable for GM to retain these benefits.

804. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

805. GM knowingly accepted the unjust benefits of its wrongful conduct.

806. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**10. Claims Brought on Behalf of the Kentucky Class**

**COUNT 45**
**VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT**
**Ky. Rev. Stat. Ann. §§ 367.110, *et seq.***

807. Plaintiff Faulkner ("Plaintiff," for purposes of the Kentucky Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

808. Plaintiff brings this Count individually and on behalf of the other members of the Kentucky Class (the "Class," for purposes of this Count).

809. Pursuant to the Kentucky Unfair Trade Practices Act, "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Ky. Rev. Stat. Ann. § 367.170(1).

810. By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of Ky. Rev. Stat. Ann. § 367.170.

811. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

812. GM intended for Plaintiff and the other Class members to rely on GM's omissions of fact regarding the Oil Consumption Defect.

813. Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

814. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

815. GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

816. In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

817. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*

**COUNT 46**
**BREACH OF EXPRESS WARRANTY**
**Ky. Rev. Stat. Ann. §§ 355.2-313 and 355.2A-210**

818. Plaintiff Faulkner ("Plaintiff," for purpose of the Kentucky Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

819. Plaintiff brings this Count individually and on behalf of the other members of the Kentucky Class (the "Class," for purposes of this Count).

820. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

821. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

Warranty repairs, including towing, parts, and labor, will be made at no charge.

822. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

823. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

824. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

825. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

826. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

827. Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

828. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure

to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

829. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 47**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Ky. Rev. Stat. Ann. §§ 355.2-314 and 355.2A-212**

830. Plaintiff Faulkner ("Plaintiff," for purposes of the Kentucky Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

831. Plaintiff brings this Count individually and on behalf of the other members of the Kentucky Class (the "Class," for purposes of this Count).

832. GM is and was at all relevant times a merchant with respect to motor vehicles under Ky. Rev. Stat. Ann. §§ 355.2-104 and 355.2A-103.

833. Pursuant to Ky. Rev. Stat. Ann. §§ 355.2-314 and 355.2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

834. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

835. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

836. Plaintiff and the other Class members suffered injuries due to the defective nature of the

Class Vehicles and GM's breach of the warranty of merchantability.

837. As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 48**
**FRAUDULENT OMISSION**

838. Plaintiff Faulkner ("Plaintiff," for purposes of the Kentucky Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

839. Plaintiff brings this Count individually and on behalf of the other members of the Kentucky Class (the "Class," for purposes of this Count).

840. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

841. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

842. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

843. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

844. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

845. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

846. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for

a Class Vehicle than they otherwise would have paid.

847. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 49**
**UNJUST ENRICHMENT**

848. Plaintiff Faulkner ("Plaintiff," for purposes of the Kentucky Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

849. Plaintiff brings this Count individually and on behalf of the other members of the Kentucky Class (the "Class," for purposes of this Count).

850. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

851. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

852. It is inequitable and unconscionable for GM to retain these benefits.

853. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

854. GM knowingly accepted the unjust benefits of its wrongful conduct.

855. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**11. Claims Brought on Behalf of the Louisiana Class**

**COUNT 50**
**REDHIBITION**
**La. Civ. Code Art. 2520, *et seq*.**

856. Plaintiff Olivier ("Plaintiff," for purposes of the Louisiana Class's claims) repeats and realleges Paragraphs 1-354 as if fully set forth herein.

857.    Plaintiff brings this Count individually and on behalf of the other members of the Louisiana Class (the "Class," for purposes of this Count).

858.    GM, as seller of the Class Vehicles that include defective engines with the Oil Consumption Defect that causes excessive oil consumption and resultant engine damage, warranted to the Plaintiff and the other Class members against redhibitory defects, or vices, in the Class Vehicles.

859.    GM, as the manufacturer of the Class Vehicles, is responsible for damage caused by the failure of its product.  GM manufactured, sold, and promoted the Class Vehicles and placed the Class Vehicles into the stream of commerce.  Under Louisiana law, the seller and manufacturer warrants the buyers of a product against redhibitory defects or vices in the things sold.  La. Civ. Code Art. 2520.

860.    The Class Vehicles contain redhibitory defects, as the Oil Consumption Defect renders them either useless or their use so inconvenient that it must be presumed that a buyer, such as Plaintiff and other Class members, would not have bought the Class Vehicles had they known of the Oil Consumption Defect. Pursuant to La. Civ. Code Art. 2520, Plaintiff and the other Class members are entitled to obtain a rescission of the sale of the Class Vehicles.  Alternatively, without rendering the Class Vehicles totally useless, the Oil Consumption Defect diminishes the Class Vehicles' usefulness or value so that it must be presumed that if Plaintiff and the other Class members would still have bought the Class Vehicles, they would have done so for a lesser price.  La. Civ. Code Art. 2520.  In this instance, Plaintiff and the other Class members are entitled to a reduction of the purchase price.

861.    The Class Vehicles contained the redhibitory defect described herein at the time of purchase and the defect was not apparent to the Plaintiff and the other Class members.  GM knew of the Oil Consumption Defect in the Class Vehicles, and failed to disclose this defect to Plaintiff and the other Class members.  Additionally, GM, as manufacturer and seller of the Class Vehicles, is deemed to have known that the Class Vehicles they sold had redhibitory defects, and is liable as a bad faith seller under redhibition.

862.    Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed

on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.  Pursuant to La. Civil Code Art. 2522, such notice is not required when, as here, the seller has actual knowledge of the existence of the defect.

863.    As a direct and proximate result of GM's breach of its warranty of redhibition, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

864.    Having known of the Oil Consumption Defect contained in the Class Vehicles, GM is liable to Plaintiff and the Class members for the return of the purchase price with interest from the time it was paid, for reimbursement of the reasonable expenses occasioned by the sale and those expenses incurred for the preservation of the Class Vehicles, and also for damages and reasonable attorneys' fees.

**COUNT 51**
**BREACH OF WARRANTY OF FITNESS FOR ORDINARY USE**
**La. Civ. Code Art. 2524**

865.    Plaintiff Olivier ("Plaintiff," for purposes of the Louisiana Class's claims) repeats and realleges Paragraphs 1-354 as if fully set forth herein.

866.     Plaintiff brings this Count individually and on behalf of the other members of the Louisiana Class (the "Class," for purposes of this Count).

867.    In addition to warranting against redhibitory defects, GM, as sellers of the Class Vehicles, warranted that the Class Vehicles were reasonably fit for their ordinary and intended use.  La. Civ. Code Art. 2524.

868.    The Class Vehicles equipped with defective Generation IV Vortec 5300 Engines are defectively designed in that they contain a defect or flaw that causes the vehicles to be consume excessive amounts of engine oil resulting in engine damage and are unduly prone to break down, malfunction, and require costly repair.  As a result, the Plaintiff and Class members' vehicles are not reasonably fit for their ordinary use.

869.    As a direct and proximate cause of GM's design, manufacture, assembly, marketing, and sales of the Class Vehicles, Plaintiff and the Class members have been damaged in an amount to be determined at trial.

**<u>COUNT 52</u>**
**BREACH OF EXPRESS WARRANTY**
**Louisiana Products Liability Act**
**La. R.S. § 9:2800.51, *et seq.***

870. Plaintiff Olivier ("Plaintiff," for purposes of the Louisiana Class's claims) repeats and realleges Paragraphs 1-354 as if fully set forth herein.

871. Plaintiff brings this Count individually and on behalf of the other members of the Louisiana Class (the "Class," for purposes of this Count).

872. GM is and was at all relevant times a seller and manufacturer with respect to the Class Vehicles.

873. GM has defectively designed, manufactured, sold, or otherwise placed in the stream of commerce Class Vehicles as set forth herein.

874. The Class Vehicles in question are unreasonably dangerous and defective under the Louisiana Products Liability Act ("LPLA"), La. R.S. § 9:2800.58, because the vehicles do not conform to the express warranty provided by GM.

875. GM knew and expected that the Class Vehicles would eventually be sold to and operated by purchasers, lessees, and/or eventual owners of the Class Vehicles, including Plaintiff and the other Class members; consequently, Plaintiff and the other Class members were expected users of the products which GM manufactured.

876. The Class Vehicles reached Plaintiff and the other Class members without substantial changes in their condition from time of completion of manufacture by GM.

877. The defects in the Class Vehicles could not have been contemplated by any reasonable person expected to operate the Class Vehicles and, therefore, presented an unreasonably dangerous situation for expected users of the Class Vehicles even though the Class Vehicles were operated by expected users in a reasonable manner.

878. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

879. Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

880. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

881. As a direct and proximate cause of GM's design, manufacture, assembly, marketing, and sales of the Class Vehicles, Plaintiffs and the other Class members have sustained and will continue to sustain the loss of use of their Class Vehicles, economic losses and consequential damages, and are therefore entitled to compensatory relief in an amount to be determined at trial. Plaintiff, individually and on behalf of the other Class members, asserts the application of *res ipsa loquitur* under the Louisiana Products Liability Act.

**COUNT 53**
**FRAUDULENT OMISSION**

882. Plaintiff Olivier ("Plaintiff," for purposes of the Louisiana Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

883. Plaintiff brings this Count individually and on behalf of the other members of the Louisiana Class (the "Class," for purposes of this Count).

884. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

885. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

886. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

887. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines concerns material information with respect to the sale or lease of the Class Vehicles.

888. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

889. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

890. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

891. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 54**
**VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES ACT**
**La. Rev. Stat. Ann. §§ 51:1401, *et seq.*[44]**

892. Plaintiff Olivier ("Plaintiff," for purposes of the Louisiana Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

[44] In light of the Court's ruling that the continuing violation doctrine does not apply to claims under the Louisiana Unfair Trade Practices Act (Dkt. No. 99 at 55), Plaintiff Olivier includes this claim in the Third Amended Class Action Complaint strictly to preserve it for purposes of appeal.

893. Plaintiff brings this Count individually and on behalf of the other members of the Louisiana Class (the "Class," for purposes of this Count).

