UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTEVILLE SLOAN, et al., <br> Plaintiffs, <br> v. <br> GENERAL MOTORS LLC, <br> Defendant. | Case No. 16-cv-07244-EMC <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF SZEP'S CLAIMS IN THE FIFTH AMENDED COMPLAINT** <br><br> Docket No. 158 |

## I. INTRODUCTION

Plaintiffs allege that Defendant General Motors ("GM") knowingly manufactured and sold a car engine with inherent defects that caused excessive oil consumption and engine damage. The defects affect 2010 to 2014 model-year GM vehicles. Based on those allegations, Plaintiffs assert claims under various state consumer-protection and fraud statutes on behalf of a nationwide class as well as twenty-nine statewide classes. Plaintiffs' original class action complaint was filed in December 19, 2016. Docket No. 2. They have since amended their pleadings several times, and the operative complaint is the Fifth Amended Complaint ("5AC"). Docket No. 157. Before the Court is Defendant's Motion to Dismiss Plaintiff Szep's Claims in the Fifth Amended Complaint. Docket No. 158.

## II. BACKGROUND

A. Factual Background

Although individual Plaintiffs' discussion of the alleged defects' impact on their own vehicles has evolved somewhat since prior complaints, the core factual background of this case remains the same. Plaintiffs allege that the Gen IV Vortec 5300 engine suffers from an "inherent"

"Oil Consumption Defect." 5AC ¶ 7. The engine was installed in each of the Class Vehicles: the 2010-2014 Chevrolet Avalanche; 2010-2012 Chevrolet Colorado; 2010-2013 Chevrolet Express; 2010-2013 Chevrolet Silverado; 2010-2014 Chevrolet Suburban; 2010-2014 Chevrolet Tahoe; 2010-2013 GMC Canyon; 2010-2013 GMC Savana; 2010-2013 GMC Sierra; 2010-2014 GMC Yukon; and the 2010-2014 GMC Yukon XL. *Id.* ¶ 2.

Plaintiffs identify five defects that "contribute" to the overall "Oil Consumption Defect." *Id.* ¶ 7–13. First, the "primary cause" is "piston rings . . . [that] do not maintain sufficient tension to keep oil in the crankcase." *Id.* ¶ 8. Second, the Active Fuel Management (AFM) system "contributes" to the defect by "spraying oil directly at the piston skirts," which "overloads and fouls the defective piston rings, triggering oil migration past the rings." *Id.* ¶ 9. Third, the PCV system "vacuums oil from the valvetrain into the intake system, where it is ultimately burned in the combustion chambers" contributing to excessive oil combustion. *Id.* ¶ 10. Fourth, the defective "Oil Life Monitoring System" does not monitor oil level, but rather, engine conditions like revolutions and temperature to predict oil quality. *Id.* ¶ 11. Because it does not take oil *level* into account, the system "directs drivers to travel thousands of miles with inadequate engine lubricity levels, wearing out and damaging moving internal engine components." *Id.* Fifth, the oil pressure gauge "*does not* provide any indication as to when the oil pressure . . . falls to levels low enough to damage internally lubricated parts or cause engine failure" and the oil canister symbol does not illuminate "until well past the time when the Class Vehicles are critically oil starved." *Id.* ¶ 13. Furthermore, plaintiffs contend that "oil migration from the Oil Consumption Defect fouls spark plugs no matter how often drivers top off their oil levels." *Id.* ¶ 14. This problem can, in turn, cause "engine misfires and shutdown events." *Id.*

Plaintiffs allege that, GM "instructed its dealers to address the excessive oil loss problem . . . by performing stop-gap fixes . . . [and] decarbonize[ing] combustion chambers and rings with chemical abrasives," *id.* ¶ 15, an approach which "failed to provide a complete, and adequate, remedy for the Oil Consumption Defect that has plagued – and continues to plague – each of the Class Vehicles." *Id.* In 2014, GM replaced the Generation IV Vortec 5300 Engine with a Generation V version that was "designed and intended to remedy the excessive oil consumption

2

problem plaguing the Class Vehicles." *Id.* ¶ 16. Plaintiffs contend, however, that the change "did nothing for the owners and lessees of the Class Vehicles, namely, Plaintiffs and the other Class members . . . [who] remain saddled with their defective Generation IV Vortec 5300 Engines with no relief from GM." *Id.* ¶ 17. Those owners and lessees were "damaged in that they paid more for their Class Vehicles than they would have paid had they known about the defect that GM failed to disclose, or they would not have purchased or leased their Class Vehicles at all." *Id.* ¶ 20.

