UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTEVILLE SLOAN, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GENERAL MOTORS LLC,<br><br>  Defendant. | Case No. 16-cv-07244-EMC<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS COUNT 1; DENYING DEFENDANT'S MOTION TO DECERTIFY THE CALIFORNIA CLASS; AND GRANTING PLAINTIFFS' MOTION TO INTERVENE**<br><br>Docket Nos. 246, 247, 255, 259, 265, 269 |

## I. INTRODUCTION

Following this Court's order certifying various state-specific subclasses, Defendant General Motors LLC ("GM") and Plaintiffs discovered that the individual who represented the California Class (Raul Siqueiros) was no longer an adequate representative. For this reason, GM now moves to decertify the California Class. Docket No. 265. ("Mot."). Plaintiffs oppose decertification; instead, they move to substitute and/or intervene by replacing the inadequate representative with two adequate representatives. Docket No. 269 ("Opp."). Additionally, GM filed a motion to dismiss Count 1 under the Magnuson Moss Warranty Act in the Sixth Amended Complaint. Docket No. 255 ("MTD"). For the reasons discussed below, the Court rules as follows:

- GM's motion to dismiss is **GRANTED in part with prejudice** regarding the class allegation in Count 1; and
- GM's motion to decertify the California Class is **DENIED** because this Court **GRANTS** Plaintiffs' motion for permissive intervention and substitution.

## II. BACKGROUND

### A. Factual Background

Plaintiffs allege that GM's Gen IV Vortec 5300 engine suffers from an "inherent" "Oil Consumption Defect." Docket No. 250 ("6AC") ¶ 7. The "primary cause" of the alleged defect is the piston rings installed by GM. *Id.* ¶ 8. These piston rings "do not maintain sufficient tension to keep oil in the crankcase," and the oil migration that occurs as a result allows oil to "burn[] or accumulate[] as carbon buildup on the combustion chamber's surfaces." *Id.* ¶¶ 8–9. Plaintiffs allege that the Oil Consumption Defect causes safety problems in three ways: (1) oil consumption can lead to a lack of adequate lubrication in the engine and dropping oil pressure levels in vehicles, *id.* ¶ 19; (2) the presence of excess oil in the combustion chamber can cause spark plug fouling, which can cause engine problems, *id.*; and (3) when drivers experience these problems while driving, they may be forced to pull over and stop alongside a road or highway (or they may be stranded in such a location with an inoperable vehicle), which places a person in danger, *id.* ¶ 16.

### B. Procedural Background

Plaintiffs first filed their Complaint in December 2016, *see* Docket No. 2, followed by a First Amended Complaint ("FAC") in February 2017, *see* Docket No. 29. The named Plaintiffs who filed the original Complaint sought to represent classes from thirteen states. *Id.* at 25–26. On August 1, 2017, the Court dismissed the FAC in its entirety with leave to amend. *See* Docket No. 62. Later that same month, Plaintiffs filed a Second Amended Complaint ("SAC"), *see* Docket No. 67, which added named plaintiffs from twenty additional states, *id.* at 55–56. After extensive briefing, the Court dismissed the Second Amended Complaint but only in part. *See* Docket No. 99. In March 2018, Plaintiffs filed a Third Amended Complaint ("TAC"), *see* Docket No. 107, which added a plaintiff from one additional state, *id.* at 11. Plaintiffs subsequently sought leave to file a Fourth Amended Complaint ("4AC"), *see* Docket No. 120 ("First Mot. for Leave"), in order to "substitute William Davis, Jr., a member of the putative North Carolina class, in place of the current North Carolina class representative, Steven Ehrke, who is no longer able to participate in this litigation." First Mot. for Leave at 1. No other change to the Complaint was sought. *Id.* The

Court granted the parties' joint stipulation to the filing of a Fourth Amended Complaint, permitting substitution of the North Carolina class representative.[1] *See* Docket No. 122.

