1   Jennie Lee Anderson (SBN 203586)            Adam J. Levitt (*pro hac vice*)
    Lori E. Andrus (SBN 205816)                 **DICELLO LEVITT GUTZLER LLC**
2   **ANDRUS ANDERSON LLP**                      Ten North Dearborn Street, Sixth Floor
    155 Montgomery Street, Suite 900            Chicago, Illinois 60602
3   San Francisco, California 94104             Telephone: 312-214-7900
    Telephone: 415-986-1400                     alevitt@dicellolevitt.com
4   jennie@andrusanderson.com
5   lori@andrusanderson.com                     W. Daniel "Dee" Miles, III (*pro hac vice*)
                                                **BEASLEY, ALLEN, CROW,**
6                                               **METHVIN, PORTIS & MILES, P.C.**
                                                272 Commerce Street
7                                               Montgomery, Alabama 36104
                                                Telephone: 334-269-2343
8                                               Dee.Miles@beasleyallen.com
9   *Counsel for Plaintiffs and the Proposed Classes* (*additional counsel appear on signature page*)

10                  **UNITED STATES DISTRICT COURT**
11                  **NORTHERN DISTRICT OF CALIFORNIA**
                    **SAN FRANCISCO DIVISION**
12
    RAUL SIQUEIROS, *et al.*                     Case No.: 16-cv-07244-EMC
13
            Plaintiffs,                          **PLAINTIFFS' NOTICE OF MOTION AND**
14                                               **SECOND MOTION FOR CLASS**
            v.                                   **CERTIFICATION; MEMORANDUM OF**
15                                               **POINTS AND AUTHORITIES**
    GENERAL MOTORS LLC,
16                                               Judge: Hon. Edward J. Chen
            Defendant.                           Hearing Date: January 28, 2021
17                                               Time of Hearing: 1:30 p.m.
18
19
20
21
22
23
24
25
26
27
28

1    **NOTICE OF MOTION AND SECOND MOTION FOR CLASS CERTIFICATION**

2    **TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

3    PLEASE TAKE NOTICE THAT on January 28, 2021, at 1:30 p.m., or as soon thereafter as the

4    matter may be heard, in the United States District Court for the Northern District of California, San

5    Francisco Courthouse, located at 450 Golden Gate Avenue, 17th Floor, Courtroom 5, before the

6    Honorable Edward M. Chen, Plaintiffs will, and hereby do, move the Court for an order under Fed. R.

7    Civ. P. 23(a) and (b)(3) certifying the following Classes and naming the following class representatives

8    with respect to vehicles manufactured on or after February 10, 2011 by Defendant that were equipped

9    with GM's defective Generation IV 5.3-liter V8 Vortec 5300 LC9 engine for the following models and

10   model years: 2011-2014 Chevrolet Avalanche; 2011-2014 Chevrolet Silverado; 2011-2014 Chevrolet

11   Suburban; 2011-2014 Chevrolet Tahoe; 2011-2014 GMC Sierra; 2011-2014 GMC Yukon; and 2011-

12   2014 GMC Yukon XL (hereinafter, "Class Vehicle"):

13   1. **Tennessee Class.** All current owners or lessees of a Class Vehicle that was purchased or leased

14   in the State of Tennessee. The Tennessee Class seeks class certification of claims for: (a) breach of

15   implied warranty of merchantability; (b) fraudulent omission; and (c) unjust enrichment. Plaintiffs move

16   for the appointment of Joshua Byrge as the class representative for the Tennessee Class.

17   2. **Pennsylvania Class.** All current owners or lessees of a Class Vehicle that was purchased or

18   leased in the State of Pennsylvania. The Pennsylvania Class seeks class certification of claims for: (a)

19   violation of the Pennsylvania Unfair Trade Practices & Consumer Protection Law, 73 Pa. Cons. Stat.

20   Ann. §§ 201–1 *et seq*; (b) breach of implied warranty of merchantability; (c) fraudulent omission; and

21   (d) unjust enrichment. Plaintiffs move for the appointment of John Graziano as the class representative

22   for the Pennsylvania Class.

23   3. **Arkansas Class.** All current owners or lessees of a Class Vehicle that was purchased or leased

24   in the State of Arkansas. The Arkansas Class seeks class certification of claims for: (a) violation of the

25   Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq*; (b) breach of implied

26   warranty of merchantability; (c) fraudulent omission; and (d) unjust enrichment. Plaintiffs move for the

27   appointment of Larry Goodwin as the class representative for the Arkansas Class.

28

1    4. **Idaho Class.** All current owners or lessees of a Class Vehicle that was purchased or leased in

2    the State of Idaho. The Idaho Class seeks class certification of claims for: (a) violation of the Idaho

3    Consumer Protection Act, Idaho Code Ann. §§ 48-601 *et seq*.; (b) breach of implied of merchantability;

4    (c) fraudulent omission; and (d) unjust enrichment. Plaintiffs move for the appointment of Gabriel Del

5    Valle as the class representative for the Idaho Class.

6        Plaintiffs also move under Fed. R. Civ. P. 23(g) for the appointment of DiCello Levitt Gutzler

7    LLC and Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. as Class Counsel for all certified Classes.

8        This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of

9    Points and Authorities, the accompanying declaration of H. Clay Barnett, III, and the exhibits thereto.

10

11   Dated: November 6, 2020                    /s/ Adam J. Levitt
                                                 Adam J. Levitt (*pro hac vice*)
12                                               John E. Tangren (*pro hac vice*)
                                                 Daniel R. Ferri (*pro hac vice*)
13                                               **DICELLO LEVITT GUTZLER LLC**
                                                 Ten North Dearborn Street, Sixth Floor
14                                               Chicago, Illinois 60602
                                                 Telephone: 312-214-7900
15                                               alevitt@dicellolevitt.com
                                                 jtangren@dicellolevitt.com
16                                               dferri@dicellolevitt.com

17                                               W. Daniel "Dee" Miles, III (*pro hac vice*)
                                                 H. Clay Barnett, III (*pro hac vice*)
18                                               J. Mitch Williams II (*pro hac vice*)
                                                 **BEASLEY, ALLEN, CROW,**
19                                               **METHVIN, PORTIS & MILES, P.C.**
                                                 272 Commerce Street
20                                               Montgomery, Alabama 36104
                                                 Telephone: 334-269-2343
21                                               Dee.Miles@Beasleyallen.com
                                                 Clay.Barnett@BeasleyAllen.com
22                                               Mitch.Williams@Beasleyallen.com

23                                               Jennie Lee Anderson (SBN 203586)
                                                 Lori E. Andrus (SBN 205816)
24                                               **ANDRUS ANDERSON LLP**
                                                 155 Montgomery Street, Suite 900
25                                               San Francisco, California 94104
                                                 Telephone: 415-986-1400
26                                               jennie@andrusanderson.com
                                                 lori@andrusanderson.com

27                                               Christopher L. Coffin (*pro hac vice*)
28                                               **PENDLEY, BAUDIN & COFFIN, L.L.P.**
                                                 1515 Poydras Street, Suite 1400
                                                 New Orleans, Louisiana 70112

1
2

Telephone: 504-355-0086
nrockforte@pbclawfirm.com
ccoffin@pbclawfirm.com

3

Marcus Rael (*pro hac vice*)
**ROBLES, RAEL & ANAYA, P.C.**
500 Marquette NW, Suite 700
Albuquerque, New Mexico 87102
Telephone: 505-242-2228
marcus@roblesrael.com

4
5
6

Anthony J. Garcia, Esq. (*pro hac vice*)
**AG LAW**
742 South Village Circle
Tampa, Florida 33606
Telephone: 813-259-9555
anthony@aglawinc.com

7
8
9

Timothy J. Becker (*pro hac vice*)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
Telephone: 612-436-1800
tbecker@johnsonbecker.com

10
11
12
13

Ben Finley (*pro hac vice* motion to be filed)
**THE FINLEY FIRM, P.C.** 200 13th Street
Columbus, Georgia 31901
Telephone: 706-322-6226
bfinley@thefinleyfirm.com

14
15
16

Eric J. Haag (*pro hac vice*)
**ATTERBURY, KAMMER, & HAAG, S.C.**
8500 Greenway Boulevard, Suite 103
Middleton, Wisconsin 53562
Telephone: 608-821-4600
ehaag@wiscinjurylawyers.com

17
18
19
20

***Counsel for Plaintiffs and the Proposed Classes***

21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 2

I.     Defective Piston Rings Cause Excessive Oil Consumption in the Class Vehicles. ...................... 2

II.    GM Knew of the Excessive Oil Consumption and Knew of the Defective Piston Rings............. 4

III.   GM Directed Its Service Centers to Provide Cheap, Inadequate Fixes for Oil

       Consumption Complaints, Which Did Not Remedy the Defect..................................................... 5

IV.   Excessive Oil Consumption Destroys Engines. .......................................................................... 5

ARGUMENT .............................................................................................................................. 7

