KATHLEEN TAYLOR SOOY (*pro hac vice*)
ksooy@crowell.com
APRIL N. ROSS (*pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

JOSEPH J. YBARRA (SBN 218130)
Joseph.Ybarra@halpernmay.com
HALPERN MAY YBARRA GELBERG LLP
550 South Hope Street, Suite 2330
Los Angeles, California 90071
Phone: (213) 402-1900
Fax: (213) 402-1901

GREGORY R. OXFORD (SBN 62333)
goxford@icclawfirm.com
ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Phone: (310) 316-1990
Fax: (310) 316-1330

Counsel for General Motors LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| RAUL SIQUEIROS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GENERAL MOTORS LLC,<br><br>    Defendant. | Case No.: 16-cv-07244-EMC<br><br>**NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GENERAL MOTORS LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS OF PHASE II PLAINTIFFS**<br><br>Hearing Date: January 28, 2021<br>Hearing Time: 1:30 p.m.<br><br>Judge: Hon. Edward J. Chen |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

TO THIS COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 28, 2021 at 1:30 pm or as soon thereafter as counsel may be heard, in the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 5, 17th Floor, before the Honorable Edward M. Chen, General Motors LLC ("GM") will, and hereby does, move this Court for an order pursuant to Federal Rule of Civil Procedure 56 granting summary judgment for GM on the individual claims of California intervenor-plaintiff Manuel Fernandez; Pennsylvania plaintiff John Graziano; Tennessee plaintiff Joshua Byrge; Arkansas plaintiff Larry Goodwin; Idaho plaintiff Gabriel Del Valle; and Massachusetts plaintiff Scott Smith (collectively, "Phase II Plaintiffs").

### STATEMENT OF RELIEF SOUGHT

Pursuant to Federal Rule of Civil Procedure 56, GM moves this Court for summary judgment on all claims of the Phase II Plaintiffs on the following grounds.

First, the economic loss doctrine bars California plaintiff's claim for fraudulent omission, Pennsylvania plaintiff's claims for Unfair Trade Practices and fraudulent omission, and Tennessee plaintiff's claim for fraudulent omission.

Second, all of the Arkansas plaintiff's claims and certain claims of the Massachusetts and Pennsylvania plaintiffs are barred by the applicable statute of limitations.

Third, all Phase II Plaintiffs' claims for unjust enrichment are barred as a matter of law by the existence of an express warranty governing the same subject matter and because they have adequate legal remedies.

Fourth, the Idaho and Tennessee plaintiffs' claims for breach of implied warranty are barred because they cannot show privity with GM. The Pennsylvania and Idaho plaintiffs' claims for breach of implied warranty are barred because they did not provide the required notice before filing suit.[1] All Phase II plaintiffs' implied warranty claims are appropriate for summary judgment because they do not have

---

[1] The Court previously dismissed the implied warranty claim of Arkansas plaintiff Goodwin. ECF No. 99 at 48.

i                    Case No. 16-cv-07244-EMC
                     GM's Motion for Partial Summary
                     Judgment – Phase II Plaintiffs

evidence to show their vehicles were unmerchantable when they left GM's control.

Fifth, Phase II Plaintiffs' claims under the Magnuson-Moss Warranty Act cannot proceed because they do not have viable state law warranty claims.

Sixth, Phase II Plaintiffs' fraud and consumer protection claims fail because they cannot establish essential elements.

This motion is based on this Notice and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of April N. Ross and accompanying exhibits, and such argument as may be presented to the Court.

Dated: December 2, 2020

/s/ April N. Ross

Kathleen Taylor Sooy (*pro hac vice*)
April N. Ross (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone: 202-624-2500
ksooy@crowell.com
aross@crowell.com

*Counsel for General Motors LLC*

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

# **TABLE OF CONTENTS**

Table of Authorities ............................................................................................................ v

I.     BACKGROUND ........................................................................................................ 2

     A.    PROCEDURAL HISTORY .......................................................................... 2

     B.    UNDISPUTED FACTS ................................................................................ 3

           1.    GM's Gen IV Engine ....................................................................... 3

           2.    Evolution of the Gen IV Engine Design ......................................... 3

           3.    Phase II Plaintiffs .......................................................................... 6

                 a.    California ............................................................................. 6

                 b.    Arkansas .............................................................................. 8

                 c.    Idaho ................................................................................... 9

                 d.    Massachusetts ................................................................... 10

                 e.    Pennsylvania ..................................................................... 11

                 f.    Tennessee ......................................................................... 12

II.    LEGAL STANDARD ............................................................................................. 12

III.    ARGUMENT ......................................................................................................... 13

     A.    THE ECONOMIC LOSS DOCTRINE BARS CERTAIN CLAIMS ............ 13

           1.    California: Fraudulent Omission (Count 5). ................................ 13

           2.    Pennsylvania: UTPCPL and Fraudulent Omission (Counts 28 and 31). ............. 13

           3.    Tennessee: Fraudulent Omission (Count 36). ............................. 14

     B.    CERTAIN CLAIMS ARE TIME BARRED. ........................................... 14

     C.    PHASE II PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE BARRED. .......... 15

     D.    PHASE II PLAINTIFFS' IMPLIED WARRANTY CLAIMS ARE SUBJECT TO SUMMARY JUDGMENT. ............................................................... 16

           1.    There Is No Evidence that Phase II Plaintiffs' Vehicles Are Unmerchantable. .......................................................... 16

                 a.    California Plaintiff (Count 4). .......................................... 16

                 b.    Idaho Plaintiff (Count 15). .............................................. 17

                 c.    Massachusetts Plaintiff (Count 20). ................................. 18

                 d.    Pennsylvania Plaintiff (Count 30). .................................. 18

                 e.    Tennessee Plaintiff (Count 35). ....................................... 19

iii           Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

2.     Idaho and Tennessee Plaintiffs Lack Privity (Counts 15 and 35)........................19

3.     Idaho and Pennsylvania Plaintiffs Did Not Provide Pre-Suit Notice (Counts 15 and 30).........................................................................................20

E.     PHASE II PLAINTIFFS' MMWA CLAIMS FAIL BECAUSE THERE ARE NO VIABLE STATE LAW WARRANTY CLAIMS. ..........................................................21

F.     PHASE II PLAINTIFFS' FRAUD AND CONSUMER PROTECTION CLAIMS FAIL AS A MATTER OF LAW. .............................................................................21

1.     Arkansas (Counts 8 and 11)..............................................................................21

2.     Idaho (Count 13 and 16). ..................................................................................22

3.     Massachusetts (Counts 18 and 21)....................................................................23

4.     Pennsylvania (Counts 28 and 31). ....................................................................23

5.     Tennessee (Counts 33 and 36). .........................................................................24

IV.     CONCLUSION..............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of State Cnty. & Mun. Employees v. Ortho-McNeil-Janseen Pharmaceuticals, Inc.*,
No. 08-cv-5904, 2010 WL 891150 (E.D. Pa. Mar. 11, 2010) ...........................................20

*Am. Suzuki Motor Corp. v. Superior Ct.*,
44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995) .....................................................................16

*Americoach Tours, Inc. v. Detroit Diesel Corp.*,
No. 04-2016 B/V, 05-2067 B, 2005 WL 2335369 (W.D. Tenn. Sept. 23, 2005)...............19

*Anderson v. Liberty Lobby Inc.*,
477 U.S. 242 (1986)...........................................................................................................13

*Arndt v. Johnson & Johnson*,
67 F. Supp. 3d 673 (E.D. Pa. 2014) ..................................................................................15

*Avedisian v. Mercedes-Benz USA, LLC*,
43 F. Supp. 3d 1071 (C.D. Cal. 2014) ..............................................................................17

*Blissard v. FCA U.S. LLC*,
No. LA CV18-02765, 2018 WL 6177295 (C.D. Cal. Nov. 9, 2018)..................................16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).....................................................................................................12, 13

*Cesare v. Champion Petfoods USA Inc.*,
429 F. Supp. 3d 55 (W.D. Pa. 2019) .................................................................................14

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ..........................................................................................21

*Corbett v. Remington Arms Co., LLC*,
No. 15-cv-00279, 2016 WL 1755456 (D. Idaho May 2, 2016) .........................................20

*Crandall v. Seagate Tech.*,
No. 10-CV-128, 2011 WL 280990 (D. Idaho Jan. 25, 2011) ............................................17

*Day v. Tri-State Delta Chemicals, Inc.*,
165 F. Supp. 2d 830 (E.D. Ark. 2001) ..............................................................................22

*Dickerson v. Mountain View Equip. Co.*,
710 P.2d 621 (Idaho Ct. App. 1985)..................................................................................17

v                          Case No. 16-cv-07244-EMC
                           GM's Motion for Partial Summary
                           Judgment – Phase II Plaintiffs

*Bowen ex rel. Doe v. Arnold*,
502 S.W.3d 102 (Tenn. 2016)............................................................................................14

*Entrialgo v. Twin City Dodge, Inc.*,
333 N.E.2d 202 (Mass. 1975) ...........................................................................................23

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g Inc.*,
398 F. Supp. 3d 258 (M.D. Tenn. 2019).............................................................................24

*Freeman Indus., LLC v. Eastman Chem. Co.*,
172 S.W.3d 512 (Tenn. 2005)............................................................................................16

*Full Circle, Inc. v. Schelling*,
701 P.2d 254 (Idaho Ct. App. 1985)...................................................................................20

*Galloway v. Big G Express, Inc.*,
No. 05-CV-545, 2008 WL 80262 (E.D. Tenn. Jan. 7, 2008).............................................19

