UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL SIQUEIROS, et al.,<br><br>               Plaintiffs,<br><br>    v.<br><br>GENERAL MOTORS LLC,<br><br>               Defendant. | Case No. 16-cv-07244-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; AND GRANTING PLAINTIFFS' MOTION FOR A DETERMINATION OF MANUEL FERNANDEZ'S ADEQUACY TO SERVE AS CALIFORNIA'S CLASS REPRESENTATIVE**<br><br>Docket Nos. 287, 289, 291 |

## I.     INTRODUCTION

Plaintiffs allege that Defendant General Motors LLC ("GM" or "Defendant") knowingly manufactured and sold a car engine with inherent defects that caused excessive oil consumption and engine damage.  The alleged defects affect 2011 to 2014 model-year GM vehicles.  Plaintiffs assert claims under various state consumer-protection and fraud statutes on behalf of a nationwide class as well as various statewide classes.  Plaintiffs filed their class action complaint on December 19, 2016.  *See* Docket No. 2 ("Compl.").  They have since amended their pleadings several times; the operative complaint is the seventh amended complaint.  *See* Docket No. 286 ("7AC").

Before the Court are (1) GM's second motion for partial summary judgment pursuant to

Federal Rule of Civil Procedure 56, *see* Docket No. 291 ("Second MSJ"); (2) Plaintiffs' second motion for class certification pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), *see* Docket No. 287 ("Second Class Cert. Mot."); and (3) Plaintiffs' motion for determination of Manuel Fernandez's adequacy to serve as California class representative pursuant to Federal Rule of Civil Procedure 23(a)(4), *see* Docket No. 289 ("Fernandez Adequacy Mot.").

For the following reasons, the Court **GRANTS in part** and **DENIES in part** GM's motion for partial summary judgment and Plaintiffs motion for class certification. The Court also **GRANTS** Plaintiffs' motion to determine that Mr. Fernandez is adequate to serve as California class representative.

## II.   <u>BACKGROUND</u>

This order assumes the parties' familiarity with the lengthy factual and procedural background of this case and therefore only recites the facts and background necessary to resolve the pending motions.

A.   <u>Factual Background</u>

Plaintiffs allege that GM's Gen IV Vortec 5300 LC9 engine suffers from an "inherent" oil-consumption defect. 7AC ¶ 7. The "primary cause" of the alleged defect is the piston rings installed by GM. *Id.* ¶ 8. These piston rings "do not maintain sufficient tension to keep oil in the crankcase," and the oil migration that occurs as a result allows oil to "burn[] or accumulate[] as carbon buildup on the combustion chamber's surfaces." *Id.* ¶¶ 8–9. Plaintiffs allege that the oil-consumption defect causes safety problems in three ways: (1) oil consumption can lead to a lack of adequate lubrication in the engine and dropping oil pressure levels in vehicles, *see id.* ¶ 19; (2) the presence of excess oil in the combustion chamber can cause spark plug fouling, which can cause engine problems, *see id.*; and (3) when drivers experience these problems while driving, they may be forced to pull over and stop alongside a road or highway (or they may be stranded in such a location with an inoperable vehicle), which places them in danger, *see id.* ¶ 14, 120–21.

B.   <u>Procedural Background</u>

In order to address manageability concerns, the parties agreed to follow a bellwether process for class certification wherein Plaintiffs' initial motion for class certification would be

limited to California, New Jersey, Ohio, North Carolina, and Texas. *See* Docket No. 113.

Plaintiffs filed their first motion to certify a class in the four bellwether states on September 3, 2019. *See* Docket No. 175 ("First Class Cert. Mot."). Shortly thereafter, GM filed its first motion for partial summary judgment, *see* Docket No. 184 ("First MSJ"), and a motion to exclude certain testimony of Plaintiffs' expert witness, *see* Docket No. 201.

Initially, Plaintiffs sought to include all four Gen IV engine designs (the LC9, the LMG, the LH9, and the LMF) in the class definition, but in the reply in support of Plaintiffs' motion for class certification, Plaintiffs limited the proposed class definition to vehicles with LC9 engines with Active Fuel Management (AFM). *See* Docket No. 207 ("Reply in Supp. of First Class Cert. Mot.") at 7. The LC9 engine was installed in the 2010–2014 Chevrolet Avalanche; 2010–2014 Chevrolet Silverado; 2010–2014 Chevrolet Suburban; 2010–2014 Chevrolet Tahoe; 2010–2014 GMC Sierra; 2010–2014 GMC Yukon; and the 2010–2014 GMC Yukon XL (the "Class Vehicles"). 7AC ¶ 2; *see also* Reply in Supp of First Class Cert. Mot. at 7.

On April 23, 2020, the Court granted in part and denied in part GM's first motion for partial summary judgment on certain of Plaintiffs' claims in the four bellwether states, including all of Plaintiffs' New Jersey claims. *See Sloan v. Gen. Motors LLC* ("*Sloan III*"), No. 16-CV-07244-EMC, 2020 WL 1955643, at *6–*36 (N.D. Cal. Apr. 23, 2020). The Court also denied GM's motion to exclude certain testimony of Plaintiffs' expert witness, *id.* at *36–*39, and certified the following classes in the three remaining bellwether states:

> **California Class.** All current owners or lessees of a Class Vehicle that was purchased or leased in the State of California. The Court certifies the claims of the California Class for violation of the Song-Beverly Consumer Warranty Act for breach of implied warranty, Cal. Civ. Code § 1790 et seq. The Court appoints Raul Siqueiros as the class representatives for the California Class.

> **North Carolina Class.** All current owners or lessees of a Class Vehicle that was purchased or leased in the State of North Carolina. The Court certifies the claims of the North Carolina Class for breach of implied warranty of merchantability. The Court appoints William Davis, Jr. as the class representative for the North Carolina Class.

> **Texas Class.** All current owners or lessees of a Class Vehicle that was purchased or leased in the State of Texas. The Court certifies the claims of the Texas Class for breach of implied warranty of merchantability. The Court appoints Rudy Sanchez as the class

representative for the Texas Class.

*Id.* at *52.  Importantly, the Court restricted the definition of "Class Vehicles" to only those vehicles manufactured on or after February 10, 2011, the date upon which the second of two engine modifications—the redesigned rocker cover—was incorporated into vehicle production. *Id.* at *53.  As a result, the Class Vehicles exclude any vehicle that has already received adequate piston replacement, *i.e.*, piston replacement in which the new pistons were not merely new versions of the same defective pistons.  *Id.*

In June 2020, Plaintiffs filed a motion to substitute the California class representative and GM filed a motion to decertify the California class.  *See* Docket Nos. 246, 247.  These motions relied on the fact that Raul Siqueiros could no longer serve as the California class representative because his vehicle was manufactured before February 10, 2011.

On July 16, 2020, Plaintiffs filed their sixth amended complaint.  *See* Docket No. 250 ("6AC").  Two weeks later, GM filed a motion to dismiss Count 1 of the sixth amended complaint—Plaintiffs' Magnuson Moss Warranty Act (MMWA) claim—and Plaintiffs filed a motion to intervene on behalf of the new putative California class representatives.  *See* Docket Nos. 255, 259.

On August 26, 2020, Plaintiffs Dan Madson, Joseph Brannon, Derick Bradford, Monteville Sloan,[1] Michael Ware, Barbara Molina, Drew Peterson, Ross Dahl, Mike Warpinski, Joseph Olivier, James Faulkner, Kevin Hanneken, Steve Kitchen, Thomas Shorter, and Marc Perkins voluntarily dismissed all their claims without prejudice.  *See* Docket No. 271.

On September 14, 2020, the Court granted in part with prejudice GM's motion to dismiss Plaintiffs' MMWA class allegations but denied it with respect to their individual MMWA claims. *See* Docket No. 278.  The Court also denied GM's motion to decertify the California class and granted Plaintiff's motion for permissive intervention, substituting Plaintiffs Manuel Fernandez and Robert May for Mr. Siqueiros as California class representatives.  *See id.* at 16.

On November 6, 2020, the parties stipulated to amend the California class as follows:

---

[1] Because Mr. Sloan was dismissed from this action, this case will hereinafter be referred to as *Siqueiros v. General Motors LLC*.

> **California Class.** All current owners or lessees of a Class Vehicle ~~that was~~ who purchased or leased <u>the vehicle in new condition</u> in the State of California.  The Court certifies the claims of the California Class for violation of the Song-Bervely Consumer Warranty Act for breach of implied warranty, Cal. Civ. Code § 1790 et seq.

*See* Docket No. 288.  That same day, Plaintiffs filed their seventh amended complaint, the operative complaint, *See* 7AC, as well as their second motion to certify classes in Arkansas, Idaho, Pennsylvania, and Tennessee, *see* Second Class Cert. Mot.  Plaintiffs also filed a motion for determination of Mr. Fernandez's adequacy to serve as California class representative.  *See* Fernandez Adequacy Mot.

On December 2, 2020, GM filed its second motion for partial summary judgment.  *See* Second MSJ.

## III.     LEGAL STANDARDS

### A.     Motion for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor.  *See id.* at 255.

Where a defendant moves for summary judgment based on a claim for which the plaintiff bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B.     Motion for Class Certification

Although expressly authorized by Rule 23, the "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal–*

*Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "In order to justify departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as [her fellow] class members.'" *Id.* (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

Accordingly, before certifying a class, the Court "must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186, *amended* 273 F.3d 1255 (9th Cir. 2001)). The Supreme Court has made it clear that Rule 23 "does not set forth a mere pleading standard." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart*, 564 U.S. at 349). Rather, the party seeking certification must "affirmatively demonstrate" her compliance with the requirements of both Rules 23(a) and 23(b). *See Wal-Mart*, 564 U.S. at 349.

**Rule 23(a)** permits plaintiffs to sue as representatives of a class only if (1) "the class is so numerous that joinder of all members is impracticable" ("numerosity" requirement); (2) "there are questions of law or fact common to the class" ("commonality" requirement); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" ("typicality" requirement); and (4) "the representative parties will fairly and adequately protect the interests of the class" ("adequacy" requirement). Fed. R. Civ. P. 23(a)(1)-(4). The purpose of Rule 23(a)'s requirements is largely to "ensure[ ] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and to "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart*, 564 U.S. at 349 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

If each of the Rule 23(a) requirements are satisfied, the purported class must also satisfy one of the three prongs of Rule 23(b). Here Plaintiffs seek certification under **Rule 23(b)(3)**, which requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members" ("predominance" requirement), and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority" requirement). Fed. R. Civ. P. 23(b).

The underlying merits of the case, while admittedly relevant at the class certification stage, should not overly cloud the Court's certification analysis—the only question presently before the Court is whether the requirements of Rule 23 are met. *See Comcast*, 569 U.S. at 33–34. The fact that certain elements of proof may favor the defendant on the merits does not negate class certification; the issue is whether the proof is amenable to class treatment.

Moreover, "[n]either the possibility that a plaintiff will be unable to prove [her] allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule." *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Indeed, even "after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw.*, 457 U.S. at 160. Ultimately, whether to certify a class is within the discretion of the Court. *See Levya v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013); *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO CLC v. ConocoPhilips Co.*, 593 F.3d 802, 810 (9th Cir. 2010).

## IV.     **PARTIAL SUMMARY JUDGMENT**

This order first addresses GM's motion for partial summary judgment because of its impact on class certification.

A.     Consumer Fraud Claims

　　　　1.     Arkansas:  Arkansas Deceptive Trade Practices Act (ADTPA) (Count 8) and Fraudulent Omission (Count 11)

GM argues that the ADTPA and common law fraud claims in Arkansas require "actual injury" beyond diminution in value. Second MSJ at 21. Indeed, in *Wallis v. Ford Motor Co.*, the Arkansas Supreme Court squarely held that "common law fraud claims not resulting in injury are not actionable" and that a plaintiff "does not state a cognizable cause of action under ADTPA where the only injury complained of is a diminution in value of the vehicle." 208 S.W.3d 153, 159, 162 (Ark. 2005). Under this bright-line rule, Arkansas Plaintiff Larry Wayne Goodwin's ADTPA and fraudulent omission claims fail as a matter of law because he does not allege any

1  injury except diminution in value of his vehicle.  *See* Docket No. 293-4 ("Goodwin Dep. Tr.") at

2  56:24–57:12.

