KATHLEEN TAYLOR SOOY (*pro hac vice*)
ksooy@crowell.com
APRIL N. ROSS (*pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

GREGORY R. OXFORD (SBN 62333)
goxford@icclawfirm.com
ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Phone: (310) 316-1990
Fax: (310) 316-1330

Attorneys for GENERAL MOTORS LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RAUL SIQUEIROS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | Case No.: 16-cv-07244-EMC<br><br>**NOTICE OF MOTION AND MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFFS' EXPERT DR. WERNER J.A. DAHM; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: December 9, 2021<br>Hearing Time: 1:30 p.m. PT<br><br>Hon. Edward M. Chen |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

Case No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO EXCLUDE

TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 9, 2021 at 1:30 p.m., or as soon as counsel may be heard after that date, in the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 5, 17th Floor, before the Honorable Edward M. Chen, General Motors LLC ("GM") moves this Court for an order excluding the opinions and testimony of plaintiffs' expert Dr. Werner J.A. Dahm.

## STATEMENT OF RELIEF SOUGHT

Pursuant to Federal Rules of Evidence 702 and 403, GM moves this Court for an order excluding the opinions and testimony of plaintiffs' expert Dr. Werner J.A. Dahm because (1) Dr. Dahm is not qualified to offer those opinions, (2) Dr. Dahm's opinions are not supported by sufficient or reliable facts, data, or methodology, and he invades the province of the jury, and (3) presenting Dr. Dahm's flawed opinions and testimony to a finder of fact would unfairly prejudice GM.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of April N. Ross and accompanying exhibits, the pleadings on file in this matter, and on any additional argument or evidence as the Court may permit.

Dated: October 21, 2021                    CROWELL & MORING LLP

                                           By: */s/ April N. Ross*
                                           April N. Ross

                                           Attorneys for General Motors LLC

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1                    Case No. 16-cv-07244-EMC
                     GM's Motion to Exclude Opinions and Testimony
                     of Dr. Werner J.A. Dahm

1

## TABLE OF CONTENTS

2

Table of Authorities .......................................................................................................

I.      INTRODUCTION ................................................................................................. 1

3

4

    A.      Procedural History ................................................................................. 2

5

    B.      Factual Background ............................................................................... 3

6

    C.      Plaintiffs' Technical Experts. ................................................................ 6

7

        1.      Dr. Jeffrey K. Ball .................................................................... 6

        2.      Dr. Werner J.A. Dahm. ............................................................. 7

8

II.     LEGAL STANDARD ........................................................................................... 9

9

III.    ARGUMENT ...................................................................................................... 10

    A.      Dr. Dahm is Not Qualified to Opine on Issues of Automotive Design or Human Behavior. ......................................................................... 10

10

11

    B.      Dr. Dahm's Testimony and Opinions Lack Sufficient Facts and a Reliable Methodology. ........................................................................ 13

12

        1.      Dr. Dahm's Opinions Lack Foundation. ................................ 13

13

        2.      Dr. Dahm does not employ a reliable, scientific methodology. .............. 16

14

    C.      Dr. Dahm Invades the Province of the Jury. ....................................... 19

15

    D.      Dr. Dahm's Opinions and Testimony Would Unfairly Prejudice GM. ................. 21

CONCLUSION ............................................................................................................. 22

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abarca v. Franklin Cnty. Water Dist.*,
    761 F. Supp. 2d 1007 (E.D. Cal. 2011).......................................................................... 13

*Andrews v. Metro N. Commuter R. Co.*,
    882 F.2d 705 (2d Cir. 1989)........................................................................................... 21

*Arkwright Mutual Ins. Co. v. Gwinner Oil, Inc.*,
    125 F.3d 1176 (8th Cir. 1997).......................................................................................... 7

*Ask Chems., LP v. Comput. Packages, Inc.*,
    593 F. App'x 506 (6th Cir. 2014) .................................................................................. 19

*Banga v. Kanios*,
    No. 16-CV-04270, 2020 WL 9037179 (N.D. Cal. Dec. 9, 2020)................................... 19

*Belville v. Ford Motor Co.*,
    919 F.3d 224 (4th Cir. 2019).......................................................................................... 15

*Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*,
    683 F.3d 1144 (9th Cir. 2012).......................................................................................... 9

*Cates v. Whirlpool Corp.*,
    No. 15-CV-5980, 2017 WL 1862640 (N.D. Ill. May 9, 2017) ..................................... 18

*Cholakyan v. Mercedes-Benz, USA, LLC*,
    281 F.R.D. 534 (C.D. Cal. 2012) ................................................................................... 7

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ............................................................................................... *passim*

*deMars v. Equitable Life Assurance Soc. of U.S.*,
    610 F.2d 55 (1st Cir. 1979) ............................................................................................. 6

*Dep't of Toxic Substances Control v. Technichem, Inc.*,
    No. 12-CV-05845, 2016 WL 1029463 (N.D. Cal. Mar. 15, 2016)................................ 19

*Diamond Resorts Int'l, Inc. v. Aaronson*,
    378 F. Supp. 3d 1143 (M.D. Fla. 2019) .......................................................................... 6

*In re Diet Drugs*,
    No. MDL 1203, 2000 WL 876900 (E.D. Pa. 2000).......................................................... 21

Case No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........................................................................................... 9, 15

*Exeltis USA Inc. v. First Databank, Inc.*,
No. 17-CV-04810, 2020 WL 7025089 (N.D. Cal. Nov. 30, 2020) ........................................ 19

*In re Ford Tailgate Litig.*,
No. 11-CV-02953, 2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) .................................. 14, 16

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ........................................................................................................ 10, 19

*Grodzitsky v. Am. Honda Motor Co.*,
957 F.3d 979 (9th Cir. 2020) ..................................................................................... 14, 16, 18

*Hathaway v. Bazany*,
507 F.3d 312 (5th Cir. 2007) ................................................................................................ 19

*Highland Cap. Mgmt., L.P. v. Scheider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005) ................................................................................... 21

*Hill v. Novartis Pharm. Corp.*,
No. 06-CV-00939, 2012 WL 5451816 (E.D. Cal. Nov. 7, 2012) ........................................... 21

*Holt v. Finander*,
No. 15-CV-05089, 2021 WL 1255418 (C.D. Cal. Feb. 9, 2021) ............................................ 13

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018) .................................................................................. 20

*Kumho Tire Co. v. Carmmichael*,
526 U.S. 137 (1999) ............................................................................................................. 10

*Lewis v. Rego Co.*,
757 F.2d 66 (3d Cir. 1985) ..................................................................................................... 7

*Martinez v. Terex Corp.*,
241 F.R.D. 631 (D. Ariz. 2007) ...................................................................................... 11, 21

*Mesfun v. Hagos*,
No. CV 03–02182, 2005 WL 5956612 (C.D. Cal. Feb. 16, 2005) ........................................... 7

*Motsinger v. Hyundai Motor Am.*,
No. 94CV00694, 1997 U.S. Dist. LEXIS 6230 (M.D.N.C. Mar. 12, 1997) ..................... 11, 21

*N5 Techs. LLC v. Cap. One N.A.*,
56 F. Supp. 3d 755 (E.D. Va. 2014) ........................................................................................ 6

*In re Novatel Wireless Sec. Litig.*,
No. 08cv1689, 2011 WL 5827198 ........................................................................................ 20

CROWELL
& MORING LLP
ATTORNEYS AT LAW

i

No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010)................................................................................. 10

*Reynolds v. Freightliner LLC*,
    No. 05-70, 2006 WL 5249744 (E.D. Ky. June 21, 2006) ..................................... 19

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) .................................................................. 21

