Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone:  (415) 986-1400
jennie@andrusanderson.com

Adam J. Levitt (*pro hac vice*)
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone:  (334) 269-2343
Dee.Miles@beasleyallen.com

Attorneys for Plaintiffs and the Certified Classes
(*additional counsel appear on signature page*)

Warrington S. Parker, III (SBN 148003)
**CROWELL & MORING LLP**
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Phone: (415) 986-2800
wparker@crowell.com

Kathleen Taylor Sooy (*pro hac vice*)
April N. Ross (*pro hac vice*)
Rachel P. Raphael (*pro hac vice*)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
ksooy@crowell.com
aross@crowell.comrrraphael@crowell.com

Richard C. Godfrey (*pro hac vice*)
Renee D. Smith (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Phone: (312) 862-2310
richard.godfrey@kirkland.com
renee.smith@kirkland.com

Attorneys for General Motors LLC
(*additional counsel appear on signature page*)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| RAUL SIQUEIROS, *et al*., | Case No.:  16-cv-07244-EMC |
| Plaintiffs, | **JOINT PROPOSED JURY INSTRUCTIONS** |
| v. | |
| GENERAL MOTORS LLC, | |
| Defendant. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to this Court's July 7, 2022 Case Management and Pretrial Order for Jury Trial (Dkt. No. 411), the parties hereby submit their joint set of proposed jury instructions.  The jury instructions that follow have been arranged in a logical sequence; the parties summarize the undisputed or disputed status of each below:

The undisputed jury instructions are Instruction Nos. 1-4, 6-27, 31-36, and 39.

The disputed jury instructions for which each party has proposed a disputed version are Instruction Nos. 28, 38, 40-43, and 47-48.

The jury instructions proposed by GM and that Plaintiffs contend should not be given include Instruction Nos. 5, 29-30, 37, 44-46, and 49.

**STIPULATED INSTRUCTION NO. 1 RE DUTY OF JURY**

Members of the jury: You are now the jury in this case.  It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions.  It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.3.

**STIPULATED INSTRUCTION NO. 2 RE DUTY OF JURY**

**(COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.4

**STIPULATED INSTRUCTION NO. 3 RE CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiffs Garet Tarvin, William Davis, Jr., and Gabriel Del Valle (for purposes of these instructions, I will refer to them collectively as the "Plaintiffs") claim that General Motors LLC (I will refer to it as "GM") sold certain SUVs and trucks with an engine defect.  Specifically, they claim that GM's Generation IV Vortec 5300 LC9 engines (I will refer to them as "Gen IV LC9 engines"), which was installed in the GMC and Chevrolet vehicles that they purchased, have an excessive oil consumption defect caused primarily by wear in the engines' piston ring assembly, and that negatively impacts every Gen IV LC9 engine's performance and creates a safety hazard.  Plaintiffs are seeking damages from GM in an amount equal to their claimed overpayments for all GM vehicles having the Gen IV LC9 engine defect. Plaintiffs have the burden of proving liability and damages.

GM denies Plaintiffs' claims, denies liability, and denies that Plaintiffs and the Classes they represent are entitled to damages. GM specifically denies that the Generation IV Vortec 5300 LC9 engines suffer from any defect. GM also asserts affirmative defenses that prohibit Plaintiffs' claims. In this regard, GM contends the evidence will show that internal combustion engines, including the Gen IV LC9 engine, consume oil as part of their normal operation. Issues with excess oil consumption are rare, and when they do occur, do so for a multitude of different reasons having nothing to do with an engine's pistons or piston rings. GM's position is that there is no oil consumption defect caused by the piston rings in Plaintiffs' own vehicles; nor is there a common oil consumption defect in all model year 2011-2014 GM trucks and SUVs with the Gen IV LC9 engine.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.5.

**STIPULATED INSTRUCTION NO. 4 RE "CLASS ACTION" DEFINED**

This case involves a class action lawsuit. A class action is a civil lawsuit that has been brought by one or more plaintiffs on behalf of a larger group of people who the individual plaintiffs in this lawsuit allege have similar claims. All of these people together are called a "class." The Plaintiffs identified earlier bring this action as the class representatives.

In a class action, the claims of many individuals can be resolved at the same time instead of requiring each class member to sue separately. All members of the class will be bound by the results of this trial.

In this case, there are three classes: (1) All current owners or lessees of a Class Vehicle that was purchased or leased in new condition in the State of California (the "California Class"); (2) All current owners or lessees of a Class Vehicle that was purchased or leased from a GM-authorized dealer in the State of Idaho (the "Idaho Class"); and (3) All current owners or lessees of a Class Vehicle that was purchased or leased in the State of North Carolina (the "North Carolina Class"). The "Class Vehicles" are 2011-2014 Chevrolet Avalanches, Silverados, Suburbans, and Tahoes, and 2011-2014 GMC Sierras, Yukons, and Yukon XLs with Generation IV Vortec 5300 LC9 engines manufactured on or after February 10, 2011. Any vehicle that has already received adequate piston replacement (i.e., upgraded piston rings) is excluded from the definition of Class Vehicle.

**Authority:**
CACI 115 (modified).

1

**DISPUTED INSTRUCTION NO. 5 RE NO INFERENCE FROM CLASS ACTION OFFERED**

2

**BY GM**

3

     The fact that this case is proceeding as a class action does not mean any decision has been made

4

about the merits of the case, and it should not affect your view of the evidence or influence your

5

deliberations in any manner. You must not infer anything about the merits of this case based on the fact

6

that it is a class action.

7

8

**Authority:**

9

*Ilana FARAR, et al., Plaintiffs, v. BAYER AG, et al., Defendants.*, 2019 WL 1292536 (N.D. Cal.), Dkt.

10

No. 296, Jury Instructions, at 6.

11

**GM Argument:**

12

     GM's proposed Instruction No. 5 instructs the jury not to make any inferences, in favor or against

13

either of the parties, about the merits of the case because it is a class action.  This is a necessary instruction

14

to ensure the jury does not allow preconceived notions of what a class action is (or is not) to color their

15

opinions of this case.  GM based this proposed instruction on an instruction that the Northern District of

16

California recently gave in a similar class action.  *Ilana FARAR, et al., Plaintiffs, v. BAYER AG, et al.,*

17

*Defendants.*, 2019 WL 1292536 (N.D. Cal. 2019), Dkt. No. 296, Jury Instructions, at 6.

18

19

20

21

22

23

24

25

26

27

28

1

2

**DISPUTED INSTRUCTION NO. 5 RE NO INFERENCE FROM CLASS ACTION OFFERED**

**BY GM – PLAINTIFFS' RESPONSE**

3

Plaintiffs disagree that this jury instruction is necessary. CACI 115 already provides the jury with

4

a helpful description of what it means for this case to be a class action. In particular, the instruction that

5

the fact that this case is a class action "should not affect your view of the evidence or influence your

6

deliberations in any manner" is overbroad, as the jury will be asked to enter findings that will apply to

7

the Classes as a whole and will necessarily analyze the evidence with that in mind.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED INSTRUCTION NO. 6 RE OUTLINE OF TRIAL**

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.21

**STIPULATED INSTRUCTION NO. 7 RE BURDEN OF PROOF - PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.6

**STIPULATED INSTRUCTION NO. 8 RE WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

       1.      the sworn testimony of any witness;

       2.      the exhibits that are admitted into evidence;

       3.      any facts to which the lawyers have agreed; and

       4.      any facts that I [may instruct] [have instructed] you to accept as proved.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.9

**STIPULATED INSTRUCTION NO. 9 RE WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered.  In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)     Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.10

**STIPULATED INSTRUCTION NO. 10 RE EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.11

1

**STIPULATED INSTRUCTION NO. 11 RE DIRECT AND CIRCUMSTANTIAL EVIDENCE**

2

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as

3

testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence

4

is proof of one or more facts from which you could find another fact.  You should consider both kinds of

5

evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial

6

evidence.  It is for you to decide how much weight to give to any evidence.

7

8

**Authority:**

9

Ninth Circuit Manual of Model Civil Jury Instructions § 1.12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**STIPULATED INSTRUCTION NO. 12 RE RULING ON OBJECTIONS**

2       There are rules of evidence that control what can be received into evidence.  When a lawyer asks

3  a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted

4  by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be

5  answered, or the exhibit received.  If I sustain the objection, the question cannot be answered, and the

6  exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question

7  and must not guess what the answer might have been.

8       Sometimes I may order that evidence be stricken from the record and that you disregard or ignore

9  that evidence.  That means when you are deciding the case, you must not consider the stricken evidence

10  for any purpose.

11

12  **Authority:**

13  Ninth Circuit Manual of Model Civil Jury Instructions § 1.13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED INSTRUCTION NO. 13 RE CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.14

**STIPULATED INSTRUCTION NO. 14 RE CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use the Internet or any other resource

to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.15

**STIPULATED INSTRUCTION NO. 15 RE PUBLICITY DURING TRIAL**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies.  If any juror is exposed to any outside information, please notify me immediately.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.16

**STIPULATED INSTRUCTION NO. 16 RE NO TRANSCRIPT AVAILABLE TO JURY**

I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.17

1

**STIPULATED INSTRUCTION NO. 17 RE TAKING NOTES**

2

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please

3

keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking distract you.

4

When you leave, your notes should be left in the jury room.  No one will read your notes.

5

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are

6

only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

7

8

**Authority:**

9

Ninth Circuit Manual of Model Civil Jury Instructions § 1.18

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED INSTRUCTION NO. 18 RE BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.20

**STIPULATED INSTRUCTION NO. 19 RE DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of [*name of witness*] was taken on [*date*].  Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 2.4

**STIPULATED INSTRUCTION NO. 20 RE IMPEACHMENT EVIDENCE – WITNESS**

The evidence that a witness has been convicted of a crime or lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 2.9

1

**STIPULATED INSTRUCTION NO. 21 RE USE OF INTERROGATORIES**

2

Evidence will now be presented to you in the form of answers of one of the parties to written

3

interrogatories submitted by the other side.  These answers were given in writing and under oath before

4

the trial in response to questions that were submitted under established court procedures.  You should

5

consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

6

7

**Authority:**

8

Ninth Circuit Manual of Model Civil Jury Instructions § 2.11

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STIPULATED INSTRUCTION NO. 22 RE EXPERT OPINION

You will hear testimony from Dr. Werner Dahm, Edward Stockton, Robert Kuhn, Dr. Michael Keeley, and Dr. Rene Befurt, who will testify to opinions and the reasons for their opinions. This opinion testimony is allowed because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 2.13

1

**STIPULATED INSTRUCTION NO. 23 RE CHARTS AND SUMMARIES NOT RECEIVED IN**

2

**EVIDENCE**

3

Certain charts and summaries not admitted into evidence may be shown to you in order to help

4

explain the contents of books, records, documents, or other evidence in the case.  Charts and summaries

5

are only as good as the underlying evidence that supports them.  You should, therefore, give them only

6

such weight as you think the underlying evidence deserves.

7

8

**Authority:**

9

Ninth Circuit Manual of Model Civil Jury Instructions § 2.14

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STIPULATED INSTRUCTION NO. 24 RE CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 2.15

**STIPULATED INSTRUCTION NO. 25 RE EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits.  You will also be provided with a paper list of all exhibits received in evidence.  You may request a paper copy of any exhibit received in evidence by sending a note through the clerk.  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any nonjuror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case.  You may not use the computer for any other purpose.  At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material.  Do not attempt to alter the computer to obtain access to such materials.  If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials.  Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 2.16

**STIPULATED INSTRUCTION NO. 26 RE CORPORATIONS AND PARTNERSHIPS – FAIR TREATMENT**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 4.1

**STIPULATED INSTRUCTION NO. 27 RE LIABILITY OF CORPORATIONS – SCOPE OF AUTHORITY NOT IN ISSUE**

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 4.2

1

**DISPUTED INSTRUCTION NO. 28 RE DAMAGES – PROOF OFFERED BY PLAINTIFFS**

2

3

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

4

5

6

7

8

9

If you find that the Plaintiffs have met their burden of proof for all elements of their claims as to themselves and the other Class members, only then must you determine their damages.  The Plaintiffs have the burden of proving their individual and classwide damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the Plaintiffs and Class members for any injury you find was caused by GM.  You may not consider theoretical, hypothetical, or unmaterialized injuries or harm in determining this amount of money.

