UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL SIQUEIROS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | Case No. 16-cv-07244-EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR DETERMINATION OF GARET TARVIN'S ADEQUACY TO SERVE AS CALIFORNIA CLASS REPRESENTATIVE, AND GRANTING IN PART AND DENYING IN PART GENERAL MOTORS' MOTION FOR SUMMARY JUDGMENT ON TARVIN'S CLAIMS**<br><br>Docket Nos. 413, 428 |

## I.   INTRODUCTION

Plaintiffs allege that Defendant General Motors LLC ("GM" or "Defendant") knowingly manufactured and sold a car engine with inherent defects that caused excessive oil consumption and engine damage. The alleged defects affect 2011 to 2014 model-year GM vehicles. Plaintiffs assert claims under various state consumer-protection and fraud statutes on behalf of a nationwide class as well as various statewide classes. Plaintiffs filed their class action complaint on December 19, 2016. *See* Docket No. 2 ("Compl."). They have since amended their pleadings several times; the operative complaint is the Eighth Amended Complaint.

Before the Court are (1) Plaintiffs' motion for determination of Garet Tarvin's adequacy to serve as the California class representative pursuant to Federal Rule of Civil Procedure 23(a)(4), *see* Docket No. 413 ("Tarvin Adequacy Mot.") and (2) GM's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on Mr. Tarvin's claims, *see* Docket No. 428 ("MSJ"). The pretrial filings, *see* Docket Nos. 443–469, will be addressed in a separate order.

As discussed below, the Court finds that Mr. Tarvin is an adequate representative for the California Class. The Court thus **GRANTS** Plaintiffs' motion for a determination of Mr. Tarvin's adequacy and appoints Mr. Tarvin to serve as a representative for the California Class. The Court **GRANTS in part** and **DENIES in part** GM's motion for partial summary judgment on Mr. Tarvin's claims. The Court **GRANTS** summary judgment for GM as to Mr. Tarvin's claims for unjust enrichment and fraudulent omission, and denies it as to the remainder of Mr. Tarvin's claims.

## II. BACKGROUND

### A. Factual Background

Plaintiffs allege that GM's Gen IV Vortec 5300 LC9 engine suffers from an "inherent" oil-consumption defect (the "Oil Consumption Defect"). *See* Docket No. 412 ("8AC") ¶ 7. The "primary cause" of the alleged defect is the piston rings installed by GM. *Id.* ¶ 8. These piston rings "do not maintain sufficient tension to keep oil in the crankcase," and the oil migration that occurs as a result allows oil to "burn[] or accumulate[] as carbon buildup on the combustion chamber's surfaces." *Id.* ¶¶ 8–9. Plaintiffs allege that the oil-consumption defect causes safety problems in three ways: (1) oil consumption can lead to a lack of adequate lubrication in the engine and dropping oil pressure levels in vehicles, *see id.* ¶ 19; (2) the presence of excess oil in the combustion chamber can cause spark plug fouling, which can cause engine problems, *see id.*; and (3) when drivers experience these problems while driving, they may be forced to pull over and stop alongside a road or highway (or they may be stranded in such a location with an inoperable vehicle), which places them in danger, *see id.* ¶¶ 14, 127–28.

### B. Procedural Background

At this point in the litigation, the claims of ten plaintiffs remain in the case, and are set for trial on September 13, 2022. *See* Docket No. 411 ("Scheduling Order"). The Court certified three of those claims for class action trials under Rule 23(b)(3): (1) breach of implied warranty under California's Song-Beverly Consumer Warranty Act; (2) breach of implied warranty under North Carolina law; and (3) violation of the Idaho Consumer Protection Act. *See* Docket No. 354 ("September 7, 2021 Order") at 4. The certified classes are limited to current owners and lessees

1  of model year 2011-2014 Chevrolet Avalanche, Silverado, Suburban, Tahoe, and GMC Sierra,
2  Yukon, and Yukon XL vehicles equipped with aluminum block LC9 Gen IV engines that were
3  manufactured after February 10, 2011. Docket No. 451 ("Joint Pretrial Conference Statement") at
4  1–2. The California class is further limited to current owners who purchased their vehicles in new
5  condition and the Idaho class is further limited to current owners who purchased their vehicles
6  from GM dealerships. *Id.* at 1. There remain numerous individual claims. *See* September 7, 2021
7  Order at 2-4. On January 7, 2022, the Court granted in part and denied in part the parties' *Daubert*
8  motions. Docket No. 395.

