UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL SIQUEIROS, et al., | Case No. 16-cv-07244-EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION TO CLARIFY THE CLASS DEFINITION, AND DENYING PLAINTIFFS' MOTION FOR PUNITIVE DAMAGES** |
| GENERAL MOTORS LLC, | |
| Defendant. | |
| | Docket Nos. 587, 589 |

## I.      INTRODUCTION

This is a vehicle defect class action in the post-trial stage.  Plaintiffs are class members from Idaho, California, and North Carolina who have sued Defendant General Motors LLC ("GM").  Plaintiffs allege that GM sold a defective engine model in certain vehicles ("Class Vehicles") that had an excessive oil consumption problem ("Oil Consumption Defect").[1]  The Court certified three claims for trial: (1) breach of implied warranty under California's Song Beverly Consumer Warranty Act, (2) breach of implied warranty of merchantability under North Carolina law, and (3) violation of the Idaho Consumer Protection Act "ICPA."  The three-week jury trial was held from September 13, 2022 to October 4, 2022.  The jury, which found in favor of Plaintiffs on all three claims, awarded $2,700.00 in damages per vehicle.

---

[1] The Class Vehicles are defined as: 2011-2014 Chevrolet Avalanches, Silverados, Suburbans, and Tahoes, and 2011-2014 GMC Sierras, Yukons, and Yukon XLs with Generation IV engines manufactured on or after February 10, 2011.  Any vehicle that has already received an adequate piston ring replacement is excluded from the Class Vehicle definition.  Final Jury Instructions Order (Docket No. 554) at 9-13.

United States District Court
Northern District of California

1    Now pending before the Court are Plaintiffs' motions for clarification of class definition

2    (Docket No. 587) and for punitive damages under the ICPA (Docket No. 589).[2]  As set forth

3    below, the Court **GRANTS** Plaintiffs' motion for clarification of the classes.  To require

4    continued ownership through the verdict date or beyond is improper because former Class Vehicle

5    owners who sold their vehicles after the Class Notice Date may reasonably have understood the

6    class definition to require current ownership only as of May 23, 2022, the date of class notice,

7    given that no cut-off date was specified in the notice.  The three class definitions will therefore

8    reflect that a class member must have owned a Class Vehicle as of May 23, 2022.  The Court

9    **DENIES** Plaintiffs' motion for punitive damages under the ICPA because Plaintiffs' interpretation

10   of the ICPA conflicts with the Seventh Amendment and Plaintiffs failed to prove by clear and

11   convincing evidence that Defendant's conduct was "oppressive, fraudulent, malicious or

12   outrageous" and a case of "repeated or flagrant violations."

**II.      RELEVANT BACKGROUND**

14   A.    Factual Background

15   Plaintiffs allege that the engines in the Class Vehicles contain defective piston ring parts,

16   which leads to excessive oil consumption and engine damage.  *See* Eighth Amended Complaint

17   ("8AC") ¶¶ 96–104.  The Court certified three claims for trial: (1) breach of implied warranty

18   under California's Song-Beverly Consumer Warranty Act, (2) breach of implied warranty of

19   merchantability under North Carolina law, and (3) violation of the Idaho Consumer Protection

20   Act.  *See* Docket No. 354 (Order Granting in Part and Denying in Part GM's Motion for

21   Decertification) at 4–5.

22   Beginning with the original complaint, and in every complaint thereafter, Plaintiffs

23   included in their request for relief for "GM to pay actual and statutory damages (including

24   punitive damages) and restitution to Plaintiffs and other Statewide Class members, as allowable by

25   law."  *See, e.g.*, Docket No. 2 (Complaint) at 108; 8AC at 99.  But in the joint pretrial statement,

26

27   _____

28   [2] In addition to Plaintiffs' motions, General Motors moved for judgment as a matter of law and for decertification.  *See* Docket Nos. 592 and 594.  The Court addresses GM's post-trial motions in a separate order.

United States District Court
Northern District of California

1    Plaintiffs did not seek or otherwise reference punitive damages.  Nor did Plaintiffs reference

2    punitive damages in their trial brief.  *See* Docket No. 450 (Pls. Trial Brief).  Aside from the

3    complaints, the only other time Plaintiffs raised the issue of punitive damages was at the very

4    close of the August 26, 2022 pretrial conference, shortly before trial:

5    Mr. Ferri:  For years for our Idaho claim we have pled relief for
     attorneys' fees and costs and damages, and we omitted that from

6    what is included in the most recent complaint, which GM responded
     to.  We omit that from the prayer for relief in the pretrial statement.

