UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAUL SIQUEIROS, et al.,

Plaintiffs,

v.

GENERAL MOTORS LLC,

Defendant.

Case No. 16-cv-07244-EMC

**ORDER REGARDING THE FINALITY OF THE JURY'S STATUTE OF LIMITATIONS FINDINGS**

Docket Nos. 640, 642, 644

## I.    INTRODUCTION

This is a vehicle defect class action in the post-trial stage.  Plaintiffs are class members from Idaho, California, and North Carolina who have sued Defendant General Motors LLC ("GM") based on their purchase of certain vehicles ("Class Vehicles") which, according to Plaintiffs, consume an excessive amount of engine oil ("Oil Consumption Defect," or "defect").[1] Following trial the jury found in favor of Plaintiffs, awarding $2,700 to each member of the three classes.  Docket No. 566 at 2–3.

On June 8, 2023, this Court denied Defendant's renewed motion for judgment as a matter of law or for a new trial in the alternative (Docket No. 592) and GM's motion to decertify all three classes (Docket No. 594).  Docket No. 634.  The Court upheld the jury's verdict with respect to the California, Idaho, and North Carolina claims: Plaintiffs presented substantial evidence demonstrating the existence of a classwide defect and equitable tolling for the relevant class

---

[1] The Class Vehicles are 2011-2014 Chevrolet Avalanches, Silverados, Suburbans, and Tahoes, and 2011-2014 GMC Sierras, Yukons, and Yukon XLs with Generation IV Vortec 5300 LC9 engines manufactured on or after February 10, 2011.  Docket No. 554 (Final Jury Instructions) at 3.  Any vehicle that has already received an adequate piston ring replacement is excluded from the definition of Class Vehicle.  *Id.*

United States District Court
Northern District of California

1    representatives. *Id.* at 5–48. However, at that time, the Court stated:

2             Because the statute of limitations is an affirmative defense that GM
               is entitled to assert, and because GM has not yet had an opportunity
3             to test its theory that some absent class members may have had
               actual notice of their claims, it appears that a post-trial mechanism
4             may be appropriate before entry of judgment. The Court shall set a
               status conference in which the parties shall discuss the scope and the
5             form of this post-trial mechanism; if needed, following the status
               conference, the parties will submit briefing regarding these issues,
6             including which party shall bear the burden of demonstrating that
               actual notice has (or has not) been shown, and whether, *e.g.*, GM
7             need make a *prima facie* showing as to those individual class
               members whose notice (or non-notice) they intend to challenge.

8    *Id.* at 56.

9        Having considered the supplemental filings from the parties regarding finality of the jury's

10   verdict, and the argument of counsel, for the reasons set forth below, the Court **DENIES**

11   Defendant's request for a post-trial adjudication of notice and/or judgment as a matter of law. The

12   Court will proceed to entry of final judgment. The Court hereby reconsiders portions of its June 8,

13   2023, opinion to the extent any such portions of that opinion are inconsistent with this Order.

14                           **II.       BACKGROUND**

15   A.    Procedural Background

16        The Court was previously asked by the Defendant to consider the propriety of the

17   timeliness as found by the jury in its motion for judgment as a matter of law or new trial in the

18   alternative (Docket No. 592) and a motion to decertify the class (Docket No. 594). In its motions,

19   Defendant argued there was not a legally sufficient basis to find that all class members' claims

20   were timely. Docket No. 592 at 23–25. At that time, Defendant also argued the class should be

21   decertified because individualized issues regarding notice of class members undermined the

22   propriety of adjudicating the timeliness of the claims on a classwide basis. Docket No. 594 at 13–

23   15.

24        In review of these submissions, the Court found that there was sufficient evidence to

25   support a finding of tolling for the named class representatives. Docket No. 634 at 38–41.

26   Specifically, there was an affirmative act of concealment by GM, and other requirements of tolling

27   or requirements as to the discovery rule were met as to the class representatives. *Id.* at 40–41.

28

United States District Court
Northern District of California

2

However, the Court was not entirely convinced that the issue of timeliness was settled as to all class members—though the Court determined at that time that any individualized issues presented did not require decertification. *Id.* at 51–56.

> As set forth below, many courts—including this Court—have found that a statute of limitations problem for certain class members is not enough to defeat class certification. Here there was a classwide basis for the jury to find tolling. That being said, Plaintiffs' theories of equitable tolling require that a class member neither knew nor reasonably should have known of the facts giving rise to their claim. Because a class member who had actual or subjective notice of his or her claim would not be entitled to tolling, and because the trial was limited to common, classwide issues that did not enable GM to probe whether any absent class members had actual notice, the Court agrees that additional measures must be taken before entry of final judgment to satisfy GM's due process rights. But this does not defeat class certification.
>
> *       *       *
>
> [T]he Court will set a status conference in which the parties shall discuss the scope and the form of this post-trial mechanism; if needed, following the status conference, the parties will submit briefing regarding these issues, including which party shall bear the burden of demonstrating that actual notice has (or has not) been shown, and whether, *e.g.*, GM need make a *prima facie* showing as to those individual class members whose notice (or non-notice) they intend to challenge.

*Id.* at 1–2, 51–52. The Court held a hearing on this issue, and, at that time, the parties presented issues warranting further briefing. *See* Docket No. 639 at 24:21–25:12. The Court is now asked to determine if a post-trial mechanism is in fact warranted, considering the requirements of due process, sufficiency of evidence supporting the jury's verdict, and the Seventh Amendment's Reexamination Clause. *See* Docket Nos. 640, 642, 644.

B.    <u>Factual Background</u>

At the heart of this suit is Plaintiffs' contention that GM's Generation IV Vortec 5300 Engines contain defective piston ring parts, which lead to excessive oil consumption and engine damage. *See* Docket No. 412 (Eighth Amended Complaint) ¶¶ 96–104. The class definitions are as follows: the California Class is defined as "all current owners or lessees of a Class Vehicle that purchased or leased the vehicle in new condition in the State of California"; the Idaho Class is defined as "all current owners or lessees of a Class Vehicle that was purchased or leased in the State of Idaho from a GM-authorized dealer," and the North Carolina Class is defined as "all

1    current owners or lessees of a Class Vehicle that was purchased or leased in the State of North

2    Carolina." *See* Docket No. 476 (Final Pretrial Conference Order, or "PTC Order") at 2. Pursuant

3    to applicable statutes of limitations, the claims of California and North California class members

4    arising before December 19, 2012, are on their face untimely. For Idaho class members, the date

5    for timeliness is December 19, 2014.

6              1.        Class certification phase

7              Defendant has opposed class certification throughout this litigation, highlighting the

8    aspects of Plaintiffs' claims that may require individualized determinations which defeat

9    predominance, a required element under Federal Rule 23(b)(3). *See* Docket No. 190 (Opp'n to

10   Plaintiffs' Motion to Certify); Docket No. 247 (Mot. to Decertify California Class); Docket No.

11   299 (Opp'n to Plaintiffs' Second Motion to Certify); Docket No. 325 (Mot. to Decertify Texas and

12   North Carolina Classes); Docket No. 347 (Mot. to Decertify All Classes); Docket No. 594 (Mot.

13   To Decertify Classes).

14             Earlier in the litigation, the Court contemplated that individualized issues could be

15   addressed by a multi-phase trial. Specifically, the Court suggested in a January 21, 2020 hearing

16   considering Defendant's first motion to certify, that a bifurcated trial may be appropriate. Docket

17   No. 424 (Jan. 21, 2020, Hr'g Tr. First Mot. Certify Class) at 62:3–8, 62:18–63:10. At that time,

18   the Court stated: "I guess you might suggest [individualized issues] could be handled in the claims

19   process, for instance, if this thing were bifurcated in some way or if there's some other process."

20   *Id.* at 62:5–8. And further, "with respect to individual plaintiffs, if you have a defense and . . .

21   let's say [that defense] applies in one in 10,000 times . . . it's hard to believe that that would

22   automatically preclude class certification." *Id.* at 62:21–25. The Court continued, "[it could be

23   the] kind of defense that could be raised in another proceeding, at a second-stage proceeding, if

24   you even get there – if you win on the first stage you don't even get there." *Id.* at 63:3–6 (cleaned

25   up). Following this discussion, the Court and parties discussed changing the class definition so

26   that individualized issues were more limited alleviating certain of these concerns. *Id.* at 61:7–

27   65:25.

