Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Adam J. Levitt (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@beasleyallen.com

*Class Counsel*
(*additional counsel appear on signature page*)

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| RAUL SIQUEIROS, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>    Defendant. | Case No.: 16-cv-07244-EMC<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL JUDGMENT, PREJUDGMENT INTEREST, STATUTORY ATTORNEYS' FEES, AND COSTS**<br><br>Judge: Hon. Edward M. Chen<br>Hearing Date: March 21, 2024<br>Time of Hearing: 1:30 PM |

## NOTICE OF MOTION AND MOTION

TO THIS COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 21, 2024 at 1:30 pm, in the United States District Court, Norther District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 5, 17th Floor, before the Honorable Edward M. Chen, Plaintiffs will, and hereby do, move this Court for entry of final judgment under Federal Rule of Civil Procedure 54(b).

This case has proceeded with the certified class claims being tried first and the remaining individual, non-certified claims having been held in abeyance.  With the certified California, North Carolina, and Idaho Class claims having now been tried, and with post-trial motion practice complete, Plaintiffs ask that the Court enter a final judgment with respect to these claims under Rule 54(b).  As part of that final judgment, Plaintiffs request prejudgment interest under California, Idaho, and North Carolina law, as well as postjudgment interest under 28 U.S.C. § 1961.  Plaintiffs also requests that costs be awarded under Rule 54, and additional costs awarded to the California and Idaho Class members under the Song-Beverly Consumer Warranty Act and the Idaho Consumer Protection Act.  In addition to costs, Plaintiffs request that the Court award statutory attorneys' fees to the California and Idaho Class members under the Song-Beverly Act and the Idaho Consumer Protection Act.  Finally, Plaintiffs request that the Court approve the supplemental digital notice campaign and payment plan, proposed below.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying declarations of Adam Levitt and Ryan Aldridge, the exhibits thereto, and the contemporaneously filed Motion for Final Judgment and all declarations and exhibits associated therewith.

Dated: February 9, 2024

/s/ Adam J. Levitt
Adam J. Levitt (*pro hac vice*)
John E. Tangren (*pro hac vice*)
Daniel R. Ferri (*pro hac vice*)
Christopher S. Stombaugh (*pro hac vice*)
Blake Stubbs (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com

dferri@dicellolevitt.com
cstombaugh@dicellolevitt.com
bstubbs@dicellolevitt.com

Mark Abramowitz (*pro hac vice*)
**DICELLO LEVITT LLP**
7556 Mentor Avenue
Mentor, Ohio  44060
Telephone: 440-953-8888
mabramowitz@dicellolevitt.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
H. Clay Barnett, III (*pro hac vice*)
J. Mitch Williams (*pro hac vice*)
Rebecca D. Gilliland (*pro hac vice*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@beasleyallen.com
Clay.Barnett@beasleyallen.com
Mitch.Williams@beasleyallen.com
Rebecca.Gilliland@beasleyallen.com

***Class Counsel***

Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Anthony J. Garcia (*pro hac vice*)
**AG LAW P.A.**
3602 West Euclid Avenue
Tampa, Florida 33629
Telephone: 813-259-9555
anthony@aglawinc.com

***Additional Counsel for Plaintiffs and the
Classes***

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................................. 1

II.    THE COURT SHOULD ISSUE A PARTIAL FINAL JUDGMENT AS TO THE
       CLASS CLAIMS ................................................................................................................. 2

III.   THE COURT SHOULD DIRECT A JUDGMENT THAT INCLUDES DAMAGES,
       PREJUDGMENT INTEREST, AND ATTORNEYS' FEES AND COSTS. ............................. 3

       A.     The Jury Award ..................................................................................................... 3

       B.     Prejudgment Interest ............................................................................................. 3

       C.     Costs ..................................................................................................................... 6

              1.     Rule 54(d) ................................................................................................. 6

              2.     The Song-Beverly Act and the Idaho Consumer Protection Act. ............ 6

       D.     Attorneys' Fees ..................................................................................................... 9

              1.     Lodestar ................................................................................................... 9

              2.     California Lodestar Enhancement ........................................................... 14

              3.     Idaho Lodestar Enhancement ................................................................. 18

IV.    RULE 23(c)(3) JUDGMENT ............................................................................................ 20

V.     PAYMENT TO CLASS MEMBERS ................................................................................. 21

       A.     The California Class ............................................................................................ 21

       B.     The Idaho Class .................................................................................................. 22

       C.     The North Carolina Class ................................................................................... 22

       D.     Supplemental Notice Campaign .......................................................................... 23

       E.     Payment Process ................................................................................................. 24

VI.    CONCLUSION .................................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Alflex Corp. v. Underwriters Labs., Inc.*,
914 F.2d 175 (9th Cir. 1990) ................................................................................................ 6

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 ......................................................................................................................... 6

*Apex Fountain Sales, Inc. v. Kleinfeld*,
27 F.3d 931 (3d Cir. 1994) ................................................................................................... 5

*Asghari v. Volkswagen Group of Am., Inc.*,
42 F. Supp. 3d 1306 (C.D. Cal. 2013) ................................................................................. 5

*Barati v. Metro-N. R. Co.*,
939 F. Supp. 2d 153 (D. Conn. 2013) ................................................................................. 10

*Base v. FCA US LLC*,
2020 WL 363006 (N.D. Cal. Jan. 22, 2020) ....................................................................... 7

*Bauman v. Ford Motor Co.*,
2021 WL 2792310 (C.D. Cal. Feb. 3, 2021) ....................................................................... 8

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ....................................................................................... 12

*Boehm & Assocs. v. Workers' Comp. Appeals Bd.*,
76 Cal.App.4th 513 (1999) ................................................................................................... 4

*Bradstreet v. Wong*,
2008 WL 1736063 (Cal. Ct. App. Apr. 16, 2008) ............................................................. 10

*Cerdes v. Cummins Diesel Sales Corp.*,
2010 WL 2835755 (E.D. La. July 15, 2010) ..................................................................... 15

*Chamberlan v. Ford Motor Co.*,
2005 WL 6154898 (N.D. Cal. Oct. 7, 2005) ..................................................................... 15

*Clausen v. M/V NEW CARISSA*,
339 F.3d 1049 (9th Cir. 2003) ............................................................................................. 7

*Cleveland v. Whirlpool Corp.*,

2022 WL 2256353 (D. Minn. June 23, 2022) ..................................................................... 15

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,

446 U.S. 1 (1980) ................................................................................................................. 2

*Davis v. City & County of San Francisco*,

976 F.2d 1536 (9th Cir. 1992) .............................................................................................. 7

*Edmark Auto, Inc. v. Zurich Am. Ins. Co.*,

2021 WL 780903 (D. Idaho Mar. 1, 2021) ............................................................. 9, 18, 19

*Ehrlich v. BMW of N. Am., LLC*,

801 F. Supp. 2d 908 (C.D. Cal. 2010) .................................................................................. 5

Ellis *v. Costco Wholesale Corp.*,

2014 WL 12641574 (N.D. Cal. May 27, 2014) ................................................................. 13

*Erhart v. Bofi Fed. Bank*,

2023 WL 6382460 (S.D. Cal. Sept. 28, 2023) ................................................................... 10

*Evanow v. M/V Neptune*,

163 F.3d 1108 (9th Cir. 1998) .............................................................................................. 6

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,

915 F. Supp. 2d 1179 (D. Nev. 2013) ................................................................................ 11

*Forouzan v. BMW of N. Am.*, LLC,

390 F. Supp. 3d 1184 (C.D. Cal. 2019) ................................................................................ 6

*Hellenberg v. Ford Motor Co.*,

2020 WL 1820126 (S.D. Cal. Apr. 10, 2020) ...................................................................... 8

*Howard v. Am. Nat'l Fire Ins. Co.*,

187 Cal. App. 4th 498 (2010) ............................................................................................... 4

*Hunt v. Imperial Merch. Servs., Inc.*,

560 F.3d 1137 (9th Cir. 2009) ............................................................................................ 25

*In re Equifax Inc. Customer Data Security Breach Litig.*,

2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ..................................................................... 14

*In re MI Windows & Doors Inc. Prod. Liab. Litig.*,

   2015 WL 4487734 (D.S.C. July 23, 2015) ........................................................................ 15

*In re Motor Fuel Temperature Sales Pracs. Litig.*

   271 F.R.D. 263, 280, n. 24 (D. Kan. 2010 ........................................................................ 20

*In re MyFord Touch Consumer Litig.*,

   2018 WL 10539266 (N.D. Cal. June 14, 2018) ................................................................ 21

*In re MyFord Touch Consumer Litig.*,

   2019 WL 6877477 (N.D. Cal. Dec. 17, 2019) .......................................................... 12, 13

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,

   2013 WL 12327929 (C.D. Cal. July 24, 2013) ................................................................ 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,

   2017 WL 3175924 (N.D. Cal. July 21, 2017) ................................................................ 12

*In re Wiggins*,

   273 B.R. 839 (Bankr. D. Idaho 2001) ............................................................................ 8

*Jensen v. BMW of N. Am., Inc.*,

   35 Cal. App. 4th 112, (1995) .......................................................................................... 8

