1  Jennie Lee Anderson (SBN 203586)
2  Lori E. Andrus (SBN 205816)
   **ANDRUS ANDERSON LLP**
3  155 Montgomery Street, Suite 900
   San Francisco, California 94104
4  Telephone: 415-986-1400
   jennie@andrusanderson.com
5  lori@andrusanderson.com

Adam J. Levitt (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@beasleyallen.com

9  *Class Counsel*
10 (*additional counsel appear on signature page*)

11         **UNITED STATES DISTRICT COURT**
12         **NORTHERN DISTRICT OF CALIFORNIA**
           **SAN FRANCISCO DIVISION**

13 RAUL SIQUEIROS, *et al.*,

14         Plaintiffs,

15         v.

16 GENERAL MOTORS LLC,

17         Defendant.

18

Case No.: 16-cv-07244-EMC

**NOTICE OF MOTION, MOTION, AND
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR COMMON
FUND ATTORNEYS' FEES AND COSTS,
AND CLASS REPRESENTATIVE SERVICE
AWARDS**

Judge: Hon. Edward M. Chen
Hearing Date: March 21, 2024
Time of Hearing: 1:30 PM

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO THIS COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 21, 2024 at 1:30 pm, in the United States District Court, Norther District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 5, 17th Floor, before the Honorable Edward M. Chen, Plaintiffs will, and hereby do, move this Court for an order awarding attorneys' fees and costs, and class representative service awards.

As compensation for their work in achieving a jury verdict that awarded all damages sought for each member of the California, North Carolina, and Idaho Classes, Class Counsel asks that the Court award them common fund attorneys' fees in the amount of 38% of the Class members' recovery. Because statutory attorneys' fees should be paid by Defendant General Motors ("GM") under the Song-Beverly Consumer Warranty Act and the Idaho Consumer Protection Act, Class Counsel requests that the Court award them those fees, with those amounts credited against the 38% otherwise awarded from the California and Idaho Class members' recovery. In addition to their fees, Class Counsel requests payment of their costs; and Plaintiffs request service awards in the amount of $30,000 each for the Class Representatives—Garet Tarvin, William Davis, and Gabriel Del Valle—who testified at trial and who were critical to achieving relief on behalf of their respective Classes.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying declarations of Adam Levitt and Ryan Aldridge, the exhibits thereto, and the contemporaneously filed Motion for Final Judgment and all declarations and exhibits associated therewith.

Dated: February 9, 2024

*/s/ Adam J. Levitt*
Adam J. Levitt (*pro hac vice*)
John E. Tangren (*pro hac vice*)
Daniel R. Ferri (*pro hac vice*)
Christopher S. Stombaugh (*pro hac vice*)
Blake Stubbs (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com

jtangren@dicellolevitt.com
dferri@dicellolevitt.com
cstombaugh@dicellolevitt.com
bstubbs@dicellolevitt.com

Mark Abramowitz (*pro hac vice*)
**DICELLO LEVITT LLP**
7556 Mentor Avenue
Mentor, Ohio 44060
Telephone: 440-953-8888
mabramowitz@dicellolevitt.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
H. Clay Barnett, III (*pro hac vice*)
J. Mitch Williams (*pro hac vice*)
Rebecca D. Gilliland (*pro hac vice*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@beasleyallen.com
Clay.Barnett@beasleyallen.com
Mitch.Williams@beasleyallen.com
Rebecca.Gilliland@beasleyallen.com

*Class Counsel*

Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Anthony J. Garcia (*pro hac vice*)
**AG LAW P.A.**
3602 West Euclid Avenue
Tampa, Florida 33629
Telephone: 813-259-9555
anthony@aglawinc.com

*Additional Counsel for Plaintiffs and the Classes*

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................................. 1

II.   CLASS COUNSEL SHOULD BE AWARDED COMMON FUND FEES OF 38%. ................. 2

     A.    Class Counsel Achieved Exceptional Results. .................................................. 3

     B.    This Fully Contingent Case Was Complex, Risky, and Highly Burdensome. .................. 4

     C.    The "Market Rate" Supports the Requested Fee. ............................................. 5

     D.    The Requested Fee Satisfies a Lodestar Cross-Check. ...................................... 6

III.  CLASS COUNSEL SHOULD BE AWARDED STATUTORY FEES AWARDED FOR
     THE IDAHO AND CALIFORNIA CLAIMS, WITH THAT AMOUNT CREDITED
     AGAINST THE CONTINGENCY AWARD. ............................................................................ 8

IV.   CLASS COUNSEL SHOULD BE AWARDED COSTS. ........................................................ 10

V.    THE CLASS REPRESENTATIVES SHOULD RECEIVE SERVICE AWARDS OF
     $30,000 EACH. ...................................................................................................................... 10

