H. Clay Barnett, III (*pro hac vice*)
**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: (334) 269-2343
clay.barnett@beasleyallen.com

Adam J. Levitt (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com

*Class Counsel*
*(additional counsel appear on signature page)*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| RAUL SIQUEIROS, et al., | Case No.: 16-cv-07244-EMC |
| Plaintiffs, | |
| v. | **PLAINTIFFS' NOTICE OF MOTION, AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| GENERAL MOTORS LLC, | |
| Defendant. | Judge: Hon. Edward M. Chen<br>Hearing Date: May 22, 2025<br>Time of Hearing: 1:30 p.m. |

## NOTICE OF MOTION AND MOTION

TO THIS COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 22, 2025 at 1:30 pm, in the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 5, 17th Floor, before the Honorable Edward M. Chen, Plaintiffs will, and hereby do, move this Court, pursuant to Federal Rule of Civil Procedure 23 for an entry of order in the form prescribed in the proposed Preliminary Approval Order and setting the following schedule:

| EVENT | DEADLINES |
|---|---|
| Commencement of Class Notice Plan | On the date of entry of the Preliminary Approval Order. |
| GM's Counsel shall provide, to the extent it has not already done so, a list of VINs for the Class Vehicles to the Settlement Administrator | Not later than seven (7) days after entry of the Preliminary Approval Order |
| Class Notice to be Substantially Completed | Thirty (30) days after the issuance of the Preliminary Approval Order |
| Plaintiffs' Motion, Memorandum of Law and Other Materials in Support of their Requested Award of Attorneys' Fees, Reimbursement of Expenses, and Request for Class Plaintiffs' Service Awards to be Filed with the Court | Thirty (30) days after issuance of the Preliminary Approval Order |
| Plaintiffs' Motion, Memoranda of Law, and Other Materials in Support of Final Approval to be Filed with the Court | Thirty (30) days after the issuance of the Preliminary Approval Order |
| Deadline for Receipt by the Clerk of All Objections Mailed by Class Members | Sixty-five (65) days after the issuance of the Preliminary Approval Order |
| Deadline for filing Notice of Intent to Appear at Final Approval Hearing by Class Members and/or their Personal Attorneys | Sixty-five (65) days after the issuance of the Preliminary Approval Order |
| Deadline for North Carolina Class Members to submit North Carolina Class Member Identification Forms. | Sixty-five (65) days after the issuance of the Preliminary Approval Order |
| Any submission by the Parties concerning Final Approval of Settlement and Responses to any objections | Seventy (70) days after the issuance of the Preliminary Approval Order |

| Settlement Administrator Shall File the Results of the Dissemination of the Notice with the Court | No later than Twenty (20) days before the Final Approval Hearing |
|---|---|
| Final Approval Hearing | August 21, 2025, at 1:30 p.m. - |

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Joint Declaration of Class Counsel, the Settlement Agreement and the exhibits thereto, and the pleadings filed in the Action.

Dated: April 16, 2025

/s/ *H. Clay Barnett, III*
H. Clay Barnett, III (*pro hac vice*)
W. Daniel "Dee" Miles, III (*pro hac vice*)
Rebecca D. Gilliland (*pro hac vice*)
J. Mitch Williams (*pro hac vice*)
Dylan T. Martin (*pro hac vice*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: (334) 269-2343
Dee.Miles@beasleyallen.com
Clay.Barnett@beasleyallen.com
Mitch.Williams@beasleyallen.com
Rebecca.Gilliland@beasleyallen.com
Dylan.Martin@beasleyallen.com

/s/ *Adam J. Levitt*
Adam J. Levitt (*pro hac vice*)
John E. Tangren (*pro hac vice*)
Daniel R. Ferri (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

Mark Abramowitz (*pro hac vice*)
**DICELLO LEVITT LLP**
7556 Mentor Avenue
Mentor, Ohio  44060
Telephone: 440-953-8888
mabramowitz@dicellolevitt.com

ii

Case No. 16-cv-07244-EMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Class Counsel*

Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: (415) 986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Anthony J. Garcia (*pro hac vice*)
**AG LAW P.A.**
3602 West Euclid Avenue
Tampa, Florida 33629
Telephone: (813) 259-9555
anthony@aglawinc.com

*Additional Counsel for Plaintiffs and the Classes*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT FACTS AND PROCEDURAL HISTORY ..................................... 2

III.    SETTLEMENT NEGOTIATIONS ..................................................................... 2

IV.     THE SETTLEMENT ........................................................................................... 3

        A.      The Classes ............................................................................................... 3

        B.      The Settlement Benefits .......................................................................... 4

        C.      Release and Waiver ................................................................................. 5

        D.      The Settlement Administrator and Notice Plan .................................. 6

V.      PRELIMINARY APPROVAL IS APPROPRIATE ............................................ 7

        A.      The Court Has Already Certified The California, Idaho, and North Carolina
                Classes ...................................................................................................... 7

        B.      The Proposed Settlement Merits Preliminary Approval ...................... 7

                1.      Rule 23(e)(2)(A): Class Plaintiffs and Class Counsel Adequately
                        Represented the Classes ............................................................... 8

                2.      The Settlement Was Negotiated at Arms' Length by Informed
                        Counsel ........................................................................................... 9

                3.      The Relief Provided Is Adequate ............................................... 10

                        a.      The Benefits of the Settlement, Weighed Against the Costs,
                                Risks, and Delay of Appeal, Favor Preliminary Approval .......... 10

                        b.      The Proposed Method of Distribution to Class Members Is
                                Equitable and Effective ................................................. 12

                        c.      The Proposed Attorneys' Fees, Costs and Class Plaintiff
                                Service Awards Support Preliminary Approval ............................ 13

                        d.      There Are No Other Agreements Between The Parties ................ 15

                4.      The Proposal Treats Class Members Fairly ............................... 15

VI.     THE COURT SHOULD AFFIRM ITS APPOINTMENT OF CLASS COUNSEL
        PURSUANT TO RULE 23(G) ........................................................................... 16

VII.    THE COURT SHOULD APPROVE THE NOTICE PLAN AND SCHEDULE A
        FINAL APPROVAL HEARING ........................................................................ 16

        A.      The Court Should Authorize Notice to the Classes ............................. 16

|  |  | 1. | Class Notice | 18 |
|  |  |  | a. The California Class | 18 |
|  |  |  | b. The Idaho Class | 19 |
|  |  |  | c. The North Carolina Class | 19 |
|  |  | 2. | Settlement Website | 20 |
|  |  | 3. | Contents of the Long Form Notice | 21 |

B. The Court Should Set Settlement Deadlines and Schedule a Final Approval Hearing .... 21

VIII. CONCLUSION .... 22

1

<u>**TABLE OF AUTHORITIES**</u>

2
**Page(s)**

**Cases**

3

4

*Berman v. Gen. Motors LLC,*
2019 WL 6163798 (S.D. Fla. Nov. 18, 2019) ............................................................. 11

5

*Brightk Consulting Inc. v. BMW of N. Am., LLC*, No.,
2023 WL 2347446 (C.D. Cal. Jan. 3, 2023) ............................................................... 12

6

7

*Briseno v. ConAgra Foods, Inc.,*
844 F.3d 1121 (9th Cir. 2017) ................................................................................... 16

8

*Charalambous v. Liberty Mut. Ins. Co.,*
2024 WL 1586701 (N.D. Cal. Mar. 15, 2024) ........................................................... 17

9

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ................................................................................... 12

10

11

*Curtis-Bauer v. Morgan Stanley & Co.,*
2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ............................................................ 12

