1    H. Clay Barnett, III (*pro hac vice*)
2    **BEASLEY, ALLEN, CROW,**
     **METHVIN, PORTIS & MILES, P.C.**
3    272 Commerce Street
     Montgomery, Alabama 36104
4    Telephone: (334) 269-2343
     clay.barnett@beasleyallen.com

5    Adam J. Levitt (*pro hac vice*)
6    **DICELLO LEVITT LLP**
     Ten North Dearborn Street, Sixth Floor
7    Chicago, Illinois 60602
     Telephone: (312) 214-7900
8    alevitt@dicellolevitt.com

9    *Class Counsel*
     *(additional counsel appear on signature page)*

10                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**
11                        **SAN FRANCISCO DIVISION**

12
     RAUL SIQUEIROS, *et al.*,            Case No.: 16-cv-07244-EMC
13
               Plaintiffs,
14                                         **PLAINTIFFS' NOTICE OF MOTION,**
                                           **MOTION, AND MEMORANDUM OF**
        v.                                 **POINTS AND AUTHORITIES IN**
15                                         **SUPPORT OF PLAINTIFFS' MOTION**
                                           **FOR FINAL APPROVAL OF CLASS**
     GENERAL MOTORS LLC,                   **ACTION SETTLEMENT**
16
               Defendant.
17                                         Judge: Hon. Edward M. Chen
                                           Hearing Date: October 2, 2025
18                                         Time of Hearing: 1:30 p.m.

19

20

21

22

23

24

25

26

27

28
                                                    Case No. 16-cv-07244-EMC
     PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## **NOTICE OF MOTION AND MOTION**

2

TO THIS COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on October 2, 2025 at 1:30 pm, in the United States District

4

Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue,

5

San Francisco, California, Courtroom 5, 17th Floor, before the Honorable Edward M. Chen,

6

Plaintiffs will, and hereby do, move this Court, pursuant to Federal Rule of Civil Procedure 23 for

7

an entry of order in the form prescribed in the proposed Final Order.

8

This Motion is based on this Notice of Motion and Motion, the accompanying

9

Memorandum of Points and Authorities, the accompanying Joint Declaration of Class Counsel, the

10

Settlement Agreement and the exhibits thereto, and the pleadings filed in the Action.

11

12

Dated: July 7, 2025

*/s/ Adam J. Levitt*
Adam J. Levitt (*pro hac vice*)

13

John E. Tangren (*pro hac vice*)
Daniel R. Ferri (*pro hac vice*)

14

**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor

15

Chicago, Illinois 60602
Telephone: (312) 214-7900

16

alevitt@dicellolevitt.com
jtangren@dicellolevitt.com

17

dferri@dicellolevitt.com

18

*/s/ H. Clay Barnett, III*

19

H. Clay Barnett, III (*pro hac vice*)
W. Daniel "Dee" Miles, III (*pro hac vice*)

20

Rebecca D. Gilliland (*pro hac vice*)
J. Mitch Williams (*pro hac vice*)

21

Dylan T. Martin (*pro hac vice*)

22

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**

23

272 Commerce Street
Montgomery, Alabama 36104

24

Telephone: (334) 269-2343
Dee.Miles@beasleyallen.com

25

Clay.Barnett@beasleyallen.com

26

Mitch.Williams@beasleyallen.com
Rebecca.Gilliland@beasleyallen.com

27

Dylan.Martin@beasleyallen.com

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark Abramowitz (*pro hac vice*)
**DICELLO LEVITT LLP**
7556 Mentor Avenue
Mentor, Ohio  44060
Telephone: 440-953-8888
mabramowitz@dicellolevitt.com

*Class Counsel*

Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: (415) 986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Anthony J. Garcia (*pro hac vice*)
**AG LAW P.A.**
3602 West Euclid Avenue
Tampa, Florida 33629
Telephone: (813) 259-9555
anthony@aglawinc.com

*Additional Counsel for Plaintiffs and the Classes*

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

**TABLE OF CONTENTS**

2    I.    BACKGROUND ................................................................................................. 1

3    II.   THE SETTLEMENT ......................................................................................... 3

4          A.    The Settlement Benefits ........................................................................ 3

5          B.    The Court-Approved Notice Plan Satisfies Due Process and Rule 23. ................. 5

6    III.  STANDARDS FOR FINAL APPROVAL .......................................................... 7

7    IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............................. 9

8          A.    Class Certification and Appointment of Class Counsel and Class Plaintiffs .......... 9

9          B.    The Settlement Is the Product of Good Faith, Arms' Length Negotiations
                 by Informed Counsel ........................................................................... 10

10         C.    The Relief Provided Is Adequate ......................................................... 11

11               1.    The Benefits of the Settlement, Weighed Against the Costs, Risks,
                       and Delay of Appeal, Favor Final Approval ........................................ 11

12               2.    The Proposed Method of Distribution to Class Members Is
                       Equitable and Effective .......................................................... 13

13               3.    The Proposed Attorneys' Fees, Costs and Class Plaintiff Service
                       Awards Support Final Approval .................................................. 14

14               4.    There Are No Other Agreements Between The Parties .......................... 15

15         D.    The Proposal Treats Class Members Fairly ............................................ 15

16         E.    The Views Of Experienced Counsel And Reaction Of Class Members ............... 16

17   V.    CONCLUSION ................................................................................................ 17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Airko Inc. v. General Motors LLC*,
5     No. 1:20-CV-02638 (N.D. Ohio) ......................................................................... 15

