Adam J. Levitt (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com

H. Clay Barnett, III (*pro hac vice*)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: (334) 269-2343
clay.barnett@beasleyallen.com

*Class Counsel*
*(additional counsel appear on signature page)*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| RAUL SIQUEIROS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | Case No.: 16-cv-07244-EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>Judge: Hon. Edward M. Chen<br>Hearing Date: October 2, 2025<br>Time of Hearing: 1:30 p.m. |

## NOTICE OF MOTION AND MOTION

TO THIS COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 2, 2025, at 1:30 pm, in the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 5, 17th Floor, before the Honorable Edward M. Chen, Plaintiffs will, and hereby do, move this Court, pursuant to Rule 23 of the Federal Rules of Civil for an entry of order enter an order awarding Class Counsel $57,000,000.00 in attorneys' fees and expenses and awarding service awards of $30,000 each to Plaintiffs Tarvin, Del Valle, and Davis.

Plaintiffs bring this motion on the grounds that: (a) the requested award of attorneys' fees is reasonable when considered under the factors set forth in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002); (b) the expenses incurred by Class Counsel in this litigation were reasonable and should be reimbursed; and (c) the requested service awards are reasonable in light of Plaintiffs' service in representing the Classes.

This Motion is based on the Notice of Motion and Motion, and the accompanying Memorandum of Points and Authorities and Joint Declaration of Class Counsel.

Dated: July 7, 2025

/s/Adam J. Levitt
Adam J. Levitt (*pro hac vice*)
John E. Tangren (*pro hac vice*)
Daniel R. Ferri (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

/s/ H. Clay Barnett, III
H. Clay Barnett, III (*pro hac vice*)
W. Daniel "Dee" Miles, III (*pro hac vice*)
Rebecca D. Gilliland (*pro hac vice*)
J. Mitch Williams (*pro hac vice*)

Dylan T. Martin (*pro hac vice*)
**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: (334) 269-2343
Clay.Barnett@beasleyallen.com
Dee.Miles@beasleyallen.com
Rebecca.Gilliland@beasleyallen.com
Mitch.Williams@beasleyallen.com
Dylan.Martin@beasleyallen.com

Mark Abramowitz (*pro hac vice*)
**DICELLO LEVITT LLP**
7556 Mentor Avenue
Mentor, Ohio  44060
Telephone: (440) 953-8888
mabramowitz@dicellolevitt.com

*Class Counsel*

Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: (415) 986-1400
jennie@andrusanderson.com
lori@andrusanderson.com

Anthony J. Garcia (*pro hac vice*)
**AG LAW P.A.**
3602 West Euclid Avenue
Tampa, Florida 33629
Telephone: (813) 259-9555
anthony@aglawinc.com

*Additional Counsel for Plaintiffs and the Classes*

**TABLE OF CONTENTS**

I.   BACKGROUND ................................................................................................................. 1

II.  CLASS COUNSEL'S FEE REQUEST IS REASONABLE ............................................. 1

    A.   Class Counsel Achieved Exceptional Results. ......................................................... 3

    B.   This Fully Contingent Case Was Complex, Risky, and Highly
         Burdensome. ............................................................................................................. 3

    C.   The "Market Rate" Supports the Requested Fee. ..................................................... 5

    D.   The Requested Fee Satisfies a Lodestar Cross-Check. ............................................ 6

III. CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND
     SHOULD BE APPROVED. ............................................................................................... 7

IV.  CLASS REPRESENTATIVES SHOULD BE AWARDED A SERVICE
     AWARD. ............................................................................................................................. 9

V.   CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
 913 F. Supp. 2d 964 (E.D. Cal. 2012) ................................................................................. 2

*Andrews v. Plains All Am. Pipeline L.P*,
 2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ................................................................ 2, 3

*Bellinghausen v. Tractor Supply Co.*,
 306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................................ 5

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) .......................................................................................... 1, 2

*Brown v. 22nd Dist. Agric. Ass'n*,
 2017 WL 3131557 (S.D. Cal. July 21, 2017) ..................................................................... 5