894. GM had the duty to refrain from the use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce. This includes the duty to refrain from knowingly exploiting consumers in an effort to gain an unfair advantage over them.

895. GM's sale of the Class Vehicle to Plaintiff and the other Class members was a "consumer transaction" within the scope of the Louisiana Unfair Trade Practices Act, La. Rev. Stat. Ann. §§ 51: 1401, *et seq*. The transactions involved commerce with a natural person, the subject of which transactions was primarily intended for personal, family or household use and resulted in an ascertainable loss of money or property, as a result of the unfair or deceptive act or practice.

896. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

897. GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect. GM failed to give Plaintiff and the other Class members sufficient notice or warning regarding this defect.

898. Plaintiff and the other Class members relied upon GM's omissions when purchasing vehicles containing the Generation IV Vortec 5300 Engines.

899. Plaintiff and the other Class members were deceived by GM's concealment of the defect.

900. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

901. GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

902. In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members' Class Vehicles with defective engines. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged

countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

903. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, treble and/or punitive damages, attorneys' fees and costs, and all other relief allowed under La. Rev. Stat. Ann. §§ 51: 1401, *et seq*.

904. Plaintiff and the other Class Members are also entitled to and hereby seek an order directing GM to pay Plaintiffs' reasonably attorneys' fees and costs of suit, as awarded by the Court.

**<u>COUNT 55</u>**
**UNJUST ENRICHMENT**

905. Plaintiff Olivier ("Plaintiff," for purposes of the Louisiana Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

906. Plaintiff brings this Count individually and on behalf of the other members of the Louisiana Class (the "Class," for purposes of this Count).

907. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

908. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

909. It is inequitable and unconscionable for GM to retain these benefits.

910. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

911. GM knowingly accepted the unjust benefits of its wrongful conduct.

912. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**12. Claims Brought on Behalf of the Massachusetts Class**

**COUNT 56**
**VIOLATIONS OF THE MASSACHUSETTS REGULATION OF BUSINESS PRACTICES FOR CONSUMER PROTECTION ACT**
**Mass Gen. Laws ch. 93A, §§ 1, *et seq.***

913. Plaintiff Smith ("Plaintiff," for purposes of the Massachusetts Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

914. Plaintiff brings this Count individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

915. The Massachusetts Regulation of Business Practices for Consumer Protection Act prohibits "[u]nfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce. . . ." Mass Gen. Laws ch. 93A, § 2.

916. By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of Mass Gen. Laws ch. 93A, § 2.

917. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

918. GM intended for Plaintiff and the other Class members to rely on GM's omissions of fact regarding the Oil Consumption Defect.

919. Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

920. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased

or leased Class Vehicles or would have paid less to do so.

921. GM's omissions deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

922. In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

923. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Mass Gen. Laws ch. 93A, § 9.

**COUNT 57**
**BREACH OF EXPRESS WARRANTY**
**Mass Gen. Laws ch. 106, §§ 2-313 and 2A-210**

924. Plaintiff Smith ("Plaintiff," for purposes of the Massachusetts Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

925. Plaintiff brings this Count individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

926. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

927. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally

> operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

928.    GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

929.    GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

930.    Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

931.    Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

932.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

933.    Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

934. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the other Class members' remedies would be insufficient to make them whole.

935. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 58**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Mass Gen. Laws ch. 106, §§ 2-314 and 2A-212**

936. Plaintiff Smith ("Plaintiff," for purposes of the Massachusetts Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

937. Plaintiff brings this Count individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

938. GM is and was at all relevant times a merchant with respect to motor vehicles under Mass Gen. Laws ch. 106, §§ 2-104 and 2A-103.

939. Pursuant to Mass Gen. Laws ch. 106, §§ 2-314 and 2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

940. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

941. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous

complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

942. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

943. As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 59**
**FRAUDULENT OMISSION**

944. Plaintiff Smith ("Plaintiff," for purposes of the Massachusetts Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

945. Plaintiff brings this Count individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

946. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiffs and the other members of the Class.

947. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiffs and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

948. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

949. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

950. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

951. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

952. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

953. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 60**
**UNJUST ENRICHMENT**

954. Plaintiff Smith ("Plaintiff," for purposes of the Massachusetts Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

955. Plaintiffs bring this Count individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

956. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

957. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

958. It is inequitable and unconscionable for GM to retain these benefits.

959. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

960. GM knowingly accepted the unjust benefits of its wrongful conduct.

961. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**13. Claims Brought on Behalf of the Minnesota Class**

**<u>COUNT 61</u>**
**VIOLATIONS OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT**
**Minn. Stat. §§ 325F.68, *et seq*.**

962. Plaintiffs Dahl and Peterson ("Plaintiffs," for purposes of the Minnesota Class's claims) repeat and reallege paragraphs 1-354 as if fully set forth herein.

963. Plaintiffs bring this Count individually and on behalf of the other members of the Minnesota Class (the "Class," for purposes of this Count).

964. The Minnesota Prevention of Consumer Fraud Act prohibits "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice." Minn. Stat. § 325F.69.

965. By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of Minn. Stat. § 325F.69.

966. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

967. GM intended for Plaintiffs and the other Class members to rely on GM's omissions of fact regarding the Oil Consumption Defect.

968. Plaintiffs and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiffs and the other Class members' purchases of Class Vehicles.

969. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiffs and the other Class members, Plaintiffs and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

970. GM's omissions have deceived Plaintiffs, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

971. In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiffs and the other Class members Class Vehicles with defective engines that are

essentially unusable for the purposes for which they were sold. The injuries to Plaintiffs and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiffs and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiffs or the other Class members could have reasonably avoided.

972. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiffs and the other Class members have suffered ascertainable loss and actual damages. Plaintiffs and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiffs and the other Class members also suffered diminished value of their vehicles. Plaintiffs and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Minn. Stat. § 8.31, subd. 3a.

**COUNT 62**
**BREACH OF EXPRESS WARRANTY**
**Minn. Stat. §§ 325G.19, 336.2-313**

973. Plaintiffs Dahl and Peterson ("Plaintiffs," for purposes of the Minnesota Class's claims) repeat and reallege paragraphs 1-354 as if fully set forth herein.

974. Plaintiffs bring this Count individually and on behalf of the other members of the Minnesota Class (the "Class," for purposes of this Count).

975. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

976. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

977. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs

and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

978. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

979. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

980. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

981. Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies allowable by law.

982. Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

983. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the other Class members' remedies would be insufficient to make them whole.

984. As a direct and proximate result of GM's breach of its express warranty, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 63**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Minn. Stat. § 336.2-314**

985. Plaintiffs Dahl and Peterson ("Plaintiffs," for purposes of the Minnesota Class's claims) repeat and reallege paragraphs 1-354 as if fully set forth herein.

986. Plaintiffs bring this Count individually and on behalf of the other members of the Minnesota Class (the "Class," for purposes of this Count).

987. GM is and was at all relevant times a merchant with respect to motor vehicles under Minn. Stat. § 336.2-314.

988. Pursuant to Minn. Stat. § 336.2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

989. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

990. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

991. Plaintiffs and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

992. As a direct and proximate result of GM's breach of the warranty of merchantability,

Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 64**
**FRAUDULENT OMISSION**

993. Plaintiffs Dahl and Peterson ("Plaintiffs," for purposes of the Minnesota Class's claims) repeat and reallege paragraphs 1-354 as if fully set forth herein.

994. Plaintiffs bring this Count individually and on behalf of the other members of the Minnesota Class (the "Class," for purposes of this Count).

995. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiffs and the other members of the Class.

996. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiffs and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiffs and the other members of the Class in connection with the sale or lease of the Class Vehicles.

997. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiffs and the other members of the Class in connection with the sale of the Class Vehicles.

998. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

999. In purchasing the Class Vehicles, Plaintiffs and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1000. Had Plaintiffs and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1001. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiffs and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1002. As a direct and proximate result of GM's omissions, Plaintiffs and the other members of

the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 65**
**UNJUST ENRICHMENT**

1003. Plaintiffs Dahl and Peterson ("Plaintiffs," for purposes of the Minnesota Class's claims) repeat and reallege paragraphs 1-354 as if fully set forth herein.

1004. Plaintiffs bring this Count individually and on behalf of the other members of the Minnesota Class (the "Class," for purposes of this Count).

1005. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

1006. GM has received and retained unjust benefits from Plaintiffs and the other members of the Class, and inequity has resulted.

1007. It is inequitable and unconscionable for GM to retain these benefits.

1008. Because GM concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1009. GM knowingly accepted the unjust benefits of its wrongful conduct.

1010. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

**14. Claims Brought on Behalf of the Mississippi Class**

**COUNT 66**
**BREACH OF EXPRESS WARRANTY**
**Miss. Code Ann. §§ 75-2-313 and 75-2a-210**

1011. Plaintiff Ware ("Plaintiff," for purpose of the Mississippi Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1012. Plaintiff brings this Count individually and on behalf of the other members of the Mississippi Class (the "Class," for purposes of this Count).

1013.   GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1014.   In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1015.   GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1016.   GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1017.   Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1018.   Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1019.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

1020.   Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

1021.   Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

1022.   As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 67**
**BREACH OF IMPLIED WARRANTY**
**Miss. Code Ann. §§ 75-2-314 and 75-2a-212**

1023.   Plaintiff Ware ("Plaintiff," for purposes of the Mississippi Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1024.   Plaintiff brings this Count individually and on behalf of other members of the Mississippi Class (the "Class," for purposes of this Count).

1025.   GM has defectively designed, manufactured, sold, or otherwise placed in the stream of commerce the Class Vehicles as set forth above.

1026.   GM is and was at all relevant times a merchant with respect to motor vehicles under Miss. Code Ann. §§ 75-2-104 and 75-2A-103.