Plaintiffs allege that "GM has long known of the Oil Consumption Defect and the resulting engine damage." *Id.* ¶ 18. They point to the "extraordinary number of complaints" GM received about excessive oil consumption and GM's issuance of "Technical Service Bulletins" to dealers addressing problems with excessive oil consumption as evidence of the company's knowledge. *Id.* However, Plaintiffs contend that "[d]espite this knowledge, GM continued selling and leasing Class Vehicles without ever disclosing the Oil Consumption Defect. Indeed, GM has never disclosed the Oil Consumption Defect to consumers." *Id.* ¶ 19.

Turning to Thomas Szep's claims in particular, he is a resident of Mayfield, Ohio, *id.* ¶ 155, who "owns a 2011 Chevrolet Silverado, equipped with a Generation IV Vortec 5300 Engine. Mr. Szep purchased his Silverado from Tim Lallie Chevrolet in Bedford Heights, Ohio," *id.* ¶ 156. He alleges that "GM failed to disclose the Oil Consumption Defect to [him] before he purchased his Silverado, despite GM's knowledge of the defect, and [he], therefore, purchased his Silverado with the incorrect understanding that it would be a reliable vehicle." *Id.* ¶ 157. As summarized in Defendant's Motion to Dismiss Plaintiff Szep's Claims in the Fifth Amended Complaint, "Szep attempts to bring five claims under Ohio law: (1) violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.01, et seq. (Count 93); (2) breach of express warranty, Ohio Rev. Code Ann. §§ 1302.26 and 1310.17 (Count 94); (3) breach of implied warranty in tort (Count 95); (4) fraudulent omission (Count 96); and (5) unjust enrichment (Count 97). Szep also joins in Plaintiffs' nationwide claim under the Magnuson Moss Warranty Act ("MMWA"), but admits . . . he is re-stating this dismissed claim only to preserve it for appeal." Motion to Dismiss Plaintiff Szep's Claims in the Fifth Amended Complaint ("MTD") at 1, Docket No. 158.

B. Procedural Background

Plaintiffs all "purchased or leased one or more model year 2010-2013 GM vehicles fitted with GM's defective Generation IV 5.3 Liter V8 Vortec 5300 engines." 5AC at 2. The named plaintiffs bring their claims on behalf of a nationwide class and also seek to represent the following statewide classes:

| Named Plaintiff | State of Intended Representation |
|---|---|
| Raul Siqueiros | California |
| Todd and Jill Cralley | |
| Joseph Brannan | Alabama |
| Larry Goodwin | Arkansas |
| Marc Perkins | Delaware |
| Thomas Shorter | Florida |
| Derick Bradford | Georgia |
| Gabriel Del Valle | Idaho |
| Kevin Hanneken | Illinois |
| Katelyn Doepel and Edwin Doepel III | |
| Dan Madson | Kansas |
| James Faulkner | Kentucky |
| Joseph Olivier | Louisiana |
| Scott Smith | Massachusetts |
| Ross Dahl | Minnesota |
| Drew Peterson | |
| Michael Ware | Mississippi |
| Steve Kitchen | Missouri |
| John Knoll | New Jersey |
| Barbara Molina | New Mexico |
| Dennis Vita | New York |
| William Davis, Jr. | North Carolina |
| Thomas Szep | Ohio |
| Mike Warpinski | Oklahoma |
| William Martell | Oregon |
| John Graziano | Pennsylvania |
| Monteville Sloan, Jr. | South Carolina |
| Joshua Byrge | Tennessee |
| Rudy Sanchez | Texas |
| Christopher Thacker | Virginia |
| Kelly Harris | Washington |
| James Robertson | West Virginia |
| Jonas Bednarek | Wisconsin |

*Id.* at 58–60.