After filing a Fourth Amended Complaint in November 2018, *see* Docket No. 123, and prior to any dismissal motion, Plaintiffs again sought leave to file an amended complaint (the Fifth Amended Complaint) in May 2019, *see* Docket No. 141 ("Second Mot. for Leave"). The purpose behind the request to file a Fifth Amended Complaint was the substitution of "Thomas Szep in place of the current Ohio class representatives, Thomas Gulling and Ronald Jones, who are for personal reasons no longer able to participate in this litigation." Second Mot. for Leave at 1. No other modification of the Fourth Amended Complaint was sought. *Id.*

GM opposed Plaintiffs' Motion for Leave to File a Fifth Amended Complaint, *see* Docket No. 153 ("Opposition to 5AC"), on the grounds that "add[ing] an Ohio plaintiff . . . comes too late and would be unfair and prejudicial to GM based on the history of this case and governing legal standards." Opposition to 5AC at 1. More specifically, GM argued that "[c]hanging the parties and allegations after discovery is closed would deprive GM of the ability to fully defend itself. It would embroil the court again in pleadings and motions practice, upheave the current schedule, and disrupt the class certification proceedings set to begin in a few weeks." *Id.* at 2. On July 2, 2019, the Court granted Plaintiffs' Motion for Leave to File a Fifth Amended Complaint. *See* Docket No. 156. Plaintiffs filed a Fifth Amended Complaint that same day, *see* Docket No. 157, and GM subsequently filed a Motion to Dismiss Plaintiff Szep's Claims in the Fifth Amended Complaint, *see* Docket No. 158.

In moving to dismiss Plaintiff's Szep's claims in the Fifth Amended Complaint, GM challenged the Court's personal jurisdiction over GM as to the claims of Plaintiff Szep, the named Plaintiff from Ohio. *See* Docket 158. Plaintiffs argued that the Court had specific personal jurisdiction over GM as to the claims of Plaintiff Szep since his claims related to those of the

---

[1] The Fourth Amended Complaint included named Plaintiffs from California, Alabama, Arkansas, Delaware, Florida, Georgia, Idaho, Illinois, Kansas, Kentucky, Louisiana, Massachusetts, Minnesota, Mississippi, Missouri, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, Washington, West Virginia, and Wisconsin. *See* Docket No. 124.

3

California Plaintiffs. *See* Docket No. 161. GM argued that, in light of the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017), it was improper for the Court to exercise pendent personal jurisdiction over the claims of an out-of-state Plaintiff who lacked an independent relationship to the State of California. *See* Docket No. 158. Although the Court previously declined to apply *Bristol-Myers* in light of the existence of federal question jurisdiction, it found that—as it pertained to Plaintiff Szep's claims—no federal question jurisdiction existed. *See* Docket No. 195. As a result, the Court followed "the growing weight of authority" that has applied *Bristol-Myers* to federal courts sitting in diversity and concluded that the exercise of pendent personal jurisdiction as to Plaintiff Szep's claims would be improper. *Id.* Consequently, it dismissed the claims of the Ohio Plaintiff for lack of personal jurisdiction. *Id.*

After the issuance of that order, GM filed a Motion for Reconsideration of the Court's order dismissing the SAC. *See* Docket No. 221. That motion sought reconsideration of the Court's refusal to dismiss the claims of the Plaintiffs from Illinois, New York, Oregon, and Washington, in light of the Court's decision to dismiss the claims of the Ohio Plaintiff. On February 11, 2020, the Court granted GM's Motion for Reconsideration of the Court's SAC Order and dismissed the claims of the Plaintiffs from Illinois, New York, Oregon, and Washington. *See* Docket No. 235.

In order to address manageability concerns, the parties agreed to follow a bellwether process for class certification wherein Plaintiffs' initial motion for class certification would be limited to California, New Jersey, Ohio, North Carolina, and Texas. *See* Docket No. 113. Because of the Court's order dismissing the claims of Plaintiff Szep, no Ohio class remained when certification of the bellwether classes was sought. A Motion to Certify the Class in the four bellwether states was filed with the Court on September 3, 2019. *See* Docket No. 175. GM's Motion for Partial Summary Judgment was filed on October 8, 2019. *See* Docket No. 184 ("MSJ"). GM responded with a Motion to Exclude Certain Testimony of Plaintiffs' Expert Witness. *See* Docket No. 201. A hearing on the issue of class certification, GM's Motion for Partial Summary Judgment, and GM's Motion to Exclude Expert Testimony took place on

4

January 21, 2020. *See* Docket No. 209.