I.     The Classes Satisfy the Requirements of Rule 23(a). ................................................................ 9

       A.    The Classes Are Sufficiently Numerous. .................................................................... 9

       B.    Plaintiffs' and Class Members' Claims Share Common Questions of Fact and

              Law. ........................................................................................................................... 9

       C.    Plaintiffs' Claims Are Typical of the Class's Claims. .............................................. 10

       D.    Plaintiffs and Their Counsel Will Adequately Protect the Class's Interests. ................. 11

II.    The Classes Satisfy the Requirements of Rule 23(b). ............................................................... 11

       A.    Common Questions of Law and Fact Concerning Liability Predominate Over

              Questions Affecting Only Individual Class Members..................................................... 12

              1.    Statutory Consumer Fraud Claims ................................................................. 13

              2.    Implied Warranty Claims ................................................................................ 15

              3.    Fraudulent Concealment.................................................................................. 16

              4.    Unjust Enrichment........................................................................................... 19

       B.    Common Questions of Law and Fact Concerning Damages Predominate over

              Questions Affecting Only Individual Members of the Classes. ..................................... 19

       C.    A Class Action Is the Superior Method of Adjudication. ............................................. 20

CONCLUSION ........................................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. W. Enterprises, Inc. v. CNH, LLC*,
  316 P.3d 662 (Idaho 2013) .................................................................................................. 17

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ......................................................................................... 11, 12, 21

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
  133 S. Ct. 1184 (2013) .................................................................................................. 9, 12

*Banks v. Nissan North Am., Inc.*,
  301 F.R.D. 327 (N.D. Cal. 2013) .................................................................................... 12

*Bradley v. All Am. Classics of Tennessee, Inc.*,
  2009 WL 1034797 (Tenn. Ct. App. Apr. 16, 2009) ......................................................... 13

*Browder v. Pettigrew*,
  541 S.W.2d 402 (Tenn.1976) ............................................................................................ 15

*CGR Investments, Inc. v. Hackney Petroleum, Inc.*,
  1997 WL 104116 (Tenn. Ct. App. Mar. 10, 1997).......................................................... 17

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) ............................................................................................ 12

*Curtis Lumber Co. v. Louisiana Pac. Corp.*,
  618 F.3d 762 (8th Cir. 2010).......................................................................................... 18

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) .......................................................................................................... 21

*Doyle v. Chrysler Grp. LLC*,
  2014 WL 7690155 (C.D. Cal. Oct. 9, 2014) .................................................................. 10

*E.I. Du Pont de Nemours & Co. v. Dillaha*,
  659 S.W.2d 756 (Ark. 1983) ............................................................................................ 16

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .............................................................................................. 9

*Falco v. Nissan N. Am. Inc.*,
  2016 WL 1327474 (C.D. Cal. Apr. 5, 2016) .................................................................. 20

*Faltermeier v. FCA US LLC*,
 2016 WL 4771100 (W.D. Mo. Sept. 13, 2016) .................................................................. 20

*Farm Bureau Policy Holders & Members v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*,
 984 S.W.2d 6 (1998) ........................................................................................................ 18

*Fayne v. Vincent*,
 301 S.W.3d 162 (Tenn. 2009) ......................................................................................... 13

*Freeman Indus., LLC v. Eastman Chem. Co.*,
 172 S.W.3d 512 (Tenn. 2005) ......................................................................................... 19

*G & M Farms v. Funk Irrigation Co.*,
 808 P.2d 851 (Idaho 1991) .............................................................................................. 19

*Gall v. Allegheny Cnty. Health Dep't*,
 555 A.2d 786 (Pa. 1989) .................................................................................................. 16

*Ganzevoort v. Russell*,
 949 S.W.2d 293 (Tenn. 1997) ......................................................................................... 13

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ............................................................................... 10, 11, 12

*Hanon v. Dataproducts Corp.*,
 976 F.2d 497 (9th Cir. 1992) ........................................................................................... 10

*In re Beach*,
 447 B.R. 313 (Bankr. D. Idaho 2011) ............................................................................. 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 308 F.R.D. 606 (N.D. Cal. 2015) .................................................................................... 12

*In re Dial Complete Mktg. & Sales Practices Litig.*,
 312 F.R.D. 36 (D.N.H. 2015) ......................................................................................... 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
 2006 WL 1530166 (N.D. Cal. June 5, 2006) .................................................................. 10

*In re Facebook, Inc. PPC Adver. Litig.*,
 282 F.R.D. 446 (N.D. Cal. 2012) ...................................................................................... 9

*In re Gen. Motors LLC Ignition Switch Litig.*,
 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ................................................................. 20

*In re MyFord Touch Consumer Litig.*,
 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ............................................................... 12

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
 2012 WL 7802852 (C.D. Cal. Dec. 28, 2012) ............................................................... 10

*ITT Educ. Servs., Inc. v. AP Consol. Theatres II Ltd. P'ship,*
   195 F. Supp. 3d 1031 (E.D. Ark. 2016) .................................................................... 18

*Keegan v. Am. Honda Motor Co., Inc.,*
   284 F.R.D. 504 (C.D. Cal. 2012) ............................................................................. 13

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.,*
   244 F.3d 1152 (9th Cir. 2001) ................................................................................. 12

*Manhattan Credit Co. v. Burns,*
   323 S.W.2d 206 (Ark. 1959) .................................................................................... 19

*Merchants & Planters Bank & Trust Co. v. Massey,*
   790 S.W.2d 889 (Ark. 1990) .................................................................................... 20

*Moscatiello v. Pittsburgh Contractors Equip. Co.,*
   595 A.2d 1198 (Pa. Super. Ct. 1991) ...................................................................... 16

*Moser v. DeSetta,*
   589 A.2d 679 (Pa 1991) ........................................................................................... 18

*New York Life Ins. Co. v. Brandwene et ux.,*
   172 A. 669  (Pa. 1934) ............................................................................................. 18

*Nguyen v. Nissan N. Am., Inc.,*
   932 F.3d 811 (9th Cir. 2019) ................................................................................... 20

*Nissan N. Am., Inc. v. Harlan,*
   518 S.W.3d 89 (Ark. Ct. App. 2017) ...................................................................... 16

*Odom v. Oliver,*
   310 S.W.3d 344 (Tenn. Ct. App. 2009) .................................................................. 17

*Parkinson v. Hyundai Motor Am.,*
   258 F.R.D. 580 (C.D. Cal. 2008) .............................................................................. 9

*Pecover v. Elec. Arts Inc.,*
   2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ........................................................ 21

*Perez-Olano v. Gonzalez,*
   248 F.R.D. 248 (C.D. Cal. 2008) .............................................................................. 9

*Phelps v. Wet Willy's Fireworks Supermarket of Tenn., Inc.,*
   1997 WL 113896 (Tenn. Ct. App. Mar. 14, 1997) ................................................. 15

*Philip Morris Companies, Inc. v. Miner,*
   462 S.W.3d 313 (Ark. 2015) .................................................................................... 14

*Phillips Petroleum Co. v. Shutts,*
   472 U.S 797 (1985) .................................................................................................... 8

*Powers v. Am. Honda Motor Co.*,
  79 P.3d 154 (Idaho 2003) ................................................................................ 16

*Printcraft Press, Inc. v. Sunnyside Park Utilities, Inc.*,
  283 P.3d 757 (Idaho 2012) .............................................................................. 19

*Quashnock v. Frost*,
  445 A.2d 121 (Pa. Super. Ct. 1982) ................................................................. 18

*Ramthun v. Bryan Career Coll. Inc.*,
  93 F.Supp.3d 1011 (W.D. Ark. 2015) ......................................................... 14, 18

*Roost Project, LLC v. Andersen Constr. Co.*,
  437 F. Supp. 3d 808 (D. Idaho 2020) .............................................................. 20

*Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*,
  418 S.E.2d 648 (N.C. 1992) ............................................................................. 17

*Schenck v. K.E. David, Ltd.*,
  666 A.2d 327 (Pa. Super. Ct. 1995) ................................................................. 19

*Solarz v. DaimlerChrysler Corp.*,
  2002 WL 452218 (Pa. Ct. Com. Pl. Mar. 13, 2002) ........................................ 15

*State ex rel. Kidwell v. Master Distributors, Inc.*,
  615 P.2d 116 (Idaho 1980) .............................................................................. 15

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................... 11

*Tucker v. Sierra Builders*,
  180 S.W.3d 109 (Tenn. Ct. App. 2005) ........................................................... 13

*Turner v. Aldor Co. of Nashville, Inc.*,
  827 S.W.2d 318 (Tenn. Ct. App. 1991) ........................................................... 16

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ........................................................................... 21

*Vanderbilt Univ. v. Scholastic, Inc.*,
  382 F. Supp. 3d 734 (M.D. Tenn. 2019) .......................................................... 17

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) ........................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ....................................................................................... 9

*Williams v. W. Penn Power Co.*,
  467 A.2d 811 (Pa. 1983) .................................................................................. 16