*Garick v. Mercedes-Benz USA, LLC*,
No. 17-cv-12042, 2019 WL 3815178 (D. Mass. Mar. 29, 2019), *aff'd*, 790 F. App'x
230 (1st Cir. 2020) .......................................................................................................18, 21

*Gerstle v. Am. Honda Motor Co., Inc.*,
No. 16-cv-04384, 2017 WL 2797810 (N.D. Cal. June 28, 2017).......................................15

*Gorman v. Gilliam*,
374 S.W.3d 117 (Ark. Ct. App. 2010) ...............................................................................22

*Ham v. Swift Transp. Co.*,
No. 09-cv-02145, 2011 WL 13350069 (W.D. Tenn. Oct. 12, 2011)..................................24

*Harry Miller Corp. v. Mancuso Chemicals Ltd.*,
469 F. Supp. 2d 303 (E.D. Pa. 2007) .................................................................................15

*Hipp v. Vernon L. Smith & Assocs., Inc.*,
386 S.W.3d 526 (Ark. Ct. App. 2011) ...............................................................................15

*Hokto Kinoko Co. v. Concord Farms Inc.*,
810 F. Supp. 2d 1013 (C.D. Cal. 2011) .............................................................................13

*Hornberger v. Gen. Motors Corp.*,
929 F. Supp. 884 (E.D. Pa. 1996) .....................................................................................18

*Hurley v. BMW of N. Am., LLC*,
No. 18-5320, 2020 WL 1624861 (E.D. Pa. Apr. 2, 2020) .................................................14

*Isip v. Mercedes-Benz USA, LLC*,
65 Cal. Rptr. 3d 695 (Cal. Ct. App. 2007) .........................................................................16

*JSB Indus., Inc. v. Nexus Payroll Servs., Inc.*,
   463 F. Supp. 2d 103 (D. Mass. 2006) ..................................................................23

*Kee v. Zimmer*,
   871 F. Supp. 2d 405 (E.D. Pa. 2012) ..................................................................20

*Keegan v. Am. Honda Motor Co., Inc.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ........................................................................16

*Kirschner v. Cable/Tel. Corp.*,
   576 F. Supp. 234 (E.D. Pa. 1983) ......................................................................14

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ................................................................16

*M. Leff Radio Parts, Inc. v. Mattel, Inc.*,
   706 F. Supp. 387 (W.D. Pa. 1988).....................................................................18

*Maneri v. Starbucks Corp. Store #1527*,
   No. 17-3881, 2019 WL 5626650 (E.D. Pa. Oct. 31, 2019) ................................18

*Mannos v. Moss*,
   155 P.3d 1166 (Idaho 2007)...............................................................................16

*In re McConnell*,
   390 B.R. 170 (W.D. Pa. 2008)............................................................................14

*Meehan v. Cheltenham Twp.*,
   189 A.2d 593 (Pa. 1963).....................................................................................16

*Melichar v. State Farm Fire & Cas. Co.*,
   152 P.3d 587 (Idaho 2007)..................................................................................19

*Miller v. Four Winds Int'l. Corp.*,
   827 F. Supp. 2d 1175 (D. Idaho 2011) ...............................................................21

*Milner v. Windward Petroleum, Inc.*,
   No. 06-2563, 2007 WL 9706514 (W.D. Tenn. May 31, 2007) ............................14

*Moore v. Mack's Sport Shop, LLP*,
   No. 16-cv-00540, 2017 WL 4350980 (E.D. Ark. Sept. 29, 2017).......................21

*Nelson v. Anderson Lumber Co.*,
   99 P.3d 1092 (Idaho Ct. App. 2004)...................................................................19

*Nguyen v. Nissan N. Am., Inc.*,
   No. 16-CV-05591, 2017 WL 1330602 (N.D. Cal. Apr. 11, 2017).......................16

*Owenga v. Volkswagen Grp. of Am., Inc.*,
   No. 16-cv-2374, 2017 WL 3671376 (W.D. Tenn. July 13, 2017)........................21

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

*Powers v. Am. Honda Motor Co.*,
    79 P.3d 154 (Idaho 2003)................................................................................................17

*Rivera v. Chrysler Corp., LLC*,
    No. HDCV200800670, 2010 WL 8490859 (Mass. Super. May 10, 2010) .........................18

*Robinson Helicopter Co., v. Dana Corp.*,
    102 P.3d 268 (Cal. 2004) ..............................................................................................13

*Sabol v. Ford Motor Co.*,
    No. 14-6654, 2015 WL 4378504 (E.D. Pa. July 16, 2015) ............................................21

*Saia v. Bay State Gas Co.*,
    No. 11-P-978, 2012 WL 1145913 (Mass. App. Ct. Apr. 6, 2012).....................................15

*Santagate v. Tower*,
    833 N.E.2d 171 (Mass. App. Ct. 2005) ..........................................................................16

*Schechner v. Whirlpool Corp.*,
    237 F. Supp. 3d 601 (E.D. Mich. 2017)..........................................................................20

*Sharp v. Idaho Inv. Corp.*,
    504 P.2d 386 (Idaho 1972)............................................................................................22

*Sipe v. Workhorse Custom Chassis, LLC*,
    572 F.3d 525 (8th Cir. 2009) ........................................................................................21

*Sloan v. Gen. Motors LLC*,
    287 F. Supp. 3d 840 (N.D. Cal. 2018) ...........................................................................21

*Smith v. Renaut*,
    564 A.2d 188 (Pa. Super. Ct. 1989) ...............................................................................23

*Taylor v. McNichols*,
    243 P.3d 642 (Idaho 2010)............................................................................................22

*Taylor v. Mid-Tenn. Ford Truck Sales, Inc.*,
    No. 01-A-01-9307-CV00310, 1994 WL 700859 (Tenn. Ct. App. Dec. 16, 1994)...............19

*Tennis v. Ford Motor Co.*,
    730 F. Supp. 2d 437 (W.D. Pa. 2010).............................................................................14

*Traba v. Ford Motor Co.*,
    No. 18-cv-00808, 2018 WL 6038302 (C.D. Cal. June 27, 2018).......................................13

*Trinity Indus., Inc. v. McKinnon Bridge Co.*,
    77 S.W.3d 159, 171 (Tenn. Ct. App. 2002) ....................................................................14

*U.S. Welding, Inc. v. Battelle Energy All., LLC*,
    728 F. Supp. 2d 1110 (D. Idaho 2010) (Idaho law)..........................................................15

*Varner v. Peterson Farms*,
    371 F.3d 1011 (8th Cir. 2004) ..............................................................................15

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*,
    249 S.W.3d 301 (Tenn. 2008) ..............................................................................24

*Wallis v. Ford Motor Co.*,
    208 S.W.3d 153 (Ark. 2005) ................................................................................21

*Werwinski v. Ford Motor Co.*,
    286 F.3d 661 (3d Cir. 2002) ................................................................................13

*White v. Volkswagen Grp. of Am., Inc.*,
    No. 11-CV-02243, 2013 WL 685298 (W.D. Ark. Feb. 25, 2013) ........................22

*Whitehaven Cmty. Baptist Church v. Holloway*,
    973 S.W.2d 592 (Tenn. 1998) ..............................................................................16

*Williams v. Yamaha Motor Corp., U.S.A.*,
    CV 13-05066, 2015 WL 13626022 (C.D. Cal. Jan 7, 2015) ...............................20

*Wilson Area Sch. Dist. v. Skepton*,
    895 A.2d 1250 (Pa. 2006) ....................................................................................16

*Wilson v. Donegal Mut. Ins. Co.*,
    598 A.2d 1310 (Pa. Super. Ct. 1991) ...................................................................24

*Zwiercan v. Gen. Motors Corp.*,
    No. 3235, 2003 WL 1848571 (Pa. Ct. Com. Pl. Mar. 18, 2003) .........................24

**Statutes**

13 Pa. Cons. Stat. 2725 ................................................................................................15

13 Pa. Cons. Stat. § 2607 (c)(1) ..................................................................................20

Idaho Code § 28-2-607 ................................................................................................20

Mass. Gen. Laws ch. 106, § 2-318 ..............................................................................15

Mass. Gen. Laws ch. 260, § 2A ...................................................................................15

Mass. Gen. Laws ch. 260, § 5A ...................................................................................15

Regulation of Business Practices for Consumer Protection Act, Mass. Gen. Laws chapter
    93A...........................................................................................................................23

Tenn. Code Ann. § 47-18-102(2) .................................................................................24

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................................................................12

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

Phase II Plaintiffs[1] are owners of model year 2011-2013 GM trucks and SUVs with the Generation

3 IV 5.3-liter V8 Vortec engine. After driving many years and many miles without incident, they filed this

4 putative class action alleging that their vehicles consume an excessive amount of oil. They allege

5 consumer protection, fraud, implied warranty, and unjust enrichment claims under the laws of their home

6 states and a federal claim under the Magnuson-Moss Warranty Act.

7 Discovery is complete and the record shows that Phase II Plaintiffs cannot establish essential

8 elements of their claims, and therefore summary judgment is warranted for GM on the following grounds.

9 First, the economic loss doctrine bars the California plaintiff's fraudulent omission claim, the

10 Pennsylvania plaintiff's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and

11 fraudulent omission claims, and the Tennessee plaintiff's fraudulent omission claim.

12 Second, the Arkansas plaintiff's claims and certain of the Massachusetts and Pennsylvania

13 plaintiffs' claims are time-barred.

14 Third, all Phase II Plaintiffs' claims for unjust enrichment are barred as a matter of law by the

15 existence of an express contract and because they have adequate legal remedies.