3       Plaintiffs attempt to distinguish *Wallis* by pointing out that Mr. Wallis did not allege that

4  his vehicle malfunctioned in any way, whereas here Mr. Goodwin is alleging that his vehicle

5  suffers from the oil-consumption defect that the Court already determined to be a significant safety

6  defect.  Docket No. 304 ("Opp'n to Second MSJ") at 22.  But Mr. Wallis's complaint also alleged

7  that his Ford Explorer "had a dangerous design defect that caused it to roll over under normal

8  operations," and the *Wallis* Court treated that allegation "as true" given that it was affirming the

9  trial court's dismissal of Mr. Wallis's complaint.  It appears that under *Wallis* even where claims

10 involve concealment of a safety defect, "common law fraud claims *not resulting in injury* are not

11 actionable."  208 S.W.3d at 162 (emphasis added).

12      Plaintiffs also argue that GM's unique knowledge of the oil-consumption defect gives rise

13 to a duty to disclose under Arkansas law.  Opp'n to Second MSJ at 22.  But if that were the case,

14 then the *Wallis* court would have concluded that Ford had a duty to disclose to Mr. Wallis the

15 rollover defect in his Ford Explorer.  Moreover, the law in Arkansas is clear—a duty to disclose

16 arises only "on special circumstances . . . such as a confidential relationship."  *Ward v. Worthen*

17 *Bank & Tr. Co.*, 681 S.W.2d 365, 368 (Ark. 1984) (quoting *Berkeley Pump Co. v. Reed–Joseph*

18 *Land Co.*, 653 S.W.2d 128 (Ark. 1983)); *see also White v. Volkswagen Grp. of Am., Inc.*, No.

19 2:11-CV-02243, 2013 WL 685298, at *9 (W.D. Ark. Feb. 25, 2013) ("One owes the duty to

20 disclose information only when there is an established relationship between the parties, such as a

21 contractual relationship or a fiduciary relationship." (citing *Badger Cap., LLC v. Chambers Bank*

22 *of N. Ark.*, 650 F.3d 1125, 1130 (8th Cir.2011) (citing *Berkeley Pump*, 653 S.W.2d at 368))).

23 Although "[t]he duty of disclosure . . . arises where one person is in position to have and to

24 exercise influence over another who reposes confidence in him whether a fiduciary relationship in

25 the strict sense of the term exists between them or not," *Camp v. First Fed. Sav. & Loan*, 671

26 S.W.2d 213, 216 (Ark. Ct. App. 1984) (quoting *Hanson Motor Co. v. Young*, 265 S.W.2d 501

27 (Ark. 1954)), there was no special relationship—fiduciary, contractual, or confidential—between

28 Mr. Goodwin and GM.

Accordingly, the Court **GRANTS** GM's motion for summary judgment as to Counts 8 and 11 because fraud claims in Arkansas require allegations of injury beyond the mere diminution in value of the allegedly defective product and Mr. Goodwin was not in a special relationship with GM that would require GM to disclose its knowledge of the alleged oil-consumption defect.

2. Idaho:  Idaho Consumer Protection Act (ICPA) (Count 13) and Fraudulent Omission (Count 16)

GM challenges Idaho Plaintiff Gabriel Del Valle's standing to bring an ICPA claim because he purchased his used vehicle from an independent dealership and had no direct contact with GM.  *See* Second MSJ at 22; *see also* Docket 293-5 ("Del Valle Dep. Tr.") at 17:14-16, 38:9-13.  The Idaho Supreme Court has stated that, "[i]n order to have standing under the [ICPA], the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively." *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010) (emphasis added). This Court already ruled in a different case, however, that "it is not clear from *Taylor* what kind of contractual relationship the court was contemplating; in other words, it is not clear that the court was necessarily requiring a *direct* contract between the plaintiff and defendant (immediate privity)." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1021 (N.D. Cal. 2018) (emphasis added).  Indeed, in *In re Chrysler* this court noted that *Taylor* cites to section 48–608(1) of the Idaho Code and *Haskin v. Glass*, 640 P.2d 1186, 1189 (Idaho Ct. App. 1982), which simply reflect that a plaintiff's claim must ultimately be founded on a contract, not that the contract must be one entered into directly by the plaintiff and the defendant. *Id.* at 1022.  Therefore, Mr. Del Valle has standing to sue because he has a contract with the dealer that resulted in his vehicle being purchased, even if that dealer was "independent."  Del Valle Dep. Tr. at 17:14–16, 38:9–13.

GM also challenges Mr. Del Valle's fraudulent omission claim by arguing that oil consumption was not material to his decision to purchase his vehicle.  Second MSJ at 22.  The parties do not dispute that the elements of a fraud claim in Idaho include materiality. *Sharp v. Idaho Inv. Corp.*, 504 P.2d 386, 394 (Idaho 1972) (listing the elements of common law fraud, including "materiality").  Admittedly, Mr. Del Valle testified that he wanted to replace his prior

Chevrolet Avalanche with another Avalanche because he thought "it's a good-looking vehicle," he "wanted to stay with American-made cars," it had "the ability to carry five passengers," "it had a nice five-foot bed with the ability to expand that bed to eight feet," "it had decent towing abilities," and "it would fit in the garage and still give [him] the ability to carry an eight-foot piece of material." Del Valle Dep. Tr. at 17:13–18:4, 20:25–22:17; 23:5–18. He also admitted that, even though his first Avalanche also "[ate] quite a bit of oil," he still "wanted the same vehicle." *Id.* at 22:15–16, 41:16–42:5. But Mr. Del Valle also testified that the oil-consumption defect was material to his decision to purchase the Avalanche, and that knowing about the defect "would have put [his purchase] into doubt." *Id.* at 91:5–15. He also testified that "[he] definitely would have negotiated a better price" for the Avalanche had he known about the defect. *Id.* at 91:15–16. Taking this latter testimony in the light most favorable to Mr. Del Valle, there is at least a genuine issue of material fact as to whether the oil-consumption defect was material to Mr. Del Valle's decision to purchase the Chevrolet Avalanche.

Accordingly, the Court **DENIES** GM's motion for summary judgment as to Counts 13 and 16 because Mr. Del Valle had a contract with the dealer that resulted in the purchase of his vehicle and there is a question of material fact as to whether the oil-consumption defect was material to his decision to purchase the vehicle.

3. <u>Massachusetts:  Massachusetts Regulation of Business Practices for Consumer Protection Act (RBPCPA) (Count 18) and Fraudulent Omission (Count 21)</u>

According to GM, Massachusetts Plaintiff Scott Smith's claim under the RBPCPA fails as a matter of law because he did not serve GM with the required pre-suit demand letter. *See* Second MSJ at 23 (citing Mass. Gen. Laws ch. 93A, § 9(3) ("At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent.")). This Court already rejected this argument, holding that "[Mr.] Smith . . . ha[s] satisfied [his] pre-suit notice requirements through a notice letter with a return receipt dated October 28, 2016." *Sloan v. Gen. Motors LLC* ("*Sloan I*"), No. 16-CV-07244-EMC, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017). GM offers no reason to reconsider this ruling,

1   which is now the law of this case.

2       GM also contends that Mr. Smith's fraudulent omission claim fails because GM had no

3   duty to disclose the oil-consumption defect.  Second MSJ at 23.  In Massachusetts, "[t]o the extent

4   that the claim involves nondisclosure of a fact, it is actionable as fraud only when there is a duty to

5   disclose." *Stolzoff v. Waste Sys. Int'l, Inc.*, 792 N.E.2d 1031, 1044 (Mass. App. Ct. 2003) (citing

6   *Wolf v. Prudential–Bache Sec., Inc.*, 672 N.E.2d 10 (Mass. App. Ct. 1996)).  The Court of Appeals

7   of Massachusetts has "recognized a duty to disclose where (i) there is a fiduciary or other similar

8   relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be

9   necessary to prevent his partial or ambiguous statement of the facts from being misleading, *or* (iii)

10  the nondisclosed fact is basic to, or goes to the essence of, the transaction." *Id.* at 1044 (emphasis

11  added) (citing *Wolf*, 672 N.E.2d at 10 and Restatement (Second) of Torts § 551 (1977)).  GM does

12  not cite to any case from a Massachusetts appellate court that contradicts this rule.

13      Under *Stolzoff*  and *Wolf*, GM's argument that it owed no duty to disclose to Mr. Smith is

14  unconvincing because the oil-consumption defect was a "matter[] known to [GM] that [GM]

15  kn[ew] to be necessary to prevent" misleading Mr. Smith into purchasing his vehicle.  Indeed, this

16  Court already concluded that "GM was aware of the oil-consumption problem with GenIV engines

17  as early as the end of 2008 or 2009," and that there is at least a genuine issue of material fact as to

18  whether GM actively concealed information about the alleged defect to induce Plaintiffs into

19  purchasing their vehicles.  *Sloan III*, 2020 WL 1955643, at *13–*17.  The fact that GM and Mr.

20  Smith are not in a fiduciary relationship is therefore not fatal to Mr. Smith's fraudulent omission

21  claim under Massachusetts law.

22      Accordingly, the Court **DENIES** GM's motion for summary judgment as to Counts 18 and

23  21 because Mr. Smith properly notified GM of his suit and GM had a duty to disclose the oil-

24  consumption defect.

25          4.   Pennsylvania:  Unfair Trade Practices and Consumer Protection Law (UTPCPL)

26               (Count 28) and Fraudulent Omission (Count 31)

27      GM contends that it had no duty to disclose the alleged oil-consumption defect because

28  Pennsylvania Plaintiff John Graziano admits that he did not suffer any physical injury or harm as a

11

result of the defect.  Second MSJ at 23–24.  Plaintiffs respond that, under Pennsylvania law, "a duty to speak exists, in the context of a business transaction with an ordinary non-business consumer, when the seller has superior knowledge of a material fact that is unavailable to the consumer." *Zwiercan v. Gen. Motors Corp.* ("*Zwiercan II*"), No. 3235 JUNE TERM 1999, 2002 WL 31053838, at *3 (Pa. Com. Pl. Sept. 11, 2002).  The problem with this argument is that the Pennsylvania Court of Common Pleas explained, when it denied GM's renewed motion for summary judgment, that its holding in *Zwiercan II* was "limited to finding a duty to disclose known serious and life-threatening latent defects" and that "a party has a duty to disclose known material and dangerous defects, *i.e.* those defects which are *likely* to cause *significant* bodily harm." *Zwiercan v. Gen. Motors Corp.* ("*Zwiercan III*"), No. 3235 JUNE TERM 1999, 2003 WL 1848571, at *2 (Pa. Com. Pl. Mar. 18, 2003) (emphases added).  Here, there is no evidence that the oil-consumption defect in the Class Vehicles is "*likely* to cause *significant* bodily harm," *id.* (emphasis added), even though there is a possibility—albeit quite remote—that "when drivers experience [this defect] while driving, they may be forced to pull over and stop alongside a road or highway (or they may be stranded in such a location with an inoperable vehicle), which places a person in danger," *Sloan III*, 2020 WL 1955643, at *7.  Although Ms. Zwiercan—like Mr. Graziano—never suffered any life-threatening injuries, she was much more *likely* to suffer *significant* bodily harm than Mr. Graziano, given that she alleged the front seat of her vehicle was designed to collapse during rear-end collisions.  *See Zwiercan II*, 2002 WL 31053838, at *1.  Put a different way, the defect in *Zwiercan II* and *III* is much more likely to cause significant bodily harm than the oil-consumption defect at issue here.

Accordingly, the Court **GRANTS** GM's motion for summary judgment as to Counts 28 and 31 because GM had no duty to disclose the oil-consumption defect.