*Ries v. CSX Transp., Inc.*,
    No. CIV.A. 96-3325, 2000 WL 377509 (E.D. Pa. Mar. 29, 2000)........................... 7

*Roper v. Kawasaki Heavy Indus., Ltd.*,
    No. 13-CV-03661, 2015 WL 11236553 (N.D. Ga. June 29, 2015), *aff'd*, 646 F.
    App'x 706 (11th Cir. 2016) ................................................................................. 12

*Rosen v. Ciba-Geigy Corp.*,
    78 F.3d 316 (7th Cir. 1996)................................................................................. 13

*In re Seagate Tech. LLC*,
    326 F.R.D. 223 (N.D. Cal. 2018) ......................................................................... 21

*Silva v. Am. Airlines, Inc.*,
    960 F. Supp. 528 (D.P.R. 1997) .......................................................................... 12

*Stathakos v. Columbia Sportswear Co.*,
    No. 15-CV-04543, 2017 WL 1957063 (N.D. Cal. May 11, 2017) ......................... 21

*Tershakovec v. Ford Motor Co.*,
    No. 17-21087-CIV, 2021 WL 2592390 (S.D. Fla. May 12, 2021)............... 12, 15, 19

*Tershakovec v. Ford Motor Co.*,
    No. 17-21087-CIV, 2021 WL 3578011 (S.D. Fla. Aug. 13, 2021) ........................ 12

*In re Toy Asbestos*,
    No. 19-cv-00325, 2021 WL 1111226 (N.D. Cal. Mar. 23, 2021)........................... 11

*In re Trasylol Prods. Liab. Litig.*,
    709 F. Supp. 2d 1323 (S.D. Fla. 2010) ............................................................... 21

*United States v. Anderson*,
    618 F.2d 487 (8th Cir. 1980)................................................................................. 6

*United States v. Mejia*,
    545 F.3d 179 (2d Cir. 2008)................................................................................. 7

*United States v. Vallejo*,
    237 F.3d 1008 (9th Cir. 2001)............................................................................... 9

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*United States v. Wells*,
No. 13-CR-00008, 2019 WL 3229912 (D. Alaska July 17, 2019) ........................................ 7

*Villagomes v. Lab'y Corp. of Am.*,
No. 08-CV-00387, 2010 WL 4628085 (D. Nev. Nov. 8, 2010) ............................................ 7

**Other Authorities**

Federal Rule of Evidence 403 ............................................................................. 2, 10, 21

Federal Rule of Evidence 702 ....................................................................................*passim*

Federal Rule of Evidence 703 ................................................................................................... 7

Federal Rule of Civil Procedure 23(b)(3) ............................................................................. 2

Federal Rule of Civil Procedure 26(a)(2)............................................................................. 6

Federal Rule of Civil Procedure 30(b)(6) ............................................................................ 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

iii

No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' proposed expert Dr. Werner J.A. Dahm is not an expert in automotive engineering or human behavior and has never been qualified as such. He has never taught a course on automotive engineering, published a paper on automotive engineering, designed an automobile engine, or diagnosed an engine oil consumption issue. His opinions are fundamentally flawed because they are unsupported by any testing that he conducted, any other record evidence, or any reliable methodology

Dr. Dahm's opinions that all Class Vehicles[1] have an "incorrect piston ring system design" that will inevitably manifest and present a safety risk to drivers and passengers[2] lack foundation and evidentiary support. He has never seen an aluminum block LC9 Gen IV engine or the piston assembly installed in an aluminum block LC9 Gen IV engine in a Class Vehicle. Dr. Dahm did not even look at a single Class Vehicle. He did not conduct a single inspection, examination, test, or analysis of the vehicles, engines, or piston assemblies at issue in this case. He did not perform any oil consumption test on any vehicle and he cannot independently confirm whether any plaintiff's vehicle actually consumes excessive oil, has premature piston ring wear, or has any other evidence of the alleged defect. Dr. Dahm also did not look at—much less test—a single piston ring or piston assembly from a single Class Vehicle before proffering his opinions that all of those components are "incorrect." And he has no opinion to offer the jury as to *how* or *why* they are supposedly "incorrect" because he did no independent work to investigate the nature or root cause of the alleged defect. He also did not rule out any alternative cause of any of the purported "symptoms" he

---

[1]    The "Class Vehicles" include certain 2011-2014 Chevrolet Avalanche, Silverado, Suburban, Tahoe, and 2011-2014 GMC Sierra, Yukon, and Yukon XL vehicles equipped with the aluminum block LC9 Generation IV 5.3L Vortec 5300 engine ("Gen IV engine") manufactured after February 11, 2011.

[2]    *See* Expert Report of Dr. Werner J.A. Dahm (Nov. 6, 2020) ("November 2020 Report") (**Ex. 1**); Expert Report of Dr. Werner J.A. Dahm (Aug. 31, 2021) (the "Dahm Report") (**Ex. 2**). Unless otherwise noted, all references to Exhibits refer to exhibits attached to the accompanying Declaration of April N. Ross.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1                    Case No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

1
2
attributes to oil consumption, and he did not determine failure rates or the likelihood of manifestation of any of those "symptoms."

3
4
Instead, what Dr. Dahm does is mischaracterize other record evidence and posit a list of things that *could* happen as a result of low oil levels without showing that any of them *did* happen as a result of the alleged defect in the Class Vehicles. He postulates with no evidence or expertise that engine problems can lead to such atrocities as robbery, rape, and murder. And he plucks a cost figure from a single 10-year old document that concerns different piston rings and non-class vehicles and declares this the proper measure of damages in this case, with no independent analysis.

5
6
7
8
9
10
The Court should exercise its gatekeeping function and exclude Dr. Dahm's opinions and testimony from trial pursuant to the standards articulated in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and because allowing his opinions to reach the jury would unfairly prejudice GM in contravention of Federal Rule of Evidence 403.

11
12
13

**BACKGROUND**

14
15
A.   **Procedural History**

16
17
Sixteen plaintiffs filed this putative class action on December 19, 2016, seeking to represent a nationwide class of purchasers and lessees of model year 2010 through 2014 GM vehicles with the Gen IV engine, and 13 statewide sub-classes.[3] Plaintiffs amended their complaint several times[4] and the Court has ruled on two motions for class certification and two motions for summary judgment.[5] The Court granted summary judgment for GM on many of the claims in this case, and many plaintiffs have voluntarily dismissed their claims.

18
19
20
21
22
The remaining claims of nine plaintiffs are set for trial in August 2022. The Court certified only three of those claims for class action trials under Rule 23(b)(3): (1) breach of implied warranty

23
24
[3]   Compl., ECF No. 2 (Dec. 16, 2019).

25
26
27
[4]   *See* First Am. Compl., ECF No. 29 (Feb. 27, 2017); Second Am. Compl., ECF No. 67 (Aug. 31, 2017); Third Am. Compl., ECF No. 107 (Mar. 23, 2018); Fourth Am. Compl., ECF No. 123 (Nov. 13, 2018); Fifth Am. Compl., ECF No. 157 (July 2, 2019); Sixth Am. Compl., ECF No. 250 (July 16, 2020).