10

11

12

13

In deciding this amount, you will consider only the Plaintiffs' economic loss, if any, caused by GM. The Plaintiffs do not claim damages for personal injury or emotional distress. The economic harm Plaintiffs seek to recover is only the difference between the purchasing price of the Class Vehicles and the market value of the Class Vehicles if the alleged defect was known.

14

15

It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

16

17

**Authority:**

18

Ninth Circuit Manual of Model Civil Jury Instructions § 5.1

19

**Argument:**

20

21

22

23

24

25

Plaintiffs' instruction frames the jury's findings as pertaining to Plaintiffs "and *the* other class members," as opposed to Plaintiffs "and *all* other class members."  This distinction is crucial to clarifying the jury's task at hand.  This Court has already held on at least five occasions[1] that Plaintiffs have met the requirements of Rule 23 with respect to the three certified classes.  These rulings reflect the Court's findings that the questions raised by Plaintiffs' claims and those of the other class members are common and can be answered with common proof.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)

26

27

28

[1] *See* Dkt. No. 237 (granting Plaintiffs' first motion for class certification); Dkt. No. 278 (denying GM's motion to decertify the California Class); Dkt. No. 320 (granting Plaintiffs' second motion for class certification); Dkt. No. 354 (denying GM's motion to certify all three classes); Dkt. No. 400 (denying GM's motion for leave to file another decertification motion).

1   ("What matters to class certification [is] the capacity of a classwide proceeding to generate common

2   *answers* apt to drive the resolution of the litigation."). In other words, a finding that Rule 23 is satisfied

3   is a finding that, "the same evidence will suffice for each member to make a prima facie showing [or] the

4   issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442,

5   453 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)).

6         GM's instruction to the jury to decide whether Plaintiffs have proven the claims of "all other class

7   members" ignores the role that common proof will play in this class trial. The "same evidence" Plaintiffs

8   use to prove their claims "will suffice for each member" to prove their claims as well. *See id.* Thus, the

9   jury's finding for Plaintiffs will also be a finding for "the other class members." GM's competing

10  proposal, in effect, seeks the jury to reconsider this Court's class certification rulings. If GM believes

11  that evidence will come to light in the class trial that casts those rulings in doubt, it can seek a fourth bite

12  at the decertification apple, but it is not the jury's province to rehear class certification issues that this

13  Court has already resolved.

14        Additionally, GM's insertion of "proximate" in the pattern jury instruction is unhelpful and

15  misleading. *See* Plaintiffs' Response to Disputed Instruction No. 37.

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 28 RE DAMAGES – PROOF OFFERED BY GM**

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find that the Plaintiffs have met their burden of proof for all elements of their claims as to themselves and all other Class members, only then must you determine their damages.  The Plaintiffs have the burden of proving their individual and classwide damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the Plaintiffs and Class members for any injury you find was proximately caused by GM.  You may not consider theoretical, hypothetical, or unmaterialized injuries or harm in determining this amount of money.

In deciding this amount, you will consider only the Plaintiffs' economic loss, if any, proximately caused by GM. The Plaintiffs do not claim damages for personal injury or emotional distress. The economic harm Plaintiffs seek to recover is only the difference between the purchasing price of the Class Vehicles and the market value of the Class Vehicles if the alleged defect was known.

It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 5.1

**GM Argument:**

Relying on Ninth Circuit Manual of Model Civil Jury Instructions § 5.1, GM submits a standard instruction on damages and proof.  GM's proposed instruction correctly informs the jury that it must determine whether "Plaintiffs have met their burden of proof for all elements of their claims as to themselves and all other Class members."  Plaintiffs' proposed language, on the other hand suggests that Plaintiffs need only prove all elements of their claims as to "other Class members."  Suggesting to the jury that Plaintiffs need only prove their claims as to some undefined amount of "other" class members is incorrect.  The law is clear that plaintiffs at trial must prove the elements of their claims for all members of the certified class.  Instructing the jury to allow class-wide relief when plaintiffs only meet their burden for some, but not all, class members would violate Rule 23 and The Rules Enabling Act, and contravene

Supreme Court precedent. *See* 28 U.S.C. § 2075(b); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.") (citation omitted);  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 2244, 138 L. Ed. 2d 689 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right[.]'") (citation omitted).

**DISPUTED INSTRUCTION NO. 29 RE JURORS NOT TO CONSIDER ATTORNEY FEES AND COURT COSTS OFFERED BY GM**

You must not consider, or include as part of any award, attorney fees or expenses that the parties incurred in bringing or defending this lawsuit.

**Authority:**

CACI 3964

**GM Argument:**

GM's proposed Instruction No. 29 is California Civil Jury Instruction No. 3964 and directs the jury not to consider attorney fees or expenses incurred by either party.  This instruction is necessary to prevent the jury from modifying its verdict or award based on speculation as to what the parties may or may not have spent bringing or defending this lawsuit.

1

2

**DISPUTED INSTRUCTION NO. 29 RE JURORS NOT TO CONSIDER ATTORNEY FEES AND COURT COSTS OFFERED BY GM – PLAINTIFFS' RESPONSE**

3

Plaintiffs disagree that this jury instruction is necessary. The other stipulated instructions

4

already lay out clearly what the jury should consider when awarding damages. This additional

5

instruction runs the risk of potentially confusing the jury.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 30 RE ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES OFFERED BY GM**

The arguments of the attorneys are not evidence of damages. Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

**Authority:**

CACI 3925

**GM Argument**:

GM's proposed Instruction No. 30 is California Civil Jury Instruction No. 3925 and explains that attorney argument is not evidence of damages.  This instruction makes clear to the jury that they must consider only the evidence in front of them rather than rely on rhetorical or argumentative characterizations of the alleged damages from either party's attorneys.

1

2

**DISPUTED INSTRUCTION NO. 30 RE ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES OFFERED BY GM – PLAINTIFFS' RESPONSE**

3

Plaintiffs disagree that this jury instruction is necessary. As with Disputed Instruction No. 29,

4

this instruction adds nothing helpful to the other stipulated instructions that already lay out clearly what

5

the jury should consider when awarding damages. Additionally, this instruction may mislead the jury

6

into inappropriately disregarding arguments of counsel that may be helpful to the issue of damages.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED INSTRUCTION NO. 31 RE DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.


**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 3.1

**STIPULATED INSTRUCTION NO. 32 RE CONSIDERATION OF EVIDENCE – CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be

influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 3.2

**STIPULATED INSTRUCTION NO. 33 RE COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone— including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 3.3

1

**STIPULATED INSTRUCTION NO. 34 RE RETURN OF VERDICT**

2

A verdict form has been prepared for you.  After you have reached unanimous agreement on a

3

verdict, your foreperson should complete the verdict form according to your deliberations, sign and date

4

it, and advise the clerk that you are ready to return to the courtroom.

5

6

**Authority:**

7

Ninth Circuit Manual of Model Civil Jury Instructions § 3.5

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED INSTRUCTION NO. 35 RE BURDEN OF PROOF**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.6.

**STIPULATED INSTRUCTION NO. 36 RE DIFFERENT LEGAL RIGHTS**

You should decide the case as to each plaintiff separately. Unless otherwise stated, the instructions apply to all parties.

**Authority:**

Ninth Circuit Manual of Model Civil Jury Instructions § 1.8.

1

**DISPUTED INSTRUCTION NO. 37 RE PROXIMATE CAUSE OFFERED BY GM**

2

Throughout these instructions, I will use the expression "proximate cause," which I will explain.

3

A party who seeks to recover for economic harm must prove that the defendant was responsible, and that

4

the defendant's actions were a proximate cause of the economic harm. Proximate cause is an act that in

5

the natural and continuous sequence directly produced the harm, and without which, the harm would not

6

have occurred.

7

8

**Authority:**

9

*In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 1:08-wp-65000-CAB (N.D.

10

Ohio Oct. 29, 2014), Dkt No. 488, Tr. of Jury Trial Proceedings at 3479:7-10.

11

**GM Argument:**

12

GM's proposed Instruction No. 37 provides a helpful definition of proximate cause to aid the jury

13

in reaching its decision.  The jury must determine whether GM's alleged conduct caused Plaintiffs'

14

alleged damages for each of their claims.  Defining proximate cause separately from other instructions

15

will allow the jury to familiarize itself with the concept and minimize confusion.   GM drafted this

16

proposed instruction based on one given by the Northern District of Ohio in a similar class action.  *In re*

17

*Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 1:08-wp-65000-CAB (N.D. Ohio

18

Oct. 29, 2014).

19

20

21

22

23

24

25

26

27

28

1

**DISPUTED INSTRUCTION NO. 37 RE PROXIMATE CAUSE OFFERED BY GM –**

2

**PLAINTIFFS' RESPONSE**

3

Plaintiffs disagree that this jury instruction should be provided. It proposes instructing the jury

4

on "proximate cause," a complex aspect of causation that even jurists and attorneys struggle to define.

5

*See Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 352, 162 N.E. 99, 103 (1928). As Justice Ginsburg

6

noted:

7

> If the term "proximate cause" is confounding to jurists, it is even more bewildering to
> jurors. Nothing in today's opinion should encourage courts to use "proximate cause," or

8

> any term like it, in jury instructions. "[L]egal concepts such as 'proximate cause' and

9

> 'foreseeability' are best left to arguments between attorneys for consideration by judges
> or justices; they are not terms which are properly submitted to a lay jury, and when

10

> submitted can only serve to confuse jurors and distract them from deciding cases based
> on their merits." *Busta v. Columbus Hospital Corp.*, 276 Mont. 342, 371, 916 P.2d 122,

11

> 139 (1996). *Accord Mitchell v. Gonzales*, 54 Cal.3d 1041, 1050, 1 Cal.Rptr.2d 913, 819
> P.2d 872, 877 (1991) ("It is reasonably likely that when jurors hear the term 'proximate

12

> cause' they may misunderstand its meaning.").

13

*Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 180, (2007) (Ginsburg, J., concurring) (quotations omitted).

14

Neither is it necessary nor appropriate in this case to provide such an instruction. Nothing in this case

15

requires the jury to determine whether the way in which GM may have caused Plaintiffs' damages was

16

"proximate" or not; none of GM's defenses invite that level of legal precision. The term "proximate

17

cause" appears nowhere in any pattern jury instruction proposed by the parties, and Plaintiffs oppose any

18

attempt by GM to insert it unnecessarily.

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 38 RE BREACH OF IMPLIED WARRANTY UNDER**

**CALIFORNIA SONG-BEVERLY CONSUMER WARRANTY ACT OFFERED BY**

**PLAINTIFFS**

Plaintiff Tarvin claims that GM breached its implied warranty of merchantability under California's Song-Beverly Consumer Warranty Act. The Song-Beverly Consumer Warranty Act provides that every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's implied warranty that the goods are merchantable.

To be merchantable, goods must be: (1) of the same quality as those generally acceptable in the trade, and (2) fit for the ordinary purposes that they are used.

In the case of automobiles, to be fit for its ordinary purpose, a vehicle must be: (1) safe, (2) reliable, and (3) substantially free of defects.