C.  California Class Representatives

The Court initially appointed Plaintiff Raul Siqueiros as the California class representative, but Mr. Siqueiros was not a class member because his vehicle was manufactured before February 10, 2011. *See* Docket No. 320 ("May 25, 2021 Order") at 44. On June 26, 2020, Manuel Fernandez moved to intervene and to be appointed as class representative for the California class. Docket No. 278. On May 25, 2021, the Court appointed Mr. Fernandez as a class representative for the California class. *Id.* at 45. In April 2022, Mr. Fernandez sold his Class Vehicle and was no longer a current owner or class member, leaving the California case without a named plaintiff in this action that is a California resident and able to serve as a California Class representative at trial. *See* Docket No. 401 ("Mot. to Intervene") at 1–2.

On May 13, 2022, Garet Tarvin and Carlos Gamez moved to intervene and to be appointed as substitute California class representatives. *See* Mot. to Intervene at 1. On July 7, 2022, the Court conditionally allowed Mr. Tarvin and Mr. Gamez[1] to intervene, subject to the Court's determination after discovery that they are adequate class representatives under Rule 23. *See* Docket No. 410 (July 7, 2022 Minute Order). On July 14, 2022, Plaintiffs moved for a determination of Mr. Tarvin's and Mr. Gamez's adequacy as California class representatives. Docket No. 413 ("Tarvin Adequacy Mot."). On August 3, 2022, GM filed its opposition. Docket

---

[1] On July 25, 2022, Mr. Gamez voluntarily dismissed all of his claims. Docket No. 418 (Notice of Voluntary Dismissal). Mr. Gamez's voluntary dismissal leaves Mr. Tarvin as the sole proposed representative for the California class.

3

No. 425 ("Tarvin Opp."). On August 10, 2022, Plaintiffs filed their reply. Docket No. 438 ("Tarvin Adequacy Reply").

On August 3, 2022, in conjunction with its opposition to Tarvin's motion to be appointed a representative of the California Class, GM moved for summary judgment on Tarvin's individual claims. *See* Docket No. 428 ("Tarvin MSJ") at 1. On August 10, 2022, Plaintiffs filed their opposition to GM's motion for summary judgment. *See* Docket No. 439 ("Tarvin MSJ Opp."). The Court heard oral argument on both motions on August 26, 2022 as part of the pretrial conference. Docket No. 470.

### III.     LEGAL STANDARDS

A.     Motion for Adequacy of Class Representative

Although expressly authorized by Rule 23, the "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "In order to justify departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as [her fellow] class members.'" *Id.* (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

Rule 23(a) permits plaintiffs to sue as representatives of a class only if (1) "the class is so numerous that joinder of all members is impracticable" (the "numerosity" requirement); (2) "there are questions of law or fact common to the class" (the "commonality" requirement); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (the "typicality" requirement); and (4) "the representative parties will fairly and adequately protect the interests of the class" (the "adequacy" requirement). Fed. R. Civ. P. 23(a)(1)-(4). The purpose of Rule 23(a)'s requirements is largely to "ensure[ ] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and to "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart*, 564 U.S. at 349 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23. "The purpose of the typicality

4

1 requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). The requirement is permissive, such that "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)).

B.  <u>Motion for Summary Judgment</u>

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Where a defendant moves for summary judgment based on a claim for which the plaintiff bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**IV.  DISCUSSION**

A.  <u>Mr. Tarvin's Adequacy to Represent the California Class</u>

Mr. Tarvin currently owns a 2012 GMC Sierra with an LC9 engine manufactured after February 10, 2011, which he purchased new in California. *See* Docket No. 413 (Tarvin Adequacy

5

Mot.), Ex. A ("Tarvin Decl.") ¶¶ 2–3. Mr. Tarvin alleges that he has "noticed ongoing excessive oil consumption and related symptoms" in the 2012 GMC Sierra while under warranty. *Id.* ¶ 8. In 2014, he "presented the oil consumption problem" to Pearson Buick GMC and "was told that the consumption was 'normal.'" *Id.*

As mentioned above, Rule 23(a)(4) requires that the putative class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A named plaintiff satisfies the adequacy test if the individual has no conflicts of interest with other class members and if the named plaintiff will prosecute the action vigorously on behalf of the class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). A named plaintiff satisfies the typicality test if the individual's claims are "reasonably coextensive with those of absent class members" and there are no "unique defenses." *Just Film*, 847 F.3d at 1116.

GM advances three reasons why Mr. Tarvin is allegedly not an adequate class representative. Tarvin Adequacy Opp. at 5–7. First, GM argues that Tarvin is not an adequate class representative because his vehicle purportedly does not suffer from the alleged Oil Consumption Defect. *Id.* at 5. Second, GM argues that Tarvin's claim is not typical of the class because he "mechanically modified" his engine in an attempt to manipulate the oil consumption rate. *Id.* at 7. Third, GM contends that Tarvin's Song-Beverly claim is time-barred and not tolled. *Id.* The Court addresses each argument in turn.