7    We just want to make clear that we are still seeking that.  We want
     to put that on the record.  We raised that with GM yesterday.  They

8    thought it was improper.  I don't see any prejudice.  They have
     known we have pled that for years, and so we are still seeking it.

9

10   THE COURT:  You have made your record.  What the
     consequences are, I don't need to address at this point.

11   Mr. Godfrey:  Well, your Honor, just in fairness, this is the first we
     have heard of it.  They have specific requests for punitives by

12   systemic counts, but they don't have it for Idaho.  They have a
     general omnibus request that incorporates those they made for

13   punitives.  First, they don't have an Idaho request for punitives.
     Secondly, it is not [in] the filing statement.  We don't have a jury

14   instruction on it.  We don't have a verdict form on it.  […]

15   Mr. Ferri:  There should be no jury instruction, Your Honor.  It is an
     issue for punitives.  It's an issue for the Court.  Attorneys' fees is

16   not discretionary.  Costs are not discretionary[;] if the Plaintiff
     prevails there is no jury instruction.  There is no prejudice.  It is

17   what it is.

18   THE COURT:  Well, all right.  Since you are not putting it to the
     jury, I don't have to resolve this question . . . I can hear there may be

19   an argument, depending on what the verdict is, that's been waived or
     precluded for some reason; but we will cross that bridge if and when

20   we get there.  *Id.* at 116:4-9.

21   *See* Docket No. 492 (Aug. 26, 2022 Hr'g Tr.) at 114:18–116:9.

22        The Court issued proposed jury instructions on September 14, 2022, and gave the parties

23   an opportunity to object on the record and out of the jury's hearing before the instructions were

24   finalized.  *See* Docket No. 509.  Although the proposed jury instructions did not include any

25   instruction on a claim or award for punitive damages, neither party sought to include an

26   instruction relating to punitive damages.  *See* Docket Nos. 514, 516.  As a result, the final jury

27   instructions did not mention punitive damages.  *See* Docket No. 554 (Final Jury Instructions

28

United States District Court
Northern District of California

1    Order) at 27.[3]

2         The final jury instructions did, however, include each class definition. *See id.* at 3. Jury

3    Instruction No. 2 informed the jury that the California Class is defined as "all current owners or

4    lessees of a Class Vehicle that purchased or leased the vehicle in new condition in the State of

5    California"; the Idaho Class is defined as "all current owners or lessees of a Class Vehicle that was

6    purchased or leased in the State of Idaho from a GM-authorized dealer," and the North Carolina

7    Class is defined as "all current owners or lessees of a Class Vehicle that was purchased or leased

8    in the State of North Carolina." *Id.*

9         The trial proceeded with three class claims. First, California class representative Garet

10   Tarvin asserted a breach of implied warranty claim for violation of the Song-Beverly Consumer

11   Warranty Act. *See* PTC Order at 1. Plaintiff William Davis, Jr., who represents the North

12   Carolina Class, asserted a claim for breach of implied warranty under North Carolina law. *Id*.

13   Finally, Plaintiff Gabriel Del Valle, on behalf of the Idaho Class, asserted a claim for violation of

14   the Idaho Consumer Protection Act. *Id*. The jury found in favor of Plaintiffs on all three claims

15   and awarded $2,700.00 in damages per vehicle.

16               **III.    LEGAL STANDARDS**

17   A.    <u>Class Clarification</u>

18        Federal Rule of Civil Procedure 23 holds that "[a]n order that grants or denies class

19   certification may be altered or amended before final judgment." Fed. R. Civ. P. 23I(1)(C). Under

20   Rule 23(c)(1)(C), the district court has broad discretion to amend a class certification order at any

21   time before final judgment. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 983 (9th Cir.

22   2007). "The purpose of Rule 23(c)(1)(C) is to afford district courts the latitude to amend an

23   existing class certification order, or an order denying class certification, in light of subsequent

24   developments." *Friend v. Hertz Corp.,* No. C-07-5222-MMC, 2014 WL 4415988, at *2 (N.D.