28             Defendant again opposed certification, arguing that individualized issues, including as to

United States District Court
Northern District of California

timeliness, negated predominance.  Docket No. 299 (Opp'n to Class Certification) at 21.  At oral

argument on the second motion to certify on March 12, 2021, Defendant raised its argument that it

"has a right to raise its defenses with respect to the statute of limitations and tolling, not only as to

the named Plaintiffs but as to everyone that seeks to recover in this case."  Docket No. 336 (March

12, 2021, Hr'g Tr.) at 36:10–13.

In the Court's May 25, 2021, Order granting in part and denying in part Plaintiffs' second

motion to certify the class, the Court contemplated that individualized issues regarding

Defendant's statute of limitations defense could be addressed following the class-wide trial.

> GM finally contends that Plaintiffs' claims are inappropriate for
> class certification because individualized evidence is required on the
> timeliness of each putative class member's claims. Opp'n to Second
> Class Cert. Mot. at 21. This contention fails for several reasons.
>
> *        *        *
>
> Third, there is simply no basis for GM's vague contention that an
> individualized inquiry is necessary to determine "when and how
> each class member was on notice of the alleged oil consumption
> defect, and whether he or she acted with reasonable diligence in
> response to that information." Opp'n to Second Class Cert. Mot. at
> 21. *There is no indication in the record that there were ways for the
> putative class members to discover the oil-consumption defect
> outside of GM's representations about it. The jury can conclude, in
> one stroke, whether the putative class members knew about the
> defect until the lawsuit was filed.*
>
> Finally, and most importantly, GM's statute of limitations defense
> does not automatically preclude class certification where common
> questions otherwise predominate. The Ninth Circuit "has repeatedly
> held that '[t]he existence of a statute of limitations issue does not
> compel a finding that individual issues predominate over common
> ones.'" . . . *If need be*, the trier of fact can adjudicate all the other
> common questions "in one stroke" and then address GM's statute of
> limitations defense on an individual basis. *Wal-Mart*, 564 U.S. at
> 350.

Docket No. 320 (Order Granting in Part Plaintiff's Second Motion to Certify) at 38–39 (emphasis

added).

2.    Pre-trial preparation

In August 2022 the parties engaged in pre-trial preparation for trial in September 2022.

Leading up to the trial, the parties submitted proposed jury verdict forms and instructions; these

were the subject of much dispute amongst the parties.  During these disputes, Defendant took the position that the named Plaintiffs needed to prove their fraudulent concealment tolling as well as application of the discovery rule (under which accrual of a cause of action may be delayed) to their claims, not only individually, but also for "*all* other class members, that is, each and every single member of the three certified classes."  Docket No. 514 at 3 (emphasis in original).  GM then emphasized that the trial was an "all-or-nothing case."  Docket No. 547 at 1.

On August 12, 2022, the parties submitted several documents to prepare for trial including: (1) a joint pre-trial statement, Docket No. 451; (2) proposed jury verdict forms, Docket Nos. 445, 447; and (3) joint, proposed jury instructions, Docket No. 448.

The joint pre-trial statement provided that as to tolling, representative plaintiff Tarvin (California) needed to prove "by a preponderance of the common, classwide evidence that *none* of the California class members could have discovered the facts that are the basis of their claims . . . despite their due diligence."  Docket No. 451 at 6 (emphasis added).  And representative plaintiff Davis (North Carolina) needed to prove "by a preponderance of the common, classwide evidence that *all* other North Carolina Class members claims are tolled by the fraudulent concealment tolling doctrine."  *Id.* at 9 (emphasis added).  As to application of the discovery rule plaintiff Del Valle (Idaho) needed to prove "by a preponderance of the common, classwide evidence that *all* Idaho Class members did not know and through the exercise of reasonable diligence could not have known a cause of action existed."  *Id.* at 8 (emphasis added).  Defendant did not request that any issues as to actual or constructive notice of absent class members be withheld for consideration at trial in this statement.  Rather, in the section of the pretrial order "Bifurcation or Separate Trial of Issues," this section states, "The Court has ordered separate trials, with the claims of the Rule 23 certified classes being tried first, and all additional claims being tried at a later date."  *Id.* at 10.  "Additional claims" refers to claims brought by plaintiffs not part of the three certified classes in California, North Carolina, or Idaho (*i.e.*, plaintiffs in Arkansas, Massachusetts and Pennsylvania).  *Id.* at 1–2; *accord* Docket No. 412 (Eighth Amended Complaint) at 6–11.  There was no mention of bifurcated adjudication of statute of limitations issues.  *See id.* at 10.  The joint pretrial filing accurately reflected GM's decision to take an "all-or-

nothing" approach to the limitations issue under which, if Plaintiffs failed to prove their tolling claims as to each and every member of the class, then none of those members could claim tolling.

In GM's verdict form proposal, the tolling verdict would ask: "Do you find . . . that GM engaged in an affirmative act to conceal from Plaintiff [ ] and all other [ ] Class members the facts giving rise to their claims?" Docket No. 445 at 3 (California), 5–6 (North Carolina). And for application of the discovery rule: "Do you find . . . that Plaintiffs have proven that Plaintiff Del Valle and all other Idaho Class members did not know . . . and could not have known, that their claim might exist before December 19, 2014?" *Id.* at 8 (Idaho). Plaintiffs proposed something similar. *See* Docket No. 447 at 1–4.

In the joint proposed jury instructions submitted the same day, GM took the position that the jury instructions regarding fraudulent concealment tolling, and application of the discovery rule needed to communicate to the jury that findings needed to apply to *all* class members. Docket No. 448 (Joint proposed jury instructions) at 55–57, 71–72, 87–88. GM's proposed jury instructions required that representative Plaintiffs prove: "that he and all other members [of the respective class] failed to discover [relevant facts] despite due diligence." *Id.* at 57 (California), 71 (North Carolina). And for the discovery rule, that "he and all other Idaho Class members did not know . . . and could not have known" of their cause of action. *Id.* at 87. GM argued that the instructions needed to use the word "***all***" and not "***the***" when describing class members. *Id.* at 55–57, 71–72, 87–88 (emphasis added). This is because "[t]he law is clear that plaintiffs at trial must prove the elements of their [fraudulent concealment tolling and discovery rule claims] for all members of the certified class. Instructing the jury to allow class-wide relief when plaintiffs only meet their burden for some, but not all, class members would [be unlawful]." *Id.* at 88. And as to fraudulent concealment tolling specifically, GM was clear that the jury must be instructed that to find for Plaintiffs, it "must find that Plaintiffs meet their burden for fraudulent concealment tolling with respect to all [ ] class members." *Id.* at 58–59. GM did not ask to reserve any questions as to notice for a subsequent factfinder in this filing. *See generally id.*

During the August 26, 2022, proceedings the parties continued to dispute the jury instruction language. *See* Docket No. 492 (August 26, 2022, Hr'g Tr.) at 108:13–110:20. The

Court asked that the parties meet and confer to try and resolve the disputes.  *Id.*  The Court specifically asked that the parties meet and confer to see if there was a more streamlined version of the verdict form that could be utilized, while maintaining any necessary, specific instructions required due to the class posture.  *Id.* at 74:18–77:22.  GM did not express a desire to carve out certain issues for post-trial adjudication at that time.  *Id.*  Nor did the parties come to any resolution as to the verdict forms or the jury instructions.  *See* Docket Nos. 498 at 1 (forms), 514 at 1–2 (instructions).

As to the verdict forms, Plaintiffs next submitted a proposed version that would omit any language as to statute of limitations or fraudulent concealment tolling.  *See* Docket No. 499 at 1–3. GM objected, arguing that the verdict form must include language rendering a finding as to statute of limitations and tolling doctrines: "GM's Proposed General Verdict Form correctly includes GM's affirmative defenses under the applicable statute of limitations and the tolling doctrines plaintiffs must establish to prevail on untimely claims. . . the jury must submit its findings on these issues."  Docket No. 498 at 1.