*Jurosky v. BMW of N. Am., LLC*,

   2020 WL 5033584 (S.D. Cal. Aug. 25, 2020) ................................................................ 8

*Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc.*,

   741 F.3d 955 (9th Cir. 2013) .......................................................................................... 6

*Keegan v. Am. Honda Motor Co*,

   2014 WL 12551213 (C.D. Cal. Jan. 21, 2014) ................................................................ 7

*Ketchum v. Moses*,

   24 Cal. 4th 1122 (Cal. 2001) ........................................................................................ 15

*Kreidler v. Pixler*,

   2011 WL 39054 (W.D. Wash. Jan. 3, 2011) .................................................................. 10

*Meldco, Inc. v. Hollytex Carpet Mills, Inc.*,

   796 P.2d 142 (Idaho App. 1990) .................................................................................... 4

*Millea v. Metro-N. R. Co.*,
   658 F.3d 154 (2d Cir. 2011) ................................................................................. 10

*Mirzayan v. Jaguar Land Rover N. Am., LLC*,
   2023 WL 5722634 (C.D. Cal. Aug. 7, 2023) ....................................................... 17

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) ..................................................................................... 9

*Morazan v. Aramark Unif. & Career Apparel Grp., Inc.*,
   2013 WL 4734061 (N.D. Cal. Sept. 3, 2013) ......................................................... 3

*Nalen v. Jenkins*,
   741 P.2d 366 (Idaho Ct. App 1987) ........................................................................ 8

*Obrien v. FCA US LLC*,
   2019 WL 5295066 (N.D. Cal. Oct. 18, 2019) ........................................................ 7

*Rahman v. FCA US LLC*,
   594 F. Supp. 3d 1199 (C.D. Cal. 2022) ................................................................. 9

*Ridgeway v. Wal-Mart Stores Inc.*,
   269 F. Supp. 3d 975 (N.D. Cal. 2017) .................................................................... 9

*Robertson v. Fleetwood Travel Trailers of California, Inc.*,
   144 Cal. App. 4th 785 (Cal. Ct. App. 2006) ......................................................... 17

*Rodriguez v. Cnty. of Los Angeles*,
   891 F.3d 776 (9th Cir. 2018) ................................................................................. 18

*Rueda v. FCA US LLC*,
   2020 WL 469333 (E.D. Cal. Jan. 29, 2020) .......................................................... 8

*Rutti v. Lojack Corp., Inc.*,
   2012 WL 3151077 (C.D. Cal. July 31, 2012) ....................................................... 8

*Santana v. FCA US, LLC*,
   270 Cal. Rptr. 3d 335 (Cal. Ct. App. 2020) ......................................................... 18

*Sargent v. Bd. of Trustees of Cal. State Univ.*,
   276 Cal. Rptr. 3d 1 (Cal. Ct. App. 2021) ............................................................. 18

*Siqueiros v. Gen. Motors LLC*,

   2023 WL 3933344 (N.D. Cal. June 8, 2023) ...................................................... 4

*Sloan v. Gen. Motors LLC*,

   2020 WL 1955643 (N.D. Cal. Apr. 23, 2020) .................................................... 4

*Smalley v. Subaru of America, Inc.*,

   87 Cal. App. 5th 450 (2022) ............................................................................ 8

*Steelcase, Inc. v. Lilly Co.*,

   379 S.E.2d 40 (N.C. App. 1989) ...................................................................... 3

*Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*,

   139 Idaho 761, 86 P.3d 475 (Idaho 2004) ..................................................... 19

*The Bd. of Trustees v. Charles B. Harding Constr., Inc.*,

   2014 WL 7206890 (N.D. Cal. Dec. 18, 2014) ................................................ 13

*Van Vranken v. Atlantic Richfield Co.*,

   901 F. Supp. 294 (N.D. Cal. 1995) ................................................................ 20

*W. Mortg. & Realty Co. v. KeyBank Nat'l Ass'n*,

   2019 WL 5873455 (D. Idaho Jan. 2, 2019) .................................................... 18

*Warren v. LeMay*,

   142 Ill.App.3d 550, 96 Ill.Dec. 418, 491 N.E.2d 464 (1986) .......................... 8

*Webb v. Sloan*,

   330 F.3d 1158 (9th Cir.2003) ........................................................................ 10

*Wood v. GCC Bend, LLC*,

   422 F.3d 873 (9th Cir. 2005) ........................................................................... 2

*Wu v. BMW of N. Am., LLC*,

   2022 WL 2802979 (N.D. Cal. July 18, 2022) ................................................ 15

*Zomorodian v. BMW of N. Am., LLC*,

   332 F.R.D. 303 (C.D. Cal. 2019) ..................................................................... 7

**Statutes**

28 U.S.C. § 1920 ........................................................................................................................ 6

Cal. Civ. Code § 1974(d) ........................................................................................................ 6, 9

Cal. Civ. Code § 3287(a) ........................................................................................................ 4, 5

Cal. Civ. Code § 3287(b) ............................................................................................................ 5

Cal. Civ. Code § 3287(c) ............................................................................................................ 5

Cal. Civ. Proc. Code § 1033.5 ................................................................................................ 7, 8

N.C. Gen. Stat. Ann. § 24-1 ...................................................................................................... 3

N.C. Gen. Stat. § 24-5 ................................................................................................................ 3

**Rules**

Federal Rule Civ. P. 54(d)(1) ..................................................................................................... 6

Federal Rule of Civil Procedure 54(b) ................................................................................... 1, 2

Idaho Rule of Civil Procedure 54(e)(3) ............................................................................... 18, 19

Rule 54 ........................................................................................................................... 1, 6, 7, 8

Rule 54(d) ................................................................................................................................ 6, 8

## STATEMENT OF ISSUES TO BE DECIDED

1.      With this case proceeding in two phases—the Class claims being tried first and the remaining individual, non-certified, claims having been held in abeyance—should the Court enter a final judgment under Fed. R. Civ. P. 54(b) with respect to the Class claims?

2.      Are the Class members entitled to prejudgment interest on their jury-awarded damages under relevant California, Idaho, and North Carolina law?

3.      Should costs be awarded under Rule 54, on a *pro rata* basis, to each of the California, Idaho, and North Carolina Class members?

4.      Should additional costs be awarded, on a *pro rata* basis, to each California and Idaho Class member under the Song-Beverly Act and the Idaho Consumer Protection Act?

5.      Should attorneys' fees be awarded to each California Class member under the Song-Beverly Act, and, if so, is a 2X multiplier of Plaintiffs' counsel's lodestar appropriate?

6.      Should attorneys' fees be awarded to each Idaho Class member under the Idaho Consumer Protection Act, and, if so, is a 2X multiplier of Plaintiffs' counsel's lodestar appropriate?

7.      Should the Court authorize a supplemental notice campaign to reach Class members that cannot be identified through registration data?

8.      Should the Court order direct payment to the Class members once they are specifically identified?

1  I.    INTRODUCTION

2         On December 19, 2016, Plaintiffs filed a class action complaint in this matter alleging an oil

3  consumption defect in GM's Generation IV 5.3 liter V8 Vortec LC9 ("Gen IV") engine.  For almost six

4  years, GM denied this defect.  On October 4, 2022, in a matter of hours, a jury unanimously sided with

5  Plaintiffs.  For Plaintiff Tarvin and the California Class, the jury found that GM had breached the implied

6  warranty of merchantability under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act").

7  (ECF No. 566.)  For Plaintiff Del Valle and the Idaho Class, the jury found that GM violated the Idaho

8  Consumer Protection Act ("ICPA").  (*Id.*)  For Plaintiff Davis and the North Carolina Class, the jury

9  found that GM breached the implied warranty of merchantability under North Carolina law.  (*Id.*)  The

10 jury awarded each Class member the full $2,700 in damages that Plaintiffs requested at trial.  (*Id.*)

11        In litigating this action, Plaintiffs reviewed 23,774 documents, deposed ten GM engineers and

12 three GM experts, and defended eleven Plaintiffs' depositions.  Plaintiffs' discovery revealed, for

13 example, GM's internal "Red-X" report recognizing the oil consumption defect even before it sold the

14 Class Vehicles and emails from GM engineers (*e.g.*, "Gen IV still has problems") discussing how GM's

15 engine modifications failed to remedy the defect.  (*See, e.g.,* ECF No. 597 at 2-3.)  GM's internal

16 documents showed that Plaintiffs' uniform experiences with unreliable, poorly performing vehicles were

17 the result of an inherent engine defect.

18        In order to even reach the jury trial stage, Plaintiffs Tarvin, Del Valle, and Davis overcame two

19 motions to dismiss and four motions for summary judgment.  (ECF Nos. 47, 70, 184, 291, 397, 428.)

20 Not only did they reach the jury, but, having achieved class certification, they brought with them the

21 claims of thousands of their fellow purchasers.  (ECF Nos. 237 and 320.)  Before trial, GM moved, or

22 attempted to move, for decertification on four separate occasions.  (ECF Nos. 247, 325, 347, 397.)

23 Following the trial, GM filed over 120 pages of briefing seeking decertification, judgment as a matter of

24 law, and a post-trial mechanism disregarding the jury's findings.  (ECF Nos. 592, 594, 606, 607, 642.)