VI.   CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Plains All Am. Pipeline L.P*,
  2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ............................................................2, 3

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ...................................................................................5

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..........................................................................................2

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................................................................2

*Brandenburger v. Thompson*,
  494 F.2d 885 (9th Cir. 1974) ..........................................................................................9

*Brown v. 22nd Dist. Agric. Ass'n*,
  2017 WL 3131557 (S.D. Cal. July 21, 2017) .................................................................5

*In re Capacitors Antitrust Litig.*,
  2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ...............................................................8

*Carlin v. DairyAmerica, Inc.*,
  380 F. Supp. 3d 998 (E.D. Cal. 2019) ..................................................................2, 3, 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 183285 (N.D. Cal. Jan. 14, 2016) ...................................................................2

*Ching v. Siemens Indus., Inc.*,
  2014 WL 2926210 (N.D. Cal. June 27, 2014) .................................................................5

*Costa v. FCA US LLC*,
  Case No. 20-cv-11810 (D. Mass.) ...................................................................................5

*Folsom v. Butte Cnty. Ass'n of Gov'ts*,
  652 P.2d 437 (Cal. 1982) .................................................................................................8

*George v. Acad. Mortg. Corp. (UT)*,
  369 F. Supp. 3d 1356 (N.D. Ga. 2019) ...........................................................................6

*Gergetz v. Telenav*,
  2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) .............................................................10

*Glass v. UBS Fin. Servs., Inc.*,
  2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x. 452 (9th Cir. 2009) ......................7

*Heffington v. FCA US LLC*,
   2020 WL 5017610 (E.D. Cal. Aug. 25, 2020) ...............................................................8

*In re Heritage Bond Litig.*,
   2005 WL 1594389 (C.D. Cal. June 10, 2005)...............................................................3

*In re HQ Sustainable Mar. Indus., Inc. Derivative Litig.*,
   2013 WL 5421626 (W.D. Wash. Sept. 26, 2013) .........................................................7

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) .....................................................................10

*Jenson v. First Tr. Corp.*,
   2008 WL 11338161 (C.D. Cal. June 9, 2008)...............................................................6

*In re M.D.C. Holdings Sec. Litig.*,
   1990 WL 454747 (S.D. Cal. Aug. 30, 1990)................................................................6

*U.S. ex rel. Maxwell v. Kerr–McGee Oil & Gas Corp.*,
   793 F. Supp. 2d 1260 (D. Colo. 2011) .....................................................................10

*Nalen v. Jenkins*,
   741 P.2d 366 (Idaho Ct. App. 1987) ..........................................................................8

*Nuwer v. FCA US LLC*,
   Case No. 20-cv-60432 (S.D. Fla.) ..............................................................................5

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008).......................................................................3

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   959 F.3d 922 (9th Cir. 2020) ............................................................................2, 6, 9

*Quackenbush v. Am. Honda Motor Co., Inc.*,
   Case No. 20-cv-05599 (N.D. Cal.) .............................................................................5

*Rankin v. Am. Greetings, Inc.*,
   2011 WL 13239039 (E.D. Cal. July 6, 2011)...............................................................7

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012)......................................................................................2

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)....................................................................................10

*Samora v. Chase Dennis Emergency Med. Grp., Inc.*,
   2023 WL 5000567 (N.D. Cal. Aug. 4, 2023)...............................................................2

*Serrano v. Priest*,
   569 P.2d 1303 (Cal. 1977).........................................................................................8

*Sobel v. Hertz Corp.*,
   53 F. Supp. 3d 1319 (D. Nev. 2014) .................................................................................9

*Sprague v. Ticonic Nat'l Bank*,
   307 U.S. 161 (1939) ..........................................................................................................2

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) ..................................................................2

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995).................................................................................8, 11

*Vinh Nguyen v. Radient Pharms. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ....................................................................2

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................................................ 2, *passim*

*In re Wash. Pub. Power Supply Sys. Secs. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ............................................................................................5

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   845 F. App'x. 563 (9th Cir. 2021)....................................................................................7

*Wininger v. SI Mgmt. L.P.*,
   301 F.3d 1115 (9th Cir. 2002) ........................................................................................10

*Zamora Jordan v. Nationstar Mortg.*,
   LLC, 2019 WL 1966112 (E.D. Wash. May 2, 2019) ......................................................11

**Statutes**

Cal. Code Civ. Proc. § 1021.5 ...............................................................................................8

**Other Authorities**

Idaho Consumer Protection Act ........................................................................................1, 10

Song-Beverly Consumer Warranty Act..................................................................................1