12

*EEOC v. Pan American World Airways, Inc.,*
897 F.2d 1499 (9th Cir. 1990) ................................................................................... 16

13

14

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) .................................................................................................... 16

15

*In re Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) ........................................................................... 8, 10, 14

16

*In re BofI Holding, Inc. Sec. Litig.,*
2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .............................................................. 9

17

*In re HIV Antitrust Litig.,*
2023 WL 11897610 (N.D. Cal. Sept. 25, 2023) ......................................................... 21

18

*In re Hyundai & Kia Fuel Econ. Litig.,*
2014 WL 12603199 (C.D. Cal. Aug. 21, 2014) ......................................................... 11

19

20

*In re Lyft, Inc. Sec. Litig.,*
2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ........................................................... 7

21

*In re MyFord Touch Consumer Litig.,*
2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) ........................................................... 17

22

*In re Navistar MaxxForce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.,*
2020 WL 2477955, at *3 (N.D. Ill. Jan. 21, 2020), aff'd, 990 F.3d 1048 (7th Cir. 2021) .......... 11

23

24

*In re Syncor ERISA Litig.,*
516 F.3d 1095 (9th Cir. 2008) ............................................................................. 7, 11

25

26

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,*
895 F.3d 597 (9th Cir. 2018) ..................................................................................... 14

27

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.,*
2023 WL 9227002 (C.D. Cal. Nov. 28, 2023) ........................................................... 14

28

*Low v. Trump Univ., LLC*,
   881 F.3d 1111 (9th Cir. 2018) ................................................................................. 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................. 10

*Newton v. Am. Debt Servs., Inc.*,
   2016 WL 7743686 (N.D. Cal. Jan. 15, 2016) ......................................................... 21

*Reynolds v. Beneficial Nat. Bank*,
   288 F.3d 277 (7th Cir. 2002) .................................................................................. 12

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. Jan. 25, 2016) ...................................................... 7, 8, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2nd Cir. 2005) ................................................................................... 21

**Statutes**

Cal. Civ. Code § 1542 ................................................................................................. 6

**Rules**

Fed. R. Civ. P. 23(a)……………………………………………………………………..7
Fed. R. Civ. P. 23(b)……………………………………………………………………..7
Fed. R. Civ. P. 23(b)(3)………………………………………………………………….7
Fed. R. Civ. P. 23(e)…………………………………………………………….*Passim*
Fed. R. Civ. P 23(e)(1)…………………………………………………………………16
Fed R. Civ. P. 23(e)(2)……………………………………………………..7-10, 12, 14-15
Fed. R. Civ. P. 23(g) ............................................................................................... 16

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23(e), Class Plaintiffs, on behalf of themselves and the Classes (defined in Section IV(A)), respectfully submit this memorandum in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion for Preliminary Approval"). The proposed settlement ("Settlement") resolves all class claims against Defendant General Motors LLC ("GM" or "Defendant") in this Action.

## I.    INTRODUCTION

Class Plaintiffs have secured a Settlement that, if approved, will provide significant cash payments to the approximately 34,000 Class Members who own GM vehicles with the Generation IV 5.3 liter V8 Vortec LC9 ("Gen IV") engine that has been the subject of this long-running litigation.[1] The Settlement is the result of over eight years of litigation and hard-fought, arms'-length negotiations among experienced counsel.

Plaintiffs allege[2] that GM marketed and sold its vehicles as safe, reliable, and durable without disclosing to consumers that the vehicles consume an abnormally high quantity of oil, which results in low oil levels, insufficient lubricity levels, and engine component damage. Eighth Amended Class Action Complaint (ECF No. 412) ¶¶ 1–20, 81–122. The Class Plaintiffs prevailed at trial, achieving a verdict of $2,700 for each Class Member. Class Plaintiffs then filed motions, still pending, for significant amounts of pre-judgment interest and attorneys' fees.

In the Settlement, GM agrees to make available a Settlement Fund of $150,000,000 to be distributed proportionally to the members of the Classes. Before the payment of Attorneys' Fees and Expenses, Service Awards, and Settlement Administration Expenses this amounts to approximately $4,419 for each Class Member.

Class Plaintiffs submit the Settlement, described in detail below, is fair, reasonable, and adequate, and merits this Court's preliminary approval.[3]

---

[1] Unless specifically defined herein, capitalized terms have the same meanings ascribed to them in the Settlement Agreement, cited as "SA." SA, § II.

[2] While GM does not oppose the relief sought in this Motion, GM disputes Plaintiffs' allegations and factual assertions and expressly denies all liability.

[3] *See* Joint Declaration of Class Counsel in Support of Plaintiffs' Motion for Preliminary Approval ("Joint Declaration" or "Joint Decl.").

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

On December 19, 2016, Plaintiffs filed a class action complaint in this matter alleging an oil consumption defect in GM's Gen IV engine.

The Parties litigated this matter for nearly six years before trial. Plaintiffs overcame two motions to dismiss and four motions for summary judgment.  ECF Nos. 47, 70, 184, 291, 397, 428. Plaintiffs Tarvin, Del Valle, and Davis achieved class certification for state-wide classes in California, Idaho, and North Carolina, respectively, allowing them to bring claims on behalf of thousands of their fellow purchasers. ECF Nos. 237 and 320.  Before trial, GM moved, or attempted to move, for decertification on four separate occasions.  ECF Nos. 247, 325, 347, 397.

On October 4, 2022, a jury reached a verdict in favor of Class Plaintiffs. For Class Plaintiff Tarvin and the California Class, the jury found that GM had breached the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act").  ECF No. 566. For Class Plaintiff Del Valle and the Idaho Class, the jury found that GM violated the Idaho Consumer Protection Act ("ICPA"). *Id*. For Class Plaintiff Davis and the North Carolina Class, the jury found that GM breached the implied warranty of merchantability under North Carolina law. *Id*.  The jury awarded each member of the California, Idaho, and North Carolina Classes the full $2,700 in damages that Class Plaintiffs requested at trial.  *Id*.

Following the trial, GM filed motions seeking decertification, and judgment as a matter of law.  ECF Nos. 592, 594, 606, 607, 642.  The Court denied these motions and affirmed the finality of the jury's verdict. ECF Nos. 634 and 653. Class Plaintiffs then filed a motion for final judgment, prejudgment interest, statutory attorneys' fees, and costs ("Prejudgment Interest Motion") and a separate motion for common fund attorneys' fees and costs, and service awards. ECF Nos. 654 and 655. Upon the Parties' stipulation, the Court ordered that those motions be held in abeyance until June 1, 2025. ECF Nos. 707 and 712.

## III.    SETTLEMENT NEGOTIATIONS

Following the Court's ruling on certain post-trial motions, the Parties met and conferred to explore the potential for resolution of this Action. Joint Decl., ¶ 19. The Parties engaged in arm's-length settlement negotiations over a period of approximately four months and, on January 22,

2025, the Parties mediated before Antonio Piazza of Mediated Negotiations, Inc. Joint Decl., ¶¶ 20-21. As a result of Counsel's efforts, the Parties were successful in reaching a Settlement that provides concrete substantial benefits to an estimated 34,000 members of the certified Classes in California, Idaho, and North Carolina ("Class Members")—approximately $4,419 per Class Member before any payment of Attorneys' Fees and Expenses, Service Awards, and Settlement Administration Expenses.

## IV.   THE SETTLEMENT

The Settlement Agreement filed with the Court, including exhibits, sets forth all of the terms of the Settlement and controls. The Settlement is summarized below.