6     *Bellinghausen v. Tractor Supply Co.*,
      306 F.R.D. 245 (N.D. Cal. 2015) .......................................................................... 11
7

*Berman v. Gen. Motors LLC*,
8     2019 WL 6163798 (S.D. Fla. Nov. 18, 2019) ....................................................... 12

9     *In re Bluetooth Headset Prods. Liab. Litig.*,
      654 F.3d 935 (9th Cir. 2011) ................................................................................... 9
10

11     *Brightk Consulting Inc. v. BMW of N. Am., LLC*,
       2023 WL 2347446 (C.D. Cal. Jan. 3, 2023) .......................................................... 13
12

13     *Chambers v. Whirlpool Corp.*,
       214 F. Supp. 3d 877 (C.D. Cal. 2016) ..................................................................... 9
14

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products*
15     *Liability Litig.*
       , 2019 WL 2554232 (N. D. Cal. May 3, 2019) (Chen, J.) ........................................ 9
16

17     *Churchill Vill., LLC v. Gen. Elec.*,
       361 F.3d 566 (9th Cir. 2004) ................................................................................. 17
18

19     *Class Plaintiffs v. City of Seattle*,
       955 F.2d 1268 (9th Cir. 1992) ............................................................................... 12

20     *Curtis-Bauer v. Morgan Stanley & Co.*,
       2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ....................................................... 13
21

22     *Forsyth v. HP Inc.*,
       2024 WL 1354551 (N.D. Cal. Mar. 29, 2024) ...................................................... 16
23

*Franco v. E-3 Sys.*,
24     2021 WL 2333851 (N.D. Cal. June 8, 2021) ........................................................... 9

25     *Garner v. State Farm Mut. Auto. Ins. Co.*,
       2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................... 10, 16, 17
26

27     *Hampton v. General Motors LLC*,
       No. 6:21-CV-00250 (E.D. Okla.) .......................................................................... 15

28

iv     Case No. 16-cv-07244-EMC

*In re Hyundai & Kia Fuel Econ. Litig.*,
    2014 WL 12603199 (C.D. Cal. Aug. 21, 2014), *aff'd*, 926 F.3d 539 (9th Cir.
    2019) (*en banc*) ........................................................................................................... 12

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ........................................................................................... 10

*In re Lyft, Inc. Sec. Litig.*,
    2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) .................................................................. 9

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................................................... 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................... 16

*In re Navistar MaxxForce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    2020 WL 2477955 (N.D. Ill. Jan. 21, 2020), *aff'd*, 990 F.3d 1048 (7th Cir.
    2021) ................................................................................................................................. 12

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................................................... 17

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................................... 5

*Reynolds v. Beneficial Nat. Bank*,
    288 F.3d 277 (7th Cir. 2002) ........................................................................................... 13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................................... 16

*Satchell v. Fed. Exp. Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr.13, 2007) ................................................................... 11

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. Jan. 25, 2016) ......................................................................... 8

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ..................................................................................... 8, 12

*Tennille v. Western Union Co.*,
    785 F.3d 422 (10th Cir. 2015) ........................................................................................... 6

*Tucker v. General Motors LLC*,
    No. 1:20-CV-00254 (E.D. Mo.) ....................................................................................... 15

*Vita v. General Motors LLC*,
    No. 2:20-CV-01032 (E.D.N.Y) ....................................................................................... 15

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
   2023 WL 9227002 (C.D. Cal. Nov. 28, 2023) .......................................................................... 14

**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................................................... 2, 6, 7, 15

Fed. R. Civ. P. 23(a) ............................................................................................................... 9

Fed. R. Civ. P. 23(b)(3) .......................................................................................................... 9

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................... 7

Fed. R. Civ. P. 23(e) .................................................................................................. 1, 7, 8, 15

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................................................... 5

Fed. R. Civ. P. 23(e)(1)(C) ..................................................................................................... 8

Fed. R. Civ. P. 23(e)(2) ....................................................................................................... 7, 8

Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv) ........................................................................................ 11

Fed. R. Civ. P. 23(e)(2)(C)(iv) ............................................................................................. 15

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C)(ii) .............................................................................................. 13

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................................... 15

Fed. R. Civ. P. 23(e)(3) ...................................................................................................... 8, 11

Pursuant to Federal Rule of Civil Procedure 23(e), Class Plaintiffs, individually and on behalf of the Classes (defined in Section IV(A)), respectfully submit this memorandum in support of Plaintiffs' Motion for Final Approval of Class Action Settlement (the "Motion for Final Approval") and request the Court enter an order: (i) granting final approval to the Settlement set forth in the Settlement Agreement ( the "Settlement Agreement" or "SA") (ECF No. 713-1); (ii) granting final approval of the Plan of Allocation (ECF No. 713-1, Ex. 6); and (iii) issuing a Final Order and Final Judgment dismissing the Action with prejudice. The proposed Settlement ("Settlement") is fair, reasonable, and adequate, resolves all class claims against Defendant General Motors LLC ("GM" or "Defendant") in this Action, and merits this Court's final approval.