*In re Capacitors Antitrust Litig.*,
 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ................................................................... 7

*Carlin v. DairyAmerica, Inc.*,
 380 F. Supp. 3d 998 (E.D. Cal. 2019) ....................................................................... 2, 3, 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 2016 WL 183285 (N.D. Cal. Jan. 14, 2016) ....................................................................... 2

*Ching v. Siemens Indus., Inc.*,
 2014 WL 2926210 (N.D. Cal. June 27, 2014) .................................................................... 5

*Costa v. FCA US LLC*,
 No. 20-cv-11810 (D. Mass.) ................................................................................................ 5

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
 No. 16-cv-02744 (E.D. Mich.) ..............................................................................................

*George v. Acad. Mortg. Corp. (UT)*,
 369 F. Supp. 3d 1356 (N.D. Ga. 2019) ............................................................................... 6

*Gergetz v. Telenav*,
 2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) ................................................................... 9

*In re Heritage Bond Litig.*,
 2005 WL 1594389 (C.D. Cal. June 10, 2005) .................................................................... 3

*In re High-Tech Emp. Antitrust Litig.*,
 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ..................................................................... 9

*In re HP Printer Firmware Update Litig.*,
  2019 WL 2716287 (N.D. Cal. June 28, 2019) .......................................................................... 1

*In re HQ Sustainable Mar. Indus., Inc. Derivative Litig.*,
  2013 WL 5421626 (W.D. Wash. Sept. 26, 2013) ..................................................................... 7

*Jenson v. First Tr. Corp.*,
  2008 WL 11338161 (C.D. Cal. June 9, 2008) .......................................................................... 5

*In re Lithium Ion Batteries Antitrust Litig.*,
  2020 WL 7264559 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2022 WL 16959377 (9th
  Cir. Nov. 16, 2022) .............................................................................................................. 2, 8

*In re M.D.C. Holdings Sec. Litig.*,
  1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ........................................................................... 6

*Nuwer v. FCA US LLC*,
  No. 20-cv-60432 (S.D. Fla.) ..................................................................................................... 5

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................................... 3

*In re Optical Disk Drive Prods. Antitrust Litig.*,
  959 F.3d 922 (9th Cir. 2020) ................................................................................................ 2, 7

*In re Peanut Farmers Antitrust Litig.*,
  2021 WL 9494033 (E.D. Va. Aug. 10, 2021) ..................................................................... 5, 10

*Quackenbush v. Am. Honda Motor Co.*,
  No. 20-cv-05599 (N.D. Cal.) .................................................................................................... 5

*Rankin v. Am. Greetings, Inc.*,
  2011 WL 13239039 (E.D. Cal. July 6, 2011) ........................................................................... 7

*Ridgeway v. Wal-Mart Stroes Inc.*,
  269 F. Supp. 3d 975 (N.D. Cal. 2014) ...................................................................................... 9

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..................................................................................................... 9

*Samora v. Chase Dennis Emergency Med. Grp., Inc.*,
  2023 WL 5000567 (N.D. Cal. Aug. 4, 2023) ............................................................................ 1

*Shin v. ICON Found.*,
  2025 WL 672936 (N.D. Cal. Mar. 3, 2025) .............................................................................. 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) .......................................................................... 2

*In re Titanium Dioxide Antitrust Litig.*,
   2013 WL 6577029 (D. Md. Dec. 13, 2013) .................................................................................. 10

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ....................................................................................... 7, 9

*Vandervort v. Balboa Cap. Corp.*,
   8 F. Supp. 3d 1200 (C.D. Cal. 2014) ........................................................................................ 2

*Vinh Nguyen v. Radient Pharms. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................................................ 2

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................................................................ *passim*

*In re Wash. Pub. Power Supply Sys. Secs. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ...................................................................................................... 5

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   845 F. App'x. 563 (9th Cir. 2021) ............................................................................................. 7

*Yun-fei Lou v. Am. Honda Motor Co., Inc.*,
   2025 WL 1359067 (N.D. Cal. May 9, 2025) ............................................................................ 6