1027.   Pursuant to Miss. Code Ann. §§ 75-2-314 and 75-2a-212, a warranty that the Class Vehicles were in merchantable condition and useful for their ordinary purpose for which they were designed, manufactured, and sold was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

1028.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition,

would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

1029.   Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1030.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

1031.   As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 68**
**UNJUST ENRICHMENT**

1032.   Plaintiff Ware ("Plaintiff," for purposes of the Mississippi Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1033.   Plaintiff brings this Count individually and on behalf of the other members of the Mississippi Class (the "Class," for purposes of this Count).

1034.   GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

1035.   GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1036.   It is inequitable and unconscionable for GM to retain these benefits.

1037.   Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's

misconduct.

1038. GM knowingly accepted the unjust benefits of its wrongful conduct.

1039. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**15. Claims Brought on Behalf of the Missouri Class**

**COUNT 69**
**VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT**
**Mo. Rev. Stat. § 407.010, *et. seq*.**

1040. Plaintiff Kitchen ("Plaintiff," for purposes of the Missouri Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1041. Plaintiff brings this Count individually and on behalf of the other members of the Missouri Class (the "Class," for purposes of this Count).

1042. GM, Plaintiff and the other Class members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

1043. GM engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

1044. The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020. In the course of GM's business, it willfully failed to disclose and actively concealed the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the GM Generation IV Vortec 5300 Engines. Accordingly, GM used or employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of merchandise in trade or commerce, in violation of the Missouri MPA. GM's conduct offends public policy; is unethical, oppressive, or unscrupulous; and presents a risk of, or causes, substantial injury to consumers.

1045. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300

Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

1046.   GM intended for Plaintiff and the other Class members to rely on GM's omissions of fact regarding the Oil Consumption Defect.

1047.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

1048.   Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

1049.   GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

1050.   In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

1051.   As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed.  Plaintiff and the other Class members also suffered diminished value of their vehicles.  Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Mo. Rev. Stat. § 407.025.

**COUNT 70**
**BREACH OF EXPRESS WARRANTY**
**Mo. Rev. Stat. §§ 400.2-313 and 400.2a-210**

1052. Plaintiff Kitchen ("Plaintiff," for purposes of the Missouri Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1053. Plaintiff brings this Count individually and on behalf of the other members of the Missouri Class (the "Class," for purposes of this Count).

1054. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1055. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1056. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1057. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1058. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1059. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1060. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies allowable by law.

1061. Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

1062. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

1063. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 71**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Mo. Rev. Stat. §§ 400.2-314 and 400.2a-212**

1064. Plaintiff Kitchen ("Plaintiff," for purposes of the Missouri Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1065. Plaintiff brings this Count individually and on behalf of the other members of the Missouri Class (the "Class," for purposes of this Count).

1066. GM is and was at all relevant times a merchant with respect to motor vehicles under Mo. Rev. Stat. §§ 400.2-104 and 400.2a-103.

1067. Pursuant to Mo. Rev. Stat. §§ 400.2-314 and 400.2a-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and

sold subject to an implied warranty of merchantability.

1068. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

1069. GM was provided notice of these issues by numerous complaints filed against it, including the instant complaint. Additionally, Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016 and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1070. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

1071. As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 72**
**FRAUDULENT OMISSION**

1072. Plaintiff Kitchen ("Plaintiff," for purposes of the Missouri Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1073. Plaintiff brings this Count individually and on behalf of the other members of the Missouri Class (the "Class," for purposes of this Count).

1074. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1075. Having been aware of the Oil Consumption Defect, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption

Defect, GM had a duty to disclose these defects to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1076.   GM disclosed information concerning the reliability and performance of the Class Vehicles, but GM did not disclose the Oil Consumption Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1077.   For the reasons set forth above, the existence of the Oil Consumption Defect comprises material information with respect to the sale of the Class Vehicles.

1078.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1079.   Had Plaintiff and the other members of the Class known of the Oil Consumption Defect, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1080.   GM actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the other Class members to purchase or lease Class Vehicles.

1081.   Through its omission regarding the Oil Consumption Defect, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1082.   As a direct and proximate result of GM's omission, Plaintiff and the other members of the Class either paid too much for the Class Vehicles or would not have purchased the Class Vehicles if the Oil Consumption Defect had been disclosed to them, and therefore have incurred damages in an amount to be determined at trial.

**COUNT 73**
**UNJUST ENRICHMENT**

1083.   Plaintiff Kitchen ("Plaintiff," for purposes of the Missouri Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1084.   Plaintiff brings this Count individually and on behalf of the other members of the Missouri Class (the "Class," for purposes of this Count).

1085.   GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles

that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

1086. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1087. It is inequitable and unconscionable for GM to retain these benefits.

1088. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1089. GM knowingly accepted the unjust benefits of its wrongful conduct.

1090. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**16. Claims Brought on Behalf of the New Jersey Class**

**COUNT 74**
**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**N.J. Stat. Ann. §§ 56:8-1, *et seq.***

1091. Plaintiff Knoll ("Plaintiff," for purposes of the New Jersey Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1092. Plaintiff brings this Count individually and on behalf of the other members of the New Jersey Class (the "Class," for purposes of this Count).

1093. Pursuant to the New Jersey Consumer Fraud Act, "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . is declared to be an unlawful practice. . . ." N.J. Stat. Ann. § 56:8-2.

1094. By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of N.J. Stat. Ann. § 56:8-2.

1095.   GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

1096.   GM intended for Plaintiff and the other Class members to rely on GM's omissions of fact regarding the  Oil Consumption Defect.

1097.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

1098.   Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

1099.   GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

1100.   In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members' Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

1101.   As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed.  Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs,

and all other relief allowed under N.J. Stat. Ann. §§ 56:8-2, *et seq*.

**COUNT 75**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**N.J. Stat. Ann. §§ 12a:2-314 and 12a:2a-212**

1102.   Plaintiff Knoll ("Plaintiff," for purposes of the New Jersey Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1103.   Plaintiff brings this Count individually and on behalf of the other members of the New Jersey Class (the "Class," for purposes of this Count).

1104.   GM is and was at all relevant times a merchant with respect to motor vehicles under N.J. Stat. Ann. §§ 12a:2-104 and 12a:2a-103.

1105.   Pursuant to N.J. Stat. Ann. §§ 12a:2-314 and 12a:2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

1106.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.   Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

1107.   Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.   The return receipt was signed on October 28, 2016.   GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1108.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

1109.   As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 76**
**FRAUDULENT OMISSION**

1110. Plaintiff Knoll ("Plaintiff," for purposes of the New Jersey Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1111. Plaintiff brings this Count individually and on behalf of the other members of the New Jersey Class (the "Class," for purposes of this Count).

1112. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1113. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1114. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1115. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

1116. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1117. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1118. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1119. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an

amount to be determined at trial.

**COUNT 77**
**UNJUST ENRICHMENT**

1120. Plaintiff Knoll ("Plaintiff," for purposes of the New Jersey Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1121. Plaintiff brings this Count individually and on behalf of the other members of the New Jersey Class (the "Class," for purposes of this Count).

1122. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

1123. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1124. It is inequitable and unconscionable for GM to retain these benefits.

1125. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1126. GM knowingly accepted the unjust benefits of its wrongful conduct.

1127. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**17. Claims Brought on Behalf of the New Mexico Class**

**COUNT 78**
**VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT**
**N.M. Stat. Ann. §§ 57-12-1, *et seq.***

1128. Plaintiff Molina ("Plaintiff," for purposes of the New Mexico Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1129. Plaintiff brings this Count individually and on behalf of the other members of the New Mexico Class (the "Class," for purposes of this Count).

1130. Pursuant to the New Mexico Unfair Trade Practices Act, "[u]nfair or deceptive trade

practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful."
N.M. Stat. Ann. § 57-12-3.

1131.   By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of N.M. Stat. Ann. § 57-12-3.

1132.   GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

1133.   GM intended for Plaintiff and the other Class members to rely on GM's omissions of fact regarding the  Oil Consumption Defect.

1134.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

1135.   Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

1136.   GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

1137.   In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

1138.   As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other

Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under N.M. Stat. Ann. §§ 57-12-1, et seq.

**COUNT 79**
**BREACH OF EXPRESS WARRANTY**
**N.M. Stat. Ann. §§ 55-2-313 and 55-2A-210**

1139. Plaintiff Molina ("Plaintiff," for purpose of the New Mexico Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1140. Plaintiff brings this Count individually and on behalf of the other members of the New Mexico Class (the "Class," for purposes of this Count).

1141. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1142. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1143. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1144. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1145. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its

corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1146. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1147. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

1148. Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

1149. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

1150. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT 80
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## N.M. Stat. Ann. §§ 55-2-314 and 55-2A-212

1151. Plaintiff Molina ("Plaintiff," for purposes of the New Mexico Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1152. Plaintiff brings this Count individually and on behalf of the other members of the New

Mexico Class (the "Class," for purposes of this Count).

1153.   GM is and was at all relevant times a merchant with respect to motor vehicles under N.M. Stat. Ann. §§ 55-2-104 and 55-2A-103.

1154.   Pursuant to N.M. Stat. Ann. §§ 55-2-314 and 55-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

1155.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.   Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

1156.   Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1157.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

1158.   As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 81**
**FRAUDULENT OMISSION**

1159.   Plaintiff Molina ("Plaintiff," for purposes of the New Mexico Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1160.   Plaintiff brings this Count individually and on behalf of the other members of the New Mexico Class (the "Class," for purposes of this Count).

1161. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1162. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1163. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1164. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

1165. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1166. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1167. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1168. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 82**
**UNJUST ENRICHMENT**

1169. Plaintiff Molina ("Plaintiff," for purposes of the New Mexico Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1170. Plaintiff brings this Count individually and on behalf of the other members of the New Mexico Class (the "Class," for purposes of this Count).

1171. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

1172. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1173. It is inequitable and unconscionable for GM to retain these benefits.

1174. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1175. GM knowingly accepted the unjust benefits of its wrongful conduct.