Plaintiffs first filed their complaint in December 2016, *see* Docket No. 2, followed by a

4

First Amended Complaint ("FAC") in February 2017, *see* Docket No. 29. The named plaintiffs who filed the original complaint sought to represent classes from thirteen states. *Id.* at 25–26. On August 1, 2017, the Court dismissed the FAC in its entirety with leave to amend. *See* Docket No. 62 ("FAC Order"). Later that same month, Plaintiffs filed a Second Amended Complaint ("SAC"), *see* Docket No. 67, which added named plaintiffs from twenty additional states, *id.* at 55–56. After extensive briefing, the Court dismissed the Second Amended Complaint in part. *See* Docket No. 99 ("SAC Order"). In March 2018, Plaintiffs filed a Third Amended Complaint ("TAC"), *see* Docket No. 107, which added a plaintiff from one additional state, *id.* at 11. Plaintiffs subsequently sought leave to file a Fourth Amended Complaint ("4AC"), *see* Docket No. 120 ("First Mot. for Leave"), in order to "substitute William Davis, Jr., a member of the putative North Carolina class, in place of the current North Carolina class representative, Steven Ehrke, who is no longer able to participate in this litigation." First Mot. for Leave at 1. No other change to the complaint was sought. *Id.* The Court granted the parties' joint stipulation to the filing of a Fourth Amended Complaint, permitting substitution of the North Carolina class representative. *See* Docket No. 122. After filing a Fourth Amended Complaint in November 2018, *see* Docket No. 123, Plaintiffs again sought leave to file a Fifth Amended Complaint in May 2019, *see* Docket No. 141 ("Second Mot. for Leave"). The purpose behind the request to file a Fifth Amended Complaint was the substitution of "Thomas Szep in place of the current Ohio class representatives, Thomas Gulling and Ronald Jones, who are for personal reasons no longer able to participate in this litigation." Second Mot. for Leave at 1. No other modification of the Fourth Amended Complaint was sought. *Id.*

Defendant opposed Plaintiffs' Motion for Leave to File a Fifth Amended Complaint, *see* Docket No. 153 ("Opposition to 5AC"), on the grounds that "add[ing] an Ohio plaintiff . . . comes too late and would be unfair and prejudicial to GM based on the history of this case and governing legal standards." Opposition to 5AC at 1. More specifically, GM argued that "[c]hanging the parties and allegations after discovery is closed would deprive GM of the ability to fully defend itself. It would embroil the court again in pleadings and motions practice, upheave the current schedule, and disrupt the class certification proceedings set to begin in a few weeks." *Id.* at 2. On

5

1  July 2, 2019, the Court granted Plaintiffs' Motion for Leave to File a Fifth Amended Complaint.
*See* Docket No. 156. Plaintiffs filed a Fifth Amended Complaint that same day, *see* Docket No. 157, and Defendant subsequently filed a Motion to Dismiss Plaintiff Szep's Claims in the Fifth Amended Complaint, *see* Docket No. 158.

As noted in the Court's prior orders, in order to address manageability concerns raised by the Court, the parties agreed that Plaintiffs' initial motion for class certification would be limited to five bellwether states: California, New Jersey, Ohio, North Carolina, and Texas. *See* Docket No. 113. A Motion to Certify the Class was filed with the Court on September 3, 2019. *See* Docket No. 175. A hearing on the issue of class certification and GM's Motion for Partial Summary Judgment is scheduled to take place on January 16, 2020. *See* Docket Nos. 175, 184.

### III.   DISCUSSION

A.   Legal Standard

Defendants move to dismiss the claims of Ohio class representative Plaintiff Szep for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). MTD at 1–3. Under Rule 12(b)(2), a plaintiff bears the burden of establishing personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction." *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1042 (N.D. Cal. 2018) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). "Where not directly controverted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion," and "conflicts between the facts contained in the parties' [evidentiary submissions] must be resolved in [plaintiff's] favor." *Unocal Corp.*, 248 F.3d at 922 (quoting *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss

after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

B. <u>Analysis</u>

1. Specific Personal Jurisdiction

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n. 8 (9th Cir.1977)). Since the Supreme Court's "seminal decision in *International Shoe*," courts "have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779–80 (2017).

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction." *Id.* at 1780 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Plaintiffs do not contend that the Court has general jurisdiction over GM. A court may exercise

---

[1] A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

7

general jurisdiction over a corporation in its "place of incorporation . . . [or] principal place of business." *Daimler*, 571 U.S. at 137. Plaintiffs note in their Fifth Amended Complaint that GM "is a Delaware limited liability company, with its principal place of business . . . [in] Detroit, Michigan." 5AC ¶ 227. They also acknowledge that GM is therefore "a citizen of Delaware and Michigan." *Id.* Thus, there is no contention that the Court has general jurisdiction over GM.