Initially, Plaintiffs sought to include all four Gen IV engine designs (the LC9, the LMG, the LH9, and the LMF) in the class definition, but in the Reply in Support of Plaintiffs' Motion for Class Certification, Plaintiffs limited the proposed class definition to vehicles with LC9 engines with Active Fuel Management ("AFM"). *See* Reply in Support of Motion for Class Certification ("CC Reply") at 7, Docket No. 207. The LC9 engine was installed in the 2010–2014 Chevrolet Avalanche; 2010–2014 Chevrolet Silverado; 2010–2014 Chevrolet Suburban; 2010–2014 Chevrolet Tahoe; 2010–2014 GMC Sierra; 2010–2014 GMC Yukon; and the 2010–2014 GMC Yukon XL. *Id.* ¶ 2; *see also* CC Reply at 7.[2]

Plaintiffs sought to certify the following California class (among other classes):

> **California Class.** All current and former owners or lessees of a Class Vehicle that was purchased or leased in the State of California. The California Class seeks class certification of claims for: (a) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; (b) violation of the Song-Beverly Consumer Warranty Act for breach of implied warranty, Cal. Civ. Code § 1790 *et seq.*; (c) fraudulent omission; (d) unjust enrichment; and (e) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. Plaintiffs move for the appointment of Raul Siqueiros . . . as the class representative[] for the California Class.[3]

Notice of Motion for Class Certification ("Notice") at 1–2, Docket No. 175. The Court granted in part and denied in part Defendant's Motion for Partial Summary Judgment as follows with respect to the California Class and the MMWA claim:

**California**

- Count 2 – Consumer Legal Remedies Act – **DENY** Motion for Summary Judgment
- Count 4 – Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty – **DENY** Motion for Summary Judgment

---

[2] Because Plaintiffs narrowed the class definition to include only LC9 engines, the Chevrolet Colorado, Chevrolet Express, GMC Canyon, and GMC Savana (which were mentioned in the Fifth Amended Complaint) are no longer part of the class definition. *See* CC Reply at 7.

[3] Because Plaintiffs narrowed the class definition to include only LC9 engines, the (previously named) Cralleys no longer seek to serve as California class representatives because their vehicle did not have such an engine. *See* CC Reply at 1 n.2. Their names have been omitted here.

- Count 5 – Fraudulent Omission – **GRANT** Motion for Summary Judgment
- Count 6 – Unjust Enrichment – **GRANT** Motion for Summary Judgment
- Count 7 – Violation of the California Unfair Competition Law – **DENY** Motion for Summary Judgment

**Nationwide**

- Count 1 – MMWA – **GRANT** Motion for Summary Judgment as to New Jersey Plaintiffs, but **DENY** Motion for Summary Judgment as to California, North Carolina, and Texas plaintiffs.

*See* Docket No. 237. The Court also denied GM's Motion to Exclude Expert Testimony. *Id.*

Finally, the Court granted in part the Accelerated Plaintiffs' Motion for Class Certification. Specifically, it granted certification with the following terms: **Class Vehicles** are 2011–2014 Chevrolet Avalanches; 2011–2014 Chevrolet Silverados; 2011–2014 Chevrolet Suburbans; 2011–2014 Chevrolet Tahoes; 2011–2014 GMC Sierras; 2011–2014 GMC Yukons; and the 2011–2014 GMC Yukon XLs with LC9 engines (whether purchased new or used) and manufactured on or after February 10, 2011 (the date upon which the redesigned rocker cover was incorporated into vehicle production). Any vehicle that has already received adequate piston replacement (*i.e.*, piston replacement in which the new pistons were not merely new versions of the same defective pistons) is excluded from the class. The California Class is defined as follows:

> **California Class.** All current owners or lessees of a Class Vehicle that was purchased or leased in the State of California. The Court certifies the claims of the California Class for violation of the Song-Beverly Consumer Warranty Act for breach of implied warranty, Cal. Civ. Code § 1790 *et seq.* The Court appoints Raul Siqueiros as the class representative~~s~~ for the California Class.

*Id.* However, because the Court restricted the definition of Class Vehicles to only those vehicles manufactured ***on or after*** February 10, 2011 (the date upon which the second of two engine modifications—the redesigned rocker cover—was incorporated into vehicle production), the named California Plaintiff, Raul Siqueiros (whose car was manufactured ***prior*** to that date), could no longer serve as class representative.