*Wolin v. Jaguar Land Rover N. Am., LLC,*
   617 F.3d 1168 (9th Cir. 2010) .......................................................................... 10, 12, 21

*Wolph v. Acer Am. Corp.,*
   272 F.R.D. 477 (N.D. Cal. 2011) ................................................................................. 9

*Yocca v. Pittsburgh Steelers Sports, Inc.,*
   854 A.2d 425 (Pa. 2004).............................................................................................. 13

*Zinser v. Accufix Rsch. Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001)................................................................................. 8, 9

*Zwiercan v. Gen. Motors Corp.,*
   58 Pa. D. & C.4th 251 (Pa. Ct. Com. Pl. 2002).................................................. 14, 18

**Statutes**

73 Pa. Cons. Stat. Ann. §§ 201–1 .................................................................. 1, 13

Ark. Code Ann. § 4–86–101 ........................................................................... 16

Ark. Code Ann. §§ 4-88-101 .......................................................................... 1, 14

Tenn. Code Ann. §§ 47-18-101 ...................................................................... 1, 13

Tenn.Code Ann. § 47–18–109(a)(1) ............................................................... 13

**Rules**

Fed. R. Civ. P. 23(a) and (b)(3) ...................................................................... 1

Fed. R. Civ. P. 23(a)(1) .................................................................................. 9

Fed. R. Civ. P. 23(a)(2) .................................................................................. 9

Fed. R. Civ. P. 23(g) ...................................................................................... 2

Rule 23(a) ..................................................................................................... i, 11

Rule 23(a)(3) ................................................................................................. 10

Rule 23(b) ..................................................................................................... i, 11

Rule 23(b)(3) ................................................................................................. 11, 12

Rule 23(f) ...................................................................................................... 12

Rule 23(g)(1)(A)(i)-(iv) ................................................................................. 11

1

## <u>INTRODUCTION</u>

2      This is the second class certification motion filed in this action by Plaintiffs who purchased or

3  leased one or more of the following General Motors LLC ("GM") vehicles equipped with the defective

4  Generation IV 5.3-liter V8 Vortec 5300 LC9 engines manufactured on or after February 10, 2011: 2011-

5  2014 Chevrolet Avalanche; 2011-2014 Chevrolet Silverado; 2011-2014 Chevrolet Suburban; 2011-2014

6  Chevrolet Tahoe; 2011-2014 GMC Sierra; 2011-2014 GMC Yukon; and 2011-2014 GMC Yukon XL

7  (collectively, the "Class Vehicles"). As the Court found in its earlier opinion on class certification, all

8  Class Vehicles allegedly suffer from the same piston ring defect that causes an abnormal and improperly

9  high rate of oil consumption (the "Oil Consumption Defect"). (Dkt. No. 237.) Having so found, the Court

10  granted class certification as to the implied warranty claims of current owners and lessees of Class

11  Vehicles purchased or leased in California, Texas, and North Carolina. (*Id.* at 91.)

12      Plaintiffs Byrge, Graziano, Goodwin, and Del Valle now request that the Court certify their

13  proposed Tennessee, Pennsylvania, Arkansas, and Idaho classes. The implied warranty laws of these

14  states are essentially identical to the California, Texas, and North Carolina implied warranty laws that

15  the Court previously found amenable to class certification. Further, the consumer protection act and

16  fraudulent concealment laws of Tennessee, Pennsylvania, Arkansas, and Idaho law, particularly as they

17  relate to the element of reliance, make these claims appropriate for classwide resolution. Plaintiffs Byrge,

18  Graziano, Goodwin, and Del Valle's unjust enrichment claims are also amenable to classwide resolution.

19      Consistent with the Court's previous opinion, Plaintiffs limit the definition of Class Vehicles to

20  those equipped with the LC9 model engine that were manufactured on or after February 10, 2011. Further,

21  Plaintiffs limit their proposed Classes to current (and not former) owners and lessees of the Class

22  Vehicles.

23

24

25

26

27

28

1

**FACTUAL BACKGROUND**

Beginning in model year 2007, GM introduced the Generation IV 5.3-liter V8 Vortec 5300 engines (the "Gen IV 5.3Ls").[1] (Ex. 1, Halka Dep. at 18.[2]) Soon after their 2007 release, Gen IV 5.3Ls exhibited excessive oil consumption problems. (*Id.* at 22-27.) The Gen IV 5.3Ls suffered from the Oil Consumption Defect throughout the entire Gen IV lifespan, from its earliest model in 2007 until its last model in 2014. (*Id.* at 170-171.) GM was aware of the oil consumption problem with its Gen IV 5.3Ls, as early as 2008, and throughout the relevant period. (Ex. 2, Tappen Dep. at 49.) Yet GM never informed Class members about its internal findings regarding oil consumption in the Class Vehicles. (Ex. 3, Lee Dep. at 100.)

I.      **Defective Piston Rings Cause Excessive Oil Consumption in the Class Vehicles.**

The primary cause of excessive oil consumption in the Class Vehicles is that the piston rings GM installed within the Gen IV 5.3Ls wear down and do not maintain a sufficient seal to keep oil in the crankcase. (Ex. 1, Halka Dep. at 25.) The same piston rings were installed across all GM engine plants for Gen IV 5.3Ls. (*Id.* at 83.) No difference in failure rate existed across the plants with respect to pistons and rings. (*Id.* at 83.)

Piston rings are intended to last "well over 100,000 miles," (*id.* at 26), and GM never expects a customer to have to change piston rings for oil consumption. (Ex. 4, Ricchi Dep. at 100.) GM, however, became aware that the piston rings in its Gen IV 5.3-liter V8s were wearing prematurely and excessively, some as early as 30,000 miles. (Ex. 1, Halka Dep. at 25-26.) As a consequence, the Class Vehicles suffer extreme oil consumption.

Excessive oil consumption occurs when oil is burned within an engine's combustion chamber, thereby reducing the quantity of oil in the engine's crankcase/sump. (*Id.* at 25-27.) Oil can enter the combustion chamber from below as a result of oil traveling up past the piston rings, or from above as

---

[1] There are four models of the Gen IV 5.3L engine: the LC9, the LMG, the LH9, and the LMF. (*See* Dkt. 190, GM's Opposition to Class Certification ("Opp.") at 2-3.) As discussed herein, there is substantial evidence that each of these models suffers from the Oil Consumption Defect, which is common to the Gen IV 5.3L engine design. However, for the sake of Class uniformity, Plaintiffs limit the definition of Class Vehicle to those with the LC9 model.

[2] All exhibits are attached to the Declaration of H. Clay Barnett III, filed contemporaneously herewith.

result of excessive blowby (combustion gases that travel around the piston rings) (*Id*. at 56; Ex. 5, Nguyen Dep. at 123-24.) Blowby that reaches the crankcase can blend with crankcase oil creating a mist of oil and exhaust gases. (Ex. 1, Halka Dep. at 65.) This oil mist is then vacuumed through the PCV into the intake manifold where it is recirculated into the combustion chambers and burned. (Ex. 3, Lee Dep. at 27-31, 122-30.) Blowby thus causes oil consumption. (Ex. 5, Nguyen Dep. at 123-124.)

The Gen IV 5.3Ls contain eight cylinders. (Ex. 1, Halka Dep. at 96-97.) Within each cylinder is a piston surrounded by rings that, as one GM engineer explained, "are intended to keep oil from getting up into the combustion chamber and also from preventing the gases that are in the combustion chamber from leaking past the rings and going down into the crankcase where the oil is." (Ex. 2, Tappen Dep. at 25.)

The rings are intended as a two-way seal." (*Id*. at 26.) All GM pistons have three rings: an upper compression ring that seals the combustion chamber, a lower compression ring that assists in sealing the combustion chamber and helps ring stability, and an oil control ring. (Ex. 4, Ricchi Dep. at 13.) Importantly, oil must defeat the sealing defenses of all three rings to enter the combustion chamber. (Ex. 1, Halka Dep. at 54.) "In general terms, the piston and the piston ring seal the combustion chamber from either getting oil under the combustion chamber or blowby gases into the crankcase." (Ex. 4, Ricchi Dep. at 9.) If the piston rings lose their ability to seal, the vehicle is negatively impacted and can result in excess oil consumption because oil is passing through the rings. (*Id*.) Tension pushes the ring against the cylinder wall, and rings must maintain adequate tension to create an effective seal. If a ring loses too much tension, it will lose its sealing characteristics. (*Id*. at 55.)

Excessive top ring wear distorts the ring's positioning against the cylinder wall, ultimately creating full face contact which turns the ring into a scraper that scoops oil into the combustion chamber while the engine is running. (Ex. 1, Halka Dep at 25-27.) The oil then either burns, hardens, and accumulates, or passes through the exhaust causing the oil to burn. (*Id*.) Piston rings are coated with an exterior barrier that serves to reduce friction against the cylinder groove and cylinder walls thereby protecting the metal ring body from wear. (*Id*. at 124-126, 163-164.) Not all ring coatings are created equal, however, and the quality of the coating has a direct effect on a ring's performance and longevity. (*Id*. at 124-126.) Improving the ring's coating results in a more robust ring, which improves ring

1   durability and reduces ring wear. (*Id.*) Rings that are more wear resistant lose tension at a slower rate.