16 Fourth, the Idaho and Tennessee plaintiffs' implied warranty claims are barred because there is no

17 privity of contract. The Idaho and Pennsylvania plaintiffs' implied warranty claims are also barred because

18 they did not provide the required pre-suit notice. All Phase II Plaintiffs' implied warranty claims are

19 appropriate for summary judgment because they cannot establish that their vehicles are unmerchantable.[2]

20 Fifth, Phase II Plaintiffs' claims under the Magnuson-Moss Warranty Act fail because they do not

21 have viable state law warranty claims.

22 Sixth, Phase II Plaintiffs' fraud and consumer protection claims fail as a matter of law because

23 they cannot establish essential elements of those claims.

24

25

---

26 [1] The Phase II Plaintiffs are California intervenor-plaintiff Manuel Fernandez, Arkansas plaintiff Larry

27 Goodwin, Idaho plaintiff Gabriel Del Valle, Massachusetts plaintiff Scott Smith, Pennsylvania plaintiff John Graziano, and Tennessee plaintiff Joshua Byrge.

28 [2] The Court previously dismissed the Arkansas plaintiff's implied warranty claim. ECF No. 99 at 48.

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

# I. BACKGROUND

## A. PROCEDURAL HISTORY

Sixteen plaintiffs filed this putative class action on December 19, 2016, seeking to represent a nationwide class of purchasers and lessees of model year 2010 through 2014 GM vehicles with the Gen IV engine, and 13 statewide sub-classes.[3] Plaintiffs amended several times[4] and the operative Seventh Amended Complaint includes claims by 11 named plaintiffs on behalf of 7 putative statewide subclasses.[5] GM moved to dismiss the first, second, and fifth amended complaints.[6] For Phase II Plaintiffs, the Court dismissed all of their express warranty claims and the implied warranty claim of the Arkansas plaintiff.[7] To address manageability concerns raised by the Court, the parties agreed to an initial phase on five states: California, New Jersey, North Carolina, Ohio, and Texas (the "Accelerated Plaintiffs").[8] The Court later dismissed the Ohio plaintiff for lack of jurisdiction. The remaining Accelerated Plaintiffs moved for class certification and GM moved for partial summary judgment on their individual claims.

On April 23, 2020, the Court granted summary judgment for GM on the California and New Jersey fraud claims because they are barred by the economic loss doctrine, and on all plaintiffs' unjust enrichment claims because they are barred by the existence of a contract that defines the parties' rights (the GM New Vehicle Limited Warranty).[9] The Court also granted summary judgment for GM on the New Jersey plaintiff's implied warranty and MMWA claims because he drove his vehicle for years and thousands of miles without problems and continues to drive the vehicle.[10] Finally, the Court granted summary judgment for GM on the New Jersey consumer protection and fraudulent omission claims and the Texas fraudulent omission claim because plaintiffs could not establish a duty to disclose under state law.[11]

---

[3] ECF No. 2.

[4] ECF Nos. 29, 67, 107, 123, 157, 250.

[5] Seventh Am. Compl., ECF No. 286.

[6] ECF Nos. 47, 70, 158.

[7] ECF Nos. 62, 99.

[8] ECF No. 113; modified at ECF Nos. 117 and 128.

[9] ECF No. 237 at 42-44, 49.

[10] *Id.* at 53.

[11] *Id.* at 62, 63-64

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

On August 26, 2020, plaintiffs for Alabama, Delaware, Florida, Georgia, Idaho, Illinois, Kansas, Kentucky, Louisiana, Minnesota, Missouri, New Mexico, Oklahoma, and South Carolina voluntarily dismissed their claims.[12] On October 6, 2020, plaintiffs for Virginia, Wisconsin, and West Virginia voluntarily dismissed their claims.[13] On September 14, 2020 the Court allowed Manuel Fernandez to intervene as putative class representative for the California Song-Berverly Act implied warranty claim, subject to satisfying Rule 23's requirements.[14]

## B.   UNDISPUTED FACTS

### 1.   GM's Gen IV Engine

The small block V8 Gen IV engine was introduced for the 2007 model year.[15] The Gen IV engine added an active fuel management ("AFM") system that improves fuel economy by deactivating four of the eight pistons when full power is not needed.[16] The Gen IV engine family includes four models with materially different designs: (i) the "LC9" aluminum block engine with AFM for model year 2007-2014; (ii) the "LMG" iron block engine with AFM for model year 2007-2014; (iii) the "LH9" engine without AFM for model year 2007-2010; and (iv) the "LMF" engine without AFM for model year 2007-2010. This case involves only 2010 through 2014 model year trucks and SUVs with these Gen IV engines.

### 2.   Evolution of the Gen IV Engine Design

There is no evidence that pre-market validation testing of the Gen IV engine showed any oil consumption issues. After the Gen IV engine's release, the Current Product Improvement Team ("CPIT") closely monitored field performance through warranty data and other measures to address any performance issues.[17] In 2009, the CPIT team began to see warranty claims for 2007 model year vehicles with LC9 aluminum block Gen IV engines involving oil consumption.[18] GM asked dealerships to return

---

[12] ECF No. 271.

[13] ECF No. 283.

[14] ECF No. 278.

[15] *See* Ex. 1, Dep. Of Grant Tappen ("Tappen Dep.") at 20:6-10. Unless otherwise noted, all references to Exhibits refer to exhibits attached to the contemporaneously filed declaration of April N. Ross.

[16] *Id.* at 17:18-18:1, 19:18-20:5.

[17] *See* Ex. 2, Dep. of Lisa Toth ("Toth Dep.") at 31:3-33:14, 171:9-172:21.

[18] *See* Ex. 3, Rule 30(b)(6) Dep. of Steven Pfromm ("Pfromm Dep.") at 12:1-13:15.

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

certain 2007 LC9 engines to GM for "teardown" review and asked engineers (the "Red-X" team) to assess the root cause of oil consumption.[19] The Red-X team compared 2007 model year LC9 engines returned to GM by dealerships with complaints of excess oil consumption with 2007 model year LC9 engines that did not exhibit excess oil consumption.[20] None of the engines examined during the course of the Red-X study had suffered a seizure event or a fire, or otherwise posed a potential safety risk.[21] The Red-X team also looked at warranty data for model year 2005-2009 GM vehicles with small block V8 engines and found (1) that the 2007 model year had a higher rate of oil consumption than all other model years combined[22] and (2) most oil consumption complaints were associated with vehicles manufactured during a three-month period at the start of production for the 2007 model year, when a higher tension oil pump spring was used in the engine.[23]

After an extensive engineering analysis, the Red-X team concluded that the primary root cause of oil consumption in the 2007 LC9 engine was the location of an AFM oil pressure relief valve in the crankcase, and the secondary cause was the higher tension oil pump spring used only in the first three months of production for the 2007 model year.[24] After the Red-X team's investigation, GM made the following design changes for the Gen IV engines in succeeding model years.

First, at the start of production of the 2010 model year, GM changed from '251 piston ring material to more durable '278 piston ring material.[25] This change was made to accommodate E85 fuel standards[26], but it also resulted in a significant reduction in oil consumption complaints from model year 2010 forward.[27]

---

[19] Id. at 13:12-19. Red-X is a problem-solving approach used by GM to identify root cause in complex systems. See Ex. 4, Dep. of Gary Cygan Jr. ("Cygan Dep.") at 19:9-20:25.

[20] See Ex. 5, GM Powertrain Technical Problem Solving Executive Report: 5.3 LC9 – Oil Consumption ("RedX Report"), at GM-000208712-715.

[21] See Ex. 1, Tappen Dep. at 75:1-76:7.

[22] See Ex. 5, RedX Report at GM-000208708.

[23] Id. at GM-000208716.

[24] Id. at GM-000208705.

[25] See Ex. 6, Dep. of Richard Ricchi ("Ricchi Dep.") at 24:12-19, 76:13-78:13.

[26] See Ex. 7, GM Engineering Work Order #784742 dated Mar. 28, 2007.

[27] See Ex. 3, Pfromm Dep. at 49:4-50:12; Ex. 8, Gen. 4 Oil Consumption at GM-000569375.

Second, on October 21, 2010, GM added a metal "umbrella shield" to the AFM oil pressure relief valve in the crankcase.[28] This shield directed oil away from the pistons and into the oil pan, eliminating oil spray onto the pistons and cylinder walls where it could be pulled up into the combustion chamber and consumed.[29] GM engineers testified that this design change sufficiently addressed the root cause of oil consumption in pre-2010 Gen IV engines.[30] In August 2010, GM issued Technical Service Bulletin No. 10-06-01-008, instructing dealership technicians to install the AFM shield on 2007 and 2008 model year engines observed to consume excess oil after an oil consumption test.[31] The TSB confirms GM's conclusion that the cause of oil consumption in these pre-2010 vehicles was "an uncovered AFM valve that sprays oil on the bottom of the cylinders when the vehicle is in four cylinder mode."[32]

GM installed the AFM valve shield in all Gen IV engines manufactured after October 21, 2010 and released it the same day as a service part for earlier-manufactured Gen IV engines. GM directed dealerships through updates to Technical Service Bulletin 10-06-01-008 to install the AFM shield free of charge any time a customer reported excess oil consumption or any time a Gen IV engine's oil pan was removed for any reason during the 5-year/100,000 mile powertrain warranty period.[33] With the umbrella shield and '278 material piston rings, GM saw a 75% drop in warranty claims for oil consumption in the 2010 model year Gen IV engine compared to earlier years.[34]

Third, on February 10, 2011, GM added a redesigned rocker cover, which relocated certain inlets and drains to more effectively separate oil particles from gases pulled from the crankcase through the engine's positive crankcase ventilation (PCV) system. The improved design of the rocker cover more effectively separated oil from gas and redirected the oil back to the oil pan, reducing the likelihood that

---

[28] See Ex. 3, Pfromm Dep. at 27:9-29:1.