5.    Tennessee:  Tennessee Consumer Protection Act (TCPA) (Count 33) and Fraudulent Omission (Count 36)

GM argues that the duty to disclose under Tennessee law is limited to fiduciary relationships.  Second MSJ at 24.  Indeed, Tennessee courts have held that "liability for non-disclosure can arise only in cases where the person sought to be held responsible had a duty to

disclose the facts at issue," and that duty "arises in three circumstances: (1) '[w]here there is a previous definite fiduciary relation between the parties,' (2) '[w]here it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other,' and (3) '[w]here the contract or transaction is intrinsically fiduciary and calls for perfect good faith.'" *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 398 F. Supp. 3d 258, 270 (M.D. Tenn. 2019) (quoting *Walker v. First State Bank*, 849 S.W.2d 337, 241 (Tenn. Ct. App. 1992)). Therefore, because Tennessee Plaintiff Joshua Byrge does not allege that GM owed him a fiduciary duty, GM argues his TCPA and fraudulent omission claims fail as a matter of law under the *EPAC Technologies* rule.

Plaintiffs cite to *Odom v. Oliver* to respond that, even if GM did not have a fiduciary relationship with Mr. Byrge, "contracting parties have a duty to disclose material facts affecting the essence of a contract's subject matter" in Tennessee. 310 S.W.3d 344, 349–51 (Ten. Ct. App. 2009). This argument is unavailing because Mr. Byrge purchased his used vehicle from a Honda dealership and never had any contact—let alone a contractual relationship—with GM. *See* Docket No. 293-10 ("Byrge Dep. Tr.") at 14:24–15:4, 21:11–14. In other words, the contract between Mr. Byrge and the Honda dealer does not create a duty on the part of GM to disclose the oil-consumption defect under *Odom*.

Plaintiffs also argue that Mr. Byrge's TCPA and fraudulent concealment claims survive, even if GM had no duty to disclose the oil-consumption defect, because Tennessee courts also recognize an alternative actionable type of concealment: a "trick or contrivance." *Odom*, 310 S.W.3d at 349 (citing *Cont'l Land Co. v. Inv. Props. Co.*, No. M1998–00431–COA–R3–CV, 1999 WL 1129025, at *5–6 (Tenn. Ct. App. 1999)). In *Continental Land*, the Tennessee Court of Appeals explained that a court may find there was a "trick or contrivance" where there is evidence that the defendant "with[eld] information asked for, or [made] use of some device to mislead, thus involving act or intention." 1999 WL 1129025, at *5 (quoting *Hall v. DeSaussure*, 297 S.W.2d 81, 87 (Tenn. Ct. App. 1956)). Here, Plaintiffs submitted evidence that GM issued Technical Service Bulletins (TSBs) in August 2010 instructing dealers to tell customers that a piston cleaning would remedy the oil-consumption defect, even though GM knew that cleaning was

13

ineffective as early as February 2010. *See Sloan III*, 2020 WL 1955643, at *15–*16. These TSBs arguably constitute a "trick or contrivance" under *Odom* and *Continental Land*, because they falsely represented to customers that the oil-consumption defect was easily fixable. Weighing evidence of the TSBs in the light most favorable to Mr. Byrge, and drawing every inference in his favor, this Court concludes there is, at the very least, a genuine issue of material fact as to whether Mr. Byrge's "damages [were] caused by his reasonable reliance on" GM's suggestion that piston cleaning remedied the oil-consumption defect. *Odom*, 310 S.W.3d at 350. Summary judgment on Mr. Byrge's TCPA and fraudulent omission claims is therefore inappropriate.

Accordingly, the Court **DENIES** GM's motion for summary judgment as to Counts 33 and 36 because, even though GM was not in a fiduciary relationship with Mr. Byrge, there is a question of material fact as to whether GM engaged in a trick or contrivance to conceal the oil-consumption defect.

B.     Economic Loss Doctrine[2]

1.     California:  Fraudulent Omission (Count 5)

The Court granted summary judgment for GM on the fraudulent omission claims of the then-California class representatives. *See Sloan III*, 2020 WL 1955643, at *23–*24. Plaintiffs concede that Mr. Fernandez, the new California class representative, likewise does not allege personal injury or property damage to avoid the economic loss doctrine. *See* Second MSJ at 13; Opp'n to Second MSJ at 8 n.6.

Accordingly, the Court **GRANTS** GM's motion for summary judgment as to Count 5 because Mr. Fernandez does not allege personal injury or damage to property.

2.     Tennessee:  Fraudulent Omission (Count 36)

It is undisputed that the Mr. Byrge does not claim personal injury or property damage. 7AC ¶ 572. Therefore, GM also contends that the economic loss doctrine bars Mr. Byrge's fraudulent omission claim. *See* Second MSJ at 14.

---

[2] The Court does not address GM's argument that the economic loss doctrine bars Mr. Graziano's UTPCPL and fraudulent omission claims because it already concluded GM had no duty to disclose the oil-consumption defect under Pennsylvania law. *See supra* Part IV.A.4.

The Tennessee Supreme Court "does not have a definitive body of law on the economic loss doctrine" outside of "barring recovery for economic losses in *tort* actions." *Trinity Indus., Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W. 3d 159, 171, 173 (Tenn. Ct. App. 2001) (emphasis added). More specifically, neither that court nor the Tennessee appellate courts have decided whether the economic loss doctrine applies to claims of fraudulent omission, which are grounded in contract, not tort. *See id.* at 172 ("A contract may be negligently or fraudulently breached and the cause of action remain in contract rather than in tort." (quoting *Mid-South Milling Co. v. Loret Farms, Inc.*, 521 S.W.2d 586 (Tenn. 1975))). Therefore, Mr. Byrge's fraudulent omission is not barred by the economic loss doctrine because it is not a "tort action." *Id.* at 171.

GM only cites to *Milner v. Windward Petroleum Inc.*, where the Western District of Tennessee held that "because Windward's actions did not result in personal injury or property damage, Milner and Star Service can adequately be compensated for their economic losses through contract law." No. 06-2563, 2007 WL 9706514, at *7 (W.D. Tenn. May 31, 2007). There are two reasons the Court declines to apply *Milner*. First, the analysis in *Milner* is unpersuasive because the court did not rely on any binding Tennessee law to conclude that the economic law doctrine applies to fraud claims. For this proposition, it simply cited the general rule that plaintiffs "must 'live by their contracts rather than . . . pursue *tort* actions for purely economic losses arising out of the contracts.'" *Id.* (emphasis added) (quoting *McLean v. Bourget's Bike Works, Inc.*, No. 2003-01944, 2005 WL 2493479, at *5 (Tenn. Ct. App. May 28, 2005)). But Mr. Byrge is not bringing a tort action, he is bringing a fraudulent omission contract claim under Tennessee law. Second, the fraud at issue in *Milner* had to do with the performance of the contract—the plaintiffs alleged defendant delivered a mixture of several motor oils even though the contract required defendant to deliver pure Pennzoil motor oil. *Id.* at *4. Here, by contrast, the allegation is that GM did not mention to Mr. Byrge the existence of the oil-consumption defect *before* he purchased the vehicle, fraudulently inducing him into purchasing his vehicle. This is a key distinction because even *Milner* recognizes "that fraud claims essentially alleging breach of contract are barred by the economic loss doctrine, whereas fraud claims that are independent of the performance of the contract, *such as fraud in the inducement*, are not barred."

15

*Id.* at \*6 (emphasis added). Therefore, even if *Milner* stood for the proposition that the economic loss doctrine applies to breach-like fraud claims, it does not support a conclusion that it applies to fraudulent omission claims, which are more akin to fraudulent inducement.

Accordingly, the Court **DENIES** GM's motion for summary judgment as to Count 36 because GM has not established as a matter of law that the economic loss doctrine applies to fraudulent omission claims in Tennessee.

C. <u>Unjust Enrichment Claims Barred By Express Contract</u>

    1. <u>California: Unjust Enrichment (Count 6);</u>

        <u>Arkansas: Unjust Enrichment (Count 12);</u>

        <u>Idaho: Unjust Enrichment (Count 17);</u>

        <u>Massachusetts: Unjust Enrichment (Count 22);</u>

        <u>Pennsylvania: Unjust Enrichment (Count 32);</u>

        <u>Tennessee: Unjust Enrichment (Count 37)</u>

This Court already granted GM summary judgment on Plaintiffs' unjust enrichment claims in the bellwether states because "[n]umerous cases indicate that the mere existence of a contract that defines the parties' rights bars a claim for unjust enrichment." *Sloan III*, 2020 WL 1955643, at \*27. Plaintiffs argue that the same is not true for Plaintiffs' unjust enrichment claims under Arkansas, Idaho, Massachusetts, and Tennessee law.[3] *See* Second MSJ at 15–16. Plaintiffs' arguments are not persuasive.

Under Arkansas law, the general rule is that "the doctrine of unjust enrichment does not apply when there is a valid, legal, and binding contract." *Varner v. Peterson Farms*, 371 F.3d 1011, 1018 (8th Cir. 2004) (citing *Hall Contracting Corp. v. Entergy Servs.*, Inc., 309 F.3d 468, 475 (8th Cir. 2002) and *Lowell Perkins Agency, Inc. v. Jacobs*, 469 S.W.2d 89, 92–93 (Ark. 1971)). As Plaintiffs point out, however, the Arkansas Supreme Court has noted that "the mere fact that there is a contract between the parties does not prevent the grant of restitution in an

---

[3] Plaintiffs concede that Mr. Fernandez's and Mr. Graziano's unjust enrichment claims under California and Pennsylvania law, respectively, are barred by the parties' contract. *See* Opp'n to Second MSJ at 11 & n.9.

appropriate case," such as where "there has been a recission at law, . . . a contract has been discharged by impossibility or frustration of purposes, . . . or where the parties to a contract find they made some fundamental mistake about something important in their contract." *Campbell v. Asbury Auto., Inc.*, 381 S.W.3d 21, 36 (Ark. 2011) (quoting *Friends of Children, Inc. v. Marcus*, 876 S.W.2d 603, 605 (Ark. 1994)). These exceptions, however, do not apply to the instant case because the contract between Mr. Goodwin and GM has not been rescinded, discharged, or found to be the result of a fundamental mistake. Mr. Goodwin's unjust enrichment claim is therefore barred by his express contract with GM.

Similarly, under Tennessee law, "courts will impose a contractual obligation under an unjust enrichment theory when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation." *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998). Here, there is no dispute that there is a valid and enforceable contract between GM and Mr. Byrge. Mr. Byrge's unjust enrichment claim is therefore barred by his express contract with GM.

By contrast, under Idaho and Massachusetts law, unjust enrichment claims are barred only if the parties' contract addresses the same subject matter of the plaintiff's unjust enrichment claim. *See Thomas v. Thomas*, 249 P.3d 829, 836 (Idaho 2011) ("Recovery cannot be had for unjust enrichment where there is an express contract *covering the same subject matter*." (emphasis added)); *Boswell v. Zephyr Lines, Inc.*, 606 N.E.2d 1336, 1342 (Mass. 1993) ("Recovery in quantum meruit presupposes that no valid contract *covers the subject matter of a dispute*." (emphasis added)). Plaintiffs argue that their contract with GM does not cover the same subject matter of their dispute with GM because this Court previously held that the contract's express limited warranty does not cover the alleged oil-consumption defect at issue. *Sloan I*, 2017 WL 3283998, at *8–*9. Indeed, this Court explained in *Sloan III* that "the key question is whether the express contract *must cover the subject matter of the unjust enrichment claim*, or whether the mere existence of a contract defining the parties' relationship and rights is sufficient to bar a claim of unjust enrichment." 2020 WL 1955643, at *27 (emphasis added). Therefore, under this Court's

17

prior ruling, Mr. Del Valle's and Mr. Smith's unjust enrichment claims are not barred by the existence of their contract with GM because that contract does not cover the oil-consumption defect, which is the basis of their unjust enrichment claim.

Even if Mr. Del Valle's and Mr. Smith's unjust enrichments claims are not barred by their contract with GM, however, they are barred because Plaintiffs have adequate legal remedies in their consumer protection, fraudulent omission, and warranty claims. *See Mannos v. Moss*, 155 P.3d 1166, 1173 (Idaho 2007) ("[U]njust enrichment claim is unviable because [the plaintiff] has the ability to pursue other legal remedies, including a claim for fraud."); *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005) ("An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law."). Plaintiffs have not presented persuasive authority to the contrary.