28
[5]   *See* Order, ECF No. 234 (Apr. 23, 2020); Order, ECF No. 320 (May 25, 2021).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

2

No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

1

2

under California's Song-Beverly Consumer Warranty Act; (2) breach of implied warranty under North Carolina law; and (3) violation of the Idaho Consumer Protection Act. The certified classes

3

are limited to current owners and lessees of model year 2011-2014 Chevrolet Avalanche, Silverado,

4

Suburban, Tahoe, and GMC Sierra, Yukon, and Yukon XL vehicles equipped with aluminum block

5

LC9 Gen IV engines that were manufactured after February 10, 2011.[6] The California class is

6

further limited to current owners who purchased their vehicles in new condition and the Idaho class

7

is further limited to current owners who purchased their vehicles from GM dealerships. And

8

although the Court initially certified a fourth class for breach of implied warranty on behalf of

9

purchasers in Texas, it later decertified the Texas class because plaintiffs cannot prove on a

10

classwide basis that the alleged defect manifested in all Class Vehicles.[7]

11

### B.   Factual Background

12

In the operative Seventh Amended Complaint (and earlier complaints), plaintiffs allege that

13

the Gen IV engine in the Class Vehicles "consumes an abnormally and improperly high quantity

14

of oil that far exceeds industry standards for reasonable oil consumption."[8] Plaintiffs allege that

15

"[m]ultiple factors contribute to the excessive oil consumption problem," but that "the primary

16

cause . . . is that the piston rings that GM installed within the [Gen IV engines] do not maintain

17

sufficient tension to keep oil in the crankcase."[9] Plaintiffs also allege that the Active Fuel

18

---

19

[6]     Seventh Am. Compl., ECF No. 286, (Nov. 6, 2020).

20

[7]     *See* Order, ECF No. 354 (Sept. 7, 2021) at 12-13. The remaining plaintiffs' surviving individual claims are for (1) violation of the California Consumer Legal Remedies Act, (2) breach of the implied warranty under the Song Beverly Consumer Warranty Act, (3) violation of the California Unfair Competition Law, (4) violation of the North Carolina Unfair and Deceptive Trade

21

Practices Act, (5) violation of the Texas Deceptive Trade Practices-Consumer Protection Act, (6) violation of the Massachusetts Regulation of Business Practices and Consumer Protection Act, (7)

22

violation of the Tennessee Consumer Protection Act, (8) violation of the Idaho Consumer Protection Act, (9) violations of the Magnuson-Moss Warranty Act (only as to the California,

23

Texas, Massachusetts, North Carolina, and Pennsylvania plaintiffs), (10) breach of the Massachusetts, North Carolina, Pennsylvania, and Texas implied warranties of merchantability,

24

and (11) fraudulent omission under Massachusetts, North Carolina, Idaho, and Tennessee law. *Id.*

25

at 2-4.

26

[8]     Seventh Am. Compl., ECF No. 286, ¶ 5.

27

[9]     *Id.* ¶¶ 7-8.

28

CROWELL & MORING LLP ATTORNEYS AT LAW

No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

Management ("AFM") system in the Gen IV engine "further contributes to the Oil Consumption Defect" because the AFM oil pressure relief valve "spray[s] oil directly on the piston skirts," overloading the piston rings.[10] Finally, plaintiffs allege that the engine contains a "flawed PCV system that vacuums oil from the valvetrain into the intake system."[11] Plaintiffs allege that GM "has long known of the Oil Consumption Defect" but has failed to provide an adequate repair and has failed to disclose the alleged defect to consumers.[12]

With discovery complete, the evidence does not support plaintiffs' allegations. There is no evidence that pre-market validation testing of the Gen IV engine showed any oil consumption issues. And although GM saw some indications of elevated warranty claim rates related to oil consumption for 2007 model year vehicles,[13] GM made multiple design changes starting with model year 2010 vehicles that effectively addressed the root cause of the oil consumption seen in these earlier models. GM (1) switched from '251 piston ring material to the more wear-resistant '278 piston ring material at the start of production of the 2010 model year,[14] (2) added a metal "umbrella shield" over the AFM oil pressure relief valve in the crankcase in all Gen IV engines manufactured after October 21, 2010, to eliminate excess oil spray on the piston skirts that could be pulled past the piston rings into the crankcase,[15] and (3) added a redesigned rocker cover, which relocated certain inlets and drains to more effectively separate oil particles from gases pulled from

---

[10]    *Id.* ¶ 9.

[11]    *Id.* ¶ 10.

[12]    *Id.* ¶¶ 18-19.

[13]    A GM Red-X root cause investigation concluded that the primary root cause of oil consumption in the 2007 LC9 engine was the location of an AFM oil pressure relief valve in the crankcase, and the secondary cause was the higher tension oil pump spring used only in the first three months of production for the 2007 model year. *See* GM-000208705, ECF No. 292-05, at 13.

[14]    *See* Expert Report of Robert Kuhn, P.E. ("Kuhn Report") at 14 (**Ex. 3**); *see also* Dep. of Richard Ricchi, ECF No. 292-06, at 24:12-19, 76:13-78:13; GM Engineering Work Order #784742 dated Mar. 28, 2007, ECF No. 292-07.

[15]    Rule 30(b)(6) Dep. of Steven Pfromm ("Pfromm Dep."), ECF No. 292-03, at 27:9-29:1. GM also deployed the umbrella shield as a service part for earlier-manufactured Gen IV engines.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

4                                        No. 16-cv-07244-EMC
                                         GM's Motion to Exclude Opinions and Testimony
                                         of Dr. Werner J.A. Dahm

1
2

the crankcase through the engine's positive crankcase ventilation (PCV) system in all vehicles manufactured after February 10, 2011.[16]

3
4
5
6
7
8
9
10
11
12
13
14

The subject 2011-2014 aluminum block LC9 Gen IV engines produced with these changes experienced an average repair/complaint rate for excess oil consumption of under 3%, which was considerably lower than the earlier non-subject 2007- 2009 LC9 engines.[17] These figures are consistent with "normal variations in performance due to the use and maintenance of" the subject vehicles, and do not suggest the existence of a uniform, class-wide defect.[18]There is also no evidence at all in the record that any person was physically injured as a result of the alleged oil consumption defect. And the National Highway Transportation Safety Administration ("NHTSA"), the federal agency tasked with monitoring vehicle safety and initiating recalls for safety issues, expressly confirmed that "excessive oil consumption" is ***not*** a vehicle safety defect.[19] Additionally, each of the named plaintiffs drove his vehicle for many years and tens of thousands of miles without experiencing any alleged problem from excess oil consumption.[20]

15
16
17

18
19

[16]     Dep. of Yoon Lee at 31:23-33:4, ECF No. 292-09; *see also* GM Engineering Work Order #1286837 dated May 5, 2010, ECF No. 292-13. GM also offered the redesigned rocker cover as a service part for earlier-manufactured Gen IV engines.

20
21

[17]     Ex. 3, Kuhn Report at 13-14; Sept. 18, 2012 e-mail with subject line "07-11MY GenIV Oil Consumption Claims and Cost," ECF No. 292-15; Decl. of Steven M. Pfromm ("Pfromm Decl.") ECF No. 202 at ¶¶ 8-13; Pfromm Dep. at 24:18-25:12, 43:3-50:15**.**

22

[18]     Ex. 3 at 14.

23

[19]     *Motor Vehicle Safety Defect And Recalls, What Every Vehicle Owner Should Know*, U.S. Department of Transportation National Highway Traffic Safety Administration, ECF 185-46, at 4.

24
25
26
27

[20]     *See, e.g.*, Dep. of Raul Siqueiros ("Siqueiros Dep."), ECF No. 185-16 (May 21, 2019) at 38:4 – 42:3 (nearly 5 years and 94,000 miles); Dep. of William Paul Davis, Jr. ("Davis Dep."), ECF No. 185-32 (May 29, 2019) at 95:24-98:2(nearly 5 years and over 70,000 miles); Dep. of Scott Smith ("Smith Dep."), ECF No. 293-21 (Sept. 16, 2020) at 49:20-50:20 (about 5 years and 110,000 miles); Dep. of John Graziano ("Graziano Dep."), ECF No. 293-23 (Oct. 6, 2020) at 49:22–50:14 (no performance issues caused by oil consumption); Dep. of Manuel Yanez Fernandez ("Fernandez Dep."), ECF No. 293-16 (Oct. 14, 2020) at 60:7-24 (5 years and 70,000 miles).