Just because a vehicle can provide basic transportation does not mean that the implied warranty of merchantability has been met. In other words, the mere fact that a vehicle can provide transportation from Point A to Point B does NOT render a vehicle "merchantable" under the Song-Beverly Consumer Warranty Act. The implied warranty of merchantability can still be breached even if a car provides transportation from Point A to Point B if the vehicle is unreliable, unsafe, or not substantially free of defects.

To establish this claim on his own behalf, and on behalf of the California Class, Plaintiff Tarvin must prove all of the following:

1.  That Plaintiff Tarvin and the other California Class members purchased or leased a Class Vehicle manufactured by General Motors;

2.  That at the time of purchase or lease, General Motors was in the business of manufacturing the Class Vehicles; and

3.  That the Class Vehicles are any of the following: (a) not substantially free of defects, (b) unreliable, or (c) unsafe.

4.  That the breach of implied warranty caused Plaintiff Tarvin's and the other California Class members' damages.

1    If you find that Plaintiff Tarvin has proven by a preponderance of the evidence that GM breached

2    the implied warranty of merchantability, then your verdict on this claim must be for Plaintiff Tarvin and

3    the California Class. If, on the other hand, you find otherwise, your verdict on this claim must be for

4    General Motors.

5    As a reminder, the California Class, represented by Plaintiff Tarvin, is defined as: All current

6    owners or lessees of a Class Vehicle that was purchased or leased in new condition in the State of

7    California.

8    The "Class Vehicles" are 2011-2014 Chevrolet Avalanches, Silverados, Suburbans, and Tahoes,

9    and 2011-2014 GMC Sierras, Yukons, and Yukon XLs with Generation IV Vortec 5300 LC9 engines

10   manufactured on or after February 10, 2011.

11

12   **Authority:**

13   CACI 3210 (modified); Cal. Civ. Code § 1792; *Sloan v. Gen. Motors LLC*, 2020 WL 1955643 (N.D. Cal.

14   2020); *In re MyFord Touch Consumer Litig.*, 2018 WL 887534 (N.D. Cal. February 14, 2018); *Isip v.*

15   *Mercedes-Benz USA, LLC,* 155 Cal. App. 4th 19 (2007); *Brand v. Hyundai Motor Corp.*, 226 Cal. App.

16   4th 1538 (2014).

17   **Argument:**

18   The primary point of dispute is how the jury should be instructed with respect to the finding of

19   whether a vehicle is unmerchantable.  The parties agree that vehicles must be fit for the ordinary purpose

20   for which they are used.  Plaintiffs propose that the jury be instructed on what it means, under California

21   law, for a vehicle to be fit for ordinary use.  Defendants do not otherwise propose that the jury receive

22   any guidance on the phrase "fit for ordinary purpose" other than limiting it to "ordinary purpose of

23   providing transportation."

24   Plaintiffs' proposed instruction is superior because it clarifies for the jury what is meant by the

25   ambiguous phrase "ordinary purpose" within the vehicle context.  As evidenced by California case law,

26   that is a phrase that has been the subject of extensive interpretation.  *See, e.g., Sloan v. Gen. Motors LLC*,

27   2020 WL 1955643, at *27-28 (N.D. Cal. April 23, 2020) (citing cases).  As this Court recognized,

28   California courts have identified three factors that determine fitness for ordinary use: reliability, safety,

1   and that a vehicle not be substantially free of defects.  *Id.* (citing *In re MyFord Touch Consumer Litig.*,

2   2018 WL 887534 (N.D. Cal. February 14, 2018); *Isip v. Mercedes-Benz USA, LLC,* 155 Cal. App. 4th 19

3   (2007); *Brand v. Hyundai Motor Corp.*, 226 Cal. App. 4th 1538 (2014)).   The jury should be informed

4   that these are the factors that determine, under California law, whether a vehicle is fit for ordinary use.

5   *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("A party is entitled to an instruction about his

6   or her theory of the case if it is supported by law and has foundation in the evidence.").

7        Further, Defendants' interpretation is misleading because it suggests that a vehicle is fit for

8   ordinary use if it can provide transportation from point A to point B.  That is contrary to both California

9   law, and the law of this case.  *Sloan*, 2020 WL 1955643, at *28 ("Moreover, courts reject the notion that

10   a vehicle is fit for its ordinary purpose 'merely because [it] provides transportation from point A to point

11   B.'") (quoting *In re MyFord Touch*, 291 F. Supp. 3d at 945-46 and *Isip*, 155 Cal. App. 4th at 27.").

12        Finally, Plaintiffs' instruction frames the jury's findings as pertaining to Plaintiff "and ***the*** other

13   class members," as opposed to Plaintiff "and ***all*** other class members."  This distinction is crucial to

14   clarifying the jury's task at hand.  This Court has already held on at least five occasions[2] that Plaintiffs

15   have met the requirements of Rule 23 with respect to the three certified classes.  These rulings reflect the

16   Court's findings that the questions raised by Plaintiffs' claims and those of the other class members are

17   common and can be answered with common proof.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

18   350 (2011) ("What matters to class certification [is] the capacity of a classwide proceeding to generate

19   common *answers* apt to drive the resolution of the litigation.").  In other words, a finding that Rule 23 is

20   satisfied is a finding that, "the same evidence will suffice for each member to make a prima facie showing

21   [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S.

22   442, 453 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)).

23        GM's instruction to the jury to decide whether Plaintiff has proven the claims of "all other class

24   members" ignores the role that common proof will play in this class trial.  The "same evidence" Plaintiff

25   uses to prove his claims "will suffice for each member" to prove their claims as well.  *See id.*  Thus, the

26

27   [2] *See* Dkt. No. 237 (granting Plaintiffs' first motion for class certification); Dkt. No. 278 (denying GM's
       motion to decertify the California Class); Dkt. No. 320 (granting Plaintiffs' second motion for class

28   certification); Dkt. No. 354 (denying GM's motion to certify all three classes); Dkt. No. 400 (denying
       GM's motion for leave to file another decertification motion).

jury's finding for Plaintiff will also be a finding for "the other class members." GM's competing proposal, in effect, seeks the jury to reconsider this Court's class certification rulings.  If GM believes that evidence will come to light in the class trial that casts those rulings in doubt, it can seek a fourth bite at the decertification apple, but it is not the jury's province to rehear class certification issues that this Court has already resolved.

Additionally, GM's use of "proximate causation" is unhelpful and misleading.  *See* Plaintiffs' Response to Disputed Instruction No. 37.

**DISPUTED INSTRUCTION NO. 38 RE BREACH OF IMPLIED WARRANTY UNDER CALIFORNIA SONG-BEVERLY CONSUMER WARRANTY ACT OFFERED BY GM**

Plaintiff Tarvin claims his vehicle did not have the minimum level of quality that a buyer would reasonably expect. This is known as "breach of an implied warranty." On this issue the burden of proof is on Plaintiff Tarvin.

To establish this claim on his own behalf, and on behalf of the California Class, Plaintiff Tarvin must prove all of the following by a preponderance of the evidence:

1. That Plaintiff Tarvin's vehicle and all other California Class Vehicles were not fit for the ordinary purpose of providing transportation at the time of sale;

2. That Plaintiff Tarvin and each class member suffered damages; and

3. That the breach of implied warranty proximately caused Plaintiff Tarvin's and all of the other California Class members' damages.

**Authority:**

CACI 3210 (modified); *American Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291, 1295–1296, 44 Cal.Rptr.2d 526 (1995); *Kramer v. Toyota Motor Corp.*, 668 F. App'x 765, 766 (9th Cir. 2016); *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014); *Taragan v. Nissan N. Am., Inc.*, No. C 09-3660 SBA, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013).

**GM argument:**

GM's proposed jury instructions follow those set forth by the Judicial Council of California Advisory Committee on Civil Jury Instructions, stating simply and clearly the elements the jury must find by a preponderance of the evidence in order for find in favor of Plaintiffs on their claim for breach of the implied warranty under the Song-Beverly Consumer Warranty Act. *See* CACI 3210; *see also Gutierrez v. Carmax Auto Superstores California*, 19 Cal. App. 5th 1234, 1247, 248 Cal. Rptr. 3d 61, 74–75 (2018) (to establish a breach of the Song-Beverly Consumer Warranty Act's implied warranty of merchantability plaintiff must prove that (1) the vehicle at issue was not fit for ordinary purposes, (2)

plaintiff was injured, and (3) the injury was proximately caused by the alleged breach of the implied warranty).

Plaintiffs, to the contrary, eschew simplicity in favor of ambiguity, offering to present the jury with confusing and competing standards for unmerchantability, unnecessary attorney colloquy, improper emphasis, and superfluous and prejudicial "reminders" regarding the California class definition where none are warranted or appropriate. Plaintiffs' suggested instruction is also woefully incomplete, implying that a breach of the implied warranty alone without a finding of class-wide causation and damages is sufficient for a verdict in favor of plaintiff Tarvin and the California class. But it is indisputable as matter of California law, the Rules Enabling Act, and Fed. R. Civ. P. 23 that in order for the jury to possibly find for plaintiff Tarvin and the California class, it must first find by a preponderance of the evidence *that plaintiff Tarvin and each California class member* suffered damages which were proximately by a breach of the implied warranty of merchantability. CACI 3210; *Gutierrez*, 19 Cal. App. 5th at 1247; 28 U.S.C. § 2075(b); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.") (citation omitted); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 2244, 138 L. Ed. 2d 689 (1997).

1

2

**STIPULATED INSTRUCTION NO. 39 RE AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS UNDER CALIFORNIA LAW**

3        GM contends that plaintiff Tarvin's class action lawsuit alleging claims on behalf of himself and

4   the California Class was not filed within the period of time set by law. Plaintiffs filed this lawsuit on

5   December 19, 2016. The applicable statute of limitations for a claim of breach of implied warranty under

6   the Song Beverly Consumer Warranty Act requires that the plaintiff to file a lawsuit within four years

7   from the date of vehicle purchase.

8        Therefore, if you find in favor of plaintiff Tarvin and the California Class members, you must

9   then determine whether GM has proven by a preponderance of the evidence that the statute of limitations

10   bars the claims of Plaintiff Tarvin or any of the California Class members.

11

12   **Authority:**

13   CACI 3222 (modified); *Krieger v. Nick Alexander Imports, Inc.*, 285 Cal. Rptr. 717, 722 (Cal. Ct. App.

14   1991); *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 291-92 (Cal. Ct. App. 2009); *MacDonald v. Ford

15   Motor Co.*, 37 F. Supp. 3d 1087, 1101-02 (N.D. Cal. 2014).

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 40 RE FRAUDULENT CONCEALMENT TOLLING UNDER CALIFORNIA LAW OFFERED BY PLAINTIFFS**

Plaintiff Tarvin contends that the statutes of limitations for his implied warranty claim under the Song Beverly Consumer Warranty Act and the implied warranty claims of the other California Class members who purchased or leased their Class Vehicles before December 19, 2012 were tolled by the fraudulent concealment doctrine.  If you find that the fraudulent concealment doctrine applies to Plaintiff Tarvin and other California Class members, then their claims for breach of implied warranty under the Song Beverly Consumer Warranty Act are not barred by the four year statute of limitations.

To establish fraudulent concealment tolling, Plaintiff Tarvin must show by a preponderance of the evidence that: GM affirmatively and fraudulently concealed facts that are the basis of his claim and the claims of all California Class members, and that he and the other members of the California Class have an excuse for failing to discover those facts.

To show that the statute of limitations is tolled, Plaintiff Tarvin must prove that GM engaged in an affirmative act of fraudulent concealment as to him and the other members of the California Class. Concealment, by mere silence, is not sufficient.  It is not enough for Plaintiff Tarvin to prove that GM did not notify him or members of the California Class about any design defect.