1. Tarvin's Evidence of Excessive Oil Consumption

GM claims that Mr. Tarvin is not an adequate representative because "Tarvin's own evidence confirms that his vehicle does not have an oil consumption problem and he has suffered no injury." Tarvin Adequacy Opp. at 5. In GM's view, Mr. Tarvin cannot satisfy the typicality requirement because his vehicle is allegedly not defective. *Id.*

As a threshold matter, the Court notes that GM posed a similar argument when it opposed appointing Mr. Fernandez as a class representative: GM argued then that "Mr. Fernandez's vehicle is merchantable because he has not experienced any engine trouble or other safety issue, and because he drove the vehicle for 78,000 miles before experiencing the effects of the oil-consumption defect." *See* May 25, 2021 Order at 44–45. The Court rejected GM's theory that the

6

delayed onset of issues rendered Mr. Fernandez an inadequate class representative because numerous courts within the Ninth Circuit have concluded that "safety-related defects which may be slow to emerge may nonetheless furnish a basis for a breach of implied warranty claim" under California law. *Id.* at 45 (quoting *Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2020 WL 1955643, at *28 (N.D. Cal. Apr. 23, 2020) (collecting cases)). To the extent that GM argues that a delayed onset of issues precludes Mr. Tarvin from being an adequate class representative, this argument is foreclosed by the Court's prior rulings.

In this round of class adequacy briefing, though, GM makes a broader argument as to Mr. Tarvin's purported inadequacy. Tarvin Adequacy Opp. at 5. According to GM, Mr. Tarvin is an inadequate class representative because he has "no evidence" of excessive oil consumption in his vehicle. *Id.* In support of this theory, GM characterizes Mr. Tarvin's deposition testimony as showing that "his vehicle has never stalled, never failed to start, never lost power,[2] never experienced spark plug fouling, rough idling, or engine noise; in fact, his vehicle has never required any repairs at all, much less repairs for piston ring or oil consumption-related issues." *Id.* at 5–6 (citing portions of Tarvin's deposition transcript).

But these lack of issues do not tell the whole story. There is evidence to support Plaintiffs' theory that Mr. Tarvin's 2012 GMC Sierra has experienced issues related to the oil consumption defect since at least 2014. For instance, Mr. Tarvin routinely finds it necessary to add up to three quarts of oil between regular oil changes. *See* Docket No. 438-2 ("Pl. Excerpts of Tarvin Depo. Tr.") at 55:13-22; 56:4-17. In addition to the low oil levels, Mr. Tarvin has experienced repeated check engine light illumination since 2014. *See* Docket No. 429-3 ("Corrected Int. Resp.") at 4. Mr. Tarvin testified that since he first discovered low oil levels in 2014, he will generally only drive the vehicle a few miles in any given day and will not take it on longer road trips because he believes the car is "not reliable" and "he would have anxiety" to drive it on a road trip with his

---

[2] Tarvin's Corrected Interrogatory Responses (which GM submitted as an exhibit, *see* Docket No. 429-3) state that he experienced "loss of power and rough idling." *See* Docket No. 429-3 ("Corrected Int. Resp.") at 6 ("Excessive oil consumption is an inherent safety defect; thus, at all times when his vehicle was in operation, Plaintiff faced a potential safety hazard. *This is evidenced by the loss of power and rough idling he has* experienced. It is further evidenced by the fact that Plaintiff has to add 3 quarts of oil to his vehicle in between oil changes.") (emphasis added).

7

family. *See* Pl. Excerpts of Tarvin Depo. Tr. at 79:3-12.

GM points to the dealership's oil consumption test in 2021 as further evidencing that Mr. Tarvin's vehicle is not defective. Mot at 6. In January 2021, Mr. Tarvin sought an oil consumption test at the recommendation of Taylor GMC Buick Cadillac in Redding, CA. *See* Pl. Excerpts of Tarvin Depo. Tr. at 41:4-20; Corrected Int. Resp. at 4–5. Between February and September 2021, the dealership regularly checked the oil levels in his vehicle at thousand mile increments. *Id.* After the test, the dealership told Mr. Tarvin that his vehicle's oil consumption was within acceptable limits for an in-warranty 2012 GMC Sierra. Corrected Int. Resp at 5 ("After the test, the dealer told Plaintiff his oil consumption experience was normal and was consuming 1.5 qt per 3000 miles which is right at the allowed limit of GM of .946 qt per 2000 miles.").

The Court concludes that this evidence is mixed. On the one hand, from GM's perspective, the test showed that "after 10 years and over 92,000 miles," Tarvin's truck "meets the normal oil consumption rate for brand new GM vehicles." Tarvin Adequacy Opp. at 6. But on the other hand, as Plaintiffs note, "GM relies solely on its self-serving guidelines for this figure. GM does not present any evidence of an industry-wide standard setting this figure or any analysis that oil consumption at that level is truly safe, and it is in GM's self-interest to set that figure as low as possible, since any oil consumption above that threshold would result in additional warranty expenses." Reply at 3. Plaintiffs also point out that GM's figure is contradicted by GM's owners' manuals, which purportedly recommend that, for vehicles with less than 130,000 miles, no more than one quart of oil be consumed every 3,000 miles to ensure that the oil level remains high enough to prevent engine damage. *Id.* at 3–4 (citing Docket No. 438-3, Dahm Report ¶¶ 71-75).