25

26   ---
    [3] Jury Instruction No. 23, the damages instruction, provided that: "Damages means the amount of
27   money that will reasonably and fairly compensate the Plaintiffs and Class members for any injury
    you find was caused by GM . . . In deciding this amount, you will consider only the Plaintiffs'
    economic loss, if any, caused by GM. The Plaintiffs do not claim damages for personal injury or
28   emotional distress." *See* Docket No. 554 at 27.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Cal. Sept. 8, 2014); *see also Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) (holding that "after

2    a [class] certification order is entered, the judge remains free to modify it in light of subsequent

3    developments in the litigation").

4    B.    Punitive Damages

5    "Claims for punitive damages are substantive in nature and Idaho law is controlling."

6    *Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005).  Punitive damages

7    may be awarded if the party proves "by clear and convincing evidence, oppressive, fraudulent,

8    malicious or outrageous conduct by the party against whom the claim for punitive damages is

9    asserted."  Idaho Code § 6-1604(1).

10                                  **IV.    DISCUSSION**

11    The questions here are whether the class definition should be clarified to expressly provide

12    that owners who sold their vehicles after the close of the trial are out of the class and whether

13    Plaintiffs are entitled to punitive damages under Idaho law.  As set forth below, the Court finds

14    that clarification is warranted but that Plaintiffs are not entitled to punitive damages.

15    A.    Class Clarification

16    Both parties agree that the class definition should be clarified to address the status of class

17    members who sold their Class Vehicle at some point after receiving notice of the lawsuit last May.

18    *Cf. In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 302 F.R.D. 448, 461 (N.D.

19    Ohio 2014) (holding that a class period with no cut-off date "means there will be class members . .

20    . wholly unaware their rights will be decided in this litigation.  This is not permissible").  But the

21    parties disagree as to whether these former owners—or, to use the parties' parlance, "Post-Notice

22    Sellers"—should be included or excluded from the class.

23    The current class definition is:

24        (1) All current owners or lessees of a Class Vehicle that was
            purchased or leased in new condition in the State of California
25            (the "California Class");
          (2) All current owners or lessees of a Class Vehicle that was
26            purchased or leased from a GM-authorized dealer in the State of
              Idaho (the "Idaho Class"); and
27          (3) All current owners or lessees of a Class Vehicle that was
              purchased or leased in the State of North Carolina (the "North
28            Carolina Class").

1    Docket No. 548 (Final Jury Instrs.) at 3.

2    Plaintiffs' proposed clarification of the class definition is:

3       (1) **California Class:** All current owners or lessees of a Class
            Vehicle *as of May 23, 2022* that was purchased or leased in new
4           condition in the State of California.
        (2) **Idaho Class:** All current owners or lessees of a Class Vehicle *as*
5           *of May 23, 2022* that was purchased or leased from a GM-
            authorized dealer in the State of Idaho.
6       (3) **North Carolina Class:** All current owners or lessees of a Class
            Vehicle *as of May 23, 2022* that was purchased or leased in the
7           State of North Carolina.

8    Docket No. 587 (Class Clarif. Mot.) at 3 (emphasis added).
     May 23, 2022 is the date of the Class Notice.
9
     Defendant's proposed clarification of the class definition is:
10
        All current owners or lessees of a Class Vehicle *as of May 23, 2022*
11      that was purchased or leased *[insert state-specific language]* **and**
        **who continue to own or lease their Class Vehicle through the date**
12      **of entry of a final, non-appealable judgment in this action.**

13   Docket No. 599 (Class Clarif. Opp.) at 2 (emphasis added). In other words, under Plaintiffs'

14   proposal, class members who sold their vehicles after last May would remain in the class, while

15   GM urges the Court to require ownership of the Class Vehicle through the date of final judgment.

16       Plaintiffs argue that (1) GM's proposed class definition would prejudice the class, and (2)

17   Plaintiffs' proposed clarification is consistent with the definition used in the class notice and at

18   trial. Docket No. 604 (Class Clarif. Reply) at 1–4. Defendant argues that Post-Notice Sellers

19   should not be included in the class definition because (1) Plaintiffs' damage theory requires

20   continued ownership, (2) the class definition at trial require continued ownership, and (3) doing so

21   would allow class members to improperly obtain double recoveries. Class Clarif. Opp. at 3–6.