At the same time, the parties continued to dispute the Court's proposed jury instructions (Docket No. 509).  *See* Docket Nos. 514 (GM's objections), 516 (Plaintiffs' objections).  As to fraudulent concealment tolling, GM explained that the proposed instruction was overbroad, because it did not sufficiently communicate that:

> [T]o assess tolling, the jury must consider affirmative acts of concealment, diligence, and when plaintiff Tarvin discovered facts giving rise to his claim in determining whether the fraudulent concealment doctrine applies to plaintiff Tarvin's claim. *The jury must then make that same determination for the other class members* to determine if the fraudulent concealment doctrine applies to the class claims.

Docket No. 514 at 1–2 (emphasis added).  GM  again objected to the Plaintiffs' proposed instructions, including the fraudulent concealment tolling instruction, "because they do not require the jury to find that Plaintiffs have proved the claims of all class members."  *Id.* at 3.  GM explained that this was improper because "Plaintiffs have the burden of proving their claims not just for themselves individually, but also for *all* other class members, that is, each and every single

member of the three certified classes." *Id.* (emphasis in original).  Accordingly, GM argued that the instructions should use the word "all" other class members, and not "the" other class members throughout.  *Id.*

GM submitted yet another briefing, doubling down on its position that the instructions needed to include the word "all."  Docket No. 547 at 1–4.  GM explained: Plaintiffs "must prove their claims as to *all* other class members . . . this class action is an all-or-nothing case."  *Id.* at 1 (emphasis in original).  Accordingly, GM argued, the instructions must include the phrase "all other class members," and not "the other class members," which might imply that some but not all is sufficient for a favorable verdict.  *Id.* at 1–4.  Plaintiffs rebutted that "[i]t is unnecessary and confusing to ask the jury to make findings with respect to 'all' or 'each' class member."  Docket No. 544 at 3–5 (quoting Docket No. 509 at 53).

The Court ultimately sided with GM and changed the phraseology from "the other members" to "all other [class] members."  *Compare* Docket No. 509 at 55–56, 60–61, 70 *with* Docket No. 554 at 19, 23, 26.   The final jury instructions read as follows:

> To establish fraudulent concealment tolling, Plaintiff Tarvin must show by a preponderance of the evidence that: (1) GM affirmatively and fraudulently concealed facts that are the basis of his claim and the claims of all California class members, and (2) Plaintiff Tarvin and all other members of the California Class exercised reasonable diligence under the circumstances and still did not discover the alleged conduct. . . . To establish the second element, Plaintiff Tarvin must prove that GM's fraudulent concealment prevented him and all other members of the California Class from discovering the facts giving rise to their claims before December 19, 2012, despite their exercise of due diligence.
>
> *                *                *
>
> To establish fraudulent concealment, Plaintiff Davis must show by a preponderance of the evidence that: 1. GM fraudulently concealed facts that are the basis of the claims of Plaintiff Davis and the North Carolina Class members; 2. Plaintiff Davis and all other North Carolina members failed to discover those facts within the statutory period, despite; 3. The exercise of due diligence.
>
> *                *                *
>
> Plaintiff Del Valle must prove, by the preponderance of the evidence, that he and all other Idaho Class members did not know, and through the exercise of reasonable diligence could not have known, that their cause of action under the Idaho Consumer

United States District Court
Northern District of California

Protection Act might exist before December 19, 2014.

Docket No. 554 (Final Jury Instructions) at 19, 23, 26.

The Court also sided with GM that the verdict forms should include language asking the jury to issue a finding as to statute of limitations and tolling.  *See* Docket No. 558 (Order Re Final Verdict Forms).  The Court included language asking for a verdict as to tolling and the discovery rule and conformed that language to mirror the jury instructions by using the term "all":

> Do you find, by a preponderance of the evidence, that Plaintiffs have proven that the statute of limitations is to be tolled for all California class members who purchased or leased a Class Vehicle before December 19, 2012?
>
> \*       \*       \*
>
> Do you find, by a preponderance of the evidence, that Plaintiffs have proven that the statute of limitations is to be tolled for all North Carolina class members who purchased or leased a Class Vehicle before December 19, 2012
>
> \*       \*       \*
>
> For any Idaho class member who purchased or leased a Class Vehicle before December 19, 2014, do you find, by a preponderance of the evidence, that Plaintiffs have proven that Plaintiff Del Valle and all other Idaho class members did not know, and through the exercise of reasonable diligence could not have known, that their claim might exist before December 19, 2014?

*Id.* at 2–4.  Thus, if the jury rendered a verdict in Plaintiffs' favor and found the limitations period was tolled for all class members, that left no room for another fact finder to find that some members were not entitled to tolling.

3.    Trial

At trial, Plaintiffs presented exhibits and evidence from GM engineers Grant Tappen, Thomas Halfa, Yoon Lee, Wai Nguyen, and Steven Pfromm and named Plaintiffs Garet Tarvin, Gabriel Del Valle, and William Davis, among other witnesses.  *See* Docket Nos. 545, 546, 552, 553, 560–62, 564.  GM did not call any witnesses during its case-in-chief.  Docket No. 562.

The jury found for Plaintiffs on all three claims.  Docket No. 566 at 2–4.  On the merits, the jury found that Plaintiffs had proven: (1) a breach of implied warranty under California Song-Beverly Consumer Warranty Act for Plaintiff Tarvin and all other California class members, (2) a breach of implied warranty of merchantability under North Carolina law for Plaintiff Davis and all

other North Carolina class members, and (3) a violation of the Idaho Consumer Protection Act for Plaintiff Del Valle and all other Idaho class members.  *Id.*  The jury also found that Plaintiffs had proven that the statute of limitations is to be tolled for all California and North Carolina class members who purchased their Class Vehicles prior to the statutory window, which was December 19, 2012, for those classes.  *Id.*  For the Idaho class, the jury determined that the facially untimely claims were timely under Idaho's discovery rule.  *Id.*  To trigger tolling in California and North Carolina, Plaintiffs had to prove (1) GM engaged in an affirmative act of concealment and (2) none of the Plaintiffs or class members discovered facts giving rise to their claims despite their diligence.  *See* Docket No. 554 at 19–20, 23.  To trigger application of the discovery rule under Idaho law, Plaintiffs needed to show that all Idaho class members "did not know, and through the exercise of reasonable diligence could not have known, that their cause of action under the Idaho Consumer Protection Act might exist before December 19, 2014."  *Id.* at 26.

### 4. Post-trial

Following the trial and the corresponding verdict in Plaintiffs' favor, the Defendant raised the need for a post-trial mechanism to adjudicate actual notice at the February 23, 2023, hearing discussing class decertification.  ECF No. 626 (Feb. 23, 2023, Hr'g Tr. Mot. To decertify at 65:20–23).  GM continued to raise the issue of individualized factfinding post-trial in its motions to decertify.  ECF No. 606, GM's Reply ISO Mot. to Decertify at 15; ECF No. 594, GM's Mot. to Decertify at 16–18.

## III.  DISCUSSION

In the present filings the parties dispute whether a post-trial mechanism adjudicating actual or constructive notice of absent class members is warranted.  *See generally* Docket Nos. 640, 642, 644.  Plaintiffs argue that any such post-trial mechanism would violate the Seventh Amendment's Reexamination Clause which states that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States,"  U.S. Const. amend. VII.  *See* Docket No. 640 at 1–4.  Plaintiffs further argued that due process does not require a post-trial mechanism here because GM made a purposeful, strategic decision to pursue an all-or-nothing approach to tolling.  *Id.* at 2–7.  GM argues that it is entitled to the post-trial mechanism as a matter of due process, that it did not

1    foregoing any such entitlement, and that the Court's prior Order is definitive as to this requirement.

2    Docket No. 642 at 3–4, 15.  GM also argues that the jury's verdict as to classwide tolling must be

3    overturned as a matter of law for lack of evidence supporting the finding.  *Id.* at 5–15.  Thus, the

4    questions addressed herein include: (1) whether a post-trial mechanism adjudicating actual or

5    constructive notice of absent class members would violate the Seventh Amendment

6    Reexamination Clause; (2) whether GM is entitled to, in light of its trial strategy, a post-trial

7    adjudication of actual or constructive notice; and (3) whether the jury's verdict as to class-wide

8    tolling and timeliness should be vacated for insufficient supporting evidence.