25 In separate orders, the Court rejected these motions and affirmed the finality of the jury's verdict.  (ECF

26 Nos. 634 and 653.)

27        With this case now near the finish, Plaintiffs respectfully request that the Court advance it further

28 by: (a) entering a Rule 54(b) final judgment; (b) awarding the Class members prejudgment interest;

(c) awarding costs; (d) awarding statutory attorneys' fees to the California and Idaho Class members; (e) approving a payment plan; and (f) including the requisite Rule 23(c)(3) language describing the Classes within the judgment.

## II. THE COURT SHOULD ISSUE A PARTIAL FINAL JUDGMENT AS TO THE CLASS CLAIMS.

This case is proceeding in two phases, with the Class claims[1] being tried first, and the remaining individual claims, which were not certified, proceeding second. (ECF No. 385, ECF No. 476 at 1.) Now that the Class claims have been tried and extensive post-trial briefing resolved, the Court should issue a Rule 54(b) final judgment as to the Class claims, prior to resolving the remaining individual claims.[2]

Under Fed. R. Civ. P. 54(b), a district court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). The judgment must be based on "a decision upon a cognizable claim for relief," and it must represent "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). In determining whether there is any "just reason for delay," a district court should consider "the interest of sound judicial administration," *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005), and the "equities involved," *Curtiss-Wright*, 466 U.S. at 8.

Here, with liability and damages having been decided, and post-trial motions resolved, there has been an ultimate disposition of the Class claims. The Court recognized as much when, in affirming the finality of the jury verdict, it stated: "The Court shall proceed to final judgment." (ECF No. 653 at 30.) It is in the interest of sound judicial administration to grant a partial final judgment with respect to those Class claims. The reason, at least in part, that the Court proceeded with a two-phased proceeding was the recognition that the Class claims are the driving force in this litigation. When the Class claims are

---

[1] These claims include the California Song-Beverly implied warranty claim, the North Carolina implied warranty claim, and the Idaho Consumer Protection Act claim.

[2] The following Plaintiffs have pending individual claims that survived summary judgment, but which were not certified for class adjudication: Del Valle (Idaho), Davis (North Carolina), Byrge (Tennessee), Smith (Massachusetts), Graziano (Pennsylvania), Tarvin (California), Raul Siqueiros (California), Todd and Jill Cralley (California), and Rudy Sanchez (Texas). (ECF Nos. 237, 320, 474)

finally resolved, the two sides will, hopefully, be able to reach an efficient resolution of the relatively low value individual claims.

Finally, the equities clearly favor partial final judgment.  The Class members' meritorious claims were filed in December 2016, more than seven years ago.  Any additional delay in payment on those claims is prejudicial.  *See Morazan v. Aramark Unif. & Career Apparel Grp., Inc.*, 2013 WL 4734061, at *4 (N.D. Cal. Sept. 3, 2013) ("class members will be prejudiced . . . . [where] monetary payments will be delayed.").  Payment to the thousands of Class members should not be delayed until after the claims of just nine more individuals can be tried and resolved.

## III.    THE COURT SHOULD DIRECT A JUDGMENT THAT INCLUDES DAMAGES, PREJUDGMENT INTEREST, AND ATTORNEYS' FEES AND COSTS.

As explained below, the final judgment award should include the following: (a) the damages awarded by the jury; (b) the appropriate amount of pre-judgment interest for each claim; (c) recoverable costs; and (d) fees pursuant to the Song-Berverly Act and Idaho Consumer Protection Act.

### A.    The Jury Award

The jury awarded each Class member $2,700.  (ECF No. 566.)

### B.    Prejudgment Interest

Each member of the North Carolina, California, and Idaho Classes is also entitled to payment of prejudgment interest in addition to the $2,700 awarded by the jury.  Under each state's laws, prejudgment interest begins to run on the date on which a Class member's Class Vehicle was first sold by GM.

In **North Carolina**, prejudgment interest is calculated from the date of the breach of the implied warranty of merchantability, which is at the time the defective product is sold.  N.C. Gen. Stat. § 24-5 (providing that a judgment "bears interest from the date of breach"); *Steelcase, Inc. v. Lilly Co.*, 379 S.E.2d 40, 44–45 (N.C. App. 1989) (awarding prejudgment interest from the date of breach in action for breach of implied warranty of merchantability).  Pre-judgment interest in North Carolina is calculated at a rate of 8% per annum (simply, not compounded).  N.C. Gen. Stat. Ann. § 24-1.

In **Idaho**, the date from which prejudgment action should run in a breach of warranty action is the time of "acceptance" of the goods:

> Rather, an award of prejudgment interest, in order to fulfill its compensatory purpose, should run from the date the damages amount first becomes "fixed" or "ascertainable."

> The amount awarded as damages in a breach of warranty action is normally measured as the difference between the value of the goods as warranted and the value of the goods as accepted. These values are "fixed," or "ascertainable," at the time of acceptance. Thus, in cases where damages are calculated using the differential formula, prejudgment interest should run from the date of acceptance.

*Meldco, Inc. v. Hollytex Carpet Mills, Inc.*, 796 P.2d 142, 147 (Idaho App. 1990).  Thus, for Idaho Class members, prejudgment interest also runs from the date their Class Vehicle was first sold.  Idaho employs a mandatory 12% calculation for prejudgment interest per annum.  Idaho Code § 28-22-104.

For those North Carolina and Idaho Class members who were not the original owners of their Class Vehicles, prejudgment interest should still be calculated from the date the Class Vehicle was sold to its first owner.  This Court recognized that "prior owners or lessees may have been harmed by paying more for their vehicles than they would have had."  *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *48 (N.D. Cal. Apr. 23, 2020).  However, to ensure that the current owners could receive the full extent of any recovery, this Court limited the Classes to the Class Vehicles' current owners (as of the date of class notice).  *Id.*; *see also Siqueiros v. Gen. Motors LLC*, 2023 WL 3933344, at *3–5 (N.D. Cal. June 8, 2023).  Because any entitlement to a recovery that the prior owners may have had was passed down to the subsequent purchasers, the entitlement to prejudgment interest passed down as well.  Otherwise, used purchasers would receive less in prejudgment interest than new purchasers, a difference for which there is no justification.

In **California**, prejudgment interest on damages that are "certain" is mandatory under Cal. Civ. Code § 3287(a).  "Courts generally apply a liberal construction in determining whether a claim is certain, or liquidated."  *Howard v. Am. Nat'l Fire Ins. Co.*, 187 Cal. App. 4th 498, 535 (2010).  A claim is certain when "the defendant knew the amount of damages owed to the claimant or could have computed that amount from reasonably available information," and certainty is lost "only when the amount of damages turns on disputed facts."  *Id.*   Here, the $2,700 damages per California Class member are certain because they were computed from reasonably available information—GM's own warranty cost study.  (*See* Levitt Decl., Ex D, TT 890:24–891:7.)  While GM has disputed liability, it has never put forward any competing damages calculation of its own.  *See Howard*, 187 Cal. App. 4th at 535 ("Uncertainty as to liability is irrelevant. 'A dispute concerning liability does not preclude prejudgment interest in a civil action.'") (quoting *Boehm & Assocs. v. Workers' Comp. Appeals Bd.*, 76 Cal.App.4th 513, 517 (1999)).

Cal. Civ. Code § 3287(a) further provides that prejudgment interest should run from the day that the right to recover is vested, which for an implied warranty claim is when the defective product is sold. *See Asghari v. Volkswagen Group of Am., Inc.*, 42 F. Supp. 3d 1306, 1339 (C.D. Cal. 2013) (holding that "a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery") (quoting *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 922 (C.D. Cal. 2010)).[3]  The prejudgment interest rate is calculated at 7% per annum.  Cal. Civ. Code § 3287(c).

In order to determine the date from which prejudgment interest begins to run for each Class member, Plaintiffs propose the use of the date the vehicle was first registered.  As discussed below and in the Motion for Authorization of Release of Class Identification Information, these dates are readily available using Polk data and will provide the basis for a conservative calculation of prejudgment interest. The need for additional data to calculate prejudgment interest does not preclude issuance of a final judgment.  *See Apex Fountain Sales, Inc. v. Kleinfeld*, 27 F.3d 931, 936 (3d Cir. 1994) ("[A]n order is final even if it does not reduce the damages to a sum certain if the order sufficiently disposes of the factual and legal issues and any unresolved issues are sufficiently ministerial that there would be no likelihood of further appeal.").  Plaintiffs respectfully request that the Court endorse its proposed methodology for calculating prejudgment interest.

If Plaintiffs' request for prejudgment interest is granted, the following examples show the prejudgment interest to which a Class member who owns a vehicle first registered on July 1, 2012 would be entitled for the 139 months through February 1, 2024:

North Carolina:  $2,502 in prejudgment interest for a total payment ($2,700 in damages + $2,502 in prejudgment interest) of $5,202.

Idaho: $3,753 in prejudgment interest for a total payment ($2,700 in damages + $3,753 in prejudgment interest) of $6,453.

---

[3] Alternatively, should this Court determine that prejudgment interest should not be calculated as of the time that each Class Vehicle is sold, Plaintiffs request that prejudgment interest still be awarded as of the date this action was first filed, December 19, 2016. *See* Cal. Civ. Code § 3287(b) (providing for prejudgment interest on an unliquidated contract claim calculated from as early as the date the action was filed)

California:  $2,189.25 in prejudgment interest for a total payment ($2,700 in damages + $2,189.25 in prejudgment interest) of $4,889.25.