David L. Schwartz, *The Rise of Contingent Fee Representation in Patent Litigation*, 64
   Ala. L. Rev. 335, 360 (2012) ............................................................................................6

Pls.' Mot. for Common Fund Attorneys'      vi      Case No. 16-cv-07244-EMC
Fees and Costs, and Class Representative
Service Awards

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF ISSUES TO BE DECIDED

1.     Should the Court grant Class Counsel attorneys' fees in the amount of 38% of the Class members' recovery?

2.     Should the Court award Class Counsel the statutory attorneys' fees payable under the Song-Beverly Act and the Idaho Consumer Protection Act, with those amounts credited against the 38% otherwise awarded from the California and          Idaho     Class     members' recovery?

3.     Should the Court grant Class Counsel their requested costs?

4.     Should the Court grant each Class Representative a $30,000 service award?

## I.     INTRODUCTION

The history of this long litigation is briefly summarized in Plaintiffs' Motion for Final Judgment, Prejudgment Interest, Statutory Attorneys' Fees, and Costs ("Final Judgment Motion"), filed concurrently herewith.  Once judgment has been entered, the Court should consider the appropriate fee for Class Counsel, who have litigated this case for more than seven years without payment, and with the risk of non-payment had they not succeeded in their efforts.

In the face of vigorous opposition, Class Counsel—working entirely on contingency—fully prevailed at trial, generating a 100% recovery on the California, Idaho, and North Carolina Class claims.  A class-wide trial victory is a rare and remarkable result.  Class Counsel has now further prevailed on a year's worth of post-trial motion practice.  For the reasons stated below, Class Counsel respectfully submits that the Court award a common fund fee that reflects the costs and risks that they have borne, and the success that they have achieved.

Statutory attorneys' fees are also available in connection with the California Class's Song-Beverly Act claim and the Idaho Class's Idaho Consumer Protection Act ("ICPA") claim.  (Final Judg. Mot. at 9-20.)  Accordingly, the state classes and their respective funds must be treated slightly differently.  As discussed below, Class Counsel should be paid any statutory fees awarded under the Song-Beverly Act and the ICPA, and that amount should be credited against the common fund fee award granted with respect to the California and Idaho Classes.  By doing so, the California and Idaho Classes will likely receive all, or almost all, of the damages awarded by the jury and the prejudgment and post-judgment interest that should be awarded by the Court.  (Final Judg. Mot. at  3-6.)  For the North Carolina Class, Class Counsel should simply be awarded a percentage fee from the North Carolina common fund.

In addition to their fees, Class Counsel also requests payment of their reasonable expenses and that the Court award Plaintiffs Garet Tarvin, Gabriel Del Valle, and William Davis appropriate service awards reflecting their exemplary service as class representatives.

1

## II.    CLASS COUNSEL SHOULD BE AWARDED COMMON FUND FEES OF 38%.

2

Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the

3

benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund

4

as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "Federal courts award attorneys'

5

fees under the common fund doctrine as a matter of federal common law, based on the 'historic equity

6

jurisdiction of the federal courts.'" *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (quoting

7

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939)). In the Ninth Circuit, courts have discretion

8

in awarding fees from a common fund to "employ either the lodestar method or the percentage-of-

9

recovery method." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

10

"Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a

11

percentage of the common fund recovered for the class." *Samora v. Chase Dennis Emergency Med.*

12

*Grp., Inc.*, 2023 WL 5000567, at *1 (N.D. Cal. Aug. 4, 2023). The Ninth Circuit has identified

13

factors—often referred to as the *Vizcaino* factors—that courts may consider when assessing requests for

14

attorneys' fees calculated pursuant to the percentage-of-recovery method:

15

(1) the extent to which class counsel achieved exceptional results for the class; (2)
whether the case was risky for class counsel; (3) whether counsel's performance
generated benefits beyond the cash settlement fund; (4) the market rate for the particular
field of law; (5) the burdens class counsel experienced while litigating the case; and (6)
whether the case was handled on a contingency basis.

16

17

18

*In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020) (citing *Vizcaino v.*

19

*Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

20

Even in cases that settle short of trial, fee awards above the 25% "benchmark" are appropriate

21

where class counsel has achieved a significant class recovery. *See, e.g.*, *Andrews v. Plains All Am.*

22

*Pipeline L.P*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (approving 32% fee award of $230

23

million settlement); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 183285, at *2 (N.D. Cal.

24

Jan. 14, 2016) (approving 30% fee award of $127.45 million settlement); *In re TFT-LCD (Flat Panel)*

25

*Antitrust Litig.*, 2011 WL 7575003, at *2 (N.D. Cal. Dec. 27, 2011) (approving 30% fee award of

26

$405.02 million settlement); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1021, 1023 (E.D. Cal.