### A.   The Classes

The Classes are those the Court certified and who had their claims tried to verdict:

**California Class**: All current owners or lessees of a Class Vehicle that was purchased or leased in new condition in the State of California as of May 23, 2022.

**Idaho Class**: All current owners or lessees of a Class Vehicle that was purchased or leased from a GM-authorized dealer in the State of Idaho as of May 23, 2022.

**North Carolina Class**: All current owners or lessees of a Class Vehicle that was purchased or leased in the State of North Carolina as of May 23, 2022.

SA, § II, ¶ 2.4; *see* ECF Nos. 237, 320, and 633.[4]

"Class Vehicle" means 2011-2014 Chevrolet Avalanche, Silverado, Suburban, and Tahoe, and 2011-2014 GMC Sierra, Yukon, and Yukon XL trucks and SUVs with Generation IV Vortec 5300 LC9 engines manufactured on or after February 10, 2011. Any vehicle that has already received adequate piston replacement (i.e., upgraded piston rings) under warranty and at no cost is excluded from the definition of Class Vehicle.

---

[4] Excluded from the Classes are: GM; any affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any successor or assign of GM; and any judge to whom this Action is assigned, and his or her spouse; individuals and/or entities who validly and timely opted-out of the previously certified classes following the Notice of Pendency of Class Action issued in this litigation on or about May 23, 2022; and current or former owners of a Class Vehicle who previously released claims in an individual settlement with GM that would otherwise be covered by the Release in this Action. SA, § II, ¶ 2.4.

1    **B.    The Settlement Benefits**

2        In consideration for the dismissal of the Action with prejudice and a full and complete

3    release of claims by all Class Plaintiffs and Class Members, GM has agreed to provide a Settlement

4    Fund in the amount of $150,000,000 to be distributed proportionately to Class Members, pursuant

5    to the proposed Plan of Allocation, after payment of any Attorneys' Fees and Expenses, Service

6    Awards, Taxes, and Settlement Administration Expenses (the "Net Settlement Fund").

7        As discussed below, in Section VII, Plaintiffs estimate that there are approximately 34,000

8    Class Members. There are 1,611 Idaho Class Members; 5,869 California Class Members, and

9    between 17,310 and 35,610 North Carolina Class Members. Direct Settlement Payments will be

10    sent to each Idaho and California Class Member, as well as the 17,310 North Carolina Class

11    Members who have already been identified. There are a number of Class Vehicles that have been

12    registered in North Carolina by the current or previous owner (but not both), and where it is unclear

13    who owned the Class Vehicle as of May 23, 2022 or whether it was purchased in North Carolina.

14    *See* ECF 670-1 ("P&N maintains a database of 35,610 potential North Carolina Class members

15    that, based on the data provided by S&P Global, meet at least one of the following criteria: (a) the

16    vehicle was a single owner or purchased Certified Pre-Owned from the list of VINs provided by

17    GM (7,396 VINs); (b) either the current or previous owner was registered in North Carolina

18    (18,300 VINs); or (c) the prior owner was registered in North Carolina and the current owner was

19    registered in North Carolina (9,914 VINs)"); *see also* SA, Ex. 2, ("EisnerAmper  Decl.") at ¶ 6.

20    These remaining 18,300 potential North Carolina Class Members will have the opportunity to

21    certify their inclusion in the North Carolina Class by submitting a North Carolina Identification

22    Form. *See* SA, Ex. 5.

23        Settlement Payments for Class Members are dependent on several factors including: (1) the

24    number of identifying and eligible North Carolina Class Members receiving the North Carolina

25    Identification Notice; (2) Settlement Administration Expenses and Taxes; and (3) Attorneys' Fees

26    and Expenses, and Service Awards, as may be awarded by the Court.  For example, if all 18,300

27    potential and as yet unidentified North Carolina Class Members are confirmed to be Class

28    Members, then each Class Member (for each of the Classes) will receive approximately $3,481 less

any amounts for payment of Settlement Administration Expenses, and Attorneys' Fees and Expenses and Service Awards, as may be awarded by the Court. If, as Class Plaintiffs and the Settlement Administrator estimate, approximately fifty percent (50%) of these potential North Carolina Class Members identify themselves and are confirmed to be Class Members (approximately 9,150 Class Members), and there are nearly 34,000 total Class Members (for all states), then each Class Member will receive $4,419, less any amounts for payment of Settlement Administration Expenses and Taxes, Attorneys' Fees and Expenses, and Service Awards. In any event, if the Settlement is approved, Class Members will receive Settlement Payments of at least $2,149, and likely more than the $2,700 verdict amount based on Class Counsel's and the Settlement Administrator' estimates.

### C.    Release and Waiver

In consideration for the Settlement Fund, Class Plaintiffs, and each Class Member, on behalf of themselves and any other legal or natural persons who may claim by, through, or under them, will be subject to the release and waiver of rights pursuant to the Settlement Agreement (SA, § X, ¶ 10.1, 10.2) which provides:

> In consideration of the benefits provided to the Class Members by GM as described in this Settlement Agreement, upon the Final Effective Date, Plaintiffs and the Classes irrevocably release, waive, and discharge any and all past, present, and future disputes claims, causes of action, demands, debts, liens, suits, liabilities, obligations, rights of action, damages, costs, attorneys' fees, losses, or remedies of any kind that have been brought or could have been brought, whether known or unknown, existing or potential, or suspected or unsuspected relating to the alleged Oil Consumption Defect in the Class Vehicles, whether arising under statute (including a state lemon law), rule, regulation, common law or equity, and including, but not limited to, any and all claims, causes of action, rights or entitlements under any federal, state, local or other statute, law, rule and/or regulation, any claims relating to violation of any consumer protection, consumer fraud, unfair business practices or deceptive trade practices laws, any legal or equitable theories, any claims or causes of action in tort, contract, products liability, negligence, fraud, misrepresentation, concealment, consumer protection, restitution, quasi contract, unjust enrichment, express warranty, implied warranty, secret warranty and/or any injuries, losses, damages or remedies of any kind, in law or in equity, under common law, statute, rule or regulation, including, but not limited to, compensatory damages, economic losses or damages, exemplary damages, punitive damages, statutory damages, restitution, recovery of Attorneys' Fees or litigation costs, or any other legal or equitable relief against Releasees, whether or not specifically named herein, asserted or unasserted, and all legal claims of whatever type or description arising out of, that may have arisen as a result of, or which could have been brought based on, any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions,

circumstances or other matters pleaded in complaints filed in the Action related to the alleged Oil Consumption Defect (the "Released Claims"). Further, Class Plaintiffs and all Class Members waive any and all rights under California Civil Code Section 1542, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN TO HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

The Settlement Agreement and the Mutual Release in Section X do not release claims for (i) death, (ii) personal injury, or (iii) damage to tangible property other than a Class Vehicle. The release effected by this Settlement Agreement is intended to be a specific release and not a general release.

SA, § X, ¶¶ 10.1, 10.2. This Release, which will be made part of the Final Order and Judgment, will be attached to the Long Form Notice, and will be available on the Settlement Website (defined in Section VII(A)(2)).  The Released Claims go beyond the implied warranty (for the California and North Carolina Classes) and consumer protection act (for the Idaho Class) claims certified in this case, but that expansion is appropriate because the Settlement provides for a substantial monetary recovery associated with economic loss caused by the alleged Oil Consumption Defect, and the release does not preclude Class Members from bringing claims relating to death, personal injury, or damage to property other than a Class Vehicle.