## I.    BACKGROUND

Class Plaintiffs have secured a Settlement[1] that, if approved, will provide significant cash payments to Class Members who own GM vehicles with the Generation IV 5.3 liter V8 Vortec LC9 ("Gen IV") engine that has been the subject of this long-running litigation.[2]

In the interest of brevity, Class Plaintiffs will not presently recite the entire background of this litigation, which has spanned nearly a decade. Instead, Class Plaintiffs respectfully refer the Court to the Motion for Preliminary Approval (ECF No. 713), the Joint Declaration of Class Counsel (ECF No. 714), the pleadings filed in this Action, and any other matters of which the Court may take judicial notice, all of which are incorporated as if fully set out in this memorandum.

The abridged history of this litigation, however, is as follows: The case was filed on December 19, 2016 (ECF No. 2). Leading up to trial, Plaintiffs successfully obtained class certification and repeatedly defeated serial dismissal motions, summary judgment motions, and decertification motions. ECF Nos. 47, 70, 175, 184, 247, 287, 291, 325, 397, 428, 594. In September 2022, Plaintiffs went to trial on three classwide claims—Breach of Implied Warranty under the California Song-Beverly Consumer Warranty Act, Breach of Implied Warranty of

---

[1] Unless specifically defined herein, capitalized terms have the same meanings ascribed to them in the Settlement Agreement, cited as "SA." SA § II.

[2] While GM does not oppose the relief sought in this Motion, GM disputes Plaintiffs' allegations and factual assertions and expressly denies all liability.

Merchantability under North Carolina law, and Violation of the Idaho Consumer Protection Act. On October 4, 2022, a jury returned a verdict in Plaintiffs' and the Class's favor, awarding the entirety of Plaintiffs' requested damages. ECF No. 566. Plaintiffs defeated GM's post-trial motions for decertification and judgment as a matter of law and moved for prejudgment interest and statutory attorneys' fees. ECF Nos. 592, 594, 654. While Plaintiffs' motion was pending, the parties reached a settlement establishing a common fund that significantly exceeds the total classwide damages that the jury awarded.

On June 10, 2025, after briefing and argument, the Court entered an Order: (i) preliminarily approving the Settlement as "fair, reasonable, and adequate," "within the range of reasonableness and judicial approval," and as "reached in the absence of collusion and is the product of informed, good-faith, arm's-length negotiations between the Parties and their capable and experienced counsel," ECF No. 723 at 3–4; (ii) approving the Notice Plan and forms and content of Class Notice, and finding it "constitute[s] sufficient notice to all persons and entities entitled to receive such notice," and "satisf[ies] all applicable requirements of law, including, but not limited to, Rule 23 and the constitutional requirement of due process," *id.* at 4–5; (iv) confirming certification of the Settlement Classes for settlement purposes; (v) confirming the appointment of Class Counsel and Class Plaintiffs; and (vi) setting a Final Approval Hearing for October 2, 2025, as well as other relevant Settlement deadlines, *id.* at 3–12.

Class Plaintiffs now move for final approval of the Settlement so that the substantial monetary relief to the Settlement Classes can be delivered without delay.[3] Class Plaintiffs submit the Settlement, described in detail below, is fair, reasonable, and adequate, and merits this Court's final approval.[4]

---

[3] Plaintiff separately moves for approval of an award of attorneys' fees, reimbursement of expenses, and payment of a service award to the Class Representative. *See* Plaintiff's Motion for Attorneys' Fees, Expenses, and Service Awards, contemporaneously filed herewith.

[4] *See* Joint Declaration of Adam J. Levitt and H. Clay Barnett, III, in Support of Plaintiffs' Motion for Final Approval & Motion for Attorneys' Fees, Expenses, and Service Awards ("Joint Declaration" or "Joint Decl."), filed contemporaneously herewith.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    THE SETTLEMENT

The Settlement Agreement filed with the Court, including exhibits, sets forth all of the terms of the Settlement and controls. The Settlement Classes are defined as:

> All current owners or lessees of a Class Vehicle that was purchased or leased in new condition in the State of California as of May 23, 2022 (the "California Class").
>
> All current owners or lessees of a Class Vehicle that was purchased or leased from a GM-authorized dealer in the State of Idaho as of May 23, 2022 (the "Idaho Class")
>
> All current owners or lessees of a Class Vehicle that was purchased or leased in the State of North Carolina as of May 23, 2022 (the "North Carolina Class").

SA § II, ¶ 2.4; *see* ECF Nos. 237, 320, and 633. Excluded from the Classes are: GM; any affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any successor or assign of GM; and any judge to whom this Action is assigned, and his or her spouse; individuals and/or entities who validly and timely opted-out of the previously certified classes following the Notice of Pendency of Class Action issued in this litigation on or about May 23, 2022; and current or former owners of a Class Vehicle who previously released claims in an individual settlement with GM that would otherwise be covered by the Release in this Action. SA § II, ¶ 2.4.

The Class Vehicles include model year 2011–2014 Chevrolet Avalanche, Silverado, Suburban, and Tahoe, and 2011–2014 GMC Sierra, Yukon, and Yukon XL trucks and SUVs with Generation IV Vortec 5300 LC9 engines manufactured on or after February 10, 2011. SA § II, ¶ 2.9. Any vehicle that has already received adequate piston replacement (i.e., upgraded piston rings) under warranty and at no cost is excluded from the definition of Class Vehicle. *Id.*

### A.    The Settlement Benefits

In consideration for the dismissal of the Action with prejudice and a full and complete release of claims by all Class Plaintiffs and Class Members, GM will provide a non-reversionary cash Settlement Fund in the amount of $150,000,000, which, in accordance with the Plan of Allocation (ECF No. 713-1, Exhibit 6), shall be distributed to Class Members on a *pro rata* basis, less any amounts for Settlement Administration Expenses, Taxes, Attorneys' Fees and Expenses, and Service Awards (the "Net Settlement Fund"). As discussed below, and in accordance with the

Plan of Allocation, there are 24,790 verified California, Idaho, and North Carolina Class Members who will receive direct Settlement Payments. The remaining 18,300 potential North Carolina Class Members, who may be eligible to receive Settlement Payments, will be determined through the Class Notice process and verified by the Settlement Administrator.