*Zamora Jordan v. Nationstar Mortg., LLC*,
   2019 WL 1966112 (E.D. Wash. May 2, 2019) ......................................................................... 9

*In re Zetia (Ezetimibe) Antitrust Litig.*,
   699 F. Supp. 3d 448 (E.D. Va. 2023) ........................................................................................ 9

**Other Authorities**

David L. Schwartz, *The Rise of Contingent Fee Representation in Patent Litigation*, 64 Ala. L. Rev. 335, 360 (2012) .................................................................................. 6

Fed. R. Civ. P. 23(e) ............................................................................................................................ 1

Fed. R. Civ. P. 23(h) ........................................................................................................................... 1

Pursuant to Federal Rules of Civil Procedure 23(e) and 23(h), Class Counsel[1] respectfully submit this Memorandum of Law in support of their Motion for (a) an award of Attorneys' Fees and Expenses in the combined amount of $57,000,000.00 (the "Fee and Cost Request"), and (b) service awards of $30,000 each to Plaintiffs Tarvin, Del Valle, and Davis.

## I. BACKGROUND

In the interest of brevity, Class Counsel will not recite the entire background of this Action, which has spanned nearly eight years. Rather, Class Counsel respectfully refer the Court to the Joint Declaration of Class Counsel accompanying this Motion ("Joint Decl."), the Motion for Preliminary Approval (ECF No. 713) and the accompanying Joint Declaration of Class Counsel (ECF No. 714), and the pleadings on file in this action, all of which are incorporated as if fully set forth in this memorandum.

## II. CLASS COUNSEL'S FEE REQUEST IS REASONABLE.

"Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorney's fees and costs in class action settlements as authorized by law or by the parties' agreement." *In re HP Printer Firmware Update Litig.*, 2019 WL 2716287, at *2 (N.D. Cal. June 28, 2019). In the Ninth Circuit, courts have discretion in awarding fees from a common fund settlement to "employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class." *Samora v. Chase Dennis Emergency Med. Grp., Inc.*, 2023 WL 5000567, at *1 (N.D. Cal. Aug. 4, 2023). The Ninth Circuit has identified factors—often referred to as the *Vizcaino* factors—that courts may consider when assessing requests for attorneys' fees calculated pursuant to the percentage-of-recovery method:

> (1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; and (6) whether the case was handled on a contingency basis.

---

[1] Unless specifically defined herein, capitalized terms have the same meanings ascribed to them in the Settlement Agreement, cited as "SA." SA, § II.

*In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)). Although 25% is sometimes used as a "benchmark," an upward departure from that level is appropriate if there are circumstances "justifying a departure." *Bluetooth*, 654 F.3d at 942.

One such circumstance supporting an upward adjustment is where, as here, class counsel has achieved a significant class recovery. Even in cases that settle short of trial, courts have found that a percentage of the fund well in excess of 25% is appropriate. *See, e.g.*, *Andrews v. Plains All Am. Pipeline L.P*, 2022 WL 4453864, at *1, 4 (C.D. Cal. Sept. 20, 2022) (approving 32% fee award of $230 million settlement reached before trial); *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *3, 23 (N.D. Cal. Dec. 10, 2020) (awarding 30% of a $44.95 million settlement reached prior to class certification), *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1010, 1021, 1023 (E.D. Cal. 2019) (awarding 33.3% of a $40 million common fund settlement reached prior to class certification that represented 48% of damages); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 183285, at *2 (N.D. Cal. Jan. 14, 2016) (approving 30% fee award of $127.45 million settlement reached before trial); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1203, 1210 (C.D. Cal. 2014) (awarding 33% fee for a settlement reached prior to a summary judgment determination); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *10 (C.D. Cal. May 6, 2014) (awarding 28% fee in case that settled pre-trial); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 983 (E.D. Cal. 2012) (awarding 29% fee before discovery was complete); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575003, at *2 (N.D. Cal. Dec. 27, 2011) (approving 30% fee award of $405.02 million settlement reached before trial).