1176. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**18. Claims Brought on Behalf of the New York Class**

**COUNT 83**
**VIOLATIONS OF NEW YORK**
**GENERAL BUSINESS LAW, DECEPTIVE ACTS AND PRACTICES**
**N.Y. GBL § 349**

1177. Dennis Vita ("Plaintiff," for purposes of the New York Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1178. Plaintiff brings this count individually and on behalf of the other members of the New York Class (the "Class" for purposes of this Count).

1179. GM engaged in unlawful, unfair, and deceptive trade practices in violation of the New York Gen. Bus. Law § 349 by advertising, selling, and warranting the defective Class Vehicles.

1180. GM knew that the Class Vehicles suffered from the Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage.

1181. In advertising, selling, and warranting the Class Vehicles, GM omitted material facts concerning the Oil Consumption Defect that results in abnormally high oil consumption and resultant

engine damage. GM failed to give Plaintiff and the other Class members sufficient notice or warning regarding this defect.

1182. GM intended that Plaintiff and the other Class members rely upon GM's omissions when purchasing vehicles containing the Generation IV Vortec 5300 Engines.

1183. Plaintiff and the other Class members were deceived by GM's concealment of the defect.

1184. GM's conduct was in commerce and affected commerce.

1185. As a direct and proximate result of these unfair, willful, unconscionable, and deceptive commercial practices, Plaintiff and the other Class members have been damaged and are entitled to recover actual and treble damages, as well as attorneys' fees and costs, and all other relief allowed under N.Y. Gen. Bus. Law § 349.

**COUNT 84**
**BREACH OF EXPRESS WARRANTY**
**N.Y. U.C.C. Law §§ 2-313 and 2-a-210**

1186. Plaintiff Vita ("Plaintiff," for purposes of the New York Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1187. Plaintiff brings this Count individually and on behalf of the other members of the New York Class (the "Class," for purposes of this Count).

1188. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1189. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1190. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1191. GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1192. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1193. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1194. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

1195. Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

1196. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

1197. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 85**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**N.Y. U.C.C. Law §§ 2-314 and 2-a-212**

1198.   Plaintiff Vita ("Plaintiff," for purposes of the New York Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1199.   Plaintiff brings this Count individually and on behalf of the other members of the New York Class (the "Class," for purposes of this Count).

1200.   GM is and was at all relevant times a merchant with respect to motor vehicles under N.Y. U.C.C. Law §§ 2-314 and 2-a-212.

1201.   Pursuant to N.Y. U.C.C. Law §§ 2-314 and 2-a-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

1202.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.   Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

1203.   Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.   The return receipt was signed on October 28, 2016.   GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1204.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

1205.   As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 88**
**FRAUDULENT OMISSION**

1206. Plaintiff Vita ("Plaintiff," for purposes of the New York Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1207. Plaintiff brings this Count individually and on behalf of the other members of the New York Class (the "Class," for purposes of this Count).

1208. GM was aware of the Oil Consumption Defect when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1209. Having been aware of the Oil Consumption Defect, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose these defects to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1210. GM disclosed information concerning the reliability and performance of the Class Vehicles, but GM did not disclose Oil Consumption Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1211. For the reasons set forth above, the existence of the Oil Consumption Defect comprises material information with respect to the sale of the Class Vehicles.

1212. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1213. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1214. Through its omission regarding the Oil Consumption Defect, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1215. As a direct and proximate result of GM's omission, Plaintiff and the other members of the Class either paid too much for the Class Vehicles or would not have purchased the Class Vehicles if the Oil Consumption Defect had been disclosed to them, and therefore have incurred damages in an amount to be determined at trial.

**COUNT 87**
**UNJUST ENRICHMENT**

1216. Plaintiff Vita ("Plaintiff," for purposes of the New York Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1217. Plaintiff brings this Count individually and on behalf of the other members of the New York Class (the "Class," for purposes of this Count).

1218. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

1219. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1220. It is inequitable and unconscionable for GM to retain these benefits.

1221. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1222. GM knowingly accepted the unjust benefits of its wrongful conduct.

1223. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**19. Claims Brought on Behalf of the North Carolina Class**

**COUNT 88**
**VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**
**N.C. Gen. Stat. §§ 75-1.1, *et seq.***

1224. Plaintiff Ehrke ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1225. Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class (the "Class," for purposes of this Count).

1226. GM engaged in unlawful, unfair, and deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act by advertising, selling, and warranting the defective Class Vehicles.

1227. GM knew that the Class Vehicles suffered from the Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage.

1228. In advertising, selling, and warranting the Class Vehicles, GM omitted material facts concerning the Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage. GM failed to give Plaintiff and the other Class members sufficient notice or warning regarding this defect.

1229. GM intended that Plaintiff and the other Class members rely upon GM's omissions when purchasing vehicles containing the Generation IV Vortec 5300 Engines.

1230. Plaintiff and the other Class members were deceived by GM's concealment of the defect.

1231. GM's conduct was in commerce and affected commerce.

1232. As a direct and proximate result of these unfair, willful, unconscionable, and deceptive commercial practices, Plaintiff and the other Class members have been damaged and are entitled to recover actual and treble damages, as well as attorneys' fees and costs, and all other relief allowed under N.C. Gen. Stat §§ 75-16 and 75-16.1.

**COUNT 89**
**BREACH OF EXPRESS WARRANTY**
**N.C. Gen. Stat. §§ 25-2-313 and 25-2A-210**

1233. Plaintiff Ehrke ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1234. Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class (the "Class," for purposes of this Count).

1235. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1236. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.

Warranty repairs, including towing, parts, and labor, will be made at no charge.

1237. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1238. GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1239. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1240. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1241. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

1242. Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

1243. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other

Class members' remedies would be insufficient to make them whole.

1244. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 90**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212**

1245. Plaintiff Ehrke ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1246. Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class (the "Class," for purposes of this Count).

1247. GM is and was at all relevant times a merchant with respect to motor vehicles under N.C. Gen Stat. § 25-2-314 and 25-2A-212.

1248. Pursuant to N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

1249. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

1250. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1251. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

1252.   As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 91**
**FRAUDULENT OMISSION**

1253.   Plaintiff Ehrke ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1254.   Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class (the "Class," for purposes of this Count).

1255.   GM was aware of the Oil Consumption Defect when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1256.   Having been aware of the Oil Consumption Defect, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose these defects to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1257.   GM disclosed information concerning the reliability and performance of the Class Vehicles, but GM did not disclose the Oil Consumption Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1258.   For the reasons set forth above, the existence of the Oil Consumption Defect comprises material information with respect to the sale of the Class Vehicles.

1259.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1260.   Had Plaintiff and the other members of the Class known of the Oil Consumption Defect, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1261.   Through its omission regarding the Oil Consumption Defect, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1262.   As a direct and proximate result of GM's omission, Plaintiff and the other members of the

Class either paid too much for the Class Vehicles or would not have purchased the Class Vehicles if the Oil Consumption Defect had been disclosed to them, and therefore have incurred damages in an amount to be determined at trial.

**COUNT 92**
**UNJUST ENRICHMENT**

1263. Plaintiff Ehrke ("Plaintiff," for purposes of the North Carolina Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1264. Plaintiff brings this Count individually and on behalf of the other members of the North Carolina Class (the "Class," for purposes of this Count).

1265. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

1266. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1267. It is inequitable and unconscionable for GM to retain these benefits.

1268. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1269. GM knowingly accepted the unjust benefits of its wrongful conduct.

1270. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**20. Claims Brought on Behalf of the Ohio Class**

**COUNT 93**
**VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**
**Ohio Rev. Code Ann. §§ 1345.01, *et seq.***

1271. Plaintiffs Jones and Gulling ("Plaintiffs," for purposes of the Ohio Class's claims) repeat and reallege paragraphs 1-354 as if fully set forth herein.

1272. Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

1273.   GM, Plaintiffs, and the other Class members are "persons" within the meaning of Ohio Rev. Code Ann. § 145.01(B).  GM is a "supplier" as defined by Ohio Rev. Code Ann. § 1345.01(c).

1274.   Plaintiffs and the other Class members are "consumers" as that term is defined in Ohio Rev. Code Ann. § 1345.01(D), and their purchase and lease of the Class Vehicles are "consumer transactions" within the meaning of Ohio Rev. Code Ann. § 1345.01(A).

1275.   Ohio Rev. Code Ann. § 1345.02 prohibits unfair or deceptive acts or practices in connection with consumer transactions.

1276.   In the course of GM's business, GM violated the Ohio Consumer Sales Practices Act ("CSPA") by selling Class Vehicles with the Oil Consumption Defect, leading to excessive oil consumption and engine damage, or negligently concealing or suppressing material facts concerning the Oil Consumption Defect in the Class Vehicles.

1277.   Further, as a result of placing a defective product into the stream of commerce, GM has breached its implied warranty in tort, which is an unfair and deceptive act, as defined in Ohio Rev. Code Ann. § 1345.09(B).

1278.   GM has committed unfair and deceptive acts in violation of the Ohio CSPA by knowingly placing into the stream of commerce the Class Vehicles with the Oil Consumption Defect.

1279.   Moreover, GM has committed an unfair and deceptive act by knowingly concealing the Oil Consumption Defect in the Class Vehicles and failing to inform Plaintiffs and the other Class members of this defect.

1280.   The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of GM as detailed in this Complaint, including, but not limited to, the failure to honor both its implied and express warranties; and the concealment and/or non-disclosure of a substantial defect, constitute deceptive sales practices in violation of the CSPA. These cases include, but are not limited to, the following:

    a.   *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

    b.   *State ex rel. Betty D. Montgomery v. Ford Motor co.* (OPIF #10002123);

    c.   *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

    d.   *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct.

App. Apr. 10, 2002) (OPIF #10002077);

e. *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

f. *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

g. *Cranford v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

h. *Brown v. Spears* (OPIF #10000403);

i. *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

j. *Mosley v. Performance Mitsubishi AKA Automanage* (OPIF #10001326); and

k. *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524).

1281. GM's unfair or deceptive acts or practices were likely to, and did, in fact, deceive consumers, including Plaintiff and the other Class members, about the true reliability, dependability, efficiency, and quality of the Class Vehicles.