As the Court noted in its previous Order, whether the Court may assert specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *See* SAC Order at 9 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotation marks and citation omitted)). For specific jurisdiction to exist, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Axiom Foods*, 874 F.3d at 1068 (internal quotation marks and citation omitted). Three requirements must be met: "(1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable." *Id.* (internal quotation marks and citation omitted).

In their Complaint, Plaintiffs broadly assert that this Court has (specific) personal jurisdiction over GM "because GM has purposefully availed itself of the privilege of conducting business in the State of California by advertising and selling its manufactured vehicles (including the Class Vehicles) within the State of California. Additionally, GM has maintained systematic and continuous business contacts with the State of California and is registered to conduct business in this State." 5AC ¶ 22. While these allegations may establish jurisdiction over claims asserted by California resident plaintiffs, GM's advertisements, sales, and commercial conduct in California may not suffice to furnish personal jurisdiction over out-of-state plaintiffs such as Plaintiff Szep of Ohio. The Complaint does not allege that Mr. Szep purchased his car in California, was injured in California, or otherwise had any connection to GM's activities in California. To the contrary, the Complaint merely notes that Mr. Szep "is a resident of Mayfield, Ohio," who "purchased his Silverado from Tim Lallie Chevrolet in Bedford Heights, Ohio." *Id.*

8

¶¶ 155–56. In light of these facts, Plaintiffs appear to concede that there is no independent relationship between Plaintiff Szep's Ohio state law claims and the State of California. *See* Plaintiffs' Opposition to General Motors' Motion to Dismiss Plaintiff Szep's Claims ("Opp.") at 3, Docket No. 161. Instead, Plaintiffs ask the Court—as they have done with prior Complaints—to exercise pendent personal jurisdiction over Mr. Szep's claims. *See id.* Defendants challenge that request in the wake of the Supreme Court's decision in *Bristol-Myers*.

In *Bristol-Myers*, plaintiffs from around the country sued Bristol-Myers Squibb Company (BMS) in California state court, alleging that its drug Plavix damaged their health and violated, *inter alia*, California products liability, negligent misrepresentation, and misleading advertising laws. BMS itself was an out-of-state defendant, incorporated in Delaware and headquartered in New York. It sold Plavix in California and engaged in other business activities there, but it "did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California." 137 S.Ct. at 1778. The California Supreme Court had nevertheless reasoned that the exercise of specific jurisdiction over the out-of-state plaintiffs' claims was reasonable under its "sliding scale approach to specific jurisdiction" under which "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim" because the claims by all plaintiffs were "based on the same allegedly defective product and the assertedly misleading marketing and promotion of that product." *Id.* at 1779 (quotations and citations omitted).

The U.S. Supreme Court disagreed. That Court emphasized that the interests to be considered in determining whether personal jurisdiction exists include "the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice," but that the "primary concern is the burden on the defendant." *Id.* at 1780 (quotations and citations omitted). This analysis "obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Id.* As the Supreme Court explained, the principle of personal jurisdiction is in part "a consequence of

territorial limitations on the power of the respective States," as "[t]he sovereignty of each State . . . implie[s] a limitation on the sovereignty of all its sister states." *Id.* at 1780 (citations and quotations omitted). These federalism concerns underpinned *Bristol-Myers*.

Because of these significant interstate federalism concerns, the Supreme Court rejected the notion that mere factual or legal *similarity* between the California plaintiffs' claims and the non-resident plaintiffs' claims somehow sufficed to create personal jurisdiction. "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781. Rather, "[w]hat is needed . . . is a connection between the forum and the specific claims at issue." *Id.* The plaintiffs could not demonstrate such a connection with respect to the out-of-state plaintiffs because defendant had not done anything related to *their* claims in California. Accordingly, the Supreme Court held that California state courts lacked specific personal jurisdiction over out-of-state defendants for claims brought by out-of-state plaintiffs, where there were no sufficient contacts between defendants' conduct in connection with those claims and the forum state, California. *Id.* at 1782-83. This conclusion was driven by the limitations of state sovereignty. Indeed, before analyzing the lack of a connection between California and the nonresident plaintiffs' claims, the Supreme Court emphasized that "at times, [the] federalism interest may be decisive" in the personal jurisdiction analysis. *Id.* at 1780 (quotation omitted). It noted that, "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, *acting as an instrument of interstate federalism*, may sometimes act to divest the State of its power to render a valid judgment." *Id.* at 1780-81 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980) (alteration in original, emphasis added)).