In June 2020, Plaintiffs filed a Motion to Substitute the California Class Representative,

6

1  and GM filed a Motion to Decertify the California Class. *See* Docket Nos. 246, 247. On July 16,
2  2020, Plaintiffs filed their Sixth Amended Complaint. Docket No. 250. At the end of July, GM
3  filed a Motion to Dismiss Count 1 (Plaintiffs' Magnuson Moss Warranty Act claim), and Plaintiffs
4  filed a Motion to Intervene on behalf of the putative new California representatives. *See* Docket
5  Nos. 255, 259. In light of the fact that the motions were noticed for hearings on different dates
6  and the interrelated legal and factual issues they raised, the Court held a status conference on
7  August 6, 2020, to confer with the parties about adjudicating the various motion in the most
8  efficient way possible. *See* Docket Nos. 261, 262. At that hearing, the parties were directed to
9  meet and confer in an effort to reach a stipulation regarding (1) substitution of the named
10 California Plaintiffs, and (2) consolidation of the additional pending motions (to the extent not
11 resolved by the stipulation). *See* Docket No. 262. The parties were unable to reach a stipulation,
12 and the consolidated motion was filed. The hearings for the consolidated motion (regarding
13 decertification, substitution, and intervention) and GM's Motion to Dismiss were rescheduled to
14 take place on September 3, 2020.

15 On August 26, 2020, Plaintiffs Dan Madson, Joseph Brannon, Derick Bradford, Monteville
16 Sloan, Michael Ware, Barbara Molina, Drew Peterson, Ross Dahl, Mike Warpinski, Joseph
17 Olivier, James Faulkner, Kevin Hanneken, Steve Kitchen, Thomas Shorter, and Marc Perkins
18 voluntarily dismissed all their claims without prejudice. Docket No. 271.

### III.   MOTION TO DISMISS COUNT 1

A.   Legal Standard

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In considering such a motion, a court must accept all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Fed. R. Civ. P. 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9ths Cir. 2009). While "a complaint need not contain detailed factual allegations," "it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 1067–68. "A claim has facial plausibility when the plaintiff pleads factual content that allows

7

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

B.  Analysis

GM moves to dismiss Count 1, the Magnuson Moss Warranty Act ("MMWA") claim, from the Sixth Amended Complaint for lack of subject matter jurisdiction because the statute requires one hundred (100) named plaintiffs. MTD at 1. Count 1 states that "Plaintiffs bring this Count [for violation of the MMWA] individually and on behalf of the other members of the Nationwide Class" 6AC ¶ 266. Here, there are only twenty (20) named Plaintiffs that allege such a claim. *Id.* Pursuant to 15 U.S.C. section 2310,

> No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection—
>
> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
>
> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
>
> (C) ***if the action is brought as a class action, and the number of named plaintiffs is less than one hundred***.

15 U.S.C. § 2310(2)(d)(3) (emphasis added). Plaintiffs concede that they do not have 100 named plaintiffs and that their MMWA class allegations are improper under *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027 (9th Cir. 2020),[4] but they contend that each plaintiff may still pursue their MMWA claim individually.[5] Docket No. 263 ("Opp. to MTD") at 1. They request that this Court strike—rather than dismiss—the class allegation in Count 1 with leave to amend, in the event that Plaintiffs later assemble sufficient individuals to replead the class claim. *Id.*

---

[4] In *Floyd*, the Ninth Circuit was presented with an issue of first impression: "whether the Class Action Fairness Act ("CAFA") overrides the MMWA's requirement to name one hundred plaintiffs." *Id.* at 1030. The court held that "CAFA may not be used to evade the specific numerosity requirement of the MMWA." *Id.*

[5] *Floyd* did not discuss individual claims under the MMWA.

1    As noted above, the MMWA expressly confers federal jurisdiction over individual claims so long as the amount in controversy is satisfied. *See* 15 U.S.C § 2310(2)(d)(3)(A) ("No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection--if the amount in controversy of any individual claim is less than the sum or value of $25[.]"). At the hearing, GM's counsel made a statutory-interpretation argument, for the first time, that the text of the MMWA excludes individual claims if the action is brought as a class action even if the class allegations are not based on the MMWA. It reads subsection (C) not as a limit on MMWA class action but as an override of jurisdiction over individual claims where any class claim is asserted. This is a strained and unnatural reading of the statute. GM offers no explanation why the fact that class claims are asserted on a non-MMWA basis should negate jurisdiction over individual MMWA claims unless those are over 100 named plaintiffs. In any event, arguments made for the first time at oral argument are deemed waived. *See, e.g.*, *Foster v. Adams & Assocs., Inc.*, 2020 WL 3639648, at *3 (N.D. Cal. July 6, 2020) (citing *Booth v. United States*, 914 F.3d 1199, 1206 (9th Cir. 2019)) (declining to consider argument raised for the first time during oral argument). Alternatively, GM argued that individual MMWA claims are not necessary because all Plaintiffs' state implied-warranty claims are already before this Court via CAFA jurisdiction. According to GM, including these individual MMWA claims add nothing. While this may be true, leaving the individual claims also adds no additional burden to GM. In any event, that is not a substantive basis for dismissing individual MMWA claims if jurisdiction otherwise obtains.