2   (Ex. 4, Ricchi Dep. at 55.)

3         The Gen IV 5.3Ls in the Class Vehicles used piston rings coated with what GM referred to as

4   "278" material. (Ex. 6, GM 000579376.) This 278 coating material did not meet GM's expectations, as

5   it resulted in top ring wear, causing excessive oil consumption in Gen IV 5.3Ls. (Ex. 1, Halka Dep. at

6   150, 157, 169-74; Ex. 7, GM000578690; Ex. 8, GM00579468.) GM abandoned the 278 coating material

7   in its next generation, Generation V, 5.3-liter V8 engines.  (Ex. 6, GM 000579376; Ex. 8, GM00579468.)

8         For Generation V engines, GM initially chose rings with more robust coating, known as "525,"

9   which is more wear resistant than the 278. (Ex. 4, Ricchi Dep. at 49; Ex. 6, GM 000579376.) The 525

10  coating showed improved wear resistance over the 278 coating. (Ex. 4, Ricchi Dep. at 74; Ex. 9,

11  GM000578011.) GM eventually upgraded to even more durable ring material known as PVD, which is

12  even more wear resistant than the 525. (*Id.*) In late 2014, GM was able to secure the significantly better

13  piston rings at a lower cost than years prior. (Ex. 4, Ricchi Dep. at 42.) Subsequent to July 2014, after

14  GM released Generation V and when it was no longer manufacturing Generation IV engines, GM began

15  installing PVD coated rings in warranty replacement and remanufactured Gen IV engines. (Ex. 1, Halka

16  Dep. at 155, 170-171; Ex. 7, GM000578690.) The intent in changing the ring to the more robust PVD

17  material was to reduce wear of the upper compression ring and to stop "top ring wear [from] causing oil

18  consumption." (Ex. 1, Halka Dep. at 171, 216-217; Ex. 7, GM000578690.)

19  **II.    GM Knew of the Excessive Oil Consumption and Knew of the Defective Piston Rings.**

20        GM has been aware of the oil consumption problem within its Gen IV 5.3-liter V8s since prior to

21  the sale of the first Class Vehicle. (Ex. 2, Tappen Dep. at 49.) GM became aware of this problem through,

22  among other means, its warranty data, which showed trends in labor codes and customer complaints

23  associated with excessive oil consumption. (*See* Ex. 10, Pfromm Dep. at 12.) Specifically, GM saw an

24  increased trend in piston assembly replacements for Gen IV 5.3Ls. (*Id.*) Further, during engine teardowns,

25  GM witnessed evidence of oil migrating past the piston rings. (Ex. 2, Tappen Dep. at 27, 61.) Specifically,

26  GM witnessed evidence that the piston rings were wearing out and not contacting the bore wall properly.

27  (*Id.*) GM was aware that piston rings were wearing excessively, some as early as 30,000 miles, in its 5.3-

28  liter V8 engines. (Ex. 1, Halka Dep. at 25-26; Ex. 2, Tappen Dep. at 61; Ex. 11, GM 000128725.)

In 2009, GM commenced a "Red X" investigation into the problem of excessive oil consumption in the vehicles and generated an Executive Report. (Ex. 11, GM000128725.) GM engineer Grant Tappen described the Red X investigation as follows:

> The engine started its life with a full amount of oil in it. During the operation of the vehicle, some oil would be consumed. We were trying to find the path or paths where that oil was being consumed. By consumed, I mean somehow ending up exiting the engine, typically through the exhaust or going back through the intake and being burnt through the engine and then exiting through the exhaust.

(Ex. 2, Tappen Dep. at 25.) While investigating the Oil Consumption Defect in 2009 and 2010, GM noted that its piston rings were exhibiting 100% full face wear, which was the common factor in all engines they reviewed. (Ex. 1, Halka Dep. at 195.) Indeed, GM's piston expert, Tom Halka, recognized that excessive oil consumption was the result of oil entering the combustion chamber after the top compression ring wore to the point of exerting full face wear on the bore, thus becoming a scraper that pushed oil into the combustion chamber, while simultaneously allowing blowby gasses to escape into the crankcase. (*Id.* at 202-03.) Halka's opinion squares with the Executive Report pages 7, 9, 18 and 21, all of which confirm that the rings were the heart of the "physics of the failure." (Ex. 11, GM000128725.)

## III.    Excessive Oil Consumption Destroys Engines.

Automotive engines require a sufficient amount of oil to properly function. As explained by one of GM's engineers:

> [T]he bearings inside of an engine are hydrodynamic. They don't have rollers or balls…so the oil is the fluid that keeps the bearing itself from touching other parts, either the crankshaft or the connecting rod, and in the case of pistons and rings, we actually require oil to lubricate the surface between the ring and the groove and also the surface between the ring and the bore, so it's the lubricating material that keeps the metal parts from touching each other excessively.

(Ex. 1, Halka Dep. at 35).

Excessive oil consumption, and the resultant loss of lubricity, must thus be avoided. When the metal components touch each other, they can scuff, grind, and cause heavy wear, which can result in misfire, seizing, and stopping go the engine. (Ex. 1, Halka Dep. at 67, 69, and 74; Ex. 2, Tappen Dep. at 41, 48.) This could result in misfire, seizing and stopping the engine. (Ex. 1, Halka Dep. at 69, 73.) Indeed, in inspecting the Gen IV 5.3Ls that exhibited excessive oil consumption, GM observed destroyed engine components. (*Id.* at 70.) Drivers, moreover, typically are not aware that their vehicle is burning

1   excessive oil. (Ex. 2, Tappen Dep. at 41), as the Oil Life Monitoring System on the Class Vehicles does
2   not actually take oil level into account. (Ex. 3, Lee Dep. at 152.)

3       The Class Vehicles excessive consumption of oil causes metal-on-metal friction, heat levels that
4   far exceed GM's specifications, and resulting engine damage and rapid destruction. Oil consumption,
5   moreover, fouls spark plugs in the Class Vehicles to the point of causing misfires and loss of power while
6   under way. (Ex. 1, Halka Dep. at 72-74.) As GM acknowledges, low oil conditions, such as those that
7   can result from the Oil Consumption Defect, present dangerous safety hazards to the driver, other
8   passengers of the Class Vehicles, and the public. (Ex. 3, Lee Dep. at 38-40.)

9   **IV.    GM Directed Its Service Centers to Provide Cheap, Inadequate Fixes for Oil Consumption
10           Complaints, Which Did Not Remedy the Defect.**

11       In addition to the defective piston rings, GM hypothesized that other factors were contributing to
12  excessive oil consumption within the Gen IV 5.3Ls. Specifically, GM's engineers pointed to: (1) a PCV
13  system that vacuumed oil from the valvetrain into the intake system (Ex. 1, Halka Dep. at 65-66), and (2)
14  an Active Fuel Management ("AFM") system that increases fuel economy by using technology to shut
    down four of the eight cylinders during lighter operating conditions. (Ex. 12, Cygan Dep. at 30.)

15      Rather than directly address the defective piston rings, GM issued Technical Service Bulletins
16  ("TSBs"), beginning as early as August 24, 2010 TSB# 10-06-01-008, (Ex. 13, GM000571921), to its
17  dealerships that instructed dealers responding to complaints of excessive oil consumption to install a
18  shield to prevent oil spray by the AFM system and install a baffle to prevent the PCV system from
19  vacuuming oil. (*Id*.) These supposed fixes were significantly less expensive than piston ring replacement.
20  GM estimated the AFM shield and piston cleaning at $574, while replacing the pistons and rings would
21  cost $2,700. (Ex. 14, GM000575234.) Further, in Class Vehicles manufactured on or after February 10,
22  2011, GM included the AMF oil spray shield and redesigned rocker cover.  (Ex. 1, Halka Dep. at 23.)