[29] Id. at 32:13-24.

[30] See Ex. 1, Tappen Dep. at 72:15-73:6 (The AFM shield "fixed the problem that it was intended to fix, which was excess oil in the crankcase").

[31] Ex. 10, GM Technical Service Bulletin #10-06-01-08, dated Aug. 2010.

[32] Id.

[33] See id; Ex. 11, GM Technical Services Bulletin #10-06-01-008I, dated Feb. 19, 2013; Ex. 12, Gen IV Small Block: Oil Consumption.

[34] See Ex. 3, Pfromm Dep. at 46:4-13.

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

oil could be vacuumed into the combustion chamber and consumed.[35] GM installed the new rocker cover on all vehicles manufactured after February 10, 2011, and made it available as a service part for earlier-manufactured Gen IV engines at no charge under warranty if any customer reported excess oil consumption in an earlier-manufactured Gen IV engine.[36]

The CPIT team continued to monitor warranty data on these design changes, and the data validated that these changes effectively addressed the root cause of oil consumption. The warranty claim rate for oil consumption in the Gen IV aluminum block engines fell from 5.2% in the 2007 model year to 0.4% in the 2010 model year, and in the Gen IV iron block engines fell from 0.6% in the 2007 model year to 0.0% in the 2010 model year.[37]

### 3.   Phase II Plaintiffs

#### a.   California

California plaintiff Manuel Fernandez purchased a new 2013 GMC Sierra on April 13, 2013 from Sturgeon and Beck, Inc. in Tulare, California.[38] Before purchase, Fernandez reviewed the GMC website, consumer reviews on third party websites, a window sticker, and unspecified brochures and advertisements.[39] His research focused on the 2013 Sierra's heated leather seats, automatic four-wheel drive, and the terms of the powertrain warranty.[40] Fernandez did not ask any questions about oil

---

[35] *See* Ex. 9, Dep. of Yoon Lee ("Lee Dep.") at 31:23-33:4; *see also* Ex. 13, GM Engineering Work Order #1286837 dated May 5, 2010.

[36] *Id.* In 2013, GM observed a small (less than 1%) increase in oil consumption warranty claims for 2012 and 2013 model year vehicles. *See* Ex. 8, Gen 4 Oil Consumption at GM-000569378. GM traced these claims to engines produced at its manufacturing facility in Silao, Guanajuato, Mexico. GM discovered that there had been a short-term quality spill by the supplier of rocker covers used at that manufacturing plant. The supplier, Auma, had failed to use enough RTV sealant on the rocker cover, which could allow the oil to leak out of the baffle. *See* Ex. 3, Pfromm Dep. at 32:13-33:22. In November 2014, GM issued an updated technical service bulletin, No. 10-06-01-008M, providing instructions to dealerships to test and, if necessary, replace the rocker cover for 2012 and 2013 model year vehicles with Gen IV engines with oil consumption concerns. *See* Ex. 14, Technical Service Bulletin #10-06-01-008M, dated Nov. 26, 2016. No plaintiff in this case contends that his or her vehicle was among the small number of vehicles affected by this supplier quality issue.

[37] *See* Ex. 15 Sept. 18, 2012 e-mail with subject line "07-11MY GenIV Oil Consumption Claims and Cost" ("Sept. 2012 e-mail").

[38] Seventh Am. Compl. ¶ 33; Ex. 16, Deposition of Manuel Fernandez ("Fernandez Dep.") at 26:14-27:16.

[39] Ex. 16, Fernandez Dep. at 35:14-37:4.

[40] *Id.* at 36:1-11.

consumption and the dealership's personnel made no representations about oil consumption.[41] Fernandez changes the oil in his 2013 Sierra every 3,000 to 4,000 miles and ensures that the oil life monitoring system is reset each time.[42] He checks oil levels between oil changes two to three times a year.[43] Other than one instance in 2020, he has never added more than a half-quart of oil between oil changes.[44]

In January 2018, after almost five years and over 70,000 miles, Fernandez alleges experiencing a rough engine idle and valvetrain noise. He waited until February 19, 2018 to take his vehicle to Rydell Chevrolet, where he was told that both conditions were normal, and the dealership decarbonized the engine with an engine solvent. On November 30, 2018 with over 91,000 miles on the odometer, Fernandez again took his 2013 Sierra to Rydell Chevrolet for an engine solvent treatment.[45] On July 5, 2019, after Fernandez drove over 103,000 miles, Rydell Chevrolet changed his vehicle's spark plugs, decarbonized the throttle body, and cleaned the combustion chamber to address his complaint that the vehicle's "idle seem[ed] a little off."[46] In late-March 2020, after almost seven years of ownership, with 116,000 miles on the odometer, and having driven 3,500 miles since his last oil change, Fernandez experienced a low oil pressure warning while stopped.[47] He drove his vehicle home and found it to be 3 quarts low on oil.[48] Rydell Chevrolet performed an oil change and informed him that the oil consumption rate was normal for the vehicle's mileage.[49] A few months later, in August or September 2020, the vehicle's oil pressure sensor was replaced due to normal wear.[50] Fernandez's vehicle has never stalled while driving.[51] He continues to

---

[41] *Id.* at 41:25-42:16, 43:15-44:3.

[42] *Id.* at 45:8-10; 52:19-53:6, 54:16-20.

[43] *Id.* at 54:21-56:1.

[44] *Id.* at 55:22-56:1.

[45] Ex. 17 at 22; Ex. 18, Fernandez Resp. to GM Second Set of Interrog. at 2.

[46] Ex. 16, Fernandez Dep. at 56:23-57:7.

[47] Ex. 18, at 5; Ex. 16, Fernandez Dep. At 48:8-49:1, 61:24-66:13, 67:2-5.

[48] Ex. 16, Fernandez Dep. at 48:8-49:1, 61:24-66:13.

[49] *Id.* at 65:10-20.

[50] *Id.* at 66:14-21, 69:20-69:24.

[51] *Id.* at 69:13-16.

drive the vehicle, and it has over 120,000 miles.[52] He has never sought to sell his vehicle.[53] Through this lawsuit, he seeks an extended warranty, and to recover for out-of-pocket expenses and alleged diminution in value.[54]

### b.   Arkansas

Arkansas plaintiff Larry Goodwin purchased a new 2011 Chevrolet Silverado in 2010 from Landers Chevrolet in Benton, Arkansas.[55] Before purchase, Goodwin reviewed vehicle pamphlets, visited dealerships, and conducted online research on various websites, including Chevrolet websites.[56] He does not remember specific statements, but was generally focused on gas mileage, comfort, and towing capabilities.[57] Goodwin agrees that no statements or representations he saw or heard were false.[58]

Goodwin takes his truck to Precision Tune, a non-GM service provider, and to Landers Chevrolet, an independent GM-authorized dealership, for oil changes.[59] He has taken his vehicle for regular oil changes approximately 15 times between 2014 and September 2020.[60] Since 2014, he has also added oil to his vehicle between oil changes.[61] In Summer 2014, he was informed during regular maintenance that his vehicle was two quarts low on oil.[62] He then began checking his oil every three to four weeks, and found it on unspecified occasions to be between a quarter of a quart to a quart and a half low on oil.[63] He has not taken his vehicle in for any other mechanical issue or service.[64] Goodwin has driven his 2011 Chevrolet Silverado for approximately nine years and his vehicle has never shut down, caught fire, or

---

[52] *Id.* at 27:25-28:6, 74:7-16.

[53] *Id.* at 31:12-13.

[54] *Id.* at 72:16-73:6.

[55] Seventh Am. Compl. ¶ 50.

[56] Ex. 19, Deposition of Larry Goodwin ("Goodwin Dep.") at 26:1-14, 27:12-24, 28:7-24.

[57] *Id.* at 27:12-24.

[58] *Id.* at 32:12-33:2.

[59] *Id.* at 39:9-18.

[60] *See id.* at 73:19-74:3.

[61] *Id.* at 62:11-19.

[62] *Id.* at 45:2-10.

[63] *Id.* at 45:13-46:3.

[64] *Id.* at 50:10-19.

caused him injury.[65] The excess oil consumption he alleges has never prevented him from driving his 2013 Sierra.[66] He continues to drive the vehicle daily and it has over 133,000 miles.[67] He has never sought to sell his vehicle.[68] Through this lawsuit, he seeks an extended warranty, and to recover for alleged diminution in value.[69]

### c.      Idaho

Idaho plaintiff Gabriel Del Valle purchased a used 2013 Chevrolet Avalanche with 40,000 miles in February 2016 from Peterson Chevrolet Buick Cadillac in Boise, Idaho.[70] Del Valle previously owned a 2010 Chevrolet Avalanche that was totaled in a collision and had his "heart set" on purchasing another Avalanche.[71] The only research he conducted before purchase was on a third-party online forum.[72]

Del Valle changes the oil himself every 3,000-3,500 miles and adds oil to the engine once in between each oil change.[73] He has also replaced the spark plugs in his vehicle.[74] In 2016, Del Valle discovered that his vehicle was a half quart low on oil after driving 1,000 miles from Idaho to California.[75] He took his vehicle to Sullivan Chevrolet, where he was told the oil filter was loose or leaky.[76] He also added a half quart of oil following an 1,100-mile drive from California to Oregon.[77] Del Valle checks his oil level once a month.[78] He estimates that he added a half quart of oil every two months during the time

---

[65] *Id.* at 17:5-8, 54:15-16.