Accordingly, the Court **GRANTS** GM's motion for summary judgment as to Counts 6, 12, 17, 22, 32, and 37 because unjust enrichment claims are barred by either the parties' express contract or the Plaintiffs' ability to pursue other adequate legal remedies.

D.     Implied Warranty Claims

    1.     No Privity

GM first challenges the validity of the Idaho and Tennessee Plaintiffs' implied warranty claims on the grounds that they lack privity with GM. The parties do not dispute that Messrs. Del Valle and Byrge are not in privity with GM because they purchased their vehicles from dealerships that were not associated with GM. *See* Del Valle Dep. Tr. at 17:14–16, 38:9–13; Byrge Dep. Tr. at 14:24–15:6, 21:11–14; 7AC ¶ 56; Second MSJ at 20, Opp'n to Second MSJ at 19–20. Plaintiffs instead argue that, as a matter of law, implied warranty claims in Idaho and Tennessee do not require plaintiffs to be in privity with the defendant.

        a.     Idaho:  Implied Warranty (Count 15)

In Idaho, "[p]rivity of contract is required in a contract action to recover economic loss for breach of implied warranty." *Am. West Enters., Inc. v. CNH, LLC*, 316 P.3d 662, 668 (Idaho 2013); *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 544 P.2d 306, 313 (Idaho 1975) ("This court concludes that the district court did not err in granting summary judgment to

Cessna for Salmon Rivers' failure to establish privity of contract between it and Cessna.").

Therefore, under this rule, Mr. Del Valle's implied warranty claim against GM fails as a matter of law because he is not in privity with GM.

In *American West Enterprises*, however, the Idaho Supreme Court noted that subsequent opinions of Idaho appellate courts suggested, without outright deciding, that the privity rule might be somewhat "relaxed" where its application "would have the effect of unfairly prejudicing the plaintiff." 316 P.3d at 668. In 2018, the Idaho Supreme Court finally modified the privity rule, holding that "privity of contract is required to recover economic loss flowing from a breach of implied warranty '*unless the application of this rule would have the effect of unfairly prejudicing the plaintiff.*'" *Petrus Fam. Tr. Dated May 1, 1991 v. Kirk*, 415 P.3d 358, 367 (Idaho 2018) (emphasis added) (quoting *Am. West Enters.*, 316 P.3d at 668). Plaintiffs thus argue that Mr. Del Valle need not be in privity with GM to bring his implied warranty claim because otherwise he would be unfairly prejudiced.

The problem with Plaintiffs' argument is that the *Petrus* case involved the implied warranty of *habitability*, not the implied warranty of *merchantability*. In fact, the *Petrus* Court's analysis relied heavily on the notion that "latent defects 'will be just as catastrophic on a subsequent [home] owner as on an original buyer and the builder will be just as unable to justify improper or substandard work.'" *Id.* (quoting *Barnes v. Mac Brown & Co., Inc.*, 342 N.E.2d 619, 621 (Ind. 1976)). In other words, the *Petrus* Court's relaxation of the privity rule for implied warranty claims appears to be limited to defective real property, not defective goods. Plaintiffs do not cite any cases to suggest otherwise. Moreover, the facts of the instant case are akin to those in *American West Enterprises*, where the Idaho Supreme Court affirmed the grant of summary judgment for an engine manufacturer on plaintiff's implied warranty claim for lack of privity. *See* 316 P.3d at 662. In doing so, the *American West Enterprises* court noted that "the mere inability to be fully compensated for losses is not sufficient to relax the *Salmon Rivers* [privity] rule." *Id.* at 668. Following *American West Enterprises*, Mr. Del Valle's implied warranty claim fails as a matter of law because he is not in privity with GM, and the only prejudice he would suffer if the court enforces this privity requirement is the inability to recover for the diminished value of his

vehicle.

Accordingly, the Court **GRANTS** GM's motion for summary judgment as to Count 15 because Mr. Del Valle is not in privity with GM.

       b.   <u>Tennessee:  Implied Warranty (Count 35)</u>

"Tennessee law does not allow recovery of economic losses under a breach of warranty theory absent privity." *Americoach Tours, Inc. v. Detroit Diesel Corp.*, No. 04-2016 B/V, 2005 WL 2335369, at *6 (W.D. Tenn. Sept. 23, 2005) (quoting *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 473 (Tenn. Ct. App. 2003)).  Indeed, it is settled law in Tennessee that privity is required to bring an action for breach of implied warranty unless the plaintiff is alleging that an unreasonably dangerous product has caused them property damage or personal injury.  *See Leach v. Wiles*, 429 S.W.2d 823 (Tenn. App. 1968) ("[I]n the absence of contractual privity, liability can be imposed upon the manufacturer for breach of implied warranty when 'one sells any product in a defective condition unreasonably dangerous to the user or to his property'" (quoting 2 Restatement (Second) Torts, sec. 402A (1965))); *Americoach,* 2005 WL 2335369, at *6 ("[T]he quoted sentence in *Leach* states that privity is not required to bring an action for breach of implied warranty when an unreasonably dangerous product has caused property damage or personal injury.").  Significantly, the Tennessee legislature codified the personal injury or property damage requirement in 1972, four years after *Leach* was decided, in section 29-34-104 of the Tennessee Code, which states:

> In all causes of action *for personal injury or property damage* brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain such action.

Tenn. Code Ann. § 29-34-104 (emphasis added).  Therefore, under section 29-34-104 and the common law that precedes it, Mr. Byrge's lack of privity with GM is fatal to his implied warranty claim because he is not alleging property damage or personal injury as a result of the oil-consumption defect.

Plaintiffs unsuccessfully argue that section 29-34-104 eliminated the privity requirement for *all* warranty claims under the UCC.  Opp'n to Second MSJ at 19.  All the cases Plaintiffs cite,

however, involved property damage or personal injury.  *See, e.g.*, *Com. Truck & Trailer Sales, Inc. v. McCampbell*, 580 S.W.2d 765, 767 (Tenn. 1979) ("The complaint sought damages for injuries and the subsequent death of Charles Miller from an accident which occurred in February, 1974."); *Sullivan v. Panther Petroleum, LLC*, No. 119CV01259STAJAY, 2020 WL 1550230, at *1 (W.D. Tenn. Mar. 31, 2020) ("Plaintiff . . . seeks to recover . . . the cost to repair the damage caused to the cotton picker machinery by the defective grease, and damages related to the harvest of Plaintiff's 2019 cotton crop.").  These cases therefore support, rather than refute, that Tennessee law requires plaintiff to be in privity with the defendant to assert warranty claims *unless* they are raising a "cause[] of action for personal injury or property damage." Tenn. Code Ann. § 29-34-104.  Put differently, the privity requirement is loosened where there *has been* personal injury or property damage, not, as here, where there is only a *risk* of such injury.

Accordingly, the Court **GRANTS** GM's motion for summary judgment as to Count 35 because Mr. Byrge is not in privity with GM.

### 2. No Pre-Suit Notice[4]

#### a. Pennsylvania: Implied Warranty (Count 30)

GM also contends that Mr. Graziano's failure to provide GM pre-suit notice is fatal to his implied warranty claims. Second MSJ at 20–21.  It is undisputed that Pennsylvania law requires some form of notice for breach of contract claims involving goods.  *See* 13 Pa. Cons. Stat. § 2607(c)(1) ("Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.").

Plaintiffs first argue that Mr. Graziano notified GM of his implied warranty claims through filing of this suit.  Opp'n to Second MSJ at 20–21.  In Pennsylvania "[t]he filing of a complaint has been held to satisfy the notice requirement for a breach of warranty claim." *Precision Towers, Inc. v. Nat-Com, Inc.*, No. 2143 APRIL TERM 2002, 2002 WL 31247992, at *5 (Pa. Com. Pl.

---

[4] The Court does not address GM's argument that Mr. Del Valle failed to provide pre-suit notice under Idaho law because it grants summary judgment on his implied warranty claim for lack of privity with GM.  *See supra* Part IV.D.1.a.

Sept. 23, 2002) (collecting cases); *see also Banh v. Am. Honda Motor Co.*, Inc., No. 2:19-CV-05984-RGK-AS, 2020 WL 4390371, at *7 (C.D. Cal. July 28, 2020) ("For example, Pennsylvania provides that the filing of a complaint is adequate notice." (citing *Precision Towers*, 2002 WL 31247992, at *5)). GM does not cite any Pennsylvania appellate court overruling *Precision Towers*. Mr. Graziano's filing of the complaint is therefore sufficient under Pennsylvania law to notify GM of his implied warranty claim.

Accordingly, the Court **DENIES** GM's motion for summary judgment as to Count 30 because GM has not established as a matter of law that Mr. Graziano did not properly notify GM of his implied warranty claims.

### 3. No Evidence of Unmerchantability[5]

GM finally challenges the validity of Plaintiffs claims for breach of the implied warranty of merchantability on the grounds that there is no evidence that Plaintiffs' vehicles are unmerchantable.

#### a. California: Implied Warranty (Count 4)

GM recycles its argument that Mr. Fernandez's implied warranty claim fails because he drove his car for years and tens of thousands of miles before experiencing any problems related to the oil-consumption defect. Second MSJ at 16–17. This Court squarely rejected this argument in its first summary judgment order because "safety-related defects which may be slow to emerge may nonetheless furnish a basis for a breach of implied warranty claim" under California law. *Sloan III*, 2020 WL 1955643, at *28 (collecting cases). GM does not offer any new evidence or cite to any legal authority to disturb this prior ruling. Thus, the fact that Mr. Fernandez did not experience any issue related to excessive oil consumption until five years after purchasing his vehicle does not foreclose his implied warranty claim as a matter of law.

Accordingly, the Court **DENIES** GM's motion for summary judgment as to Count 4.

---

[5] The Court does not address GM's argument that Messrs. Del Valle and Byrge failed to provide evidence of unmerchantability because it grants summary judgment on their implied warranty claims for lack of privity with GM. *See supra* Part IV.D.1.

### b. Massachusetts: Implied Warranty (Count 20)

In Massachusetts, "[r]ecovery for breach of an implied warranty of merchantability in the sale of a vehicle requires proof that it was not fit for the ordinary purposes for which an automobile is generally used and that *the defect existed at the time the vehicle was sold or leased*." *Ron Bouchard's Auto Serv., Inc. v. Donna M. Godfrey Tr.*, 2005 Mass. App. Div. 125, 128 (Mass. App. Ct. 2005) (emphasis added) (citing *Walsh v. Atamian Motors, Inc.*, 406 N.E.2d 733 (Mass. App. Ct. 1980) ("While the plaintiffs were not required to exclude every other possible cause for their Audi's mechanical problems, they were required to show that the probable cause was attributable to a defect in the Audi *at the time of purchase*." (emphasis added))). Importantly, the mere later appearance of a defect is not sufficient, on its own, to prove that the vehicle was defective at the time of sale. *See id.* ("[P]laintiffs' failure to adduce any evidence, other than the mere occurrence of the automotive problems, to show that their automobile was defective when purchased is fatal."); *see also Kourouvacilis v. Gen. Motors Corp.*, 575 N.E.2d 734 (Mass. 1991) ("[T]he plaintiff would be unable to prevail against . . . defendant at trial without proving that the alleged defect . . . was present when that defendant last had possession of the vehicle.").

GM argues that Mr. Smith's breach of implied warranty claim fails because he drove his car for more than six years and 110,000 miles without experiencing any problems related to the oil-consumption defect. Second MSJ at 18. First, Mr. Smith testified that he began noticing that his vehicle was consuming excessive oil when the vehicle had around 85,000 miles, not 110,000 miles. *See* Docket 293-6 ("Smith Dep. Tr.") at 45:7–46:3. Second, and most importantly, unlike in *Walsh* and *Kourouvacilis*, Mr. Smith is not alleging that "the mere occurrence of the automotive problems" he experienced as a result of the oil-consumption defect prove that the vehicle was defective at the time of sale. He also relies on Plaintiffs' expert evidence, which, as discussed in this Court's first summary judgment order, supports a conclusion that the alleged oil-consumption defect existed at the time Mr. Smith's vehicle was manufactured. *Sloan III*, 2020 WL 1955643, at *7–*13. Viewing all of this expert evidence in the light most favorable to Mr. Smith, and drawing all justifiable inferences in his favor, the Court concludes that GM has failed to establish as a matter of law that Mr. Smith's vehicle was not defective at the time of sale.