28

Crowell
& Moring LLP
Attorneys At Law

5                                                No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

1

2

**C.**     **Plaintiffs' Technical Experts.**

**1.     Dr. Jeffrey K. Ball**

In support of their defect theory, plaintiffs first proffered the expert opinions of Dr. Jeffrey K. Ball. Dr. Ball provided an initial report on September 16, 2019, in which he sought to opine on the root cause of the alleged oil consumption in the Gen IV engines of certain model year 2010-2014 GM vehicles and the alleged cost to repair these vehicles.[21] On November 21, 2019, Dr. Ball submitted a supplemental report in which he sought to opine on the reliability of GM warranty data for model year 2010-2014 vehicles, and sought to extrapolate from that data to produce his own alleged warranty claim rates.[22] Dr. Ball concluded, through flawed mathematics and mischaracterization of GM documents, that internal GM warranty data supports a 11.87% warranty claim rate related to oil consumption-related issues in 2010-2014 aluminum block LC9 Gen IV engines.[23] Plaintiffs' new technical expert, Dr. Dahm, recognized Dr. Ball's 11.87% figure to be a gross overestimation, and agreed with GM's expert that the true warranty claim rate for piston ring replacements in Class Vehicles was roughly 3%. Dep. of Dr. Werner Dahm ("Dahm Dep.") at 120:4-24 (**Ex. 4**).

Dr. Ball is not available to testify at trial because he passed away while this matter was pending. His reports are inadmissible hearsay.[24]

---

[21]     Rule 26(a)(2) Expert Report of Jeffrey K. Ball ("Initial Ball Report"), ECF No. 193-12 at 18, 20-21.

[22]     Rule 26(a)(2) Supplemental Expert Report of Jeffrey K. Ball ("Suppl. Ball Report"), ECF No. 193-42.

[23]     *Id.* at 4, Table 5.

[24]     *See deMars v. Equitable Life Assurance Soc. of U.S.*, 610 F.2d 55, 61 (1st Cir. 1979); *see also United States v. Anderson*, 618 F.2d 487, 490-91 (8th Cir. 1980); *N5 Techs. LLC v. Cap. One N.A.*, 56 F. Supp. 3d 755, 765 (E.D. Va. 2014); *Diamond Resorts Int'l, Inc. v. Aaronson*, 378 F. Supp. 3d 1143, 1145 (M.D. Fla. 2019) ("It can rarely be said that a report prepared by a paid, retained expert witness for a party or its counsel bears "equivalent circumstantial guarantees of trustworthiness" to justify application of the residual hearsay exception.").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

6                        No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

1

2.      **Dr. Werner J.A. Dahm.**

2

Dr. Werner J.A. Dahm is an aerospace engineer with no educational background or

3

professional experience in automotive engine design or automotive engineering.[25] On November

4

6, 2020, Dr. Dahm submitted an initial report with his opinions on a wide range of topics, including

5

the root cause of allegedly excessive oil consumption in the Class Vehicles, the potential impact of

6

oil consumption on vehicle operation, the effectiveness of GM's design changes, the veracity and

7

reliability of GM's internal studies and warranty claims data, the adequacy of oil pressure

8

instruments in Class Vehicles, the driving habits, knowledge, and beliefs of individuals who

9

purchased or leased Class Vehicles, the purported safety risks posed by the alleged defect, GM's

10

corporate knowledge, and the credibility of other witnesses.[26] On August 31, 2021, Dr. Dahm

11

provided an "updated" report, in which he restated the same opinions and added his view on what

12

would constitute an "adequate repair" and what that repair would cost for every Class Vehicle.[27]

13

GM deposed Dr. Dahm on September 28, 2021.

14

15

16

[25]      Although expert witnesses may rely on inadmissible hearsay, Dr. Dahm cannot merely

17

endorse Dr. Ball's opinions. "Rule 703 does not permit an expert witness to circumvent the rules of hearsay by testifying to the opinions of other experts." *See Mesfun v. Hagos*, No. CV 03–02182,

18

2005 WL 5956612, *18 (C.D. Cal. Feb. 16, 2005); *see also Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 547 (C.D. Cal. 2012). To satisfy Rule 702, Dr. Dahm "must form his own

19

opinions by applying his extensive experience and a reliable methodology to the inadmissible materials. Otherwise the expert is simply repeating hearsay evidence without applying any

20

expertise whatsoever, a practice that allows the [party] to circumvent the rules prohibiting hearsay." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (internal quotation marks and citation

21

omitted); *see also Ries v. CSX Transp., Inc.*, No. CIV.A. 96-3325, 2000 WL 377509, at *2 (E.D. Pa. Mar. 29, 2000); *Lewis v. Rego Co.*, 757 F.2d 66, 74 (3d Cir. 1985); *Arkwright Mutual Ins. Co.

22

v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997); *see also United States v. Wells*, No. 13-CR-00008, 2019 WL 3229912, at *10 (D. Alaska July 17, 2019) ("[A]n expert may not simply

23

parrot the opinion of another expert or act as another expert's spokesperson.") (internal quotation marks and citation omitted); *Villagomes v. Lab'y Corp. of Am.*, No. 08-CV-00387, 2010 WL

24

4628085, at *4 (D. Nev. Nov. 8, 2010) (same).

25

[26]      Ex. 1, November 2020 Report at ¶¶ 64, 228.

26

[27]      Ex. 2, Dahm Report at ¶¶ 65, 233. Because the Dahm Report dated August 31, 2021

27

incorporates all of the opinions from his November 6, 2020 report, all citations in this Motion are to the August 2021 Report. *See* Dahm Dep. at 66:8-67:3.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

In preparing his opinions in this case, Dr. Dahm did not perform any independent research on automotive engine design, piston ring design, or on oil consumption in automobiles.[28] He did not conduct any testing, such as vehicle oil consumption tests, piston ring material testing, or piston ring performance testing.[29] He did not inspect any vehicles or engines, and did not speak to any plaintiff about his vehicle experience.[30] Dr. Dahm admits he did not examine, or even look at, a single LC9 engine or piston ring assembly from a single Class Vehicle[31] before concluding that the LC9 engines in all Class Vehicles contain an "incorrect" piston ring assembly that causes excessive oil consumption and "eventually" leads to "reduced engine power, cylinder misfires, and rough engine running"[32] and that "precisely the same defect" is present in all Class Vehicles, is unaffected by driving habits or maintenance, and that "[a]ll Class Vehicles will eventually" experience its impacts.[33]

Additionally, Dr. Dahm opines that the various alert systems present in the Class Vehicles (and in all other modern vehicles)—*e.g.* "check engine" and "low oil pressure" lights—have a "distracting effect" and place drivers at "risk of personal harm" if triggered, and that any time a driver pulls his vehicle to the side of the road, his life and safety are immediately imperiled, and he is at risk of falling victim to crimes including rape and murder.[34]

Dr. Dahm offers no "methodology"—scientific or otherwise—behind his conclusions. He never opines on what precisely is "incorrect" about the piston ring assembly in the Class Vehicles, and admits he does not know because he did not conduct any tests.[35] And although he acknowledges that his identified "impacts" of excess oil consumption (*i.e.*, noise, rough running, stalling, service

---

[28]    *Id.* at 21:5-18; 25:5-18; 33:2-5; 73:19-21; 91:6-10; 141:17-23; 145:6-146:7.

[29]    *Id.* at 90:4-18; 91:6-10; 137:15-25.

[30]    *Id.* at 42:3-15; 70:8-71:7; 91:6-10.