To prove fraudulent concealment tolling, Plaintiff Tarvin must also show that GM's fraudulent concealment prevented him and the other members of the California Class from discovering the facts giving rise to their claims before December 19, 2012.


**Authority:**

*Investors Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 1533 (Cal. Ct. App. 2011); *Sater v. Chrysler Group LLC*, 2015 WL 736273, at *9 (C.D. Cal. Feb. 20, 2015); *Regents of U. of. Cal. v. Superior Ct.*, 976 P.2d 808, 822-23 (Cal. 1999); *Sloan v. Gen. Motors LLC*, 2020 WL 1955643 (N.D. Cal. 2020).

**Argument:**

Plaintiffs' proposed instruction, unlike the one proposed by GM, properly begins by explaining why fraudulent concealment tolling is relevant and being invoked by Plaintiff Tarvin, and how fraudulent

concealment tolling, if found, affects the statute of limitations.  See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.").

The parties' primary point of dispute is that Plaintiffs seek to inform the jury that, to rely on fraudulent concealment tolling, members of the California Class must have an excuse for failing to discover the facts giving rise to their claim, while GM seeks to instruct the jury that the law imposes a duty to exercise due diligence to discover the fats relating to the claim.  Plaintiffs, not GM, accurately state California law on this issue.  See Investors Equity Life Holding Co. v. Schmidt, 126 Cal. Rptr. 3d 135, 146 (Cal. Ct. App. 20110 ("Plaintiff must show (a) the substantive elements of fraud, and (b) an excuse for late discovery of the facts").

GM also seeks to instruct the Jury that Plaintiff Tarvin must prove that GM engaged in "active conduct to exclude suspicion and prevent inquiry."  This is gratuitous, and GM's cited authority does not stand for the proposition.

Finally, Plaintiffs' instruction frames the jury's findings as pertaining to Plaintiff "and *the* other class members," as opposed to Plaintiff "and *all* other class members."  This distinction is crucial to clarifying the jury's task at hand.  This Court has already held on at least five occasions[3] that Plaintiffs have met the requirements of Rule 23 with respect to the three certified classes.  These rulings reflect the Court's findings that the questions raised by Plaintiffs' claims and those of the other class members are common and can be answered with common proof.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.").  In other words, a finding that Rule 23 is satisfied is a finding that, "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)).

---

[3] *See* Dkt. No. 237 (granting Plaintiffs' first motion for class certification); Dkt. No. 278 (denying GM's motion to decertify the California Class); Dkt. No. 320 (granting Plaintiffs' second motion for class certification); Dkt. No. 354 (denying GM's motion to certify all three classes); Dkt. No. 400 (denying GM's motion for leave to file another decertification motion).

1

2   GM's instruction to the jury to decide whether Plaintiff has proven the claims of "all other class members" ignores the role that common proof will play in this class trial.  The "same evidence" Plaintiff uses to prove his claims "will suffice for each member" to prove their claims as well.  *See id.*  Thus, the jury's finding for Plaintiff will also be a finding for "the other class members." GM's competing proposal, in effect, seeks the jury to reconsider this Court's class certification rulings.  If GM believes that evidence will come to light in the class trial that casts those rulings in doubt, it can seek a fourth bite at the decertification apple, but it is not the jury's province to rehear class certification issues that this Court has already resolved.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 40 RE FRAUDULENT CONCEALMENT TOLLING UNDER CALIFORNIA LAW OFFERED BY GM**

To establish fraudulent concealment, Plaintiff Tarvin must show by a preponderance of the evidence that: GM affirmatively and fraudulently concealed facts that are the basis of his claim and the claims of all California Class members, that he and all other members of the California Class failed to discover those facts despite due diligence.  The law imposes a duty on a plaintiff to exercise reasonable diligence to discover the fraudulent concealment that forms the basis for his claim.

To show that the statute of limitations is tolled, Plaintiff Tarvin must prove that GM engaged in an affirmative act of fraudulent concealment as to him as well as all other members of the California Class.  Concealment, by mere silence, is not sufficient.  It is not enough for Plaintiff Tarvin to prove that GM did not notify him or members of the California Class about any design defect.  Instead, there must be some active conduct to exclude suspicion and prevent inquiry.

To prove fraudulent concealment tolling, Plaintiff Tarvin must also show that GM's fraudulent concealment prevented him and all other members of the California Class from discovering the facts giving rise to their claims before December 19, 2012, despite their exercise of due diligence.

**Authority:**

*Herremans v. BMW of N. Am., LLC*, No. CV 14-02363, 2014 WL 5017843, at *5 (C.D. Cal. Oct. 3, 2014).

**GM Argument**:

GM's proposed Instruction No. 40 accurately instructs the jury on fraudulent concealment tolling, laying out the elements under California law.  Under California law, a plaintiff must "establish that his failure to have notice of his claim was the result of the affirmative conduct by the defendant." *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at *5 (C.D. Cal. Oct. 3, 2014) (citation omitted).  Moreover, a plaintiff must present facts "showing his due diligence in trying to uncover the facts." *Id.* at *6 (citation omitted).

GM's proposed instruction also includes appropriate language to instruct the jury that it must find that Plaintiffs meet their burden for fraudulent concealment tolling with respect to all California class

members.  The law is clear that plaintiffs at trial must prove the elements of their claims for all members of the certified class.  Instructing the jury to allow class-wide relief when plaintiffs only meet their burden for some, but not all, class members would violate Rule 23 and The Rules Enabling Act, and contravene Supreme Court precedent. *See* 28 U.S.C. § 2075(b); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.") (citation omitted); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 2244, 138 L. Ed. 2d 689 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right[.]'") (citation omitted).

Plaintiffs' proposed instruction suggests that any "excuse" for not discovering facts allegedly concealed by GM is sufficient to toll the statute of limitations, which is not the law.   Rather than instructing the jury that it must determine whether plaintiffs investigated as necessary under the law, Plaintiffs' proposed instruction invites the jury to theorize as to reasons other than GM's alleged conduct that prevented Plaintiffs from learning of GM's alleged concealment.

**DISPUTED INSTRUCTION NO. 41 RE BREACH OF IMPLIED WARRANTY OF**

**MERCHANTABILITY UNDER NORTH CAROLINA LAW (N.C. GEN. STAT. § 25-2-314)**

**OFFERED BY PLAINTIFFS**

Plaintiff Davis claims that GM breached its implied warranty of merchantability under North Carolina law.  On this issue the burden of proof is on Plaintiff Davis.

To be merchantable, goods must be fit for the ordinary purposes for which they are used.  Goods that are defective at the point of sale are not merchantable. A product defect may be shown by evidence that a specific defect existed in a product, or, alternatively, a product defect may be inferred from evidence that at product was put to its ordinary use and the product malfunctioned.

A merchant is a person or corporation that deals in goods of the kinds.

Plaintiff Davis, on his own behalf and as to each member of the North Carolina class, must prove, by the greater weight of the evidence, all of the following:

1. GM was a merchant with respect to the Class Vehicles purchased or leased by Plaintiff Davis and the other members of the North Carolina class; and

2. The Class Vehicles were defective at the time of sale; and

3. That Plaintiff Davis and the other members of the North Carolina class suffered damages;

4. That the alleged breach of implied warranty caused the damages to Plaintiff Davis and the other members of the North Carolina class; and

5. That Plaintiff Davis and the other members of the North Carolina class gave timely notice of their claims to GM.

If you find that Plaintiff Davis has proven by a preponderance of the evidence that GM breached the implied warranty of merchantability, then your verdict on this claim must be for Plaintiff Davis and the North Carolina Class. If, on the other hand, you find otherwise, your verdict on this claim must be for General Motors.

As a reminder, the North Carolina Class, represented by Plaintiff Davis, is defined as: All current owners or lessees of a Class Vehicle that was purchased or leased in the State of North Carolina.

The "Class Vehicles" are 2011-2014 Chevrolet Avalanches, Silverados, Suburbans, and Tahoes, and 2011-2014 GMC Sierras, Yukons, and Yukon XLs with Generation IV Vortec 5300 LC9 engines manufactured on or after February 10, 2011.

**Authority:**

NC Pattern Jury Inst. – Civ. 741.20 (modified); N.C. Gen. Stat. § 25-2-104; N.C. Gen. Stat. § 25-2-314; *Sloan v. Gen. Motors LLC*, 2020 WL 1955643 (N.D. Cal. 2020); *DeWitt v. Everready Battery Co., Inc.*, 565 S.E.2d 140 (2002); *Wright v. T & B Auto Sales, Inc.*, 72 N.C. App. 449 (1985).

**Argument:**

The primary point of dispute is how the jury should be instructed with respect to the finding of whether a vehicle is unmerchantable. Plaintiffs propose instructing the jury that a vehicle is unmerchantable if they were "defective at the time of sale." This is the express language used by the North Carolina Supreme Court: "To establish a breach of implied warranty of merchantability under the statute, a plaintiff must prove . . . that the goods did not comply with the warranty in that the goods were defective at the time of sale." *DeWitt v. Eveready Battery Co., Inc.*, 565 S.E.2d 140, 147 (N.C. 2002). Given this clear North Carolina Supreme Court precedent, it would be error not to instruct the jury that a vehicle that is defective at the point of sale is not merchantable.

Likewise, Plaintiff seeks to make clear to the jury that "a product defect may be shown by evidence that a specific defect existed in a product, or, alternatively, a product defect may be inferred from evidence that at product was put to its ordinary use and the product malfunctioned." This is taken directly from the North Carolina Supreme Court's opinion in *DeWitt. Id.*

GM also seeks to include an instruction that the jury must find that the breach of warranty "proximately" caused Plaintiff and the other Class members' damages. The word "proximate" is unnecessarily confusing, for the reasons stated above, at Instruction No. 37, and the word is not used in North Carolina courts' articulation of the elements of breach of implied warranty. *Id.*

Finally, Plaintiffs' instruction frames the jury's findings as pertaining to Plaintiff "and ***the*** other class members," as opposed to Plaintiff "and ***all*** other class members." This distinction is crucial to

clarifying the jury's task at hand.  This Court has already held on at least five occasions[4] that Plaintiffs have met the requirements of Rule 23 with respect to the three certified classes.  These rulings reflect the Court's findings that the questions raised by Plaintiffs' claims and those of the other class members are common and can be answered with common proof.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.").  In other words, a finding that Rule 23 is satisfied is a finding that, "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)).

GM's instruction to the jury to decide whether Plaintiff has proven the claims of "all other class members" ignores the role that common proof will play in this class trial.  The "same evidence" Plaintiff uses to prove his claims "will suffice for each member" to prove their claims as well.  *See id.*  Thus, the jury's finding for Plaintiff will also be a finding for "the other class members." GM's competing proposal, in effect, seeks the jury to reconsider this Court's class certification rulings.  If GM believes that evidence will come to light in the class trial that casts those rulings in doubt, it can seek a fourth bite at the decertification apple, but it is not the jury's province to rehear class certification issues that this Court has already resolved.

---

[4] *See* Dkt. No. 237 (granting Plaintiffs' first motion for class certification); Dkt. No. 278 (denying GM's motion to decertify the California Class); Dkt. No. 320 (granting Plaintiffs' second motion for class certification); Dkt. No. 354 (denying GM's motion to certify all three classes); Dkt. No. 400 (denying GM's motion for leave to file another decertification motion).