Moreover, even with Mr. Tarvin's regular oil maintenance, there is evidence showing that his vehicle still experiences oil-related issues. According to discovery responses, on April 11, 2022, the vehicle's "oil pressure reading fell to zero and the check engine light illuminated." Corrected Int. Resp. at 6. Mr. Tarvin "checked the oil sump level and discovered it was one and one-third quarts low after traveling just 2,461 miles after adding 1 quart of oil at 2000 miles." *Id.* Mr. Tarvin "had to add a total of 2.3 quarts of oil for 4,461 miles of travel since the last oil and

8

filter service" and "had to replace the oil pressure sensor/filter." *Id.*

To satisfy the typicality requirement, Mr. Tarvin must "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks and citation omitted); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (explaining that an adequate representative plaintiff must "suffer the same injury as the class members") (internal quotation marks and citation omitted). While some class members may have suffered more serious injuries relating to the alleged Oil Consumption Defect, that does not render Mr. Tarvin an *inadequate* class representative. The evidence indicates that Mr. Tarvin has experienced issues relating to the alleged Oil Consumption Defect, *i.e.* low oil levels and check engine light illumination, since at least 2014, and his interests are undoubtedly aligned with those of the class. That his vehicle has not lost power or experienced spark plug fouling does not negate the injuries which Mr. Tarvin has experienced.

In sum, the fact that Mr. Tarvin has not experienced every possible consequence flowing from the alleged Oil Consumption Defect does not render him an inadequate class representative. His injuries are sufficiently typical to satisfy Rule 23(a)(3) and (4).

2. Tarvin's Modifications to the GMC Sierra

GM next contends that Mr. Tarvin is not an adequate class representative because he used a device to temporarily disable the active fuel management system in his vehicle for a few months last year. Tarvin Adequacy Opp. at 7. In 2021, Mr. Tarvin purchased a Range Technology AFM Disabler that disabled the active fuel management ("AFM") system in his vehicle in hopes that it would mitigate the oil consumption issues that he had been experiencing. *See* Docket No. 426-1 ("GM's Excerpts of Tarvin Depo. Tr.") at 49:10-16, 80:14-16. The Range device "modifies a setting in the vehicle's internal computer system to turn off the AFM system." Reply at 4 n.4. To install the device, Mr. Tarvin plugged it into a port (the on-board diagnostic board) underneath the dash. *See* GM's Excerpts of Tarvin Depo. Tr at 50:6-8, 80:7-13. Because the device did not make a difference with respect to the oil consumption, Mr. Tarvin unplugged it after "just a couple months." *Id.* at 50:9-18, 51:19-21.

The parties have very different characterizations of the Range device. According to GM,

1   Mr. Tarvin "mechanically modified the engine in his GMC Sierra with an illegal aftermarket
2   engine control device, specifically intending to manipulate the oil consumption rate." Tarvin
3   Adequacy Opp. at 7. Plaintiffs counter that the device is "aftermarket plug-in software" that
4   "makes no mechanical change to the engine at all." Reply at 4 & 4 n.4. Plaintiffs further note that
5   "[o]nce [the device] is unplugged, the vehicle will revert to factory settings," and the device's
6   manufacturer anticipates that the product will soon be "updated to 50-state legal status." *Id.*
7   Plaintiffs contend that the AFM system was not disabled when Mr. Tarvin purchased the vehicle,
8   and that the engine "is in the same condition that it would have been had Mr. Tarvin never
9   disabled the AFM." Reply at 4. From Plaintiffs' perspective, because Mr. Tarvin's use of the
10  Range Technology device did not permanently affect the GM engine, it does not affect his ability
11  to prove his allegations or claim economic loss damages. *Id.* at 4–5.

12  For present purposes, the question for the Court is whether Mr. Tarvin's use of the device
13  renders his claim "not typical of the class." Tarvin Adequacy Opp. at 7. The Ninth Circuit has
14  held that a putative class representative does not satisfy typicality if the individual is "subject to
15  unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508.
16  The Court is not convinced that Tarvin's use of the device renders him vulnerable to such a
17  defense or renders him atypical.