22       Both the jury instructions and the class notice provided that class members are "current

23   owners or lessees of a Class Vehicle." Jury Instructions at 3. The parties have different

24   interpretations of the term "current owners." In Plaintiffs' view, "current owners" means class

25   members who owned their vehicle as of May 23, 2022, the date of the Class Notice. Defendant

26   proposes clarifying the definition require continued Class Vehicle ownership through final

27   judgment in order to participate in the class recovery. At the hearing on this motion, a third

28   potential definition was discussed: requiring continued ownership through October 4, 2022, the

United States District Court
Northern District of California

1    date of the jury verdict.

2        Plaintiffs argued at the hearing that including the Class Notice Date of May 23, 2022 in the

3 clarified definition "doesn't bring in anyone who wasn't already in the class, as of the date of class

4 notice. It simply saves them from being expelled from the class." *See* Docket No. 626 (Feb. 23,

5 2022 Hr'g Tr.) at 92:11–14. When the Court asked Defendant what "all current owners" meant

6 with respect to "current," Defendant conceded that "there's no question that [current] has to be

7 through the day that the jury verdict was issued. But I think it's current as of the time of final

8 judgment." *See id.* at 100:17–20.

9        The problem with requiring continued ownership in both Defendant's "final judgment"

10 definition and the "jury verdict" definition is that Class Vehicle owners who received the Class

11 Notice may have sold their Vehicle sometime after May 23, 2022 at less than full market value

12 (given the unremedied Oil Consumption Defect) without realizing that continued ownership was a

13 prerequisite to remaining in the Class; those who sold their Vehicle after the Class Notice Date

14 would be left without a remedy. The Court has serious concerns about excluding such individuals

15 from the Class, particularly when the Class Notice did not clearly forewarn class members that

16 they would be barred from participating in any recovery were they to sell their vehicle after

17 receiving the class notice.

18        Moreover, Defendant's proposed "final judgment" definition would be particularly

19 burdensome and would unfairly shrink the Class. There will be an ever-increasing number of

20 owners who sell their Class Vehicles as this case drags on through the probable appeals process

21 that could take years. Defendant's proposed definition would likely result in a significantly

22 smaller Class than that alleged in the complaint and certified.

23        GM's arguments in support of its preferred "final judgment" clarification are not

24 convincing. GM claims that excluding class members who sold their Class Vehicles after trial

25 would be consistent with the cost-of-repair damages awarded by the jury and avoid double

26 recovery. The remedy in this action is based on the cost of replacing the defective piston rings in

27 the Class Vehicles, which—according to the evidence at trial—comes out to $2,700.00.

28 According to GM, if an owner received $2,700 and then sells the vehicle for full market value, he

United States District Court
Northern District of California

1    would obtain a windfall.  But this presumes that an owner would be able to sell an unrepaired

2    vehicle for full value.  Unsurprisingly, GM has provided no evidence suggesting that former

3    owners have been able to sell their Class Vehicles for full price.  In the absence of any evidence to

4    the contrary, GM's theory that former owners would improperly obtain double recoveries is not

5    persuasive.

6          The Court will not remove post-Notice sellers from the Class given the risk that a former

7    owner who sold his or her vehicle after May 23, 2022, may not have realized that by so doing he

8    or she jeopardized the right to remain in the Class.  The Court will safeguard the reliance interests

9    of the post-Notice sellers by allowing owners who were current owners as of the date of the Class

10    Notice to remain in the class, provided they did not opt out.  For these reasons, it is appropriate to

11    clarify the "current owners" definition to reflect that "current" means as of the May 23, 2022 date

12    of the Class Notice.

13          Accordingly, the Court **GRANTS** Plaintiffs' motion to clarify the class definition.  The

14    class definition shall be clarified to require Class Vehicle ownership as of May 23, 2022, the date

15    of the Class Notice.

16    B.     Punitive Damages

17          1.     Rule 8 Governs Whether Plaintiffs Sufficiently Sought Punitive Damages

18          The parties dispute whether the Federal Rules of Civil Procedure or Idaho law govern the

19    appropriate pleading standard for punitive damages.  This is because Rule 8(a) and Idaho Code

20    Ann. § 6-1604(2) have markedly different standards.  Rule 8(a) provides that "[a] pleading that

21    states a claim for relief must contain . . . a short and plain statement of the claim showing that the

22    pleader is entitled to relief; and a demand for the relief sought, which may include relief in the

23    alternative or different types of relief."  Fed R. Civ. P. 8(a)(2)–(3).  The applicable Idaho law

24    governing punitive damages is Idaho Code § 6-1604(1) and (2), which imposes a heightened

25    pleading standard.  *Roost Project, LLC v. Andersen Constr. Co.*, No. 18-cv-238, 2020 WL

26    3895757, at *2 (D. Idaho July 10, 2020).