9    A.    <u>Seventh Amendment</u>

10        The Seventh Amendment's Reexamination Clause provides: "no fact tried by a jury, shall

11   be otherwise re-examined in any Court of the United States, than according to the rules of the

12   common law."  U.S. Const. amend. VII.  The rights relating to a jury trial under the Seventh

13   Amendment may be asserted by the plaintiff.  *See, e.g.*, *Hosie v. Chicago & N. W. Ry. Co.*, 282

14   F.3d 639 (7th Cir. 1960), *cert. denied*, 365 U.S. 814 (1961) (determining whether plaintiff's

15   Seventh Amendment right to a jury trial had been violated by bifurcated trial).

16        Under the Seventh Amendment a subsequent factfinder may not reconsider explicit and

17   implicit factual findings made by the jury in the first instance.  *See, e.g.*, *Acosta v. City of Costa*

18   *Mesa*, 718 F.3d 800, 828–29 (9th Cir. 2013) (quoting *L.A. Police Protective League v. Gates*, 995

19   F.2d 1469, 1473 (9th Cir. 1993)) ("[I]n a case where legal claims are tried by a jury and equitable

20   claims are tried by a judge . . . the Seventh Amendment requires the trial judge to follow the jury's

21   implicit or explicit factual determinations.").  The Seventh Amendment thus limits the extent to

22   which issues may be bifurcated between a jury and a subsequent factfinder.  *See, e.g.*, *Arthur*

23   *Young & Co. v. U. S. Dist. Ct.*, 549 F.2d 686, 693 (9th Cir. 1977).  If the issues first presented are

24   so "interwoven" with issues reserved for subsequent consideration by a second fact finder, the

25   Amendment is violated.  *Id.* at 693–94.

26        In reviewing the verdict form and the jury instructions, the Court concludes that the jury

27   did issue findings as to the actual or constructive notice of all class members, including absent

28   class members.  While it may be permissible to bifurcate common, class wide issues from

1  individualized tolling issues, doing so is only proper when issues are carefully carved out from the

2  jury's determination via the verdict forms and jury instructions; that did not occur here.

3       As stated above, the Ninth Circuit has held that the Seventh Amendment bars

4  reconsideration of both explicit and implicit factual findings made by a jury. *Acosta*, 718 F.3d at

5  828–29. To determine what issues have been decided by the first jury, courts in the circuit look at

6  the face of the jury's verdict forms and may "unpack" the verdict by considering jury instructions

7  that informed the verdict. *United States v. J-M Mfg Co. Inc.*, 2018 WL 1801258, at *5 (C.D. Cal.

8  Apr. 12, 2018) (citing *Acosta*, 718 F.3d at 828–-29). In *Acosta*, for example, the Ninth Circuit

9  "unpacked" the jury's verdict that found no First Amendment violation occurred. 718 F.3d at

10  828–29. In reviewing the jury instructions, the court found that there was an implicit

11  determination that the plaintiff caused an "actual disturbance," negating a First Amendment

12  violation. *Id.* at 829. Accordingly, the judge could not thereafter reconsider whether there was an

13  actual disturbance in adjudicating post-trial requests for equitable relief. *Id.*

14       The verdict form here shows that the jury rendered verdicts on timeliness extending to "all

15  class members." Specifically, the jury's October 4, 2022, verdict states:

16       Do you find, by a preponderance of the evidence, that Plaintiffs have
     proven that the statute of limitations ***is to be tolled for all California***
17       ***class members*** who purchased or leased a class vehicle before
     December 19, 2012? [Answer:] **Yes**.
18
                    *         *         *
19       Do you find, by a preponderance of the evidence, that Plaintiffs have
     proven that the statute of limitations ***is to be tolled for all North***
20       ***Carolina class members*** who purchased or leased a Class Vehicle
     before December 19, 2012? [Answer:] **Yes.**
21
                    *         *         *
22       For any Idaho class member who purchased or leased a Class
     Vehicle before December 19, 2014, do you find, by a preponderance
23       of the evidence, that Plaintiffs have proven that Plaintiff Del Valle
     ***and all other Idaho class members did not know, and through the***
24       ***exercise of reasonable diligence could not have known***, that their
     claim might exist before December 19, 2014? [Answer:] **Yes.**
25
Docket No. 566, Verdict Form at 2–4 (emphasis added).
26
       And in making this finding, the jury instructions required the jury to determine whether all
27
(*i.e.*, every) class members either discovered the underlying facts relating to their claims or knew
28

13

or could not have known of those facts.  The jury was not provided a limiting instruction to avoid

considering the knowledge of or reasonable diligence exercised by any individual class members.

Specifically:

(a)  California Class

Jury Instruction No. 16 (Fraudulent Concealment Tolling under California Law)

If you find that Plaintiff Tarvin **and all other California class members have proven that GM's fraudulent concealment prevented him and the other California class members from discovering the facts giving rise to their claims before December 19, 2012, despite their exercise of due diligence**, then these claims are not barred by the four-year statute of limitations.

\*          \*          \*

To establish fraudulent concealment tolling, Plaintiff Tarvin must show by a preponderance of the evidence that: (1) GM affirmatively and fraudulently concealed facts that are the basis of his claim and the claims of all California class members, and (2) Plaintiff Tarvin **and all other members of the California Class exercised reasonable diligence under the circumstances and still did not discover the alleged conduct**.

\*          \*          \*

To establish the second element, Plaintiff Tarvin must prove that GM's fraudulent concealment prevented him **and all other members of the California Class from discovering the facts giving rise to their claims before December 19, 2012, despite their exercise of due diligence**.

Plaintiff need not show the exercise of reasonable diligence in discovering the oil consumption defect unless, and until, he became aware of facts that would cause a reasonable person to inquire into whether his vehicle was sold with this defect.

(a)  North Carolina Class

Jury Instruction No. 19 (Fraudulent Concealment Tolling under North Carolina Law)

To establish fraudulent concealment, Plaintiff Davis must show by a preponderance of the evidence that: 1. GM fraudulently concealed facts that are the basis of the claims of Plaintiff Davis and the North Carolina Class members; **2. Plaintiff Davis and all other North Carolina members failed to discover those facts within the statutory period, despite; 3. The exercise of due diligence.**

\*          \*          \*

If the plaintiff establishes that he was not, and should not have been, aware of facts that should have led to the discovery of the oil consumption defect, then the plaintiff need not show the exercise of any other due diligence.

(b) Idaho Class

Jury Instruction No. 22 (Discovery Rule under Idaho Law)

Plaintiff Del Valle asserts on behalf of himself and the Idaho Class that their Idaho Consumer Protection Act claim is not prohibited by the statute of limitations by reason of the "discovery rule." The "discovery rule" allows postponement of the statute of limitations period until a party knew, or with reasonable diligence should have known, that their claim exists.

The burden of proof for showing that the Idaho Consumer Protection Act claim is not barred is on Plaintiff Del Valle. This means that Plaintiff Del Valle must prove, by the preponderance of the evidence, that *he and all other Idaho Class members did not know, and through the exercise of reasonable diligence could not have known*, that their cause of action under the Idaho Consumer Protection Act might exist before December 19, 2014.

Docket No. 554 at 19, 23, 26 (emphasis added).

The jury was not asked to render a more limited finding, *e.g.*, that GM engaged in an affirmative act of concealment, leaving open the question of actual or constructive notice on an individual class member basis. *See* 9A Wright & Miller Fed. Prac. & Proc. § 2391 (risk of reexamination "can be avoided by carefully allocating responsibilities between the two juries so that the same issue is not presented for decision to both"). Instead, the plain language of the verdict form and instructions show that the jury necessarily rendered a verdict as to the actual or constructive notice of all class members of the three classes including absent class members.

The jury in this case was asked to consider the actual or constructive notice of all class members, leaving no room to find that any (*i.e.*, less than "all") class member was not entitled to tolling. A subsequent factfinder considering the same question in a bifurcated proceeding would run afoul of the Reexamination Clause were it to find otherwise. *See, e.g.*, *Castano v. American Tobacco Co.*, 84 F.3d 734, 750–51 (5th Cir. 1996) (Reexamination Clause applies to issues that are sufficiently interwoven); *cf. Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 542 (N.D. Cal. 2012) (finding class wide and individualized issues regarding damages properly bifurcated).