### C.    Costs

#### 1.    Rule 54(d)

Federal Rule Civ. P. 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party."  Taxable costs recoverable under Rule 54 include:

> (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under § 1932 of this title; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.

28 U.S.C. § 1920; *see also Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc.*, 741 F.3d 955, 957-58 (9th Cir. 2013); *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 178 (9th Cir. 1990); *Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir. 1998); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n. 31 (1975).

Here, Plaintiffs incurred $59,184.23 in costs recoverable under Rule 54.  Levitt Decl. ¶ 22, Ex. C. These costs should be awarded, *pro rata*, to each California, North Carolina, and Idaho Class member.

#### 2.    The Song-Beverly Act and the Idaho Consumer Protection Act.

The Song-Beverly Act, under which the California Class recovered, states that "[i]f the buyer prevails in an action under this section, the buyer *shall* be allowed by the court to recover as part of the judgment a sum equal to *the aggregate amount of costs and expenses, including attorney's fees* based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1974(d) (emphasis added); *see also Forouzan v. BMW of N. Am.*, LLC, 390 F. Supp. 3d 1184, 1187 (C.D. Cal. 2019) ("The California Legislature has demonstrated a similar 'special interest' in permitting prevailing Song-Beverly

plaintiffs to recover costs and expenses under section 1794."). California courts routinely hold that reimbursement of costs and expenses are not limited by Federal law.[4]

The Idaho Consumer Protection Act similarly taxes costs and fees against the defendant. *See* Idaho Code § 48-608(5) ("*Costs shall be allowed* to the prevailing party unless the court otherwise directs.") (emphasis added).

The costs recoverable under the Song-Beverly Act and the ICPA are more expansive than Fed. R. Civ. P. 54. They include, among other things, reimbursement of reasonable expenses for:

> (1) Electronic and paper filing fees; (2) postage, courier, and copying costs; (3) expenses for travel, meals, and lodging; (4) long-distance telephone calls; (5) mediation costs; (6) document scanning; (7) preparation of models, maps, pictures, and other exhibits; (8) electronic document hosting expenses; (9) court transcript fees; (10) deposition expenses including court reporter fee, transcription, and copies; (11) computer legal research; (12) expenses for certified or registered interpreters; service of process; (13) expert witness fees including expert reports, travel, testimony, and inspection costs; (14) visual equipment costs including costs of rental equipment and electronic formatting; (16) and other out of pocket expenses required to be awarded to the prevailing party pursuant to statute as an incident to prevailing in the action at trial or on appeal.

Cal. Civ. Proc. Code § 1033.5.[5]

Courts interpreting these fee shifting statutes regularly hold that these costs are reimbursable to the prevailing party. *See, e.g.*, *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992) (affirming that "out-of-pocket" expenses like "travel, courier and copying costs" are reimbursable); *Keegan v. Am. Honda Motor Co*, 2014 WL 12551213, at *29 (C.D. Cal. Jan. 21, 2014) (concluding $300,000 in experts costs was reasonably incurred); *Rutti v. Lojack Corp., Inc.*, 2012 WL 3151077, at

---

[4] *See Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1064 (9th Cir. 2003) (holding that a state damages provision with an explicit measure for reimbursement is a substantive right "inseparably connected with the right of action."); *Base v. FCA US LLC*, 2020 WL 363006 at *6 (N.D. Cal. Jan. 22, 2020); *Obrien v. FCA US LLC*, 2019 WL 5295066 (N.D. Cal. Oct. 18, 2019) (rejecting defendant's argument that costs are limited to those under federal law); *Zomorodian v. BMW of N. Am., LLC*, 332 F.R.D. 303, 306-07 (C.D. Cal. 2019) ("[S]uch an express legislative intent as reflected in section 1794(d) be upheld as substantive law, the Court shall apply section 1794(d) instead of FRCP 54").

[5] *See also* I.R.C.P. 54(d)(1)(C) (prevailing party entitled to reimbursement of filing fees, witness fees, travel expenses, document expenses, expert witness fees, expenses for preparation of exhibits, and process server fees as a matter of right); I.R.C.P. 54(d)(1)(D) ("Additional items of cost not enumerated in, or in an amount in excess of that listed in subpart (C), may be allowed on a showing that the costs were necessary and exceptional costs, reasonably incurred, and should in the interest of justice be assessed against the adverse party.").

*12 (C.D. Cal. July 31, 2012) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."); *Smalley v. Subaru of America, Inc.*, 87 Cal. App. 5th 450, 457 (2022) ("In a claim under the Song-Beverly Act, a prevailing plaintiff is entitled to recover costs and expenses; for purposes of that statute, expenses encompasses out-of-pocket expenses beyond the costs identified in Code of Civil Procedure section 1033.5.") (*citing Jensen v. BMW of N. Am., Inc.* (1995) 35 Cal. App. 4th 112, 137-138, (1995)); *Jurosky v. BMW of N. Am., LLC*, 2020 WL 5033584, at *8-10 (S.D. Cal. Aug. 25, 2020) (noting that "costs and expenses related to travel are not necessarily limited by Rule 54(d) or by Local Rule 54.1"); *Rueda v. FCA US LLC*, 2020 WL 469333, at *8 (E.D. Cal. Jan. 29, 2020) (reimbursing travel costs "that were reasonably incurred in prosecuting this action"); *Hellenberg v. Ford Motor Co.*, 2020 WL 1820126, at *6 (S.D. Cal. Apr. 10, 2020) (finding that "costs and expenses to travel for a deposition and vehicle inspection in Texas are not limited by Rule 54(d) or by Local Rule 54.1"); *see also Bauman v. Ford Motor Co.*, 2021 WL 2792310 (C.D. Cal. Feb. 3, 2021) (finding that plaintiffs' expert witness fees in Song-Beverly case were recoverable); *In re Wiggins*, 273 B.R. 839, 886 (Bankr. D. Idaho 2001) ("Plaintiffs are entitled to an award of reasonable attorneys fees and costs incurred in prosecuting this action."); *Nalen v. Jenkins*, 741 P.2d 366, 369-70 (Idaho Ct. App 1987) (quoting *Warren v. LeMay*, 142 Ill.App.3d 550, 491 N.E.2d 464 (1986)) (The ICPA should be liberally interpreted "to compensate a prevailing party for all fees and costs reasonably incurred.").

Plaintiffs incurred $1,094,344.80 in costs recoverable under the Song-Beverly Act and the ICPA, not including those that were also recoverable under Rule 54. Levitt Decl. ¶ 22. These costs should be awarded *pro rata* to each California and Idaho Class member as prevailing parties under the statutes.

**D.    Attorneys' Fees**[6]

As stated above, both the California Song-Beverly Act and the Idaho Consumer Protection Act provide that prevailing plaintiffs shall be awarded reasonable attorneys' fees as part of a judgment.  *See* Idaho Code § 48-608(5) ("Costs shall be allowed to the prevailing party unless the court otherwise directs. *In any action brought by a person under this section, the court shall award, in addition to the relief provided in this section, reasonable attorney's fees to the plaintiff* if he prevails.") (emphasis added); Cal. Civ. Code § 1974(d) ("If the buyer prevails in an action under this section, the buyer *shall* be allowed by the court to recover *as part of the judgment* a sum equal to *the aggregate amount of costs and expenses, including attorney's fees* based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.").

The California and Idaho Class members, having won at trial, are clearly "prevailing parties" within the meaning of the two statutes.  Accordingly, each is entitled to recover, "as part of the judgment," Cal. Civ. Code § 1974(d), their share of reasonable fees.

**1.    Lodestar**

In determining the amount of attorneys' fees that should be awarded under the Song-Beverly Act and the ICPA, courts first ascertain the plaintiffs' attorneys' lodestar.  *See Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199, 1204 (C.D. Cal. 2022); *Edmark Auto, Inc. v. Zurich Am. Ins. Co.*, 2021 WL 780903, at *3-4 (D. Idaho Mar. 1, 2021).  Lodestar is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."  *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996).

**a.    Time Expended**

Plaintiffs recognize that this action has involved more claims than just the Song-Beverly Act and ICPA claims.  In such cases, where a plaintiff files multiple claims—some claims subject to statutory fee

---

[6] As explained in Plaintiffs' Motion for Common Fund Attorneys' Fees and Costs ("Common Fund Motion"), filed concurrently herewith, the calculation of a statutory fee subject to fee shifting does not prejudice counsel's right to an attorney fee drawn from the common fund. *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 999 (N.D. Cal. 2017) ("Indeed, the fee-shifting statute and the common fund doctrine serve entirely different purposes: the former governs what the non-prevailing party must, by law, pay the prevailing party in attorney's fees, while the latter serves to ensure that absent class members share in the cost of litigation.").

shifting, others not—a court will deduct fees for time spent on claims "spent on legal theories relating to other [non-fee-shifting] causes of action to the extent possible." *Kreidler v. Pixler*, 2011 WL 39054, at *2 (W.D. Wash. Jan. 3, 2011). However, where a "plaintiff's claims [that are not subject to fee shifting] share a common core of operative facts and a theory with the fee shifting claims," the plaintiff is entitled to recover for all time expended, including all "discovery, investigative time, and trial time for all claims," even if that time was to support *both* fee-shifting and non-fee shifting claims. *Id.* As the Second Circuit explained: "Hours spent on legal work that furthers both fee-shifting and non-fee-shifting claims may be included in the lodestar calculation because they would have been expended even if the plaintiff had not included non-fee-shifting claims in his complaint." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 168 (2d Cir. 2011).[7] When a court finds that apportionment is appropriate, that apportionment rests within the "court's sound discretion." *Bradstreet v. Wong*, 2008 WL 1736063, at *3 (Cal. Ct. App. Apr. 16, 2008).