27

2019) (awarding 33.3% of a $40 million common fund that represented 48% of damages); *Vinh Nguyen*

28

*v. Radiant Pharms. Corp.*, 2014 WL 1802293, at *10 (C.D. Cal. May 6, 2014) (awarding 28% fee in case that settled pre-trial).

Here, where Class Counsel did not unburden themselves of risk through pre-trial settlement, but, instead, litigated the Class claims through verdict, achieving a 100% recovery for each Class member, Class Counsel submits that the *Vizcaino* factors strongly support a fee of 38% of the judgment, which is consistent with or lower than a reasonable contingency fee in the private market.

### A.    Class Counsel Achieved Exceptional Results.

The benefit secured for a class is the single most important factor in evaluating the reasonableness of a requested fee. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."). Here, Class Counsel achieved the maximum damages sought, $2,700 per vehicle, for each California, Idaho, and North Carolina Class member. With pre-judgment interest, an average class member will receive up to approximately $5,000. (*See* Final Judg. Mot. at 5-6.) To put that number in perspective, the average class member will receive roughly 14% of the cost of a *new* Chevrolet Silverado.[1] The result could not have been achieved through a settlement. The Classes received the maximum result for their claims because Class Counsel took their case through verdict.

In cases that generate large funds, courts have deemed results "significant" and "exceptional" that were not half as successful as what Class Counsel accomplished here. For example, in *Andrews*, the court commended class counsel for its success when a settlement represented "roughly 35% of the maximum class wide compensatory damages" following deduction of fees and "in the face of complex and hotly disputed issues" over the course of seven years' litigation. 2022 WL 4453864, at *2; *see also In re Heritage Bond Litig.*, 2005 WL 1594389, at *8 (C.D. Cal. June 10, 2005) (awarding 33.33% in fees to counsel where the class recovered 23% of the total net loss after fees were deducted); *Carlin*, 380 F. Supp. 3d at 1021, 1023 (awarding 33.3% of a $40 million common fund that represented 48% of

---

[1] https://www.chevrolet.com/trucks/silverado/1500

damages alleged).  The risks borne and the results that Class Counsel achieved here far exceed the results in the aforementioned cases, and their fee should reflect that reality.

### B.    This Fully Contingent Case Was Complex, Risky, and Highly Burdensome.

Class Counsel filed this case on a fully-contingent basis, with no guarantee of payment, more than seven years ago.  Over the course of discovery, Class Counsel reviewed 23,774 documents, deposed 10 GM engineers and 3 GM experts, and defended 11 Plaintiffs' depositions and 3 expert depositions.  (Declaration of Adam Levitt at ¶ 7.)  Just to get to a jury, Class Counsel overcame two motions to dismiss and four motions for summary judgment.  (ECF Nos. 47, 70, 184, 291, 397, 428.)  They faced four pre-trial motions for class decertification, and a motion for reconsideration of Idaho class certification.  (ECF Nos. 247, 324, 325, 347, 397.)  They faced *Daubert* motions as to both of their experts, and they briefed and argued nine motions *in limine*.  (ECF Nos. 395, 476.)

During the multi-week trial, where they faced top-tier trial counsel from two national defense firms, Class Counsel successfully proved to the jury that the Class Vehicles contained the Oil Consumption Defect and that this defect was a safety defect.  (ECF No. 554, Jury Instructions; ECF No. 566, Verdict Form.)  Moreover, they proved to the jury that GM had fraudulently concealed that defect, so that the statutes of limitations were tolled for thousands of Class members who would not otherwise have recovered.  (*Id.*)  In doing so, Class Counsel drew upon expert testimony, testimony from GM's engineers, Plaintiffs' testimony, depositions, GM service bulletins, GM warranty data, and documents buried in the thousands of pages of GM's production.  (*See, e.g.*, ECF No. 634 at 2, 6–9, 13–14.)

But even after trial, Class Counsel's job was far from complete.  GM filed roughly 80 pages of post-trial motions, seeking judgment as a matter of law and, again, seeking decertification.  (ECF Nos. 592 and 594.)  These briefs, through which GM challenged practically every legal or factual issue that was possibly disputable, dragged the case on for another year, until the Court issued its order regarding the finality of the jury's statute of limitations filings.  (ECF No. 653.)

Class Counsel could have lost this case, and lost their entire investment of time, at any number of points between GM's first motion to dismiss in 2017 (ECF No. 47) and its JNOV motion argued in 2023 (ECF No. 592).  Indeed, it bears remembering that the Court dismissed this case in its entirety,

1    albeit with leave to replead, after GM's first motion to dismiss.  (ECF No. 62.)  Class Counsel pressed

2    on.