### D.    The Settlement Administrator and Notice Plan

The Parties propose that EisnerAmper provide Class Notice; administer and make determinations regarding North Carolina Class membership status; calculate and process Settlement Payments; make distributions; and provide all Settlement Administration and other services necessary to implement the Settlement (the "Settlement Administrator"). SA, § II.A., ¶ 2.36; SA, § V. All Settlement Administration Expenses, Taxes, and other costs reasonably incurred by the Settlement Administrator will be paid out of the Settlement Fund. SA, §§ III, ¶ 3.4; VII, ¶ 7.3.

As described in Section VII below, as part of the Settlement, EisnerAmper has designed and will implement a Notice Plan to reach Class Members with clear, plainly stated information about their rights, options, and deadlines in connection with this Settlement. SA § VIII; SA, Ex. 2.

1    **V.    PRELIMINARY APPROVAL IS APPROPRIATE**

2        **A.    The Court Has Already Certified The California, Idaho, and North Carolina**
3             **Classes**

4        At the preliminary approval stage, "[i]f the court has already certified a class, the only

5    information ordinarily necessary is whether the proposed settlement calls for any change in the

6    class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed.

7    R. Civ. P. 23, Adv. Comm. Notes to 2018 Amendment.[5] Here, the Court has already certified the

8    California, Idaho, and North Carolina Classes. ECF Nos. 237, 320 and 633. The proposed

9    Settlement does not call for any changes to these classes, or of the claims, defenses, or issues

10   regarding which certification was granted. Therefore, for the same reasons identified in the Court's

11   Certification Orders, the Classes satisfy adequacy, typicality, numerosity, and commonality

12   under Rule 23(a) and predominance and superiority Rule 23(b)(3). *See, e.g.*, *In re Lyft, Inc. Sec.*

13   *Litig.*, 2022 WL 17740302, at *3 (N.D. Cal. Dec. 16, 2022) (finding no reason to revisit a prior

14   certification order a preliminary settlement approval where the proposed settlement class was

15   identical to that already certified).

         **B.    The Proposed Settlement Merits Preliminary Approval**

16       Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class

17   proposed to be certified for purposes of settlement – may be settled . . . only with the court's

18   approval." Fed. R. Civ. P. 23(e). A district court may approve a settlement agreement "after a

19   hearing and only on finding that it is fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2).

20   The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where

21   complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th

22   Cir. 2008).

23       Approval is a matter within the sound discretion of the district court and requires a two-step

24   process—preliminary approval followed by a later final approval. *Spann v. J.C. Penney Corp.*, 314

25   F.R.D. 312, 319 (C.D. Cal. Jan. 25, 2016). At the preliminary approval stage, the court "evaluate[s]

26   the terms of the settlement to determine whether they are within a range of possible judicial

27   _____

28   [5] Unless otherwise stated all internal quotations, citations and emphasis omitted.

approval." *Id*. In making this decision, district courts must consider whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

        Rule 23(e) largely overlaps with factors the Ninth Circuit has long recognized as relevant to settlement approval:[6] "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011). As set forth below, the Settlement likely satisfies all of the Rule 23(e)(2) factors and Ninth Circuit factors, and should be preliminarily approved as fair, reasonable, and adequate.

        **1.**        **Rule 23(e)(2)(A): Class Plaintiffs and Class Counsel Adequately Represented the Classes**

        Class Plaintiffs and Class Counsel submit that, at final approval, Rule 23(e)(2)(A) will be satisfied because they have diligently represented and pursued the best interests of the Classes as

---

[6] As the comments of the Advisory Committee explain, "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but rather to address inconsistent 'vocabulary' that had arisen among the circuits and 'to focus the court and the lawyers on the core concerns' of the fairness inquiry." Advisory Committee Comments to 2018 Amendments to Rule 23.

1 evident by the results achieved at trial and the superb result of the Settlement.[7] Indeed, the Court

2 has already found Class Plaintiffs and Class Counsel adequate in its Certification Orders. ECF Nos.

3 237 and 320. In the time since the Court certified the California, Idaho, and North Carolina Classes,

4 Class Counsel defended against four separate decertification motions.  ECF Nos. 247, 325, 347,

5 397.  Class Counsel litigated this matter through trial, at which Class Plaintiffs testified. ECF No.

6 573. The jury awarded each California, Idaho, and North Carolina Class Member the full $2,700 in

7 damages that Class Plaintiffs requested at trial. ECF No. 566. Following the trial, GM filed motions

8 seeking decertification, and judgment as a matter of law.  ECF Nos. 592, 594, 606, 607, 642. Class

9 Counsel successfully opposed these motions. ECF Nos. 634 and 653. Class Counsel then moved

10 for prejudgment interest and statutory attorneys' fees, which would have added significantly to the

11 results obtained for the California, Idaho, and North Carolina Classes at trial. ECF No. 654. Finally,

12 Class Counsel successfully resolved this litigation in a manner that provides immediate and

13 substantial cash payments to Class Members and avoids the costs, risks and delay of continued

14 litigation. Joint Decl., ¶¶ 19-28. Class Plaintiffs and Class Counsel have adequately represented the

15 certified Classes.

16 **2.    The Settlement Was Negotiated at Arms' Length by Informed Counsel**

17 Rule 23(e)(2)(B) is satisfied because the Settlement was negotiated at arms' length by

18 informed and capable counsel.

19 After over eight years of litigation, the Parties mediated before a highly experienced

20 mediator, Antonio Piazza of Mediated Negotiations, Inc. Joint Decl., ¶¶ 19-21. Class Counsel have

21 substantial experience serving as counsel in class action litigation, including litigation involving

22 vehicle defects. Joint Decl., ¶¶ 33-34; Joint Decl., Exs. A-B.. As such, Class Counsel were well-

23 positioned to assess the benefits of the Settlement balanced against the strengths and weaknesses

24 of the certified Classes' claims and GM's defenses. *Nat'l Rural Telecomms. Coop. v. DIRECTV,*

25 _____

26 [7] Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "The adequacy inquiry

27 is 'redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively.'" *In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324-GPC-KSC, 2022 WL 9497235, at *4 (S.D. Cal. Oct.

28 14, 2022).

*Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

None of the indicators of collusion or self-dealing recognized by the Ninth Circuit are present in this case. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946-947. This is not a case where a class receives no monetary distribution or a limited monetary distribution; to the contrary, the Settlement provides for significant cash payments. *Id.* Nor is this a case with a "clear sailing" arrangement, where the parties have agreed to payment of attorneys' fees separate from relief to a class. *Id.* Finally, there is no reversion provision in the Settlement; all funds, after payment of costs and fees, will be distributed to the Classes, and/or *cy pres*, pursuant to the proposed Plan of Allocation. SA, §§ III, IV; SA, Ex. 6, Plan of Allocation; Joint Decl., ¶ 28.

### 3. The Relief Provided Is Adequate

As stated above, under Rule 23(e)(2)(c), a court's assessment of whether a proposed settlement is adequate takes into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv). These factors support granting preliminary approval.

#### a. The Benefits of the Settlement, Weighed Against the Costs, Risks, and Delay of Appeal, Favor Preliminary Approval

The Settlement, if approved, confers significant, immediate, monetary benefits to the certified Classes, which strongly supports preliminary approval. The precise number of North Carolina Class members is unknown and will be ascertained during the notice period. However, at this stage, it is understood that there are approximately 34,000 Class members. This includes all Idaho Class members (1,611), all California Class members (5,869), and 17,310 identified North Carolina Class Members. Additional North Carolina Class Members, who may have purchased their vehicle from a non-authorized GM dealership, will be identified during the notice period, but Class Counsel and the Settlement Administrator estimate there are approximately 9,150 such Class Members.