Settlement Payments for Class Members are dependent on several factors including: (1) the number of identifying and eligible North Carolina Class Members receiving the North Carolina Identification Notice; (2) Settlement Administration Expenses and Taxes; and (3) Attorneys' Fees and Expenses, and Service Awards, as may be awarded by the Court. For example, and as shown in the chart below, if all 18,300 potential North Carolina Class Members submit timely and valid Identification Forms and are confirmed by the Settlement Administrator, then each Class Member (for each of the Classes) will receive approximately $3,481 less any amounts for payment of Settlement Administration Expenses, Attorneys' Fees and Expenses, and Service Awards, as may be awarded by the Court. If, as Class Plaintiffs and the Settlement Administrator *estimate*, approximately fifty percent (50%) of these potential North Carolina Class Members identify themselves and are confirmed to be Class Members (approximately 9,150 Class Members), and there are nearly 34,000 total Class Members (for all states), then each Class Member will receive $4,419, less any amounts for payment of Settlement Administration Expenses and Taxes, Attorneys' Fees and Expenses, and Service Awards.

If the Settlement is approved with the Court awarding Class Counsel's requested attorneys' fees, expenses, and service awards, Class Members will receive Settlement Payments of *at least* $2,149 (if 100% of potential North Carolina Identification Class Members are confirmed eligible for payment). If 50% of potential North Carolina Identification Class Members are eligible for payment, all Class Members will receive $2,728, after payment of fees, expenses and service awards. This is shown in the following chart:

.

| Class Member Totals | Gross Settlement Payment Per Class Member | *Pro Rata* Settlement Payment Net of 38% Attorneys' Fees, Expenses, and Service Awards |
|---|---|---|
| 24,790 Verified Direct Payment Class (CA, ID, NC) | ~ $ 6,050 | ~ $3,735 |
| 24,790 Verified Direct Payment Class (CA, ID, NC) + 9,150 (50%) North Carolina Identification Class | ~ $4,419 | ~ $2,728 |
| 24,790 Direct Payment Class (CA, ID, NC) + 18,300 (100%) North Carolina Identification Class | ~ $3,481 | ~ $2,149 |

The Settlement includes a streamlined Plan of Allocation for distributing Settlement Payments, a consumer-friendly procedure for submitting Identification Forms (as applicable), and a Release (SA § X, ¶¶ 10.1, 10.2), which will be made part of the Final Order and Judgment, is attached to the Long Form Notice, and is posted on the Settlement Website (defined in Section VII(A)(2)).

Class Plaintiffs submit that, given the age of the vehicles and potential risks of continued litigation and appeals, achieving a Settlement that provides a significant and immediate cash payment is an exceptional result and should be approved.

**B.      The Court-Approved Notice Plan Satisfies Due Process and Rule 23.**

To protect the rights of absent members of the Classes, the Court must ensure that all Class Members who would be bound by a class settlement are provided the best practicable notice. *See* Fed. R. Civ. P. 23(e)(1)(B) ("[T]he Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985); Manual for Complex Litigation (Fourth) § 21.312 (2004). The rule expressly approves of notice through "United States mail, electronic means, or other appropriate means." *Id*. Procedural due process requires that the "[n]otice…must be reasonably calculated, under all circumstances, to apprise

1    interested parties of the pendency of the action and afford them an opportunity to present their

2    objections." *Tennille v. Western Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015).

3    In the Order, the Court appointed Eisner Advisory Group, LLC ("EisnerAmper") as the

4    Settlement Administrator and approved the Parties' Notice Plan, holding "[t]he notices and Notice

5    Plan constitute sufficient notice to all persons and entities entitled to notice," "satisfy all applicable

6    requirements of law, including, but not limited to, Rule 23 and the constitutional requirements of

7    due process," and "are readily understandable by Class Members and comply with the Federal

8    Judicial Center's illustrative class action notices." ECF No. 723 at 4–5. Pursuant to the Court's

9    Order, EisnerAmper implemented the Notice Plan approved by the Court, disseminated the CAFA

10   notice to appropriate governmental officials, and will collect and review North Carolina Class

11   Member Identification Forms and Class Member W-9 forms. *Declaration of Ryan Aldridge*

12   *Regarding Settlement Notice Plan Implementation*, dated July 7, 2025 ("EisnerAmper Decl."), ¶¶

13   5-9.

14   To accomplish notice, EisnerAmper used eligible VINs provided by GM to acquire contact

15   information from the various Departments of Motor Vehicles for potential Class Members.

16   EisnerAmper analyzed and de-duplicated the contact information and performed research using the

17   United States Postal Service National Change of Address database to obtain the most current

18   mailing addresses for potential Settlement Class Members. In total, EisnerAmper identified 43,090

19   potential Class Members, based on the records obtained from R. L. Polk & Co. ("Polk") and the

20   states' Departments of Motor Vehicles, including 24,790 Direct Payment Class Members and

21   18,300 North Carolina Identification Notice Class Members. EisnerAmper Decl. ¶ 4.