Here, Class Counsel did not unburden themselves of risk through pretrial settlement, but, instead, entered into a settlement only after litigating the Classes' claims through verdict and while their motion for final judgment was pending. Through the settlement, each Class Member is likely to receive, even after payment of fees and costs, a payment that is higher than the $2,700 that they were awarded at trial. This fact, alone, makes this an extraordinary recovery justifying extraordinary fees and service awards. But, even more than that—and further justifying Class

Counsel's fee request here—Class Counsel submits that *all of* the *Vizcaino* factors strongly support a fee of $55,763,396.92, or approximately 37% of the $150 million settlement fund, which is consistent with or lower than a reasonable contingency fee in the private market.

### A. Class Counsel Achieved Exceptional Results.

The benefit secured for a class is the single most important factor in evaluating the reasonableness of a requested fee. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."). Under the Settlement, each Class member will receive between $3,481 and $4,419, less any payments for fees, costs, and service awards. **This represents between 128.9 and 163.6 percent of the maximum damages sought** (and which the jury awarded), of $2,700 per vehicle. This result was possible only because Class Counsel took their case through verdict.

In cases that generate large funds, courts have deemed results "significant" and "exceptional" that were not half as successful as what Class Counsel accomplished here. For example, in *Andrews*, the court commended class counsel for its success when a settlement represented "roughly 35% of the maximum class wide compensatory damages" following deduction of fees and "in the face of complex and hotly disputed issues" over the course of seven years' litigation. 2022 WL 4453864, at *2 (awarding 32% of the fund as fees); *see also In re Heritage Bond Litig.*, 2005 WL 1594389, at *8 (C.D. Cal. June 10, 2005) (awarding 33.33% in fees to counsel where the class recovered 23% of the total net loss after fees were deducted); *Carlin*, 380 F. Supp. 3d at 1021, 1023 (awarding 33.3% of a $40 million common fund that represented 48% of damages alleged). The risks borne and the results that Class Counsel achieved here far exceed the results in the aforementioned cases, and their fee should reflect that reality.

### B. This Fully Contingent Case Was Complex, Risky, and Highly Burdensome.

Class Counsel filed this case on a fully-contingent basis, with no guarantee of payment, more than eight years ago. Over the course of discovery, Class Counsel reviewed 573,820 pages of documents, deposed ten GM engineers and three GM experts, and defended eleven Plaintiffs' depositions and three expert depositions. Joint Decl. ¶ 12. Just to get to a jury, Class Counsel overcame two motions to dismiss and four motions for summary judgment. ECF Nos. 47, 70, 184,

291, 397, 428. They faced four pretrial motions for class decertification, and a motion for reconsideration of Idaho class certification. ECF Nos. 247, 324, 325, 347, 397. They faced *Daubert* motions as to both of their experts, and they briefed and argued nine motions *in limine*. ECF Nos. 395, 476.

During the multi-week trial, where they faced top-tier trial counsel from two (now three) national defense firms, Class Counsel successfully proved to the jury that the Class Vehicles contained the Oil Consumption Defect and that this defect was a safety defect. ECF No. 554, Jury Instructions; ECF No. 566, Verdict Form. Moreover, they proved to the jury that GM had fraudulently concealed that defect, so that the statutes of limitations were tolled for thousands of Class members who would not otherwise have recovered. ECF No. 566, Verdict Form. In doing so, Class Counsel drew upon expert testimony, testimony from GM's engineers, Plaintiffs' testimony, depositions, GM service bulletins, GM warranty data, and documents buried in the thousands of pages of GM's production. *See, e.g.*, ECF No. 634 at 2, 6–9, 13–14. The jury needed less than six hours of deliberation to award Plaintiffs a total victory.

But, even after trial, Class Counsel's job was far from complete. GM filed roughly 80 pages of post-trial motions, seeking judgment as a matter of law and, again, seeking class decertification. ECF Nos. 592 and 594. These briefs, through which GM challenged practically every legal or factual issue that was possibly disputable, dragged the case on for another year, until the Court issued its order regarding the finality of the jury's statute of limitations filings. ECF No. 653.