1282. Plaintiffs and the other Class members suffered ascertainable loss and actual damages as a direct result of GM's concealment of and failure to disclose material information, namely, the Oil Consumption Defect. Plaintiffs and the other Class members who purchased or leased the Class Vehicles would not have done so, or would have paid significantly less, if the true nature of the Class Vehicles had been disclosed. Plaintiffs and the other Class members also suffered diminished value of their vehicles.

1283. GM is liable to Plaintiffs and the other Class members for compensatory damages, injunctive/equitable relief, and attorneys' fees pursuant to Ohio Rev. Code Ann. § 1345.09.

**COUNT 94**
**BREACH OF EXPRESS WARRANTY**
**Ohio Rev. Code Ann. §§ 1302.26 and 1310.17**

1284. Plaintiffs Jones and Gulling ("Plaintiffs," for purposes of the Ohio Class's claims) repeat and reallege paragraphs 1-354 as if fully set forth herein.

1285. Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

1286. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1287. In its Limited Warranty, GM expressly warranted that it would repair or replace defects

in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1288.    GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1289.    GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1290.    Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1291.    Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1292.    Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

1293.    Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective,

and GM improperly concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

1294. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1295. As a direct and proximate result of GM's breach of express warranty, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 95**
**BREACH OF IMPLIED WARRANTY IN TORT**

1296. Plaintiffs Jones and Gulling ("Plaintiffs," for purposes of the Ohio Class's claims) repeat and reallege paragraphs 1-354 as if fully set forth herein.

1297. Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

1298. GM manufactured and sold the defective Class Vehicles to Plaintiffs and the other Class members.

1299. The Class Vehicles are defective because they have a Generation IV Vortec 5300 Engines with the Oil Consumption Defect, causing the Class Vehicles to consume excessive amounts of oil, resulting in engine damage.

1300. These defects existed at the time the Class Vehicles left the control of GM.

1301. Based upon these defects, GM has failed to meet the expectations of a reasonable consumer. The Class Vehicles have failed in their ordinary, intended use, because they suffer from the Oil Consumption Defect, causing excessive oil loss and resultant engine damage.

1302. The above-described defects in the Class Vehicles were the direct and proximate cause of economic damages to Plaintiffs and the other Class members.

**COUNT 96**
**FRAUDULENT OMISSION**

1303. Plaintiffs Jones and Gulling ("Plaintiffs," for purposes of the Ohio Class's claims) repeat and reallege paragraphs 1-354 as if fully set forth herein.

1304. Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count).

1305. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiffs and the other Class members.

1306. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other Class members could not have reasonably been expected to know of this defect, GM had a duty to disclose the Oil Consumption Defect to Plaintiffs and the other Class members in connection with the sale or lease of the Class Vehicles.

1307. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiffs and the other Class members in connection with the sale or lease of the Class Vehicles.

1308. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

1309. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members reasonably relied on GM to disclose known material defects with respect to the Class Vehicles. Had Plaintiffs and the other Class members known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1310. Through its omissions regarding the latent oil consumption defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other Class members to purchase or lease a Class Vehicle that they otherwise would not have purchased, or to pay more for a Class Vehicle than they otherwise would have paid.

1311. As a direct and proximate result of GM's omissions, Plaintiffs and the other Class members either paid too much for the Class Vehicles or would not have purchased the Class Vehicles if

the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 97**
**UNJUST ENRICHMENT**

1312. Plaintiffs Jones and Gulling ("Plaintiffs," for purposes of the Ohio Class's claims) repeat and reallege paragraphs 1-354 as if fully set forth herein.

1313. Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class ("Class," for purposes of this Count).

1314. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

1315. GM has received and retained unjust benefits from Plaintiffs and the other members of the Class, and inequity has resulted.

1316. It is inequitable and unconscionable for GM to retain these benefits.

1317. Because GM concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1318. GM knowingly accepted the unjust benefits of its wrongful conduct.

1319. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

**21. Claims Brought on Behalf of the Oklahoma Class**

**COUNT 98**
**VIOLATIONS OF THE OKLAHOMA CONSUMER PROTECTION ACT**
**Okla. Stat. tit. 15, §§ 751, *et seq*.**

1320. Plaintiff Warpinksi ("Plaintiff," for purposes of the Oklahoma Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1321. Plaintiff brings this Count individually and on behalf of the other members of the Oklahoma Class (the "Class," for purposes of this Count).

1322. By the conduct described in detail above and incorporated herein, GM engaged in unfair

trade practices and deceptive trade practices in violation of Okla. Stat. tit. 15, §§ 752 and 753.

1323. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

1324. GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

1325. Plaintiffs and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiffs and the other Class members' purchases of Class Vehicles.

1326. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiffs and the other Class members, Plaintiffs and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

1327. GM's omissions have deceived Plaintiffs, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

1328. In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiffs and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiffs and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiffs and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiffs or the other Class members could have reasonably avoided.

1329. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiffs and the other Class members have suffered ascertainable loss and actual damages. Plaintiffs and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiffs and the other Class members also suffered diminished

value of their vehicles. Plaintiffs and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Okla. Stat. tit. 15, §§ 751, *et seq.*

**COUNT 99**
**BREACH OF EXPRESS WARRANTY**
**Okla. Stat. tit. 12A, §§ 2-313 and 2A-210**

1330. Plaintiff Warpinksi ("Plaintiff," for purpose of the Oklahoma Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1331. Plaintiff brings this Count individually and on behalf of the other members of the Oklahoma Class (the "Class," for purposes of this Count).

1332. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1333. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1334. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1335. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1336. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous

complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1337. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1338. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

1339. Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

1340. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

1341. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 100**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Okla. Stat. tit. 12A, §§ 2-314 and 2A-212**

1342. Plaintiff Warpinski ("Plaintiff," for purposes of the Oklahoma Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1343. Plaintiff brings this Count individually and on behalf of the other members of the Oklahoma Class (the "Class," for purposes of this Count).

1344. GM is and was at all relevant times a merchant with respect to motor vehicles under Okla. Stat. tit. 12A, §§ 2-104 and 2A-103.

1345. Pursuant to Okla. Stat. tit. 12A, §§§ 2-314 and 2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

1346. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

1347. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1348. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

1349. As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 101**
**FRAUDULENT OMISSION**

1350. Plaintiff Warpinski ("Plaintiff," for purposes of the Oklahoma Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1351. Plaintiff brings this Count individually and on behalf of the other members of the Oklahoma Class (the "Class," for purposes of this Count).

1352. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1353. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300

Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1354.   GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1355.   For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

1356.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1357.   Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1358.   Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1359.   As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 102**
**UNJUST ENRICHMENT**

1360.   Plaintiff Warpinski ("Plaintiff," for purposes of the Oklahoma Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1361.   Plaintiff brings this Count individually and on behalf of the other members of the Oklahoma Class (the "Class," for purposes of this Count).

1362.   GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles

that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

1363. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1364. It is inequitable and unconscionable for GM to retain these benefits.

1365. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1366. GM knowingly accepted the unjust benefits of its wrongful conduct.

1367. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**22. Claims Brought on Behalf of the Oregon Class**

**COUNT 103**
**VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES LAW**
**Or. Rev. Stat. §§ 646.605, *et seq*.**

1368. Plaintiff Martell ("Plaintiff," for purposes of the Oregon Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1369. Plaintiff brings this Count individually and on behalf of the other members of the Oregon Class (the "Class," for purposes of this Count).

1370. GM, Plaintiff, and the Washington Class are "person[s]" under Or. Rev. Stat. § 646.605.

1371. GM engaged in "trade" or "commerce" under Or. Rev. Stat. § 646.605.

1372. The Oregon Unlawful Trade Practices Law broadly prohibits "unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(u).

1373. By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive conduct in violation of the Oregon Unlawful Trade Practices Law.

1374. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

1375. GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

1376. Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiffs and the other Class members' purchases of Class Vehicles.

1377. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

1378. GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

**COUNT 104**
**BREACH OF EXPRESS WARRANTY**
**Or. Rev. Stat. §§ 72.3130 and 72a.2100**

1379. Plaintiff Martell ("Plaintiff," for the purposes of the Oregon Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1380. Plaintiff brings this Count individually and on behalf of the other members of the Oregon Class (the "Class," for purposes of this Count).

1381. GM is and was at all relevant times a "merchant" with respect to motor vehicles under Or. Rev. Stat. §§ 72.1040 and 72.1030, and a "seller" of motor vehicles under § 72.1030.

1382. With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under Or. Rev. Stat. § 72a.1030.

1383. The Class Vehicles are and were at all relevant times "goods" within the meaning of OR. Rev. Stat. 72.1050 and 72a.1030.

1384. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1385. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1386. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1387. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1388. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1389. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

1390. Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

1391. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure

to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

1392. As a direct and proximate result of GM's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 105[45]**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Or. Rev. Stat. §§ 72.3140 and 72a.2120**

1393. Plaintiff Martell ("Plaintiff," for purposes of the Oregon Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1394. Plaintiff brings this Count individually and on behalf of the other members of the Oregon Class (the "Class," for purposes of this Count).

1395. GM is and was at all relevant times a "merchant" with respect to motor vehicles under Or. Rev. Stat. §§ 72.1040 and 72.1030, and a "seller" of motor vehicles under § 72.1030.

1396. With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under Or. Rev. Stat. § 72a.1030.

1397. The Class Vehicles are and were at all relevant times "goods" within the meaning of OR. Rev. Stat. §§ 72.1050 and 72a.1030.

1398. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied in law pursuant to Or. Rev. Stat. §§ 72.3140 and 72a.2120.

1399. The Class Vehicles, when sold or leased and at all times hereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that they contain the Oil Consumption Defect which causes excessive oil loss and engine damage.

1400. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by

[45] In light of the Court's dismissal of Plaintiff Martell's implied warranty claim for lack of privity (Dkt. No. 99 at 45), Plaintiffs include this Count in this Third Amended Class Action Complaint strictly to preserve it for purposes of appeal.