2. <u>The Existence of Federal Question Jurisdiction</u>

In its previous Order, the Court exercised pendent personal jurisdiction over other non-California plaintiffs' claims. *See* SAC Order at 20. In reaching that conclusion, the Court

10

examined the Supreme Court's reasoning in *Bristol-Myers* and concluded (as courts both before and after the Court's prior order have done[2] that a "categorical extension" of the case's holding to federal courts was not warranted. *Id.* at 12. It noted that the Supreme Court's decision was "animated by unique interstate federalism concerns," and that "due process analysis differs fundamentally when a case is pending in federal court" (especially "where a federal court presides over litigation involving a federal question"). In that context, concerns about state sovereignty do not arise in the same way. *Id.* at 12, 13. However, the Court premised much of its decision on the existence of federal question jurisdiction; the Court specifically reserved the question "whether and how *Bristol-Myers* would apply if jurisdiction arose exclusively on the basis of diversity." *Id.* at 13 n.2.

It has since become clear that there is no federal question furnishing federal question jurisdiction as it relates to Plaintiff Szep's claims. For one thing, federal question jurisdiction is not pled by Plaintiffs. *See* 5AC at 6 ("This Court has diversity jurisdiction over this action . . . .").

In addition, while claims brought under the Magnuson Moss Warranty Act confer federal question jurisdiction, *see, e.g.*, *Arutunian v. Mercedes-Benz USA, LLC*, No. CV186806DMGRAOX, 2018 WL 6617636, at *3 (C.D. Cal. Dec. 17, 2018) ("the Court has federal question jurisdiction over Plaintiff's MMWA claims"); *Luna v. BMW of N. Am., LLC*, No. 317CV02067BENKSC, 2018 WL 2328365, at *4 (S.D. Cal. May 22, 2018) ("the Court has federal question jurisdiction over the MMWA claim"), Plaintiff Szep has no viable Magnuson Moss Warranty Act Claim. The Court previously dismissed the express warranty claims of the Ohio Plaintiffs (one possible basis for the MMWA claims), *see* FAC Order at 16, and Plaintiff Szep has included those express warranty claims only for the purpose of preserving them for

---

[2] *See, e.g.*, *Fabricant v. Fast Advance Funding, LLC*, No. 217CV05753ABJCX, 2018 WL 6920667, at *4 (C.D. Cal. Apr. 26, 2018); *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1172 (S.D. Cal. 2018); *Thomas v. Kellogg Co.*, No. C13-5136RBL, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017) ("It is therefore not at all clear that *Bristol Myers* even applies to this case, filed in federal district court.); *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2017 WL 3838453, at *15 (N.D. Cal. Sept. 1, 2017), *on reconsideration in part*, No. 17-CV-01027-BLF, 2017 WL 5665654 (N.D. Cal. Nov. 27, 2017) ("The *Bristol-Myers* majority made clear that "since this decision concerns the due process limits on the exercise of specific jurisdiction by a State, the question remains open whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court.").

11

appeal, *see* 5AC at 63 n.40. In addition, the Court previously dismissed the implied warranty claims of the Ohio Plaintiffs (the other possible basis for the MMWA claims), *see* SAC Order at 45, and because Plaintiff Szep pleads an identical implied warranty claim here, *compare* SAC at 171 *with* 5AC at 178, that claim likewise does not furnish a basis for a viable MMWA claim. Thus, lacking any viable warranty claim, Plaintiff Szep has no viable MMWA claim.

Plaintiff Szep has also failed to fulfill the requirements of a cognizable Magnuson Moss Warranty Act class action claim. According to the text of the MMWA statute:

> No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection [pertaining to cases filed in "an appropriate district court of the United States"] –
>
> **(A)** if the amount in controversy of any individual claim is less than the sum or value of $25;
>
> **(B)** if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
>
> **(C)** if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(c).