Accordingly, GM's motion to dismiss the individual claims in Count 1 is **DENIED**. As with typical class certification motions, if a court denies certification, the action continues on an individual basis. Notably, these claims have always been brought individually and on behalf of those similarly situated.

The MMWA claims may proceed on an individual basis. The MMWA class allegations are stricken.

///

///

///

9

## IV. GM'S MOTION FOR DECERTIFICATION AND PLAINTIFFS' MOTION FOR INTERVENTION AND/OR SUBSTITUTION

GM moves to decertify the California Class because there is no adequate representative and Plaintiffs' request for intervention and/or substitution of a proper California Class representative is improper. GM further argues that the California Class, as defined, exceeds the scope of the California Song-Beverly Act, which explicitly excludes owners who purchased their cars second-hand. Plaintiffs respond that (1) Plaintiffs Manuel Fernandez and Robert May are entitled to intervene under Rule 24; (2) the Court should not decertify the California Class in light of the availability of substitute class representatives who may be added by amendment or by way of intervention; and (3) the narrow scope of the Song-Beverly Act does not support decertification.

### A. Legal Standard

"Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, (1982). "A district court may decertify a class at any time." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "If the named plaintiff's own claim becomes moot after certification, the court can re-examine his ability to represent the interests of class members. Should it be found wanting, the court may seek a substitute representative or even decertify the class." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 415 n.8 (1980). But if the named plaintiff lacked standing, substitution is not permissible where the class representative could not bring the lawsuit in the first instance. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (finding that the class representative's lack of standing could not be cured by substituting another representative and therefore district court was required to dismiss the action on remand).

A non-party has two avenues with respect to intervention: (1) as of right; or (2) permissively. Federal Rule of Civil Procedure 24(a) governs a party's request for intervention as of right. The Ninth Circuit has recognized Rule 24(a)(2) requires the non-party applying for intervention demonstrate the following:

(1) the application must be timely; (2) the applicant must have a

> "significantly protectable" interest relating to the transaction that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court.

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (citing See *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 836 (9th Cir.1996)). Alternatively, Rule 24(b)(2) grants the district court discretion to permit intervention by a non-party. "An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (citing *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 839 (9th Cir.1996)).

If the court has already entered a scheduling order, a motion to substitute is construed as a motion to modify the case schedule entered under Federal Rule of Civil Procedure 16(b). *See Plascencia v. Lending 1st Mortg.*, No. C 07-4485 CW, 2012 WL 253319, at *5 (N.D. Cal. Jan. 26, 2012). The pertinent inquiry is whether pursuant to Rule 16(b), Plaintiffs have shown "good cause" to modify the court's case schedule. "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609.

B.  Analysis

   1.  Decertification and Substitution

The threshold issue is whether the California Class representative, Mr. Siqueiros, lacked standing or whether his claim ultimately became moot. "This distinction is significant." *Kirola v. City & Cty. of San Francisco*, No. C-07-3685 SBA, 2014 WL 1729273, at *4 (N.D. Cal. Apr. 29, 2014) (citing *Lierboe*, 350 F.3d at 1023) ("The Ninth Circuit has held that while substitution of a class representative may be permissible when her claims become moot, substitution is not permissible where the class representative lacked standing in the first instance."). GM contends that Mr. Siqueiros is not and has never been a member of the California Class. Mot. at 9.