23      The AFM oil spray shield and redesigned rocker cover failed to remedy the excessive oil
24  consumption problem in the Class Vehicles. (Ex. 15, GM000236672; Ex. 1, Halka Dep. at 252; Ex. 3,
25  Lee Dep. at 147-49.) Indeed, the Gen IV 5.3Ls suffered from the Oil Consumption Defect throughout the
26  entire Gen IV lifespan, from its earliest model in 2007 until its last model in 2014. (Ex. 1, Halka Dep. at
27  170-171.) The Gen IV 5.3Ls continued to suffer from excessive oil consumption after GM purportedly
28  suggested it "fixed" the problem. (Ex. 16, Toth Dep. at 167-68; Ex. 1, Halka Dep. at 111-113; Ex. 17,

GM000118990.) GM expressly acknowledged that the later year models of the Class Vehicles, which had the purported AFM and PCV fixes, continued to suffer from the Oil Consumption Defect in a later TSB, TSB# 10-06-01-008M, dated November 26, 2014. (Ex. 18, GM000579841) GM engineers Lee and Halka stated that installing the AFM shield did not cure the Oil Consumption Defect. (Ex. 1, Halka Dep. at 252-253; Ex. 3, Lee Dep. at 147-49.) Moreover, GM's warranty data contains records of customers who received dealership AFM shield installation but then subsequently returned to the dealership complaining of oil consumption problems. (Ex. 10, Pfromm Dep. at 29.) In October 2013, GM's piston expert, Tom Halka, informed its ring supplier, MAHLE, that GM is still getting Gen IV LC9 engines returned due to poor oil consumption. (Ex. 19, MAHLE-002261.) Halka stated:

> Even though this engine will be out of production soon, we will be getting many back for warranty fix. We are already getting some word than ones we fixed at 50k to 80k miles are now consuming oil at 140k (no surprise) We want to give customers a better chance of it really being fixed after a warranty rebuild. Additionally, we will be remanufacturing this engine for 10 years at a couple thousand per year. We need something better.

(*Id.*) GM's purported "fixes" failed to alleviate the problem. GM failed to address the primary cause of oil consumption: the piston rings. (Ex. 1, Halka Dep. at 171.) GM's piston expert confirmed that the piston ring material in model years 2010-2014 was subject to wear in the field and caused oil consumption. (*Id.* at 159.) Even in 2015, GM recognized that the Gen IV 5.3-liter V8s still suffered oil consumption problems and component wear. (*Id.* at 170-171; Ex. J, GM000579468.)

**V.     Plaintiffs Are Current Owners of Class Vehicles That Suffer From the Oil Consumption Defect.**

Plaintiffs Byrge, Graziano, Goodwin, and Del Valle each currently owns a Class Vehicle equipped with an LC9 engine manufactured on or after February 10, 2011. (Ex. 20, Del Valle Dep. at 15:24; Ex. 21, Del Valle Declaration; Ex. 22, Graziano Dep. at 15:11; Ex. 23, Graziano Declaration; Ex. 24, Byrge Dep. at 12:23; Ex. 25, Byrge Declaration; Ex. 26, Goodwin Dep. at 14:11; Ex. 27, Goodwin Declaration.)  Each of these Plaintiffs' vehicles, moreover, suffered from the Oil Consumption Defect within the warranty period.

Plaintiff Del Valle's 2013 Chevrolet Avalanche excessively consumed oil from his purchase date in February 2016, and it continues to excessively consume oil, requiring half a quart top-off between oil changes. (Ex. 20, Del Valle Dep. at 28:4-12, 42:24-43:22, 47:24-49-23, 55:1-56:20). Plaintiff Del Valle's

1  Class Vehicle suffered fouled spark plugs due to the Oil Consumption Defect and suffers sporadic low

2  oil pressure. (*Id.* at 53:16-54:6, 62:13-63:8, 85:17-90:2)

3       Plaintiff Graziano's 2012 Chevrolet Silverado excessively consumed oil as early as 2013 or 2014,

4  when it suffered "sluggish" performance due to oil consumption induced spark plug fouling, at and

5  Graziano discovered the oil volume approximately one and a half quarts low. (Ex. 22, Graziano Dep. at

6  49:22-51:12;  55:3-56:7). Plaintiff Graziano's Class Vehicle continues to excessively consume oil,

7  requiring approximately one quart of oil between oil changes.  (*Id.* at 56:13-59:7).

8       Plaintiff Goodwin's 2011 Chevrolet Silverado began excessively consuming oil as early as 2014

9  when he discovered the oil volume approximately two quarts low. (Ex. 26, Goodwin Dep. at 44:11-20;

10  48:20-21). Plaintiff Goodwin's Class Vehicle continues to excessively consume oil, requiring that he

11  replace one-quarter to one and a half quarts every three to four weeks. (*Id.* at 43-44; 45-46; 73.)

12       Plaintiff Byrge confirmed his 2012 Chevrolet Silverado excessively consumed oil as early as 2017

13  when a Castrol Oil technician found his oil volume approximately one-half to one quart low. (Ex. 24,

14  Byrge Dep. at 25:19-25:2). Plaintiff Byrge's Class Vehicle continues to excessively consume oil,

15  requiring that he replace one to one and half quarts every 2,000 miles. (*Id.* at 26:1-8; 37:21-38:1). Plaintiff

16  Byrge's Class Vehicle suffers rough idle associated with the Oil Consumption Defect. (*Id.* at 38:3-5).

17       No Plaintiffs received an adequate repair (i.e., an updated piston package). (Ex. 20, Del Valle

18  Dep. at 44:1-14; Ex. 26, Goodwin Dep. at 49:3-9; Ex. 24, Byrge Dep. at 26:20-24; Ex. 22, Graziano Dep.

19  at 54:7-13).

20                              **ARGUMENT**

21       Class actions "permit the plaintiffs to pool claims which would be uneconomical to litigate

22  individually" and ensure that plaintiffs have a right to redress wrongs that would otherwise "have no

23  realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S 797,

24  809 (1985). To certify a proposed class under Rule 23, Plaintiffs must demonstrate that "each of the four

25  requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) have been met." *Zinser v.

26  Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

27       Although the Court's "class-certification analysis must be 'rigorous' and may 'entail some

28  overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants no license to engage in free-

1   ranging merits inquiries at the class certification stage." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,

2   133 S. Ct. 1184, 1194-95 (2013) (internal citation omitted). Therefore, "[m]erits questions may be

3   considered to the extent – but only to the extent – that they are relevant to determining whether Rule 23

4   prerequisites for class certification are satisfied." *Id.* at 1195; *see also Ellis v. Costco Wholesale Corp.*,

5   657 F.3d 970, 983-84 n.8 (9th Cir. 2011) (holding that, at the certification stage, it is inappropriate to

6   "determine whether class members could actually prevail on the merits of their claims," because that

7   would "turn class certification into a mini-trial").

8          Within the framework of Rule 23, the Court ultimately has "broad discretion" over whether to

9   certify a class. *Zinser*, 253 F.3d at 1186. "Any doubts regarding the propriety of class certification

10  generally should be resolved in favor of certification." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481

11  (N.D. Cal. 2011).

12  **I.      The Classes Satisfy the Requirements of Rule 23(a).**

13         **A.      The Classes Are Sufficiently Numerous.**

14         Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable."

15  Fed. R. Civ. P. 23(a)(1). In order to satisfy this requirement, "[P]laintiffs need not state the exact number

16  of potential class members." *In re Facebook, Inc. PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal.

17  2012). "[W]here the exact size of the class is unknown, but general knowledge and common sense

18  indicate that it is large, the numerosity requirement is satisfied." *Perez-Olano v. Gonzalez*, 248 F.R.D.

19  248, 255 (C.D. Cal. 2008). "[C]ourts generally find that the numerosity factor is satisfied if the class

20  comprises 40 or more members." *Facebook*, 282 F.R.D. at 452. Here, GM sold 20,070 model year 2011-

21  14 Gen IV 5.3L LC9s in Arkansas; 6,001 model year 2011-14 Gen IV 5.3L LC9s in Idaho; 45,111 model

22  year 2011-14 Gen IV 5.3L LC9s in Pennsylvania; and 14,012 model year 2011-14 Gen IV 5.3L LC9s in

23  Tennessee. (Ex. 28, GM000000002; Ex. 29, GM000000003; Ex. 30, GM000000004; Ex. 31,

24  GM000000005.)

25         **B.      Plaintiffs' and Class Members' Claims Share Common Questions of Fact and Law.**

26         Fed. R. Civ. P. 23(a)(2) requires "questions of law or fact common to the class." "[E]ven a single

27  common question" will suffice. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (internal

28  citations omitted); *see also Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008) ("the

---

1   [commonality] inquiry is qualitative, not quantitative, and one significant issue may warrant

2   certification"). In *Wolin*, in which the Ninth Circuit considered the certification of a class of purchasers

3   of vehicles with alleged alignment defects, the court found that plaintiffs "easily satisf[ied] the

4   commonality requirement" where their claims "involve[d] the same alleged defect . . . found in vehicles

5   of the same make and model." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir.

6   2010). Here, where all of the Class Vehicles suffer from the defective piston rings, the Court previously

7   found that commonality was satisfied with respect to Class Vehicles with Gen IV 5.3L LC9 engines

8   manufactured after the February 10, 2011 introduction of the redesigned rocker cover.  (Dkt. No. 237 at

9   75, 91.)

10          **C.      Plaintiffs' Claims Are Typical of the Class's Claims.**

11          Rule 23(a)(3) requires the claims of the representative plaintiffs to be typical of the claims of the

12   class. "The purpose of the typicality requirement is to assure that the interest of the named representative

13   aligns with the interests of the class." *Wolin*, 617 F.3d at 1175 (quoting *Hanon v. Dataproducts Corp.*,

14   976 F.2d 497, 508 (9th Cir. 1992)). Representative plaintiffs' claims are typical if they "arise[] from the

15   same event, practice or course of conduct that gives rise to the claims of the absent class members and if

16   their claims are based on the same legal or remedial theory." *In re Dynamic Random Access Memory*

17   *(DRAM) Antitrust Litig.*, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006). This requirement is

18   "permissive," and is satisfied as long as Plaintiffs' claims are "reasonably co-extensive with those of

19   absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d

20   1011, 1020 (9th Cir. 1998).