[66] *Id.* at 50:25-51:2.

[67] *Id.* at 37:4-7, 47:14-18

[68] *Id.* at 24:14-15.

[69] *Id.* at 56:14-57:12.

[70] Seventh Am. Compl. ¶ 56.

[71] Ex. 20, Deposition of Gabriel Del Valle ("Del Valle Dep.") at 20:25-21:4, 21:14-21, 24:21-23.

[72] *Id.* at 26:8-25.

[73] *Id.* at 47:7-12, 49:6-11.

[74] *See id.* at 53:16-23. He also replaced the oil pressure sending unit in his vehicle, but does not contend this was directly related to any alleged oil consumption. *Id.* at 57:22-58:22.

[75] *Id.* at 55:1-6.

[76] *Id.* at 42:20-43:18.

[77] *See id.* at 47:22-49:5.

[78] *Id.* at 47:22-25.

he was driving his vehicle 10,000-12,000 miles per year.[79]

Del Valle has driven his 2013 Chevrolet Avalanche for over four years and the vehicle has never shut down, caught fire, or caused injury.[80] He has never experienced any safety issue while driving his vehicle.[81] He continues to drive the vehicle regularly and it has over 108,000 miles.[82] He has never sought to sell his vehicle.[83] Through this lawsuit, he seeks a GM inspection of his vehicle, an engine rebate, an extended warranty, out-of-pocket expenses, and alleged diminution in value.[84]

### d.   Massachusetts

Massachusetts plaintiff Scott Smith purchased a used 2011 GMC Yukon with 26,000 miles from Colonial GMC in Watertown, Massachusetts in 2012.[85] Before purchase, Smith reviewed vehicle brochures at the dealership and looked at the window sticker on the vehicle.[86] Smith had the oil changed approximately every 3,000 miles by Valvoline, a non-GM service provider.[87] Smith would add oil to the engine once in between oil changes.[88] In Fall 2015, after driving the vehicle for three years and with 85,000 miles, Smith noticed that the oil level was two quarts low.[89] He continued to drive the vehicle and did not bring it to a dealership for diagnosis or repair.[90] In January 2017, with over 110,000 miles on the odometer, his vehicle began shaking and making a loud noise.[91] After briefly pulling over to a safe location to turn his vehicle off and back on, he continued driving to work, and following his shift, drove the vehicle

---

[79] *Id.* at 49:6-18.

[80] *See id.* at 68:19-21.

[81] *Id.*

[82] *Id.* at 18:9-11, 38:24-39:3.

[83] *Id.* at 20:18-20.

[84] *Id.* at 72:21-75:7.

[85] Seventh Am. Compl. ¶ 60.

[86] Ex. 21, Deposition of Scott Smith ("Smith Dep.") at 32:13-24.

[87] *Id.* at 41:3-9. He did the oil changed at a GM dealership on one occasion. *Id.* at 42:7-15.

[88] *Id.* at 45:19-46:7.

[89] *Id.* at 44:3-45:2.

[90] *Id.* at 47:22-48:7.

[91] *Id.* at 49:20-50:14, 52:2-6.

20 minutes to Marty's GMC in Kingston, Massachusetts.[92] The dealership found a damaged camshaft and lifters, and recommended replacing the engine.[93] Smith elected to trade in the vehicle for $8,000.[94] He does not claim an engine failure or stall, and other than the single instance in 2017, did not experience abnormal engine noise, vibration, or other disruption in vehicle operation.[95] Through this lawsuit, he seeks to recover out-of-pocket expenses.[96]

### e. Pennsylvania

Pennsylvania plaintiff John Graziano purchased a new 2012 Chevrolet Silverado in December 2011 from Reedman Toll Chevrolet in Philadelphia, Pennsylvania.[97] Before purchase, Graziano reviewed the vehicle brochure and the Chevrolet website; he does not recall the specifics of what he saw or read, and does not contend anything he reviewed was false.[98] A non-GM service technician inspects Graziano's vehicle annually.[99] Graziano changes the oil every 3,000 miles and adds roughly a quart of oil to the vehicle approximately every 1,000 miles.[100] He claims he discovered that the oil was two quarts low in 2014 after two years and 6,000 miles.[101] He brought his vehicle to Tom Hesser Chevrolet in Scranton, Pennsylvania, and the dealership's technician told him the oil consumption was normal.[102] Graziano has driven his 2012 Chevrolet Silverado for approximately nine years and his vehicle has never shut down, caught fire, or caused him injury.[103] He has never sought to sell the vehicle.[104] Through this lawsuit he

---

[92] *Id.* at 50:4-51:22; Ex. 22 at 2.

[93] Ex. 21, Smith Dep. at 52:20-53:1.

[94] *Id.* at 19:2-20:4.

[95] *Id.* at 56:7-11.

[96] *Id.* at 64:16-66:6.

[97] Seventh Am. Compl. ¶ 70.

[98] *See* Ex. 23, Deposition of John Graziano ("Graziano Dep.") at 21:15-22:3, 22:12-24:10

[99] *Id.* at 47:5-15.

[100] *Id.* at 48:1-6, 59:4-7.

[101] *Id.* at 55:3-56:3.

[102] *Id.*; Ex. 24, at 1.

[103] Ex. 23, Graziano Dep. at 15:13-15, 39:12-14.

[104] *Id.* at 18:21-22.

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

seeks to recover for out-of-pocket expenses and alleged diminution in value.[105]

### f.      Tennessee

Tennessee plaintiff Joshua Byrge purchased a used 2012 Chevrolet Silverado in 2016 with 44,160 miles from a Honda dealership in Knoxville, Tennessee.[106] Byrge relied on information gathered online by looking at dealership websites, but could not recall specific statements in those materials, and does not contend any statements he read were false.[107] Byrge has his Silverado's oil changed at Castor Oil, a non-GM service provider, approximately every 3,000 miles.[108] He adds about a quart of oil to the engine approximately every 2,000 miles.[109] Byrge was first informed that the oil in his 2012 Silverado was half a quart low after his first oil change in early-2017.[110] He also claims to have experienced a rough idle at an unspecified time.[111] Byrge has driven his 2012 Chevrolet Silverado for approximately four years and his vehicle has never shut down, caught fire, or caused injury.[112] He never sought diagnosis for the alleged oil consumption defect, and his vehicle has not needed any repairs.[113] He continues to drive the vehicle daily and it now has over 96,000 miles.[114] Byrge has never sought to sell his vehicle.[115] Through this lawsuit, he seeks out-of-pocket expenses and alleged diminution in value.[116]

## II.     LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Once the party moving for summary judgment establishes "the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*,

---

[105] *Id.* at 73:6-11.
[106] Ex. 25, Deposition of Joshua Byrge ("Byrge Dep.") at 14:24-15:11.
[107] *See id.* at 18:16-20:3.
[108] *Id.* at 22:21-23:9.
[109] *Id.* at 26:6-8.
[110] *Id.* at 24:11-25:2.
[111] *Id.* at 24:7-10.
[112] *See id.* at 13:2-7, 24:7-10, 29:15-16.
[113] *Id.* at 23:10-15, 25:11-16.
[114] *Id.* at 14:5-8, 15:12-14.
[115] *Id.* at 16:10-11.
[116] *Id.* at 30:6-21.

1   477 U.S. 317, 323 (1986), the burden then shifts to the adverse party, who must "go beyond the pleadings

2   and by [the movant's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions

3   on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. Evidence that

4   "is merely colorable . . . or is not significantly probative" does not defeat summary judgment. *Anderson*

5   *v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). To the contrary, "[a] non-moving

6   party who has the burden of proof at trial must present enough evidence that a 'fair-minded jury could

7   return a verdict for the [opposing party] on the evidence presented.'" *Hokto Kinoko Co. v. Concord Farms*

8   *Inc.*, 810 F. Supp. 2d 1013, 1021 (C.D. Cal. 2011) (quoting *Anderson*, 477 U.S. at 255).

9   **III.   ARGUMENT**

10          **A.   THE ECONOMIC LOSS DOCTRINE BARS CERTAIN CLAIMS.**

11                **1.   California: Fraudulent Omission (Count 5).**

12          Under California law, when a product is not working properly, a purchaser's remedy is in contract

13   alone because he has only "economic loss." *Robinson Helicopter Co., v. Dana Corp.*, 102 P.3d 268, 272

14   (Cal. 2004). "Economic loss" includes damages for inadequate value, costs of repair, and replacement of

15   the defective product when there is no accompanying claim of personal injury or damage to other property.

16   *See Traba v. Ford Motor Co.*, No. 18-cv-00808, 2018 WL 6038302, at *4 (C.D. Cal. June 27, 2018). On

17   April 23, 2020, the Court granted summary judgment for GM on the fraudulent omission claims of

18   California plaintiffs Siqueiros and Cralley under the economic loss doctrine. ECF No. 237 at 41-43.

19   Fernandez likewise does not allege personal injury or property damage,[117] and therefore his fraudulent

20   omission claim is barred by the economic loss doctrine and the law of the case. ECF No. 237 at 43 ("the

21   economic loss doctrine applies to the fraudulent omission claims of the California Plaintiffs").

22                **2.   Pennsylvania: UTPCPL and Fraudulent Omission (Counts 28 and 31).**

23          The economic loss doctrine precludes Pennsylvania Unfair Trade Practices and Consumer

24   Protection Law ("UTPCPL") and fraudulent omission claims "when the only injury is to the product itself

25   and the product has not met the customer's expectations, or, in other words, that the customer has received

26   insufficient product value." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *East*

27

28   ---
     [117] Ex. 16, Fernandez Dep. at 72:16-73:6; Seventh Am. Compl. ¶¶ 32-38.