Accordingly, the Court **DENIES** GM's motion for summary judgment as to Count 20 because there is a genuine issue of material fact as to whether Mr. Smith's vehicle was defective at the time of sale.

c.  Pennsylvania: Implied Warranty (Count 30)

GM relies on *Hornberger v. Gen. Motors Corp.* for the proposition that, under Pennsylvania law, "where a car can provide safe, reliable transportation[,] it is generally considered merchantable." 929 F. Supp. 884, 888 (E.D. Pa. 1996) (quoting *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989)). "To be merchantable, goods need only be of reasonable quality within expected variations and 'fit for the ordinary purposes for which they are used.'" *Id.* (quoting 13 Pa. Cons. Stat. § 2314). Therefore, according to GM, Mr. Graziano's vehicle was merchantable because he drove it for 6,000 miles before noticing that the engine was overconsuming oil, and because he does not allege that his engine ever stalled or failed. Second MSJ at 18.

GM misrepresents the holding of *Hornberger*, which in fact supports denying GM summary judgment on Mr. Graziano's implied warranty claim because an allegation "that [Mr. Graziano's] car was defectively manufactured or substandard in its construction or performance, precludes this Court from granting GM's Motion for Summary Judgment on this issue." *Id.* That is why courts inside and outside of the Ninth Circuit have relied on *Hornberger* to reject arguments that vehicles were merchantable as a matter of law where, as here, there are allegations of a safety design defect, even if the cars operated for thousands of miles without stalling or failing. *See e.g., Hurley v. BMW of N. Am., LLC*, No. CV 18-5320, 2020 WL 1624861, at *7 (E.D. Pa. Apr. 2, 2020) ("[V]ehicles subject to engine failure as a result of excessive oil consumption 'cannot be said to be merchantable'") (quoting *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1339 (C.D. Cal. 2013)); *Roe v. Ford Motor Co.*, No. 218CV12528LJMAPP, 2019 WL 3564589, at *12 (E.D. Mich. Aug. 6, 2019) ("Sure, cars are supposed to get people from A to B; but they, like other durable goods, are expected to work for a good while . . . So when a car buyer drops $30,000 or so on a 2011 Ford Edge, it might be reasonable for her to expect it to run 75,000 miles (to pick a number) without needing a critical

engine part repaired."); *Cabebe v. Nissan of N. Am., Inc.*, No. 18-CV-00144-WHO, 2018 WL 5617732, at *11 (N.D. Cal. Oct. 26, 2018) (refusing to dismiss plaintiff's claims where she allegedly experienced the transmission defect shortly after purchasing the vehicle, even though the vehicle operated for tens of thousands of miles thereafter). Like the plaintiffs in *Hurley*, *Roe*, and *Cabebe*, Mr. Graziano also alleges that the oil-consumption defect existed at the time the vehicle was manufactured and that it caused his vehicle to suffer from sluggish performance due to oil-consumption-induced spark plug fouling. *See* Docket No. 293-8 ("Graziano Dep. Tr.") at 49:21–51:12, 55:3–60:12. Therefore, summary judgment on his implied warranty claim is inappropriate.

Accordingly, the Court **DENIES** GM's motion for summary judgment as to Count 30 because there is a genuine issue of material fact as to whether Mr. Graziano's vehicle was merchantable.

E.    Statute of Limitations

1.    Pennsylvania:  Implied Warranty (Count 30)[6]

The statute of limitations for an implied warranty claim in Pennsylvania is four years. *See* 13 Pa. Cons. Stat. 2725. GM contends that Mr. Graziano's implied warranty claim is time barred, *see* Second MSJ at 14–15, even though he first noticed that his Silverado was over-consuming oil in 2012, 7AC ¶¶ 71–73, because he has not alleged "an independent affirmative act of concealment" which caused him "to relax his vigilance or deviate from his right of inquiry through fraud or concealment," *Arndt v. Johnson & Johnson*, 67 F. Supp. 3d 673, 678 (E.D. Pa. 2014) (quoting *Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 278 (Pa. 2005)).

Plaintiffs respond that Mr. Graziano's implied warranty claim is timely for two reasons. *See* Opp'n to Second MSJ at 10. First, Plaintiffs contend that Mr. Graziano did not discover the excessive oil consumption caused by the alleged defect until approximately 2016, shortly before he joined this action. *Id.* In Pennsylvania, the discovery rule "tolls the accrual of the statute of

---

[6] The Court does not address GM's arguments that Mr. Graziano's UTPCPL, fraudulent omission, and unjust enrichment claims are time barred because it already granted summary judgment on those claims. *See supra* Parts IV.A.4 and IV.C.1.

limitations when the plaintiff is unable, 'despite the exercise of due diligence, to know of the injury or its cause.'" *Soutner v. Covidien, LP*, No. 1:17-CV-02178, 2019 WL 3801438, at *4 (M.D. Pa. Aug. 13, 2019) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)). Under the discovery rule, the statutory period does not begin to run until "the plaintiff knows, or reasonably should know, (1) that he has been injured and (2) that his injury has been caused by another party's conduct." *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3d Cir. 2003) (quoting *Carthart v. Keene Indus. Insulation*, 471 A.2d 493, 500 (Pa. 1984)). This is sometimes referred to as "inquiry notice." *See Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011). The party seeking application of the discovery rule "bears the burden of proving that reasonable diligence was exercised." *See Nicolaou v. Martin*, 195 A.3d 880, 893 (Pa. 2018). "To demonstrate reasonable diligence, a plaintiff must 'establish[ ] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protections of their own interests and the interests of others.'" *Id.* (quoting *Cochran v. GAF Corp.*, 666 A.2d 245, 250 (Pa. 1995)).

Here, Mr. Graziano satisfied the "inquiry notice" requirement because, while he noticed excessive oil consumption shortly after he purchased the vehicle in 2011, he was told by a GM service technician that the oil consumption was "normal for this type of engine" and that there were no service bulletins on the issue. Graziano Dep. Tr. at 50:20–51:12. Mr. Graziano's claims are therefore timely under Pennsylvania's discovery rule because, despite reasonable diligence, he was unable to discover the alleged oil consumption was caused by a design defect until 2016, shortly before he joined this action.

Second, Plaintiffs also argue that GM's fraudulent concealment tolls the limitations period for Mr. Graziano's claims. Opp'n to Second MSJ at 10. Under Pennsylvania law, "the defendant may not invoke the statute of limitations if through fraud or concealment, he causes plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Soutner*, 2019 WL 3801438, at *5 (quoting *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005)). GM points out that, to assert the doctrine of fraudulent concealment in Pennsylvania, "the defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied." *Id.*

(quoting *McLaughlin v. Bayer Essure, Inc.*, No. 14-7316, 2019 WL 1382710, at *8 (E.D. Pa. Mar. 27, 2019)). But this Court has already held that "Plaintiffs have—at this stage—provided sufficient evidence to demonstrate that GM concealed information about the alleged oil defect" because it issued Technical Service Bulletins (TSBs) that instructed dealers to offer repairs purported to fix the problem that it knew would not cure the oil-consumption defect. *Sloan III*, 2020 WL 1955643, at *15–*16. GM offers no new evidence that would compel the Court to revisit this holding. Therefore, the statute of limitations for Mr. Graziano's claims is tolled until he discovered the oil-consumption defect in 2016.

Accordingly, the Court **DENIES** GM's motion for summary judgment as to Count 30 because that claim is timely.

F.    Individual MMWA Claims (1)

Because Plaintiffs' individual[7] MMWA claims rely on their underlying state-law warranty claims, the parties' MMWA arguments focus exclusively on whether the Court should dispose of those state-law warranty claims. *See* Second MSJ at 21; Opp'n to Second MSJ at 22; Docket No. 308 ("Reply in Supp. of Second MSJ") at 11. In other words, the MMWA claims survive or fail with the Court's decisions regarding the corresponding implied warranty claims, discussed above.

Accordingly, the Court **GRANTS** summary judgment to GM on the individual MMWA claims of the Idaho and Tennessee Plaintiffs; and **DENIES** summary judgment to GM on the individual MMWA claims of the California, Massachusetts, and Pennsylvania Plaintiffs.

G.    Conclusion as to Summary Judgment

In summary, the Court **GRANTS** summary judgment to GM on all but the following nine state-law claims:

- California: (1) implied warranty claim (Count 4);
- Idaho: (2) ICPA claim (Count 13), and (3) fraudulent omission claim (Count 16);
- Massachusetts: (4) RBPCPA claim (Count 18), (5) implied warranty claim (Count 20), and

---

[7] The Court already dismissed Plaintiffs' MMWA class allegations because the statute requires one hundred (100) named plaintiffs to bring an MMWA action as a class action. *See* Docket No. 278 at 8–9. The Court allowed the named plaintiffs to bring individual MMWA claims, at issue here. *See id.*

27

(6) fraudulent omission claim (Count 21);

- Pennsylvania: (7) implied warranty claim (Count 30); and

- Tennessee: (8) TCPA claim (Count 33), and (9) fraudulent omission claim (Count 36).

The Court also **GRANTS** summary judgment to GM on the individual MMWA claims of the Idaho and Tennessee Plaintiffs; and **DENIES** summary judgment to GM on the individual MMWA claims of the California, Massachusetts, and Pennsylvania Plaintiffs.

## V.      CLASS CERTIFICATION

Plaintiffs seek to certify the following classes as part of Phase II of their class certification process:

> **1. Arkansas Class.** All current owners or lessees of a Class Vehicle that was purchased or leased in the State of Arkansas. The Arkansas Class seeks class certification of claims for: (a) violation of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, et seq; (b) breach of implied warranty of merchantability; (c) fraudulent omission; and (d) unjust enrichment. Plaintiffs move for the appointment of Larry Goodwin as the class representative for the Arkansas Class.

> **2. Idaho Class.** All current owners or lessees of a Class Vehicle that was purchased or leased in the State of Idaho. The Idaho Class seeks class certification of claims for: (a) violation of the Idaho Consumer Protection Act, Idaho Code Ann. §§ 48-601 et seq.; (b) breach of implied of merchantability; (c) fraudulent omission; and (d) unjust enrichment. Plaintiffs move for the appointment of Gabriel Del Valle as the class representative for the Idaho Class.

> **3. Pennsylvania Class.** All current owners or lessees of a Class Vehicle that was purchased or leased in the State of Pennsylvania. The Pennsylvania Class seeks class certification of claims for: (a) violation of the Pennsylvania Unfair Trade Practices & Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§ 201–1 et seq; (b) breach of implied warranty of merchantability; (c) fraudulent omission; and (d) unjust enrichment. Plaintiffs move for the appointment of John Graziano as the class representative for the Pennsylvania Class.

> **4. Tennessee Class.** All current owners or lessees of a Class Vehicle that was purchased or leased in the State of Tennessee. The Tennessee Class seeks class certification of claims for: (a) breach of implied warranty of merchantability; (b) fraudulent omission; and (c) unjust enrichment. Plaintiffs move for the appointment of Joshua Byrge as the class representative for the Tennessee Class.

Second Class Cert. Mot. at 1. However, the Court granted summary judgment to GM on all but four of the claims listed in these proposed classes, including all the claims in the proposed

28

1    Arkansas Class.  *See* Part IV.[8]  Therefore, the Court will only consider whether it is appropriate to

2    certify a class as to the remaining four claims that survive summary judgment.