[31]    *Id.* at 47:21-50:25.

[32]    Ex. 2, Dahm Report, ¶¶ 61-62, 65.

[33]    *Id.* ¶ 233.

[34]    *Id.* ¶¶ 222-24.

[35]    Ex. 4, Dahm Dep. at 90:4-91:5.

No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

lights, cylinder misfires) could happen for a variety of reasons, he fails to consider, much less rule out, a single alternative cause. [36] Dr. Dahm also makes broad claims about the inevitable manifestation and uniform nature of the alleged defect, despite his own calculation that only 3% of all Class Vehicles have ever needed a piston ring replacement.[37] Dr. Dahm is unable to offer any insight as to when the supposedly "identical" defect will "eventually" manifest in all of the Class Vehicles in terms of either time or mileage, and he concedes that all engines consume increasing amounts of oil and experience normal piston ring wear as they age.[38]

## II.   LEGAL STANDARD

Under Federal Rule of Evidence 702, the trial court serves as the "gatekeeper," responsible for excluding expert testimony that does not meet the standards for admissibility. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). The party offering the proposed expert opinion testimony has the burden to prove by a preponderance of the evidence that the testimony satisfies all requirements. *See Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012) (citation omitted); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n. 10 (1993). An expert witness must be qualified to testify as an expert by "knowledge, skill, experience, training, or education" and may only provide opinion testimony if his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. Even then, the proffered expert may only offer opinions that are "relevant and reliable." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001) (citing *Daubert*, 509 U.S. at 597). To meet this standard, the testimony must be (1) based on

---

[36]   *See, e.g.*, *id.* at 85:15-86:21; Ex. 2, Dahm Report ¶¶ 83-88.

[37]   Ex. 4, Dahm Dep. at 120:5-24.

[38]   *Id.* at 127:8-128:1. Dr. Dahm's report includes a variety of other anecdotes, observations, and musings. For example, Dr. Dahm offers opinions on GM's corporate motive for various engine design changes and business decisions, the actions and intent of certain unnamed police officers or state troopers when conducting traffic stops, a driver's experience in inclement weather when improperly maintained windshield wipers, and the risk that a driver could be victimized by a dangerous criminal when pulled over on the side of the road. *See* Ex. 2, Dahm Report ¶¶ 216-28.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

9

No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

sufficient facts or data; (2) the product of reliable principles and methods; and (3) the result of principles and methods that are reliably applied to the facts of the case. Fed. R. Evid. 702.

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit*" of the expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Rather, the district court's responsibility is "to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmmichael*, 526 U.S. 137, 152 (1999). The district court has discretion to decide how to test reliability "based on the particular circumstances of the particular case." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (internal quotation marks and citation omitted).

This gatekeeping role is critical as an expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595 (internal quotation marks and citation omitted). Thus, even under *Daubert*, the Court must still weigh the balancing factors of Federal Rule of Evidence 403, which permits the Court to exclude evidence if its probative value is substantially outweighed by such factors as the danger of unfair prejudice and/or misleading the jury. Fed. R. Evid. 403. Because of the additional weight the jury may place on expert testimony, "the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than lay witnesses." *Daubert*, 509 U.S. at 595 (internal quotation marks and citation omitted).

## III.   ARGUMENT

### A.   Dr. Dahm is Not Qualified to Opine on Issues of Automotive Design or Human Behavior.

Dr. Dahm's opinions and testimony on issues related to Class Vehicle design, warranty data, safety, and repair costs, and on the knowledge, beliefs, and habits of individuals who purchased or leased those vehicles[39] are inadmissible because Dr. Dahm has no specialized knowledge, skill, experience, training, or education in the fields of automotive design or human behavior. *See* Fed.

---

[39]    Ex. 2, Dahm Report ¶¶ 41-141, 148-83, 192-233.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

10                                                 No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

R. Evid. 702; *see also In re Toy Asbestos*, No. 19-cv-00325, 2021 WL 1111226, at *3 (N.D. Cal. Mar. 23, 2021) (excluding opinions and anticipated testimony of expert because "Federal Rule of Evidence 702 requires expertise based on the proffered expert's own specialized knowledge and experience.").

Dr. Dahm is an aeronautical engineer. He received his degrees in aeronautical engineering, teaches in the field of aeronautical engineering, and publishes in the field of aeronautical engineering with a focus on turbulent flow in aeronautical engines.[40] He has no experience in designing automobiles or analyzing human factors in automotive operation.[41] He has never worked for an automobile manufacturer in any capacity, or as an automotive technician or mechanic.[42] He has never been asked by an automotive manufacturer to design or evaluate a piston ring system or engine lubrication system,[43] or to diagnose the root cause of piston ring wear or excess oil consumption (or any other automotive issues).[44] He has never conducted independent research, published any papers, or taught any courses on these subjects.[45] And he has never been retained to offer an expert opinion, or been qualified as an expert, on the causes or effects of alleged engine oil consumption, the design of pistons or piston ring systems, or the proper piston ring assembly design for an automobile engine.[46]

Automotive engineering is a specialized field, and courts consistently refuse to allow experts like Dr. Dahm with unrelated and/or unspecialized engineering experience to testify in automotive design defect cases. *See Motsinger v. Hyundai Motor Am.*, No. 94CV00694, 1997 U.S. Dist. LEXIS 6230, at *7-9 (M.D.N.C. Mar. 12, 1997) (aerospace engineer unqualified to testify in automotive design defect case); *Martinez v. Terex Corp.*, 241 F.R.D. 631, 638 (D. Ariz. 2007)

---

[40]    *Id.* at Ex. A.

[41]    Ex. 4, Dahm Dep. at 23:23-26:8; 123:15-24.

[42]    *Id.* at 35:6-36:1.

[43]    *Id.* at 26:9-29:22; 31:5-33:1.

[44]    *Id.* at 26:9-29:22; 31:5-33:1.

[45]    *Id.* at 21:5-18; 25:5-18; 33:2-5.

[46]    *Id.* at 65:2-5.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(excluding aerospace engineer's testimony on allegedly defective design of cement mixer); *Roper v. Kawasaki Heavy Indus., Ltd.*, No. 13-CV-03661, 2015 WL 11236553, at *10 (N.D. Ga. June 29, 2015), *aff'd*, 646 F. App'x 706 (11th Cir. 2016) (expressing skepticism as to whether a mechanical engineer with experience as an automotive technician is qualified to give expert testimony on motorcycle design); *see also Silva v. Am. Airlines, Inc.*, 960 F. Supp. 528, 531 (D.P.R. 1997) (civil engineer not qualified to testify about aircraft safety and design because he had no experience in the design, manufacturing or operation of an aircraft, and never worked with, tested, or studied aircraft interior safety hazards and warnings).

This is not the first time that Dr. Dahm's qualifications to testify on automotive matters have been questioned. *See Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV, 2021 WL 2592390, at *9 (S.D. Fla. May 12, 2021), *report and recommendation adopted in part*, No. 17-21087-CIV, 2021 WL 3578011 (S.D. Fla. Aug. 13, 2021). In *Tershakovec*, plaintiffs alleging a design defect affecting the thermal management capabilities of certain Ford vehicles engaged Dr. Dahm to opine on the engineering, design, and track-capability of those vehicles. *Tershakovec*, 2021 WL 2592390, at *8.[47] Ford moved to exclude Dr. Dahm's opinions on the ground that he lacked "the experience or background necessary to qualify as an expert" in a case involving automotive design and alleged defects. *Id.* at *8. On May 12, 2021, Magistrate Judge Goodman agreed, recommending that Dr. Dahm's opinions and testimony be excluded in their entirety because "Dr. Dahm, despite his expertise in aerospace engineering and thermal management technology, lacks a reliable foundation to express his opinions regarding the Subject Vehicles' capabilities . . . ." *Id.* at *9. Thus, the plaintiffs "failed to convince [the Court] that Dr. Dahm's experience with aircraft engineering principles qualifies him to testify about automotive defects." *Id.*[48] The same is true here.