## DISPUTED INSTRUCTION NO. 41 RE BREACH OF IMPLIED WARRANTY OF

## MERCHANTABILITY UNDER NORTH CAROLINA LAW (N.C. GEN. STAT. § 25-2-314)

## OFFERED BY GM

Plaintiff Davis claims that GM breached its implied warranty of merchantability under North Carolina law.  On this issue the burden of proof is on Plaintiff Davis. This means that Plaintiff Davis, on his own behalf and as to each member of the North Carolina class, must prove, by the greater weight of the evidence, all of the following:

1.   GM was a merchant with respect to the Class Vehicles purchased or leased by Plaintiff Davis and the other members of the North Carolina class; and

2.   That plaintiff Davis and all other North Carolina Class Vehicles were not fit for the ordinary purpose of providing transportation at the time of sale; and

3.   That plaintiff Davis and all other member of the North Carolina class suffered damages;

4.   That the alleged breach of implied warranty proximately caused the damages to plaintiff Davis and all other members of the North Carolina class; and

5.   That plaintiff Davis and all other members of the North Carolina class gave timely notice of their claims to GM.

**GM Authority:**

NC Pattern Jury Inst. – Civ. 741.20 (modified); *Ford Motor Credit Co. LLC v. McBride*, 257 N.C. App. 590, 594, 811 S.E.2d 640, 645 (2018);

**GM Argument:**

First, GM's proposed Instruction No. 41 simply and clearly states the elements the jury must find by a preponderance of the evidence in order for find in favor of Plaintiff Davis and the North Carolina Class on their claim for breach of the implied warranty of merchantability under North Carolina law.   As laid out in GM's proposed instruction, Plaintiffs must show "the existence of a defect at the time of sale and the defect causing damages during ordinary use."  DeWitt v. Eveready Battery Co., 355 N.C. 672, 689, 565 S.E.2d 140, 150–51 (2002).  North Carolina law also requires that Plaintiffs show that GM was a merchant that sold the vehicles to Plaintiff Davis and all other members of the North Carolina class;

1   that Davis and all other members of the North Carolina class suffered damages; that the alleged breach

2   proximately caused the damages to Plaintiff Davis and all other members; and that Plaintiff Davis and

3   all other members of the North Carolina class gave timely notice to GM.   Wright v. T & B Auto Sales,

4   Inc., 72 N.C. App. 449, 454, 325 S.E.2d 493, 496 (1985).

5        Second, GM's proposed instruction also includes appropriate language to instruct the jury that it

6   must find that Plaintiffs meet their burden for this claim with respect to all North Carolina class members.

7   Plaintiffs' characterization that a finding in favor of Plaintiff Davis as an automatic finding in favor of

8   the North Carolina Class is incorrect. The law is clear that plaintiffs at trial must prove the elements of

9   their claims for all members of the certified class.  Instructing the jury to allow class-wide relief when

10  plaintiffs only meet their burden for some, but not all, class members would violate Rule 23 and The

11  Rules Enabling Act, and contravene Supreme Court precedent. *See* 28 U.S.C. § 2075(b); *TransUnion*

12  *LLC v. Ramirez*, 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021) ("Article III does not give federal courts

13  the power to order relief to any uninjured plaintiff, class action or not.") (citation omitted); *Amchem*

14  *Prod., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 2244, 138 L. Ed. 2d 689 (1997) ("Rule 23's

15  requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act,

16  which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right[.]'")

17  (citation omitted).

18       Third, GM's proposed instruction omits unnecessary preamble that will not assist the jury in

19  reaching a verdict.  Plaintiffs propose introductory paragraphs that include subjective definitions of

20  "merchantable" and "merchant" and hypothetical ways a plaintiff could show a product defect.  This

21  unnecessary preamble is not relevant because it is extraneous to the elements of a claim for breach of the

22  implied warranty of merchantability. Jury instructions exist to aid the jury in applying the law as written,

23  not to offer hypothetical paths to a verdict in favor of Plaintiffs. Accordingly, including Plaintiffs'

24  irrelevant instructions will only confuse, mislead and distract the jury, rather than aid the jury in

25  considering the elements of Plaintiffs' claims.

26

27

28

**DISPUTED INSTRUCTION NO. 42 RE AFFIRMATIVE DEFENSE – STATUTE OF**

**LIMITATIONS UNDER NORTH CAROLINA LAW OFFERED BY PLAINTIFFS**

The applicable statute of limitations for a claim of breach of implied warranty of merchantability under North Carolina law provides that the claim must be filed within four years of the date of vehicle purchase. Plaintiffs filed this lawsuit on December 19, 2016.

Therefore, if you find in favor of Plaintiff Davis and the North Carolina Class members, you must then determine whether GM has proven by a preponderance of the evidence that the statute of limitations bars the claims of Plaintiff Davis or the other North Carolina Class members.

**Authority:**

N.C. Gen. Stat. Ann. § 25-2-725; *Overton v. Overton*, 129 S.E.2d 593, 596-97 (N.C. 1963).

**Argument:**

There are two primary points of dispute.  First, GM states that the statute of limitations is three years, while Plaintiffs instruct the jury that it is four years.  Plaintiffs' instruction of four years is correct. Pursuant to the Uniform Commercial Code, under which Plaintiff Davis brings his implied warranty claim, an action for breach must be commenced "within four years." N.C. Gen. Stat. Ann. § 25-2-725. North Carolina courts have looked outside of the UCC and applied a three-year statute of limitations to implied warranty when those claims are asserted to recover damages for personal injury or damage to property, but that is not the case here.  *see also Hanover Ins. Co. v. Amana Refrigeration, Inc.*, 415 S.E.2d 99, 101 (N.C. Ct. App. 1992) (distinguishing the four-year statute of limitations that applies to claims to recover value of defective product from the three-year statute of limitations that applies to claims for personal injury or damage to property).

GM also argues that Plaintiff bears the burden of proving that his claim is not barred by the statute of limitations.  But a statute of limitations is an affirmative defense on which GM bears the burden of proof.  *Overton v. Overton*, 129 S.E.2d 593, 597 (N.C. 1963).

Finally, Plaintiffs' instruction frames the jury's findings as pertaining to Plaintiff "and *the* other class members," as opposed to Plaintiff "and *all* other class members."  This distinction is crucial to

clarifying the jury's task at hand.  This Court has already held on at least five occasions[5] that Plaintiffs have met the requirements of Rule 23 with respect to the three certified classes.  These rulings reflect the Court's findings that the questions raised by Plaintiffs' claims and those of the other class members are common and can be answered with common proof.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.").  In other words, a finding that Rule 23 is satisfied is a finding that, "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)).

GM's instruction to the jury to decide whether Plaintiff has proven the claims of "all other class members" ignores the role that common proof will play in this class trial.  The "same evidence" Plaintiff uses to prove his claims "will suffice for each member" to prove their claims as well.  *See id.*  Thus, the jury's finding for Plaintiff will also be a finding for "the other class members." GM's competing proposal, in effect, seeks the jury to reconsider this Court's class certification rulings.  If GM believes that evidence will come to light in the class trial that casts those rulings in doubt, it can seek a fourth bite at the decertification apple, but it is not the jury's province to rehear class certification issues that this Court has already resolved.

---

[5] *See* Dkt. No. 237 (granting Plaintiffs' first motion for class certification); Dkt. No. 278 (denying GM's motion to decertify the California Class); Dkt. No. 320 (granting Plaintiffs' second motion for class certification); Dkt. No. 354 (denying GM's motion to certify all three classes); Dkt. No. 400 (denying GM's motion for leave to file another decertification motion).

**DISPUTED INSTRUCTION NO. 42 RE AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS UNDER NORTH CAROLINA LAW OFFERED BY GM**

Plaintiff Davis claims that his class action lawsuit alleging claims on behalf of himself and the North Carolina Class was filed within the period of time set by law. The applicable statute of limitations for a claim of breach of implied warranty of merchantability under North Carolina law must be filed within three years of the date of vehicle purchase. Plaintiffs filed this lawsuit on December 19, 2016.

On this issue, the burden of proof is on Plaintiff Davis. This means that Plaintiff Davis must prove, by the preponderance of the evidence, that Plaintiff Davis and all other North Carolina Class members purchased their vehicles less than three years before December 19, 2016.  Therefore, if you find in favor of Plaintiff Davis and all other North Carolina Class members, you must then determine whether Plaintiff Davis and all other North Carolina Class members have proven by a preponderance of the evidence that the statute of limitations does not prohibit the claim.

**Authority:**

NC Pattern Jury Inst. – Civ. 744.18 (modified); N.C. Gen. Stat. Ann. § 1-52(1); *Town of Littleton v. Layne Heavy Civ., Inc*., 261 N.C. App. 88, 91, 819 S.E.2d 101, 103 (2018); *Smith v. Cessna Aircraft Co., Inc*., 571 F. Supp. 433, 436-37 (M.D.N.C. 1983); *Shepard v. Ocwen Fed. Bank, FSB*, 361 N.C. 137, 139, 638 S.E.2d 197, 199 (2006) (quoting *Horton v. Carolina Medicorp, Inc.,* 344 N.C. 133, 136, 472 S.E.2d 778, 780 (1996)).

**GM Argument:**

GM's proposed instruction on the statute of limitations for a claim of breach of implied warranty of merchantability under North Carolina law does precisely that: instructs the jury on (1) the definition of statutes of limitation (to ensure that plaintiff Davis and the North Carolina Class' claims are timely), (2) plaintiff Davis and the North Carolina Class's burden of proof (preponderance of the evidence), and (3) the length of the applicable statute of limitations under North Carolina law (3 years). NC Pattern Jury Inst. – Civ. 744.18 (modified); *Town of Littleton v. Layne Heavy Civ., Inc*., 261 N.C. App. 88, 91, 819 S.E.2d 101, 103 (2018) (citing N.C. Gen. Stat. Ann. § 1-52(1)).

Plaintiffs, to the contrary, would not only have the jury left uninformed as to the meaning and purpose of statutes of limitation under North Carolina law and plaintiff Davis and North Carolina Class's burden of proof to satisfy such, *they would have the jury apply the wrong limitations period altogether*. But as this Court has already held, plaintiff Davis and North Carolina Class's claim for breach of implied warranty is subject to a three-year statute of limitations. ECF No. 237 at 36 ("In North Carolina, implied warranty claims are governed by a three-year statute of limitations"). This was most recently confirmed by the North Carolina in 2018. *Town of Littleton v. Layne Heavy Civ., Inc*., 261 N.C. App. at 91 (holding in a case alleging economic damages that "[c]auses of action based on negligence, fraud, negligent misrepresentation, breach of contract, breach of warranty, and professional malpractice are each subject to a three-year statute of limitation."); *see also Emps. Com. Union Co. of Am. v. Westinghouse Elec. Corp.*, 15 N.C. App. 406, 408, 190 S.E.2d 364, 366 (1972).

1    **DISPUTED INSTRUCTION NO. 43 RE FRAUDULENT CONCEALMENT TOLLING UNDER**

2    **NORTH CAROLINA LAW OFFERED BY PLAINTIFFS**

3        Plaintiff Davis contends that the statutes of limitations for his implied warranty claim under North

4    Carolina law and the implied warranty claims of the other North Carolina Class members who purchased

5    or leased their Class Vehicles before December 19, 2012 were tolled by the fraudulent concealment

6    doctrine.  If you find that the fraudulent concealment doctrine applies to Plaintiff Davis and other North

7    Carolina Class members, then their claims for breach of implied warranty under North Carolina law are

8    not barred by the four year statute of limitations.

9        To establish fraudulent concealment, Plaintiff Davis must show by a preponderance of the

10   evidence that (1) GM knew of the facts that are the basis of the claims of Plaintiff Davis and the North

11   Carolina Class members, and (2) failed to fully disclose those facts in violation of a pre-existing duty to

12   disclose.  A duty to disclose exists when a party has taken affirmative steps to conceal material facts.

13

14   **Authority:**

15   *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *20 (N.D. Cal. 2020); *Friedland v. Gales*, 131 N.C.