18  GM cites two out-of-circuit cases in support of its theory that "[a] plaintiff who unilaterally
19  modifies the product at issue with aftermarket parts is not typical of those who did not." *Id.* But
20  neither *Afzal* nor *Kacmarek* are analogous because those cases involved significant and permanent
21  changes to the products at issue. In *Afzal*, the proposed class representative was found to be not
22  typical of the class where he made "significant modifications to his Class Vehicle, including
23  software modifications, changes to his transmission timing, and adding a supercharger, each of
24  which imposes additional stress on the engine." *Afzal v. BMW of N. Am., LLC*, No. 15-cv-8009,
25  2020 WL 2786926, at *5 (D.N.J. May 29, 2020). And in *Kaczmarek*, the proposed class
26  representatives were atypical based on significant changes to the computers at issue. *Kaczmarek*
27  *v. Int'l Bus. Machines Corp.*, 186 F.R.D. 307, 313 (S.D.N.Y. 1999). In particular, one of the
28  plaintiffs "removed the IBM OS/2 operating system and replaced it with Windows 95," "disabled

1 the Mwave modem functions while continuing to use the Mwave sound functions," "added other
2 modem cards," and "installed third-party software applications that repartitioned his hard drive."
3 *Id.* at 311. Another plaintiff "made hardware changes," "overclocked his computer's
4 motherboard," and "improperly installed upgrades and admitted to line noise on his phone line,
5 both of which could have caused his alleged problems." *Id.*

6      *Afzal* and *Kaczmarek* are inapposite because there is no showing here that the Range
7 device had any lasting effect on the Gen IV engine or Mr. Tarvin's issues with his vehicle's oil
8 consumption. GM presented no evidence suggesting that Mr. Tarvin's problems with his vehicle
9 became worse or that the device exacerbated the oil consumption issues. To the contrary, Mr.
10 Tarvin allegedly experienced issues relating to the alleged Oil Consumption Defect from 2014 to
11 2022 and the device was only installed for a few months in late 2021. Additionally, according to
12 Plaintiffs, the vehicle reverts "to factory settings" once the Range Technology device is
13 unplugged. Reply at 4 n.4. Even if GM were to come up with some such evidence, it is unlikely
14 that Mr. Tarvin's use of the Range device would be "a defense[] which threaten[s] to become the
15 focus of the litigation." *Hanon*, 976 F.2d at 508.

16      The Court concludes that Mr. Tarvin's use of the Range device does not render him an
17 inadequate class representative.

18      3.     <u>Tarvin's Diligence and the Availability of Tolling</u>

19      Lastly, GM argues that Mr. Tarvin is not an adequate class representative "because he
20 cannot present evidence on tolling of the statute of limitations." Tarvin Adequacy Opp. at 7. GM
21 specifically contends that Mr. Tarvin's Song-Beverly claim is time-barred and that he does not
22 qualify for fraudulent concealment tolling for lack of due diligence. *Id.* at 8.

23      The statute of limitations for an implied warranty of merchantability claim under
24 California's Song-Beverly Consumer Warranty Act is four years and begins to run at the time of
25 purchase. *See MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1102 (N.D. Cal. 2014). Mr.
26 Tarvin purchased his vehicle on May 29, 2012, and the original complaint was not filed until
27 December 29, 2016. *See* GM's Excerpts of Tarvin Depo. Tr. at 21:6-8; Docket No. 2. As a result,
28 unless Mr. Tarvin can show that tolling applies, his claim is time-barred.

In support of its theory that Mr. Tarvin failed to exercise due diligence, GM asserts that Mr. Tarvin believed his vehicle was consuming excessive amounts of oil in May 2014 but waited until January 2021 "to request any oil consumption-related inspection of his vehicle, or otherwise take any steps to investigate his claim." Tarvin Adequacy Opp. at 8–9. Because Tarvin's claim faces "a significant procedural hurdle" that—according to GM—"may not affect other class members with untimely claims," Tarvin is "not typical and cannot adequately represent the interests of all class members." *Id.* at 9 (quoting *Taafua v. Quantum Glob. Techs., LLC*, No. 18-cv-06602-VKD, 2020 WL 95639, at *8 (N.D. Cal. Jan. 8, 2020)).

In response, Plaintiffs point out that GM's challenge here "is indistinguishable from its challenge to Plaintiff Siqueiros's claim on the same grounds." Reply at 5. Plaintiffs are correct. In their first summary judgment motion, GM argued that "Mr. Siqueiros was on inquiry notice with respect to the defects in his vehicle more than four years before the filing of his claims, and therefore that he failed to exercise diligence." *Sloan*, 2020 WL 1955643, at *19. At that time, the Court squarely rejected the contention that Mr. Siqueiros was not on inquiry notice before 2016 as a matter of law, reasoning that "[w]hile a reasonable jury might conclude that needing to add oil on a monthly basis would have put Mr. Siqueiros on inquiry notice of an oil consumption problem, a reasonable jury might also find he was not on inquiry notice of a defect that could cause a serious or safety-related problem." *Id.* Significantly, both Mr. Tarvin and Mr. Siqueiros addressed the oil consumption issues by adding oil on a regular basis, and both were told by a dealership that their vehicles' oil consumption "was normal." *Id.*; Corrected Int. Resp. at 5; Tarvin Depo. Tr. at 42:21-43:2. Under the Court's previous reasoning, then, a jury could find that Mr. Tarvin, like Mr. Siqueiros, was not on inquiry notice prior to 2016.[3]