27          Under *Erie*, federal courts sitting in diversity jurisdiction apply state substantive law and

28    federal procedural law.  *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).  Where

United States District Court
Northern District of California

1    state law directly conflicts with the Federal Rules of Civil Procedure, federal courts must apply the

2    Federal Rules, not state law.  *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1018 (S.D. Cal.

3    2000).

4           Although the availability of punitive damages is "substantive, and Idaho law is therefore

5    controlling in diversity cases," *Roost Project*, 18-cv-238, 2020 WL 3895757, at *2; *Windsor v.*

6    *Guarantee Tr. Life Ins. Co.*, 684 F. Supp. 630, 633 (D. Idaho 1988) (holding that Idaho law "§ 6-

7    1604(2) is substantive in nature and therefore controlling in federal court in a diversity case"),

8    pleading requirements for punitive damages are procedural rather than substantive.  *Masterson v.*

9    *Cnty. of Alameda*, 2019 WL 3290779, at *3 (N.D. Cal. July 22, 2019); *see Vance ex rel. Wood v.*

10   *Midwest Coast Transp., Inc.,* 314 F. Supp. 2d 1089, 1090 (D. Kansas 2004) (plaintiff's request for

11   punitive damages was properly pleaded under the Federal Rules and plaintiff was not required to

12   follow Kansas's heightened pleading rule).  Plaintiffs are therefore correct that the heightened

13   pleading standard set forth in Idaho Code Ann. § 6-1604(2) does not apply here; instead, that issue

14   is governed by Fed. Rule of Civ. P. 8(a).[4]

15          Plaintiffs sufficiently pleaded their request for punitive damages under Rule 8(a).  "[A]

16   plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on

17   unsupported and conclusory averments of malice or fraudulent intent."  *Rees v. PNC Bank, N.A.*,

18   308 F.R.D. 266, 273 (N.D. Cal. 2015); *Anaya v. Machines de Triage et Broyage*, No. 18-cv-1731-

19   DMR, 2019 WL 359421, at *5 (N.D. Cal. Jan. 29, 2019); *see also Kelley v. Corrs. Corp. of Am.*,

20   750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010) (holding that conclusory allegations are sufficient to

21   state a claim for punitive damages in diversity cases).  In the operative complaint, Plaintiffs

22   included in their request for relief for "GM to pay actual and statutory damages (including

23   punitive damages) and restitution to Plaintiffs and other Statewide Class members, as allowable by

24   law."  *See* Docket No. 2 (Complaint) at 108; 8AC at 99.  Therefore, Plaintiffs have sufficiently

25   pleaded their claim for punitive damages under Federal Rule 8(a) by including a "short and plain"

26   prayer for punitive damages.

27   _____

28   [4] If the Idaho code were to apply, Plaintiffs would have been subject to a pretrial motion and
     hearing for punitive damages.

1

2.      Seventh Amendment Right to Jury Determination of Punitive Damages

2

As Plaintiffs properly pleaded their request for punitive damages, the next question is

3

whether such damages are determined by the jury or by the judge, which, in turn, raises a

4

constitutional question as to whether either party would have a right under the Seventh

5

Amendment to have the issue of punitive damages tried by a jury.

6

The Seventh Amendment states, "In Suits at common law, . . . the right of trial by jury

7

shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the

8

United States, than according to the rules of the common law." U.S. Const. amend. VII.  To

9

determine whether a party is entitled to a jury trial, courts apply a two-step test.  "First, we

10

compare the statutory action to 18th-century actions brought in the courts of England prior to the

11

merger of the courts of law and equity.  Second, we examine the remedy sought and determine

12

whether it is legal or equitable in nature." *Tull v. United States*, 481 U.S. 412, 417–18 (1987); *see*

13

*also Palantir Techs. Inc. v. Abramowitz*, No. 19-cv-06879-BLF, 2022 WL 16744377, at *8 (N.D.

14

Cal. Nov. 7, 2022) (explaining and applying the test).