B.     Due Process

In the Court's June 8 opinion, the Court explained that due process required, or may require, a post-trial mechanism to access issues of individual notice.  *Compare* Docket No. 634 at 51–52 ("additional measures must be taken before entry of final notice"), *id.* at 51 ("GM Is Entitled to Challenge Whether Absent Class Members Had Actual Notice of Their Claims"), *with id.* at 56 ("it appears that a post-trial mechanism may be appropriate before entry of final judgment"), *id.* at 2 ("a post-trial mechanism may be appropriate before entry of judgment").  Plaintiffs now present new arguments as to why Defendant's due process rights do not require an individualized, post-trial mechanism that should be addressed here.

Plaintiffs argue that GM retained no such due process right where GM affirmatively chose to pursue a trial strategy adjudicating all issues of timeliness before the jury.  Plaintiffs argue, essentially, that GM pursued an all-or-nothing strategy at trial instead of reserving issues for post-trial adjudication; it cannot now complain of a due process violation caused by that choice. Docket No. 644 at 11–13.  Plaintiffs argue that otherwise, Plaintiffs are put in a "'heads GM wins, tails Plaintiffs lose' position."  Docket No. 640 at 5.  By framing the timeliness issues as they did, *i.e.*, requiring the jury render a decision as to the timeliness of claims for all class members, GM had the opportunity at trial it asks for now: to challenge the actual or constructive notice of the class.  Docket No. 640 at 2–3.

GM contends that it has continually asserted its due process rights and argued that individualized inquiries as to timeliness are necessary.  Docket No. 642 at 16.  "In response to GM's objections, it has been told those individual fact issues and questions do not prevent class certification, and instead, can be dealt with later."  *Id.* at 16.  The Court "reserv[ed] the question of addressing individual questions on statutes of limitations later and separately.  GM did not waive any constitutional Due Process right by abiding by the Court's rulings and directions."  *Id.* at 15.

In the early stages of litigation, the Court indeed contemplated that bifurcation might be appropriate to address individualized issues of timeliness if need be.  *See* Docket No. 424 (Jan. 21, 2020, Hr'g Tr. First Mot. Certify Class) at 54:1–65:25 ("I guess you might suggest [individualized issues] could be handled in the claims process, for instance, if this thing were bifurcated in some

way or if there's some other process."); Docket No. 320 (Order on class certification) at 38–39 ("If need be, the trier of fact can adjudicate all the other common questions 'in one stroke' and then address GM's statute of limitations defense on an individual basis."). The Court made no definitive ruling. Even if the Court contemplated the possibility of such bifurcated proceedings, that was before GM opted for an all-or-nothing approach at trial.

From the outset of pre-trial preparation following class certification, GM made clear its stance that the jury trial was meant to address all issues regarding tolling and timeliness as it pertained to each member of the three certified classes. Tellingly, in the joint, pre-trial statement, GM omitted from the "Bifurcation or Separate Trial of Issues" section any indication of an expectation of or request to save for bifurcation issues of timeliness for individual class members. *See* Docket No. 451 at 10 ("The Court has ordered separate trials, with the claims of the Rule 23 certified classes being tried first, and all additional claims[2] being tried at a later date."). Further, in its filings, GM argued that, to find in Plaintiffs' favor, the jury "must find that Plaintiffs met their burden for fraudulent concealment tolling with respect to *all* [ ] class members." Docket No. 448 at 58–59, 71–72, 87–88 (emphasis added). GM thus did not endeavor to reserve any issues regarding notice by or diligence of absent class members for a subsequent factfinder. Rather, GM affirmatively left it to the jury to decide the issue in toto. *See also* Docket No. 451 (Joint Pre-trial Statement) at 6, 8–9.

And while GM's initially-proposed verdict form included narrower language regarding tolling, Docket No. 445 at 3, 5, 7, its filings submitted the same day (jury instructions and pre-trial statement) made its position clear: the jury needed to render a decision for all class members, and in so doing, it needed to consider the actual and constructive knowledge of each class member, *see* Docket No. 448 at 58–59, 71–72, 87–88; Docket No. 451 at 6, 8–9. Indeed, following the first round of submissions as to the verdict forms, Plaintiffs submitted a modified iteration of the forms that would omit any verdict expressly addressing fraudulent concealment tolling. *See* Docket No.

---

[2] "Additional claims" refers to claims by plaintiffs not included in the three classes certified under Rule 23: the California, North Carolina, and Idaho classes. *See* Docket No. 451 at 1–2; Docket No. 412 at 6–11.

1    499 at 1–3.  GM objected, arguing that the verdict form must include language rendering a finding

2    as to tolling: "GM's Proposed General Verdict Form correctly includes GM's affirmative defenses

3    under the applicable statutes of limitations and the tolling doctrines plaintiffs must establish to

4    prevail on untimely claims. . . *the jury must submit its findings on these issues*."  Docket No. 498

5    at 1 (emphasis added).

6         In subsequent filings regarding jury instructions and verdict forms, GM reasserted its

7    position that the jury needed to issue a classwide verdict regarding timeliness.  Docket No. 514 at

8    1–2 (arguing that "to assess tolling, the jury must consider affirmative acts of concealment,

9    diligence, and when plaintiff Tarvin discovered facts giving rise to his claim . . . The jury must

10   then make that same determination for the other class members"); *id.* at 3–4 (arguing for use of the

11   word "all" throughout the instructions); Docket No. 547 at 1–4 (similar); *id.* at 1 (Plaintiffs "must

12   prove their claims as to all other class members . . . *this class action is an all-or-nothing case*.").

13   The Court ultimately sided with GM and changed the phraseology from "the other class members"

14   to "all other class members."  *Compare* Docket No. 509 at 55, 60, 70, *with* Docket No. 554 at 19,

15   23, 26.  The Court also sided with GM that the verdict forms should include language asking the

16   jury to issue a finding as to statute of limitations and tolling and conformed the verdict language to

17   mirror the jury instructions by using the term "all."  *See* Docket No. 558 at 2–4.

18        To be sure, GM opposed adjudication by class action.  However, once its attempts at

19   decertification failed, GM opted for a strategy to pursue a singular trial for all members of the

20   three classes on all issues, including tolling.  Though ultimately GM's gamble did not pay off, this

21   was a rational strategy.

22        Where a party complains of an error, but invited that error through its trial strategy, the

23   error does not require reversal -- the error is one of the party's "own making."  *Tyson Foods, Inc.*

24   *v. Bouaphakeo*, 577 U.S. 442, 461 (2016).  For example, in *Tyson* the defendant challenged a class

25   verdict on that basis that plaintiffs had "not demonstrated any mechanism for ensuring that

26   uninjured class members do not recover damages."  *Id.* at 460.  However, the *Tyson* Court noted

27   that the defendant had "insisted upon a single proceeding in which damages would be calculated

28   in the aggregate and by the jury," which made it difficult to identify any uninjured class members.

*Id.* at 451.  Thus, "this problem appears to be one of [the defendant]'s own making."  *Id.* at 461.

The Court referred the question to the district court if "any error should be deemed invited."  *Id*. at

462.  The district court found that any error was invited by defendant's request.  *Bouaphakeo v.*

*Tyson Foods, Inc.*, 214 F. Supp. 3d 748, 754 (N.D. Iowa 2016).  As in *Tyson*, GM effectively

pushed for all tolling issues to be decided in one proceeding instead of in a bifurcated manner.

Thus, the error of which GM complains is "one of [GM's] own making."  *Tyson*, 577 U.S. at 461.

*See also United States v. Morton*, 776 F. App'x 395, 399 (9th Cir. 2019) (finding that defendant

waived challenge to jury instructions that it proposed); *United States v. Jimenez-Lopez*, 472 F.

App'x 437, 438 (9th Cir. 2012) (recognizing choice to proceed in group pleading rather than

individualized hearing did not violate due process).

The Ninth Circuit has likewise recognized that where a party "invite[s] the district court to

err and then complain[s] of that very error[,]"  review is inappropriate.  *In re Oracle Corp. Sec.*

*Litig.*, 627 F.3d 376, 386 (9th Cir. 2010) (emphasis added).  As courts in the circuit have

recognized, parties "should not be able to secure a post-trial reversal by persuading the court to

take an erroneous action before or during the trial.  Inviting an error results in waiver of the right

to raise that error post-trial."  *Ramirez v. Towe*, 2017 WL 11648982, at *11 (C.D. Cal. July 10,

2017).  Indeed, it is commonplace understanding that "litigation often involves strategic choices,"

wherein litigants pursue certain tactics at the expense of pursuing other strategies.  In short, where

a strategic decision is made, the litigant is bound by that decision.  *See In re: Qualcomm Antitrust*

*Litigation*, 2023 WL 6301063, at *2, 9 (N.D. Cal. Sept. 26, 2023) (excluding supplemental expert

report after close of fact discovery notwithstanding change in posture of case because plaintiff

made a "strategic choice" leading to that outcome, and "reliev[ing] plaintiffs of their choices under

the circumstances would open the flood gates to prolonged do-over litigation.").