Here, all of the claims ever asserted in this litigation arose from, and required proof of, the Oil Consumption Defect. Issues in this litigation that were common to fee-shifting and non-fee shifting claims include: proof that the Oil Consumption Defect exists in the Class Vehicles, proof that the Oil Consumption Defect was a safety defect, GM's awareness of the Oil Consumption Defect prior to the sale of the Class Vehicles, GM's concealment of the Oil Consumption Defect, and damages arising from the Oil Consumption Defect. All of the work that Plaintiffs' counsel did in pleading these issues, arguing these issues, conducting discovery into these issues, and trying these issues was necessary for the California Class and Idaho Class to prevail on their fee-shifting claims. *See Miller*, 658 F.3d at 168 ("Hours spent on legal work that furthers both fee-shifting and non-fee-shifting claims may be included in the lodestar calculation because they would have been expended even if the plaintiff had not included

---

[7] *See also Erhart v. Bofi Fed. Bank*, 2023 WL 6382460, at *8 (S.D. Cal. Sept. 28, 2023) (awarding fees for a defamation cause of action where such claim is "related to [plaintiff's] successful, fee-shifting . . . claim" since claim "stemmed from" same basic facts); *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir.2003) ("Claims are closely related for fee-shifting purposes if they "involve a common core of facts *or* are based on related legal theories.") (emphasis in original); *Barati v. Metro-N. R. Co.*, 939 F. Supp. 2d 153, 158 (D. Conn. 2013) (where claims were "inextricably intertwined in that they both relied on the same core facts relating to the circumstances of Plaintiff's injury and Defendant's response to that injury…[and] depended on the same evidence at trial," the court did "not apportion the requested fees between the [fee shifting] and [non-fee-shifting] claims.").

non-fee-shifting claims in his complaint."); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 915 F. Supp. 2d 1179, 1189 (D. Nev. 2013) ("Discovery, in particular, is not amenable to apportionment among the various claims, as the factual predicate for the various claims is based on a common core of facts.").

Plaintiffs, however, do not seek fees for time spent on work that related only to claims of non-California and Idaho plaintiffs. Specifically, Plaintiffs do not seek fees for the time that counsel spent preparing for and defending the depositions of the non-California and Idaho plaintiffs. Plaintiffs also do not seek fees for the time spent on the following work:

- Plaintiffs' motion for reconsideration of the Courts' 2018 order on GM's motion to dismiss, which dealt with an Ohio claim. (ECF No. 101)
- Plaintiffs' motion to amend the complaint to substitute Ohio Plaintiff Szep, as well as the preparation of the Fifth Amended Complaint that added Plaintiff Szep. (ECF Nos. 141 and 157.)
- GM's motion to dismiss Ohio Plaintiff Szep. (ECF No 158.)
- GM's motion to dismiss the Second Amended Complaint, as this briefing concerned the Court's jurisdiction over non-California and Idaho plaintiffs. (ECF No. 221.)
- GM's motion to dismiss the Magnuson-Moss Warranty Act claims. (ECF No. 255.)
- GM's motion to decertify the Texas and North Carolina classes. (ECF No. 325.)
- The parties' stipulation regarding the filing of a Fourth Amended Complaint, which substituted a North Carolina plaintiff, or the preparation of that complaint. (ECF Nos. 121, 123.)
- The parties' stipulation regarding the filing of a Sixth Amended Complaint, which concerned changes relating to the claims of non-California and Idaho plaintiffs, as well as the preparation of that complaint. (ECF No. 244.)

The total lodestar for the time that Plaintiffs have proactively removed from their fee-shifting request is $742,702.70. Further, Plaintiffs' counsel spent some time on tasks that were directly related to the advancement of the California Class's claims, and some time on tasks directly related to the advancement of the Idaho Class's claims. Specifically, Plaintiff spent 600.3 hours on the following tasks directly related to California time:

- Motions to substitute California Class representatives. (ECF Nos. 246, 259, 401)
- GM's motion for decertification of the California Class. (ECF No. 247)
- Plaintiff's motions for determination of new plaintiffs' adequacy to serve as California Class representative. (ECF Nos. 289, 413)
- The parties' stipulation to modify the California Class definition. (ECF No. 285)

Plaintiff spent 77.8 hours on the following work related solely to the prevailing Idaho claim: GM's motion for reconsideration of the Court's order granting class certification with respect to the Idaho Consumer Protection Act.  (ECF No. 324.)

Removing the time that was dedicated to non-fee shifting claims, and properly apportioning time dedicated to only one of the California or Idaho claims, Plaintiff's counsel spent at least 21,725.4 hours to prevail on the California Song-Beverly and 21,202.9 hours to prevail on the Idaho Consumer Protection Act claims.  *See* Levitt Decl. at ¶¶ 19-21.[8]

Notably, Plaintiff's counsel's efficiency stands out when compared to the time expended by plaintiffs' counsel in other class action automobile cases.  *See In re Chrysler Dodge Jeep Ecodiesel Mktng., Sales Practices, and Prods. Liab. Litig.*, Case No. 17-md-02777-EMC (ECF No. 561, Feb. 11, 2019) (Chen, J.) (approving as reasonable an attorney fee request whereby attorneys spent 95,951.4 hours over the course of two years of litigation that never approached trial); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,* 2017 WL 3175924, at *4 (N.D. Cal. July 21, 2017) [("Class Counsel expended 120,418 hours while litigating and settling claims on behalf of the 3.0-liter Class Members and implementing the Settlement."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 2013 WL 12327929, at *32 (C.D. Cal. July 24, 2013) (Here, "class counsel have expended at least 165,930 hours and spent over $27 million in litigation costs, all at the risk of receiving no compensation whatsoever."); *In re MyFord Touch Consumer Litig.*, 2019 WL 6877477 (N.D. Cal. Dec. 17, 2019) (Chen, J.) (Plaintiffs' counsel accrued over $31 million in lodestar in a case that settled short of trial).

---

[8] The declaration comports with this District's Procedural Guidance for Class Action Settlements. *See* Procedural Guidance, Attorneys' Fees ("Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed."); *see also Volkswagen*, 2017 WL 1047834, at *5, n.5 (finding that class counsel had complied with similar pretrial order and overruling objection that more lodestar information was necessary in similar fee application because "it is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (quoting *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015)).

### b. Hourly Rates

Plaintiffs' counsel should be awarded fees at their current, or last-billed, rate. *See*, *e.g.*, *Ellis v. Costco Wholesale Corp.*, No. C04-3341 EMC, 2014 WL 12641574, at *3 (N.D. Cal. May 27, 2014) (Chen, J.). Fees are recoverable for paralegals as well as attorneys. *Bd. of Trustees v. Charles B. Harding Constr., Inc.*, No. C-14-1140 EMC, 2014 WL 7206890, at *6 (N.D. Cal. Dec. 18, 2014), *amended*, No. 14-CV-01140-EMC, 2015 WL 8752561 (N.D. Cal. Dec. 15, 2015).  Plaintiffs' billing rates range from $1675 for a senior partner with over 30 years of complex class action experience to $350 for a paralegal. Counsel's rates are as follows:[9]

| Seniority | Billing Rate |
|---|---|
| Senior Partner (minimum 20 years' experience) | $1450-$1675 |
| Partner (minimum 8 years' experience) | $950-$1525 |
| Senior Counsel (minimum 8 years' experience) | $1150 |
| Associate Attorney (between 5-8 years' experience) | $760-950 |
| Associate Attorney (between 1-4 years' experience) | $490-$621 |
| Staff Attorney | $445 |
| Paralegal | $250-$415 |

Rates along these lines have been deemed reasonable in other comparable matters, including, *e.g.*, *In re Facebook Internet Tracking Litigation*, 12-md-02314-EJD (Order Granting Motion for Final Approval of Class Action Settlement; Granting Motion For Attorneys' Fees, Expenses, And Service Awards; Judgment) (ECF No. 289) (Nov. 10, 2022); *In re Fairlife Milk Products Marketing and Sales Practices Litigation*, MDL No. 2909, No. 19-cv-3924 (Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement and Judgment And Awarding Attorneys' Fees, Costs, And Service Awards) (ECF No. 180) (September 28, 2022); *Calhoun, et al. v. Google LLC*, No. 4:20-cv-5146-YGR-

---

[9] *See* Levitt Decl. at Ex. B (summarizing fees by timekeeper)