3         In doing so, Class Counsel not only invested thousands of hours of their time, but also

4    $1,051,948.96 of their own money.  (Levitt Decl. at ¶¶ 22–25.)  Most notably, they paid for a trial team

5    to spend three weeks in San Francisco, rather than accept GM's final pretrial settlement offer.  The risk

6    in this decision is evident from the results in automobile defect class actions that have gone to trial

7    since Plaintiffs' verdict.  *See FCA US LLC Monostable Elec. Gearshift Litig.*, Case No. 16-cv-02744

8    (E.D. Mich.) (jury verdict for the defendant in a class case); *Costa v. FCA US LLC¸* Case No. 20-cv-

9    11810 (D. Mass.) (jury verdict for the defendant in a class case); *Quackenbush v. Am. Honda Motor

10   Co., Inc.*, Case No. 20-cv-05599 (N.D. Cal.) (jury verdict for defendant on California CLRA claim);

11   *Nuwer v. FCA US LLC*, Case No. 20-cv-60432 (S.D. Fla.) (no damages awarded to plaintiffs).

12        Over seven years, Class Counsel has litigated this case as thoroughly as a case can be litigated,

13   always in the face of significant risk.  This factor weighs heavily in favor of a substantial fee.

14        **C.    The "Market Rate" Supports the Requested Fee.**

15        As a general matter, "[w]hen counsel takes cases on a contingent fee basis, and litigation is

16   protracted, the risk of non-payment after years of litigation justifies a significant fee award."

17   *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015). *See also In re Wash. Pub.

18   Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the

19   private legal market to reward attorneys of taking the risk of non-payment by paying them a premium

20   over their normal hourly rates for winning contingency cases."); *Ching v. Siemens Indus., Inc.*, 2014

21   WL 2926210, at *8 (N.D. Cal. June 27, 2014)  ("Courts have long recognized that the public interest is

22   served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to

23   compensate them for the risk that they might be paid nothing at all for their work."); *Brown v. 22nd

24   Dist. Agric. Ass'n*, 2017 WL 3131557, at *8 (S.D. Cal. July 21, 2017) (recognizing that "class counsel

25   was forced to forego other employment in order to devote necessary time to this litigation" and the

26   substantial risk associated with taking the matter on a contingent basis warranted "an upward

27   adjustment to the fee award").

28

The market for high-stakes, high-value, plaintiff's-side litigators is entirely driven by a percentage-of-the-recovery model, with sophisticated clients typically incentivizing their lawyers by agreeing to a fixed percentage of between 30% and 40% of the recovery. *See Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *13 n.15 (C.D. Cal. June 9, 2008) ("If this were non-representative litigation, the customary fee arrangement would likely be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery."); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) ("Plaintiffs request for approval of Class Counsel's 33% fee falls within the range of the private marketplace, where contingency-fee arrangements are often between 30 and 40 percent of any recovery"); David L. Schwartz, *The Rise of Contingent Fee Representation in Patent Litigation*, 64 ALA. L. REV. 335, 360 (2012) (in patent cases where attorneys paid a flat contingent fee, "the mean rate [is] 38.6% of the recovery.").

In a case generating large fund like this one, there is no "bright-line rule" requiring a reduction or sliding scale for fee rewards the larger the fund grows. The size of the settlement fund is but "one relevant circumstance to which courts must refer" when determining the reasonableness of a fee award. *Vizcaino*, 290 F.3d at 1047. It is true that there may be cases where "recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel," leading to "windfalls in common fund cases." *Optical Disk Drive*, 959 F.3d at 933. *But that is clearly not the case here*, where the recovery was a direct result of Plaintiffs' dogged pursuit of the case through trial—a trial through which Class Counsel achieved a full result for each and every Class member.

### D.    The Requested Fee Satisfies a Lodestar Cross-Check.

While the Ninth Circuit has "encouraged" the use of a lodestar cross-check when a court awards a fee using the percentage-of-the-fund method,[2] the Ninth Circuit does not require the use of a lodestar

---

[2] *Optical Disk Drive*, 959 F.3d at 930 ("[W]e have encouraged courts using the percentage-of-recovery method to perform a cross-check by applying the lodestar method to confirm that the percentage-of-recovery amount is reasonable.").

cross-check when awarding a fee using the percentage-of-the-fund method. *See Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar *may* provide a useful perspective on the reasonableness of a given percentage award") (emphasis added); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *15–16 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x. 452 (9th Cir. 2009) ("Under the circumstances presented here, where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check."); *Rankin v. Am. Greetings, Inc.*, 2011 WL 13239039, at *1–2 (E.D. Cal. July 6, 2011) (stating that "a lodestar calculation is not required" and awarding fee without a cross-check); *In re HQ Sustainable Mar. Indus., Inc. Derivative Litig.*, 2013 WL 5421626, at *3 (W.D. Wash. Sept. 26, 2013) (awarding 32% fee without benefit of lodestar cross-check); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 845 F. App'x. 563, 565 (9th Cir. 2021) (affirming reasonableness of a fee award without regard to the lodestar crosscheck, which the panel determined had been likely miscalculated).