1    As discussed above, in Section IV.B, assuming the Settlement will cover 34,000 Class

2  Members, each Class Member will receive approximately $4,419, less Attorneys' Fees and

3  Expenses, Service Awards, Settlement Administration Expenses and Taxes. This would be $1,700

4  more than the amount ($2,700) the jury awarded each Class Member. While they may receive less

5  than the amount they would have been awarded with full prejudgment interest, as Plaintiffs

6  requested in their Prejudgment Interest Motion,[8] that motion has not been ruled upon and any order

7  on that motion would, like the verdict, be subject to appeal. Class Plaintiffs submit that achieving

8  a Settlement that provides a cash payment in excess of the amount awarded by the jury is an

9  exceptional result.

10    Courts regularly approve settlements in automotive class actions in which class members

11  receive a cash payment, such as this one, finding they provide valuable benefits and merit approval.

12  *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, No. MDL 13-2424-GW(FFMX), 2014 WL

13  12603199, at *2 (C.D. Cal. Aug. 21, 2014) (finding that the settlement amount was a "substantial

14  fraction of the total potential recovery of [the] case"), *aff'd*, 926 F.3d 539 (9th Cir. 2019) (en banc);

15  *In re Navistar MaxxForce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 1:14-CV-10318,

16  2020 WL 2477955, at *3 (N.D. Ill. Jan. 21, 2020) (granting final approval to a settlement that

17  allowed class members the option of accepting a $2,500 cash payment to settle their claims), *aff'd*,

18  990 F.3d 1048 (7th Cir. 2021); *see also Berman v. Gen. Motors LLC*, No. 2:18-CV-14371, 2019

19  WL 6163798, at *1 (S.D. Fla. Nov. 18, 2019) (granting final approval of a settlement that provided

20  reimbursement for class members who paid to repair a defect out of pocket).

21    Settlements resolve any inherent uncertainty on the merits, and are therefore strongly

22  favored by the courts, particularly in class actions. *In re Syncor ERISA Litig.*, 516 F.3d at 1101

23  (recognizing a "strong judicial policy that favors settlements, particularly where complex class

24  action litigation is concerned."); *accord Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

25

26  [8] As set forth in the Prejudgment Interest Motion, the amount of prejudgment interest would depend
on the date of first registration, but would amount to approximately $5,202 for an average North
27  Carolina Class Member, $6,453 for an average Idaho Class Member, and $4,889 for an average
California Class Member. ECF No. 654 at 5.
28

Cir. 1992). As discussed above, Class Plaintiffs and Class Counsel have overcome significant challenges in this litigation. Although Class Plaintiffs and Class Counsel are confident in their positions, if this litigation were to proceed, GM's likely appeal to the Ninth Circuit provides an opportunity to challenge each one of these successes and creates risk of an adverse decision on appeal, and ensures additional costs and delay. These risks, costs, and delay weigh strongly in favor of settlement approval. Indeed, the Classes gain little by prolonging this litigation, as this Settlement provides Class Members with the full amount of damages Plaintiffs sought at trial, plus a substantial amount of interest. *See Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now."); *see also Brightk Consulting Inc. v. BMW of N. Am., LLC*, No. SACV2102063CJCJDEX, 2023 WL 2347446, at *7 (C.D. Cal. Jan. 3, 2023) ("The Settlement Agreement offers Class Members an opportunity to obtain relief at an early stage in the litigation, eliminating the risks posed by proceeding further in the action. It ensures that Class Members receive a recovery that is certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all."); *Curtis-Bauer v. Morgan Stanley & Co.*, No. C-06-3903-THE, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the [] class.").

Ultimately, given the significant costs, risks, and delay of appeal—including the risk the Ninth Circuit could decertify any of the certified Classes or overturn the verdict—and the significant benefits Class Members can receive more quickly in this Settlement, this Settlement is more than adequate and represents a hard-fought victory for the certified Classes. Joint Decl., ¶¶ 23, 35-36 (expressing opinion based on experience regarding Settlement).

### b. The Proposed Method of Distribution to Class Members Is Equitable and Effective

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, the proposed method of distributing relief will be highly effective, as it involves sending checks

directly to Class Members. Plaintiffs have selected a highly experienced Settlement Administrator to oversee this process—EisnerAmper. SA, §§ II, ¶ 2.36; IV; SA, Ex. 2, ¶¶ 3-4. EisnerAmper (f/k/a Postlethwaite & Netterville, APAC) served as class notice administrator at the class notice stage, and is highly familiar with this Action, the certified Classes, and the available relief. As discussed in Section VII(A)(1), EisnerAmper currently has contact information for all Idaho and California Class Members, and many North Carolina Class Members. EisnerAmper will send notice of the Settlement to all of the above, as well as all other potential North Carolina Class Members. Unidentified potential North Carolina Class Members will be able to self-identify as Class Members by affirming and attesting under oath that they are members of the Classes.[9]

Within sixty (60 days) of the Final Effective Date of the Settlement, EisnerAmper will calculate Settlement Payments and distribute checks by mail, for equal amounts, to all identified Class Members in accordance with the Plan of Allocation. SA, Ex. 6. If any Class Members have not cashed or deposited their checks after 90 days, EisnerAmper will attempt to contact them, and if successful, will reissue them checks. Any remaining funds associated with uncashed or undeposited checks will then be distributed, in equal amounts, to those Class Members who cashed or deposited their checks pursuant to the Plan of Allocation. *Id.* In other words, EisnerAmper will work to ensure that any unclaimed funds from the initial distribution are redistributed to Class Members. Any residual funds of less than $500,000 in the Settlement Fund will be distributed *cy pres* to the University of Michigan Transportation Research Institute. None of the Net Settlement Fund will revert back to GM or be paid to Class Counsel.

<b>c.    The Proposed Attorneys' Fees, Costs and Class Plaintiff Service Awards Support Preliminary Approval</b>

The next consideration for adequacy of relief is the terms of the Settlement regarding attorneys' fees. Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel did not include any provision in the

---

[9] Because of EisnerAmper's involvement in this litigation for over three years (*see* ECF No. 396, Motion for Order Approving Class Notice), the quality of their work hereto, and because the anticipated Settlement Administration Expenses provided by EisnerAmper are reasonable in Class Counsel's experience, Class Counsel has determined that the accuracy and efficiency gained by choosing EisnerAmper outweighs any benefits that might be gained from engaging in an open selection process for Settlement Administrator.

1    Settlement Agreement requiring separate payment of attorneys' fees, apart from what was awarded

2    to the Classes. Nor does the Settlement Agreement provide that any fees not awarded will revert to

3    GM rather they remain in the fund. Thus, none of the concerns recognized by the Ninth Circuit in

4    *Bluetooth* regarding attorneys' fees are present in this case. *In re Bluetooth Headset Prods. Liab.*

5    *Litig.*, 654 F.3d at 946-947.

6         Class Counsel intends to seek an award of Attorneys' Fees and Expenses not to exceed 38%

7    of the Settlement Fund, and Service Awards of $30,000 each for the Class Plaintiffs to be paid out

8    of the Settlement Fund. Joint Decl., ¶ 29. As detailed in Plaintiffs' prior motion for attorneys' fees

9    and costs and reply in support, (ECF Nos. 655, 675, 675-1), as of January 31, 2024, Class Counsel

10   expended 21,528.9 hours litigating this Action, resulting in a total lodestar of $23,492,983.20. ECF

11   675 at 2-5; ECF 675-1, ¶¶ 3-6. Additionally, Class Counsel incurred $1,113,927.06 in litigation

12   expenses. ECF 675-1, ¶¶ 12. For the reasons stated herein and in Plaintiffs' prior submissions, (ECF

13   Nos. 655, 675, 675-1), Class Counsel's planned request for 38% of the $150,000,000 Settlement

14   Fund is more than reasonable. Prior to the final approval hearing, Class Counsel wl fully brief the

15   reasonableness of its planned request and provide the Court with updated total lodestar and

16   expenses in connection with its motion for Attorneys' Fees and Expenses and Service Awards.