22   Class Notice was sent, by First Class United States Mail, to all Class Members on July 7,

23   2025. EisnerAmper Decl. ¶ 5. EisnerAmper estimates that the mailed Notices alone will reach

24   virtually all 43,090 Class Members. *Id.* Notice was also sent by email to 16,574 Class Members for

25   whom a valid email address was available. *Id.* ¶ 6. Notice also will be sent by text message, no later

26   than July 11, 2025, to 14,343 Class Members who were sent a North Carolina Identification Notice

27   ("Identification Notice"), and for whom a cell phone number is available, as a reminder to complete

28   the North Carolina Class Member Identification Form ("Identification Form"). *Id.* ¶ 9. In addition,

on June 28, 2025, EisnerAmper launched a targeted digital notice effort using social media to increase outreach to the 18,300 potential North Carolina Class Members who received Identification Notice. *Id.* ¶ 8.

The Class Notice was published on the Settlement Website (gmenginelitigation.com) on June 23, 2025, as directed in the Preliminary Approval Order, along with the Identification Form, the Settlement Agreement, and other important documents related to this Action for Class Members to review and download. ECF No. 723 at 4–5; EisnerAmper Decl. ¶ 11. The Settlement Website also contains important Settlement deadlines, other case-related information, and contact information for the Settlement Administrator and Class Counsel. *Id.* Class Members receiving the North Carolina Identification Notice are also able to submit their Identification Form(s) and W-9 form(s) electronically on the Settlement Website, ensuring robust participation in the Settlement. EisnerAmper estimates that the robust Notice Plan will provide the best notice practicable of the Settlement and Class Members' rights thereunder. *Id.* ¶ 16.

All forms of the Court-approved Class Notice provide Class Members with clear, plainly stated information about their rights, options, and deadlines in connection with this Settlement, including how to object to the Settlement, how and by when Identifications Forms or Requests for Exclusion must be submitted, and how to contact the Settlement Administrator, or Class Counsel, with any questions or requests for assistance with the Settlement. To date, EisnerAmper has not received any objections from Class Members. *Id.* ¶ 14.

The Notice Plan that was approved by the Court was fully implemented and has informed the Classes of their rights and benefits under the Settlement. The Notice to the Classes more than satisfies the necessary requirements of Rule 23 and due process. *See* Fed. R. Civ. P. 23(c)(2)(B).

## III. STANDARDS FOR FINAL APPROVAL

Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled…only with the court's approval." Fed. R. Civ. P. 23(e). A district court may approve a settlement agreement "after a hearing and only on finding that it is fair, reasonable, and adequate…." Fed. R. Civ. P. 23(e)(2). The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where

complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also* William Rubenstein, Alba Conte, and Herbert B. Newberg, Newberg on Class Actions § 13:44 (5th ed. 2015).

Approval is a matter within the sound discretion of the district court and requires a two-step process—preliminary approval followed by a later final approval. *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. Jan. 25, 2016). Rule 23(e) requires the court conduct a fairness hearing and determine whether the proposed settlement is fundamentally "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see generally* Manual for Complex Litigation (Fourth) § 21.62 (2004) ("Rule 23(e)(1)(C) establishes that the settlement must be fair, reasonable, and adequate."); Newberg on Class Actions § 13:42.

In making this determination, the court must consider whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorneys' fees, including timing of payment;

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Rule 23(e) largely overlaps with factors that the Ninth Circuit has long recognized as relevant to settlement approval: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

1   governmental participant; and (8) the reaction of the class members of the proposed settlement." *In*
2   *re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). All of these factors
3   weigh in favor of final approval of the Settlement.

4   **IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

5          As part of the preliminary approval process, the Court considered the non-exhaustive factors
6   to determine whether a proposed settlement is "fair, adequate and reasonable." *See* ECF No. 723 at
7   3-5. The Motion for Preliminary Approval and supporting declarations and documents detail the
8   factors and the reasons the Settlement should be approved. *See* ECF Nos. 713, 714, 720, 722.

9          Class Notice has now been disseminated, and no other facts detailed in the preliminary
10  approval briefing have changed that would affect the Court's ability to grant final approval. Rather
11  than repeat that briefing, each fairness factor is summarized below. *See Franco v. E-3 Sys.*, 2021
12  WL 2333851, at *5 (N.D. Cal. June 8, 2021) (granting final approval and noting "no facts have
13  changed that would affect the Court's previous finding in its preliminary approval order").

14         **A.    Class Certification and Appointment of Class Counsel and Class Plaintiffs**

15         The Court, incorporating its prior analyses, ECF Nos. 237, 320, 633, confirmed certification
16  of the California, Idaho, and North Carolina Classes for settlement purposes and held "[t]he
17  proposed Settlement does not call for any changes to these Classes, or of the claims, defenses, or
18  issues regarding which certification was granted. ECF No. 723 at 2 ("[F]or the same reasons
19  identified in the Court's certification orders, the certified Classes satisfy adequacy, typicality,
20  numerosity, and commonality under Rule 23(a) and predominance and superiority Rule 23(b)(3).").
21  Nothing has changed that would affect the Court's prior rulings. *See In re Lyft, Inc. Sec. Litig.*, 2022
22  WL 17740302, at *3 (N.D. Cal. Dec. 16, 2022) (affirming order certifying class for settlement
23  purposes only); *see also In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and*
24  *Products Liability Litig.¸* 2019 WL 2554232, at *1 (N. D. Cal. May 3, 2019) (Chen, J.) (finding no
25  reason to disturb the Court's earlier conclusions and affirming order certifying class for settlement
26  purposes); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 887 (C.D. Cal. 2016) (same)
27  (citations omitted).