Class Counsel could have lost this case, and lost their entire investment of time, at any number of points between GM's first motion to dismiss in 2017 (ECF No. 47) and its JNOV motion argued in 2023 (ECF No. 592). Indeed, it bears remembering that the Court dismissed this case in its entirety, albeit with leave to replead, after GM's first motion to dismiss. ECF No. 62. Class Counsel pressed on.

In doing so, Class Counsel not only invested thousands of hours of their time, but also $1,236,603.08 of their own money. Joint Decl. ¶ 32. Most notably, they paid for a trial team to spend three weeks in San Francisco, rather than accept GM's final pretrial settlement offer. The risk in this decision is evident from the results in automobile defect class actions that have gone to

trial since Plaintiffs' verdict. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-cv-02744 (E.D. Mich.) (jury verdict for the defendant in a class case); *Costa v. FCA US LLC*, No. 20-cv-11810 (D. Mass.) (jury verdict for the defendant in a class case); *Quackenbush v. Am. Honda Motor Co.*, No. 20-cv-05599 (N.D. Cal.) (jury verdict for defendant on California CLRA claim); *Nuwer v. FCA US LLC*, No. 20-cv-60432 (S.D. Fla.) (no damages awarded to plaintiffs).

Over eight years, Class Counsel has litigated this case as thoroughly as a case can be litigated, always in the face of significant risks. *See, e.g., In re Peanut Farmers Antitrust Litig.*, 2021 WL 9494033, at *6 (E.D. Va. Aug. 10, 2021) ("Other courts have determined that a higher percentage rate is appropriate where discovery has been completed and the case is ready for trial."). This factor weighs heavily in favor of a substantial fee.

**C.     The "Market Rate" Supports the Requested Fee.**

As a general matter, "[w]hen counsel takes cases on a contingent fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015); *see also In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market to reward attorneys of taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."); *Brown v. 22nd Dist. Agric. Ass'n*, 2017 WL 3131557, at *8 (S.D. Cal. July 21, 2017) (recognizing that "class counsel was forced to forego other employment in order to devote necessary time to this litigation" and the substantial risk associated with taking the matter on a contingent basis warranted "an upward adjustment to the fee award"); *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work.").

The market for high-stakes, high-value, plaintiff's-side litigators is entirely driven by a percentage-of-the-recovery model, with sophisticated clients typically incentivizing their lawyers by agreeing to a fixed percentage of between 30% and 40% of the recovery. *See Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *13 n.15 (C.D. Cal. June 9, 2008) ("If this were non-representative

1  litigation, the customary fee arrangement would likely be contingent, on a percentage basis, and in
2  the range of 30% to 40% of the recovery."); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747,
3  at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally
4  ranged between 30% and 40% of the total recovery."); *George v. Acad. Mortg. Corp. (UT)*, 369 F.
5  Supp. 3d 1356, 1382 (N.D. Ga. 2019) ("Plaintiffs request for approval of Class Counsel's 33% fee
6  falls within the range of the private marketplace, where contingency-fee arrangements are often
7  between 30 and 40 percent of any recovery"); David L. Schwartz, *The Rise of Contingent Fee*
8  *Representation in Patent Litigation*, 64 Ala. L. Rev. 335, 360 (2012) (in patent cases where
9  attorneys paid a flat contingent fee, "the mean rate [is] 38.6% of the recovery.").

10  Here, where a reasonable market rate is being considered retrospectively, the 23,269 hours
11  in foregone attorney opportunity cost and $1,236,603.08 in counsel's out-of-pocket expenses
12  incurred, and the need to win at trial to achieve a significant recovery, are risks that would command
13  a private market contingency fee that is, at least, at the very top of the normal range. Class Counsel
14  spent eight years advancing this complex, class action litigation through trial to the eve of final
15  judgment, achieving a settlement that yielded over 100% of the jury-awarded damages. Class
16  Counsel's fee request of approximately 37% of the settlement fund that resulted from their efforts
17  still amounts to less than the average contingency fee available to attorneys in other areas, such as
18  patent litigation. To award Class Counsel significantly less under these circumstances would
19  disincentivize counsel from taking such cases on behalf of injured consumers, who would then have
20  no other recourse. *See Yun-fei Lou v. Am. Honda Motor Co., Inc.*, 2025 WL 1359067, at *14 (N.D.
21  Cal. May 9, 2025) ("California courts have made clear that attorney's fee awards in consumer cases
22  should be guided in part by public policy goals, including the need to incentivize competent counsel
23  to take cases on contingency.").