United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1401. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the implied warranty of merchantability.

1402. As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 106**
**FRAUDULENT OMISSION**

1403. Plaintiff Martell ("Plaintiff," for purposes of the Oregon Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1404. Plaintiff bring this Count individually and on behalf of the other members of the Oregon Class (the "Class," for purposes of this Count).

1405. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1406. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1407. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1408. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

1409. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1410. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect

within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1411. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1412. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 107**
**UNJUST ENRICHMENT**

1413. Plaintiff Martell ("Plaintiff," for purposes of the Oregon Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1414. Plaintiff bring this Count individually and on behalf of the other members of the Oregon Class (the "Class," for purposes of this Count).

1415. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

1416. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1417. It is inequitable and unconscionable for GM to retain these benefits.

1418. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1419. GM knowingly accepted the unjust benefits of its wrongful conduct.

1420. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**23. Claims Brought on Behalf of the Pennsylvania Class**

**COUNT 108**
**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**73 Pa. Cons. Stat. §§ 201-1, *et seq.***

1421. Plaintiff Graziano ("Plaintiff," for the purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1422. Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

1423. GM, Plaintiff, and the other members of the Class are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

1424. GM is engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

1425. The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 Pa. Cons. Stat. § 201-3.

1426. GM violated the Pennsylvania UTPA by engaging in unfair or deceptive acts or practices by marketing, selling, and leasing Class Vehicles that it knew to contain the Oil Consumption Defect, while not disclosing the Oil Consumption Defect to Plaintiff and the other Class members.

1427. GM intentionally and knowingly omitted material facts regarding the Class Vehicles with the intent to mislead Plaintiff and the other Class members.

1428. GM knew or should have known that its conduct violated the Pennsylvania UTPA.

1429. GM's concealment of the Oil Consumption Defect was material to Plaintiff and the other Class members.

1430. Plaintiff and the other Class members suffered ascertainable loss and actual damages as a direct and proximate result of GM's deceptive acts and omissions. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff and the other Class members also suffered diminished value of their vehicles, as well as lost or diminished use.

1431. Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), Plaintiff and the other Class members seek an order enjoining GM's unfair and/or deceptive acts or practices, damages – trebled, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

**COUNT 109**
**BREACH OF EXPRESS WARRANTY**
**13 Pa. Cons. Stat. §§ 2313 and 2A210**

1432. Plaintiff Graziano ("Plaintiff," for the purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1433. Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

1434. GM is and was at all relevant times a "merchant" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103, and a "seller" of motor vehicles under § 2103(a).

1435. With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

1436. The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

1437. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1438. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1439. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials

and workmanship defects.

1440. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1441. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1442. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

1443. Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

1444. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

1445. As a direct and proximate result of GM's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 110**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**13 Pa. Cons. Stat. §§ 2314 and 2A212**

1446. Plaintiff Graziano ("Plaintiff," for purposes of the Pennsylvania Class's claims) repeats

and realleges paragraphs 1-354 as if fully set forth herein.

1447. Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

1448. GM is and was at all relevant times a "merchant" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103, and a "seller" of motor vehicles under § 2103(a).

1449. With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

1450. The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

1451. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied in law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

1452. The Class Vehicles, when sold or leased and at all times hereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that they contain the Oil Consumption Defect which causes excessive oil loss and engine damage.

1453. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1454. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the implied warranty of merchantability.

1455. As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 111**
**FRAUDULENT OMISSION**

1456.   Plaintiff Graziano ("Plaintiff," for purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1457.   Plaintiff bring this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

1458.   GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1459.   Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1460.   GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1461.   For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

1462.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1463.   Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1464.   Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1465.   As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an

amount to be determined at trial.

**COUNT 112**
**UNJUST ENRICHMENT**

1466. Plaintiff Graziano ("Plaintiff," for purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1467. Plaintiff bring this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

1468. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

1469. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1470. It is inequitable and unconscionable for GM to retain these benefits.

1471. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1472. GM knowingly accepted the unjust benefits of its wrongful conduct.

1473. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**24. Claims Brought on Behalf of the South Carolina Class**

**COUNT 113**
**VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT**
**S.C. Code Ann. §§ 56-151-10, *et seq.***

1474. Plaintiff Sloan Jr. ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1475. Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

1476. Plaintiff and the other members of the South Carolina Class are natural persons and legal entities and, as such, constitute "persons" as defined by S.C. Code Ann. § 56-15-10(n).

1477.   GM is a "manufacturer" as defined by S.C. Code Ann. § 56-15-10(b).

1478.   S.C. Code Ann. §§ 56-16-30 and 56-15-40 declare unlawful all "unfair or deceptive acts or practices" by a manufacturer.

1479.   S.C. Code Ann. § 56-15-110 provides a private right of action for any person who is injured in his or her business or property by an unfair and/or deceptive act or practice.

1480.   By the conduct described in detail above and incorporated herein, GM engaged in unfair and/or deceptive acts or practices in violation of S.C. Code Ann. §§ 56-15-30 and 56-15-40.

1481.   GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

1482.   GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

1483.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

1484.   Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

1485.   GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

1486.   In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class

members could have reasonably avoided.

1487. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under S.C. Code Ann. § 56-15-110.

**COUNT 114**
**BREACH OF EXPRESS WARRANTY**
**S.C. Code Ann. §§ 36-2-313 and 36-2A-210**

1488. Plaintiff Sloan Jr. ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1489. Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

1490. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1491. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1492. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1493. GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials

and workmanship defects.

1494. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1495. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1496. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

1497. Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

1498. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

1499. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 115**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**S.C. Code Ann. §§ 36-2-314 and 36-2A-212**

1500. Plaintiff Sloan Jr. ("Plaintiff," for purposes of the South Carolina Class's claims) repeats

and realleges paragraphs 1-354 as if fully set forth herein.

1501. Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

1502. GM is and was at all relevant times a merchant with respect to motor vehicles under S.C. Code Ann. §§ 36-2-104 and 36-2A-103.

1503. Pursuant to S.C. Code Ann. §§ 36-2-314 and 36-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

1504. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

1505. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1506. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

1507. As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 116**
**FRAUDULENT OMISSION**

1508. Plaintiff Sloan Jr. ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1509. Plaintiff brings this Count individually and on behalf of the other members of the South

Carolina Class (the "Class," for purposes of this Count).

1510. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1511. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1512. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1513. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

1514. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1515. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1516. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1517. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 117**
**UNJUST ENRICHMENT**

1518. Plaintiff Sloan Jr. ("Plaintiff," for purposes of the South Carolina Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1519. Plaintiff brings this Count individually and on behalf of the other members of the South Carolina Class (the "Class," for purposes of this Count).

1520. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

1521. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1522. It is inequitable and unconscionable for GM to retain these benefits.

1523. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1524. GM knowingly accepted the unjust benefits of its wrongful conduct.

1525. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**25. Claims Brought on Behalf of the Tennessee Class**

**COUNT 118**
**VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT**
**Tenn. Code Ann. §§ 47-18-101, *et seq.***

1526. Plaintiff Byrge ("Plaintiff," for purposes of the Tennessee Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1527. Plaintiff brings this Count individually and on behalf of the other members of the Tennessee Class (the "Class," for purposes of this Count).

1528. Pursuant to the Tennessee Consumer Protection Act, "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce" are unlawful. Tenn. Code Ann. § 47-18-104.

1529. By the conduct described in detail above and incorporated herein, GM engaged in unfair

or deceptive acts in violation of Tenn. Code Ann. § 47-18-104

1530.   GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

1531.   GM intended for Plaintiff and the other Class members to rely on GM's omissions of fact regarding the Oil Consumption Defect.

1532.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

1533.   Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

1534.   GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

1535.   In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

1536.   As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed.  Plaintiff and the other Class members also suffered diminished value of their vehicles.

Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Tenn. Code Ann. § 47-18-101, *et seq.*

**COUNT 119**
**BREACH OF EXPRESS WARRANTY**
**Tenn. Code Ann. §§ 47-2-313 and 47-2A-210**

1537. Plaintiff Byrge ("Plaintiff," for purpose of the Tennessee Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1538. Plaintiff brings this Count individually and on behalf of the other members of the Tennessee Class (the "Class," for purposes of this Count).

1539. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1540. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1541. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1542. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1543. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous

complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1544.   Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1545.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

1546.   Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

1547.   Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

1548.   As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 120**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Tenn. Code Ann. §§ 47-2-314 and 47-2A-212**

1549.   Plaintiff Byrge ("Plaintiff," for purposes of the Tennessee Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1550.   Plaintiff brings this Count individually and on behalf of the other members of the Tennessee Class (the "Class," for purposes of this Count).

1551.   GM is and was at all relevant times a merchant with respect to motor vehicles under Tenn. Code Ann. §§ 47-2-104 and 47-2A-103.

1552. Pursuant to Tenn. Code Ann. §§ 47-2-314 and 47-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

1553. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

1554. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1555. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

1556. As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 121**
**FRAUDULENT OMISSION**

1557. Plaintiff Byrge ("Plaintiff," for purposes of the Tennessee Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1558. Plaintiff brings this Count individually and on behalf of the other members of the Tennessee Class (the "Class," for purposes of this Count).

1559. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1560. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300

Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1561.   GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1562.   For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

1563.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1564.   Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1565.   Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1566.   As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 122**
**UNJUST ENRICHMENT**

1567.   Plaintiff Byrge ("Plaintiff," for purposes of the Tennessee Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1568.   Plaintiff brings this Count individually and on behalf of the other members of the Tennessee Class (the "Class," for purposes of this Count).

1569.   GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff

and the other members of the Class have overpaid for these vehicles.

1570. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1571. It is inequitable and unconscionable for GM to retain these benefits.

1572. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1573. GM knowingly accepted the unjust benefits of its wrongful conduct.

1574. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**26. Claims Brought on Behalf of the Texas Class**

**COUNT 123**
**VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT**
**Tex. Bus. & Com. Code §§ 17.01, *et seq.***

1575. Plaintiff Sanchez ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1576. Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count).