Because there are only thirty-five named plaintiffs in this case, *see* 5AC at 2, Plaintiff Szep does not allege a viable MMWA class action claim under § 2310(c). *See Pilgrim v. Gen. Motors Co.*, No. CV 15-8047-JFW (EX), 2019 WL 5779892, at *6 (C.D. Cal. Oct. 4, 2019) ("In this case, there are only fifty-seven named Plaintiffs, which is far less than the number required to allege a cognizable MMWA class action claim. Because Plaintiffs have failed to comply with the requirements of the MMWA, the Court must dismiss Plaintiffs' MMWA claim."); *MacDougall v. Am. Honda Motor Co.*, No. SACV1701079AGDFMX, 2017 WL 8236359, at *4 (C.D. Cal. Dec. 4, 2017) ("Because Plaintiffs have failed to comply with the internal requirements of the Magnuson-Moss Act—they haven't named more than 100 plaintiffs—the Court must dismiss this claim."); *Floyd v. Am. Honda Motor Co.*, No. 2:17-CV-08744-SVW-AS, 2018 WL 6118582, at *4 (C.D. Cal. June 13, 2018) ("Plaintiffs have failed to comply with the internal requirements of the Magnuson-Moss Warranty Act because they failed to name one hundred plaintiffs. Thus, the

12

claim under the Magnuson-Moss Act is dismissed."); *Patterson v. RW Direct, Inc.*, No. 18-CV-00055-VC, 2018 WL 6106379, at *2 (N.D. Cal. Nov. 21, 2018) ("Patterson's claim under the Magnuson-Moss Warranty Act is dismissed with prejudice. A Magnuson-Moss claim is only cognizable on a class-wide basis where 'the number of named plaintiffs is less than one hundred.' Because Patterson is the only named plaintiff, that requirement is not satisfied here." (internal citation omitted)). As a result, there is no reason to distinguish Plaintiff Szep's MMWA class action claim from his individual claim, and it too, is not viable.[3]

As a result, the Court now must face the question it deferred in its previous Order: "whether and how *Bristol-Myers* would apply if jurisdiction arose exclusively on the basis of diversity." SAC Order at 13 n.2.

       3.     <u>The Application of *Bristol-Myers* in the Context of Diversity Jurisdiction</u>

A reasonable argument could be made that the concerns that animated the Supreme Court's decision in *Bristol-Myers* do not apply to federal courts sitting in diversity. In particular, the Supreme Court noted that the "primary concern [in assessing personal jurisdiction] is the burden on the defendant." *Bristol-Myers*, 137 S. Ct. at 1780 (quotations and citations omitted). This encompasses both "the practical problems resulting from litigating in the forum" and the "more abstract matter of submitting to the coercive power of a State." *Id.* Here, where Defendant is already before the Court litigating claims that overlap substantially with the claims over which pendent personal jurisdiction is to be exercised, "the exercise of personal jurisdiction over the non-resident Plaintiffs' claims in this case will impose only a *de minimis* burden" on the Defendant. SAC Order at 17. In addition, the Defendant has already submitted to the "coercive power" of the state in which the federal court sits as a result of defending against other claims arising within the same suit. The federalism concerns of having residents of one state submitting to the jurisdiction of another state's court is also lessened by the fact the federal district court is part of a unitary

---

[3] CAFA (which was not pleaded by Plaintiffs, but which is addressed for the sake of exploring all possible bases for jurisdiction) does not confer federal question jurisdiction as to Plaintiff Szep's claims; even if it applied, it provides for diversity jurisdiction. *Floyd*, 2018 WL 6118582, at *3 ("CAFA is a basis for diversity jurisdiction."); *see also Chufen Chen v. Dunkin' Brands, Inc.*, No. 17CV3808CBARER, 2018 WL 9346682, at *7 (E.D.N.Y. Sept. 17, 2018) ("CAFA vests this Court with diversity jurisdiction over the state-law claims.").

13

federal system.

However, nearly every court considering the issue has concluded pendent party jurisdiction cannot be exercised by a federal court sitting in diversity. For instance, in *Allen v. ConAgra Foods, Inc.*, No. 3:13-cv-01279-WHO, 2018 WL 6460451, *5-6 (N.D. Cal. Dec. 10, 2018), the court, while withholding judgment "on the question of whether, on the same facts as those presented in *Bristol–Myers*, that case would apply to a federal court sitting in diversity," observed that "when it comes to a federal court sitting in diversity . . . [i]f due process were to allow a federal court to assert personal jurisdiction over a purely state law cause of action when a state court could not do the same, problematic dis-uniformity could result." *See In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1172 (S.D. Cal. 2018) ("The general consensus post-*Bristol-Myers* appears to be that because *Bristol-Myers* dealt with limits on state sovereign power within a federal system, its reasoning is applicable to federal courts sitting in diversity."); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *4 (N.D. Cal. Sept. 22, 2017) ("The Court finds no merit in the plaintiffs' first argument that *Bristol-Myers* does not apply to federal courts. This is because federal courts routinely apply the specific jurisdiction analysis to defendants in cases that are before them solely on the basis of diversity."); *Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1247 (D. Haw. 2019) ("pendent jurisdiction is inapplicable absent a federal claim"). *See also, e.g.*, *Molock v. Whole Foods*, 297 F. Supp. 3d 114, 125 (D.D.C. 2018) (applying *Bristol–Myers* where "the federal court sits in diversity and assesses state law claims"); *Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *4 (N.D. Ill. Aug. 1, 2018) ("the scope of a federal court's personal jurisdiction in diversity cases is determined by state law, a federal court sitting in diversity cannot exercise personal jurisdiction—'pendent' or otherwise—on that basis either"). Recognizing the growing weight of authority, this Court now holds that *Bristol-Myers* applies to federal courts sitting in diversity, and thus that the exercise of pendent personal jurisdiction is improper in such a circumstance.