The Ninth Circuit's decision in *Lierboe* offers guidance with respect to mootness and standing. There, the plaintiff owned a Jeep Cherokee and was involved in an accident. *Lierboe*,

11

350 F.3d at 1020. When she filed a claim with her insurer, the express limit on her policy was only $5,000. *Id*. The plaintiff then attempted to seek additional coverage under a separate policy for her Dodge Dakota, but her insurer denied coverage by refusing to stack two policies. *Id*. She thereafter filed a class action lawsuit against the defendant for various contract claims because Montana law prohibited "anti-stacking" provisions as contrary to public policy. *Id*. On certification, the Supreme Court of Montana held that the plaintiff did not have a stacking claim. *Id*. (citing *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 316 Mont. 382, 73 P.3d 800 (2003)). The Ninth Circuit then held that the district court's class certification order must be vacated for lack of standing because the plaintiff never had an anti-stacking claim from the outset. *Id*. In a footnote, the court attempted to distinguish mootness and standing:

> If Lierboe initially had a viable stacking claim that later became moot, then our law in an appropriate case would permit substituting proper class representatives to allow the suit to proceed. *See, e.g.*, *Kuahulu v. Employers Ins. of Wausau*, 557 F.2d 1334, 1336–37 (9th Cir. 1977) ("If the district court had certified appellant's class prior to appellant's own claim[] becoming moot, we would not dismiss this appeal for mootness. In such a case, remand to the district court would be appropriate in order to determine whether a substitute representative would be available."). Lierboe's stacking claim, however, was not rejected by the Supreme Court of Montana on grounds that it had become moot. Instead, the Supreme Court of Montana held that Lierboe had no stacking claim from the outset of her litigation, because the unambiguous language of Lierboe's auto insurance policies made clear that coverage, not a rule against stacking, precluded her unhonored claim on the Dodge policy.

*Id*. at 1023 fn 6.

The Ninth Circuit has recognized, "[t]he Supreme Court has acknowledged that 'there is tension in [its] prior cases' with respect to standing and adequacy in the class action context." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007) (citing *Gratz v. Bollinger*, 539 U.S. 244, 263 n. 15 (2003)) (second alteration in original). In *Bates*, a class of hearing-impaired employees and job applicants who could not pass the Department of Transportation hearing standard imposed by an employer sued alleging violation of federal and state anti-discrimination laws. *Id*. at 982. One particular class representative eventually was hired by the employer, so the employer argued that the plaintiff was no longer an adequate representative (for injunctive relief). *Id*. at 987. The Ninth Circuit concluded that "[i]t is not disputed that Oloyede

12

1   had standing at the time of certification, which is the snapshot in time for determining initial

2   standing. Even if his claim later became moot or nonredressable, an identifiable member of the

3   class, Elias Habib, surely has standing . . . . Because Habib has standing to seek injunctive relief,

4   the entire federal class has standing. *Id*. at 987.

5   In this case, it is not accurate to conclude that Mr. Siqueiros lacks standing—indeed, he is

6   still a named plaintiff in this lawsuit, and GM has not moved to dismiss him in his individual

7   capacity for lack of standing. More to the point, unlike the plaintiff in *Lierboe*, Mr. Siqueiros did

8   not lack standing *ab initio*. He lacked standing as a class representative only when this Court

9   certified a class using a narrowed definition of the class.

10  Moreover, as in *Bates*, there are readily available and identifiable members of the class

11  who can be substituted into this lawsuit: Messrs. May and Fernandez. As one Court of Appeals

12  has held, a district court errs when it decertifies and dismisses a class action without giving

13  members of the original class with live claims an opportunity to "become plaintiffs by amendment

14  of the complaint or by intervention and thereby save the subclass action[.]" *Lynch v. Baxley*, 651

15  F.2d 387, 388 (5th Cir. 1981). At the hearing, counsel for GM represented that it was not aware of

16  any Circuit authority that holds a district judge abuses his or her discretion by permitting

17  substitution in similar circumstances. This Court has found no such authority.

18  While it is true that Plaintiffs arguably should have been aware that GM intended to seek a

19  narrow class definition, this Court finds that they acted diligently as soon the class certification

20  order was issued. Plaintiffs moved for substitution only two months after this Court narrowed the

21  Class Vehicle definition.

22  GM relies on *Perez v. First Am. Title Ins. Co.*, No. CV-08-1184-PHX-DGC, 2010 WL

23  2292994, at *2 (D. Ariz. June 8, 2010) in seeking decertification. In *Perez*, the district court

24  decertified the classes and denied plaintiffs' request for leave to amend in order to substitute

25  adequate class representatives. *Id*. The plaintiffs' request for leave to amend was four months

26  past due from the deadlines established by the case management order and caused prejudice.

27  The discovery here is just commencing with respect to the Non-Accelerated Plaintiffs and

28  the length of this case will not be prolonged with intervention or substitution. There is no

13

prejudice to GM. Moreover, *Perez* never discussed the issue of standing.