21          Typicality is readily satisfied in cases like this one, where "all class members are alleged to have

22   suffered injury as a result of the same conduct by [GM]." *Doyle v. Chrysler Grp. LLC*, 2014 WL 7690155,

23   at *7 (C.D. Cal. Oct. 9, 2014); *see also Wolin*, 617 F.3d at 1175 (typicality satisfied where plaintiffs

24   alleged "that they, like all prospective class members, were injured by a defective alignment geometry in

25   the vehicles [and the plaintiffs] and the class seek to recover pursuant to the same legal theories: violation

26   of consumer protection laws, breach of warranty, and unjust enrichment"); *In re Toyota Motor Corp.*

27   *Unintended Acceleration Mktg., Sales Practices, & Prods Liab. Litig.*, 2012 WL 7802852, at *3 (C.D.

28   Cal. Dec. 28, 2012) (finding that "all the class members allege they have suffered the same injuries based

on a common course of Toyota's conduct . . . [and] [t]he Class Representatives' claims are thus typical of the class").

### D.   Plaintiffs and Their Counsel Will Adequately Protect the Class's Interests.

Adequacy turns on the following questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Here, Plaintiffs' interests do not conflict with the interests of the Class. Relying on the same set of facts, Plaintiffs and Class members assert the same theories of liability arising from GM's active concealment of the oil consumption defect. All Plaintiffs have demonstrated their commitment to this case and their familiarity with the claims in this matter, actively participating in this litigation by producing documents, providing written discovery responses, and making themselves available for depositions and even vehicle inspections.

In evaluating the adequacy of counsel, courts consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Rule 23(g)(1)(A)(i)-(iv). Here, Plaintiffs have retained highly qualified and competent counsel with significant experience litigating class action cases. (Ex. 32, Firm Resumes.) They have been appointed lead or co-lead counsel in numerous class cases, they have diligently pursued this matter since its filing, and they intend to dedicate the resources needed to pursue this case through final resolution. Therefore, the adequacy requirement is satisfied.

## II.   The Classes Satisfy the Requirements of Rule 23(b).

In addition to satisfying the Rule 23(a) requirements, Plaintiffs must demonstrate that the action may be maintained under Rule 23(b). *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997). Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their difference in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1777 (2d ed. 1986)). To satisfy Rule 23(b)(3), common questions must "predominate over any questions affecting only individual

members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Id.*

### A.   Common Questions of Law and Fact Concerning Liability Predominate Over Questions Affecting Only Individual Class Members.

The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Rule 23(b)(3) does not require Plaintiffs to prove the common questions will be answered in their favor. *Amgen*, 133 S. Ct. at 1191 (movant must show "that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class") (emphasis in original). Further, Rule 23(b)(3) "does not require plaintiffs to prove that every element of a claim is subject to classwide proof," but "only … that common questions predominate over questions affecting only individual class members." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 612 (N.D. Cal. 2015) (citing *Amgen*, 133 S. Ct. at 1196). There may be "some variation" between class members with respect to the defendant's alleged misconduct. *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). The relevant question is whether any such variations "swamp" the common issues. *In re MyFord Touch Consumer Litig.*, 2016 WL 7734558, at *13 (N.D. Cal. Sept. 14, 2016).

Consistent with the Court's earlier class certification ruling (Dkt. No. 237), courts regularly certify classes in automobile defect cases involving legal and factual questions similar to those raised here. *See, e.g.*, *Wolin*, 617 F.3d at 1176 (reversing denial of certification of class of vehicle owners alleging Land Rover's LR3 vehicles suffered from alignment geometry defect that caused tires to wear prematurely); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) (denying Ford's Rule 23(f) petition for interlocutory review of district court's order certifying statewide class alleging Ford knowingly manufactured, sold, and distributed vehicles containing a defective engine part); *Banks v. Nissan North Am., Inc.*, 301 F.R.D. 327, 336 (N.D. Cal. 2013) (certifying class of vehicle owners asserting claims against Nissan under California's UCL and CLRA based on alleged defects in an

1  electronic component for the antilock braking system in their Nissan vehicles); *Keegan v. Am. Honda*

2  *Motor Co., Inc.*, 284 F.R.D. 504, 552 (C.D. Cal. 2012) (certifying class alleging consumer protection and

3  warranty claims against Honda based on suspension defect in 2006 through 2008 Honda Civic Hybrid

4  vehicles).

5          **1.**       **Statutory Consumer Fraud Claims**

6              a)     Pennsylvania Class

7        Plaintiff Graziano seeks Pennsylvania class certification under the Pennsylvania Unfair Trade

8  Practices & Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. Ann. §§ 201–1 *et seq.* The

9  UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the

10  conduct of any trade or commerce." *Id.* § 201–3. A claim under the UTPCPL has three elements: (1)

11  justifiable reliance on wrongful conduct or representation; (2) causation; and (3) injury. *Yocca v.*

12  *Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004). Under the UTPCPL, "deliberate non-

13  disclosure of a material fact is just as actionable as an intentional false statement," when there is a duty

14  to speak. *Zwiercan v. Gen. Motors Corp.*, 58 Pa. D. & C.4th 251 (Pa. Ct. Com. Pl. 2002). Under

15  Pennsylvania law, an automobile manufacturer has "a duty to disclose a known latent defect to a

16  purchaser when the purchaser is unsophisticated and does not have access to the same information as the

17  manufacturer." *Id.* Reliance on a defendant's active concealment "can be presumed [where] the

18  concealment of the alleged defect would be material to the Plaintiff's decision to purchase her car." *Id.*;

19  *see also Drayton v. Pilgrim's Pride Corp.,* 2004 WL 765123, at *7 (E.D. Pa. Mar. 31, 2004) (holding,

20  under the UTPCPL, that if a manufacturer does not disclose material information it was duty bound to

21  provide, then the customer may be presumed to have relied upon the manufacturer's silence.). Here,

22  Plaintiff Graziano can establish, on a classwide basis, that GM engaged in deceptive conduct through its

23  concealment of the Oil Consumption Defect and that this conduct caused the Class members to overpay

24  for their vehicles.

25              b)     Arkansas Class

26        Plaintiff Goodwin seeks Arkansas class certification under the Arkansas Deceptive Trade

27  Practices Act ("ADTPA"), Ark. Code Ann. §§ 4-88-101, *et seq.* The ADTPA broadly prohibits

28  "deceptive and unconscionable trade practices," including omissions of material facts. *Id.* at 4-88-107,

1  108.  To prevail on a private action under the Arkansas Deceptive Trade Practices Act (ADTPA) based

2  on omission, a plaintiff must show that: (1) the plaintiff has sustained damages; (2) the defendant

3  concealed, suppressed, or omitted a material fact in connection with the sale or advertisement of services;

4  (3) the defendant intended that others rely upon the concealment, suppression, or omission; and (4) the

5  defendant's conduct was a proximate cause of the plaintiff's damages. *Ramthun v. Bryan Career College-*

6  *Inc.*, 93 F.Supp.3d 1011, 1023 (W.D. Ark. 2015). In *Philip Morris Companies, Inc. v. Miner*, 462 S.W.3d

7  313, 318–20 (Ark. 2015), the Arkansas Supreme Court declined to hold that reliance was an element of

8  the ADTPA claim. In affirming class certification on an ADTPA claim based on an omission, the

9  Arkansas Supreme Court held that the common issue of the defendant's deceptive conduct predominated,

10 regardless of whether reliance was required under the ADTPA. *See also In re Dial Complete Mktg. &*

11 *Sales Practices Litig.*, 312 F.R.D. 36, 58 (D.N.H. 2015) (holding that plaintiffs' ADTPA claim was

12 susceptible to classwide proof, regardless of whether reliance was a required element). Here, Plaintiff

13 Goodwin can establish, on a classwide basis, that GM engaged in deceptive conduct through its

14 concealment of the Oil Consumption Defect and that this conduct caused the Class members to overpay

15 for their vehicles.

16                    c)    Idaho Class

17       Plaintiff Del Valle seeks Idaho Class certification with respect to his claim under the Idaho

18 Consumer Protection Act ("ICPA"), Idaho Code Ann. §§ 48-601 *et seq*. The ICPA broadly prohibits

19 deceptive and unconscionable conduct, and provides a private right of action for "[a]ny person who

20 purchases or leases goods or services and thereby suffers any ascertainable loss of money or property,

21 real or personal, as a result of the use or employment by another person of a method, act or practice

22 declared unlawful by this chapter." *Id.* at §§ 48-603, 603C, 608. Reliance is not an element of the ICPA.