*River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 871 (1986) (internal quotations omitted)). Pennsylvania plaintiff's claims allege misrepresentations regarding the quality of the engine; he does not claim personal injury or property damage.[118] Such claims are "plain and obvious restatements of contract-theories" and are barred by the economic loss doctrine. *See Cesare v. Champion Petfoods USA Inc*., 429 F. Supp. 3d 55, 61 (W.D. Pa. 2019) (holding UTPCPL and fraudulent omission claims barred by economic loss doctrine); *Hurley v. BMW of N. Am., LLC*, No. 18-5320, 2020 WL 1624861, at *5 (E.D. Pa. Apr. 2, 2020) (dismissing UTPCPL claim for alleged failure to disclose engine oil consumption defect); *see also Tennis v. Ford Motor Co*., 730 F. Supp. 2d 437, 448 (W.D. Pa. 2010) (dismissing fraud claims that "essentially duplicate the breach of contract claims" under gist of the action doctrine).

### 3. Tennessee: Fraudulent Omission (Count 36).

Under Tennessee law, the economic loss doctrine applies to fraud claims. *Milner v. Windward Petroleum, Inc*., No. 06-2563, 2007 WL 9706514, at *6 (W.D. Tenn. May 31, 2007); *Trinity Indus., Inc. v. McKinnon Bridge Co.,* 77 S.W.3d 159, 171 (Tenn. Ct. App. 2002) (where only damages alleged are economic losses, rights are governed by contract, and the tort claims should be dismissed) (abrogated on other grounds by *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102 (Tenn. 2016)). Tennessee plaintiff seeks to recover only for economic loss,[119] and therefore his fraudulent omission claim is barred.

## B.   CERTAIN CLAIMS ARE TIME BARRED.

The statute of limitations on common law fraud in Pennsylvania is two years. *See In re McConnell*, 390 B.R. 170, 179 (W.D. Pa. 2008) (citing 42 Pa. Cons. Stat. §5524 (7)). It begins to accrue when the plaintiff knows or has reason to know or to investigate the fraud. *See Kirschner v. Cable/Tel. Corp*., 576 F. Supp. 234, 238 (E.D. Pa. 1983). Pennsylvania plaintiff admits that he was aware of the alleged defect by at least 2014, more than two years before he brought his fraudulent omission claim, making that claim untimely.[120]

The statute of limitations on unjust enrichment claims in Pennsylvania is four years, and accrues

---

[118] Seventh Am. Compl. ¶¶ 484, 488, 518, 521.

[119] Seventh Am. Compl. ¶ 572.

[120] Ex. 23, Graziano Dep. at 55:23-56:3

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

when the defendant "'receives and retains benefits.'" *Harry Miller Corp. v. Mancuso Chemicals Ltd.*, 469 F. Supp. 2d 303, 319 (E.D. Pa. 2007). Pennsylvania plaintiff's unjust enrichment claim began to run from the date of sale in 2011, and is untimely.

A Pennsylvania breach of implied warranty claim has a four-year statute of limitations, which runs from the date of sale. *See* 13 Pa. Cons. Stat. 2725. To toll the statute of limitations, a plaintiff must show his individual reliance on an independent affirmative act of concealment, which causes the plaintiff to relax his vigilance or deviate from his right of inquiry through fraud or concealment. *See Arndt v. Johnson & Johnson*, 67 F. Supp. 3d 673, 678 (E.D. Pa. 2014). Pennsylvania plaintiff alleges a defect existed at the time of sale on December 31, 2011.[121] He brought his claims on December 19, 2016, although he claims he first noticed that his Silverado was consuming oil in 2012.[122] Pennsylvania plaintiff has not alleged any reliance on an independent affirmative act by GM,[123] and thus his claim for implied warranty is untimely.[124]

## C.    PHASE II PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE BARRED.

The Court previously held that the Accelerated Plaintiffs' unjust enrichment claims are barred as a matter of law by the existence of an express contract that defines the parties' rights—GM's express new vehicle limited warranty. ECF No. 237 at 48-49. Phase II Plaintiffs' unjust enrichment claims are likewise barred as a matter of law. *Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384, 2017 WL 2797810, at *14 (N.D. Cal. June 28, 2017) (California law); *Varner v. Peterson Farms*, 371 F.3d 1011, 1018 (8th Cir. 2004) (Arkansas law); *U.S. Welding, Inc. v. Battelle Energy All., LLC*, 728 F. Supp. 2d 1110, 1116–17 (D. Idaho 2010) (Idaho law); *Saia v. Bay State Gas Co.*, No. 11-P-978, 2012 WL 1145913, at *4 (Mass.

---

[121] *See* Seventh Am. Compl. ¶¶ 73; Graziano Rsp to Rog. No. 1.

[122] *See* Seventh Am. Compl. ¶¶71.

[123] *See* Seventh Am. Compl. ¶¶72, 73.

[124] GM preserves its arguments that the Massachusetts consumer protection, implied warranty, and fraudulent omission claims; and all claims of the Arkansas plaintiff are also barred by the applicable statutes of limitation. *See Hipp v. Vernon L. Smith & Assocs., Inc.*, 386 S.W.3d 526, 530 (Ark. Ct. App. 2011) (citing Ark. Code Ann. §§ 4-88-11, 16-56-105); Mass. Gen. Laws ch. 260, § 5A; Mass. Gen. Laws ch. 106, § 2-318; Mass. Gen. Laws ch. 260, § 2A. GM recognizes that the Court previously declined summary judgment on time-barred claims that could be subject to tolling (but which are not subject to the individual reliance requirement of Pennsylvania law), ruling that certain tolling issues could not be decided as a matter of law because of disputed issues of fact. *See* ECF 237 at 32-40.  GM therefore does not seek to relitigate that issue in this motion.

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

App. Ct. Apr. 6, 2012) (Massachusetts law); *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (Pennsylvania law); *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) (Tennessee law). There is no dispute that GM's express limited warranty covers Phase II Plaintiffs' vehicles. Their unjust enrichment claims therefore fail as a matter of law.

Because Phase II plaintiffs also have an adequate legal remedy in their consumer protection, fraudulent omission and warranty claims, their equitable unjust enrichment claims fail as a matter of law on that basis as well. *See Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-05591, 2017 WL 1330602, at *5 n.2 (N.D. Cal. Apr. 11, 2017); *Mannos v. Moss*, 155 P.3d 1166, 1173 (Idaho 2007); *Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 525 (Tenn. 2005); *Meehan v. Cheltenham Twp*., 189 A.2d 593, 594-95 (Pa. 1963); *Santagate v. Tower,* 833 N.E.2d 171, 176 (Mass. App. Ct. 2005).

## D.   PHASE II PLAINTIFFS' IMPLIED WARRANTY CLAIMS ARE SUBJECT TO SUMMARY JUDGMENT.

### 1.   There Is No Evidence that Phase II Plaintiffs' Vehicles Are Unmerchantable.

#### a.   California Plaintiff (Count 4).

Under the Song-Beverly Consumer Warranty Act, goods do not need to be perfect, but only provide a minimum level of quality. *Am. Suzuki Motor Corp. v. Superior Ct.*, 44 Cal. Rptr. 2d 526, 529(Cal. Ct. App. 1995). The core test of merchantability is fitness for the ordinary purpose for which such goods are used. *See Isip v. Mercedes-Benz USA, LLC*, 65 Cal. Rptr. 3d 695, 699-700 (Cal. Ct. App. 2007). Where a plaintiff alleges that a product is inherently defective, he must provide evidence proving that use of the product is substantially certain to lead to failure. *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 537 (C.D. Cal. 2012). Evidence that a vehicle's operability was not impaired until a particular part malfunctioned and required replacement is generally insufficient to prove unmerchantability. *See Blissard v. FCA U.S. LLC*, No. LA CV18-02765, 2018 WL 6177295, at *7 (C.D. Cal. Nov. 9, 2018). Continued use of a vehicle is evidence that it is reasonably suited for ordinary use. *See Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014).

Plaintiff Fernandez admits he drove his 2013 Sierra for almost five years and over 78,000 miles before experiencing any issue allegedly related to oil consumption, which was then addressed under warranty. He provides no evidence that the vehicle was unmerchantable at the time of sale five years

1    earlier. Fernandez did not experience any serious engine trouble or other safety issue, and continues to

2    drive his vehicle daily. He has driven for more than 100,000 miles largely trouble free, and the minor

3    issues he did have were addressed promptly under warranty. Because he drove his vehicle for many years

4    and many miles without incident, the vehicle was fit for its ordinary purpose when originally sold. *See*

5    *Avedisian v. Mercedes-Benz USA, LLC*, 43 F. Supp. 3d 1071, 1079 (C.D. Cal. 2014) (granting summary

6    judgment for vehicle manufacturer on breach of implied warranty claim where plaintiff drove vehicle for

7    over four years and 65,000 miles without interruption).