3    A.    <u>Rule 23(a) Requirements</u>

4          1.    <u>Numerosity</u>

5          A plaintiff satisfies the numerosity requirement if "the class is so large that joinder of all

6    members is impracticable."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)

7    (quoting Fed. R. Civ. P. 23(a)(1)).  While no court has set the precise number of class members

8    that are needed to satisfy the numerosity requirement, there is general recognition that Rule

9    23(a)(1) is at least satisfied when the proposed class contains one hundred or more members.  *See,*

10   *e.g.*, *Wang v. Chinese Daily News*, 231 F.R.D. 602, 607 (C.D. Cal. 2005) (recognizing there is a

11   presumption of numerosity where the proposed class contains one hundred or more members),

12   *reversed on other grounds by* 737 F.3d 538 (9th Cir.  2013); *Ikonen v. Hartz Mountain Corp.*, 122

13   F.R.D. 258, 262 (S.D.  Cal. 1998) (finding a proposed class of forty members sufficient to satisfy

14   numerosity).

15         Plaintiffs contend that GM sold thousands of Class Vehicles with the LC9 engine in each

16   of the relevant states: 6,001 in Idaho, 45,111 in Pennsylvania, and 14,012 in Tennessee.  *See*

17   Docket No. 287–1 (Decl. of H. Clay Barnett, III in Supp. of Pls.' Second Mot. for Class Cert.

18   ("Barnett Class Cert. Decl."), Ex. 29; *id.*, 30; *id.*, Ex. 31.  Even if these numbers are an

19   overestimation, there is little doubt that at least one hundred of the thousands of individuals who

20   purchased the Class Vehicles with LC9 engines in these states will likely meet the class definition

21   here.

22         The numerosity requirement is therefore satisfied.

23         2.    <u>Commonality</u>

24         For Plaintiffs to maintain this class action, there must be "questions of law or fact common

25   to the class."  Fed. R. Civ. Proc. 23(a)(1).  In *Wal-Mart*, the Supreme Court recognized that

26   "[w]hat matters to class certification . . . is not the raising of common 'questions' . . . but, rather

27

28   ---
     [8] The Court previously dismissed Mr. Goodwin's implied warranty claim (Arkansas, Count 10) in
     *Sloan II*.  *See* 287 F. Supp. 3d at 883.

29

the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." 564 U.S. at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* Nonetheless, the Court also recognized that "even a single common question will do." *Id.* at 359 (quoting *post*, at 368 (Ginsburg, J., dissenting)). "That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke*." *Id.* at 350 (emphasis added).

Plaintiffs contend that the five remaining class claims share common questions of fact and law because all the Class Vehicles suffer from the defective piston rings that caused the oil-consumption defect. Second Class Cert. Mot. at 10. GM raises several challenges to Plaintiffs' assertion of commonality; each addressed in turn.

a.     Common Evidence of Standing

GM cites the Ninth Circuit's recent decision in *Ramirez v. Transunion* LLC, 951 F.3d 1008 (9th Cir. 2020), *cert. granted in part*, No. 20-297, 2020 WL 7366280 (U.S. Dec. 16, 2020),[9] to argue that Plaintiffs' claims cannot be certified because they cannot establish standing with common evidence at the class certification stage. *See* Docket No. 299 ("Opp'n to Second Class Cert. Mot.") at 10–11. This argument is completely unavailing because *Ramirez* only applies *after* class certification and trial, when it comes time to award damages to the individual class members. Indeed, *Ramirez* held that "each class member of a class certified under Rule 23 must satisfy the bare minimum Article III standing *at the final stage of a class action* in order to recover monetary damages in federal court." *Id.* at 1023 (emphasis added); *see also id.* at 1017 ("[W]e hold that every member of a class certified under Rule 23 must satisfy the basic requirements of Article III standing *at the final stage of a money damages suit when class members are to be awarded individual monetary damages*." (emphasis added)). In fact, at the outset of the *Ramirez* opinion,

---

[9] The Supreme Court granted certiorari and heard oral arguments on this case on March 30, 2021. *See TransUnion LLC v. Ramirez*, No. 20-297 (U.S. Filed Sept. 2, 2020).

the court clearly states that "[its] holding does not alter the showing required *at the class certification stage* or other early stages of a case, and it does not apply to cases involving only injunctive relief." *Id.* at 1017 n.1 (emphasis added). Therefore, because *Ramirez* is completely inapplicable at the class certification stage, Plaintiffs are only required to show that the named representative plaintiffs have standing to sue. *Id.* at 1023 ("[O]nly the representative plaintiff need allege standing at the motion to dismiss and class certification stages.").

Admittedly, *Ramirez* did counsel that "district courts and parties should keep in mind that they will need a mechanism for identifying class members who lack standing at the damages phase." *Id.* at 1023 n.6. GM therefore argues, albeit prematurely, that Plaintiffs provide no mechanism for proving at trial that all the putative class members have suffered injury—in the form of excessive oil consumption—from the defective pistons rings. But Plaintiffs allege that the defective piston rings—which are allegedly present in *every* Class Vehicle—diminish the value of the Class Vehicles, regardless of whether they actually cause excessive oil consumption. FAC ¶¶ 117, 218, 240, 243, 244, 258, 259, 300, 351, 398, 488, 542, 592. This Court already held that this diminution in value "itself is 'injury in fact' under Article III." *Sloan I*, 2017 WL 3283998, at *4. In other words, "Plaintiffs' claims of overpayment for a defective product due to GM's fraudulent omissions constitute an injury in fact." *Id.* Plaintiffs have therefore already demonstrated— assuming the case reaches the damages stage—that each of the putative class members who purchased a Class Vehicle has standing to receive damages because the alleged defect caused them to overpay for their vehicles.

                b.    <u>Common Evidence of a Safety Defect</u>

GM recycles, almost word-for-word, the argument from its opposition to Plaintiffs' motion to certify the bellwether classes, that individual issues will dominate because GM made two modifications to the Gen IV 5.3L engine before 2011: it (1) introduced a redesigned rock cover on the defective pistons on February 10, 2011; and (2) added an umbrella shield to the AFM oil pressure relief valve in October 2010. *Compare*, Opp'n to Second Class Cert. Mot. at 12–13, *with* Docket No. 190 ("Opp'n to First Class Cert. Mot.") at 17–18. This argument is ineffective because this Court already limited the class to vehicles that were manufactured *after* the

introduction of the redesigned rocker cover on February 10, 2011, which thereby includes only vehicles that were manufactured after the addition of the umbrella shield in October 2010. *See Sloan III*, 2020 WL 1955643, at *41–43. That is why Plaintiffs are only seeking certification of vehicles with LC9 engines manufactured on or after February 10, 2011. FAC ¶ 1. Therefore, GM's argument regarding the lack of common evidence of a defect in pre-2011 vehicles is irrelevant.

c.     Common Evidence of Reliance

GM also asserts that Plaintiffs' fraud and statutory consumer-protection claims are not certifiable because there is no common evidence to prove reliance, which is a necessary element of those claims. Opp'n to Second Class Cert. Mot. at 13–16. It should be noted that the Court denied class certification of similar claims for the Plaintiffs in the bellwether states. *See Sloan III*, 2020 WL 1955643, at *43–*46. Whether reliance is required informs class certification of the fraudulent omission claims for the Idaho[10] and Tennessee Plaintiffs. This order will address the certifiability of each of those claims in turn.

i.     Idaho: Fraudulent Omission (Count 16)

The Supreme Court of Idaho has held that common law fraud requires a showing of "reliance by the hearer" and "justifiable reliance." *King v. Lang*, 42 P.3d 698, 704 (Idaho 2002). Plaintiffs do not offer any authority for the proposition that reliance may be presumed for purposes of fraudulent concealment under Idaho law. Therefore, whether the individual Idaho class members were justified in relying on GM's omission regarding the oil-consumption defect is a factual question that will depend on the individual circumstances of each individual Idaho Plaintiff. Hence, this claim is not suitable for class-wide adjudication.

ii.     Tennessee: Fraudulent Omission (Count 36)[11]

In Tennessee, "*reasonable* reliance is an element of fraudulent misrepresentation/

---

[10] Defendants concede that the Mr. Del Valle need not show reliance to bring a claim under the ICPA.

[11] Plaintiff Byrge has not sought certification of his TCPA claim. *See* Opp'n to Second MSJ at 25, n.26.

omission." *Boynton v. Headwaters, Inc.*, 737 F. Supp. 2d 925, 931 (W.D. Tenn. 2010) (citing *Homestead Grp., LLC v. Bank of Tenn.*, 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009)). Whether a person "reasonably relied" on another party's omission is a highly factual determination under Tennessee law, requiring the trier of fact to consider factors such as "(1) the party's sophistication; (2) whether there are longstanding business or personal relationships between the parties; (3) the relative availability of the information; (4) whether a fiduciary relationship exists between the parties; (5) whether there was concealment of the fraud; (6) whether the party had an opportunity to discover the fraud; (7) which party initiated the transaction; and (8) the specificity of the statements." *Id.* (citing *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996)). Mr. Byrge's fraudulent omission claim is not suitable for class-wide adjudication because the trier of fact has to conduct a highly factual and individualized inquiry as to whether each of the putative Tennessee class members reasonably relied on GM's omissions regarding the oil-consumption defect. For example, although GM issued TSBs falsely stating that the oil-consumption defect could be fixed with a piston cleaning in August 2010, six months before the class period begins on February 10, 2011, it is unclear whether the dealers informed each individual plaintiff of the TSB's contents. Again, Plaintiffs have not established the basis for any class-wide presumption of reliance under Tennessee law.

### d. Common Evidence of Merchantability

This Court already found that Plaintiffs implied warranty claims arising from the oil-consumption defect could be resolved with common evidence in the bellwether states (California, North Carolina, and Texas). *See Sloan III*, 2020 WL 1955643, at *46–*47. GM argues that a different conclusion is warranted under Pennsylvania law because that state requires Plaintiffs to prove that their vehicles were not merchantable or fit for their ordinary use at the time they left GM's control. Opp'n to Second Class Cert. Mot. at 17–19.

### i. Pennsylvania: Implied Warranty (Count 30)

GM challenges the certification of Mr. Graziano's implied warranty claims on three fronts. First, it argues that an individualized inquiry is required to determine whether each individual class member continued using their vehicle after discovering the oil-consumption defect, as that

33

would be evidence that it is merchantable under Pennsylvania law.  *See* Opp'n to Second Class

Cert. Mot. at 18.  To support this argument, GM relies on a two-hundred-year-old case where an

oil well contractor sought indemnification from the manufacturer of the cables used in the well for

personal injury and property damages caused by an accident when the cables broke.  *McCormick*

*Harvesting Machine Co. v. Nicholson*, 17 Pa. Super. 188 (1900).  The Superior Court of

Pennsylvania denied recovery to the contractor on its implied warranty claim because it

"examined the cable after its *first* break and found it to be imperfect in either material or

workmanship, and after that continued to use it and the accident happened thereafter."  *Id.* at 193.

Contrary to GM's characterization, *McCormick* did not hold that continued use of a defective

product makes that product merchantable, it simply held that a party cannot recover for any

personal injuries or property damage caused by the continued use of a defective product after

discovering the defect.  *McCormick* is therefore entirely distinguishable because Plaintiffs here are

not seeking recovery for any personal injuries or property damage caused by the oil-consumption

defect; rather, they are seeking to recover the money they overpaid for the inherently defective

vehicles—moneys overpaid before discovering the defect.

Second, GM contends that an individualized inquiry is required to determine whether each

individual class member knew of the defect at the time of purchase.  Opp'n to Second Class Cert.

Mot. at 18.  GM grounds this argument on section 2316(c)(2) of Title 13 of the Pennsylvania

Consolidated Statutes, which states as follows:

> When the buyer before entering into the contract has examined the
> goods or the sample or model as fully as he desired or has refused to
> examine the goods there is no implied warranty with regard to
> defects which an examination ought in the circumstances to have
> revealed to him.