---

[47]     *See also* Ex. 4, Dahm Dep. at 56:15-60:15.

[48]     Plaintiffs objected to the Magistrate Judge's Report and Recommendation, and Judge Moreno of the Southern District of Florida will hold an evidentiary hearing on Dr. Dahm's qualifications as an automotive expert on January 13, 2022. *Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV, 2021 WL 3578011 at *3 (S.D. Fla. Aug. 13, 2021); 17-21087-CIV, ECF Nos. 249 (Order Adopting R. & R.), 255 (Order Setting Hearing), 264 (Order Granting Motion to Continue Hearing).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

12                                    No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

Dr. Dahm also readily admits that he has no training, education, or experience remotely related to human factors or human behavior, and he does not hold himself out as an expert on that subject.[49] His opinions on how drivers would react to excessive oil consumption or to vehicle warning lights or malfunction, and the knowledge, beliefs, or habits of Class Vehicle owners and lessees, are therefore inadmissible. *See* Fed. R. Evid. 702.

### B. Dr. Dahm's Testimony and Opinions Lack Sufficient Facts and a Reliable Methodology.

Dr. Dahm's testimony and opinions fall far short of the admissibility standards requiring an expert's testimony to be "based upon sufficient facts or data" and be "the product of reliable principles and methods" that are appropriately applied to those facts. *Holt v. Finander*, No. 15-CV-05089, 2021 WL 1255418, at *2 (C.D. Cal. Feb. 9, 2021) (internal quotation marks and citation omitted); *Abarca v. Franklin Cnty. Water Dist.*, 761 F. Supp. 2d 1007, 1021 (E.D. Cal. 2011) (opinions must be "grounded in the methods and procedures of science," not the say so of the expert).[50]

### 1. Dr. Dahm's Opinions Lack Foundation.

Dr. Dahm proposes to tell the jury that (1) the alleged oil consumption defect is "present," "common," and "precisely the same" in plaintiffs' vehicles and in thousands of Class Vehicles, (2) the proper repair for the alleged defect is to replace the piston rings at a cost of $2,700, (3) the oil pressure instrumentality in Class Vehicles leads driver to incorrectly "believe" they have adequate oil pressure, and (4) the Class Vehicles' alert systems create unsafe driving distractions and the possible need to pull over immediately subjects drivers to the risk of "robbery, assault, rape, murder, and other forms of personal injury."[51]

---

[49]    Ex. 4, Dahm Dep. at 123:15-24.

[50]    *See also Daubert*, 509 U.S. at 589-90; *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996) (The requirement for an appropriate foundation to establish reliability ensures that the expert's opinion is "genuinely scientific").

[51]    Ex. 2, Dahm Report ¶¶ 41-141, 148-183, 192-233.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

13                                  No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

In reaching these opinions, Dr. Dahm did not test, inspect, examine, or physically handle any Class Vehicle, Gen IV engine, or Gen IV engine component.[52] He did not do any independent research into the rates at which alleged symptoms of oil consumption occur in Class Vehicles relative to industry norms, and he did not attempt to speak with any of the named plaintiffs or any other purchaser or lessee of a Class Vehicle about vehicle performance or deficiencies.[53] In fact, Dr. Dahm *had not even seen* a single piston assembly from a Gen IV engine before declaring that all Gen IV piston assemblies are "incorrect" and "defective."[54] His "because I say so" testimony should be excluded for lack of foundation. *See Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986 (9th Cir. 2020) (expert properly excluded where he failed to "test a statistically significant number of regulators to opine on the probabilities that any given Honda Pilot regulator failed because of the alleged defect.") (internal quotation marks and citation omitted); *In re Ford Tailgate Litig.*, No. 11-CV-02953, 2015 WL 7571772, at *7 (N.D. Cal. Nov. 25, 2015) (excluding testimony where expert "never conducted any tests or made any observations that could permit him to find a

---

[52]     Ex.4, Dahm Dep. at 91:6-10, 70:8-71:7, 42:3-15. Dr. Dahm expressly disavows any reliance on Dr. Ball's opinions about oil consumption in the named plaintiffs' vehicles, conceding that Dr. Ball's calculations are flawed because he failed to account for oil in the oil filter, and thus overestimates the rate of consumption. *Id.* at 73:19-74:9.

[53]     *Id*. at 42:3-15, 47:21-48:14. Although Dr. Dahm claims to have reviewed the deposition testimony of some of the named plaintiffs, he does not consider plaintiffs' accounts of their vehicle experiences with alleged oil consumption to be reliable because they do not have automotive technical training. *Id*. at 47:24-48:24.

[54]     *Id.*at 8:20-9:13; 12:2-11; 37:6-16; 47:22-49:25; 70:4-21. During his deposition, Dr. Dahm disclosed for the first time that plaintiffs' counsel provided him with a set of eight piston assemblies *after* he submitted his August 31, 2021 updated report, but he testified that he did not know anything about their origin, or the vehicle and engine from which they came, including its age and mileage, or whether it was even a Class Vehicle. *Id.* at 8:20-12:1; 37:6-39:11; 71:10-73:11. Dr. Dahm also did not know whether the vehicle ever experienced excess oil consumption or any other "effect" he claims could stem from excess oil consumption. *Id.* at 72:25-73:11. In fact, the vehicle from which these pistons were removed is not even a Class Vehicle; it is a 2011 Chevrolet Silverado manufactured *before* February 10, 2011, which was scrapped with nearly 250,000 miles. *See* VIN photograph (**Ex. 5**); CARFAX History-Based Value Report for VIN 1GCRKSE39BZ122693 (**Ex. 6**). Dr. Dahm concedes that he would expect a vehicle to require new pistons and piston rings after 175,000 miles as a result of normal wear and tear. *See* Ex. 4, Dahm Dep. at 82:7-83:18 ("175,000 miles is a fair lifetime before . . . a ring job or other overhaul is needed."); 88:23-89:10.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

14                                                          No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

causal relationship between" alleged defect and alleged harm); *Tershakovec*, 2021 WL 2592390, at \*9 (concluding that Dr. Dahm's testimony is not admissible where he failed to do any independent testing or inspections of the vehicles at issue).[55]

Additionally, although Dr. Dahm intends to testify on the precise cost of the piston ring replacement he claims is needed to remedy the alleged defect, he did nothing to determine the actual part costs or labor hours required to replace the piston ring assemblies in a Gen IV engine. Instead, Dr. Dahm reviewed one document prepared by a GM warranty engineer, Steven Pfromm, concerning internal GM warranty costs for installing new '278 piston rings in pre-class period vehicles. Based solely on the $2,700 cost figure in this largely irrelevant document, Dr. Dahm declares that the retail cost to consumers of replacing the '278 piston rings in the Class Vehicles with PVD-coated piston rings is $2,700.[56] Dr. Dahm concedes that he does not know what data was used to come up with the $2,700 figure, he does not know what a PVD ring pack costs per piston, and that he has no independent basis to opine on the cost of repair:

> Q: Have you done anything to independently investigate the cost of replacing the piston assemblies in the subject LC9 engines with new pistons and PVD-coated rings?
>
> A: No, I haven't. I mean, beyond studying this document from Fromm [*sic*] and to the extent this came up in his deposition testimony and/or his declaration – beyond that, I've done no – I accept him at his word.
>
> Q: Okay. So you haven't researched part costs, for example?
>
> A: Not in this matter, no.
>
> Q: Okay. You haven't researched labor costs for piston replacement?
>
> A: Not in this matter, no.