16   App. 802, 807 (1998).

17   **Argument:**

18       Plaintiffs' instruction accurately informs the jury, consistent with this Court's previous holding

19   and the law of the North Carolina Court of Appeals, that a plaintiff may establish fraudulent concealment

20   tolling when they show that an opposing party knew of a material fact, and failed to fully disclose that

21   fact in violation of a pre-exisitng duty to disclose.  *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *20

22   (N.D. Cal. 2020); *Friedland v. Gales*, 131 N.C. App. 802, 807 (N.C. Ct. App. 1998).

23       There are two significant issues with GM's proposed jury instruction.  First, GM seeks an

24   instruction informing the jury that fraudulent concealment tolling is only available in "exceptional

25   situations."  As far as Plaintiffs can tell, the authority for that is *Yancey v. Remington Arms Co*., LLC,

26   No. 12CV477, 2013 WL 5462205, at *6 (M.D.N.C. Sept. 30, 2013).  However, the *Yancey* court was

27   looking to Fourth Circuit, not North Carolina state, precedent, when it made that statement.  *Id.*  North

28   Carolina courts do not limit the application of fraudulent concealment tolling to "exceptional

circumstances." *See Friedland*, 131 N.C. App. at 807.  Further, without any explanation of what an exceptional circumstance is, this instruction would be confusing.

GM also seeks to include an instruction that Plaintiff Davis and the other North Carolina Class members must have exercised due diligence.  Again, the support for this appears to be *Yancey*, applying Fourth Circuit, not North Carolina, precedent.  North Carolina courts, when articulating the elements of fraudulent concealment, do not list this as an element.  *See Friedland*, 131 N.C. App. At 807.

Finally, Plaintiffs' instruction frames the jury's findings as pertaining to Plaintiff "and ***the*** other class members," as opposed to Plaintiff "and ***all*** other class members."  This distinction is crucial to clarifying the jury's task at hand.  This Court has already held on at least five occasions[6] that Plaintiffs have met the requirements of Rule 23 with respect to the three certified classes.  These rulings reflect the Court's findings that the questions raised by Plaintiffs' claims and those of the other class members are common and can be answered with common proof.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.").  In other words, a finding that Rule 23 is satisfied is a finding that, "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)).

GM's instruction to the jury to decide whether Plaintiff has proven the claims of "all other class members" ignores the role that common proof will play in this class trial.  The "same evidence" Plaintiff uses to prove his claims "will suffice for each member" to prove their claims as well.  *See id.*  Thus, the jury's finding for Plaintiff will also be a finding for "the other class members."  GM's competing proposal, in effect, seeks the jury to reconsider this Court's class certification rulings.  If GM believes that evidence will come to light in the class trial that casts those rulings in doubt, it can seek a fourth bite at the decertification apple, but it is not the jury's province to rehear class certification issues that this Court has already resolved.

---

[6] *See* Dkt. No. 237 (granting Plaintiffs' first motion for class certification); Dkt. No. 278 (denying GM's motion to decertify the California Class); Dkt. No. 320 (granting Plaintiffs' second motion for class certification); Dkt. No. 354 (denying GM's motion to certify all three classes); Dkt. No. 400 (denying GM's motion for leave to file another decertification motion).

**DISPUTED INSTRUCTION NO. 43 RE FRAUDULENT CONCEALMENT TOLLING UNDER NORTH CAROLINA LAW OFFERED BY GM**

The law provides there are exceptional situations in which the time period set out in a statute of limitations can be extended. In these situations, the date when the time period begins to run is suspended or delayed. This is known as tolling the statute of limitations. In other words, if the statute of limitations in this case is tolled, then the period for filing a lawsuit is extended.

Plaintiff Davis asserts the statute of limitations in this case is tolled because GM engaged in fraudulent conduct designed to prevent Plaintiff Davis and all other member of the North Carolina Class from discovering the factual basis for his claim.

To establish fraudulent concealment, Plaintiff Davis must show by a preponderance of the evidence: GM affirmatively and fraudulently concealed facts that are the basis of the claims of Plaintiff Davis and North Carolina Class members, and that Plaintiff Davis and all other North Carolina Class members failed to discover those facts despite due diligence. The law imposes a duty on a plaintiff to exercise reasonable diligence to discover the fraudulent concealment that forms the basis for his claim, or would have raised the suspicion of a reasonable and prudent person in the same or similar circumstances as the plaintiff.

To show that the statute of limitations is tolled, Plaintiff Davis must prove that GM engaged in an affirmative act of fraudulent concealment. Concealment, by mere silence, is not sufficient. Therefore, it is not enough for Plaintiff Davis to prove that GM did not notify him and other North Carolina members about any alleged design defect. Instead, there must be some active conduct to exclude suspicion and prevent inquiry.

To prove fraudulent concealment tolling, Plaintiff Davis must also show that GM's fraudulent concealment prevented him and all other North Carolina Class members from discovering before December 19, 2013 the facts giving rise to their claims, despite their exercise of due diligence.

**Authority:**

NCPI--Civil 800.00A (modified); *Yancey v. Remington Arms Co.*, LLC, No. 12CV477, 2013 WL 5462205, at *6 (M.D.N.C. Sept. 30, 2013); *Smith v. Cessna Aircraft Co., Inc.*, 571 F. Supp. 433, 436-37 (M.D.N.C. 1983).

**GM Argument:**

GM's Instruction No. 43 lays out for the jury what Plaintiffs must show to establish fraudulent concealment tolling.   In order to demonstrate fraudulent concealment tolling, a plaintiff "must demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence."   *Yancey v. Remington Arms Co., LLC*, No. 12CV477, 2013 WL 5462205, at *6 (M.D.N.C. Sept. 30, 2013); *see also Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 549 (4th Cir. 2019).   GM's proposal also correctly instructs the jury that the party invoking tolling must also show that he could not discover the facts that are the basis of his claim despite due diligence.   *Steele v. Capital One Home Loans, LLC*, No. 3:13-CV-704-RJC-DSC, 2014 WL 3748928, at *2 (W.D.N.C. July 30, 2014), aff'd, 594 F. App'x 215 (4th Cir. 2015).

Rather than clearly and concisely instructing the jury on the law, Plaintiffs' proposal includes an introductory paragraph that will mislead and confuse the jury.   First, Plaintiffs state that the jury need only determine whether "the fraudulent concealment doctrine applies to Plaintiff Davis and other California Class members."   That is incorrect.   The law is clear that plaintiffs at trial must prove the elements of their claims for all members of the certified class.   Instructing the jury to allow class-wide relief when plaintiffs only meet their burden for some, but not all, class members would violate Rule 23 and The Rules Enabling Act, and contravene Supreme Court precedent. *See* 28 U.S.C. § 2075(b); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.") (citation omitted); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 2244, 138 L. Ed. 2d 689 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right[.]'") (citation omitted).

# DISPUTED INSTRUCTION NO. 44 RE IMPLIED WARRANTY OF MERCHANTABILITY MEANING OFFERED BY GM

The implied warranty of merchantability does not impose a requirement on GM to fulfill the buyer's expectation. Testimony about plaintiffs' or class members' subjective expectations of how the Class Vehicles should operate is irrelevant to the claims at issue in this case, and should not be considered evidence. Rather, the implied warranty of merchantability provides for a minimum level of quality to fulfill its ordinary purpose of providing transportation.

**Authority**:

*American Suzuki Motor Corp. v. Superior Court,* 37 CA 4th 1291, 1296 (1995); *Lundy v. Ford Motor Co.*, 87 Cal. App. 4th 472, 478 (2001); *see also LaPorta v. BMW of N. Am., LLC,* No. 17-cv-5145 KS, 2019 WL 988675, at *4 (C.D. Cal. Jan. 24, 2019); *Arakelian v. Mercedes-Benz USA, LLC,* No. CV1809420DSFFFMX, 2020 WL 1969255, at *2 (C.D. Cal. Feb. 25, 2020); *Maybank v. S. S. Kresge Co.*, 46 N.C. App. 687, 692 (1980), *aff'd as modified*, 302 N.C. 129, 273 S.E.2d 681 (1981).

**GM Argument**:

GM's proposed instruction is necessary to ensure the jury does not confuse the objective standard that governs claims for breach of the implied warranty under the Song-Beverly Consumer Warranty Act. *Arakelian v. Mercedes-Benz USA, LLC*, 2020 WL 1969255, at *2 (C.D. Cal. Feb. 25, 2020) ("[T]he determination of whether a nonconformity in a vehicle substantially impairs its use, value, and safety is "objective"); *Lundy v. Ford Motor Co.*, 87 Cal. App. 4th 472, 478 (2001).

Plaintiffs would have the jury left without complete instructions in an apparent attempt to backdoor irrelevant or confusing evidence. It is indisputable, however, that "[p]laintiffs' subjective expectations of how the Vehicle should operate are irrelevant to the claims" for breach of implied warranty under the Song-Beverly Act. *Barajas v. Mercedes Benz USA, LLC,* 2020 WL 10431812, at *4 (C.D. Cal. Oct. 15, 2020). The jury should be instructed as to the bounds of the evidence properly considered for plaintiff Tarvin and the California Class' implied warranty claim.

1

**DISPUTED INSTRUCTION NO. 44 RE IMPLIED WARRANTY OF MERCHANTABILITY**

2

**MEANING OFFERED BY GM – PLAINTIFFS' RESPONSE**

3

　　This instruction is unnecessary, as well as confusing, as any instruction as to what is meant by the

4

implied warranty of merchantability should be addressed separately, above, under the respective

5

instructions concerning California and North Carolina merchantability law.  Further, California and North

6

Carolina case law does not support GM's blanket assertion that "the implied warranty of merchantability

7

provides for a minimum level of quality to fulfill its ordinary purpose of providing transportation." *See*

8

*DeWitt v. Eveready Battery Co., Inc.*, 565 S.E.2d 140, 147 (N.C. 2002).  ("To establish a breach of

9

implied warranty of merchantability under the statute, a plaintiff must prove . . . that the goods did not

10

comply with the warranty in that the goods were defective at the time of sale."); *Sloan v. Gen. Motors*

11

*LLC*, 2020 WL 1955643, *28 (N.D. Cal. Apr. 23, 2020) ("Moreover, courts reject the notion that a vehicle

12

is fit for its ordinary purpose 'merely because [it] provides transportation from point A to point B.'")

13

(quoting *In re MyFord Touch*, 291 F. Supp. 3d at 945-46 and *Isip*, 155 Cal. App. 4th at 27.").

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 45 RE AFFIRMATIVE DEFENSE – UNAUTHORIZED OR UNREASONABLE USE OFFERED BY GM**

GM is not responsible for any harm to Plaintiff Tarvin, Plaintiff Davis, or any members of the California or North Carolina Classes, if GM proves that any defect in the Class Vehicles or failure to match any implied warranty was caused by unauthorized or unreasonable use of their vehicle after they were sold.

**Authority:**

CACI 3220; N.C. Gen. Stat. Ann. § 99B-4 (3).

**GM Argument**:

As with Instruction No. 44, plaintiffs would seek to have the jury kept in the dark regarding the bounds of Plaintiff Tarvin, Plaintiff Davis, or any members of the California or North Carolina Class's implied warranty claims. But as the Judicial Council of California Advisory Committee on Civil Jury Instructions and North Carolina law make clear, there can be no liability for any harm "caused by unauthorized or unreasonable use of [ a consumer good] after it was sold." CACI 3220; N.C. Gen. Stat. Ann. § 99B-4. This instruction is particularly salient and necessary where, as here, two of three class representatives, both California residents, have admitted to having modified their vehicles with AFM disabling devices *in violation of California emissions laws*.