Additionally, it is not clear why GM contends that Tarvin's purported lack of diligence is a "significant procedural hurdle" that "may not affect other class members with untimely claims." Tarvin Adequacy Opp. at 9. GM acknowledges that the Court has already found that "questions

---

[3] According to Plaintiffs, "GM does not dispute that, from December 2016 onward, Mr. Tarvin's claim is tolled by operation of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974)." Reply at 5 n.6.

12

about timeliness and tolling will impact 'a substantial portion of the [California] class.'" *Id.* at 7 (quoting April 23, 2020 Order). If Mr. Siqueiros and Mr. Tarvin are any indication, a large portion of the California class may seek the protection of the fraudulent concealment doctrine despite having added extra oil to their vehicles.

Accordingly, the Court determines that Mr. Tarvin is an adequate representative for the California class.

B. Summary Judgment

GM seeks summary judgment on all of Mr. Tarvin's claims. MSJ at 1–2. For the reasons discussed below, the Court concludes that there are material questions of fact for Mr. Tarvin's claims under the Song-Beverly Consumer Warranty Act, the Magnuson Moss Warranty Act, the Consumer Legal Remedies Act ("CLRA"), and the Unfair Competition Law ("UCL"). As a result, the Court **DENIES** summary judgment as to these claims. The Court **GRANTS** summary judgment as to Mr. Tarvin's unjust enrichment and fraudulent omission claims.

1. The Song-Beverly Implied Warranty Claim

GM contends that it is entitled to summary judgment on the implied warranty claim under California's Song-Beverly Consumer Warranty Act for two reasons: (1) there is no evidence that Mr. Tarvin's vehicle is unmerchantable, and (2) the claim is time-barred. MSJ at 14–15. The Court addresses each argument in turn.

a. There Are Material Questions of Fact as to Whether Mr. Tarvin's Vehicle Is Merchantable

For the reasons described in Part A above, the Court disagrees with GM that there is "no evidence" that Mr. Tarvin's vehicle is unmerchantable. In California, "[t]he core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007). As this Court explained in *In re MyFord Touch Consumer Litig.*, "[t]he implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." 291 F. Supp. 3d 936, 945 (N.D. Cal. 2018) (quoting *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 878 (N.D. Cal. 2015) (internal

1  quotation marks omitted)). To state a claim for a breach of the implied warranty of
2  merchantability, "a plaintiff must allege a fundamental defect that renders the product unfit for its
3  ordinary purpose." *Id.* (quoting *T & M Solar*, 83 F. Supp. 3d at 878).

4     More specifically, the law in California is clear that to be fit for its ordinary purpose, a
5  vehicle must be "in safe condition and substantially free of defects." *Isip*, 155 Cal. App. 4th at 27.
6  The vehicle must provide "reliable" transportation. *Brand v. Hyundai Motor Am.*, 226 Cal. App.
7  4th 1538, 1547 (2014) (internal quotation marks omitted). Thus, three factors related to vehicle
8  merchantability are safety, reliability, and substantial freedom from defects. *See In re MyFord*
9  *Touch*, 291 F. Supp. 3d at 945–96.

10    GM asserts that there is no evidence that Mr. Tarvin's vehicle is unmerchantable because
11 "Tarvin has driven his 2012 Sierra every day for more than ten years and 92,000 miles." MSJ at
12 15. GM argues that "[d]uring all that time, his vehicle has not needed a single repair. It has never
13 stalled, shut down, failed to start, exhibited engine noise or damage, or otherwise proven unsafe or
14 unreliable. The undisputed evidence is that it consumes oil within normal limits." *Id.* As a result,
15 according to GM, "Tarvin has no evidence from which a reasonable jury could find that this
16 vehicle was unmerchantable at the time of sale more than a decade ago, or that it is not reasonably
17 suited for providing transportation." *Id.* There are two problems with GM's reasoning.