15

"[S]ince the merger of law and equity in 1938, it has become settled among the lower

16

courts that class action [parties] may obtain a jury trial on any legal issues they present." *Ortiz v.*

17

*Fibreboard Corp.*, 527 U.S. 815, 846 (1999); s*ee also Donovan v. Philip Morris U.S.A., Inc.*, 268

18

F.R.D. 1, 30 (D. Mass. 2010) (holding that plaintiffs' cause in class action alleging a tobacco

19

company's breach of implied warranty was "like a traditional breach of warranty tort action that

20

requires a jury trial").  The Supreme Court has recognized that "monetary relief is legal" and that

21

actual and punitive damages are "the traditional form[s] of relief offered in the courts of law."

22

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998); *Curtis v. Loether*, 415

23

U.S. 189, 196 (1974).

24

The Seventh Amendment requires the jury to decide both the entitlement of punitive

25

damages as well as the amount of the punitive damages award.  In *Capital Solutions v. Konica*, for

26

example, the District Court of Kansas concluded that the Seventh Amendment requires the jury be

27

allowed to determine an award of punitive damages as well as the monetary amount of the award.

28

*Cap. Sols. v. Konica Minolta Bus. Sols.*, 695 F. Supp. 2d 1149, 1154 (D. Kan. 2010).  *Capital*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Solutions* reasoned that:

2              The Supreme Court did not explicitly state that the Seventh
             Amendment applied to the determination of both entitlement to and
3              the amount of punitive damages; but it concluded that punitive
             damage claims are actions at law under the Seventh Amendment,
4              and it did not carve out the question of the amount of punitive
             damages in holding that the plaintiff's actual and punitive damage
5              claims should have been tried to a jury.  Thus, *Curtis* suggests that
             *the amount of punitive damages is a question for the jury under the*
6              *Seventh Amendment.*

7    *Id.* at 1153 (emphasis added).  Other courts are in accord.  *See, e.g.*, *Atlas Food Sys. and Servs.,*

8    *Inc. v. Crane Nat. Vendors, Inc*., 99 F.3d 587, 595 (4th Cir. 1996) (holding that "the seventh

9    amendment guarantees the right to a jury determination of the amount of punitive damages"

10   because "[a]n assessment by a jury of the amount of punitive damages is an inherent and

11   fundamental element of the common-law right to trial by jury"); *see also Hartford Fire Ins. Co. v.*

12   *First Nat'l Bank of Atmore*, 198 F. Supp. 2d 1308, 1310–12 (S.D. Ala. 2002) (reaching this same

13   conclusion after reviewing Supreme Court cases).  Indeed, in *Pacific Mutual Life Insurance Co. v.*

14   *Haslip*, the Supreme Court stated that "[p]unitive damages have long been a part of state tort law."

15   *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 15 (1991).  The Court noted that the entitlement of

16   punitive damages "has always been left to the discretion of the jury, as the degree of punishment

17   to be thus inflicted must depend on the peculiar circumstances of each case."  *Id.* at 16; *see also*

18   *Cap. Sols*., 695 F. Supp. 2d at 1154 (citing to *Haslip* in its analysis).  Accordingly, "the Seventh

19   Amendment guarantees [plaintiff] the right to have the entirety of its claim for punitive damages,

20   including the determination of the amount, decided by the jury."  *Cap. Sols.*, 695 F. Supp. 2d at

21   1156.

22         ICPA, Idaho Code Ann. § 48-608(1) provides that "The court may, in its discretion, award

23   punitive damages and may provide such equitable relief as it deems necessary or proper in cases of

24   repeated or flagrant violations."  However, Rule 38, which preserves the right of trial by jury, and

25   the Seventh Amendment dictate the jury to be the factfinder of punitive damages even where state

26   laws have expressly or implicitly provided otherwise.  *See* Fed. R. Civ. P. 38(a) ("The right of trial

27   by jury as declared by the Seventh Amendment to the Constitution . . . is preserved to the parties

28   inviolate"); *F.C. Bloxom Co. v. Fireman's Fund Ins. Co*., No. 10-cv-1603, 2012 WL 5992286, at

1    *3–4 (W.D. Wash. Nov. 30, 2012) (applying Rule 38 and the Seventh Amendment to find that the

2    jury, not the judge, determines liability for punitive damages under Washington state law even

3    though "[t]here [could] be no question that the Washington legislature intended that a trial judge

4    decide whether to enhance damages and by how much"); *Jones v. United Parcel Serv., Inc.*, 674

5    F.3d 1187, 1202–03 (10th Cir. 2012) (applying Rule 38 and Seventh Amendment to find that the

6    jury should decide the amount of punitive damages where Kansas law required the court to decide

7    the amount).