In summation, GM affirmatively chose to engage in a winner-take-all trial.  And this

strategy was a legitimate one, heightening the burden for Plaintiffs to succeed at trial.  But GM,

having been permitted to pursue a trial according to its chosen strategy, cannot now claim a due

process violation.  *See Morton*, 776 F. App'x at  399 (finding a party cannot challenge jury

instructions it proposed); *Jimenez-Lopez*, 472 F. App'x at 438 (no error in allowing party to

engage in proceeding in the format of its choosing); *In re: Qualcomm Antitrust Litigation*, 2023 WL 6301063, at *9 (finding litigants should be held to their strategic choices to avoid never-ending litigation).[3]

The Court also notes that GM has not put forth any evidence establishing actual notice for any absent class member.[4]  Its best case was made with respect to the three named class representatives, each of whom were relatively sophisticated and experienced truck owners with good mechanical knowledge.  Yet, the jury found each were entitled to tolling.  Thus, GM's claim that it was deprived of any right in violation of due process is factually dubious.  *See Brasko v. Howard Bank*, 2022 WL 951771, at *7 (D. Md. Mar. 29, 2022) ("The notice and diligence elements of the [fraudulent concealment test] are objective inquiries that can be determined on a class-wide basis."); *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 313 (N.D. Cal. 2016) (finding that class adjudication of fraudulent concealment tolling is appropriate, and that individualized inquiries would be available "*should the evidence indicate* that the question must be resolved separately as to particular class members.") (emphasis added).  GM's failure on this point is particularly poignant, given that GM need only present one absent class member with notice to make its point.[5]

_____

[3] The Court does not agree with GM that the doctrine of waiver governs this analysis, given that GM actively chose a trial that did not reserve issues of tolling for post-trial adjudication.  In any event, even if the doctrine applied, here there was a knowing and voluntary waiver.  GM is represented by the two preeminent class action defense firms in the state; given the sophistication level of GM and its counsel, combined with its affirmative, bullish strategy at trial regarding tolling, GM was highly aware of what it was doing.  *See, e.g.*, *Charter Commc'ns v. Cnty. of Santa Cruz*, 304 F.3d 927, 935 n.9 (9th Cir. 2002) (enforcing waiver of First Amendment rights and holding that, "in a case like this one, where sophisticated parties are represented by counsel, we think Charter was aware of what it was getting itself into.").

[4] The insufficiency of evidence purportedly establishing notice is discussed in Section III.C.2.

[5] GM was well aware of the pertinence of the tolling doctrines in this action at least as early as April 10, 2017, when  GM first moved to dismiss Plaintiffs' complaint on the grounds that fraudulent concealment tolling and applicability of the discovery rule were not adequately pleaded.  *See* Docket No. 47 at 27–29.  GM continued to raise this argument thereafter.  *See, e.g.*, Docket No. 70 at 21–22 (moving to dismiss the Second Amended Complaint on similar grounds).  The initial non-expert fact discovery cutoff in this action was May 30, 2019, after the issue was first raised.  Docket No. 128 at 2.  And following amendments of the complaint, the Court granted additional opportunity to take discovery from parties as was necessary and requested.  *See* Docket No. 156 at 5; Docket No. 245 at 3.  GM thus had ample opportunity to take discovery as to notice of absent class members prior to close of discovery in the first instance or to pursue discovery thereafter.

1    In light of the above, due process does not require that GM be afforded a second

2 opportunity to adjudicate the issue of actual and constructive notice of absent class members. To

3 the extent that the Court's June 8 Opinion may be read to conflict with this holding, the Court

4 overrules its prior decision on this subject.

5    C.    Judgment as Matter of Law

6    This Court previously considered the sufficiency of the jury's verdict as it relates to named

7 class representatives, finding that there was sufficient evidence to support the verdict (including

8 the verdict on tolling) in its June 8 opinion denying Defendant's motion for judgment as a matter

9 of law and decertification. Docket No. 634 at 38–41. The Court also briefly addressed sufficiency

10 of the jury's verdict as to class-wide tolling. *Id.* at 54–56. As to class-wide tolling, the Court

11 explained:

12    Here there was a classwide basis for the jury to find tolling. That
being said, Plaintiffs' theories of equitable tolling require that a class
13    member neither knew nor reasonably should have known of the
facts giving rise to their claim. Because a class member who had
14    actual or subjective notice of his or her claim would not be entitled
to tolling, and because the trial was limited to common, classwide
15    issues that did not enable GM to probe whether any absent class
members had actual notice, the Court agrees that additional
16    measures must be taken before entry of final judgment to satisfy
GM's due process rights. But this does not defeat class certification.
17    (*Id.* at 51–52).

18 Although the Court explained that there was a "classwide basis for the jury to find tolling," the

19 Court did not engage in a full-throated analysis of whether the evidence proffered could support

20 tolling or applicability of the discovery rule to all class members without more, individualized

21 proof regarding actual notice as a matter of law. *Id.* at 54–56. GM now re-raises its request for

22 judgment as a matter of law. Accordingly, the Court addresses this argument in full now.

23    To trigger tolling in California and North Carolina, Plaintiffs had to prove (1) GM engaged

24 in an affirmative act of concealment and (2) none of the Plaintiffs or class members had inquiry

25 notice of facts giving rise to their claims despite their diligence. *See* Docket No. 554 at 19–20, 23.

26 "Plaintiff need not show the exercise of reasonable diligence in discovering the oil consumption

27 defect unless, and until, he became aware of facts that would cause a reasonable person to inquire

28 into whether his vehicle was sold with this defect." *Id.* at 20 (California). "If the plaintiff

21

1    establishes that he was not, and should not have been, aware of facts that should have led to the

2    discovery of the oil consumption defect, then the plaintiff need not show the exercise of any other

3    due diligence." *Id.* at 23 (North Carolina). To trigger application of the discovery rule under

4    Idaho law, Plaintiffs needed to show that the Idaho class members "did not know, and through the

5    exercise of reasonable diligence could not have known, that their cause of action under the Idaho

6    Consumer Protection Act might exist before December 19, 2014." *Id.* at 26.

7        Judgment as a matter of law under Federal Rule of Civil Procedure 50(b) is granted "only

8    if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Winarto*

9    *v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001). When evaluating

10   such a motion, "the court must draw all reasonable inferences in favor of the nonmoving party,

11   and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson*

12   *Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000). The Ninth Circuit has made clear that a court

13   "cannot disturb the jury's verdict if it is supported by substantial evidence." *Lambert v. Ackerley*,

14   180 F.3d 997, 1012 (9th Cir. 1999). Substantial evidence means "evidence adequate to support

15   the jury's conclusion, even if it is also possible to draw a contrary conclusion" from the same

16   evidence. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (internal quotation

17   marks omitted).

18       1.    <u>There is sufficient evidence to support the classwide verdict</u>

19       Plaintiffs argue that the evidence supports a finding that even a very knowledgeable class

20   member who exercised reasonable diligence would not have been on notice "because the requisite

21   information was simply not available and did not become fully available until well after this suit

22   was filed and GM began producing its internal communications in discovery[.]" Docket No. 644

23   at 10. "GM's campaign to deny the Oil Consumption Defect served as powerful, class-wide

24   evidence that no class members could have received actual notice of their claim." *Id.* at 9.

25       The following evidence on this point was presented at trial:

26   •   GM presented evidence that the symptoms experienced were not easily traced to the

27       defect. GM argued to the jury (in the context of negating existence of a piston ring

28       defect) that excessive oil consumption cannot be traced to any piston ring defect

United States District Court
Northern District of California

because "there are multiple different causes for oil consumption issues or piston ring issues."  Trial Tr. ("TT") at 1429:11–12.  To this end, the jury reviewed exhibits and heard testimony identifying other, potential causes of oil consumption such as improper maintenance, lifters, improperly installed piston rings, and a supplier issue regarding baffle sealant.  *See* Trial Ex. ("TX") 146; TX150; TX155; TX192; TX554; TT at 1011:19–22; TT at 1014:2–5.