SVK (N.D. Cal.) (Order for Sanctions In Re Third Party E&Y Production) (ECF No. 685) (June 6, 2022); *In re Navistar MaxxForce Engines Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 1:14-CV-10318 (N.D. Ill.) (Order Granting Final Approval Of Class Action Settlement, Award of Attorneys' Fees and Costs and Named Plaintiff Service Awards) (ECF No. 746) (January 1, 2020); *In re Equifax Inc. Customer Data Security Breach Litig.*, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020); *Simerlein, et al. v. Toyota Motor Corp. et al.*, No. 3:17-cv-1091 (VAB) (D. Conn.) (Order On Motion for Final Approval and Certification of Settlement Class and Motion for Attorneys' Fees, Expenses, and Service Awards) (ECF No. 137) (June 10, 2019).[10]

In total, Plaintiffs' counsel's current lodestar with respect to the litigation of the prevailing California Song-Beverly Act claim is $23,575,445.80, and current lodestar with respect to the litigation of the prevailing ICPA claim is $22,972,445.8.[11]

## 2. California Lodestar Enhancement

As stated above, Plaintiffs' counsels' lodestar relating to the California Song-Beverly Act claim is $23,575,445.80. While this is the starting point for determining a reasonable fee under the Song-Beverly Act, California courts consider the following factors in determining whether an enhancement is appropriate: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting

---

[10] Plaintiffs also note that comparable and often higher rates have been approved for opposing counsel. For example, in 2019, Richard Godfrey, Defendant's lead trial attorney here, billed $1,545 per hour in *In re Windstream*, No. 19-22312 (Bankr. S.D.N.Y.). First Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from February 25, 2019 Through and Including June 30, 2019, ECF No. 941, August 14, 2019 at \*69. Moreover, according to a July 20, 2022 filing, for "complex corporate, securities, and litigation matters," Kirkland & Ellis's partners are paid up to $1,995 per hour, its of counsel up to $1,845 per hour, and its associates up to $1,245 per hour. *In re Voyager Digital Holdings Inc.*, No. 22-10943 (S.D.N.Y. Bank.) (Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 5, 2022) (ECF No. 116) at \*6.

[11] The total lodestar for this matter is $24,424,860.5. Levitt Decl. at ¶ 13. Class counsel proactively removed $742,702.70 from its fee shifting request for both claims, leaving $23,682,457.8 in total funds to be shifted. *Id.* at 20. In addition, Class counsel identified $710,012 in lodestar attributable solely to prosecution of the California action, and $107,012 in lodestar attributable solely to prosecution of the Idaho action. *Id.* at 21. This means that, prior to calculation of any multiplier, *both* California and Idaho classes, *together*, are owed $22,865,433.80. The California class, however, is owed an additional $710,012, while the Idaho class an additional $107,012.

them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Wu v. BMW of N. Am., LLC*, 2022 WL 2802979, at *5 (N.D. Cal. July 18, 2022) (quoting *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (Cal. 2001)).  All of these factors support the conclusion that reasonable attorneys' fees, in this action, require a lodestar multiplier.

### (1) The Case Presented a Number of Complex and Difficult Issues

This was not a routine Song-Beverly Act case with relatively low stakes and a plaintiff needing to prove only that her vehicle, and her vehicle alone, was defective.  Rather, this was a class action that required Plaintiffs to conduct extensive factual discovery to prove the existence of a common defect across thousands of vehicles and prove that the statutes of limitations on thousands of Class members' claims were tolled by GM's fraudulent concealment of the defect.[12]

The difficulty in prevailing on the claim is evident from the sheer number of issues relating to the Song-Beverly claim that were hotly contested over the years and across the briefing on two motions to dismiss, two class certification motions, three pre-trial decertification motions, three summary judgment motions, *Daubert* motions as to both Plaintiffs' experts, nine motions *in limine*, and the extensive post-trial briefing.  These issues included: whether the Oil Consumption Defect was a safety defect, whether GM knew about the Oil Consumption Defect prior to selling the Class Vehicles, whether GM intended to conceal the Oil Consumption Defect, whether GM actively concealed the defect, Class members' ability to learn of the Oil Consumption Defect, the Class members' Article III standing, whether

---

[12] *See Cerdes v. Cummins Diesel Sales Corp.*, 2010 WL 2835755, at *4 (E.D. La. July 15, 2010) ("This is not a routine products liability case. Plaintiffs' counsel worked to gather evidence as to the alleged product defect, which was denied by Cummins, through discovery and investigation and spent significant amounts of time negotiating settlement.") (awarding 2.5 lodestar multiplier); *In re MI Windows & Doors Inc. Prod. Liab. Litig.*, 2015 WL 4487734, at *3 (D.S.C. July 23, 2015) ("These are complex cases, which have required multiple hotly-contested motions to dismiss and involved the laws of many states. These cases presented causation defenses, economic loss doctrine arguments, and limitations of remedies and warranties. MIWD mounted a vigorous defense including arguments regarding causation, class certification, and application of the economic loss rule. Moreover, the nature of these cases required Homeowner Plaintiffs' counsel to consult with experts and inspect and test Windows nationwide.") (awarding 2.5 lodestar multiplier); *Chamberlan v. Ford Motor Co.*, 2005 WL 6154898, at *1 (N.D. Cal. Oct. 7, 2005) (finding that automobile defect case presented novel and difficult questions relating to statute of limitations and liability); *Cleveland v. Whirlpool Corp.*, 2022 WL 2256353, at *10 (D. Minn. June 23, 2022) ("Consumer class actions such as this one raise complex and highly contested legal issues.").

1    plaintiff's liability expert was qualified, the need for expert testimony to prove a defect, and the reliability

2    of Plaintiffs' damages model.  (*See* ECF No. 62, order on GM's first motion to dismiss; ECF No. 99,

3    order on GM's second motion to dismiss, ECF No. 237, order denying summary judgment and granting

4    class certification with respect to Song-Beverly Act claim; ECF No. 278, order denying motion to

5    decertify California Class; ECF No. 320, order denying summary judgment on Song-Beverly Act claims,

6    ECF No. 354, order denying GM's motion to decertify all classes for lack of standing; ECF No. 395,

7    Court's *Daubert* rulings; ECF No. 400, order denying GM's motion for leave to file motions for summary

8    judgment and decertification; ECF No. 474, order denying GM's motion for summary judgment on

9    California Plaintiff Tarvin's claims; ECF No. 476, ruling on motions *in limine*; ECF No. 634, order

10    denying GM's post-trial motions to decertify and for judgment as a matter of law; ECF No. 653, order

11    on finality of jury's findings as to statute of limitations.)  This was a complex and difficult case.

12    *(2) Plaintiffs' Counsel Demonstrated Substantial Skill*

13        Less than one percent of civil cases filed in federal court go to trial.[13] Not only did Plaintiffs'

14    counsel take this case through trial, they did so on behalf of a certified California Class, and they achieved

15    a complete victory on behalf of the certified Class, with the jury awarding the Class every dollar

16    requested.  This achievement stands out when compared to other plaintiffs' results in automobile defect

17    class action cases that have gone to trial since Plaintiffs' verdict.  *See FCA US LLC Monostable Elec.*

18    *Gearshift Litig.*, No. 16-cv-02744 (E.D. Mich.) (jury verdict for the defendant); *Costa, et al. v. FCA US*

19    *LLC,* No. 20-cv-11810 (D. Mass.) (jury verdict for the defendant); *Quackenbush, et al. v. American*

20    *Honda Motor Co. Inc., et al.*, No. 20-cv-05599 (N.D. Cal.) (jury verdict for defendant on California

21    CLRA claim); *Nuwer v. FCA US LLC*, No. 20-cv-60432 (S.D. Fla.) (no damages awarded by jury).

22    Plaintiffs submit that their recovery is all the more impressive because many of the California Class

23    members had claims that would otherwise have been barred by the statute of limitations, if not for

24    counsels' foresight and skill in showing that GM fraudulently concealed the Oil Consumption Defect.

25    (*See, e.g.*, ECF Nos. 566, 634, 653.)  A further testament to the skill shown by Plaintiffs' counsel is that

26

27    ───────────────────────

28    [13]  *See* 2023 Federal Judicial Caseload Statistics, Table C-4, Mar. 31, 2023, available at
     https://www.uscourts.gov/statistics/table/c-4/federal-judicial-caseload-statistics/2023/03/31

they achieved their victory in the face of opposition from four different, high-quality law firms retained by GM over the course of this litigation: Halpern May Ybarra Gelberg LLP, Isaacs Clouse Crose & Oxford LLP, Crowell & Moring LLP, and Kirkland & Ellis LLP.

### (3) This Litigation Precluded Other Employment

As stated above, Plaintiffs' counsel collectively spent over 20,000 hours litigating the Song-Beverly Act claim. A number of attorneys—Clay Barnett, John Tangren, Dan Ferri, and Mitch Williams—each spent over 1,700 hours litigating that claim. That is roughly a year of billable time, and a year of their careers.