Here, a precise lodestar cross-check cannot presently be performed because, as Plaintiffs explain in their concurrently-filed Final Judgment Motion, the specific identities of all Class members—and thus the exact sizes of the Classes and the amount of prejudgment interest available for each Class member—is presently unknown and will not be known until additional registration data is received. (*See* Final Judg. Mot. at 5.) Put another way, the exact size of the total fund is presently unknown, although it will be known in due course.

However, Class Counsel's request satisfies a lodestar cross-check even under the largest possible class recovery. Class notice, which was overly broad, was sent to 5,049 potential Idaho Class members, 6,581 potential California Class members, and 36,442 potential North Carolina Class members. (Declaration of Ryan Aldridge at ¶¶ 11, 13, 16.) The actual number of Class members, particularly with respect to North Carolina, is likely to be much less. As Plaintiffs discuss in their Final Judgment Motion, Plaintiffs are seeking prejudgment interest from the date that a Class Vehicle was first registered. (Final Judg. Mot. at 5.) The Class Vehicles are 2011-2014 model year vehicles. Using January 1, 2011 as the date on which prejudgment interest begins to run for all Class Vehicles (obviously, this is date is months or years earlier than prejudgment interest will begin to run for 2012-2014 model year vehicles), the total common fund will be $270,450,435. In other words, with

maximum possible Class members and maximum possible prejudgment interest, the total common fund for all three statewide Classes will be $270,450,435. Thirty-eight percent of $270,450,435 is $102,771,165. This is 4.2 times Class Counsel's lodestar of $24,424,860.5,[3] and thus well within the range of an acceptable lodestar multiplier. *See In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("In the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases . . . ."); *Vizcaino*, 290 F.3d at 1051 (affirming a common fund award that represented a lodestar multiplier of 3.65); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action"); 5 Newberg and Rubenstein on Class Actions § 15.89 (6th ed.) (empirical data showing mean multiplier of 3.18 for funds greater than $175.5 million).

## III.   CLASS COUNSEL SHOULD BE AWARDED STATUTORY FEES AWARDED FOR THE IDAHO AND CALIFORNIA CLAIMS, WITH THAT AMOUNT CREDITED AGAINST THE CONTINGENCY AWARD.

While thirty-eight percent of the class recovery is a fair contingent fee, the availability of statutory attorneys' fees means that California and Idaho Class members will need to share far less of their damages (and interest) recovery with Class Counsel. Both California and federal courts recognize that when a statutory fee-shifting provision's purpose is to incentivize attorneys to assert a claim, as is true of the Song-Beverly Act and Idaho Consumer Protection Act claims at issue here,[4] a court may order the statutory fees to be paid directly to the attorneys. *See Serrano v. Priest*, 569 P.2d 1303, 1315, n.21 (Cal. 1977) ("The propriety of a direct award to the plaintiffs' attorney, rather than to plaintiffs themselves, in the exercise of the court's equitable powers, is no longer questioned in the federal courts."); *Folsom v. Butte Cnty. Ass'n of Gov'ts*, 652 P.2d 437, 447 (Cal. 1982) (stating, in upholding an attorney fee award under California Code of Civil Procedure section 1021.5, which codifies the

---

[3] Levitt Decl. ¶ 13.

[4] *See Heffington v. FCA US LLC*, 2020 WL 5017610, at *9 (E.D. Cal. Aug. 25, 2020) (discussing, in the context of awarding statutory fees under the Song-Beverly Act, the financial incentives for attorneys enforcing important rights); *Nalen v. Jenkins*, 741 P.2d 366, 369–70 (Idaho Ct. App. 1987) (The Idaho Consumer Protection Act's "function is to provide private attorney general actions to redress unfair and deceptive practices. Firmly established in the private attorney general concept is the view that the prevailing advocate of the public interest is entitled to recover fees for fee-related work.").