17        This Court will determine the appropriate amount to award to Class Counsel, and, again, if

18   the Court chooses to award less than the requested amount, any unawarded Attorneys' Fees and

19   Expenses will revert to the certified Classes, not GM. In other words, to the extent that the Court

20   later finds any aspect of Attorneys' Fees and Expenses unsupported or unwarranted, the Classes

21   alone will benefit from that determination. The undersigned respectfully stress, however, that they

22   will demonstrate to this Court that their requested fees and expenses are fair and consistent with

23   Ninth Circuit precedent based on the exceptional Settlement and the significant amount of work,

24   and money spent, by Class Counsel to litigate this case and negotiate this Settlement. *See, e.g.*, *In*

25   *re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 606,

26   614–616 (9th Cir. 2018) (affirming final approval to a $10 billion settlement relating to

27   manufacturers' use of emissions "defeat devices" and approving $333 million in attorneys' fees);

28   *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 2023 WL 9227002, at *4–8 (C.D. Cal.

Nov. 28, 2023) (approving an aggregate fee award of $25,472,730.40, which represented 32.4% of a $78.5 million pre-trial settlement in a vehicle defect case). Notice to the certified Classes will advise Class Members of Plaintiffs' planned requests and advise them of the procedures to comment on or object to the fee petition before Final Approval. SA, §§ IV, XII.

### d.    There Are No Other Agreements Between The Parties

The substantive terms of the Settlement are set forth in the Settlement Agreement, and the agreed upon language of the proposed orders and notices are set forth in the exhibits to the Settlement Agreement. Separate and apart from these documents, there are no agreements that affect the relief provided to the certified Classes or compensation to be provided to attorneys. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). Class Counsel and GM have also reached agreements in principle to resolve the pending, non-certified, individual claims in this action and the pending, non-certified, individual claims in the related cases *Vita v. General Motors LLC*, No. 2:20-CV-01032 (E.D.N.Y); *Airko Inc. v. General Motors LLC*, No. 1:20-CV-02638 (N.D. Ohio); and *Tucker v. General Motors LLC*, No. !1:20-CV-00254 (E.D. Mo.),[10] and to resolve *Hampton v. General Motors LLC*, No. 6:21-CV-00250 (E.D. Okla.), in which an Oklahoma class has been certified, for $25,000,000[11]. None of these agreements trade "possible advantages for the [Classes] in return for advantages for others." Fed. R. Civ. P. 23, Adv. Comm. Notes to 2003 Amendment.

### 4.    The Proposal Treats Class Members Fairly

The final element for consideration under Rule 23(e) is whether a proposed settlement treats class members equitably in relation to one another. Fed. R. Civ. P. 23(e)(2)(D). This Settlement does: all Class Members will be entitled to an equal portion of the $150,000,000 Settlement Fund after payment of fees and costs. *See* Ex. 6, proposed Plan of Allocation. This is consistent with the jury having awarded each Class Member the same $2,700 in damages. Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Certified

---

[10] The value of the individual settlements, inclusive of all costs, is $167,000.

[11] As set forth in the Settlement Agreement, and consistent with the Parties' intent to resolve all the pending related actions, the Final Effective Date for this Settlement occurs after final approval and exhaustion of all appeals in connection with both this Settlement and the class settlement in *Hampton*.

1    Class Members.

2    VI.    **THE COURT SHOULD AFFIRM ITS APPOINTMENT OF CLASS COUNSEL PURSUANT TO RULE 23(G)**

3

4            Rule 23(g) provides that "a court that certifies a class must appoint class counsel" taking

5    into consideration their experience, knowledge, resources, and work on the case. At class

6    certification, the Court appointed Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. ("Beasley

7    Allen") and DiCello Levitt LLP ("DiCello Levitt") as Class Counsel. *See e.g.,* ECF 237; ECF 320.

8    Both Beasley Allen and DiCello Levitt are highly skilled and experienced in complex litigation,

9    and have successfully led a multitude of consumer class actions concerning fraud,

10   misrepresentation and unfair practices. *See* Joint Decl. at ¶¶ 33-34. Class Counsel have led this case

11   from the investigation phase, through trial and settlement. *Id.*, ¶¶ 5-16, 35. Plaintiffs respectfully

12   submit Class Counsel satisfy the adequacy requirements of Rule 23(g), the Court should affirm its

13   appointment of Class Counsel pursuant to Rule 23(g).

14   VII.   **THE COURT SHOULD APPROVE THE NOTICE PLAN AND SCHEDULE A FINAL APPROVAL HEARING**

15          A.    **The Court Should Authorize Notice to the Classes**

16          Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class

17   members who would be bound by the proposal." The rule expressly approves of notice through

18   "United States mail, electronic means, or other appropriate means." *Id*. Procedural due process

19   requires that the "[n]otice [must be] reasonably calculated, under all circumstances, to apprise

20   interested parties of the pendency of the action and afford them an opportunity to present their

21   objections." *EEOC v. Pan American World Airways, Inc*., 897 F.2d 1499, 1508 (9th Cir. 1990).

22   "[N]either Rule 23 nor the Due Process Clause requires actual notice to each individual class

23   member." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (affirming class

24   certification). "[N]otice is adequate if it may be understood by the average class member." *Spann*,

25   314 F.R.D. at 330.

26          The adequacy of a class notice program is measured by whether the means employed to

27   distribute the notice is reasonably calculated to apprise the class of the pendency of the action, the

28   proposed settlement and the class members' rights to object. *See Eisen v. Carlisle & Jacquelin*, 417

U.S. 156, 173 (1974); *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which [courts] measure the sufficiency of notices in class action proceedings is one of reasonableness.").[12] Here, the proposed Notice Plan meets all applicable requirements.

The Settlement provides for a robust Notice Plan designed by EisnerAmper to provide Class Members with clear, plainly stated information about their rights, options and deadlines in connection with this Settlement. SA, Ex. 2.[13] EisnerAmper has more than 70 years of collective, relevant experience and has been directly responsible for the design and implementation of hundreds of class action notice programs, including some of the largest and most complex notice programs ever implemented in both the United States and Canada. *See* SA, Ex. 2 ("EisnerAmper Decl.") at ¶¶ 3-4. Most significantly, EisnerAmper (f/k/a Postlethwaite & Netterville, APAC) conducted the class notice provided in this case, prior to trial, in 2022. (*see* ECF No. 396, Motion for Order Approving Class Notice)

The Notice Plan provides for mailed notice to all known and potential Class Members, as well as email notice and text notice where email addresses and phone numbers are available, an established Settlement Website, and a toll-free telephone number. *See* SA, Ex. 2 ("EisnerAmper Decl.") at ¶¶ 13-17; SA, § VIII. All these avenues for notice have been approved by courts as satisfying due process. *See, e.g., Charalambous v. Liberty Mut. Ins. Co.,* No. 22-cv-00216-EMC, 2024 WL 1586701, at *3 (N.D. Cal. Mar. 15, 2024) (approving a notice plan that provided for direct notice via mail, and direct notice via email where email addresses were available); *In re MyFord Touch Consumer Litig.,* No. 13-CV-03072-EMC, 2019 WL 1411510, at *14 (N.D. Cal. Mar. 28, 2019) (approving a notice plan that provided for direct notice via mail, direct notice via email where email addresses were available, and the establishment of a settlement website). The

---

[12] At the class certification stage of this litigation, the Long Form Notice explained to Class Members that, "[i]f [they] [did] not ask to be excluded from the Class [then], [they] [would] not have the right to seek exclusion later, such as at the time of settlement or judgment." ECF No. 396-5. Where the class certification notice does not allow a second opt-out opportunity, Due Process does not compel one. *Low v. Trump Univ., LLC*, 881 F.3d at 1121–22.