28

1

2

**B.     The Settlement Is the Product of Good Faith, Arms' Length Negotiations by Informed Counsel.**

In granting preliminary approval, the Court recognized that the Settlement was reached "in the absence of collusion and is the product of informed, good-faith, arm's-length negotiations between the Parties and their capable and experienced counsel." ECF No. 723 at 3. That fact remains true. Settlements enjoy a presumption that they are fair and reasonable when, as in this case, they are the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010) ("Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable.").

Class Counsel worked diligently on behalf of the Classes throughout this litigation to ensure appropriate relief. Class Counsel have substantial experience serving as counsel in class action litigation, including litigation involving vehicle defects, and have led this case from the investigation phase, through discovery, class certification, trial, and settlement. As such, Class Counsel were well-positioned to assess the benefits of the Settlement balanced against the strengths and weaknesses of the certified Classes' claims and GM's defenses. ECF No. 714 ¶¶ 33–34 & Exs. A-B.

The Settlement is the product of more than eight years of hard-fought litigation, including a class trial, and mediation before a highly experienced mediator, Antonio Piazza of Mediated Negotiations, Inc. ECF No. 714 ¶¶ 19–21. The Settlement is a great result for the Classes considering the nature of the claims at issue and provides significant monetary relief that addresses the reasons for bringing this Action. Additionally, there is no "clear sailing" arrangement or reversionary provision in the Settlement; all funds, after payment of costs and fees, will be distributed to the Classes, and/or *cy pres*, pursuant to the proposed Plan of Allocation. SA §§ III, IV; SA Ex. 6, Plan of Allocation; ECF No. 714 ¶ 28.

As a result, none of the typical indicators of collusion or self-dealing recognized by the Ninth Circuit are present in this case. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 569

(9th Cir. 2019); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 259 (N.D. Cal. 2015) (finding settlement the product of successful arm's length negotiations because it adequately satisfied class members' claims, was reached after contested litigation, and was the result of several weeks of negotiations assisted by a mediator); *Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). This factor favors final approval of the Settlement.

### C.    The Relief Provided Is Adequate.

Under Rule 23(e)(2)(C), a court's assessment of whether a proposed settlement is adequate takes into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv). This Court already held the Settlement relief provided is adequate "given: (a) the costs, risks and delay of appeal and potential re-trial, (b) the proposed Notice Plan is sufficient to notify the Classes, (c) the terms of the proposed attorney's fees and timing of payment, and (d) the remaining terms of the Settlement Agreement." ECF No. 723 at 3–4. Class Plaintiffs submit these factors support granting final approval.

### 1.    The Benefits of the Settlement, Weighed Against the Costs, Risks, and Delay of Appeal, Favor Final Approval.

The Settlement, if approved, confers significant and immediate monetary benefits to the certified Classes, which strongly supports final approval. The immediate value of the $150,000,000 non-reversionary Settlement Fund alone outweighs the uncertainty, additional expense, and likely duration of further litigation and appeals. At this stage, it is understood that there are approximately 43,000 *potential* Class Members, which includes 24,790 confirmed members of the California, Idaho, and North Carolina Classes. There are 18,300 potential North Carolina Class Members, who also may be eligible to receive Settlement Payments. The precise number of North Carolina Class Members will be ascertained by the Settlement Administrator after the Identification Form submission deadline.

As discussed above, in Section II.A, assuming the Settlement will ultimately cover 34,000 Class Members, each Class Member's gross *pro rata* share of the Settlement Fund is approximately $4,419, less Attorneys' Fees and Expenses, Service Awards, Settlement Administration Expenses and Taxes. This would be $1,700 more than the amount ($2,700) the jury awarded each Class Member. While they may receive less than the amount they would have been awarded with full prejudgment interest, as Plaintiffs requested in their Prejudgment Interest Motion, that motion has not been ruled upon and any order on that motion would, like the verdict, be subject to appeal. Class Plaintiffs submit that achieving a Settlement that provides a cash payment in excess of the amount awarded by the jury is an exceptional result.

Courts regularly approve settlements in automotive class actions in which class members receive a cash payment, such as this one, finding they provide valuable benefits and merit approval. *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 2014 WL 12603199, at *2 (C.D. Cal. Aug. 21, 2014) (finding that the settlement amount was a "substantial fraction of the total potential recovery of [the] case"), *aff'd*, 926 F.3d 539 (9th Cir. 2019) (*en banc*); *In re Navistar MaxxForce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2020 WL 2477955, at *3 (N.D. Ill. Jan. 21, 2020) (granting final approval to a settlement that allowed class members the option of accepting a $2,500 cash payment to settle their claims), *aff'd*, 990 F.3d 1048 (7th Cir. 2021); *see also Berman v. Gen. Motors LLC*, 2019 WL 6163798, at *1 (S.D. Fla. Nov. 18, 2019) (granting final approval of a settlement that provided reimbursement for class members who paid to repair a defect out of pocket).