24  **D.    The Requested Fee Satisfies a Lodestar Cross-Check.**

25  While the Ninth Circuit has "encouraged" the use of a lodestar cross-check when a court
26  awards a fee using the percentage-of-the-fund method, the Ninth Circuit does not require the use
27  of a lodestar cross-check when awarding a fee using the percentage-of-the-fund method. *See*
28  *Vizcaino,* 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage

method, the lodestar *may* provide a useful perspective on the reasonableness of a given percentage award") (emphasis added); *Glass v. UBS Fin. Servs.*, Inc., 2007 WL 221862, at *15–16 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x. 452 (9th Cir. 2009) ("Under the circumstances presented here, where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check."); *Rankin v. Am. Greetings, Inc.*, 2011 WL 13239039, at *1–2 (E.D. Cal. July 6, 2011) (stating that "a lodestar calculation is not required" and awarding fee without a cross-check); *In re HQ Sustainable Mar. Indus., Inc. Derivative Litig.*, 2013 WL 5421626, at *3 (W.D. Wash. Sept. 26, 2013) (awarding 32% fee without benefit of lodestar cross-check); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 845 F. App'x. 563, 565 (9th Cir. 2021) (affirming reasonableness of a fee award without regard to the lodestar crosscheck, which the panel determined had been likely miscalculated).

Here, Class Counsel's request satisfies a lodestar cross-check. Class Counsel's fee request of $55,763,396.92 is approximately 2.17 times Class Counsel's lodestar of $25,702,894.25 (Joint Decl. ¶ 26) and thus well within the range of an acceptable lodestar multiplier. *See In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("In the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases . . . ."); *Vizcaino*, 290 F.3d at 1051 (affirming a common fund award that represented a lodestar multiplier of 3.65); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action"); 5 Newberg and Rubenstein on Class Actions § 15.89 (6th ed.) (empirical data showing mean multiplier of 3.18 for funds greater than $175.5 million).

### E. The Size of the Settlement Does Not Support a Fee Discount.

The size of the settlement fund is but "one relevant circumstance to which courts must refer" when determining the reasonableness of a fee award. *Vizcaino*, 290 F.3d at 1047. It is true that there may be so-called "megafund" cases where "recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel," leading to "windfalls in common fund cases." *Optical Disk Drive*, 959 F.3d at 933. But in *Vizcaino*, the Ninth Circuit explained that the argument that "the percentage of an award generally decreases as the amount of the fund increases" is

something that it "did **not** adopt…as a principle governing fee awards." 290 F.3d at 1047 (emphasis added). Rather, the justification for a downward adjustment in megafund cases applies only where an award would otherwise give a windfall to counsel, as reflected in a disproportionately high lodestar multiplier. *See Lithium Ion Batteries*, 2020 WL 7264559, at *19 ("The preliminary question, however, is whether a given percentage of the fund would constitute an unreasonable multiplier of counsel's lodestar.") In cases where a lodestar cross-check falls within the typical range, such as this one, a "megafund" adjustment is inappropriate. Thus, the *Vizcaino* court rejected the argument that the settlement fund's size warranted a downward adjustment to the fee and affirmed a fee award that amounted to a lodestar multiplier of 3.65. *Id.* at 1051; *see also id.* at 1051 n.6 (noting that 83% of common fund settlements with percentage-based fee awards have lodestar multipliers ranging between 1.0 and 4.0).