1577. The Texas Deceptive Trade Practices—Consumer Protection Act ("TDTPA") states that it is unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46.

1578. By the conduct described in detail above and incorporated herein, GM engaged in false, misleading and deceptive trade practices.

1579. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed

on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1580.   GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

1581.   GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

1582.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

1583.   Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

1584.   GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

1585.   In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

1586.   As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class

Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under the TDTPA.

**COUNT 124**
**BREACH OF EXPRESS WARRANTY**
**Tex. Bus. & Com. Code §§ 2.313 and 2A.210**

1587. Plaintiff Sanchez ("Plaintiff" for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1588. Plaintiff brings this Count individually and on behalf of the Texas Class (the "Class," for purposes of this Count).

1589. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1590. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1591. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1592. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1593. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by

United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1594. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1595. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

1596. Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

1597. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

1598. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 125**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Tex. Bus. & Com. Code §§ 2.314 and 2A.212**

1599. Plaintiff Sanchez ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1600. Plaintiff brings this Count individually and on behalf of the Texas Class (the "Class," for purposes of this Count).

1601.   GM is and was at all relevant times a merchant with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104 and 2A.103.

1602.   Pursuant to Tex. Bus. & Com. Code §§ 2.314 and 2A.212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

1603.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

1604.   Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1605.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

1606.   As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 126**
**FRAUDULENT OMISSION**

1607.   Plaintiff Sanchez ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1608.   Plaintiff brings this Count individually and on behalf of the other members of the Texas Class (the "Class," for purposes of this Count).

1609.   GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300

Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1610. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1611. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1612. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

1613. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1614. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1615. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1616. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial

**COUNT 127**
**UNJUST ENRICHMENT**

1617. Plaintiff Sanchez ("Plaintiff," for purposes of the Texas Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1618. Plaintiff brings this Count individually and on behalf of the other members of the Texas (the "Class," for purposes of this Count).

1619. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

1620. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1621. It is inequitable and unconscionable for GM to retain these benefits.

1622. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1623. GM knowingly accepted the unjust benefits of its wrongful conduct.

1624. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**27. Claims Brought on Behalf of the Virginia Class**

**COUNT 128**
**VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT**
**Va. Code Ann. §§ 59.1-196, *et seq.***

1625. Plaintiff Thacker ("Plaintiff," for purposes of the Virginia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1626. Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

1627. GM, Plaintiffs, and the other Class members are "persons" within the meaning of Va. Code Ann. § 59.1-198. GM is a "supplier" as defined by Va. Code Ann. § 59.1-198.

1628. The purchase and lease of the Class Vehicles by Plaintiff and the other Class members are "consumer transactions" within the meaning of Va. Code Ann. § 59.1-198.

1629. The Virginia Consumer Protection Act prohibits "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

1630. By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of Va. Code Ann. § 59.1-200.

1631.   GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

1632.   GM intended for Plaintiff and the other Class members to rely on GM's omissions of fact regarding the Oil Consumption Defect.

1633.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

1634.   Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

1635.   GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other Class members.

1636.   In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

1637.   As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed.  Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs,

and all other relief allowed under Va. Code Ann. §§ 59.1-196, *et seq.*

**COUNT 129**
**BREACH OF EXPRESS WARRANTY**
**Va. Code Ann. §§ 8.2-313 and 8.2a-210**

1638. Plaintiff Thacker ("Plaintiff," for purpose of the Virginia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1639. Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

1640. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1641. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1642. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1643. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1644. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering

knowledge.

1645. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1646. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

1647. Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

1648. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

1649. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 130**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Va. Code Ann. §§ 8.2-314 and 8.2a-212**

1650. Plaintiff Thacker ("Plaintiff," for purposes of the Virginia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1651. Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

1652. GM is and was at all relevant times a merchant with respect to motor vehicles under Va. Code Ann. §§ 8.2-104 and 8.2a-103.

1653. Pursuant to Va. Code Ann. §§ 8.2-314 and 8.2a-212, a warranty that the Class Vehicles

were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

1654.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.   Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes excessive oil loss and leads to engine damage.

1655.   Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.   The return receipt was signed on October 28, 2016.   GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1656.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

1657.   As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 131**

**FRAUDULENT OMISSION**

1658.   Plaintiff Thacker ("Plaintiff," for purposes of the Virginia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1659.   Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

1660.   GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1661.   Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably

been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1662. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1663. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

1664. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1665. Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1666. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1667. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 132**
**UNJUST ENRICHMENT**

1668. Plaintiff Thacker ("Plaintiff," for purposes of the Virginia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1669. Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

1670. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff

and the other members of the Class have overpaid for these vehicles.

1671. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1672. It is inequitable and unconscionable for GM to retain these benefits.

1673. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1674. GM knowingly accepted the unjust benefits of its wrongful conduct.

1675. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**28. Claims Brought on Behalf of the Washington Class**

**COUNT 133**
**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**
**Wash. Rev. Code §§ 19.86.010, *et seq.***

1676. Plaintiff Harris ("Plaintiff," for purposes of the Washington Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1677. Plaintiff brings this Count individually and on behalf of the other members of the Washington Class (the "Class," for purposes of this Count).

1678. GM, Plaintiff, and the Washington Class are "person[s]" under Wash. Rev. Code § 19.86.010(1).

1679. GM engaged in "trade" or "commerce" under Wash. Rev. Code § 19.86.010(2).

1680. The Washington Consumer Protection Act broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code. § 19.86.020.

1681. By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of the Washington Consumer Protection Act.

1682. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to

purchase (or to pay the same price for) the Class Vehicles.

1683. GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

1684. Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

1685. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

1686. GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

1687. In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiff and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

1688. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Wash. Rev. Code § 19.86.090.

**COUNT 134**
**BREACH OF EXPRESS WARRANTY**
**Wash. Rev. Code § 62A.2-313 and 62A.2A-210**

1689. Plaintiff Harris ("Plaintiff," for purpose of the Washington Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1690. Plaintiff brings this Count individually and on behalf of the other members of the Washington Class (the "Class," for purposes of this Count).

1691. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1692. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1693. GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1694. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles. GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1695. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1696. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1697. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

1698. Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

1699. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the other Class members' remedies would be insufficient to make them whole.

1700. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 135**
**FRAUDULENT OMISSION**

1701. Plaintiff Harris ("Plaintiff," for purposes of the Washington Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1702. Plaintiff bring this Count individually and on behalf of the other members of the Washington Class (the "Class," for purposes of this Count).

1703. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiffs and the other members of the Class.

1704. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably

been expected to know of the Oil Consumption Defect, GM had a good-faith duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1705.   GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1706.   For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

1707.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1708.   Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1709.   Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1710.   As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 136**
**UNJUST ENRICHMENT**

1711.   Plaintiff Harris ("Plaintiff," for purposes of the Washington Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1712.   Plaintiff brings this Count individually and on behalf of the other members of the Washington Class (the "Class," for purposes of this Count).

1713.   GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and

Plaintiffs and the other members of the Class have overpaid for these vehicles.

1714. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1715. It is inequitable and unconscionable for GM to retain these benefits.

1716. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1717. GM knowingly accepted the unjust benefits of its wrongful conduct.

1718. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**29. Claims Brought on Behalf of the West Virginia Class**

**COUNT 137**
**VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTIONS ACT**
**W. Va. Code §§ 46A-6-101, *et seq.***

1719. Plaintiff Robertson ("Plaintiff," for purposes of the West Virginia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1720. Plaintiff brings this claim individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count).

1721. The West Virginia Consumer Credit and Protections Act, W. Va. Code § 46A-6-104, states that, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1722. By the conduct described in detail above and incorporated herein, GM engaged in unfair or deceptive acts in violation of the West Virginia Consumer Credit and Protections Act.

1723. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

1724. GM intended for Plaintiff and the other Class members to rely on GM's omissions

regarding the Oil Consumption Defect.

1725.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

1726.   Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

1727.   GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

1728.   In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiffs and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

1729.   As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed.  Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under W. Va. Code § 46A-6-101, *et seq.*

**COUNT 138**
**BREACH OF EXPRESS WARRANTY**
**W. Va. Code §§ 46-2-213 and 46-2A-210**

1730.   Plaintiff Robertson ("Plaintiff," for the purposes of the West Virginia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1731.  Plaintiff brings this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count).

1732.  GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1733.  In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1734.  GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1735.  GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1736.  Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1737.  Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1738.  Accordingly, recovery by Plaintiff and the other Class members is not limited to the

limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

1739. Also, as alleged in more detail herein, at the time that GM warranted, leased, and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

1740. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

1741. As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 139**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**W. Va. Code §§ 46-2-314 and 46-2A-212**

1742. Plaintiff Robertson ("Plaintiff," for purposes of the West Virginia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1743. Plaintiff brings this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count).

1744. GM is and was at all relevant times a merchant with respect to motor vehicles under W. Va. Code §§ 46-2-104 and 46-2A-103.

1745. Pursuant to W. Va. Code §§ 46-2-314 and 46-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

1746. The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Oil Consumption Defect which causes

excessive oil loss and leads to engine damage.

1747. Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016 and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan. The return receipt was signed on October 28, 2016. GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1748. Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and GM's breach of the warranty of merchantability.

1749. As a direct and proximate result of GM's breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 140**
**FRAUDULENT OMISSION**

1750. Plaintiff Robertson ("Plaintiff," for purposes of the West Virginia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1751. Plaintiff brings this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count).

1752. GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1753. Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1754. GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1755. For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class

Vehicles.

1756.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1757.   Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1758.   Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1759.   As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 141**
**UNJUST ENRICHMENT**

1760.   Plaintiff Robertson ("Plaintiff," for purposes of the West Virginia Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1761.   Plaintiff brings this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count).

1762.   GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

1763.   GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1764.   It is inequitable and unconscionable for GM to retain these benefits.

1765.   Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's

misconduct.