The fact that this case is brought as a putative class action extending across numerous states does not appear to be an accepted basis for distinguishing *Bristol-Myers*. The

14

overwhelming majority of federal courts have held that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions. As the court noted in *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018), "Whether *Bristol-Myers* applies to federal class actions is an open question. However, Plaintiffs identify no authority where a court has determined that *Bristol-Myers* does not apply to a named plaintiff seeking to represent a statewide class of non-forum residents proceeding under non-forum law." (internal citations omitted). *See also Morrison v. Ross Stores, Inc.*, No. 18-CV-02671-YGR, 2018 WL 5982006, at *4 (N.D. Cal. Nov. 14, 2018) ("The requirement to establish personal jurisdiction [in a class action] must be met as to each named plaintiff's claim, with respect to each defendant individually"); *Gaines v. Gen. Motors, LLC*, No. 17CV1351-LAB (JLB), 2018 WL 3752336, at *3 (S.D. Cal. Aug. 7, 2018) ("The Court agrees with the many other federal courts that have found no reason *Bristol-Myers*' limitation on personal jurisdiction would not apply to named parties in putative class actions."); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874 (N.D. Ill. 2017) ("Nothing in *Bristol–Myers* suggests that it does not apply to named plaintiffs in a putative class action."); *Chufen Chen v. Dunkin' Brands, Inc.*, No. 17CV3808CBARER, 2018 WL 9346682, at *6 (E.D.N.Y. Sept. 17, 2018) (holding that *Bristol-Myers* applies to named Plaintiffs in the class action context).

To be sure, as cases cited by Plaintiffs have held, the question concerning a district court's jurisdiction as it pertains to *unnamed* plaintiffs in class actions is different from the issue of jurisdiction over *named* plaintiffs in class actions. *See, e.g.*, *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 819 (N.D. Ill. 2018) ("*Bristol-Myers* thus does not address, let alone resolve, whether due process requires that the defendant be subject to specific jurisdiction not only as to the named plaintiff's claims, but also as to the absent class members' claims."); *Sotomayor v. Bank of Am., N.A.*, 377 F. Supp. 3d 1034, 1038 (C.D. Cal. 2019) ("the claims of unnamed class members are not implicated in the question of specific jurisdiction in a class action"); *In re Morning Song Bird Food Litig.*, No. 12CV01592 JAH-AGS, 2018 WL 1382746, at *2 (S.D. Cal. Mar. 19, 2018) (citing *Abrams Shell v. Shell Oil Co.*, 165 F.Supp.2d 1096, 1107 n.5 (C.D. Cal. 2001) for the proposition that "Notwithstanding the relaxation of venue and personal jurisdiction requirements

15

as to unnamed members of a plaintiff class, it is by now well settled that these requirements to suit must be satisfied for each and every named plaintiff for the suit to go forward."). But this is not the issue in this motion.

Accordingly, *Bristol-Myers* applies to federal courts sitting in diversity, and thus, pendent personal jurisdiction does not apply to GM as it relates to the claims of Plaintiff Szep. As a result, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff Szep's Claims in the Fifth Amended Complaint. Because the Court finds that it lacks personal jurisdiction over GM as to Plaintiff Szep's claims, it does not reach the other arguments advanced by Defendant as to why those claims should be dismissed.

## IV. CONCLUSION

For the reasons explained above, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff Szep's Claims in the Fifth Amended Complaint.

This order disposes of Docket No. 158.

**IT IS SO ORDERED**.

Dated: December 5, 2019

_____
EDWARD M. CHEN
United States District Judge

16