Accordingly, the Court **GRANTS** Plaintiffs' motion to substitute Messrs. May and Fernandez as representatives for the California Class because they have demonstrated "good cause" in the form of diligence under Rule 16.

2.   Intervention under Rule 24(b)

This Court alternatively finds Messrs. May and Fernandez are allowed permissive intervention. Under Rule 24(b), "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b). There is no dispute that Messrs. May and Fernandez are class members under this Court's California Class definition.[6] Thus, they clearly share common questions of law and fact under Rule 24(b)(1)(B). The issue is timeliness.

To determine whether a motion to intervene is timely, the Ninth Circuit considers the following three criteria: "(1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836–37 (9th Cir. 1996) (citing *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990)). With respect to the stage of the proceedings and the reason for delay, courts regularly permit intervention after class certification and, here, Messrs. May and Fernandez had no need to intervene until this Court's April 2020 certification order that narrowed the Class Vehicle definition. *See Widjaja v. YUMA Brands, Inc.*, No. CV-F-09-1074 OWW/DLB, 2009 WL 3462040, at *4 (E.D. Cal. Oct. 22, 2009) ("In assessing timeliness of the motion to intervene, the crucial date is when the proposed intervenor should have been aware that its interests would not be adequately protected by the existing parties") (citing *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir. 1999)). As stated above, Plaintiffs filed their motion just two months after this Court's certification order.

As to prejudice, Plaintiffs represented at the hearing that Messrs. May and Fernandez

---

[6] However, there is a dispute as to whether Mr. May can adequately represent the California Class (as currently defined) because he purchased a used vehicle.

would not be asserting any new claims.  GM's contention that it would be prejudiced is not persuasive.  The parties are currently exchanging extensive discovery with respect to the Non-Accelerated Plaintiffs, and the Court has already set a class certification and summary judgment briefing schedule for these remaining states.  Conducting two additional inspections and/or depositions with respect to Messrs. May and Fernandez would not be overly burdensome or prejudicial.

On the other hand, absent intervention, the unnamed California Class members' interests would be significantly prejudiced.  *See Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1341 (11th Cir. 2003) ("As discovery had been completed, numerous pretrial motions had been resolved, and the case was ready for trial, we conclude that, as in *Lynch*, the efficient administration of justice and ***the interests of the class were not served when the district court decertified the class without first giving class members an opportunity to intervene as the class representative.***  Accordingly, we find an abuse of discretion and remand for the district court to allow a reasonable period of time for the substitution or intervention of a new class representative.") (emphasis added).

As such, Messrs. May and Fernandez's motion for permissive intervention is **GRANTED**.  As named plaintiffs, Messrs. May and Fernandez may serve as California Class representatives subject to an adequacy determination.  Plaintiffs are directed to file a motion to determine if Messrs. May and Fernandez are adequate representatives for the California Class at the same time they file for class certification for the Non-Accelerated Plaintiffs.  Plaintiffs will continue to bear the burden, but this motion will not be a full Rule 23 motion for certification—it will focus solely on the question of adequacy of their representation.  If GM prevails, Plaintiffs will have no further opportunities to substitute or intervene to preserve the California Class.

3.  California's Song-Beverly Act

At the hearing, the parties agreed that modifying and/or redefining the California Class definition at this juncture is appropriate in light of the Song-Beverly Act's limited scope of only providing implied warranties to owners who purchased new vehicles.  *See In re MyFord Touch Consumer Litig.*, 2018 WL 3646895 (N.D. Cal. Aug. 1, 2018); *see also* Cal. Civ. Code § 1791(a).

The Court directs the parties to meet and confer to jointly propose language on the California Class definition in light of the Song-Beverly Act.  The parties shall endeavor to resolve the representation status of Mr. May as part of this discussion.

### V.   CONCLUSION

For the foregoing reasons, the Court rules as follows:

- GM's motion to dismiss is **GRANTED in part with prejudice** regarding the class allegation in Count 1 (the MMWA class allegations shall be stricken) and **DENIED** with respect to the individual claims; and
- GM's motion to decertify the California Class is **DENIED** because this Court **GRANTS** Plaintiffs' motion for permissive intervention and substitution.
- GM's motion to modify the California Class definition to limit the Song-Beverly Act claims to owners who purchased new cars is **GRANTED**.

This order disposes of Docket Nos. 246, 247, 255, 259, 265, and 269.

**IT IS SO ORDERED**.

Dated: September 14, 2020

_____
EDWARD M. CHEN
United States District Judge