23 *State ex rel. Kidwell v. Master Distributors, Inc.*, 615 P.2d 116, 123 (Idaho 1980); *see also In re Beach*,

24 447 B.R. 313, 319 (Bankr. D. Idaho 2011) ("[N]either reliance by an injured party nor the offending

25 party's intention to deceive must be demonstrated in a successful ICPA claim."). Here, Plaintiff Del Valle

26 can establish, on a classwide basis, that GM engaged in deceptive conduct through its concealment of the

27 Oil Consumption Defect and that this conduct caused the Class members to overpay for their vehicles.

28

2.    **Implied Warranty Claims**

Plaintiffs seek certification of statewide classes with respect to their implied warranty claims under the laws of Tennessee, Pennsylvania, Arkansas, and Idaho. In its previous class certification ruling, the Court certified the implied warranty claims of the California, Texas, and North Carolina classes, where the laws of each state required proof that a vehicle was not fit for its ordinary purposes. (Dkt. No. 237.) Here, the implied warranty laws of Tennessee, Pennsylvania, Arkansas, and Idaho likewise require proof that the Class Vehicles were not fit for their ordinary use. *See Phelps v. Wet Willy's Fireworks Supermarket of Tenn., Inc.*, 1997 WL 113896, at *5 (Tenn. Ct. App. Mar. 14, 1997) (discussing the implied warranty of merchantability, and stating that "a[] product is defective if it is not fit for the ordinary purposes for which such articles are sold and used . . . . Establishing this element requires only proof, in a general sense and as understood by a layman, that 'something was wrong' with the product.") (quoting *Browder v. Pettigrew,* 541 S.W.2d 402 (Tenn.1976)); *Solarz v. DaimlerChrysler Corp.*, 2002 WL 452218, at *7–8 (Pa. Ct. Com. Pl. Mar. 13, 2002) ("The concept of 'merchantability' does not require that the goods be the best quality. . . or the best obtainable . . . but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed . . . that they be free from significant defects, that they perform in the way that goods of that kind should perform . . . and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used.") (quoting *Gall v. Allegheny Cnty. Health Dep't.,* 555 A.2d 786, 789-90 (Pa. 1989)); *E.I. Du Pont de Nemours & Co. v. Dillaha*, 659 S.W.2d 756, 758 (Ark. 1983) ("In recovery for breach of implied warranty of merchantability, the plaintiff must prove 1) that he has sustained damages 2) that the product sold to him was not merchantable, *i.e.,* fit for the ordinary purpose for which such goods are used; 3) that this unmerchantable condition was a proximate cause of his damages; and 4) that he was a person whom the defendant might reasonably expect to use or be affected by the product."); *Powers v. Am. Honda Motor Co.*, 79 P.3d 154, 157 (Idaho 2003) ("Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; and . . . (c) are fit for the ordinary purposes for which such goods are used."). As this Court previously recognized, the question of whether a vehicle is fit for its ordinary purposes can be resolved with evidence common to the class.

Moreover, the issue of privity does not affect class certification with respect to any of the relevant states. There is no privity requirement under relevant Tennessee, Pennsylvania, or Arkansas law. *See Turner v. Aldor Co. of Nashville, Inc.,* 827 S.W.2d 318, 323 (Tenn. Ct. App. 1991) ("Privity is no longer required for breach of warranty actions."); *Moscatiello v. Pittsburgh Contractors Equip. Co.*, 595 A.2d 1198, 1203–04 (Pa. Super. Ct. 1991) ("The law in Pennsylvania is clear that, for recovery for breach of implied warranties, a party need not prove 'privity of contract.'") (quoting *Williams v. W. Penn Power Co.,* 467 A.2d 811 (Pa. 1983)); *Nissan N. Am., Inc. v. Harlan*, 518 S.W.3d 89, 98 n. 1 (Ark. Ct. App. 2017) ("Ark. Code Ann. § 4–86–101 provides that the lack of privity between plaintiff and defendant shall be no defense in an action against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods."). While Idaho law generally requires privity for recovery under a theory of implied warranty, the Idaho Supreme Court has recognized that the privity requirement may be relaxed where a purchaser would be unfairly prejudiced by application of the rule, and suggested that such a situation may occur where the purchaser does not have a viable cause of action against another party. *See Am. W. Enterprises, Inc. v. CNH, LLC*, 316 P.3d 662, 668 (Idaho 2013). Here, where all Idaho Class members are in the same position with respect to GM, the issue of whether they would be unfairly prejudiced by application of the privity rule is common to the entire Class.

### 3. Fraudulent Concealment

#### a) Tennessee Class

Under Tennessee law, fraudulent concealment "is essentially fraud without the element of intent." *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F. Supp. 3d 734, 763 (M.D. Tenn. 2019). It is "a breach of a legal or equitable duty that is deemed fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Id.* It includes omissions that "entail as an attribute of fraud, conduct which reasonably can be expected to influence the conduct of others." *Id.* Tennessee law recognizes "two actionable types of concealment: where the concealment constitutes a trick or contrivance and when there is a duty to disclose." *See Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009). With respect to the duty to disclose, "contracting parties have a duty to disclose

material facts affecting the essence of a contract's subject matter," so long as "ordinary diligence would not have revealed the undisclosed fact." *Id.* at 349-50. Here, the issues of whether GM's concealment of the Oil Consumption Defect had a tendency to deceive others; whether GM's concealment constitutes a trick or contrivance such that it is actionable; and whether GM had a duty to disclose the Oil Consumption Defect because it affects the essence of a contract's subject matter and would not have been discovered with ordinary diligence can all be resolved with evidence that is common to the Class.

Further, while reliance is an element of fraud, "[i]n determining whether a party has relied upon a misrepresentation, 'proof of circumstances from which the [trier of fact] may reasonably infer the fact [of reliance] is sufficient.'" *CGR Invs., Inc. v. Hackney Petroleum, Inc.*, 1997 WL 104116, at *8 (Tenn. Ct. App. Mar. 10, 1997) (quoting *Rowan County Bd. of Educ. v. U.S. Gypsum Co.,* 418 S.E.2d 648, 661 (N.C. 1992)). Thus, the reliance element is also subject to common proof.

b)   Pennsylvania Class

Under Pennsylvania law, "[i]t is well established that fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Moser v. DeSetta*, 589 A.2d 679, 682 (Pa 1991). "The concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement." *Id.* While fraudulent concealment requires a duty to disclose, "where there is a serious and dangerous latent defect known to exist by the seller, then he must disclose such defect to the unknowing buyer or suffer liability for his failure to do so." *Quashnock v. Frost*, 445 A.2d 121, 125–26 (Pa. Super. Ct. 1982). Here, the issue of whether GM's concealment of the Oil Consumption Defect constitutes fraud, and whether GM had a duty to disclose the Oil Consumption Defect because it is a serious and dangerous latent defect known by GM can both be resolved with evidence that is common to the Class.

Further, "[t]he Pennsylvania Supreme Court has held that 'reliance' can be presumed when a party makes material misrepresentations." *Zwiercan*, 58 Pa. D. & C.4th 251 (citing *New York Life Ins. Co. v. Brandwene et ux.,* 172 A. 669 (Pa. 1934)). In *Zwiercan*, the court held that reliance can be presumed where "concealment of the alleged defect would be material to the Plaintiff's decision to purchase her car." *Id.* Thus, the reliance element can also be satisfied with proof common to the Class.

1

        c)     Arkansas Class

2

     Under Arkansas law, fraud requires: "(1) a false representation of material fact; (2) knowledge

3

that the representation is false or that there is insufficient evidence upon which to make the representation;

4

(3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the

5

representation; and (5) damage suffered as a result of the reliance." *Curtis Lumber Co. v. Louisiana Pac.*

6

*Corp.*, 618 F.3d 762, 772 (8th Cir. 2010). Fraud also extends to concealment of material information and

7

nondisclosure of certain pertinent information. *Farm Bureau Policy Holders & Members v. Farm Bureau*

8

*Mut. Ins. Co. of Ark., Inc.,* 984 S.W.2d 6, 14 (1998). For an omission of material fact to be equivalent to

9

a false representation of material fact, a plaintiff must show that the defendant had a duty to disclose the

10

material fact. *Ramthun,* 93 F. Supp. 3d at 1022.  Such a duty can arise "where the parties have a relation

11

of trust or confidence, where there is inequality of condition and knowledge, or where there are other

12

attendant circumstances." *ITT Educ. Servs., Inc. v. AP Consol. Theatres II Ltd. P'ship*, 195 F. Supp. 3d

13

1031, 1046 (E.D. Ark. 2016). Here, the issues of whether GM intentionally concealed material

14

information concerning the Oil Consumption Defect, and whether there was an inequality of knowledge

15

between GM and the Class members such that GM had a duty to disclose the Oil Consumption Defect,

16

turn on evidence common to the Class.