8                            **b.       Idaho Plaintiff (Count 15).**

9                    Under Idaho law, to establish breach of implied warranty, a plaintiff needs to prove that

10   the vehicle was unmerchantable at the time it left the manufacturer's control. *Powers v. Am. Honda Motor*

11   *Co.*, 79 P.3d 154, 157 (Idaho 2003); *Crandall v. Seagate Tech.*, No. 10-CV-128, 2011 WL 280990, at *7

12   (D. Idaho Jan. 25, 2011). Idaho plaintiff Del Valle purchased a three-year-old used vehicle and alleges a

13   first problem—a loose or leaky filter—when his 2013 Avalanche had over 44,000 miles.[125] He continues

14   to drive his vehicle and it currently has over 110,000 miles. Because Del Valle has no evidence that his

15   2013 Avalanche exhibited any defect at the time it left GM's control, his claim for breach of implied

16   warranty fails under Idaho law. *See Crandall*, 2011 WL 280990, at *7 ("It appears that the products

17   worked properly for a period of approximately eight months . . . . Because they were not defective at the

18   time of delivery, there cannot be a breach of this implied warranty.").

19           Del Valle also concedes that other than "keep[ing] an eye on the oil" level, his vehicle "runs good."

20   Del Valle Dep. at 63:11-12. He testified that as recently as late-May 2018, after replacing spark plugs and

21   adding oil between oil changes, he rebuffed offers to sell. *Id.* at 84:15-85:8 ("I said, 'I love this truck, so

22   I can't trade it in.'"). His effusive praise contradicts (and precludes) any claim that his vehicle was

23   unmerchantable and defeats his breach of implied warranty claim. *See Dickerson v. Mountain View Equip.*

24   *Co.*, 710 P.2d 621, 624 (Idaho Ct. App. 1985) ("the standard is measured by the generally acceptable

25   quality under the description used in the contract").

26

27
_____

28   [125] Ex. 20, Del Valle Dep. at 55:16-20.

### c.    Massachusetts Plaintiff (Count 20).

The implied warranty of merchantability under Massachusetts law is breached only where plaintiff establishes that his vehicle was not "'fit for the ordinary purpose[ ] of operating as a vehicle'" at the time of sale. *Garick v. Mercedes-Benz USA, LLC*, No. 17-cv-12042, 2019 WL 3815178, at *4 (D. Mass. Mar. 29, 2019), *aff'd*, 790 F. App'x 230 (1st Cir. 2020). Where a vehicle functions for years without issue, it is merchantable as a matter of law. *Id.*; *Rivera v. Chrysler Corp., LLC*, No. HDCV200800670, 2010 WL 8490859, at *4 (Mass. Super. May 10, 2010) (vehicle not unmerchantable where original owner drove vehicle for over 22,000 miles with no problems).

Plaintiff Smith did not experience any problems with his 2011 Yukon for more than six years and 110,000 miles.[126] The undisputed record evidence is that his vehicle was fit for the ordinary purpose of operating as a vehicle for many years and thousands of miles after the time of sale, and therefore was not unmerchantable as a matter of law.

### d.    Pennsylvania Plaintiff (Count 30).

Under Pennsylvania law, merchantability requires that goods "'be of reasonable quality within expected variations and for the ordinary purpose for which they are used.'" *Maneri v. Starbucks Corp. Store #1527*, No. 17-3881, 2019 WL 5626650, at *9 (E.D. Pa. Oct. 31, 2019). Where a vehicle "can provide safe, reliable transportation[,] it is generally considered merchantable." *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 888 (E.D. Pa. 1996) (alteration in original). Plaintiff Graziano's evidence is that he found the oil to be two quarts low on a single occasion after having driven the vehicle for 6,000 miles, and that he never sought repairs.[127] He was repeatedly told by third parties that the level of oil consumption in his vehicle was normal.[128] His vehicle's engine has never stalled or failed while driving.[129] With no evidence of excessive oil consumption or unmerchantability, his implied warranty claim is subject to summary judgment. *See M. Leff Radio Parts, Inc. v. Mattel, Inc.*, 706 F. Supp. 387, 395 (W.D. Pa.

---

[126] Ex. 21, Smith Dep. at 49:2-50:14.

[127] Ex. 23, Graziano Dep. at 55:14-22, 56:7-11.

[128] *Id.* at 50:20-51:12, 53:23-54:8.

[129] *Id.* at 62:5-11.

1988) ("Because Plaintiff has failed to demonstrate a genuine issue of fact that the goods were defective, summary judgment . . . should be granted[]" on the breach of implied warranty of merchantability claim).

### e.    Tennessee Plaintiff (Count 35).

Under Tennessee law, merchantability requires goods to "'pass without objection in the trade under the contract description and [be] fit for the ordinary purposes for which such goods are used.'" *Galloway v. Big G Express, Inc.*, No. 05-CV-545, 2008 WL 80262, at *5 (E.D. Tenn. Jan. 7, 2008). A breach of the implied warranty of merchantability occurs only where a "'defect or defects essentially deprive the owner of beneficial use of the goods.'" *Id.* Plaintiff must also prove "'that the goods were not merchantable at the time of sale or delivery.'" *Id.* Where a vehicle is driven for over a year and thousands of miles without problems, it is merchantable. *Taylor v. Mid-Tenn. Ford Truck Sales, Inc.*, No. 01-A-01-9307-CV00310, 1994 WL 700859, at *5 (Tenn. Ct. App. Dec. 16, 1994) (vehicle merchantable where "driven for fourteen months and approximately 39,000 miles before it developed mechanical problems.").

Tennessee plaintiff purchased a 4-year-old used vehicle from a Honda dealership. He claims that he first experienced oil consumption when the vehicle was more than five years old with over 47,000 miles. He does not allege any engine problem or damage.[130] He continues to drive his vehicle, and it has more than 96,000 miles.[131] The undisputed record evidence is that his vehicle provided a minimum level of quality, and therefore was not unmerchantable as a matter of law.

### 2.    Idaho and Tennessee Plaintiffs Lack Privity (Counts 15 and 35).

Under both Idaho and Tennessee law, a plaintiff must be in privity with the defendant to recover economic damages for breach of implied warranty. *See Nelson v. Anderson Lumber Co.*, 99 P.3d 1092, 1097 (Idaho Ct. App. 2004); *see also Melichar v. State Farm Fire & Cas. Co.*, , 152 P.3d 587, 593 (Idaho 2007) (independent contractor did not establish privity for implied warranty claim); *Americoach Tours, Inc. v. Detroit Diesel Corp.*, No. 04-2016 B/V, 05-2067 B, 2005 WL 2335369, at *6 (W.D. Tenn. Sept. 23, 2005). Idaho plaintiff purchased his vehicle used from an independent dealership, and concedes that

---

[130] *See* Ex. 25, Byrge Dep. at 13:2-7, 15:5-11, 24:11-25:10.

[131] *Id.* at 15:12-14.

he had no contact with GM.[132] Tennessee plaintiff purchased his vehicle used from a Honda dealership and had no contact with GM.[133] It is well-established that independent dealerships are not agents of automobile manufacturers. *Williams v. Yamaha Motor Corp., U.S.A.*, CV 13-05066, 2015 WL 13626022, at *6 (C.D. Cal. Jan 7, 2015) ("The relationship between automobile manufacturers and their dealers has been examined by a host of courts throughout the country, all of which have agreed that dealers are not 'agents' of manufacturers."); *Corbett v. Remington Arms Co., LLC*, No. 15-cv-00279, 2016 WL 1755456, at *3 (D. Idaho May 2, 2016) ("Idaho case authority supports the notion that an end consumer . . . who buys from a retailer is not in contractual privity with the manufacturer."). Without privity of contract, their implied warranty claims fail as a matter of law.

### 3. Idaho and Pennsylvania Plaintiffs Did Not Provide Pre-Suit Notice (Counts 15 and 30).

The implied warranty statutes in Idaho and Pennsylvania require plaintiffs to provide pre-suit notice of a breach of warranty or "be barred from any remedy." Idaho Code § 28-2-607; 13 Pa. Cons. Stat. § 2607 (c)(1). It is undisputed that the Idaho and Pennsylvania plaintiffs did not send pre-suit notice to GM.[134] Plaintiffs' allegation in the complaint that former Florida plaintiff Donald Ludington sent a notice letter to GM is insufficient for these specific plaintiffs, as the notice requirement is an individual one.[135] *See Kee v. Zimmer*, 871 F. Supp. 2d 405, 410-11 (E.D. Pa. 2012) (dismissing warranty claims); *Am. Fed'n of State Cnty. & Mun. Employees v. Ortho-McNeil-Janseen Pharmaceuticals, Inc*., No. 08-cv-5904, 2010 WL 891150, at *6 (E.D. Pa. Mar. 11, 2010) (dismissing warranty claims because plaintiff must send actual notice even if defendant had actual or constructive knowledge of the breach); *Schechner v. Whirlpool Corp.,* 237 F. Supp. 3d 601, 610 (E.D. Mich. 2017) (dismissing warranty claims for failure to provide notice applying Idaho law). The purpose of pre-suit notice is to allow the seller an opportunity to resolve the dispute with that particular prospective plaintiff before he initiates a lawsuit. *Kee*, 871 F. Supp. 2d at 410; *Full Circle, Inc. v. Schelling*, 701 P.2d 254, 259 (Idaho Ct. App. 1985). As this Court previously

---

[132] Ex. 20, Del Valle Dep. 17:14-16, 38:9-13; Seventh Am. Compl. ¶ 56.

[133] Ex. 25, Byrge Dep. at 14:24-15:6, 21:11-14.

[134] *See* Seventh Am. Compl. ¶¶ 369, 511; Ex. 20, Del Valle Dep. at 38:9-13; Ex. 23, Graziano Dep. at 42:21-43:19.

[135] *See* Seventh Am. Compl. ¶¶ 369, 511.

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

held, "[n]otice provided by a person in another state that purports to be made on behalf of all purchasers around the country—perhaps numbering in the hundreds of thousands—does not create a meaningful opportunity for the seller to cure or settle." *See Sloan v. Gen. Motors LLC,* 287 F. Supp. 3d 840, 883 (N.D. Cal. 2018).