13 Pa. Stat. and Cons. Stat. Ann. § 2316 (c)(2).  But GM is not arguing that Plaintiffs inspected or

had an opportunity to inspect their vehicles or a "sample or model" of their vehicles for the oil-

consumption defect before purchasing them.  Instead, GM's contention is that some Plaintiffs

should have known about the defect "from publicly accessible sources" such as public complaints

posted online.  This is clearly not what is required under section 2316(c)(2) which, by its plain

language, refers to the examination of "the *goods* or the *sample or model*" of the goods, not

outside sources like publicly available complaints about the goods.  Examining the very product one is about to purchase is not the same as reading about a potential defect in that *type* of product.  For example, a Pennsylvania Plaintiff could have read an online report of excessive oil consumption in some of the Class Vehicles and still reasonably concluded that his or her vehicle was not affected because he or she had not noticed the defect yet.  GM assumes that every Plaintiff who read about the oil-consumption defect automatically assumed *all* vehicles—or at least *their* vehicle—were affected.  That is not a reasonable assumption.

Third, GM argues that Pennsylvania law applies the manifest defect rule, whereby "a merchant is 'only liable for harm caused by a defect in their product.'"  *Grant v. Bridgestone Firestone Inc.*, 57 Pa. D. & C. 4th 72 (Com. Pl. 2002) (quoting *Thomas v. Carter-Wallace Inc.*, 27 Pa. D. & C. 4th 146, 149 (Comm. Pl. 1994)).  Pennsylvania courts have held the defect must be manifest, which means that the product actually malfunctioned causing personal injury or property damage.  *Id.*; *see also Zwiercan v. Gen. Motors Corp.* ("*Zwiercan I*"), No. 3235 JUNE TERM 1999, 2002 WL 1472335, at *4 (Pa. Com. Pl. May 22, 2002) ("Pennsylvania is hardly alone in requiring a manifestation of a defect before a breach of warranty claim can be permitted."); *Solarz v. DaimlerChrysler Corp.*, No. 2033 APRIL TERM 2001, 2002 WL 452218, at *5 (Pa. Com. Pl. Mar. 13, 2002) (dismissing implied warranty claims of plaintiffs who had not alleged any manifested defect).  Indeed, the *Grant* court dismissed plaintiffs' claims because their tires were recalled before they suffered from the "sudden and complete thread separation" caused by the alleged defect.  *Id.*  In doing so, it wholly rejected another court's reasoning that "there is no requirement that Plaintiffs demonstrate any injury to their person or property as a result of the breach, but only that they purchased an unmerchantable product."  *Id.* (quoting *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1099 (S.D. Ind.)).

Plaintiffs do not cite to a single Pennsylvania case or authority to support their argument that the manifest defect rule does not apply in Pennsylvania.  *See* Docket No. 310 ("Reply in Supp. of Second Class Cert. Mot.") at 2.  Instead, Plaintiffs rely on entirely inapposite and conflicting federal case law.  For example, *In re Takata Airbag Products Liability Litigation* does not apply to the instant case because the Court there did not certify Pennsylvania implied warranty

claims for class-wide adjudication; it simply denied Mazda's motion to dismiss the plaintiffs' *individual* implied warranty claims. 193 F. Supp. 3d 1324, 1335 (S.D. Fla. 2016). More importantly, although the *Takata* court refused to dismiss the individual plaintiffs' claims because they "allege[d] there is no way to know whether the airbags at issue would perform satisfactorily in an accident," it also explicitly explained that this "analysis [was] limited to the motion to dismiss stage" and "that Defendants [] raised the possibility of other causes and factors contributing to the airbag inflator malfunctions [that] may be appropriately considered at the summary judgement stage." *Id.* Put simply, the *Takata* court did not hold that the manifest defect rule does not apply in Pennsylvania, nor did it cite to any Pennsylvania state law cases for that proposition.

Similarly, Plaintiffs cite *In re General Motors LLC Ignition Switch Litigation* ("*Ignition Switch Litigation II*") for the proposition that "the courts that have adopted a manifestation requirement often do so as a proxy for proof of actual defect." 339 F. Supp. 3d 262, 276 (S.D.N.Y. 2018). But the *Ignition Switch Litigation II* court was not referring to Pennsylvania law when it made that statement; in fact, it specifically distinguished the state-law claims at issue in that order from the Pennsylvania claims at issue in its prior order, underscoring that "a plaintiff must prove that the product was 'defective' to make out the last two elements of an implied warranty claim in Pennsylvania: 'a causal connection between the defendant's breach and the plaintiff's injury,' and 'the extent of loss proximately caused by the defendant's breach.'" *Id.* at 302 (quoting *In re Gen. Motors LLC Ignition Switch Litig.* ("*Ignition Switch Litigation I*"), 257 F.Supp.3d 372, 439 (S.D.N.Y. 2017)). In fact, the court in *Ignition Switch Litigation I* unequivocally held, citing *Grant*, *Zwiercan*, and *Solarz*, that "under Pennsylvania law, *a manifested defect is required* to make out a claim for implied warranty." 257 F. Supp. 3d at 439 (emphasis added); *see also Ignition Switch Litigation II*, 339 F. Supp. 3d at 302 ("Moreover, in [*Ignition Switch Litigation I*] the Court found Pennsylvania case law that clearly suggested a manifestation requirement for implied warranty claims." (citing 257 F. Supp. 3d at 439)). Manifestation under Pennsylvania law requires the product to malfunction in a way that causes personal injury or property damage.

Plaintiffs also argue, however, that Mr. Graziano's implied warranty claim is appropriate for class-wide determination even if the manifest rule applies. According to Plaintiffs, there is common evidence that the defect causes excessive piston ring wear during normal use of the vehicle, such that a jury could reasonably find that the oil-consumption defect "is manifest even in a hypothetical Class Vehicle that has not yet experienced engine malfunction." Reply in Supp. of Second Class Cert. Mot. at 8. This argument is unavailing under *Grant*, however, because Pennsylvania law requires that the plaintiff suffer personal injury or property damage in order for a defect to manifest. *See Grant*, 57 Pa. D. & C.4th 72. The cases Plaintiffs cite to argue that harm is not necessary to show that a defect manifested in Pennsylvania are inapposite. *In re Zurn Pex Plumbing Products Liability Litigation* involves Minnesota law, which unlike Pennsylvania law, requires a product to contain a defect, but not that the defect cause any damage. *See* 644 F.3d 604, 617 (8th Cir. 2011) ("[I]t is clear that the [district] court's position was that to give rise to a warranty claim a fitting must contain a defect, but that it need not have already caused external damage. This position was consistent with *O'Neil* . . . [which] never indicated that a child would have to be injured by a crib for a defect to be manifest."). Likewise, the plaintiffs in *Faltermeier v. FCA US LLC* were in Missouri, which also allows plaintiffs to prevail on an implied warranty claim even if they show only pecuniary loss. *See* No. 4:15-CV-00491-DGK, 2016 WL 4771100, at *8 (W.D. Mo. Sept. 13, 2016) ("Under Missouri law, plaintiffs must show 'they suffered pecuniary loss to prevail on their MMPA claim.'" (quoting *Grawitch v. Charter Commc'ns, Inc.*, 750 F.3d 956, 960 (8th Cir. 2014)). Therefore, Mr. Graziano's implied warranty claim is not suitable for class-wide adjudication because an individualized inquiry is required to establish whether the oil-consumption defect manifested in each of the individual Pennsylvania class member's vehicles, *i.e.* caused them personal injury or property damage.

### e. Common Evidence of Privity

#### i. Idaho: ICPA (Count 13)

GM again argues that Mr. Del Valle's ICPA claim requires privity of contract, and therefore is not appropriate for class treatment because that requirement will involve individual evidence. Opp'n to Second Class Cert. Mot. at 16. GM made the same argument in its motion for

1    summary judgment on Mr. Del Valle's ICPA claim, and the Court rejects it for the same reasons

2    stated above. *See supra* Part IV.A.2.

3                    f.    Common Evidence of Timeliness

4           GM finally contends that Plaintiffs' claims are inappropriate for class certification because

5    individualized evidence is required on the timeliness of each putative class member's claims.

6    Opp'n to Second Class Cert. Mot. at 21.  This contention fails for several reasons.  First, the trier

7    of fact can conclude, in one stroke, that certain (perhaps most) class members' claims are timely

8    because they purchased or leased their vehicles within two to six years—depending on the claim—

9    before the complaint was filed—a simple determination.  *See In re Cathode Ray Tube (CRT)*

10   *Antitrust Litig.*, 27 F. Supp. 3d 1015, 1020 (N.D. Cal. 2014) ("*American Pipe* held that

11   commencement of a class action suspends the statute of limitation as to all putative members of

12   the class up to and until class certification is denied or the plaintiff opts out of the class." (citing

13   *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974)).

14          Second, there is a common question as to whether fraudulent concealment (or equitable

15   estoppel, as it is referred to in Idaho) bars GM from asserting the statute of limitations defense

16   against any putative class member whose claims are otherwise untimely.  *See City of McCall v.*

17   *Buxton*, 201 P.3d 629, 636–37 (Idaho 2009) ("The only non-statutory bar to a statute of limitation

18   defense in Idaho is the doctrine of equitable estoppel." (quoting *J.R. Simplot Co. v. Chemetics*

19   *Int'l, Inc.*, 887 P.2d 1039, 1041 (1994)).  In fact, the Court already held that there is common

20   evidence indicating that GM knew about the oil-consumption defect and actively concealed that

21   information from its customers to deceive them.  *Sloan III*, 2020 WL 1955643, at *13–*17.  A

22   jury could reasonably rely on that same evidence to conclude that GM fraudulently concealed the

23   oil-consumption defect from all the putative class members, such that it cannot raise a statute of

24   limitations defense.  GM's conduct—whatever it is found to be—is the source relative to all class

25   members.

26          Third, there is simply no basis for GM's vague contention that an individualized inquiry is

27   necessary to determine "when and how each class member was on notice of the alleged oil

28   consumption defect, and whether he or she acted with reasonable diligence in response to that

                                        38

information." Opp'n to Second Class Cert. Mot. at 21. There is no indication in the record that there were ways for the putative class members to discover the oil-consumption defect outside of GM's representations about it. The jury can conclude, in one stroke, whether the putative class members knew about the defect until the lawsuit was filed.

Finally, and most importantly, GM's statute of limitations defense does not automatically preclude class certification where commons questions otherwise predominate. The Ninth Circuit "has repeatedly held that '[t]he existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones.'" *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 308 (N.D. Cal. 2016) (quoting *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975)); *see also Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) ("We hold that the presence of individual issues of compliance with the statute of limitations here does not defeat the predominance of the common questions.")). If need be, the trier of fact can adjudicate all the other common questions "in one stroke" and then address GM's statute of limitations defense on an individual basis. *Wal-Mart*, 564 U.S. at 350.

   3.   <u>Typicality</u>

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims are "typical" if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) (quoting *Hanlon*, 150 F.3d at 1020). Thus, the "test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Moreover, courts may evaluate whether a named plaintiff is typical by determining whether she is "subject to unique defenses which threaten to become the focus of the litigation." *Id.* "Class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to [her]." *Id.*

GM contends the named Plaintiffs' claims are not typical because (1) "each owns only one

type of Class Vehicle," (2) "some purchased their vehicles used, while other purchased new," and (3) "each representative plaintiff is [] subject to unique defenses."[12]  Opp'n to Second Class Cert. Mot. at 22–23.  None of these arguments has any merit.

First, GM does not explain why the claims of a purchaser or lessee of *one* make and model are not reasonably coextensive with the claims of a purchaser or lessee of *another* make and model given that *all* of the Class Vehicles contain the same LC9 engine with the allegedly defective pistons.  The make and model of the named Plaintiffs' vehicles is irrelevant because there is no evidence that the same allegedly defective pistons operate any differently in the different Class Vehicles.  The interests of all the purchasers—regardless of what make and model they purchased—are parallel.

Second, and relatedly, GM does not explain why the claims of a purchaser or lessee of a *used* Class Vehicle are not reasonably coextensive with the claims of a purchaser or lessee of a *new* Class Vehicle, and vice versa. In other words, GM offers no evidence that the interests of new Class Vehicle owners/lessees are at odds with the interests of used Class Vehicle owners/lessees. This distinction is therefore irrelevant.