---

[55]   *See also Ellis*, 657 F.3d at 982 (an expert's inference or assertion must be derived by the scientific method to be admissible); *Belville v. Ford Motor Co.*, 919 F.3d 224, 234 (4th Cir. 2019) (excluding expert testimony because "[o]f the multitude of vehicles the Plaintiffs claim to be defective, the record does not reflect they attempted to test even one vehicle purported to have had a [unintended acceleration], much less conduct such a test under real-world conditions.").

[56]   Ex. 4, Dahm Dep. at 145:9-146:16; *see also* GM-000575234 (**Ex. 7**).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

15

No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

1

Q: And you haven't looked at the different amounts charged by GM
dealerships for a piston ring replacement?

2

3

A: No.

Q: You haven't looked at how much an independent repair shop might
charge for a piston ring replacement in the subject vehicles?

4

5

A: No, I haven't. I've taken – I've drawn on Mr. Fromm's [*sic*]
document and taken him at his word.[57]

6

7 Dr. Dahm thus concedes that he has no specialized knowledge or expertise and no independent

8 foundation supporting his opinion on the cost of repair. The jury—as the finder of fact—can review

9 the same Pfromm document, hear testimony directly from Mr. Pfromm, and come to its own

10 conclusions. By seeking to extrapolate from a GM document about which he has no independent

11 knowledge or expertise, Dr. Dahm violates Rule 702 and invades the province of the jury. *See*

12 *Grodzitsky*, 957 F.3d at 986; *In re Ford Tailgate Litig.*, 2015 WL 7571772, at *7.

13 **2.    Dr. Dahm does not employ a reliable, scientific methodology.**

14 Not only has Dr. Dahm failed to conduct any physical inspection, test, or examination of

15 any engine or vehicle, he also concedes that he has conducted no empirical or quantitative analyses

16 or studies that would allow him to assess (1) the frequency with which any "impacts" of the alleged

17 defect actually occurred in the Class Vehicles, either in the abstract or relative to industry

18 standards,[58] or (2) the vehicle age and/or mileage at which this purportedly "identical" defect will

19 manifest in each Class Vehicle.[59] In fact, Dr. Dahm states unequivocally that he did not have, and

20 did not attempt to develop, the data necessary to conduct such an analysis.[60] He also concedes that

21 he did not attempt to rule out any other cause of the various "symptoms" that he attributes to an

22 "incorrect" piston ring system, admitting that there are "a number of reasons" an engine may

23 experience engine noise, run rough, stall, display a service engine light, or misfire that are not

24

---

25 [57]    *Id.* at 145:9- 146:7.

26 [58]    *Id.* at 85:4-14; 88:18-22

27 [59]    *Id.* at 127:8-128:1.

[60]    *Id.* at 127:8-128:1.

28

related to piston ring wear.[61] Dr. Dahm also made no attempt to confirm that any owner and lessee of any Class Vehicles actually experienced any of these symptoms *as a result of* piston ring wear.[62] He did not conduct any oil consumption tests on the plaintiffs' vehicles, did not look at their engines or piston assemblies to identify wear, and did not assess whether their vehicles show any of the other "symptoms" that he says will inevitably occur in all Class Vehicles. In fact, he admits that his flow chart of purported effects of "excessive piston ring wear" (Figure 9 in his Report) "has nothing directly to do with the plaintiffs' engines."[63]

There are also internal inconsistencies between the data Dr. Dahm purports to rely upon and the conclusions he draws, highlighting his lack of reliable methodology. Although Dr. Dahm declares that *all* Class Vehicles are afflicted with an identical defect that will inevitably cause problems for all owners and lessees, he also opines that only 3% of Class Vehicles ever required a piston ring replacement during the 100,000 mile warranty period, and he admits he does not have any data on the frequency or timing of manifestation.[64] He also concedes that piston ring wear and increased oil consumption are normal as the engine ages, and that at high mileage, he would expect a vehicle to require piston replacement to address normal wear and tear.[65]

Because he did not inspect, test, or analyze any engines or component parts to support his bare opinions, Dr. Dahm concedes he cannot even tell the jury *how* the piston ring assembly in the Gen IV engine is purportedly "incorrect" or "defective":

> Q. So if I understand what you just said correctly, that you don't have an opinion about what specifically is, to use your word, incorrect in the piston ring design of these engines?
>
> A. Well, I wouldn't -- I wouldn't state it that way. The piston rings are clearly failing to perform the three functions that the piston rings

---

[61]    *Id.* at 85:15-86:21.

[62]    *Id.* at 88:6-22; 95:10-96:20.

[63]    *Id.* at 98:2-3.

[64]    Dr. Dahm confirmed that his calculations were further flawed when he admitted to excluding several months of relevant MY 2011 data from his report. *Id.* at 117:8-120:20.

[65]    *Id.* at 80:1-13; 82:23-83:8.

No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

1
2
3

> have to perform in an engine and the fact that they are failing to perform that function as is evidenced. As I said, from the totality of the evidence here, it indicates that there is some inadequacy in the piston ring system design.

4
5

> Q. But you are not offering an opinion about specifically what that inadequacy is?

6

> A. Correct.

7

> ...      ...      ...      ...

8
9

> Q. And you did not conduct any independent testing or inspection of any LC9 engine to try to reach a determination about what would be inadequate about the piston ring system; is that right?

10

> A. That's correct.

> ...      ...      ...      ...

11
12

> Q. What specifically about the piston ring system in the LC9 engines are you contending is incorrect?

13
14
15
16

> A. And as I testified earlier, the available evidence is not sufficient to determine specifically which one or more attributes of the piston ring system design were inadequate, but the data are more than adequate to show that it has to be an inadequate piston ring system design.[66]

17
18
19
20

Circular testimony like this "in the absence of the identification of a specific defect" is not properly derived by a scientific method and does not constitute proper expert opinion. *See Grodzitsky*, 957 F.3d at 986; *see also Cates v. Whirlpool Corp.*, No. 15-CV-5980, 2017 WL 1862640, at *12 (N.D. Ill. May 9, 2017) (excluding testimony where expert failed to "identify . . . precisely what he believes the common defect to be that causes failure during self-cleaning").

21
22
23
24
25
26

Without determining *how* the Class Vehicles are allegedly defective through scientific testing and analysis, and without ruling out *any* alterative causes of the purported "impacts" of oil consumption, Dr. Dahm has not presented a reliable scientific methodology to support his opinion. He offers only his unsubstantiated conclusion that the piston ring assembly "has to be inadequate" in some way. This is exactly the type of *ipse dixit* testimony that is inadmissible under *Daubert* and

27
28

---

[66]     *Id.* at 90:4-18, 91:6-10, 137:15-25;

CROWELL
& MORING LLP
ATTORNEYS AT LAW

18

No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

the Federal Rules of Evidence. *See Joiner*, 522 U.S. at 146; *Tershakovec*, 2021 WL 2592390, at *9.[67]

**C.    Dr. Dahm Invades the Province of the Jury.**

Dr. Dahm in the end is "merely summariz[ing]" and "gratuitously interpret[ing]" GM's documents, fact witness testimony, and other record evidence. *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810, 2020 WL 7025089, at *5 (N.D. Cal. Nov. 30, 2020) (internal quotation marks and citation omitted). He serves merely "as a narrator . . . relaying [plaintiffs'] factual position as if it were his expert one." *Banga v. Kanios*, No. 16-CV-04270, 2020 WL 9037179, at *3 (N.D. Cal. Dec. 9, 2020). This is not the proper role of an expert. *See Dep't of Toxic Substances Control v. Technichem, Inc.*, No. 12-CV-05845, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) (excluding expert opinion in part because expert "often does no more than regurgitate information given to him by other sources . . .").[68]

For example, Dr. Dahm purports to "calculate" the GM-recommended reference oil consumption rate of "1 quart per 2000 to 3000 miles driven" by applying basic arithmetic to information found in unspecified owner's manuals.[69] GM Technical Service Bulletin No. 10-06-01-008, which Dr. Dahm cites in his Report, clearly states that an oil "consumption level is excessive" when it exceeds "1 quart per 2000 to 3000 miles."[70] Likewise, Dr. Dahm's opinion that the cost to repair the alleged defect is "at least $2700 or more"[71] is plucked from a 10-year-old GM

---

[67]    *See also Hathaway v. Bazany*, 507 F.3d 312, 318–319 (5th Cir. 2007) (trial court properly excluded proffered expert testimony which consisted of "a host of unsupported conjectures that falls far short of a methodology.").