1

2

**DISPUTED INSTRUCTION NO. 45 RE AFFIRMATIVE DEFENSE – UNAUTHORIZED OR**

**UNREASONABLE USE OFFERED BY GM – PLAINTIFFS' RESPONSE**

3

4

5

6

7

8

GM did not plead its misuse affirmative defense with the requisite specificity. Courts in the Northern District of California "have consistently, if not universally, held that the heightened pleading standard laid out by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) applies to the pleading of affirmative defenses." *Scott Griffith Collaborative Sols., LLC v. Falck N. California Corp.*, No. 19-CV-06104-SBA, 2021 WL 4846935, at *2 (N.D. Cal. June 7, 2021). GM's 25th affirmative defense offers no facts that meet the *Twombly* and *Iqbal* standard.

9

10

11

12

13

14

Further, both North Carolina and California require that the misuse be the proximate cause of the injury, not *a* cause. *See* N.C. Gen. Stat. Ann. § 99B-4 (3); *Huynh v. Ingersoll-Rand*, 16 Cal. App. 4th 825, 832, 20 Cal. Rptr. 2d 296, 299 (1993) ("While this is a *possible* cause, respondent failed to demonstrate it was the *only* possible cause or that it was *the* cause on this occasion."). Moreover, the misuse must be one that was not foreseeable by GM. *Yecny v. Eclipse Fuel Eng'g Co*., 210 Cal. App. 2d 192, 197, 26 Cal. Rptr. 402, 404 (Ct. App. 1962).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 46 RE CONTINUED USE OF CLASS VEHICLES OFFERED BY GM**

In making your determination whether GM breached any implied warranty of merchantability, you may consider any evidence of Plaintiff Tarvin, Plaintiff Davis, or any other California or North Carolina Class members' continued use of a Class Vehicle as evidence that the Class Vehicles were fit for their ordinary function of transportation.

**Authority**:

*Lee v. Toyota Motor Sales, U.S.A., Inc*., 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014); *Avedisian v. Mercedes-Benz USA, LLC*, 43 F. Supp. 3d 1071, 1079 (C.D. Cal. 2014); *Bussian v. DaimlerChrysler Corp*., 411 F. Supp. 2d 614, 623 (M.D.N.C. 2006).

**GM Argument:**

GM's proposed Instruction No. 46 clearly and concisely instructs the jurors that they can consider evidence of continued use of the Class vehicles in determining whether the Class vehicles were fit for their ordinary purpose. In order to meet their burden under the California and North Carolina breach of implied warranty claims, Plaintiffs must show that the "vehicle [was not] reasonably suited for ordinary use," which, in turn, requires the jury to decide "whether the vehicle was fit for driving." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 623 (M.D.N.C. 2006). Evidence that the Plaintiffs and other Class members continue to drive their Class vehicles is directly relevant to the jury's decision, and GM's impartial instruction will ensure that the jurors are not left guessing whether they can consider such evidence in their determination. *See Avedisian v. Mercedes-Benz USA, LLC*, 43 F. Supp. 3d 1071, 1079 (C.D. Cal. 2014) (holding that "no reasonable factfinder" could conclude that the alleged defect "drastically undermined the ordinary operation of the vehicle" when there was evidence that plaintiff continued to operate the vehicle for 4.5 years).

1

2

**DISPUTED INSTRUCTION NO. 46 RE CONTINUED USE OF CLASS VEHICLES OFFERED BY GM – PLAINTIFFS' RESPONSE**

3

4

5

6

7

8

Plaintiffs disagree that this jury instruction is necessary and contend that it would be prejudicial. It unfairly highlights one consideration, amongst many, that a jury might consider in determining whether a vehicle is safe, reliable, or substantially free of defects under California law.  If the Court is to highlight this consideration, then, to be fair, it must also highlight considerations such as whether there is evidence that the vehicles consumed an excessive amount of oil and whether there is evidence of power loss or engine breakdown.  *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *27-28 (N.D. Cal. April 23, 2020).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 47 RE VIOLATION OF THE IDAHO CONSUMER**

**PROTECTION ACT (IDAHO CODE ANN §§ 48-601, et seq.) OFFERED BY PLAINTIFFS**

Plaintiff Del Valle asserts a claim, on his own behalf and on behalf of the Idaho Class, under the Idaho Consumer Protection Act.

The Idaho Consumer Protection Act prohibits unfair methods of competition and unfair or deceptive trade practices.

An act or practice is "unfair" if it is shown to possess a tendency or capacity to deceive consumers.  A tendency or capacity to mislead or deceive is sufficient; actual deception need not be shown.  Further, an intention to deceive is not required for finding that an act is unfair or deceptive as long as a tendency or capacity to mislead consumers is established. Finally, an omission of a material or relevant fact should be treated with the same effect as a false, misleading, or deceptive practice.

To establish this claim on his own behalf, and on behalf of the Idaho Class, Plaintiff Del Valle must prove all of the following:

1. That GM knew or in the exercise of due care should have known it was engaging in an unfair or deceptive practice;

2. That the act or practice occurred in the conduct of GM's trade or commerce;

3. That Plaintiff Del Valle and the other Idaho class members suffered an ascertainable loss; and

4. That GM's acts caused damages to Plaintiff Del Valle and all of the other Idaho class members.

**Authority:**

I.C. § 48-601; I.C. § 48-603; I.C. § 48-608; *State ex rel. Kidwell v. Master Distributors, Inc.*, 615 P.2d 116, 122 (Idaho 1980); *Tricore Investments, LLC v. Estate of Warren through Warren*, 485 P.3d 92, 113 (Idaho 2021); *Keegan v. Am. Honda Motor Co.,  Inc.*, 838 F.Supp.2d 929, 958 (C.D. Cal. 2012); *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Prod. Liability Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018); CACI 4700; *In re Beach*, 447 B.R. 313, 319 (Bankr. Dr. Idaho 2011)

**Argument:**

GM's proposed instruction tells the jury that Plaintiff Del Valle must prove that GM knew that it was engaging in a violation of the Idaho Consumer Protection Act, but it fails to provide any guidance

as to what constitutes an ICPA violation.  Plaintiffs' proposed instruction is superior because it explains that the ICPA prohibits unfair or deceptive trade practices, and that an act or practice is "unfair" if it is shown to possess a tendency or capacity to deceive consumers.  Plaintiffs' proposed instruction is taken from the plain language of the ICPA, I.C. § 48-603, and the plain language of the Idaho Supreme Court. *See State ex rel Kidwell v. Master Distributors, Inc.*, 615 P.2d 116, 122-23 (Idaho 1980). Plaintiffs' proposed jury instruction also makes it clear that omissions are actionable under the ICPA. *Keegan v. AM. Honda Motor Co., Inc.*, 828 F. Supp. 2d 929, 958-59 (C.D. Cal. 2012).

GM's attempts to impose a reliance requirement should be rejected, as GM previously conceded that "Mr. Del Valle need not show reliance to bring a claim under the ICPA." *Siqueiros v. Gen. Motors LLC*, 2021 WL 2115400, *19, n. 10 (N.D. Cal. May 25, 2021); *see also In re Beach*, 447 B.R. 313, 319 (Bankr. Dr. Idaho 2011) ("[N]either reliance by an injured party nor the offending party's intention to deceive must be demonstrated in a successful ICPA claim.").

GM seeks to include an instruction that the jury must find that the breach of warranty "proximately" caused Plaintiff and the other Class members' damages.  The word "proximate" is unnecessarily confusing, for the reasons stated above, at Instruction No. 37, and the word is not used in the ICPA which provides for a right of recovery for actual damages by anybody who "suffers any ascertainable loss" as a result of a breach of the ICPA.  I.C. § 48-608.

Finally, Plaintiffs' instruction frames the jury's findings as pertaining to Plaintiff "and *the* other class members," as opposed to Plaintiff "and ***all*** other class members."  This distinction is crucial to clarifying the jury's task at hand.  This Court has already held on at least five occasions[7] that Plaintiffs have met the requirements of Rule 23 with respect to the three certified classes.  These rulings reflect the Court's findings that the questions raised by Plaintiffs' claims and those of the other class members are common and can be answered with common proof.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."). In other words, a finding that Rule 23 is

---

[7] *See* Dkt. No. 237 (granting Plaintiffs' first motion for class certification); Dkt. No. 278 (denying GM's motion to decertify the California Class); Dkt. No. 320 (granting Plaintiffs' second motion for class certification); Dkt. No. 354 (denying GM's motion to certify all three classes); Dkt. No. 400 (denying GM's motion for leave to file another decertification motion).

satisfied is a finding that, "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)).

GM's instruction to the jury to decide whether Plaintiff has proven the claims of "all other class members" ignores the role that common proof will play in this class trial.  The "same evidence" Plaintiff uses to prove his claims "will suffice for each member" to prove their claims as well.  *See id.*  Thus, the jury's finding for Plaintiff will also be a finding for "the other class members." GM's competing proposal, in effect, seeks the jury to reconsider this Court's class certification rulings.  If GM believes that evidence will come to light in the class trial that casts those rulings in doubt, it can seek a fourth bite at the decertification apple, but it is not the jury's province to rehear class certification issues that this Court has already resolved.

Additionally, GM's use of "proximate causation" is unhelpful and misleading.  *See* Plaintiffs' Response to Disputed Instruction No. 37.

**DISPUTED INSTRUCTION NO. 47 RE VIOLATION OF THE IDAHO CONSUMER**

**PROTECTION ACT (IDAHO CODE ANN §§ 48-601, et seq.) OFFERED BY GM**

Plaintiff Del Valle asserts a claim, on his own behalf and on behalf of the Idaho Class, under the Idaho Consumer Protection Act. Plaintiff Del Valle has the burden to prove all of the following:

1. That Plaintiff Del Valle, and each of the Idaho class members, were in a contractual relationship with GM;[8]

2. That GM knew or in the exercise of due care should have known it was engaging in a violation of the Idaho Consumer Protection Act;

3. That the act or practice occurred in the conduct of GM's trade or commerce;

4. That Plaintiff Del Valle and the Idaho class members relied on the acts or practices that violated the Idaho Consumer Protection Act;

5. That Plaintiff Del Valle and all other Idaho class members suffered an ascertainable loss; and

6. That GM's acts proximately caused damages to Plaintiff Del Valle and all of the other Idaho class members.

**Authority:**

I.C. § 48-601; I.C. § 48-603; I.C. § 48-608; *Branscum v. 4-J Harvestore, Inc.,* No. 88-3919, 1989 WL 112405, at *5 (9th Cir. Sept. 19, 1989); *Taylor v. McNichols*, 149 Idaho 826, 243 P.3d 642, 662 (2010); *Swafford v. Huntsman Springs, Inc.*, 163 Idaho 209, 213, 409 P.3d 789, 793 (2017); *Haskin v. Glass*, 102 Idaho 785, 640 P.2d 1186, 1189 (Idaho Ct. App. 1982); *Simplot Livestock Co. v. Sutfin Land & Livestock*, No. 116CV00139EJLREB, 2018 WL 4266515, at *9 (D. Idaho Aug. 17, 2018), *report and recommendation adopted*, No. 116CV00139EJLREB, 2018 WL 4259226 (D. Idaho Sept. 6, 2018).

**GM Argument:**

First, GM's proposed Instruction No. 47 simply and clearly states the elements the jury must find by a preponderance of the evidence in order for find in favor of Plaintiffs on their claim for violation of

---

[8] GM recognizes that the Court previously ruled on this issue, but inserts this instruction for purposes of reserving its rights on appeal. *See* Order, ECF No. 320 at 9-10.

1   the Idaho Consumer Protection Act.  For each element of the claim, Idaho caselaw supports GM's

2   proposed instruction.  As to the first element of contractual privity 9, the Supreme Court of Idaho recently

3   held: "[C]laims brought under the ICPA must be based on a contractual relationship." *See Tricore Invs.,*

4   *LLC v. Est. of Warren through Warren*, 168 Idaho 596, 618, 485 P.3d 92, 114 (2021) (citation omitted).