18    First, as noted above, this Court has repeatedly rejected the premise that a vehicle is
19 necessarily merchantable because the plaintiff drove it for years and for tens of thousands of miles
20 before experiencing problems. In fact, in both of its previous summary judgment motions, GM
21 argued that the implied warranty claim failed because the plaintiff drove his car for years and tens
22 of thousands of miles before experiencing any problems related to the oil-consumption defect. *See*
23 *Sloan*, 2020 WL 1955643, at *28 ("GM makes much of the fact that the California Plaintiffs drove
24 their cars for years and for tens of thousands of miles before experiencing problems related to
25 safety or reliability . . . GM relies on these facts to argue that Plaintiffs' vehicles 'were fit for their
26 ordinary purpose.'"); *Siqueiros v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2021 WL 2115400,
27 at *13 (N.D. Cal. May 25, 2021) ("GM recycles its argument that Mr. Fernandez's implied
28 warranty claim fails because he drove his car for years and tens of thousands of miles before

experiencing any problems related to the oil-consumption defect."). Both times, the Court rejected this argument because "numerous courts within the Ninth Circuit have concluded that safety-related defects which may be slow to emerge may nonetheless furnish a basis for a breach of implied warranty claim." *Sloan*, 2020 WL 1955643, at *28 (collecting authorities). To the extent that GM contends that Mr. Tarvin's claim fails as a matter of law because he did not experience issues relating to the alleged Oil Consumption Defect within the first two years of purchase, as noted above, this argument is untenable.

Second, as for GM's theory that there is "no evidence" that Mr. Tarvin's vehicle is unmerchantable, the Court disagrees. Mr. Tarvin testified that he has experienced issues that are plausibly related to the alleged Oil Consumption Defect (such as low oil levels and check engine light illumination) since at least 2014. Pl. Excerpts of Tarvin Depo. Tr. at 54:3-14, 55:9-22; Corrected Int. Resp. at 6. Mr. Tarvin routinely finds it necessary to add up to three quarts of oil between regular oil changes. *Id.* at 56:4-8. And even with Mr. Tarvin's regular oil maintenance, he still experiences problems relating to his car's oil use: in April of this year, the vehicle's check engine light illuminated and the oil pressure reading fell to zero. Corrected Int. Resp. at 6. Mr. Tarvin had to add a total of 2.3 quarts of oil for 4,461 miles of travel since the last oil and filter service and replace the oil pressure sensor/filter. *Id.* He has testified that he has limited the use of the vehicle because of his concerns about the alleged defect. *See* Pl. Excerpts of Tarvin Depo. Tr. at 79:3-12 (testifying that he will not take the car on road trips with his family because he believes the car is "not reliable" and "would have anxiety" to drive it on a road trip). And as for GM's contention that his vehicle consumes oil "within normal limits," MSJ at 15, GM's owner manuals allegedly suggest otherwise. SJ Opp. at 3 (citing Dahm Report ¶¶ 71–75).

In light of the other evidence in the case, and drawing all justifiable inferences in Mr. Tarvin's favor, Mr. Tarvin has presented sufficient evidence to demonstrate a material question of fact as to whether Mr. Tarvin's vehicle may suffer from the alleged Oil Consumption Defect. As the Court has already found that a jury must decide the question of whether the alleged Oil Consumption Defect is a safety defect within the context of an implied warranty claim, *see Sloan* 2020 WL 1955643, at *13, the Court **DENIES** summary judgment on this ground.

    b.  <u>There Are Material Questions of Fact as to Whether Mr. Tarvin's Claim is Timely</u>

Second, GM argues that summary judgment is warranted because Mr. Tarvin's implied warranty claim is time-barred and Mr. Tarvin has not shown that fraudulent concealment tolling applies. MSJ at 15–16.

To toll the statute of limitations under the doctrine of fraudulent concealment, a plaintiff must plead "(a) the substantive elements of the fraud, and (b) an excuse for late delivery of the facts." *Sater v. Chrysler Grp., LLC*, 2015 WL 736273, at *9 (C.D. Cal. Feb. 20, 2015) (fraudulent concealment adequately pled where defendant "intentionally kept" plaintiff ignorant of information, "continued to manufacture" product without disclosing defect, and delay in discovery was reasonable at least until vehicle was recalled). With respect to the first prong, "[t]he required elements for fraudulent concealment are (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015) (citing *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014)). Any act of concealment must be affirmative. *Herremans v. BMW of N. Am., LLC*, No. 14-cv-02363, 2014 WL 5017843, at *5 (C.D. Cal. Oct. 3, 2014) ("Absent a fiduciary relationship, nondisclosure is not fraudulent concealment—affirmative deceptive conduct is required.") (collecting cases). In addition, "if there is fraudulent concealment, 'the tolling ceases when those facts are, or should have been, discovered by the plaintiff.'" *Yetter v. Ford Motor Co.*, No. 19-cv-0877-LHK, 2019 WL 3254249, at *5 (N.D. Cal. July 19, 2019) (citing *Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012)).