8              3.        Waiver of Punitive Damages Claim

9              Because the Seventh Amendment requires the jury to determine liability for punitive

10   damages, Plaintiffs waived their claim for punitive damages by failing to raise it before trial.

11   More fundamentally, Plaintiffs did not submit a jury instruction on punitive damages, so the case

12   was tried without presenting the issue to the jury.  In fact, Plaintiffs expressly stated that a jury

13   instruction on punitive damages was not necessary.  When Plaintiffs raised the issue of punitive

14   damages at last August's pretrial conference, Plaintiffs stated, "There should be no jury

15   instruction, Your Honor.  It is an issue for punitives.  It's an issue for the Court . . . Costs are not

16   discretionary if the Plaintiff prevails there is no jury instruction."  *See* Aug. 26, 2022 Hr'g Tr. at

17   114:18–116:3.  The Court issued the proposed jury instructions on September 14, 2022, and gave

18   the parties an opportunity to object on the record and out of the jury's hearing before the

19   instructions were finalized.  *See* Docket No. 509.  The proposed instructions did not include any

20   instruction on a claim or award for punitive damages, and neither party sought to include an

21   instruction relating to punitive damages.  *See* Docket Nos. 514, 516.  As a result, the final jury

22   instructions did not mention punitive damages.  *See* Docket No. 554 (Final Jury Instructions

23   Order) at 27.  The failure to identify punitive damages as a matter for the jury is consequential.

24   *See* Fed. R. Civ. P. 51 (a) and (c).  The matter was never submitted to the jury.  The jury was not

25   instructed on punitive damages.  There was thus no way to comply with Rule 38 and the Seventh

26   Amendment.

27             Further, pursuant to the Court's Standing Order on Civil Pretrial Instructions, the parties

28   must file a joint pretrial conference statement at least 21 days prior to the final pretrial conference.

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1    The statement must contain "A statement of all relief sought, particularly itemizing all elements of

2    damages claimed." *See* Standing Order on Civil Pretrial Instructions at 1.  The Ninth Circuit has

3    also "consistently held that issues not preserved in the pretrial order have been eliminated from

4    that action . . . The very purpose of the pretrial order is to narrow the scope of the suit to those

5    issues that are actually disputed and, thus, to eliminate other would-be issues that appear in other

6    portions of the record of the case." *S. Cal. Retail Clerks Union v. Bjorklund*, 728 F.2d 1262, 1264

7    (9th Cir. 1984).

8        Plaintiffs did not "itemize" their claim for punitive damages in the Joint Pretrial Statement,

9    only mentioning that Plaintiffs "seek monetary damages measured by the difference between the

10    value of the allegedly defective Class Vehicles received and the Value of the Class Vehicles

11    without the alleged defect." *See* Docket No. 451 (Joint Pretrial Stmt) at 3.  Nor did Plaintiffs refer

12    to punitive damages in their Trial Brief.  *See* Docket No. 450.  Consequently, the Court did not

13    discuss punitive damages in its Pretrial Order.  *See* Docket No. 476 (Final Pretrial Conference

14    Order).

15        By not seeking punitive damages in the Joint Pretrial Statement or elsewhere in the pretrial

16    briefing or in instructing the jury, Plaintiffs have waived their request for punitive damages.

17    **V.**    <u>**CONCLUSION**</u>

18        For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for clarification of the

19    class definition.  The Court clarifies the class definition to require Class Vehicle ownership as of

20    May 23, 2022, the date of Class Notice:

21
22            **California Class:** All current owners or lessees of a Class Vehicle that was purchased or leased in new condition in the State of California *as of May 23, 2022.*

23            **Idaho Class:** All current owners or lessees of a Class Vehicle that was purchased or leased from a GM-authorized dealer in the State of Idaho *as of May 23, 2022.*

24
25            **North Carolina Class:** All current owners or lessees of a Class Vehicle that was purchased or leased in the State of North Carolina *as of May 23, 2022.*

26    ///

27    ///

28    ///

13

1    The Court **DENIES** Plaintiffs' motion for punitive damages under the Idaho Consumer

2    Protection Act.

3       This order disposes of Docket Nos. 587 and 589.

4

5       **IT IS SO ORDERED**.

6

7    Dated: June 8, 2023

8

9    _____

10                                      EDWARD M. CHEN
                                     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

14