- The jury also heard evidence that GM knew of the defect but GM's only public disclosure, Technical Service Bulletins ("TSB"s) did not disclose the defect and instead told dealerships to engage in unhelpful cleanings or oil consumption.  The jury heard evidence that the TSBs were supposed to provide dealers with "up-to-date" information on how to repair known issues.  *See* TT at 496:9–11.  But the TSBs did not disclose that there was a design problem with the piston rings in the Class Vehicles.  Instead, the TSBs from 2010 through 2014 addressing oil consumption issues in the Gen IV LC9 engines instructed dealers to perform a piston cleaning for customers bringing in their vehicles with oil consumption complaints, *see* TX 162 (Sept. 2010 TSB); TX 163 (Mar. 2011 TSB); TX 165 (Oct. 2012 TSB); TX 168 (Dec. 2013 TSB); TX 169 (Sept. 2014 TSB); and TX 209 (Nov. 2014 TSB), even though the Red X report concluded that piston ring cleaning had "minimal effect" on the oil consumption problem, *see* TX 132 at 26.  Mr. Halka testified that in his opinion the piston wash was not effective.  *See* TT at 616:17–21.

- GM's engineers and the representative Plaintiffs testified that dealerships followed the TSBs and provided (ineffective) piston ring cleanings or lengthy oil consumption tests if customers brought in vehicles complaining of excessive oil.  Further the excessive oil consumption was presented as normal.  Mr. Halka (GM's engineer) testified that in November 2014 GM instructed its dealerships to conduct piston washes and often to engage in an oil consumption test before receiving a warranty repair of the piston ring.  TT at 617:5–618:16.  Mr. Pfromm, another engineer, also testified that GM required dealers to conduct an oil consumption test if a driver complained about excessive oil

consumption, requiring that the driver return after driving another thousand miles to get results of the test.  TT at 877:13–22; *see also* TT at 1033:21–25 (Tarvin Testimony).  Plaintiffs Tarvin, Del Valle, and Davis testified that GM's dealers did not disclose the defect to them, rather, the oil consumption issues were presented as normal.  *See* TT at 1098:2–13 (Del Valle Testimony); TT at 1034:4–9, 1057:11–20 (Tarvin Testimony); 1162:22–1163:5 (Davis Testimony).

- GM's warranty data (TX214) lacked any indication that customers were informed of a defect if they received a piston ring replacement.  TX214 identified repairs and tests conducted regarding excessive oil consumption or piston ring repairs.  For piston ring repairs in the three class states, there was no indication that vehicle owners were informed that they had defects in their piston rings.  *See* TX214.

- Representative Plaintiffs testified that they were highly knowledgeable and careful truck owners and were misled by GM's misrepresentations.  Plaintiff Tarvin's testimony established that he is a highly knowledgeable truck owner who knows how to conduct car maintenance as he learned from his father.  TT at 1030:21–1033:4.  Mr. Tarvin also testified that he returned to GM five times over the course of a few months to engage in oil consumption testing and that GM continually told him that it was normal oil consumption.  TT at 1033:19–1034:9.  Mr. Tarvin testified that before 2016 he did not know that he had a legal claim and was not otherwise notified of an oil consumption defect by GM.  TT at 1038:4–18.  Mr. Tarvin also testified that he did not suspect that there was a defect in his car.  TT at 1053:2–9.  Mr. Del Valle testified that he takes "excellent care" of his vehicle and has 40-years' experience working on combustion engines, including boats and small aircraft engines.  TT at 1095:15–1096:19.  Mr. Del Valle also testified that the oil consumption issues were presented to him as normal, and he trusted that representation.  TT at 1098:2–13.  Further, when GM dealerships provided him with purported repairs, he relied on GM's representations about the vehicle due to their reputation as a great automobile maker.  TT at 1098:23–1099:17, 1104:13–1105:19.  Mr. Davis likewise testified that he trusted GM's

dealership employees and relied on their statements.  TT at 1153:19–22.  Mr. Davis testified that the GM dealership informed him that the oil consumption he experienced was normal and he was given a piston ring cleaning.  TT at 1162:22–1163:10, 1177:19:–1180:3.

The above evidence supports the jury's finding for the following reasons.  Courts have found that a reasonable jury may conclude that a defect is in the exclusive knowledge of the defendant car manufacturer, and thus could not be expected to be discovered through reasonable diligence.  For example, in *Aberin v. American Honda Motor Company, Inc.*, a putative class action, this Court denied a motion to dismiss based in part upon plaintiff's theory that investigation of the car's defect would have been futile without learning of it from Honda.  2018 WL 1473085, at *6 (N.D. Cal. Mar. 26, 2018).  In that case, Honda's internal TSBs indicated that mechanics would have difficulty diagnosing the defect act issue.  *Id.*  The defect was caused a Bluetooth pairing device ("HFL") that would not switch off when not in use.  *Id.* at *1. Accordingly, the vehicles suffered electric drain causing problems including issues with batteries, fog lights, headlights, ignitors, starters, door locks, and motor assemblies.  *Id.* at *6.  The court reasoned that a plaintiff could not be on notice of the defect (until they were informed of it by Honda, eventually) because it would be unreasonable to expect them to connect the disparate problems to an undisclosed, underlying defect—particularly where internal evidence showed mechanics would have troubling diagnosing the issue.  *Id. Cf. Finney v. Ford Motor Co.*, 2018 WL 2552266, at *4–5 & n.5.  (N.D. Cal. June 4, 2018) (distinguishing the defect from that in *Aberin* because the nature of the defect rendered it diagnosable).

The Court previously held (at class certification) that "[t]here is no indication in the record that there were ways for the putative class members to discover the oil-consumption defect outside of GM's representations about it."  Docket No. 320 at 39.  The evidence at trial confirmed this finding.  GM argued to the jury that excessive oil consumption could not be traced to a defective piston ring because "there are multiple, different causes for oil consumption issues or piston ring issues."  TT at 1429:11–12.  To this end, the jury reviewed exhibits and heard testimony identifying other, potential causes of oil consumption such as improper maintenance, lifters,

25

improperly installed piston rings, and a supplier issue regarding baffle sealant.  *See* TX146; TX150; TX155; TX192; TX554; TT at 1011:19–22; TT at 1014:2–5.  It would be reasonable for the jury to conclude that, based on the nature of the defect and GM's concealment, the defect would be difficult to diagnose or be discovered by the class outside of GM's representations.

Further, trial evidence supports the conclusion that GM and the dealerships obfuscated the existence of a defect by representing that the vehicle problems were fixable through repair.  The existence of a defect was further hidden because the TSBs presented the excessive oil consumption as normal, and GM concealed, even from its dealers that there was an unfixable defect.  To that end, a reasonably jury could conclude that even highly knowledgeable and diligent class members would have been misled into thinking the issues they faced were not the result of a defect.  The Court upheld this theory for named Plaintiffs:

> There was sufficient evidence for the jury to find that the named class representatives did not become aware of facts that would cause a reasonable person to investigate as to whether they had a potential claim for a defect. The class representatives testified that dealers did not disclose the oil consumption issue and oil consumption issues were presented as normal . . . There was thus evidence that GM concealed—even from its dealers—the piston ring defect, such that the class representatives would not have been on inquiry notice of their claims.
>
>            *     *     *
>
> As the named Plaintiffs were told that their oil consumption was normal and the TSBs indicated that their oil consumption was normal, the jury could reasonably conclude they were not aware of the relevant facts from which a diligent plaintiff would learn of potential claims of a defect. (Docket No. 40–41.)