### (4) Plaintiffs Counsel Litigated on a Contingency Basis

Plaintiffs' counsel litigated on a contingency basis, with the understanding that they would receive a percentage of recovery. Levitt Decl. at ¶ 9. Plaintiffs' counsel also paid all costs associated with this litigation, in the amount of at least $1,153,529.03 understanding that they would only be reimbursed for those costs if they prevailed. *Id* at ¶22. Courts recognize that when plaintiffs' counsel operates on a contingency, a multiplier may be appropriate to ensure that the statutory attorney fee is "fixed at a fair market value for the particular action." *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 819 (Cal. Ct. App. 2006); *see also Mirzayan v. Jaguar Land Rover N. Am., LLC*, 2023 WL 5722634, at *5 (C.D. Cal. Aug. 7, 2023) ("The Court considers the risk associated with the contingent nature of this case only with respect to awarding a multiplier, not with respect to the reasonable rate . . . .").

Plaintiffs' counsel litigated this complex case against high-priced defense counsel. Plaintiffs' counsel did so, however, without any assurance that they would be paid. Moreover, Plaintiffs' counsel funded the case out of their own pockets. In particular, Plaintiffs' counsel chose to pay a significant amount of money to fund the weeks long trial in San Francisco, rather than accept a pre-trial settlement offer that would not have provided fair value to the Class. Given that Plaintiffs' counsel not only risked litigating for years without getting paid, but also risked losing over a million dollars of their own money, the "fair market value" of Plaintiffs' counsel's work is multiples more than if they had received assured payment, such as from a billable arrangement. Put another way—Plaintiffs' counsel provided *significant value* to Plaintiffs and the Class not just by litigating, but through their willingness to litigate without

assurance of payment and by funding the case.  That value must be recognized when deciding a reasonable fee.

Considering the various enhancement factors, California law supports a lodestar multiplier of 2.0. This is consistent with what California courts have awarded in other cases that have gone through trial. *See, e.g.*, *Santana v. FCA US, LLC*, 270 Cal. Rptr. 3d 335, 350-51 (Cal. Ct. App. 2020) (2.0 multiplier for Song-Beverley Act win affirmed); *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 809 (9th Cir. 2018) (affirming 2.0 state law multiplier where court considered counsel's "substantial financial risk," "the difficulty of representing prisoners with the ... highest security classifications," and "the opportunity costs the years-long litigation" required); *Sargent v. Bd. of Trustees of Cal. State Univ.*, 276 Cal. Rptr. 3d 1, 13 (Cal. Ct. App. 2021) (affirming 2.0 multiplier based on "novelty and difficulty of the questions presented, the skill displayed in presenting them, and the extent to which the nature of the litigation precluded other employment").

### 3.    Idaho Lodestar Enhancement

Courts also consider a variety of factors in determining whether to enhance attorneys' lodestar when awarding fees under the ICPA.  *See W. Mortg. & Realty Co. v. KeyBank Nat'l Ass'n*, 2019 WL 5873455, at *3 (D. Idaho Jan. 2, 2019); *Edmark Auto, Inc.*, 2021 WL 780903, at *2.  These factors, which are listed in Idaho Rule of Civil Procedure 54(e)(3), are as follows:

(A)    the time and labor required;

(B)    the novelty and difficulty of the questions;

(C)    the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law;

(D)    the prevailing charges for like work;

(E)    whether the fee is fixed or contingent;

(F)    the time limitations imposed by the client or the circumstances of the case;

(G)    the amount involved and the results obtained;

(H)    the undesirability of the case;

(I)    the nature and length of the professional relationship with the client;

(J)    awards in similar cases;

(K)    the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case;

(L)    any other factor which the court deems appropriate in the particular case.

A "trial court is not required to make specific findings demonstrating how it employed any of the factors in Rule 54(e)(3),' [but] it is required to consider those factors when determining the amount of the fees to award." *Edmark Auto*, 2021 WL 780903, at *2 (quoting *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 769, 86 P.3d 475 (Idaho 2004)).

**Factors A and D**: *the time and labor required, and the prevailing charges for like work.* These factors are discussed above, in connection with Plaintiffs' counsels' lodestar. *See* Section III.D.1, *supra*.

**Factor B:** *the novelty and difficulty of the questions.* This factor is discussed above, in connection with the California lodestar enhancement. *See* Section III.D.2, *supra*.

**Factor C**: *the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law.* The skill demonstrated by Plaintiffs' counsel is discussed above, in connection with the California lodestar enhancement. *See Section* III.D.2, *supra*. Further, Plaintiffs' counsel is comprised of highly-experienced class action litigators, many of whom have dedicated substantial portions of their practice to multistate, automotive defect litigation. *See* Levitt Decl. at ¶ 17.

**Factor E**: *whether the fee is fixed or contingent*. This factor is discussed above, in connection with the California lodestar enhancement. *See Section* III.D.2, *supra*.

**Factors F and H:** *the time limitations imposed by the client or the circumstances of the case* and *the undesirability of the case.* The clients did not impose a time limitation, and litigating the ICPA claim, in and of itself, was not undesirable. However, these factors nevertheless support a lodestar enhancement. GM mounted an extremely aggressive defense in this case, which has caused this litigation to continue for seven years and counting. This has not been an easy case for Plaintiffs' counsel, and no attorney desires to work seven years without payment.

**Factor G:** *the amount involved and the results obtained.* This factor weighs in favor of a lodestar enhancement. The exact amount of Idaho Class members is presently unknown, but at the class notice stage, GM provided the VINs for 5,049 Class Vehicles sold by GM-authorized dealerships in Idaho. The jury awarded Plaintiffs' counsel the full $2,700 that they asked for on behalf of the Class. With prejudgment interest, the amount is significantly greater. As discussed above at Section II, an owner

with a purchase date of July 1, 2012 will receive $6,453. Plaintiffs' counsel thus obtained millions of dollars on behalf of the Idaho Class.

**Factor I**:  *the nature and length of the professional relationship with the client*.  Because this is a class action, this factor should be irrelevant.  However, Plaintiff Del Valle has served as a plaintiff in this case for over seven years without any payment, and thus should be awarded maximal attorneys' fees.

**Factor J:** *awards in similar cases.*  As discussed in Plaintiffs' Common Fund Motion at 5-6, filed concurrently herewith, the "market" for like work would lead to a substantial multiplier on the prevailing lodestar—with "multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation."  *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995).

**Factor K:** *the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case*.  This factor weighs in favor of a lodestar enhancement.  Given the extensive briefing in this litigation, Plaintiffs' counsel had no choice but to use computer assisted legal research sources, such as Westlaw.  Plaintiffs' counsel needed to pay those costs throughout the last seven years.

When all factors are considered, a 2X lodestar enhancement of is warranted under Idaho law.

## IV.  RULE 23(c)(3) JUDGMENT

When entering a judgment in a Rule 23(b)(3) class action, like this one, Rule 23(c)(3) requires that the judgment "include and specify or describe those to whom Rule 23(c)(3) notice was directed, who have not requested exclusion, and whom the court finds to be Class members."  This Rule "requires only that the final judgment describe the class; it need not identify individual class members."  *In re Motor Fuel Temperature Sales Pracs. Litig.*, 271 F.R.D. 263, 280, n. 24 (D. Kan. 2010) (citing 1 *Newburg on Class Actions* § 2:4 (4th ed. 2002)).

Here, the classes are defined as follows:

**Idaho Class:**  "All current owners or lessees of a Class Vehicle that was purchase or leased in the State of Idaho from a GM-authorized dealer."  (ECF. No. 349.)

**California Class:**  "All current owners or lessees of a Class Vehicle who purchased or leased the vehicle in new condition in the State of California."  (ECF No. 288.)

**North Carolina Class**:  "All current owners or lessees of a Class Vehicle that was purchased or leased in the State of North Carolina."  (ECF No. 237.)

The term "Class Vehicle" is defined to mean: 2011-2014 Chevrolet Avalanches, 2011-2014 Chevrolet Silverados; 2011-2014 Chevrolet Suburbans; 2011-2014 Chevrolet Tahoes; 2011-2014 GMC Sierras; 2011-2014 GMC Yukons; and the 2011-2014 GMC Yukon XLs with LC9 engines manufactured on or after February 10, 2011, with any vehicle that has already received under-warranty piston replacement (i.e. upgraded piston rings) being excluded from the definition.  (ECF No. 237.)

Notice was directed to as many of the Class members as reasonably practicable, as described in the notice plan filed with the Court on March 21, 2022 (ECF No. 396), and approved by the Court on March 28, 2022 (ECF No. 399).  One potential class member requested exclusion. (Declaration of Ryan Aldridge at ¶ 6.)

## V.    PAYMENT TO CLASS MEMBERS

Once judgment is entered, the Class members must be paid.  As this Court has recognized, in consumer class actions, payments should be sent directly to class members, without a "claims-made process," when possible.  *In re MyFord Touch Consumer Litig.*, 2018 WL 10539266, at *2 (N.D. Cal. June 14, 2018).  Here, as described below, checks can, and should, be mailed directly to the vast majority of Class members.