1    "private attorney general" fee doctrine, that "[i]t is established that awards are properly made to

2    plaintiffs' attorneys rather than to plaintiffs themselves."); *Brandenburger v. Thompson*, 494 F.2d 885,

3    889–90 (9th Cir. 1974) ("The policy underlying the 'private attorney general' doctrine supports this

4    conclusion. . . . the award should be made directly to the organization providing the services to ensure

5    against a windfall to the litigant.").  Moreover, to the extent that these statutory fees are part of the

6    common fund, it is within the court's reasonable discretion to award them directly to Class Counsel.  *In*

7    *re Online DVD-Rental Antitrust Litig.*, 959 F.3d 922, 929 (9th Cir. 2020) ("District courts have

8    discretion to choose which method they use to calculate fees, but their discretion must be exercised to

9    reach a reasonable result.").

10           By ordering that class counsel recover first the statutory fees that will be awarded and then use

11   that as a set-off against the percentage for the common benefit work, the court allows the statutory fees

12   to compensate counsel for the risky representation *and* also preserves intraclass equity between class

13   members whose states provided statutory fees and those where no such fees were available.  To be

14   clear, Class Counsel is not asking to be paid statutory fees in addition to 38% of the common fund.

15   Rather, the statutory fees should be credited against the 38% common fund payment.  In other words, if

16   the statutory fees amount to more than 38% of the common fund (damages and any available interest),

17   Class Counsel will receive only the statutory fees; but if the statutory fees come to less than the 38% of

18   the common fund (damages and any available interest), Class Counsel will receive 38% of the common

19   fund less the amount of statutory fees.

20           Notably, this proposal applies only to California and Idaho, and only to the extent that statutory

21   fees are awarded under either the Song-Beverly Act and the Idaho Consumer Protection Act.  For North

22   Carolina, Class Counsel simply seeks 38% of the common fund.[5]

23   _____

24   [5] It is well-settled that the recovery of statutory fees, as requested in the Motion for Final Judgment,
     does not prejudice counsel from receiving a fee calculated on the basis of a percentage of the common
25   fund.  *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("The fees available under a
     fee-shifting statute are part of the plaintiff's recovery and are not dependent upon any explicit fee
26   arrangements between the plaintiffs and their counsel. For that reason, contingent fee agreements
     between counsel and client are valid in cases where statutory fees are available….Common fund fees
27   are essentially an equitable substitute for private fee agreements where a class benefits from an
     attorney's work, so the same general principles …should apply."); *Sobel v. Hertz Corp.*, 53 F. Supp. 3d
28

1

## IV.    CLASS COUNSEL SHOULD BE AWARDED COSTS.

2
3
4
5
6
7
8
9
10
11

"An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund."  *Carlin*, 380 F. Supp. 3d at 1023–24 .  "Such expense awards comport with the notion that the district court may 'spread the costs of the litigation among the recipients of the common benefit.'"  *Id.* (quoting *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002)).  The costs should be limited to "typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary."  *Id.* (quoting *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)).  Recoverable costs include: (1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) deliveries; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees. *Id.*

12
13
14
15

Here, as detailed in the attached Levitt Declaration, Class Counsel incurred $1,153,529.03 in recoverable costs. Levitt Decl. ¶22, Ex. C.  These costs should be paid by GM directly to Class Counsel, who incurred the costs, pursuant to the cost-shifting provisions of Rule 54, the Song-Berverly Act, and the ICPA.  (*See* Final Judg. Mot. at 6-8.)

16
17

## V.    THE CLASS REPRESENTATIVES SHOULD RECEIVE SERVICE AWARDS OF $30,000 EACH.

18
19
20
21
22

Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Gergetz v. Telenav*, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009)).  In determining whether to exercise their ample discretion in providing such

23
24
25
26
27
28

1319, 1330 (D. Nev. 2014) ("Nor does it appear that the intent of the fee-shifting provision at issue here would be undermined by awarding additional attorney's fees under common fund principles. Indeed, the fee-shifting statute and the common fund doctrine serve entirely different purposes: the former governs what the non-prevailing party must, by law, pay the prevailing party in attorney's fees, while the latter serves to ensure that absent class members share in the cost of litigation."); *U.S. ex rel. Maxwell v. Kerr–McGee Oil & Gas Corp.*, 793 F. Supp. 2d 1260, 1264–65 (D. Colo. 2011) ("By its nature, fee-shifting is designed to shift all of the costs (including attorney's fees) to the loser in an action. The fact that the winner's attorneys receive compensation from another source is irrelevant to the fee award.")

awards, courts consider five factors: (1) the risk to the class representative in commencing suit (financial or otherwise); (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken*, 901 F. Supp. at 299.  Courts in this circuit grant requests for substantial service awards where plaintiffs have participated actively in the prosecution of a case, including for participation that stopped well short of trial. *See id.* at 299 (awarding $50,000 as reward for "participation . . . through many years of litigation."). [6]