[13] The forms of notice detailed in the Settlement Agreement, § VIII, are written in simple terminology, are readily understandable, and comply with the Federal Judicial Center's illustrative class action notices. *See https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction*

1  costs of the Notice Plan will be paid from the Settlement Fund. SA, § IV.

2  Plaintiffs respectfully request that the Court appoint EisnerAmper as Settlement

3  Administrator, approve the Notice Plan, and order dissemination of Class Notice, as detailed below.

4  ### 1.    Class Notice

5  The Settlement Administrator will send the Class Notice, which are the Direct Payment

6  Notice and North Carolina Identification Notice, substantially in the form of Exhibits 4 and 5,

7  attached to the Settlement Agreement, by mail, to all known and potential Class Members as

8  identified through the means described below, with addresses confirmed through the United States

9  Post Office's National Change of Address database and skip-tracing. SA, § VIII, ¶¶ 8.3-8.7; SA,

10  Ex. 2. If any Class Notices are returned by the United States Post Office as undeliverable, the

11  Settlement Administrator will make appropriate efforts to obtain current addresses and resend them.

12  *Id.* The Settlement Administrator will also send the Class Notice via email ("Email Notice") to all

13  facially valid email addresses that are available for known potential Class Members, (*Id.*, ¶¶ 8.3,

14  8.8), and, for the North Carolina Identification Class, notice also will be sent via text message where

15  a valid cell phone number is available ("Text Message Notice").

16  The Class Notice advises recipients that a proposed class action settlement has been reached

17  in this action, and informs them that they are Class Members, briefly explains the Settlement terms

18  and Class Members' options, and directs recipients, in English and Spanish, to the Settlement

19  Website where they can get additional information regarding the Settlement, their rights, and

20  important deadlines.SA, § VIII, ¶ 8.4; SA, Exs. 3, 4, 5.

21  ### a.    The California Class

22  Vehicle registration data has allowed for the identification of all California Class Members

23  so that notice, and eventually checks, can be sent to them directly. The California Class includes

24  people who purchased a new Class Vehicle in California and owned that vehicle as of May 23,

25  2022. SA § II, ¶ 2.4; ECF No. 633 at 13. At the class notice phase of the case, GM provided Vehicle

26  Identification Numbers ("VINs") for all Class Vehicles sold new in California. ECF No. 396 at 3.

27  Polk Automotive Solutions ("Polk"), which maintains vehicle registration data, provided the

28  identity of registrants for these Class Vehicles. *Id.* Plaintiffs, through EisnerAmper, asked Polk to

provide complete registration data (i.e., the entire registration history) for all Class Vehicles sold from authorized GM dealerships in California, which allowed EisnerAmper to confirm that 5,869 of these Class Vehicle owners remained Class Members as of May 23, 2022. SA, Ex. 2, EisnerAmper Decl., ¶ 6. After EisnerAmper performs a check for updated addresses, it can now send the Class Members notice of the Settlement. *Id*., ¶ 12.

### b.    The Idaho Class

The Idaho Class includes Class Vehicle owners who purchased their Class Vehicle from a GM authorized dealer in Idaho and were a current owner as of May 23, 2022. SA § II, ¶ 2.4; ECF No. 633 at 13. At the class notice phase of the case, GM provided VINs for 5,049 Class Vehicles sold from an authorized dealership in Idaho. ECF No. 396 at 3. Plaintiffs, through EisnerAmper, asked Polk to provide complete registration data (i.e., the entire registration history) for all Class Vehicles sold from authorized GM dealerships in Idaho, which allowed EisnerAmper to confirm that 1,611 of these vehicle owners remained Class Members as of May 23, 2022. ECF No. 633; SA, Ex. 2, EisnerAmper  Decl., ¶ 6. After EisnerAmper  performs a check for updated addresses, it can send the Class Members notice of the Settlement. *Id.*, ¶ 12.

### c.    The North Carolina Class

The North Carolina Class includes all current owners or lessees who purchased a Class Vehicle in North Carolina and were the current owner or lessee as of May 23, 2022. SA, § II, ¶ 2.4; ECF No. 633 at 6–8. Unlike the California and Idaho Classes, the North Carolina Class includes people who did not purchase their Class Vehicles from a GM dealership. However, as discussed below, it is possible to send Class Notice, and eventually Settlement Payments, to all of the known and potential North Carolina Class Members.

First, for Class Vehicles sold by an authorized GM dealership (whether new or used) in North Carolina, the process was the same as for California and Idaho. With complete registration data from Polk, Plaintiffs were able to identify those 7,396 Class Vehicles that have had only one registrant until May 23, 2022, since the purchase from the GM dealership. SA, Ex. 2, EisnerAmper Decl., ¶¶ 6, 11. These registrants are all in the North Carolina Class, and after EisnerAmper performs a check for updated addresses, it can send these Class Members notice of the Settlement.

1    *Id.*, ¶¶ 6, 11-12.

2          Second, for Class Vehicles not sold by an authorized GM dealership, Plaintiffs, through

3    EisnerAmper, were able to identify those 9,914 Class Vehicles whose prior owner was registered

4    in North Carolina and whose current owner is also registered in North Carolina. These registrants

5    are all in the North Carolina Class, and after EisnerAmper performs a check for updated addresses,

6    it can send these Class Members notice of the Settlement. SA, Ex. 2, EisnerAmper Decl., ¶¶ 6, 11-

7    12.

8          Third, EisnerAmper has identified 18,300 Class Vehicles where the current or previous

9    owner (but not both) was registered in North Carolina, and where it is unclear who owned the Class

10   Vehicle as of May 23, 2022 or whether it was purchased in North Carolina. After EisnerAmper

11   performs a check for updated addresses, it can send the owners of these vehicles, as of May 23,

12   2022, notice that they are potential North Carolina Class Members. SA, Ex. 2, EisnerAmper Decl.,

13   ¶ 6. These potential North Carolina Class Members will be able to self-identify through a North

14   Carolina Class Member Identification Form, affirming and attesting under oath that they are

15   members of the Class. *Id.*, ¶¶ 11-12.