Settlements resolve any inherent uncertainty on the merits, and are therefore strongly favored by the courts, particularly in class actions. *In re Syncor ERISA Litig.*, 516 F.3d at 1101 (recognizing a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."); *accord Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). As discussed above, Class Plaintiffs and Class Counsel have overcome significant challenges in this litigation. Although Class Plaintiffs and Class Counsel are confident in their positions, if this litigation were to proceed, GM's likely appeal to the Ninth Circuit provides an opportunity to challenge each one of these successes and creates risk of an adverse decision on

appeal, and ensures additional costs and delay. These risks, costs, and delay(s) weigh strongly in favor of settlement approval. Indeed, the Classes gain little by prolonging this litigation, as this Settlement provides Class Members with the full amount of damages Plaintiffs sought at trial, plus a substantial amount of interest. *See Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now."); *see also Brightk Consulting Inc. v. BMW of N. Am., LLC*, 2023 WL 2347446, at *7 (C.D. Cal. Jan. 3, 2023) ("The Settlement Agreement offers Class Members an opportunity to obtain relief at an early stage in the litigation, eliminating the risks posed by proceeding further in the action. It ensures that Class Members receive a recovery that is certain and immediate, eliminating the risk that class members would be left without any recovery…at all."); *Curtis-Bauer v. Morgan Stanley & Co.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the [] class.").

Ultimately, given the significant costs, risks, and delay of appeal—including the risk the Ninth Circuit could decertify any of the certified Classes or overturn the verdict—and the significant benefits Class Members can receive more quickly in this Settlement, this Settlement is more than adequate and represents a hard-fought victory for the certified Classes. ECF No. 714 ¶¶ 23, 35–36 (expressing opinion based on experience regarding Settlement).

### 2. The Proposed Method of Distribution to Class Members Is Equitable and Effective.

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, the proposed method of distributing relief will be highly effective, as it involves sending checks directly to Class Members. The Court has appointed a highly experienced Settlement Administrator to oversee this process—EisnerAmper (f/k/a Postlethwaite & Netterville, APAC). SA §§ II, ¶ 2.36; *id.* § IV; *id.* Ex. 2, ¶¶ 3–4. EisnerAmper served as class notice administrator at the class notice stage, and is highly familiar with this Action, the certified Classes, and the available relief. As discussed in Section II.B., EisnerAmper obtained the contact information for all potential Class

Members and sent notice of the Settlement in accordance with the Notice Plan. Following the deadline for submission of North Carolina Identification Forms, EisnerAmper will calculate the precise number of Class Members who will receive Settlement Payments.

Within sixty (60 days) of the Final Effective Date of the Settlement, EisnerAmper will calculate Settlement Payments and distribute checks by mail, for equal amounts, to all identified Class Members in accordance with the Plan of Allocation. SA Ex. 6. If any Class Members have not cashed or deposited their checks after 90 days, EisnerAmper will attempt to contact them, and if successful, will reissue them checks. Any remaining funds associated with uncashed or undeposited checks will then be distributed, in equal amounts, to those Class Members who cashed or deposited their checks pursuant to the Plan of Allocation. *Id.* In other words, EisnerAmper will work to ensure that any unclaimed funds from the initial distribution are redistributed to Class Members. Any residual funds of less than $500,000 in the Settlement Fund will be distributed *cy pres* to the University of Michigan Transportation Research Institute. None of the Net Settlement Fund will revert back to GM or be paid to Class Counsel.

### 3. The Proposed Attorneys' Fees, Costs, and Class Plaintiff Service Awards Support Final Approval.

Class Counsel seeks an award of Attorneys' Fees and Expenses not to exceed 38% of the Settlement Fund, and Service Awards of $30,000 each for the Class Plaintiffs to be paid out of the Settlement Fund. ECF No. 714, ¶ 29. As detailed in Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Fee Motion") and the accompanying Joint Declaration., as of June 30, 2025, Class Counsel expended 23,269.05 hours litigating this Action, resulting in a total lodestar of $25,702,894.25. Additionally, Class Counsel incurred $1,236,603.08 in litigation expenses.

The requested fees and expenses are fair and consistent with Ninth Circuit precedent, based on the exceptional Settlement and the significant amount of work, and money spent, by Class Counsel to litigate this case and negotiate this Settlement. *See, e.g.*, *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 2023 WL 9227002, at *4–8 (C.D. Cal. Nov. 28, 2023) (approving an aggregate fee award of $25,472,730.40, which represented 32.4% of a $78.5 million pre-trial

settlement in a vehicle defect case). Notice to the certified Classes advises Class Members of Plaintiffs' requested attorneys' fees, expenses, and service awards, and the procedures to comment on or object to the fee petition before Final Approval. SA §§ IV, XII.

For the reasons stated herein, in Plaintiffs' Fee Motion, and in Plaintiffs' prior submissions, ECF Nos. 655, 675, 675-1, Class Counsel's planned request for 38% of the $150,000,000 Settlement Fund is more than reasonable.

## 4. There Are No Other Agreements Between or Among the Parties.

The substantive terms of the Settlement are set forth in the Settlement Agreement, and the agreed upon language of the proposed orders and notices are set forth in the exhibits to the Settlement Agreement. Separate and apart from these documents, there are no agreements that affect the relief provided to the certified Classes or compensation to be provided to attorneys. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). Class Counsel and GM have also reached agreements in principle to resolve the pending, non-certified, individual claims in this action and the pending, non-certified, individual claims in the related cases *Vita v. General Motors LLC*, No. 2:20-CV-01032 (E.D.N.Y); *Airko Inc. v. General Motors LLC*, No. 1:20-CV-02638 (N.D. Ohio); and *Tucker v. General Motors LLC*, No. 1:20-CV-00254 (E.D. Mo.),[5] and to resolve *Hampton v. General Motors LLC*, No. 6:21-CV-00250 (E.D. Okla.), in which an Oklahoma class has been certified, for $25,000,000.[6] None of these agreements trade "possible advantages for the [Classes] in return for advantages for others." Fed. R. Civ. P. 23, Adv. Comm. Notes to 2003 Amendment.