As noted above, Class Counsel's requested fees fall within the accepted range of a lodestar multiplier. The excellent result achieved here was a direct result of Plaintiffs' dogged pursuit of the case through trial and settlement—a settlement through which Class Counsel achieved a more than full result for each and every Class member. The requested fee is not a "windfall," and it would be a perversion of the megafund reasoning to hold counsel's extraordinary result against them.

### III. CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED.

"Reasonable litigation costs also are recoverable under a common fund theory of recovery." *Shin v. ICON Found.*, 2025 WL 672936, at *5 (N.D. Cal. Mar. 3, 2025); *see also Carlin*, 380 F. Supp. 3d at 1023–24 ("An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund."). The award "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary" and "can include reimbursements for: (1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees. The standard of reasonableness of costs is to be given a liberal interpretation." *Carlin*, 380 F. Supp. 3d at 1023–24 (cleaned up).

Class Counsel requests reimbursement of its current out-of-pocket expenses totaling $1,236,603.08. Joint Decl. ¶ 32. Class Counsel incurred these costs for: expert fees, travel to hearings, depositions, and trial, copying costs, court reporter fees, filing fees, and legal research. *Id*. Class Counsel will incur additional expenses on this case going forward, including working with the Settlement Administrator, communicating with Class Members, and attending the Final Approval Hearing. *Id*. ¶ 34. Counsel, however, will not be making a further cost application. Class Counsel's request for reimbursement of $1,236,603.08 in expenses is reasonable and should be approved.

## IV.   CLASS REPRESENTATIVES SHOULD BE AWARDED A SERVICE AWARD.

Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Gergetz v. Telenav*, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009)). In determining whether to exercise their ample discretion in providing such awards, courts consider five factors: (1) the risk to the class representative in commencing suit (financial or otherwise); (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken*, 901 F. Supp. at 299. Courts routinely grant requests for substantial service awards where plaintiffs have participated actively in the prosecution of a case, including for participation that stopped well short of trial, and those that participation led to significant class-wide benefits. *See id.* at 299–300 (awarding $50,000 for "participation . . . through many years of litigation," in a case with a total common fund of $67,548,713.26).[2]

---

[2] *See also In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *18 (N.D. Cal. Sept. 2, 2015) (awarding each of five class representatives amounts ranging from $80,000 to $120,000 in a "mega fund" case that settled pre-trial); *Zamora Jordan v. Nationstar Mortg., LLC*, 2019 WL 1966112, at *9 (E.D. Wash. May 2, 2019) ($20,000 service award where plaintiff assisted class counsel throughout pendency of case, was deposed, and prepared for trial); *Ridgeway v. Wal-Mart Stroes Inc.*, 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2014) (awarding $15,000 to each of nine class representatives in a case that desulted in a $60 million common fund after trial); *In re Zetia (Ezetimibe) Antitrust Litig.*, 699 F. Supp. 3d 448, 463–64 (E.D. Va. 2023) (awarding $30,000

While the Class representatives here did not encounter personal risk or substantial notoriety, they were essential to Plaintiffs' victory and to thousands of Class members' recovery. Plaintiffs Tarvin (California), Del Valle (Idaho), and Davis (North Carolina) all conferred with Class Counsel, searched for and produced documents, made their vehicles available for inspection, and sat for deposition. Joint Decl. ¶ 38. Most significantly, they each spent days or weeks away from home attending trial on behalf of their respective Classes and testifying in front of the jury on direct examination and on highly-adversarial cross-examination. Plaintiffs Davis and Del Valle attended every day of the trial, from opening arguments through closing arguments. Plaintiff Tarvin was there for the majority of trial days, leaving once for a long-planned family vacation, but returning again. Joint Decl. ¶ 39. Plaintiff Del Valle served as a plaintiff in this action since its commencement more than seven years ago. ECF No. 2. Plaintiff Davis has served as a plaintiff for more than five years. ECF No. 123. And Plaintiff Tarvin joined this case not long before trial, stepping in to serve as Class Representative for the California Class, which had lost its representative, from decertification. ECF No. 412.