1766. GM knowingly accepted the unjust benefits of its wrongful conduct.

1767. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**30. Claims Brought on Behalf of the Wisconsin Class**

**COUNT 142**
**VIOLATIONS OF WISCONSIN'S DECEPTIVE TRADE PRACTICES ACT**
**Wis. Stat. § 100.18**

1768. Plaintiff Bednarek ("Plaintiff," for purposes of the Wisconsin Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1769. Plaintiff brings this claim individually and on behalf of the other members of the Wisconsin Class (the "Class," for purposes of this Count).

1770. Wis. Stat. § 100.18 prohibits, in connection with the sale and lease of merchandise any "representation or statement of fact which is untrue, deceptive or misleading."

1771. By the conduct described in detail above and incorporated herein, GM engaged in deceptive trade practices.

1772. GM's omissions regarding the Oil Consumption Defect, described above, that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

1773. GM intended for Plaintiff and the other Class members to rely on GM's omissions regarding the Oil Consumption Defect.

1774. Plaintiff and the other Class members justifiably acted or relied to their detriment upon GM's omissions of fact concerning the above-described Oil Consumption Defect that results in abnormally high oil consumption and resultant engine damage within the Generation IV Vortec 5300 Engines, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

1775. Had GM disclosed all material information regarding the Oil Consumption Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased

or leased Class Vehicles or would have paid less to do so.

1776. GM's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

1777. In addition to being deceptive, the business practices of GM were unfair because GM knowingly sold Plaintiffs and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of GM's exclusive knowledge of the Oil Consumption Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

1778. As a direct and proximate result of GM's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Oil Consumption Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Wis. Stat. § 100.18.

**COUNT 143**
**BREACH OF EXPRESS WARRANTY**
**Wis. Stat. §§ 402.313 and 411.210**

1779. Plaintiff Bednarek ("Plaintiff," for the purposes of the Wisconsin Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1780. Plaintiff brings this Count individually and on behalf of the other members of the Wisconsin Class (the "Class," for purposes of this Count).

1781. GM is and was at all relevant times a merchant with respect to the Class Vehicles.

1782. In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period. GM provides the following language in its 2012 Chevrolet Limited Warranty guide:

> This warranty is for GM vehicles registered in the United States and normally

> operated in the United States and Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> The warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship occurring during the warranty period.
>
> Warranty repairs, including towing, parts, and labor, will be made at no charge.

1783.   GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Generation IV Vortec 5300 Engines.

1784.   GM breached its express warranty to repair defects in materials and workmanship within the Class Vehicles.  GM has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

1785.   Donald Ludington, individually and on behalf of the other Nationwide Class members, notified GM of the Oil Consumption Defect in the Generation IV Vortec 5300 Engines, and its corresponding breach of warranty, through a notice letter dated October 27, 2016, and delivered by United States Certified Mail to GM's headquarters in Detroit, Michigan.  The return receipt was signed on October 28, 2016.  GM was also provided notice of the Oil Consumption Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

1786.   Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provided the promised remedies within a reasonable time.

1787.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

1788.   Also, as alleged in more detail herein, at the time that GM warranted, leased, and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the GM Vehicles under false pretenses.

1789.   Moreover, much of the damage flowing from the Class Vehicles cannot be resolved

through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to GM's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

1790.   As a direct and proximate result of GM's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT 144**
**FRAUDULENT OMISSION**

1791.   Plaintiff Bednarek ("Plaintiff," for purposes of the Wisconsin Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1792.   Plaintiff brings this Count individually and on behalf of the other members of the Wisconsin Class (the "Class," for purposes of this Count).

1793.   GM was aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

1794.   Having been aware of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Oil Consumption Defect, GM had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

1795.   GM did not disclose the Oil Consumption Defect within the Generation IV Vortec 5300 Engines to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

1796.   For the reasons set forth above, the Oil Consumption Defect within the Generation IV Vortec 5300 Engines comprises material information with respect to the sale or lease of the Class Vehicles.

1797.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on GM to disclose known material defects with respect to the Class Vehicles.

1798.   Had Plaintiff and the other members of the Class known of the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

1799. Through its omissions regarding the Oil Consumption Defect within the Generation IV Vortec 5300 Engines, GM intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1800. As a direct and proximate result of GM's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Oil Consumption Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 145**
**UNJUST ENRICHMENT**

1801. Plaintiff Bednarek ("Plaintiff," for purposes of the Wisconsin Class's claims) repeats and realleges paragraphs 1-354 as if fully set forth herein.

1802. Plaintiff brings this Count individually and on behalf of the other members of the Wisconsin Class (the "Class," for purposes of this Count).

1803. GM has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to GM's concealment of the Oil Consumption Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

1804. GM has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

1805. It is inequitable and unconscionable for GM to retain these benefits.

1806. Because GM concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1807. GM knowingly accepted the unjust benefits of its wrongful conduct.

1808. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Nationwide

Class and the Statewide Classes they respectively seek to represent, respectfully request that the Court enter judgment in their favor and against Defendant, General Motors LLC, as follows:

1. Declaring that this action is a proper class action, certifying the Nationwide and Statewide Classes as requested herein, designating Plaintiffs as Nationwide and Statewide Class Representatives, an appointing Plaintiffs' attorneys as Class Counsel;

2. Enjoining GM from continuing the unfair business practices alleged in this Complaint;

3. Ordering GM to pay actual and statutory damages (including punitive damages) and restitution to Plaintiffs and the other Nationwide and Statewide Class members, as allowable by law;

4. Ordering GM to pay both pre- and post-judgment interest on any amounts awarded;

5. Ordering GM to pay attorneys' fees and costs of suit; and

6. Ordering such other and further relief as may be just and proper.

## IX. JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

**DATED:** March 23, 2018

/s/ Adam J. Levitt

Adam J. Levitt (*pro hac vice*)
John E. Tangren (*pro hac vice*)
Daniel R. Ferri (*pro hac vice*)
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dlcfirm.com
jtangren@dlcfirm.com
dferri@dlcfirm.com

Jennie Lee Anderson
Lori E. Andrus
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
H. Clay Barnett, III (*pro hac vice*)
Archie I. Grubb, II (*pro hac vice*)
Andrew E. Brashier (*pro hac vice*)
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104

Telephone: 334-269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Archie.Grubb@Beasleyallen.com
Andrew.Brashier@Beasleyallen.com

Nicholas R. Rockforte (*pro hac vice* motion to be filed)
Christopher L. Coffin (*pro hac vice* motion to be filed)
**PENDLEY, BAUDIN & COFFIN, L.L.P.**
1515 Poydras Street, Suite 1400
New Orleans, Louisiana 70112
Telephone:  (504) 355-0086
nrockforte@pbclawfirm.com
ccoffin@pbclawfirm.com

Marcus Rael (*pro hac vice* motion to be filed)
**ROBLES, RAEL & ANAYA, P.C.**
500 Marquette NW, Suite 700
Albuquerque, New Mexico  87102
Telephone:  505-242-2228
marcus@roblesrael.com

Anthony J. Garcia, Esq. (*pro hac vice*)
**AG LAW**
742 South Village Circle
Tampa, Florida  33606
Telephone:  813-259-9555
anthony@aglawinc.com

Timothy J. Becker (*pro hac vice*)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, Minnesota  55101
Telephone: 612-436-1800
tbecker@johnsonbecker.com

Ben Finley (*pro hac vice* motion to be filed)
**THE FINLEY FIRM, P.C.**
200 13th Street
Columbus, Georgia  31901
Telephone: 706-322-6226
bfinley@thefinleyfirm.com

Eric J. Haag (*pro hac vice*)
**ATTERBURY, KAMMER, & HAAG, S.C.**
8500 Greenway Boulevard, Suite 103
Middleton, Wisconsin  53562
Telephone: 608-821-4600
ehaag@wiscinjurylawyers.com

***Counsel for Plaintiffs and the Proposed Classes***

Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Adam J. Levitt*
John E. Tangren*
Daniel R. Ferri*
**GRANT & EISENHOFER P.A.**
30 North LaSalle Street, Suite 2350
Chicago, Illinois 60602
Telephone: (312) 214-0000
alevitt@gelaw.com
jtangren@gelaw.com
dferri@gelaw.com

W. Daniel "Dee" Miles, III*
H. Clay Barnett, III*
Archie I. Grubb, II*
Andrew E. Brashier*
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Archie.Grubb@Beasleyallen.com
Andrew.Brashier@Beasleyallen.com

*Motions to appear *pro hac vice* to be filed

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MONTEVILLE SLOAN, JR., RAUL SIQUEIROS, JOSEPH BRANNAN, DONALD LUDINGTON, THOMAS SHORTER, GABRIEL DEL VALLE, GAIL LANNOM, BRADLEY K. ZIERKE, ROSS DAHL, DREW PETERSON, BARBARA MOLINA, STEVEN EHRKE, BILL MAUCH, THOMAS GULLING, RONALD JONES, and JOHN GRAZIANO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | Case No.:<br><br>***EXHIBIT A* TO COMPLAINT: DECLARATION OF RAUL SIQUEIROS** |

I, Raul Siqueiros, declare:

1. I am a Plaintiff in this action. The following is based upon my personal knowledge and if called upon as a witness to testify in this matter, I could and would testify competently thereto.

2. I make this Declaration pursuant to California Civil Code section 1780(d) so as to state facts showing that this action has been commenced in the proper county.

3. Based upon information provided to me by my counsel, Clay Barnett, it is my belief that Defendant General Motors LLC ("GM") does business in the County of San Francisco, a county within the Northern District of California. The information provided to me is from GM's website at http://www.gm.com/mol/m-2016-nov-1117-maven.html, which states that GM is operating its personal mobility service, Maven, in San Francisco.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 19, 2016.

Raul Siqueiros

**ECF CERTIFICATION**

Pursuant to Civil L.R. 5-1(i)(3), the filing attorney attests that she has obtained concurrence regarding the filing of this document from the signatories to the document.

Date: March 23, 2018

By: *_____/s/ Jennie Lee Anderson_______*

Jennie Lee Anderson

Jennie Lee Anderson
Lori E. Andrus
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com