17

     As to reliance, reliance can be presumed under Arkansas law where a fraud "goes to a material

18

matter." *Manhattan Credit Co. v. Burns*, 323 S.W.2d 206, 208 (Ark. 1959). Thus, the reliance element

19

can also be satisfied with proof common to the Class.

20

        d)     Idaho Class

21

     Under Idaho law, "fraud may be established by silence where the defendant had a duty to speak."

22

*G & M Farms v. Funk Irr. Co.*, 808 P.2d 851, 858 (Idaho 1991). "A duty to speak arises in situations

23

where the parties do not deal on equal terms or where information to be conveyed is not already in

24

possession of the other party," *id.*, as well as when "a fact known by one party and not the other is so

25

vital that if the mistake were mutual the contract would be voidable, and the party knowing the fact also

26

knows that the other does not know it." *Printcraft Press, Inc. v. Sunnyside Park Utilities, Inc.*, 283 P.3d

27

757, 769 (Idaho 2012). Here, the issue of whether GM had a duty to disclose the Oil Consumption Defect

28

based on its knowledge of the defect is subject to common proof. Further, whether Class members relied

---

on GM's omission can be inferred from common proof regarding the materiality of the Oil Consumption Defect.

### 4.    Unjust Enrichment

The elements of unjust enrichment are essentially the same under the laws of each of the relevant states and are satisfied with a showing that plaintiff conferred a benefit upon the defendant and that it would be unjust to allow defendant to retain that benefit. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) ("The elements of an unjust enrichment claim are: 1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.") (internal quotation marks omitted); *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995) ("[T]he elements of unjust enrichment [are] benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.") (internal quotation marks omitted); *Merchants & Planters Bank & Trust Co. v. Massey*, 790 S.W.2d 889, 891 (Ark. 1990) ("[A]n action based on unjust enrichment is maintainable where a person has received money ... under such circumstances that, in equity and good conscience, he or she ought not to retain it."); *Roost Project, LLC v. Andersen Constr. Co.*, 437 F. Supp. 3d 808, 823–24 (D. Idaho 2020) (stating that an unjust enrichment claim requires a plaintiff to prove: (1) a benefit is conferred on the defendant by the plaintiff; (2) the defendant appreciates the benefit; and (3) it would be inequitable for the defendant to accept the benefit without payment of the value of the benefit). Here, whether it would be unjust to allow GM to retain the money that the Class members paid for their vehicles is an issue that is common to the Class.

### B.    Common Questions of Law and Fact Concerning Damages Predominate over Questions Affecting Only Individual Members of the Classes.

The Court previously held that damages were measurable on a classwide basis. (Dkt. No. 237 at 82-85.)  The Court found that Plaintiffs' benefit-of-the-bargain damage model, which is tied to the cost of replacing the defective piston rings in the Class Vehicles (*see* Ex. 33, Stockton Report), was consistent with the classwide damages model approved by the Ninth Circuit in *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811 (9th Cir. 2019). As this Court, *Nguyen*, and numerous other courts have recognized, the cost to

repair the defect will properly measure Plaintiffs' damages, because by repairing the defect, Plaintiffs will receive the benefit of their bargain and be restored to the position they would have occupied but for the defect. See *Nguyen*, 2019 WL 3368918 (affirming damages model "as measured by the average cost of replacing the alleged defective [component]"); *Falco v. Nissan N. Am. Inc.*, 2016 WL 1327474, at *12 (C.D. Cal. Apr. 5, 2016) ("By receiving restitution in the amount of average repairs, the class would be getting the benefit of the bargain because they would be put in the same position they would have been had the car not been sold with the defective timing chain system."); *Faltermeier v. FCA US LLC*, 2016 WL 4771100, at *8 (W.D. Mo. Sept. 13, 2016) (holding in case involving allegedly defective fuel tank that "[o]ne measure of benefit-of-the-bargain damages is the cost of repairing the vehicle."); *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *31 (S.D.N.Y. July 15, 2016) (endorsing "the quantum of repair costs as the best proxy for fulfilling the benefit of their bargain, and making up the difference between the defect-free car they thought they were purchasing and the one they actually received").

### C.    A Class Action Is the Superior Method of Adjudication.

Rule 23(b)(3)'s superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). This requirement is satisfied "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Wolin*, 617 F.3d at 1175 ("The amount of damages suffered by each class member is not large. Forcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication."). The Court previously held that class litigation is a superior method of resolving class members' claims regarding the Oil Consumption Defect. (Dkt. No. 237 at 91.)

Given that each Class Member is entitled to recover a relatively small amount of money,[3] in comparison to the costs of litigating on an individual basis, "class treatment likely represents plaintiffs' only chance for adjudication." *Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, at *25 (N.D. Cal. Dec. 21, 2010) (finding superiority satisfied where "the modest amount at stake for each purchaser render[ed]

---

[3] GM estimated that the cost of replacing the pistons and rings in the Class Vehicles is $2,700. (Ex. 14, GM000575234.)

1   individual prosecution impractical"); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339

2   (1980) (where, as here, "it is not economically feasible to obtain relief within the traditional framework

3   of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective

4   redress unless they may employ the class-action device"). Moreover, even if each Class Member were to

5   pursue his or her claim individually, the courts would be substantially burdened, which is contrary to the

6   "goals of efficiency and judicial economy" advanced by Rule 23. *See Vinole v. Countrywide Home Loans,*

7   *Inc.*, 571 F.3d 935, 946 (9th Cir. 2009). Therefore, in this case, "a class action would achieve economies

8   of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated,

9   without sacrificing procedural fairness or bringing about other undesirable results," and, thus, is the

10   superior method of adjudication. *Amchem*, 521 U.S at 615.

## CONCLUSION

12        Plaintiffs respectfully request this Court certify the proposed Classes, appoint the named Plaintiffs

13   as class representatives, and appoint their counsel as Class Counsel.

14

15   Dated: November 6, 2020                              /s/ Adam J. Levitt
                                                          Adam J. Levitt (*pro hac vice*)
16                                                        John E. Tangren (*pro hac vice*)
                                                          Daniel R. Ferri (*pro hac vice*)
17                                                        **DICELLO LEVITT GUTZLER LLC**
                                                          Ten North Dearborn Street, Sixth Floor
18                                                        Chicago, Illinois 60602
                                                          Telephone: 312-214-7900
19                                                        alevitt@dicellolevitt.com
                                                          jtangren@dicellolevitt.com
20                                                        dferri@dicellolevitt.com

21                                                        W. Daniel "Dee" Miles, III (*pro hac vice*)
                                                          H. Clay Barnett, III (*pro hac vice*)
22                                                        J. Mitch Williams (*pro hac vice*)
                                                          **BEASLEY, ALLEN, CROW,**
23                                                        **METHVIN, PORTIS & MILES, P.C.**
                                                          272 Commerce Street
24                                                        Montgomery, Alabama 36104
                                                          Telephone: 334-269-2343
25                                                        Dee.Miles@Beasleyallen.com
                                                          Clay.Barnett@BeasleyAllen.com
26                                                        Mitch.Williams@Beasleyallen.com

27                                                        Jennie Lee Anderson (SBN 203586)
                                                          Lori E. Andrus (SBN 205816)
28

1

2

3

**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

4

5

6

7

Christopher L. Coffin (*pro hac vice*)
**PENDLEY, BAUDIN & COFFIN, L.L.P.**
1515 Poydras Street, Suite 1400
New Orleans, Louisiana 70112
Telephone: 504-355-0086
nrockforte@pbclawfirm.com
ccoffin@pbclawfirm.com

8

9

10

11

Marcus Rael (*pro hac vice*)
**ROBLES, RAEL & ANAYA, P.C.**
500 Marquette NW, Suite 700
Albuquerque, New Mexico 87102
Telephone: 505-242-2228
marcus@roblesrael.com

12

13

14

Anthony J. Garcia, Esq. (*pro hac vice*)
**AG LAW**
742 South Village Circle
Tampa, Florida 33606
Telephone: 813-259-9555
anthony@aglawinc.com

15

16

17

18

Timothy J. Becker (*pro hac vice*)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
Telephone: 612-436-1800
tbecker@johnsonbecker.com

19

20

21

Ben Finley (*pro hac vice* motion to be filed)
**THE FINLEY FIRM, P.C.** 200 13th Street
Columbus, Georgia 31901
Telephone: 706-322-6226
bfinley@thefinleyfirm.com

22

23

24

Eric J. Haag (*pro hac vice*)
**ATTERBURY, KAMMER, & HAAG, S.C.**
8500 Greenway Boulevard, Suite 103
Middleton, Wisconsin 53562
Telephone: 608-821-4600
ehaag@wiscinjurylawyers.com

25

*Counsel for Plaintiffs and the Proposed Classes*

26

27

28

**ECF CERTIFICATION**

Pursuant to Civil L.R. 5-1(i)(3), the filing attorney attests that she has obtained concurrence regarding the filing of this document from the signatories above.

Date: November 6, 2020

By: _____/s/ Jennie Lee Anderson_____
Jennie Lee Anderson