E.     **PHASE II PLAINTIFFS' MMWA CLAIMS FAIL BECAUSE THERE ARE NO VIABLE STATE LAW WARRANTY CLAIMS.**

To sustain claims under the MMWA there must be viable warranty claims under state law. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1027 (9th Cir. 2008); *Sipe v. Workhorse Custom Chassis, LLC,* 572 F.3d 525, 530-32 (8th Cir. 2009); *Miller v. Four Winds Int'l. Corp.*, 827 F. Supp. 2d 1175, 1183-84 (D. Idaho 2011); *Garick*, 2019 WL 3815178, at *5; *Sabol v. Ford Motor Co.*, No. 14-6654, 2015 WL 4378504, at *5 (E.D. Pa. July 16, 2015); *Owenga v. Volkswagen Grp. of Am., Inc.*, No. 16-cv-2374, 2017 WL 3671376, at *3 (W.D. Tenn. July 13, 2017).

The Court previously dismissed Phase II Plaintiffs' express warranty claims (Counts 9, 14, 19, 29, 34)[136] and the Arkansas plaintiff's implied warranty claim (Count 10).[137] Summary judgment is warranted as to the remaining implied warranty claims (Counts 15, 20, 30, and 35) as shown above. Without viable state law warranty claims, summary judgment should be entered in GM's favor on the MMWA claims.

F.     **PHASE II PLAINTIFFS' FRAUD AND CONSUMER PROTECTION CLAIMS FAIL AS A MATTER OF LAW.**

1.     **Arkansas (Counts 8 and 11).**

Under the Arkansas Deceptive Trade Practices Act ("ADTPA") and Arkansas common law fraud, a plaintiff can only state a claim if he has suffered "actual injury." *Wallis v. Ford Motor Co.,* 208 S.W.3d 153, 161-62 (Ark. 2005) (no ADTPA or fraud claim against manufacturer where owner did not experience an actual defect or malfunction, and only injury was alleged diminution in value due to alleged design defect). Arkansas plaintiff alleges only diminution in value,[138] and therefore summary judgment should be granted for GM on his fraud and ADTPA claims. *See Moore v. Mack's Sport Shop, LLP*, No. 16-cv-00540, 2017 WL 4350980, at *10 (E.D. Ark. Sept. 29, 2017).

---

[136] ECF No. 62 at 14-16.

[137] ECF No. 286 n. 48.

[138] Seventh Am. Compl. ¶ 300; Ex. 19, Goodwin Dep. at 56:24-57:12.

For Arkansas fraud claims based on alleged omissions, plaintiff must also prove that the defendant had knowledge at the time of sale and a duty to disclose. *See Gorman v. Gilliam*, 374 S.W.3d 117, 122 (Ark. Ct. App. 2010) (liability for a nondisclosure may be found only in special circumstances, where there is a duty to communicate the purportedly concealed material fact); *see also Day v. Tri-State Delta Chemicals, Inc.*, 165 F. Supp. 2d 830, 833 (E.D. Ark. 2001) ("*there must be something more than mere silence or mere failure to disclose known facts*."). A duty to disclose arises only when there is an established relationship between the parties, such as a contractual or fiduciary relationship. *White v. Volkswagen Grp. of Am., Inc.*, No. 11-CV-02243, 2013 WL 685298, at *9 (W.D. Ark. Feb. 25, 2013). Here, there is no special relationship between the Arkansas plaintiff and GM, no privity of contract, and no confidential or fiduciary relationship, and thus no duty to disclose.

### 2.     Idaho (Count 13 and 16).

To have standing under the Idaho Consumer Protection Act ("ICPA"), "the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively." *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010). Idaho plaintiff purchased his used vehicle from an independent dealership and had no contact with GM.[139] He thus has no privity and no ICPA claim.

Idaho plaintiff's fraudulent omission claim also fails as a matter of law because the undisputed facts show that the engine's oil consumption rate was not material to his vehicle purchase decision and that he did not rely on any GM omission about oil consumption. *See Sharp v. Idaho Inv. Corp.*, 504 P.2d 386, 394 (Idaho 1972) (elements of actionable fraud include materiality and reliance). Idaho plaintiff testified that he was determined to replace his totaled Avalanche with another Avalanche.[140] Before purchase, he conducted research solely on prices for used vehicles.[141] The specific factors material to his purchase decision were: (1) appearance, (2) that the vehicle was American-made; (3) the ability to fit five passengers; (4) the expandable truck bed; and (5) "decent towing abilities."[142] His ability to fit the

---

[139] Ex. 20, Del Valle Dep. at 17:14-16, 38:9-13.
[140] *Id.* 16:3-8, 17:13-18:4, *see also id.* at 20:25-22:17.
[141] *Id.* at 25:5-20.
[142] *Id.* at 21:22-22:14.

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

1   Avalanche in his garage and the expandable bed convinced him to purchase the Avalanche.[143] Idaho

2   plaintiff admitted that the alleged oil consumption defect was *not* material to his purchase decision.

3   Specifically, he testified that he was aware that his 2010 Avalanche consumed oil, and yet after it was

4   totaled, he still "wanted the same vehicle."[144] And, when asked by his own counsel whether he would still

5   purchase the 2013 Avalanche if he had known about the alleged oil consumption defect, Idaho plaintiff

6   admitted that he would still have purchased the truck.[145]

7                           **3.      Massachusetts (Counts 18 and 21).**

8          Massachusetts plaintiff's claim under the Regulation of Business Practices for Consumer

9   Protection Act, Mass. Gen. Laws chapter 93A, fails as a matter of law because he did not serve GM with

10  the required pre-suit demand letter. *See* Mass. Gen. Laws ch. 93A, § 9(3) ("At least thirty days prior to

11  the filing of any such action, a written demand for relief, identifying the claimant and reasonably

12  describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or

13  delivered to any prospective respondent."); *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204

14  (Mass. 1975).

15          Massachusetts plaintiff's claim for fraudulent omission likewise fails because GM has no duty to

16  disclose. *JSB Indus., Inc. v. Nexus Payroll Servs., Inc.*, 463 F. Supp. 2d 103, 107 (D. Mass. 2006)

17  (dismissing fraudulent omission claim because a duty to disclose is dependent on "a fiduciary duty or

18  other similar relation of trust and confidence that required disclosure.") (internal quotation omitted). An

19  arms-length transaction does not create a fiduciary relationship. *Id.* at 107-08. Here, there is no fiduciary

20  relationship between Massachusetts plaintiff and GM, or any circumstances that would create a

21  relationship of trust or confidence.

22                          **4.      Pennsylvania (Counts 28 and 31).**

23          For a Pennsylvania claim under the UTPCPL or common law fraudulent omission, plaintiff has

24  the burden to show that the defendant had a duty to disclose. *Smith v. Renaut*, 564 A.2d 188, 192 (Pa.

25

26  _____

27  [143] *Id.* at 23:5-23.
    [144] *Id.* at 22:15-16, 41:16-42:5.

28  [145] *Id.* at 91:9-16.

Super. Ct. 1989); *Wilson v. Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1315 (Pa. Super. Ct. 1991). The duty to disclose latent defects is limited to defects known to have caused life-threatening bodily harm. *Cf. Zwiercan v. Gen. Motors Corp.*, No. 3235, 2003 WL 1848571, at *2 (Pa. Ct. Com. Pl. Mar. 18, 2003) ("duty to disclose [limited to] known serious and life-threatening latent defects."). There is no allegation, claim, or evidence of any serious or life-threatening bodily harm to the Pennsylvania plaintiff as a result of the alleged oil consumption defect. In fact, all plaintiffs admit they did not suffer any physical injury or harm as a result of the alleged defect, and therefore there is no duty to disclose under Pennsylvania law.

### 5.    Tennessee (Counts 33 and 36).

The Tennessee plaintiff purports to bring his claim for violation of the Tennessee Consumer Protection Act as a class action claim, but the TCPA does not allow class action claims. Tenn. Code Ann. § 47-18-102(2); *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 310-11 (Tenn. 2008); *Ham v. Swift Transp. Co.*, No. 09-cv-02145, 2011 WL 13350069, at *3 (W.D. Tenn. Oct. 12, 2011) (dismissing TCPA class claim as barred by statute).

The duty to disclose under Tennessee law is limited to fiduciary relationships. *EPAC Techs., Inc. v. HarperCollins Christian Publ'g Inc.*, 398 F. Supp. 3d 258, 270 (M.D. Tenn. 2019). There is no fiduciary relationship between GM and Tennessee plaintiff, and therefore no basis for Tennessee plaintiff's fraudulent omission claim.

## IV.    CONCLUSION

For these reasons, summary judgment should be granted for GM on all claims of the Phase II Plaintiffs.

Dated: December 2, 2020

/s/ April N. Ross
Kathleen Taylor Sooy (*pro hac vice*)
April N. Ross (*pro hac vice*)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
ksooy@crowell.com
aross@crowell.com

Joseph J. Ybarra
**HALPERN MAY YBARRA GELBERG LLP**
550 South Hope Street, Suite 2330

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs

Los Angeles, California 90071
Phone: (213) 402-1900
Joseph.Ybarra@halpernmay.com

Gregory R. Oxford
**ISAACS CLOUSE CROSE & OXFORD LLP**
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Phone: (310) 316-1990
goxford@icclawfirm.com

*Attorneys for General Motors LLC*

Case No. 16-cv-07244-EMC
GM's Motion for Partial Summary
Judgment – Phase II Plaintiffs