Finally, "a class member need not prove that he is immune from any possible defense, or that his claim will fail only if every other class member's claim also fails.  Instead, he must establish that he is not subject to a defense that is '[*a]typical* of the defenses which may be raised against other members of the proposed class.'"  *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 556–57 (C.D. Cal. 2012) (emphasis added) (quoting *Hanon*, 876 F.2d at 508).  Here, GM highlights the defenses of statutes of limitations and the economic loss doctrine, which are not likely to be unique to the class representatives.  The Court already rejected this argument in certifying the bellwether classes in *Sloan III*:

> To the contrary, in a case where the alleged defect may or may not manifest over the course of several years, statute of limitations defenses may pertain to a substantial portion of the proposed class,

---

[12] GM also argues that the named Plaintiffs cannot represent the interests of lessees, an argument this Court already rejected in *Sloan III*.  *See* 2020 WL 1955643, at *49 ("No evidence suggests that the named Plaintiffs—as current owners—could not faithfully represent the interests of current lessees; their interests are parallel.").

> and thus will not be unique to the named plaintiffs.  Likewise, as GM repeatedly argued in its Motion for Summary Judgment, it appears that many class members are likely to have experienced injuries that are only economic and resolution of issues relevant thereto will in all likelihood similarly affect large portions of the class.

2020 WL 1955643, at *49–*50.  GM does not cite to any new authority or evidence that would require this Court to conclude otherwise here.

The class representatives' claims are therefore typical of those of the class because they all own or lease vehicles equipped with the same LC9 engine that allegedly suffers from an identical defect.  The interests of the representatives are sufficiently aligned with the interests of the class.

The typicality requirement is therefore satisfied.

### 4.   Adequacy

Rule 23(a)(4) requires that the putative class representative must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A named plaintiff satisfies the adequacy test if the individual has no conflicts of interest with other class members and if the named plaintiff will prosecute the action vigorously on behalf of the class.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

GM argues that the class representatives are not adequate because their "alleged injuries and desired remedies are not the same as those of putative class members."  Opp'n to Second Class Cert. Mot. at 23.  But GM does not explain how the class representatives' injuries and desired remedies differ from those of the putative class members, let alone how those differences would lead to inadequate representation.  Moreover, it is evident that all of the class members suffered the same economic harm—diminution of their vehicles' value—as a result of purchasing the allegedly defective Class Vehicles; they also seek the same economic redress—recovery of the difference between what they paid for the vehicles and how much the vehicles are really worth accounting for the defect.

The adequacy requirement is therefore satisfied.

### B.   Rule 23(b) Requirements

The Court may certify the class where it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

41

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

    1.   <u>Predominance</u>

"The predominance test of Rule 23(b)(3) is 'far more demanding' than the commonality test under Rule 23(a)(2)." *Villalpando v. Exel Direct Inc*, 303 F.R.D. 588, 607 (N.D. Cal. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)). Predominance is satisfied only "when common issues 'represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1777 (2d ed. 1986)). "[T]he focus of the predominance inquiry" is whether "a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (quoting *Amchem*, 521 U.S. at 623). But the rule "does not require a plaintiff seeking class certification to prove that each element of their claim is susceptible to class-wide proof," so long as one or more common questions predominate. *Castillo*, 980 F.3d at 730 (quoting *Amgen*, 568 U.S. at 469); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005))).

In opposing class certification, GM combines its challenges to commonality and predominance. This order addresses all of GM's arguments above, *see supra* Part V.A.2., and does not rehash them here, except to say that none of GM's arguments warrant changing this Court's prior holding that "common questions predominate over questions affecting only individual class members" in this case. *Sloan III*, 2020 WL 19955643, at *50–*51 (quoting *In re Cathode Ray Tube*, 308 F.R.D. at 612)). Indeed, this is not a case where the "main issues . . . require the separate adjudication of each class member's individual claim or defense," and therefore it cannot be said that "a Rule 23(b)(3) action would be inappropriate." *Zinser*, 253 F.3d

1    at 1189.

2        2.     <u>Superiority</u>

3        Finally, in addition to satisfying all four requirements of Rule 23(a) and the predominance

4 requirement of Rule 23(b)(3), Plaintiffs must also show that "a class action is superior to other

5 available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

6 23(b)(3). Generally, "Rule 23(b)(3)'s superiority test requires the court to determine whether

7 maintenance of this litigation as a class action is efficient and whether it is fair. This analysis is

8 related to the commonality test. Underlying both tests is a concern for judicial economy." *Wolin*

9 *v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010). With respect to the

10 Court's "superiority" analysis, Rule 23(b)(3) suggests the Court consider:

11                  (A) the class members' interests in individually controlling the
12                  prosecution or defense of separate actions;

                 (B) the extent and nature of any litigation concerning the
13                  controversy already begun by or against class members;

14                  (C) the desirability or undesirability of concentrating the litigation of
                 the claims in the particular forum; and
15

16                  (D) the likely difficulties in managing a class action.

17 Fed R. Civ. P. 23(b)(3)(A)–(D).

18        GM's only non-cursory argument as to superiority is that class-wide adjudication is not

19 manageable under subsection (D) because the Class Vehicles are constantly being sold or leased to

20 new people, which means that class membership in this case will continue to change as the

21 litigation progresses. But the class definition refers to "current" owners and lessees, as in people

22 who own or lease a Class Vehicle as of the date of the class notice. *See Sloan III*, 2020 WL

23 1955643, at *48 ("Thus, the Court **LIMITS** the class to only current owners and lessees of Class

24 Vehicles."). In other words, the class definition does not include future owners or lessees, in

25 much the same way that it does not include former owners or lessees.

26 C.     <u>Conclusion as to Class Certification</u>

27        In sum, the Court concludes that only Mr. Del Valle's ICPA claim is sufficiently

28 susceptible to common answers to merit class certification. The Court therefore certifies the

following class:

> **1. Idaho Class.** All current owners or lessees of a Class Vehicle that was purchased or leased in the State of Idaho. The Court certifies the claims of the Idaho Class for violation of the Idaho Consumer Protection Act, Idaho Code Ann. §§ 48-601–48-619. The Court appoints Gabriel Del Valle as the class representative for the Idaho Class.

## VI. MOTION FOR DETERMINATION OF MR. FERNANDEZ'S ADEQUACY

The Court's definition of "Class Vehicle" was narrower than that which Plaintiffs originally proposed. Fernandez Adequacy Mot. at 2. Plaintiffs moved to substitute Mr. Fernandez as California class representative after realizing that Mr. Siqueiros, the then California class representative, did not have a vehicle that fit within the Court's narrowed class definition. *Id.* The Court granted Mr. Fernandez's motion to intervene and appointed him as substitute Class representative subject to a determination of whether he meets the adequacy requirement of Rule 23(a)(4). *See* Docket No. 278 at 15. The Court directed Plaintiffs to file a motion to determine Mr. Fernandez's adequacy along with their class certification motion. *Id.*

Mr. Fernandez currently owns a 2013 GMC Sierra with an LC9 engine manufactured on or after February 10, 2011, which was purchased new in California. *See* Docket No. 289-1 (Decl. of H. Clay Barnett, III In Supp. of Fernandez's Adequacy Mot.), Ex. A ("Fernandez Decl.") ¶¶ 2–3. Moreover, Mr. Fernandez alleges that his vehicle experienced excessive oil consumption, required sparkplug replacement from oil fouling, and received carbon buildup induced invasive combustion chamber and throttle body chemical cleanings. *Id.* ¶¶ 6–7.

As mentioned above, Rule 23(a)(4) requires that the putative class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A named plaintiff satisfies the adequacy test if the individual has no conflicts of interest with other class members and if the named plaintiff will prosecute the action vigorously on behalf of the class. *See Ellis*, 657 F.3d at 985.

GM makes two unavailing arguments as to why Mr. Fernandez is not an adequate class member. First, GM recycles its argument that Mr. Fernandez's vehicle is merchantable because he has not experienced any engine trouble or other safety issue, and because he drove the vehicle

for 78,000 miles before experiencing the effects of the oil-consumption defect.  The Court again rejects this argument for the reasons stated above, *see supra* Part IV.D.3.a., namely, because "safety-related defects which may be slow to emerge may nonetheless furnish a basis for a breach of implied warranty claim" under California law, *Sloan III*, 2020 WL 1955643, at *28 (collecting cases).

Second, and strangely, GM argues that Mr. Fernandez cannot adequately establish standing for the putative California class members whose claims are barred by the four-year statute of limitations because his claims are timely.  Again, this argument is foreclosed by *Ramirez* and longstanding Ninth Circuit precedent that "only the representative plaintiff need allege standing at the motion to dismiss and class certification stages."  951 F.3d at 1023 (citing *In re Zappos.com, Inc.*, 888 F.3d 1020, 1028 n.11 (9th Cir. 2018) and *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015)).  Therefore, Mr. Fernandez is adequate precisely because he has standing to sue.

Accordingly, the Court **GRANTS** Plaintiffs' motion to determine that Mr. Fernandez is an adequate representative for the California class.

## VII. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** GM's motion for partial summary judgment as follows:

**Arkansas**

- Count 8 – Violation of the Arkansas Deceptive Trade Practices Act– **GRANT**

- Count 11 – Fraudulent Omission – **GRANT**

- Count 12 – Unjust Enrichment – **GRANT**

**California**

- Count 4 – Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty – **DENY**

- Count 5 – Fraudulent Omission – **GRANT**

- Count 6 – Unjust Enrichment – **GRANT**

**Idaho**

- Count 13 – Violation of Idaho Consumer Protection Act – **DENY**

- Count 15 – Breach of Implied Warranty of Merchantability – **GRANT**
- Count 16 – Fraudulent Omission – **DENY**
- Count 17 – Unjust Enrichment – **GRANT**

**Massachusetts**

- Count 18 – Breach of the Massachusetts Regulation of Business Practices and Consumer Protection Act – **DENY**
- Count 20 – Breach of Implied Warranty of Merchantability – **DENY**
- Count 21 – Fraudulent Omission – **DENY**
- Count 22 – Unjust Enrichment – **GRANT**

**Pennsylvania**

- Count 28 – Violation of the Unfair Trade Practices & Consumer Protection Law – **GRANT**
- Count 30 – Breach of Implied Warranty of Merchantability – **DENY**
- Count 31 – Fraudulent Omission – **GRANT**
- Count 32 – Unjust Enrichment – **GRANT**

**Tennessee**

- Count 33 – Breach of Tennessee Consumer Protection Act – **DENY**
- Count 35 – Breach of Implied Warranty of Merchantability – **GRANT**
- Count 36 – Fraudulent Omission – **DENY**
- Count 37 – Unjust Enrichment – **GRANT**

**Nationwide**

- Count 1 – MMWA – **DENY** as to California, Massachusetts, and Pennsylvania Plaintiffs, but **GRANT** as to Idaho and Tennessee Plaintiffs

The Court also **GRANTS in part** Plaintiffs' second motion for class certification.  As noted above, certification is with the following terms:  **Class Vehicles** are 2011-2014 Chevrolet Avalanches; 2011-2014 Chevrolet Silverados; 2011-2014 Chevrolet Suburbans; 2011-2014 Chevrolet Tahoes; 2011-2014 GMC Sierras; 2011-2014 GMC Yukons; and the 2011-2014 GMC Yukon XLs with LC9 engines (whether purchased new or used) and manufactured on or after

February 10, 2011 (the date upon which the redesigned rocker cover was incorporated into vehicle production).  Any vehicle that has already received adequate piston replacement (*i.e.* piston replacement in which the new pistons were not merely new versions of the same defective pistons) is excluded from the class.  The class is defined as follows:

> **1. Idaho Class.**  All current owners or lessees of a Class Vehicle that was purchased or leased in the State of Idaho.  The Court certifies the claims of the Idaho Class for violation of the Idaho Consumer Protection Act, Idaho Code Ann. §§ 48-601–48-619.  The Court appoints Gabriel Del Valle as the class representative for the Idaho Class.

Finally, the Court **GRANTS** Plaintiffs' motion to determine that Mr. Fernandez is an adequate representative for the California class.

This order disposes of Docket Nos. 287, 289, and 291.

**IT IS SO ORDERED**.

Dated: May 25, 2021

_____
EDWARD M. CHEN
United States District Judge