[68]    *See also Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 510-11 (6th Cir. 2014) ("Where an expert merely offers his client's opinion as his own, that opinion may be excluded."); *Reynolds v. Freightliner LLC*, No. 05-70, 2006 WL 5249744, at *6 (E.D. Ky. June 21, 2006) (excluding testimony where expert "[s]imply regurgitate[ed], in a conclusory, 'expert' manner," information from the factual record).

[69]    Ex. 2, Dahm Report, ¶¶ 66-75.

[70]    *See* GM-000579841, ECF No. 193-23; *see also* Ex. 2, Dahm Report, ¶ 74

[71]    Ex. 2, Dahm Report, ¶¶ 229-232.

document discussing *a different piston ring replacement*.[72] He has done no work of his own to confirm the accuracy of this cost figure or its application to all Class Vehicles.[73] Dr. Dahm adds no new information on either of these points that would be helpful to the jury. His opinions only complicate a straight-forward concept that a jury can easily understand. *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 992 (N.D. Cal. 2018) (expert testimony should be excluded "[w]here the jury is in as good a position as the expert to draw conclusions from the evidence, and is capable of drawing its own inferences . . . ") (internal quotation marks and citation omitted).

In addition, Dr. Dahm also posits inflammatory hypotheticals and strays into areas that are improper for expert testimony. When asked to opine on whether the alleged defect presents a safety risk, Dr. Dahm conjures a parade of far-fetched "horribles" intended to emotionally provoke the jury, with no factual foundation whatsoever. Dr. Dahm, it seems, intends to tell the jury that if a driver pulls his vehicle to the side of the road, the driver is at imminent risk of "robbery, assault, rape, [and] murder."[74] He cites absolutely no support for this extreme notion, nor is there *any* evidence in the record of *any* bodily harm befalling *anyone* as a result of the alleged oil consumption issue. Even for his less extreme hypotheticals—the risk of encountering bad weather or of distracted drivers reacting to illuminated dashboard warning lights[75]—a trier of fact would hardly need Dr. Dahm to understand such concepts. *In re Novatel Wireless Sec. Litig.*, No. 08cv1689, 2011 WL 5827198, at *4 (excluding expert testimony where "no specialized or technical knowhow" would be required to draw the proffered conclusions). Nor does he have any specialized qualifications that allow him to offer these opinions to a jury.

Likewise, throughout his report, Dr. Dahm selectively quotes GM witness testimony and GM documents, about which he has no personal knowledge, to opine on the credibility of evidence,

---

[72]   Ex. 4, Dahm Dep. at 145:9-146:16.

[73]   *Id*. at 145:9-146:16.

[74]   Ex. 2, Dahm Report, ¶ 222.

[75]   *Id.* ¶¶ 221, 224-27.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

20

No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

1
2
3
4
5
6
7
8
9
10
11

GM's alleged motives for design changes, and GM's corporate knowledge and state of mind.[76] These are classic jury questions that are not the proper subjects of expert testimony. *See Stathakos v. Columbia Sportswear Co.*, No. 15-CV-04543, 2017 WL 1957063, at *5 (N.D. Cal. May 11, 2017) (experts cannot opine on a defendant corporation's intent); *Hill v. Novartis Pharm. Corp.*, No. 06-CV-00939, 2012 WL 5451816, at *2 n.2 (E.D. Cal. Nov. 7, 2012) ("The Court finds this and other testimony regarding Defendant's intent, motives or state of mind to be impermissible and outside the scope of expert testimony.").[77] The jury can hear the evidence itself at trial and draw its own conclusions as to what that evidence means. Dr. Dahm's unfounded musings and hypotheticals, and his "summaries" (and mischaracterizations) of the record evidence invade the province of the jury and are not admissible. *See In re Seagate Tech. LLC*, 326 F.R.D. 223, 243–44 (N.D. Cal. 2018).[78]

12

   **D.**    **Dr. Dahm's Opinions and Testimony Would Unfairly Prejudice GM.**

13
14
15
16
17
18
19
20

     With Dr. Dahm unqualified to opine on automotive design or human behavior, and because his conclusions lack sufficient factual support or reliable scientific methodology, Federal Rule of Evidence 403 does not "permit such evidence to be introduced to the jury as its potential prejudicial effect resulting from the lack of a well-reasoned analysis supporting the opinion outweighs any probative value." *Martinez*, 241 F.R.D. at 640; *see also Daubert*, 509 U.S. at 595; *Motsinger*, 1997 U.S. Dist. LEXIS 6230, at *7-9 (prejudicial effect of allowing unqualified experts to testify to speculation and conjecture "far outweigh[s]" any possible probative value of their testimony).

21

---

22

[76]     *See, e.g.*, Ex. 2, Dahm Report ¶¶ 29, 82, 148-68; 179-83; 184-91.

23
24
25
26

[77]     *See also In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1338 (S.D. Fla. 2010) ("[C]ourts have held that the question of (corporate) intent or motive is a classic jury question and not one for experts."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (expert testimony on motive or intent of corporations and regulatory agencies is inadmissible because it has no basis in any relevant body of knowledge or expertise and describes lay matters which the jury is capable of understanding without the expert's help); *In re Diet Drugs*, No. MDL 1203, 2000 WL 876900, at *9 (E.D. Pa. 2000) ("If the witnesses' bases for the opinions concerning improper intent come from . . . other admissible evidence, *that* is what the jury should hear . . . .").

27
28

[78]     *See also Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989); *Highland Cap. Mgmt., L.P. v. Scheider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

21                          No. 16-cv-07244-EMC
GM's Motion to Exclude Opinions and Testimony
of Dr. Werner J.A. Dahm

1

## **CONCLUSION**

2          For these reasons, GM respectfully requests this Court exclude the opinions and testimony

3   of plaintiffs' expert, Dr. Dahm.

4

DATED: October 21, 2021                    Respectfully submitted,

5

6                                          /s/ April N. Ross

7                                          Kathleen Taylor Sooy (*pro hac vice*)
                                           April N. Ross (*pro hac vice*)

8                                          **CROWELL & MORING LLP**
                                           1001 Pennsylvania Avenue, N.W.

9                                          Washington, D.C. 20004
                                           Phone: (202) 624-2500

10                                         ksooy@crowell.com
                                           aross@crowell.com

11

12                                         Gregory R. Oxford
                                           **ISAACS CLOUSE CROSE & OXFORD LLP**

13                                         21515 Hawthorne Boulevard, Suite 950
                                           Torrance, California 90503

14                                         Phone: (310) 316-1990
                                           goxford@icclawfirm.com

15

16                                         *Attorneys for General Motors LLC*

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

22                        No. 16-cv-07244-EMC
                          GM's Motion to Exclude Opinions and Testimony
                          of Dr. Werner J.A. Dahm