5   Second, as to the knowledge element, "[T]he offending party must be a person who 'knows, or in the

6   exercise of due care should know, that he has in the past, or is' committing an act or practice declared

7   unlawful by Idaho Code section 48-603."  Id. (citation omitted).  The third element of a violation requires

8   that the act occurred "in the conduct of trade or commerce."  Id. at 113 (citation omitted).  Fourth, Idaho

9   law requires that a plaintiff show reliance.  *Branscum v. 4-J Harvestore, Inc.*, 886 F.2d 334 (9th Cir.

10  1989) ("There is no issue of material fact regarding reliance, and [defendant] prevails as a matter of law

11  on the Consumer Protection Act claim.").  The fifth element Plaintiffs must prove is that they suffered

12  an "ascertainable loss."  *Tricore* at 125 (citation omitted).  Finally, Idaho law also requires that Plaintiffs

13  show GM's acts in violation of the ICPA proximately caused damages to Plaintiff Del Valle and the

14  Idaho class members.  *State ex rel. Kidwell v. Master Distributors, Inc.*, 101 Idaho 447, 454, 615 P.2d

15  116, 123 (1980) (affirming lower court's interpretation that a consumer must show proximate cause).

16       Second, GM's proposed instruction also includes appropriate language to instruct the jury that it

17  must find that GM violated the ICPA as to all Idaho class members and that all Idaho class members

18  suffered an ascertainable loss.  The law is clear that plaintiffs at trial must prove the elements of their

19  claims for all members of the certified class.  Instructing the jury to allow class-wide relief when plaintiffs

20  only meet their burden for some, but not all, class members would violate Rule 23 and The Rules

21  Enabling Act, and contravene Supreme Court precedent. See 28 U.S.C. § 2075(b); *TransUnion LLC v.*

22  *Ramirez*, 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021) ("Article III does not give federal courts the

23  power to order relief to any uninjured plaintiff, class action or not.") (citation omitted); *Amchem Prod.,*

24  *Inc. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 2244, 138 L. Ed. 2d 689 (1997) ("Rule 23's

25  requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act,

26

27

28

---

9 GM recognizes that the Court previously ruled on this issue, but inserts this instruction for purposes of reserving its rights on appeal. *See* Order, ECF No. 320 at 9-10.

which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right[.]'") (citation omitted).

Third, GM's proposed instruction omits unnecessary preamble that will not assist the jury in reaching a verdict.  Plaintiffs propose two introductory paragraphs describing the Idaho Consumer Protection Act. Plaintiffs' [second] paragraph purports to address the Act's purpose, which is irrelevant to the jury's decision.  Jury instructions exist to aid the jury in applying the law as written, not to instruct them on the broad legislative purpose behind a collection of statutes.   Plaintiffs' [third] paragraph provides a definition of the word "unfair."  This, too, is irrelevant.  As discussed above, the elements of a violation of the Idaho Consumer Protection Act are clear, and "unfair" is not an element.  Accordingly, including Plaintiffs' irrelevant introduction will only confuse, mislead and distract the jury, rather than aid the jury in considering the elements of Plaintiffs' claims.

**DISPUTED INSTRUCTION NO. 48 RE AFFIRMATIVE DEFENSE--STATUTE OF LIMITATIONS UNDER IDAHO LAW OFFERED BY PLAINTIFFS**

GM contends that Plaintiff Del Valle's claim under the Idaho Consumer Protection Act on behalf of himself and the other members of the Idaho Class was not filed within the period of time required by law. The statute of limitations for a claim under the Idaho Consumer Protection Act requires a plaintiff to file his lawsuit within two years of the date that plaintiffs knew or could have known by the exercise of reasonable diligence that a cause of action existed. Plaintiffs filed this lawsuit on December 19, 2016.

Therefore, if you find in favor of Plaintiff Del Valle and the Idaho Class members, you must then determine whether GM has proven by a preponderance of the evidence that Plaintiff Del Valle and the Idaho Class members knew or should have known a cause of action existed prior to December 19, 2014.


**Authority:**

Idaho Code §§ 48-619; *Performance Chevrolet, Inc. v. Mkt. Scan Info. Sys., Inc*., 402 F. Supp. 2d 1166, 1171 (D. Idaho 2005).

**Argument:**

Plaintiffs' instruction on the Idaho Consumer Protection Act statute of limitations is accurate because it correctly reflects that a ICPA claim accrues when a plaintiff knew, or should have known, that a cause of action existed.  *See Performance Chevrolet, Inc. v. Mkt. Scan Info. Sys., Inc*., 402 F. Supp. 2d 1166, 1171 (D. Idaho 2005).

**DISPUTED INSTRUCTION NO. 48 RE AFFIRMATIVE DEFENSE--STATUTE OF
LIMITATIONS UNDER IDAHO LAW OFFERED BY GM**

GM contends that plaintiff Del Valle's claim under the Idaho Consumer Protection Act on behalf of himself and all other members of the Idaho Class was not filed within the period of time required by law. The statute of limitations for a claim under the Idaho Consumer Protection Act requires a plaintiff to file his lawsuit within two years of the date that the alleged deceptive act occurred. Plaintiffs filed this lawsuit on December 19, 2016.

Therefore, if you find in favor of plaintiff Del Valle and the Idaho Class members, you must then determine whether GM has proven by a preponderance of the evidence that the statute of limitations bars the claim.

**Authority:**

Idaho Code §§ 48-619; *Cayne v. Washington Tr. Bank*, No. 2:12-CV-0584-REB, 2013 WL 5469787, at *8 (D. Idaho Sept. 30, 2013).

**GM Argument**:

GM's proposed Instruction No. 48 provides clear directions about the statute of limitations in the Idaho Code to inform the jury that Plaintiff Del Valle's claim must have been filed within two years of GM's alleged deceptive act.  Idaho Code §§ 48-619 ("No private action may be brought under this act more than two (2) years after the cause of action accrues.") *See also Cayne v. Washington Tr. Bank*, No. 2:12-CV-0584-REB, 2013 WL 5469787, at *8 (D. Idaho Sept. 30, 2013).

Plaintiffs attempt to combine Instruction No. 48 with GM's proposed Instruction No. 49, which addresses the discovery rule under Idaho law.  GM proposes separating instructions No. 48 and No. 49, because they are two distinct legal concepts.  Further, GM bears the burden on the statute of limitations defense and Plaintiffs bear the burden on the discovery rule.  To conflate the two, as Plaintiffs do, will not only confuse two distinct issues, but will also mislead the jury as to which party bears the burden of proof for both the statute of limitations defense and the discovery rule.

**DISPUTED INSTRUCTION NO. 49 RE DISCOVERY RULE UNDER IDAHO LAW**

**OFFERED BY GM**

Plaintiff Del Valle asserts on behalf of himself and all other members of the Idaho Class that their Idaho Consumer Protection Act claim is not prohibited by the statute of limitations by reason of the "discovery rule." In certain situations, the "discovery rule" allows postponement of the statute of limitations period until a party knew, or with reasonable diligence should have known, of their claim exists.

The burden of proof for showing that the Idaho Consumer Protection Act claim is not barred is on Plaintiff Del Valle. This means that Plaintiff Del Valle must prove, by the preponderance of the evidence, that he and all other Idaho Class members did not know, and through the exercise of reasonable diligence could not have known, that their cause of action under the Idaho Consumer Protection Act might exist before December 19, 2014.

**Authority:**

Idaho Code §§ 48-619; *Performance Chevrolet, Inc. v. Mkt. Scan Info. Sys., Inc*., 402 F. Supp. 2d 1166, 1172 (D. Idaho 2005).

**GM Argument**:

GM's proposed Instruction No. 49 explains to the jury that a plaintiff must show, by a preponderance of the evidence that the plaintiff did not know, and through the exercise of reasonable diligence could not have known, that his cause of action might have existed more than two years before he filed his claim. *Performance Chevrolet, Inc. v. Mkt. Scan Info. Sys., Inc.*, 402 F. Supp. 2d 1166, 1171 (D. Idaho 2005) (Claims accrue when plaintiff "knew or, with the exercise of reasonable diligence, should have been able to know, a cause of action for fraud might exist.") (citation omitted).

Because Plaintiffs bear the burden on the discovery rule while GM bears the burden on the statute of limitations defense, GM proposes a separate instruction on each to avoid confusing the jury. Combining the instructions, as Plaintiffs do, will not only confuse two distinct issues, but will also mislead the jury as to which party bears the burden of proof for both the statute of limitations defense and the discovery rule.

1    Additionally, GM's proposed instruction includes appropriate language to instruct the jury that it
2  must find that Plaintiffs must meet their burden for this claim with respect to all Idaho class members.
3  The law is clear that plaintiffs at trial must prove the elements of their claims for all members of the
4  certified class.  Instructing the jury to allow class-wide relief when plaintiffs only meet their burden for
5  some, but not all, class members would violate Rule 23 and The Rules Enabling Act, and contravene
6  Supreme Court precedent. *See* 28 U.S.C. § 2075(b); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208,
7  210 L. Ed. 2d 568 (2021) ("Article III does not give federal courts the power to order relief to any
8  uninjured plaintiff, class action or not.") (citation omitted); *Amchem Prod., Inc. v. Windsor*, 521 U.S.
9  591, 613, 117 S. Ct. 2231, 2244, 138 L. Ed. 2d 689 (1997) ("Rule 23's requirements must be interpreted
10 in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of
11 procedure 'shall not abridge, enlarge or modify any substantive right[.]'") (citation omitted)

**DISPUTED INSTRUCTION NO. 49 RE DISCOVERY RULE UNDER IDAHO LAW**

**OFFERED BY GM – PLAINTIFFS' RESPONSE**

Plaintiffs disagree that this jury instruction is necessary. A separate instruction on the discovery rule is not warranted because, under Idaho law, a plaintiff's Consumer Protection Act claim accrues when he knew or should have known of the cause of action.   *See Performance Chevrolet, Inc. v. Mkt. Scan Info. Sys., Inc.*, 402 F. Supp. 2d 1166, 1172 (D. Idaho 2005).

1

Dated:  August 12, 2022

2

3

/s/ April N. Ross
Kathleen Taylor Sooy (*pro hac vice*)
April N. Ross (*pro hac vice*)
Rachel P. Raphael (*pro hac vice*)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone: 202-624-2500
ksooy@crowell.com
aross@crowell.com
rraphael@crowell.com

Warrington S. Parker, III (SBN 148003)
**CROWELL & MORING LLP**
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Phone: (415) 986-2800
wparker@crowell.com

Richard C. Godfrey (*pro hac vice*)
Renee D. Smith (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Phone: (312) 862-2310
richard.godfrey@kirkland.com
renee.smith@kirkland.com

***Counsel for General Motors LLC***

/s/ Adam J. Levitt
Adam J. Levitt (*pro hac vice*)
John E. Tangren (*pro hac vice*)
Christopher S. Stombaugh (*pro hac vice*)
Daniel R. Ferri (*pro hac vice*)
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com
cstombaugh@dicellolevitt.com

Mark Abramowitz (*pro hac vice*)
**DICELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio  44060
Tel: (440) 953-8888
mabramowitz@dicellolevitt.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
H. Clay Barnett, III (*pro hac vice*)
J. Mitch Williams (*pro hac vice*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama  36104
Telephone: 334-269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Mitch.Williams@Beasleyallen.com

Jennie Lee Anderson
Lori E. Andrus
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California  94104
Telephone:  415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

***Class Counsel***

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## ECF CERTIFICATION

2

3       Pursuant to Civil Local Rule 5-1(i)(3), the filing attorney attests that he has obtained concurrence

4   regarding the filing of this document from the signatories to the document.

5

6   Dated: August 12, 2022                    */s/ H. Clay Barnett, III*
                                              H. Clay Barnett, III

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28