GM contends that fraudulent concealment tolling does not apply for two reasons. First, Mr. Tarvin cannot show that GM engaged in an affirmative act of concealment. MSJ at 16. Second, Mr. Tarvin cannot show that he did not have inquiry notice of facts giving rise to his

16

claim despite his diligence. *Id.*

With respect to the first issue, the Court has already decided that "there is evidence to find, for purposes of summary judgment, that GM engaged in an affirmative act to conceal the alleged Oil Consumption Defect." *Sloan*, 2020 WL 1955643, at *19. GM's first argument is thus foreclosed by the Court's prior rulings.

As for whether Tarvin had inquiry notice of his claims, the Court has already concluded that a jury could find that Mr. Tarvin was not on inquiry notice prior to 2016. *See* Section A.3 (explaining that "[u]nder the Court's previous reasoning, then, a jury could find that Mr. Tarvin, like Mr. Siqueiros, was not on inquiry notice prior to 2016"). Because Mr. Tarvin did not experience any major vehicle issues and was told by the dealership that his vehicle's oil consumption was "normal," the Court will not find as a matter of law that Mr. Tarvin had inquiry notice of his claims prior to 2016.

2. Tarvin's Magnuson Moss Warranty Act Claim

GM contends that Mr. Tarvin's Magnuson Moss Warranty Act ("MMWA") claim fails because he purportedly lacks any viable state law warranty claims. MSJ at 16. To sustain claims under the MMWA there must be sufficient warranty claims under state law. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1027 (9th Cir. 2008). Because the Court has concluded that Mr. Tarvin's implied warranty claim survives summary judgment, so too does his MMWA claim. The Court thus **DENIES** GM's motion for summary judgment on this ground.

3. Mr. Tarvin's Unjust Enrichment and Fraudulent Omission Claims

GM seeks summary judgment on Mr. Tarvin's unjust enrichment and fraudulent omission claims. MSJ at 17. As GM notes, the Court previously granted summary judgment for GM on the unjust enrichment claims of other California plaintiffs because those claims are barred as a matter of law by the existence of GM's express new vehicle limited warranty. *Sloan*, 2020 WL 1955643, at *27. The Court also granted summary judgment for GM on the California fraudulent omission claims because they are precluded by the economic loss doctrine where a plaintiff does not allege personal injury or property damage. *Id.* at *24.

In his opposition brief, Mr. Tarvin explained that he included the unjust enrichment and

fraudulent omission claims in the 8AC to "preserve them for appeal." MSJ Opp. at 2 n.2. Because Mr. Tarvin's claims are barred as a matter of law, the Court **GRANTS** summary judgment to GM on these claims.

### 4. Mr. Tarvin's UCL and CLRA Claims

Lastly, GM argues that Mr. Tarvin's consumer protection claims fail as a matter of law because there is "no evidence on essential elements." MSJ at 17 (capitalization altered for clarity). In particular, GM contends that the CLRA and UCL claims fail because there is not sufficient evidence of a piston ring defect or damages, and because Mr. Tarvin cannot prove that GM owed him a duty to disclose. *Id.* As the Court has already denied the portions of GM's motion that relate to the evidence of a defect or damages, *see* Docket No. 432, the sole question here is whether there are material questions of fact as to whether GM owed Mr. Tarvin a duty to disclose.

In response, Plaintiffs contend that the Court "has already denied summary judgment on the same grounds that GM presses here." MSJ Opp. at 5. Plaintiffs are correct. The Court has previously found that Plaintiffs "presented sufficient evidence that the alleged Oil Consumption Defect is a safety defect within the context of implied warranty, fraudulent omission, and consumer protection claims." *Sloan*, 2020 WL 1955643, at *13. Because a safety defect gives rise to a duty to disclose, *see Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012), the Court denied summary judgment as to GM's claim that it had no duty to disclose information about the defect. *Sloan*, 2020 WL 1955643, at *32 ("[B]ecause whether the Oil Consumption Defect constitutes a safety defect cannot be resolved on summary judgment, the Court denies summary judgment on GM's claim that it had no duty to disclose information about the defect.").

Because Tarvin has presented sufficient evidence to demonstrate that the alleged Oil Consumption Defect may be present in his vehicle, *see* Section B.1.(a), Tarvin has demonstrated that GM may owe him a duty to disclose. As a result, the Court **DENIES** summary judgment on this ground.

///

///

///

## V. CONCLUSION

For the foregoing reasons, the Court finds that Mr. Tarvin is an adequate representative of the California class and appoints him to serve as the California Class representative. The Court **DENIES** GM's motion for summary judgment for Mr. Tarvin's claims under the Song-Beverly Consumer Warranty Act, Magnuson Moss Warranty Act, CLRA, and UCL. The Court **GRANTS** summary judgment to GM as to Mr. Tarvin's claims for unjust enrichment and fraudulent omission.

This order disposes of Docket Nos. 413 and 428.

**IT IS SO ORDERED**.

Dated: August 29, 2022

_____
EDWARD M. CHEN
United States District Judge