On this point, the jury heard testimony from the named Plaintiffs that they are knowledgeable and diligent vehicle owners, including one person with 40 years' experience with combustion engines, but were misled into believing that their vehicle was not defective. *See, e.g.*, TT at 1030:21–1033:4 (Tarvin Testimony); TT 1095:15–1096:19, 1104:13–1105:19 (Del Valle Testimony); TT at 1153:19–1180:3 (Davis Testimony).  The jury could reasonably have inferred from their testimony that if these highly knowledgeable and skilled individuals could not have learned of the defect, other, diligent, and knowledgeable class members would not have been put on notice.  GM argues that any such inferences are nothing more than "rank speculation."  Docket No. 642 at 20.  However, the jury was properly instructed that it "[i]f you find it appropriate, you

1   may apply the evidence at this trial to all class members." Docket No. 554 at 16. Given the high

2   level of knowledge of the representative Plaintiffs, the inference is reasonable absent contrary

3   evidence.

4       Thus, the jury heard substantial evidence supporting that the existence of the defect was

5   hidden from the public and the dealership alike, and further, that even highly knowledgeable and

6   diligent class members would not have been on notice. Given that judgment as a matter of law is

7   only appropriate where "under the governing law, there can be but one reasonable conclusion as to

8   the verdict," *Winarto*, 274 F.3d at 1283, and "the court must draw all reasonable inferences in

9   favor of the nonmoving party, and it may not make credibility determinations or weigh the

10  evidence," *Reeves*, 530 U.S. at 150, the verdict stands.

11      2.      Evidence does not establish notice of absent class members

12      GM also argues that the verdict cannot stand because evidence in the record establishes

13  that at least some absent class members had actual notice of their claim or constructive knowledge.

14  Docket No. 642 at 11–12. However, the evidence that GM points to does not establish notice.

15      GM points to warranty data (TX214) showing that absent class members experienced

16  issues leading them to seek repairs and experienced excessive oil consumption. *Id.* at 11. GM

17  argues that the owner of each class vehicle who took his or her vehicle in for service knew of facts

18  leading to the repair and thus had notice. *Id.* However, the Court previously rejected this

19  argument by GM. Docket No. 634 at 40–41, 54–56. Specifically, this Court explained that

20  "[c]ourts have . . . recognized that a consumer without sophisticated knowledge of automobiles

21  might not suspect a defect, and therefore not investigate further, when it appeared that a repair

22  fixed the problem." *Id.* at 54–55 (citing *Aberin*, 2018 WL 1473085, at *6) (finding that plaintiff

23  had adequately alleged tolling applied where "plaintiffs allege[d] that they had their cars repaired

24  by dealerships who purported to fix the reported problems but never identified the underlying HFL

25  issue causing those problems"). And further "just because an owner experiences oil consumption

26  with his, her, or their vehicle does not necessarily suggest that the owner knows that it could give

27  rise to a potential claim." *Id.* at 55.

28      This finding is well supported by case law, and the Court finds no reason to revisit it. In

*Zuehlsdorf v. FCA US LLC*, 2023 WL 385175, at *2 (9th Cir. Jan. 25, 2023) the Ninth Circuit rejected that awareness of an issue with a vehicle meant the person was necessarily on notice of their claims. *See also Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *19 (N.D. Cal. Apr. 23, 2020) (finding that the requisite knowledge must concern more than simply the existence of problems with a vehicle; it must constitute knowledge that those problems are caused by "a defect that could cause a serious or safety-related problem."). *But see Smith v. FCA US, LLC*, 2022 WL 1417110, at *2 (C.D. Cal. Feb. 16, 2022) (finding experiencing symptoms of the car defect, *i.e.*, hard shifting and malfunctioning of the windshield wiper put the plaintiff on notice).[6]

Jolly v. Eli Lilly & Co., 751 P.2d 923, 930 (Cal. 1988), cited by Defendant, does not require a different outcome. The court there explained that "the limitations period begins when the plaintiff suspects, or should suspect, that she has been wronged." *Id.* But the *Jolly* court rested notice on "knowledge of some wrongful conduct," and further the plaintiff stated that "she felt that someone had done something wrong to her," outside of the limitations period. *Id.* at 927. Merely experiencing a symptom of the defect does not equate to notice. Courts applying *Jolly* follow this reading. For example, in *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1121 (9th Cir. 1994) the court affirmed that under *Jolly* the district court's finding that the rupture of the plaintiff's breast implants did not place plaintiff on notice. Similarly, in *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1218–19 (N.D. Cal. 2014) the court held that under *Jolly* at the plaintiff's onset of pain did not necessarily place him on inquiry notice. Accordingly, the fact that absent class members experienced excessive oil consumption or piston ring issues does not establish actual notice. The Court remains unpersuaded by GM's argument.

Defendant also argues that individuals who experienced ongoing excessive oil consumption issues were on notice because this would lead to suspicion of wrongdoing. The cases Defendant cites are inapposite because in each, plaintiff affirmatively testified that they

---

[6] *Smith* is distinguishable as there were no allegations there that the defendant dealerships misled the plaintiffs to believe the piston rings were not defective, as is the case here. *See, e.g.*, TT at 617:5–618:16 (Halka Testimony), 877:13–22 (Pfromm Testimony); TX 162 (Sept. 2010 TSB); TX 163 (Mar. 2011 TSB); TX 165 (Oct. 2012 TSB); TX 168 (Dec. 2013 TSB); TX 169 (Sept. 2014 TSB); and TX 209 (Nov. 2014 TSB); TT at 1098:2–13 (Del Valle Testimony); TT at 1034:4–9 (Tarvin Testimony); TT at 1162:22–1163:5 (Davis Testimony).

United States District Court
Northern District of California

1    maintained subjective suspicion of wrongdoing; no such testimony existed here.  *See Kwon Yi v.*

2    *BMW of N. Am., LLC*, 805 F. App'x 459, 462 (9th Cir. 2020) (upholding summary judgment where

3    the plaintiff testified that he "thought that something was not right," and suspected the dealership

4    could not repair his car after multiple repairs); *Smothers v. BMW of N. Am. LLC*, 813 F. App'x

5    291, 293 (9th Cir. 2020) (similar).  To the contrary the jury here heard evidence that highly

6    knowledgeable and careful representative Plaintiffs did not believe there was a defect in reliance

7    on GM's reputation and its statements notwithstanding their diligence.  *See, e.g.*, TT at 1095:15–

8    1096:19, 1097:18–1099:23, 1104:13–1105:19 (Del Valle Testimony).

9          GM next argues that one individual represented in TX214 returned to the dealership four

10   times for oil consumption tests and thus is an absent class member with notice.  Docket No. 642 at

11   11 (citing TX214).  But the individual in question received a piston ring replacement, and thus is

12   not a member of the class at all.  *See* TX214 at row 17542, column R (summarizing the repair:

13   "[r]eplaced piston and rings and performed road test no issues on road test returned vehicle to

14   service labor"); Docket No. 554 at 3 ("Any vehicle that has already received adequate piston

15   replacement (*i.e.*, upgraded piston rings) is excluded from the definition of Class Vehicle.").

16   Further, while sufficiently recurrent and persistent repairs can render a person on inquiry notice of

17   the claim, *see, e.g.*, *Finney v. Ford Motor Co.*, 2019 WL 79033, at *3 (N.D. Cal. Jan. 2, 2019)

18   (four repairs in as many years placed individual on notice), the repairs did not take place in the

19   relevant time frame here.  The ring replacement and final oil consumption test for this individual

20   occurred in November 2018.  TX214 at row 17542, column Q.  Any individual would have needed

21   to be on notice before December 2012 (California or North Carolina) or December 2014 (Idaho) to

22   negate tolling or the applicability of the discovery rule to their claims.  *See* Docket. No 554 at 19,

23   23, 26.  The data GM points to establishes that the fourth oil consumption test took place in 2018,

24   so it does not establish that any such repairs took place before 2012 or 2014 at all (the relevant

25   time period), let alone that the repairs in that time frame were recurrent.

26         In summation, the jury heard substantial evidence supporting that the defect was hidden

27   from the public and the dealership alike, and that even diligent class members would not have

28   been on notice. Given that JMOL is only appropriate where "under the governing law, there can be

but one reasonable conclusion as to the verdict," *Winarto*, 274 F.3d at 1283, and "the court must draw all reasonable inferences in favor of the nonmoving party," *Reeves*, 530 U.S. at 150, the jury's verdict herein stands.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Defendant's request for post-trial adjudication regarding timeliness of absent class members' claims and/or its request for judgment as a matter of law.  The Court shall proceed to final judgment.

**IT IS SO ORDERED**.

Dated: November 2, 2023

_____
EDWARD M. CHEN
United States District Judge