### A.    The California Class

Vehicle registration data will allow for the identification of all California Class members so that checks can be sent to them directly.  The California Class includes people who purchased a new Class Vehicle in California and owned that vehicle as of May 23, 2022.  (ECF No. 633, Order Granting Motion to Clarify Class Definition, at 13.)   At the class notice phase of the case, GM provided Vehicle Identification Numbers ("VINs") for all Class Vehicles sold new in California.  (ECF No. 396 at 3.)  Polk Automotive Solutions ("Polk"),[14] which maintains vehicle registration data, provided the identity of registrants for these Class Vehicles.  (*Id.*)  Specifically, the Polk data allowed for the identification of 6,581 people who were the only registrants of Class Vehicles sold new in California.  These people, in

---

[14]Formerly, R.L. Polk & Co.

other words, are those that bought a Class Vehicle new in California and never sold it as of the date when Polk provided the registration data. Updated registration data, which Plaintiffs request the Court authorize in their Motion for Authorization of Release of Class Identification Information, filed concurrently herewith, will allow Plaintiffs' counsel and P&N,[15] the proposed payment administrator, to confirm that these people remained Class members as of May 23, 2022. (Aldridge Decl. at ¶¶ 9-12.) After P&N performs a check for updated addresses, it can send the confirmed Class members a check for their share of the judgment, less attorneys' fees and costs (*see* Common Fund Motion, filed concurrently herewith).

### B.    The Idaho Class

The Idaho Class includes Class Vehicle owners who purchased their Class Vehicle from a GM-authorized dealer in Idaho and were a current owner as of May 23, 2022. (ECF No. 633 at 13.) At the class notice phase of the case, GM provided VINs for 5,049 Class Vehicles sold from an authorized dealership in Idaho. (ECF No. 396 at 3.) These VINs, along with additional information from Polk, will allow for checks to be sent directly to all Idaho Class members.

Plaintiffs, through P&N, will ask Polk to provide complete registration data (*i.e.*, the entire registration history) for all Class Vehicles sold from authorized GM dealerships in Idaho. (Aldridge Decl. at ¶¶ 13-15.) Similar to the California Class, people who purchased from an authorized GM dealership in Idaho and continued to own the vehicle as of May 23, 2022 are the Idaho Class members. (*Id.*) After P&N performs a check for updated addresses, it can send the confirmed Class members a check for their share of the judgment, less attorneys' fees and costs (*see generally* Motion for Common Fund Attorneys' Fees and Costs, filed concurrently herewith).

### C.    The North Carolina Class

The North Carolina Class includes all Class Vehicle owners who purchased a Class Vehicle in North Carolina and were the current owner as of May 23, 2022. (ECF No. 633 at 6-8.) Unlike the California and Idaho Classes, the North Carolina Class thus includes people who did not purchase their

---

[15] The class notice administrator, Postlethwaite & Netterville, APAC, has since been acquired by EisnerAmper. Plaintiffs' counsel is working with the same team of individuals that it worked with for class notice.

vehicles from a GM dealership. GM has not provided VINs for Class Vehicles that were sold in North Carolina at non-GM dealerships. Thus, Plaintiffs do not have the VINs for all Class Vehicles sold in North Carolina. However, as discussed below, it is possible to send checks directly to what is likely the vast majority of North Carolina Class members.

First, for Class Vehicles sold by an authorized GM dealership (whether new or used) in North Carolina, the process will be the same as for California and Idaho. With complete registration data from Polk, Plaintiff will be able to identify those vehicles that have had only one registrant until May 23, 2022, since the purchase from the GM dealership. (Aldridge Decl. at ¶ 18.) These registrants are all in the Class, and checks can be sent to them directly.

But the process will have to be different for those who purchased their Class Vehicles from a non-GM dealership because GM has not provided VINs for these vehicles. To identify these Class members, P&N intends to receive data from Polk showing all Class Vehicles registered in North Carolina as of May 23, 2022, as well as complete registration history data for these vehicles. (*Id.* at ¶ 18.) This will allow EisnerAmper to identify those vehicles owned by a North Carolina registrant as of May 23, 2022, and for which the previous owner was also registered in North Carolina. (*Id.*) If a North Carolina registrant purchased the vehicle from a North Carolina registrant, it can be reasonably inferred that the transaction took place in North Carolina and that the latter registrant is thus a North Carolina Class member. (*Id.* at ¶ 20.)

In this way, checks can be sent directly to the vast majority of North Carolina Class members for their share of the judgment, less attorneys' fees and costs (*see* Motion for Common Fund Attorneys' Fees and Costs, filed concurrently herewith).

### D.    Supplemental Notice Campaign

To reach any remaining Class members who cannot be located through the methods described above, P&N will also run a digital notice campaign, consistent with what was done at the class notice stage. (ECF No. 396-1 at 5-7.) This digital notice campaign will target potential Class members, as described in the declaration submitted at the class notice stage (*id.*), and inform them that, if they own a Class Vehicle purchased in California, Idaho, or North Carolina they may be entitled to an award of $2,700 or more. (*Id.* at ¶¶ 21-23.) The digital notice campaign will direct potential Class members to

the informational website associated with this case, which will be updated to explain to Class members how to submit a claim. The website will include contact information for Class Counsel, who can receive proof of purchase and an attestation that GM has not provided covered piston repair from potential Class members. Class Counsel will present covered claims to GM for payment. The digital notice campaign, and the updated website, will inform Class members that there is a cut-off date of August 30, 2024 to notify Class Counsel that they are Class members.

### E.    Payment Process

1.    P&N can administer the payments to the Class members through the creation of funds for each of the California, Idaho, and North Carolina Classes. (Aldridge Decl. at ¶¶ 24-32.) P&N will provide GM with the necessary bank account information to receive funds. (*Id.* at ¶ 26.) Once P&N has received the necessary information, as described above, P&N will identify Class members and identify the amount that each Class member is owed, consistent with the Court's judgment and the Court's ruling on the Common Fund Motion. (*Id.* at ¶ 27.) P&N will provide this information to GM, who will provide the funds to P&N within fourteen days of receiving the information. P&N will then send checks directly to each Class member.[16] (*Id.* at ¶¶ 29-30.) Each check issued by P&N will be in the amount of the Class member's share of the judgment (including prejudgment interest), less their *pro rata* share of the fees and costs awarded to Class Counsel. Any uncashed checks will be treated as unclaimed property. (*Id.* at ¶ 31.) The estimated cost for the additional research needed to specifically identify class members and to administer the proposed payment plan is $208,828. GM should pay the costs associated with this payment plan directly to P&N. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1144 (9th Cir. 2009).

## VI.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court:

(A)    Enter final judgment in favor of the California, Idaho, and North Carolina Classes under Rule 54(b);

(B)    Award $2,700 in damages to each California, Idaho, and North Carolina Class member;

---

[16] Before doing so, EisnerAmper will email or mail each Class member a W-9. If it is not returned, Eisner will withhold the applicable taxes after consultation with its tax consultants.

(C)     Grant prejudgment interest, under their respective state laws, to the California, Idaho, and North Carolina Class members;

(D)     Award costs under Rule 54 in the amount of $59,184.23 to the California, Idaho, and North Carolina Class members;

(E)     Award additional costs in the amount of $1,094,344.80 to the California and Idaho Class members under the Song-Beverly Act and the Idaho Consumer Protection Act;

(F)     Award statutory attorneys' fees in the amount of $45,730,867.60 together to the Idaho and California Classes under the California Song-Beverly Act and Idaho Consumer Protection Act, to be allocated to each Class in proportion with the number of members in each Class;

(G)     Award additional statutory attorneys' fees in the amount of $214,024 to the Idaho class under the Idaho Consumer Protection Act;

(H)     Award additional statutory attorneys' fees in the amount of $1,420,024 to the California class under the Song-Beverly Act;

(I)     Award post-judgment interest under 28 U.S.C. § 1961;

(J)     Include the necessary Rule 23(c)(3) language within the entry of judgment; and

(K)     Appoint P&N to administer Class member payments and approve the proposed payment plan.

Dated: February 9, 2024

*/s/ Adam J. Levitt*
Adam J. Levitt (*pro hac vice*)
John E. Tangren (*pro hac vice*)
Daniel R. Ferri (*pro hac vice*)
Christopher S. Stombaugh (*pro hac vice*)
Blake Stubbs (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com
cstombaugh@dicellolevitt.com
bstubbs@dicellolevitt.com

Mark Abramowitz (*pro hac vice*)
**DICELLO LEVITT LLP**
7556 Mentor Avenue
Mentor, Ohio  44060
Telephone: 440-953-8888
mabramowitz@dicellolevitt.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
H. Clay Barnett, III (*pro hac vice*)
J. Mitch Williams (*pro hac vice*)
Rebecca D. Gilliland (*pro hac vice*)
**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@beasleyallen.com
Clay.Barnett@beasleyallen.com
Mitch.Williams@beasleyallen.com
Rebecca.Gilliland@beasleyallen.com

*Class Counsel*

Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Anthony J. Garcia (*pro hac vice*)
**AG LAW P.A.**
3602 West Euclid Avenue
Tampa, Florida 33629
Telephone: 813-259-9555
anthony@aglawinc.com

*Additional Counsel for Plaintiffs and the*
*Classes*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ECF ATTESTATION**

Pursuant to Local Rule 5-1(i)(3) regarding signatures, I attest under penalty of perjury that the other signatory has concurred in the filing of this motion which shall serve in lieu of their signature on the declaration.  The original signed motion, to support this concurrence, is available for subsequent production for the Court, if so ordered, or for inspection upon request by a party, until one year after the final resolution of this action (including appeal, if any).

Jennie Lee Anderson
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

*Additional Counsel for Plaintiffs and the Classes*