While the Class representatives here did not encounter personal risk or substantial notoriety, they were essential to Plaintiffs' victory and to thousands of Class members' recovery.  Plaintiffs Tarvin (California), Del Valle (Idaho), and Davis (North Carolina) all conferred with Class Counsel, searched for and produced documents, made their vehicles available for inspection, and sat for deposition.  (Levitt Decl. at ¶ 26.)  Most significantly, they each spent days or weeks away from home attending trial on behalf of their respective Classes and testifying in front of the jury on direct examination and on highly-adversarial cross-examination.  Plaintiffs Davis and Del Valle attended every day of the trial, from opening arguments through closing arguments.  (*Id.* at ¶ 27.)  Plaintiff Tarvin was there for the majority of trial days, leaving once for a long-planned family vacation, but returning again.  (*Id.*)  Plaintiff Del Valle served as a plaintiff in this action since its commencement more than seven years ago.  (ECF No. 2.)  Plaintiff Davis has served as a plaintiff for more than five years.  (ECF No. 123.)  And Plaintiff Tarvin joined this case not long before trial, stepping in to serve as Class Representative for the California Class, which had lost its representative, from decertification. (ECF No. 412.)

As the Court is aware, Plaintiffs Tarvin, Del Valle, and Davis were not mere figureheads.  Each of their testimony was integral to the presentation of their case to the jury.  They testified without any

---

[6] *See also Zamora Jordan v. Nationstar Mortg.*, LLC, 2019 WL 1966112, at *9 (E.D. Wash. May 2, 2019) ($20,000 service award where plaintiff assisted class counsel throughout pendency of case, was deposed, and prepared for trial).

promise of payment, and because they did so, thousands of people—the other Class members—will each receive thousands of dollars.  A service award of $30,000 each is not only fair to them, given the size of the Class recovery, it will also serve as an incentive to other individuals to diligently and responsibly serve as class representatives in the future.[7]

## VI.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests:

(1)    A common fund fee award of 38% of the North Carolina Class members' recovery (damages and interest);

(2)    Payment of any statutory fees awarded under the Song-Beverly Act, as well as a potential additional payment from the California Class fund (damages and interest for the California Class members), such that Class Counsel receives an amount that is no less than 38% of the California Class fund;

(3)    Payment of any statutory fees awarded under the Idaho Consumer Protection Act, as well as a potential additional payment from the Idaho Class fund (damages and interest for the Idaho Class members), such that Class Counsel receives no less than 38% of the Idaho Class fund;

(4)    Payment of any costs awarded by the Court under Rule 54, the Song-Beverly Act, or the Idaho Consumer Protection Act;

(5)    Service awards of $30,000 each for Plaintiffs Tarvin, Del Valle, and Davis.


Dated: February 9, 2024

/s/ Adam J. Levitt
Adam J. Levitt (*pro hac vice*)
John E. Tangren (*pro hac vice*)
Daniel R. Ferri (*pro hac vice*)
Christopher S. Stombaugh (*pro hac vice*)
Blake Stubbs (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com

---

[7] *See also generally* Levitt Decl. ¶¶ 26-28.

jtangren@dicellolevitt.com
dferri@dicellolevitt.com
cstombaugh@dicellolevitt.com
bstubbs@dicellolevitt.com

Mark Abramowitz (*pro hac vice*)
**DICELLO LEVITT LLP**
7556 Mentor Avenue
Mentor, Ohio 44060
Telephone: 440-953-8888
mabramowitz@dicellolevitt.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
H. Clay Barnett, III (*pro hac vice*)
J. Mitch Williams (*pro hac vice*)
Rebecca D. Gilliland (*pro hac vice*)
**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@beasleyallen.com
Clay.Barnett@beasleyallen.com
Mitch.Williams@beasleyallen.com
Rebecca.Gilliland@beasleyallen.com

*Class Counsel*

Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Anthony J. Garcia (*pro hac vice*)
**AG LAW P.A.**
3602 West Euclid Avenue
Tampa, Florida 33629
Telephone: 813-259-9555
anthony@aglawinc.com

*Additional Counsel for Plaintiffs and the Classes*

**ECF ATTESTATION**

Pursuant to Local Rule 5-1(i)(3) regarding signatures, I attest under penalty of perjury that the other signatory has concurred in the filing of this motion which shall serve in lieu of their signature on the declaration.  The original signed motion, to support this concurrence, is available for subsequent production for the Court, if so ordered, or for inspection upon request by a party, until one year after the final resolution of this action (including appeal, if any).

Jennie Lee Anderson
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

*Additional Counsel for Plaintiffs and the Classes*