16                    **2.      Settlement Website**

17         The Settlement Administrator will also set up a website that will provide access to the Long

18   Form Notice (in English and Spanish) (SA, Ex. 3), the Direct Payment Notice (SA, Ex. 4), the

19   North Carolina Class Member Identification Form (SA, Ex. 5), and other documents relevant to the

20   Settlement (the "Settlement Website"). SA, § VIII. The Settlement Website will set forth all

21   applicable deadlines and will provide information about the proper methods for submitting the

22   North Carolina Class Member Identification Form. *Id.,* § VIII, ¶ 8.9. The URL address for the

23   Settlement Website and the toll-free phone number will be provided on the published notices as

24   well as the Class Notices. The digital notice campaign, and the updated website, will inform Class

25   Members that there is a cut-off date to notify EisnerAmper that they are North Carolina Class

26   Members.

27         EisnerAmper will also establish and maintain a 24-hour, toll-free telephone line with

28   information about the Settlement; a dedicated email address to receive and respond to Class

1   Member inquiries; and a post office box to receive Class Member correspondence, North Carolina

2   Class Member Identification Forms, and objections.

3                           **3.      Contents of the Long Form Notice**

4          The Long Form Notice shall be in substantially the form of Exhibit 3 to the Settlement

5   Agreement. It will be available on the Settlement Website (in English and Spanish) and upon

6   request by first-class mail. SA, § VIII. It is clear and in plain language and addresses all requisite

7   matters. It includes information such as: the case caption; a clear description of the nature of the

8   Action; the definition of the Classes; the general substance of the Classes' claims and issues; the

9   main events in the litigation; a description of the Settlement; a statement of the Release; contact

10  information for Class Counsel; the maximum amount of Attorneys' Fees and Expenses and Service

11  Awards that may be sought at final approval; the procedures and deadlines for objecting to the

12  Settlement; the Final Approval Hearing date; and how to obtain additional information.

13         All of these methods for notice have been approved by courts as satisfying due process. *See,*

14  *e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2nd Cir. 2005) (approving notice

15  sent via direct mail and publication); *In re HIV Antitrust Litig.*, No. 19-CV-02573-EMC, 2023 WL

16  11897610, at *2 (N.D. Cal. Sept. 25, 2023) (approving settlement that provided direct notice to

17  known class members as well as phone and email notice); *Newton v. Am. Debt Servs., Inc.*, No.

18  3:11-CV-03228 EMC, 2016 WL 7743686, at *7 (N.D. Cal. Jan. 15, 2016) (approving settlement

19  and class notice which included direct notice to known class members and email notice where an

20  email address was available). Taken as a whole, the Notice Plan exceeds all applicable standards.

21         **B.      The Court Should Set Settlement Deadlines and Schedule a Final Approval
                    Hearing**

22

23         In connection with preliminary approval, the Court must schedule the Final Approval

24  Hearing and set dates for other key events including mailing and publishing notice, objecting to the

25  Settlement, requesting exclusion, and submitting papers in support of final approval. Plaintiffs

26  propose the following schedule:

27

28

| EVENT | DEADLINES |
|---|---|
| Commencement of Class Notice Plan | On the date of entry of the Preliminary Approval Order. |
| GM's Counsel shall provide, to the extent it has not already done so, a list of VINs for the Class Vehicles to the Settlement Administrator | Not later than seven (7) days after entry of the Preliminary Approval Order |
| Class Notice to be Substantially Completed | Thirty (30) days after the issuance of the Preliminary Approval Order |
| Plaintiffs' Motion, Memorandum of Law and Other Materials in Support of their Requested Award of Attorneys' Fees, Reimbursement of Expenses, and Request for Class Plaintiffs' Service Awards to be Filed with the Court | Thirty (30) days after issuance of the Preliminary Approval Order |
| Plaintiffs' Motion, Memoranda of Law, and Other Materials in Support of Final Approval to be Filed with the Court | Thirty (30) days after the issuance of the Preliminary Approval Order |
| Deadline for Receipt by the Clerk of All Objections Mailed by Class Members | Sixty-five (65) days after the issuance of the Preliminary Approval Order |
| Deadline for filing Notice of Intent to Appear at Final Approval Hearing by Class Members and/or their Personal Attorneys | Sixty-five (65) days after the issuance of the Preliminary Approval Order |
| Deadline for North Carolina Class Members to submit North Carolina Class Member Identification Forms. | Sixty-five (65) days after the issuance of the Preliminary Approval Order |
| Any submission by the Parties concerning Final Approval of Settlement and Responses to any objections | Seventy (70) days after the issuance of the Preliminary Approval Order |
| Settlement Administrator Shall File the Results of the Dissemination of the Notice with the Court | No later than Twenty (20) days before the Final Approval Hearing |
| Final Approval Hearing | August 21, 2025, at 1:30 p.m. - |

## VIII.  CONCLUSION

For all the above-stated reasons, Plaintiffs respectfully request that the Motion be granted and the Court enter an order, substantially in the form of  Exhibit 1 to the Settlement Agreement: (a) granting preliminary approval of the Settlement; (b) approving the form and content of, and

1    directing the distribution of, the proposed Class Notice, annexed to the Settlement Agreement as

2    Exhibits 3, 4, and 5; (c) authorizing and directing the Parties to retain EisnerAmper as the

3    Settlement Administrator; (e) confirming the appointment of Beasley, Allen, Crow, Methvin, Portis

4    & Miles, P.C. and DiCello Levitt, LLP as Class Counsel; (f) appointing the proposed Class

5    Plaintiffs as Class Representatives; and (d) setting a date and procedures for the Final Approval

6    Hearing and setting related deadlines.

7

8

9        DATED: April 15, 2025                          Respectfully submitted,

10                                                       /s/ *H. Clay Barnett, III*
                                                         H. Clay Barnett, III (*pro hac vice*)
11                                                       W. Daniel "Dee" Miles, III (*pro hac vice*)
                                                         Rebecca D. Gilliland (*pro hac vice*)
12                                                       J. Mitch Williams (*pro hac vice*)
                                                         Dylan T. Martin (*pro hac vice*)
13                                                       **BEASLEY, ALLEN, CROW,**
                                                         **METHVIN, PORTIS & MILES, P.C.**
14                                                       272 Commerce Street
15                                                       Montgomery, Alabama 36104
                                                         Telephone: (334) 269-2343
16                                                       Dee.Miles@beasleyallen.com
                                                         Clay.Barnett@beasleyallen.com
17                                                       Mitch.Williams@beasleyallen.com
                                                         Rebecca.Gilliland@beasleyallen.com
18                                                       Dylan.Martin@beasleyallen.com

19
                                                         /s/ *Adam J. Levitt*
20                                                       Adam J. Levitt (*pro hac vice*)
                                                         John E. Tangren (*pro hac vice*)
21                                                       Daniel R. Ferri (*pro hac vice*)
22                                                       **DICELLO LEVITT LLP**
                                                         Ten North Dearborn Street, Sixth Floor
23                                                       Chicago, Illinois 60602
                                                         Telephone: (312) 214-7900
24                                                       alevitt@dicellolevitt.com
                                                         jtangren@dicellolevitt.com
25                                                       dferri@dicellolevitt.com

26
                                                         Mark Abramowitz (*pro hac vice*)
27                                                       **DICELLO LEVITT LLP**
                                                         7556 Mentor Avenue
28

1

2

Mentor, Ohio 44060
Telephone: 440-953-8888
mabramowitz@dicellolevitt.com

3

4

*Class Counsel*

5

6

Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
**ANDRUS ANDERSON LLP**

7

155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400

8

jennie@andrusanderson.com
lori@andrusanderson.com

9

10

Anthony J. Garcia (pro hac vice)
**AG LAW P.A.**

11

3602 West Euclid Avenue
Tampa, Florida 33629
Telephone: 813-259-9555

12

anthony@aglawinc.com

13

14

*Additional Counsel for Plaintiffs and the
Classes*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ECF CERTIFICATION**

2      Pursuant to Civil L.R. 5-1(i)(3), the filing attorney attests that he has obtained concurrence

3  regarding the filing of this document from the signatories above.

4

5  Date: April 16, 2025                              By:     */s/ H. Clay Barnett, III*

6                                                         H. Clay Barnett, III

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28