## D. The Proposal Treats Class Members Fairly.

The final element for consideration under Rule 23(e) is whether a proposed settlement treats class members equitably in relation to one another. Fed. R. Civ. P. 23(e)(2)(D). This Settlement does: all Class Members will be entitled to an equal portion of the $150,000,000 Settlement Fund after payment of fees and costs. *See* Ex. 6 (proposed Plan of Allocation). This is consistent with the

---

[5] The value of the individual settlements, inclusive of all costs, is $167,000.

[6] As set forth in the Settlement Agreement, and consistent with the Parties' intent to resolve all the pending related actions, the Final Effective Date for this Settlement occurs after final approval and exhaustion of all appeals in connection with both this Settlement and the class settlement in *Hampton*.

jury having awarded each Class Member the same $2,700 in damages. Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Certified Class Members.

### E.    The Views of Experienced Counsel and the Reaction of Class Members

In the Ninth Circuit, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Forsyth v. HP Inc.*, 2024 WL 1354551, at *5 (N.D. Cal. Mar. 29, 2024) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Here, the Parties are highly familiar with the strengths and weaknesses of the case and agree that the Settlement Agreement is fair and reasonable. *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). Class Plaintiffs and Class Counsel only agreed to settle the Action after considering the substantial benefits the Settlement Class will receive, the risks and uncertainties of continued litigation, and the desirability of proceeding under the terms of the Settlement Agreement. Class Counsel have decades of experience trying cases to verdict and leading the prosecution of complex class action matters. Class Counsel fully endorse the Settlement is fair, reasonable, and adequate, and the Settlement is in the Class Members' best interests. Thus, this factor supports final approval Class Counsel have decades of experience leading the prosecution of complex class action matters and fully endorse the Settlement as exceeding the required standard of fair, reasonable, and adequate. ECF 133-2 ¶ 42.

Additionally, a favorable reaction by Class Members to the proposed Settlement supports final approval. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (where just a "handful" objected, "[t]he reaction of the class members to the proposed settlement further supports the conclusion that … the Settlement was fair, adequate and reasonable"). "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the

class members." *Garner*, 2010 WL 1687832, at \*14 (cleaned up); *see, e.g.*, *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of a class action settlement where forty-five objections were received out of 90,000 notices); *Garner*, 2010 WL 1687832, at \*40 ("only 101 out of the over 24,000 who received notice have elected to opt out of the Settlement Class. … which is a further indication of the fairness of the Settlement."); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("objections from only 3 out of 57,630 potential Class Members who received the notice" shows the class favors the settlement).

Class Notice has been provided directly to the Class Members as well as through the alternative forms of notice detailed above. To date, no Class Member has objected to the Settlement, the requested attorneys' fees and expenses, or service awards. EisnerAmper Decl., ¶¶ 4-14. These factors weigh in support of final approval.

## V.   CONCLUSION

For all the above-stated reasons, Plaintiffs respectfully request that the Motion be granted and the Court enter an order, substantially in the form of  Exhibit 7 to the Settlement Agreement: (i) granting final approval to the Settlement set forth in the Settlement Agreement ( the "Settlement Agreement" or "SA") (ECF No. 713-1); (ii) granting final approval of the Plan of Allocation (ECF No. 713-1, Ex. 6); and (iii) issuing a Final Order and Final Judgment dismissing the Action with prejudice.

DATED: July 7, 2025                          Respectfully submitted,

*/s/ Adam J. Levitt*
Adam J. Levitt (*pro hac vice*)
John E. Tangren (*pro hac vice*)
Daniel R. Ferri (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ *H. Clay Barnett, III*
H. Clay Barnett, III (*pro hac vice*)
W. Daniel "Dee" Miles, III (*pro hac vice*)
Rebecca D. Gilliland (*pro hac vice*)
J. Mitch Williams (*pro hac vice*)
Dylan T. Martin (*pro hac vice*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: (334) 269-2343
Dee.Miles@beasleyallen.com
Clay.Barnett@beasleyallen.com
Mitch.Williams@beasleyallen.com
Rebecca.Gilliland@beasleyallen.com
Dylan.Martin@beasleyallen.com

Mark Abramowitz (*pro hac vice*)
**DICELLO LEVITT LLP**
7556 Mentor Avenue
Mentor, Ohio 44060
Telephone: 440-953-8888
mabramowitz@dicellolevitt.com

*Class Counsel*

Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: 415-986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Anthony J. Garcia (pro hac vice)
**AG LAW P.A.**
3602 West Euclid Avenue
Tampa, Florida 33629
Telephone: 813-259-9555
anthony@aglawinc.com

*Additional Counsel for Plaintiffs and the
Classes*

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## **ECF CERTIFICATION**

2          Pursuant to Civil L.R. 5-1(i)(3), the filing attorney attests that he has obtained concurrence

3    regarding the filing of this document from the signatories above.

4

5    Date: July 7, 2025                                   By:      */s/ Adam J. Levitt*
                                                                    Adam J. Levitt

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28