As the Court is aware, Plaintiffs Tarvin, Del Valle, and Davis were not mere figureheads. Each of their testimony was integral to the presentation of their case to the jury. They testified without any promise of payment, and because they did so, thousands of people—the other Class members—will each receive thousands of dollars. A service award of $30,000 each is not only fair to them, given the size of the Class recovery, it will also serve as an incentive to other individuals to diligently and responsibly serve as class representatives in the future.

## V.   CONCLUSION

Class Counsel respectfully request that the Court award attorneys' fees, costs, and expenses in the amount of $57,000,000.00, as well as the proposed service award to Plaintiffs Tarvin, Del Valle, and Davis in the amount of $30,000.00.

---

service awards to each of five class representatives, and $75,000 to each of two class representatives for "extraordinary service . . . in performing trial-related services"); *Peanut Farmers Antitrust*, 2021 WL 9494033, at *2, 8 (awarding $40,000 to each of six class representatives in a case that was *prepared* for trial and resulted in a $102,750,000 Settlement Fund); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding class representatives $25,000 and $125,000 in a case with a $163.5 million common fund).

| | | |
|---|---|---|
| 1 | DATED: July 7, 2025 | Respectfully submitted, |
| 2 | | |
| 3 | | */s/Adam J. Levitt*<br>Adam J. Levitt (*pro hac vice*) |
| 4 | | John E. Tangren (*pro hac vice*)<br>Daniel R. Ferri (*pro hac vice*) |
| 5 | | **DICELLO LEVITT LLP**<br>Ten North Dearborn Street, Sixth Floor |
| 6 | | Chicago, Illinois 60602<br>Telephone: (312) 214-7900 |
| 7 | | alevitt@dicellolevitt.com<br>jtangren@dicellolevitt.com |
| 8 | | dferri@dicellolevitt.com |
| 9 | | */s/ H. Clay Barnett, III* |
| 10 | | H. Clay Barnett, III (*pro hac vice*)<br>W. Daniel "Dee" Miles, III (*pro hac vice*) |
| 11 | | Rebecca D. Gilliland (*pro hac vice*)<br>J. Mitch Williams (*pro hac vice*) |
| 12 | | Dylan T. Martin (*pro hac vice*) |
| 13 | | **BEASLEY, ALLEN, CROW,**<br>**METHVIN, PORTIS & MILES, P.C.** |
| 14 | | 272 Commerce Street<br>Montgomery, Alabama 36104 |
| 15 | | Telephone: (334) 269-2343<br>Clay.Barnett@beasleyallen.com |
| 16 | | Dee.Miles@beasleyallen.com<br>Rebecca.Gilliland@beasleyallen.com |
| 17 | | Mitch.Williams@beasleyallen.com<br>Dylan.Martin@beasleyallen.com |
| 18 | | |
| 19 | | Mark Abramowitz (*pro hac vice*) |
| 20 | | **DICELLO LEVITT LLP**<br>7556 Mentor Avenue |
| 21 | | Mentor, Ohio 44060<br>Telephone: (440) 953-8888 |
| 22 | | mabramowitz@dicellolevitt.com |
| 23 | | *Class Counsel* |
| 24 | | Jennie Lee Anderson (SBN 203586) |
| 25 | | Lori E. Andrus (SBN 205816)<br>**ANDRUS ANDERSON LLP** |
| 26 | | 155 Montgomery Street, Suite 900<br>San Francisco, California 94104 |
| 27 | | Telephone: (415) 986-1400<br>jennie@andrusanderson.com |
| 28 | | |

lori@andrusanderson.com

Anthony J. Garcia (*pro hac vice*)
**AG LAW P.A.**
3602 West Euclid Avenue
Tampa, Florida 33629
Telephone: (813) 259-9555
anthony@aglawinc.com

*Additional Counsel for Plaintiffs and the Classes*

**ECF CERTIFICATION**

Pursuant to Civil L.R. 5-1(i)(3), the filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories above.

Date: July 7, 2025                    By:    */s/ Adam J. Levitt*
                                             Adam J. Levitt